**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**

| | |
|---|---|
| JED LEMEN, Individually and on Behalf of All Others Similarly Situated, | |
| Plaintiff, | |
| v. | Case No. 3:21-cv-1254-TJC-PDB |
| REDWIRE CORPORATION f/k/a GENESIS PARK ACQUISITION CORP., PETER CANNITO, and WILLIAM READ, | CLASS ACTION |
| Defendants. | |

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF**
**THEIR MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

**SHUTTS & BOWEN LLP**
H. Timothy Gillis
Florida Bar No. 0133876
1022 Park Street, Suite 308
Jacksonville, FL  32204
Telephone:  (904) 899-9950
Email:  tgillis@shutts.com

**KIRKLAND & ELLIS LLP**
Stefan Atkinson, P.C.
Mike Rusie
601 Lexington Avenue
New York, NY  10022
Telephone:  (212) 446-4800
Email:  stefan.atkinson@kirkland.com
          mike.rusie@kirkland.com

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ....................................................................................................1

ARGUMENT ..........................................................................................................1

I.     **Plaintiff Fails To Plead An Actionable Misstatement or Omission.**..........1

        A.     The Challenged Disclosures Are Forward-Looking Statements Accompanied by Meaningful Cautionary Language. ...........................2

        B.     Any Alleged Lack of "Tone at the Top" Is Immaterial. .......................5

II.    **Plaintiff Fails To Plead a Strong Inference of Scienter.** ...........................6

        A.     An Allegedly Inappropriate "Tone at the Top" Cannot Support an Inference of Scienter. ...................................................................7

        B.     Officer Roles Are Insufficient to Support an Inference of Scienter. ...............................................................................................8

        C.     The CFO's Departure Does Not Support an Inference of Scienter. ...............................................................................................9

        D.     Motive Is Insufficient to Support an Inference of Scienter..................10

CONCLUSION .....................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Brophy v. Jiangbo Pharm., Inc.*,
  781 F.3d 1296 (11th Cir. 2015) ......................................................................10

*Carvelli v. Ocwen Fin. Corp.*,
  934 F.3d 1307 (11th Cir. 2019) .....................................................................3, 4

*City of Brockton Ret. Sys. v. Avon Prods., Inc.*,
  2014 WL 4832321 (S.D.N.Y. Sept. 29, 2014) ...................................................7

*Durgin v. Mon*,
  415 F. App'x 161 (11th Cir. 2011) ....................................................................8

*Ehlert v. Singer*,
  245 F.3d 1313 (11th Cir. 2001) .....................................................................3, 4

*In re Electrobras Sec. Litig.*,
  245 F. Supp. 3d 450 (S.D.N.Y. 2017) ...............................................................5

*In re Equifax Inc.*,
  357 F. Supp. 3d 1189 (N.D. Ga. 2019).............................................................9

*Garfield v. NDC Health Corp.*,
  466 F.3d 1255 (11th Cir. 2006) ........................................................................1

*Gross v. Medaphis Corp.*,
  977 F. Supp. 1463 (N.D. Ga. 1997)..................................................................5

*Harris v. Ivax Corp.*,
  182 F.3d 799 (11th Cir. 1999) ...............................................................2, 3, 4, 5

*In re Hertz Glob. Holdings Inc.*,
  905 F.3d 106 (3d Cir. 2018) .............................................................................6

*Hessefort v. Super Micro Computer, Inc.*
  2021 WL 1169906 (N.D. Cal. Mar. 29, 2021) ...............................................7, 8

*Luna v. Marvell Tech. Group*
  2017 WL 2171273 (N.D. Cal. May 17, 2017)................................................7, 10

iii

*Maverick Fund, L.D.C. v. Lender Processing Servs. Inc.*,
   2015 WL 5559761 (M.D. Fla. Sept. 21, 2015).......................................................9

*Mogensen v. Body Cent. Corp.*,
   15 F. Supp. 3d 1191 (M.D. Fla. 2014) ...............................................................10

*In re Petrobras Sec. Litig.*,
   116 F. Supp. 3d 368 (S.D.N.Y. 2015) ..................................................................5

*Ret. Ass'n v. comScore, Inc.*,
   268 F. Supp. 3d 526 (S.D.N.Y. 2017) ..................................................................8

*Slayton v. Am. Exp. Co.*,
   604 F.3d 758 (2d Cir. 2010) ................................................................................7

*In re Spectrum Brands, Inc. Sec. Litig.*,
   461 F. Supp. 2d 1297 (N.D. Ga. 2006)..................................................................9

**Statutes**

PSLRA..................................................................................................................3, 4

## INTRODUCTION

Nothing in Plaintiff's Opposition Brief ("Opposition" or "Opp'n") changes that Plaintiff has failed to plead (1) an actionable misstatement or omission or (2) a strong inference of scienter.  For the reasons discussed below, Plaintiff's Complaint should be dismissed in its entirety and with prejudice.[1]

## ARGUMENT

**I.    PLAINTIFF FAILS TO PLEAD AN ACTIONABLE MISSTATEMENT OR OMISSION.**

As framed in Plaintiff's Opposition, Plaintiff's case hinges on whether the Company's disclosures regarding its internal controls are protected by the PSLRA's safe harbor for forward-looking statements.  *See* Opp'n at 1, 14.[2]  Plaintiff incorrectly argues that the Company's disclosures are not subject to the safe harbor because (1) the disclosures contain present statements of fact and (2) the cautionary language does not address the risk that ultimately materialized.  *Id.* at 9–10.  Plaintiff's Complaint also fails because Plaintiff fails to cite a single case where nondisclosures of a company's "tone at the top" were found to be material.

---

[1]    Defendants focus on Plaintiff's Section 10(b) claims because the Section 20(a) claim fails if the Section 10(b) claim fails.  *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1261 (11th Cir. 2006).

[2]    Defendants respectfully refer the Court to their Opening Brief for a discussion of why the challenged disclosures are inactionable because they are immaterial puffery and/or statements of opinion.  *See* Opening Br. at 9–16. Since Plaintiff does not offer a meaningful rebuttal to these arguments, there is no need to reiterate that discussion.

**A.**     **The Challenged Disclosures Are Forward-Looking Statements Accompanied by Meaningful Cautionary Language.**

Plaintiff agrees that the Company made extensive cautionary risk disclosures that were "specific and tailored to emphasize a new and growing company that needed more personnel and training." Opp'n at 9. These disclosures included that (1) Redwire's management team, i.e., its CEO and CFO, had "limited experience managing a public company" and (2) "Redwire may not have adequate personnel with the appropriate level of knowledge, experience and training in the accounting policies, practices or internal control over financial reporting required of public companies." Ex. 1 at 57–58; *see also* Ex. 2 at 58–61; Ex. 3 at 34–36.[3] These meaningful and cautionary risk disclosures shield Defendants from any liability because Plaintiff was adequately "warned of risks of a significance similar to that actually realized" when the Company announced that it would not be able to release its financial statements. *Harris v. Ivax Corp.*, 182 F.3d 799, 807 (11th Cir. 1999).

To avoid this straightforward conclusion, Plaintiff argues that (1) the Company's forward-looking cautionary language contained untrue statements of present fact, *see* Opp'n at 10 n.10, and (2) the Company's risk disclosures were "far different" from the risk that ultimately materialized, *id.* at 9–10. Plaintiff is wrong.

---

[3]  Plaintiff misleadingly argues that "there was no meaningful cautionary language" in the Company's disclosures, but Plaintiff does not explain how the Company's extensive risk disclosures fall short of what the law requires. Opp'n at 10 n.10.

2

Plaintiff first attempts to dodge the safe harbor by arguing that whether Redwire was "working to remediate the material weaknesses as efficiently and effectively as possible" is a statement of present fact. *Id.* at 9. But that statement appears within Redwire's risk disclosures, *see* Ex. 1 at 57; Ex. 2 at 61; Ex. 3 at 36, and even though the particular risk disclosure spans multiple sentences, it is a singular forward-looking statement. *Ehlert v. Singer*, 245 F.3d 1313, 1318 (11th Cir. 2001) ("Because the allegation is that this section of the prospectus is misleading, due to material omissions, we view the section as a whole and determine whether it is forward-looking."). In cases where the challenged statement contains both "factual and forward-looking factors," the disclosure is forward-looking and falls within the PSLRA safe harbor. *Ivax*, 182 F.3d at 806; *Ehlert*, 245 F.3d at 1318 n.5; *Carvelli v. Ocwen Fin. Corp.*, 934 F.3d 1307, 1328–30 (11th Cir. 2019).

*Carvelli* is instructive. There, the plaintiff challenged the company's statement that it was "committed to correcting any deficiencies, remediating any borrower harm, and improving our compliance management systems and customer service." *Carvelli*, 934 F.3d at 1314–15. Although this statement implicitly rested on "present conditions and intentions," the statement intended "first and foremost, to communicate a future plan." *Id.* at 1328–29. The court held that a forward-looking statement that "rolls in present circumstances" still falls within the PSLRA safe harbor. *Id.* The same is true here. Although the Company described its "present

3

conditions and intentions" with respect to remediation of its internal controls over financial reporting, the Company's disclosure intended "to communicate a future plan," i.e., full remediation. *See Carvelli*, 934 F.3d at 1328–29; *see also Ehlert*, 245 F.3d at 1318. The challenged statement is thus forward-looking in nature.

Plaintiff next attempts to dodge the safe harbor by claiming that Redwire's risk disclosures "are far different from the undisclosed risk" regarding an alleged lack of "tone at the top." Opp'n at 10. But Plaintiff ignores that meaningful cautionary language under the PSLRA safe harbor "does not require a listing of *all* factors" that present a risk to a company's performance. *Ivax*, 182 F.3d at 807; *accord Ehlert*, 245 F.3d at 1320 (dismissing omission claim where risk disclosures were "closely related to the specific warning which [p]laintiffs assert should have been given"). Redwire disclosed that its management team, i.e., its CEO and CFO, had "limited experience managing a public company," and that "Redwire may not have adequate personnel with the appropriate level of knowledge, experience and training in the accounting policies, practices or internal control over financial reporting required of public companies." Ex. 1 at 57; *see also* Ex. 2 at 58–61; Ex. 3 at 34–36. These risk factors are closely related to the risk that ultimately materialized, that Redwire would not be able to timely file its financial statements, since preparing and filing complex financial statements are critical responsibilities of public company management and relate directly to "financial reporting."

4

Moreover, Redwire provided unambiguous notice to investors that "[i]f [the Company] were to identify additional material weaknesses or other deficiencies, or otherwise fail to maintain effective internal control over financial reporting, [the Company] may not be able to accurately and timely report our financial results, in which case [the Company's] business may be harmed." Ex. 2 at 59. In light of these disclosures, any investor was "sufficiently on notice of the danger of the investment to make an intelligent decision about it according to her own preferences for risk and reward." *Ivax*, 182 F.3d at 807. As discussed further below, "tone at the top" is just not the magic phrase that Plaintiff makes it out to be.

## B.    Any Alleged Lack of "Tone at the Top" Is Immaterial.

Plaintiff spends over half his brief trying to convince the Court that a company's "tone at the top" is per se material. *See* Opp'n at 6–17. Despite his rhetoric, Plaintiff fails to identify a single case where a company's "tone at the top," without more, was material. That is telling.[4]

---

[4]   Plaintiff resorts to citing inapposite cases in which a company knowingly concealed (and perpetuated) accounting fraud, at least in part by making repeated statements about the company's commitment to integrity. *See In re Petrobras Sec. Litig.*, 116 F. Supp. 3d 368, 380 (S.D.N.Y. 2015) ("The errors in the Company's financial statements were directly related to its concealment of the unlawful bribery scheme, revelation of which would call into question the integrity of the company as a whole."); *In re Electrobras Sec. Litig.*, 245 F. Supp. 3d 450, 463 (S.D.N.Y. 2017) ("The repeated references made specifically in response to damaging media reports about bribery and bid-rigging at Eletrobras were made to emphasize its reputation for integrity or ethical conduct as central to its financial condition."); *Gross v. Medaphis Corp.*, 977 F. Supp. 1463, 1472 (N.D. Ga. 1997) (finding that defendants engaged in "an elaborate scheme" in which they knowingly made numerous false statements to inflate the value of the company's stock). No such illicit cover-up exists here. Plaintiff's other headline case, *Premiere*, is also immediately distinguishable because there, the company represented that management had the "depth and experience . . . to manage the acquisition process." *In re Premiere Techs. Inc.*, 200 WL 33231639, at *15 (N.D. Ga. Dec. 8, 2000). Here, Redwire explicitly disclosed that management did *not* have the depth and experience to manage its internal controls over financial reporting.

Defendants likewise have not uncovered any case holding that failure to disclose a company's "tone at the top" is considered a material omission.[5] "Tone at the top" implies mismanagement, and "allegations of mismanagement will only support a securities fraud claim if they are coupled with allegations that the defendants were aware, or recklessly disregarded, that their mismanagement created an environment in which fraud was occurring." *In re Hertz Glob. Holdings Inc.*, 905 F.3d 106, 117 (3d Cir. 2018) (internal citations omitted).  Plaintiff has not alleged any actual fraud.  To the contrary, "the material weakness related to certain aspects of tone at the top did not result in a misstatement to the consolidated financial statements."  Ex. 8 at 56.[6]  Without allegations of an underlying fraud, Plaintiff has merely pled that Defendants "presided over a poorly managed corporation" and "created an environment in which improper accounting practices flourished." *Hertz*, 905 F.3d at 117.  That does not suffice to plead an actionable omission.

## II.    PLAINTIFF FAILS TO PLEAD A STRONG INFERENCE OF SCIENTER.

Plaintiff attempts to argue that he has alleged scienter because (1) the Company disclosed "that certain members of senior management failed to

---

[5]    Plaintiff's own secondary source acknowledges that "tone at the top" is not determinative of any fraud. *Cf.* Alfred M. King CMA, CFM, *Tone at the Top: Why Investors Should Care* (Mar. 2013), https://sfmagazine.com/wp-content/uploads/sfarchive/2013/03/Tone-at-the-Top-Why-Investors-Should-Care.pdf (noting that "it's relatively easy to follow the letter of GAAP and internal control requirements and still have a poor tone at the top").

[6]    Exhibit 8 is incorporated by reference in the Complaint, *see* Compl. ¶¶ 21–22, 77–78, and attached to the Declaration of Stefan Atkinson filed contemporaneously herewith.

6

consistently message and set certain aspects of an 'tone at the top,'" (2) Cannito and Read were in high-ranking positions "at the top," (3) Read separated from the Company, and (4) Defendants had motives to commit fraud. Opp'n at 17–20. These allegations do not add up to a strong inference of scienter.

### A.     An Allegedly Inappropriate "Tone at the Top" Cannot Support an Inference of Scienter.

Plaintiff argues that district courts have inferred scienter from a company's admission of an inappropriate "tone at the top." Opp'n at 17. This is an overstatement. None of Plaintiff's cases concern a company like Redwire that voluntarily reported to the SEC, voluntarily undertook an independent internal investigation that found no fraud or need for restated financial statements and was independently audited, and voluntarily disclosed the insufficiency of its internal controls and progress of their remediation. *See Slayton v. Am. Exp. Co.*, 604 F.3d 758, 777 (2d Cir. 2010) (holding that admission of wrongdoing showed company "was endeavoring in good faith to ascertain and disclose future losses"); *City of Brockton Ret. Sys. v. Avon Prods., Inc.*, 2014 WL 4832321, at *29 (S.D.N.Y. Sept. 29, 2014) (holding that announcement of internal investigation and voluntary reporting to SEC and DOJ did not give rise to strong inference). To the contrary, Plaintiff's own cases demonstrate that "tone at the top" supports an inference of scienter only where the tone covers up or perpetuates an underlying fraud.

7

For example, in *Luna v. Marvell Tech. Group*, a California court inferred scienter where the complaint alleged that the CEO was a "micromanager" whose pressure on his finance department to book revenue before it could legally be recognized led to actual accounting fraud. 2017 WL 2171273, at *4 (N.D. Cal. May 17, 2017). The same is true for *Hessefort v. Super Micro Computer, Inc.*, where a California court inferred scienter only after reviewing the "magnitude and effect of GAPP violations" caused by a CEO who was singled out as needing training on compliant sales practices. 2021 WL 1169906, at *12–14 (N.D. Cal. Mar. 29, 2021). These cases highlight that allegations concerning "tone at the top" are only relevant if it caused an underlying fraud. *See also Fresno Cnty. Emps.' Ret. Ass'n v. comScore, Inc.*, 268 F. Supp. 3d 526, 551–52 (S.D.N.Y. 2017) (inferring scienter where senior management was alleged to have withheld information from its auditors in order to avoid detection). There are no similar allegations of any underlying fraud here because the allegedly inappropriate "tone at the top" "did not result in a misstatement to the consolidated financial statements." Ex. 8 at 56.

**B.    Officer Roles Are Insufficient to Support an Inference of Scienter.**

Plaintiff argues that Cannito and Read's roles as CEO and CFO support an inference of scienter because, as high-ranking executives, they should have understood the importance of "tone at the top." Opp'n at 18. The law is clear that such general allegations against a senior executive are not enough to infer scienter.

8

*See Durgin v. Mon*, 415 F. App'x 161, 165 (11th Cir. 2011).  But that is all Plaintiff alleges, that Cannito and Read were "experienced businesspersons" who "undoubtedly understood the importance of ICFR and 'tone at the top.'"  Opp'n at 18.  These "vague circumstantial arguments to support a general speculative conclusion that the Defendants were in a position to have known and thus must have known" are insufficient to plead the requisite strong inference.  *In re Spectrum Brands, Inc. Sec. Litig.*, 461 F. Supp. 2d 1297, 1314 (N.D. Ga. 2006).

> ### C.   The CFO's Departure Does Not Support an Inference of Scienter.

Plaintiff argues that an inference of scienter is "buttressed" by the "termination" of CFO Read after the Audit Committee completed its investigation.  Opp'n at 18.  But without more, executive departures "do not create a strong inference of scienter."  *Maverick Fund, L.D.C. v. Lender Processing Servs. Inc.*, 2015 WL 5559761, at *12 (M.D. Fla. Sept. 21, 2015).  The context of an executive's resignation must "suggest that intentional or reckless misconduct had occurred."  *In re Equifax Inc.*, 357 F. Supp. 3d 1189, 1244–46 (N.D. Ga. 2019).  Plaintiff fails to allege that Read's separation from the Company suggested the occurrence of intentional or reckless misconduct.   Five months elapsed between the alleged whistleblower coming forward and the Audit Committee finishing its investigation.  *See* Compl. ¶¶ 70, 75.  Two more months later, the Company announced that Read was leaving his role as CFO.  *Id.* ¶ 81.  This sequencing is far different from that in

9

*Luna*, where the company undertook an internal investigation only after the SEC and DOJ announced their own investigations, and the company fired the CEO one month after it started investigating.  2017 WL 2171273, at *5.  Read's separation seven months after the alleged whistleblower report is not similarly suggestive.

Plaintiff also disregards the alternative, nonculpable explanation for Read's departure from Redwire:  that Read was hired for the specific task—taking the Company public—and once that task was complete, Read naturally transitioned out of that role.  Opening Br. at 22.  Plaintiff thus fails the requisite balancing test. *Brophy v. Jiangbo Pharm., Inc.*, 781 F.3d 1296, 1302 (11th Cir. 2015).

**D.      Motive Is Insufficient to Support an Inference of Scienter.**

Plaintiff argues that Defendants had "strong motives supporting an inference of scienter, including an infusion of cash to grow the continued business, not having to return investor funds, and significant personal financial gain." Opp'n at 19.  These general motives that can be ascribed to any executive and any company are insufficient as a matter of law.  *See Mogensen v. Body Cent. Corp.*, 15 F. Supp. 3d 1191, 1224 (M.D. Fla. 2014).

**CONCLUSION**

For the foregoing reasons, Defendants respectfully submit that the First Amended Complaint should be dismissed in its entirety and with prejudice.

10

/s/ *Harold Timothy Gillis*

**SHUTTS & BOWEN LLP**
H. Timothy Gillis
Florida Bar No. 0133876
1022 Park Street, Suite 308
Jacksonville, FL  32204
Telephone: (904) 899-9950
Email: tgillis@shutts.com

**KIRKLAND & ELLIS LLP**
Stefan Atkinson, P.C.
Mike Rusie
601 Lexington Avenue
New York, NY  10022
Telephone:  (212) 446-4800
Email:  stefan.atkinson@kirkland.com
            mike.rusie@kirkland.com

*Counsel for Defendants Redwire Corporation f/k/a Genesis Park Acquisition Corp., Peter Cannito, and William Read*

11

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 14, 2022, I electronically filed the foregoing document using the CM/ECF system, which will send notice of this filing to the counsel of record.

/s/ Harold Timothy Gillis
Attorney