# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA

JED LEMEN, Individually and On Behalf of All Others Similarly Situated,

Plaintiff,

v.

REDWIRE CORPORATION f/k/a GENESIS PARK ACQUISITION CORP., PETER CANNITO, and WILLIAM READ,

Defendants.

Case No. 3:21-cv-01254-TJC-PDB

CLASS ACTION

## LEAD PLAINTIFF JARED THOMPSON'S RULE 26(B)(5)(B) MOTION FOR DETERMINATION OF PRIVILEGE

Reed R. Kathrein (Fla. Bar. No. 262161)
Lucas E. Gilmore (admitted *pro hac vice*)
715 Hearst Avenue, Suite 300
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile:  (510) 725-3001
Email: reed@hbsslaw.com
Email: lucasg@hbsslaw.com

Steve W. Berman (admitted *pro hac vice*)
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile:  (206) 623-0594
Email: steve@hbsslaw.com

*Lead Counsel for Lead Plaintiff*
*Jared Thompson*

**TABLE OF CONTENTS**

I.    INTRODUCTION ...................................................................................1

II.   FACTUAL BACKGROUND...................................................................4

      A.   Overview of Case ....................................................................4

      B.   Redwire's Audit Committee Investigation.............................8

      C.   PwC Acted Solely as Redwire's Independent Auditor .........8

      D.   Redwire's Request to Claw Back the PwC Memo ...............11

III.  ARGUMENT........................................................................................13

      A.   In Order to Establish Work Product, Defendants Have A
           Heavy Burden.........................................................................13

      B.   The PwC Memo Was Not Prepared "For" Defendants in
           "Anticipation of Litigation or for Trial" .............................13

      C.   At a Minimum, PwC's "Primary Purpose" in Using the
           Information Contained in the PwC Memo Was a Non-
           Litigation Purpose .................................................................15

      D.   Redwire Also Cannot Show the Audit Committee's
           Investigation is Protected Work Product...............................16

IV.   CONCLUSION....................................................................................21

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Allied Irish Banks v. Bank of America, N.A.,*
  240 F.R.D. 96 (S.D.N.Y. 2007) ................................................................18, 20

*Holladay v. Royal Caribbean Cruises Ltd.,*
  334 F.R.D. 628 (S.D. Fla. 2020) .............................................................13, 20

*In re Kidder, Peabody Sec. Litig.,*
  168 F.R.D. 459 (S.D.N.Y.1996) ....................................................................18

*In re Leslie Fay Companies, Inc. Sec. Litig.,*
  161 F.R.D. 274 (S.D.N.Y.1995) ....................................................................18

*Miller v. Dyadic Int'l, Inc.,*
  2010 WL 11591901 (S.D. Fla. March 30, 2010).............................................17

*Norris v. Williams,*
  2017 WL 5054763 (M.D. Fla. Nov. 3, 2017)..................................................15

*In re OM Sec. Litig.,*
  226 F.R.D. 579 (D. Ohio 2005) .....................................................................18

*Republic of Ecuador v. Hinchee,*
  741 F.3d 1185 (11th Cir. 2013) .....................................................................13

*In re Royal Ahold NV Sec. and ERISA Litig.,*
  230 F.R.D. 433 (D. Md. 2005) ......................................................................20

*S.E.C. v. Microtune, Inc.,*
  258 F.R.D. 310 (N.D. Tex. 2009)........................................................17, 18, 20

*United States v. Wachovia Bank, N.D.,*
  2011 WL 13302099 (M.D. Fla. June 7, 2011) ................................................14

**Statutes**

15 U.S.C.A. § 78j-1.............................................................................................16

ii

15 U.S.C.A. § 78j-1(b) ............................................................................................ 16

**Other Authorities**

Fed. R. Civ. P. 26(b)(3)(A) ............................................................................ 13, 15

Fed. R. Civ. P. 26(b)(5)(A) .................................................................................... 3

Fed. R. Civ. P. 26(b)(5)(B) .................................................................................... 1

Local Rule 3.01(g) ................................................................................................. 1

Pursuant to Federal Rule 26(b)(5)(B), Lead Plaintiff ("Plaintiff") respectfully requests *in camera* review of an internal auditor memo to confirm it is not subject to work product protection. Per Local Rule 3.01(g), the undersigned conferred with opposing counsel in a good faith effort to resolve the issues raised by the motion but counsel were unable to agree to the relief sought.

## I.    INTRODUCTION

This motion concerns a dispute over a document produced by non-party PricewaterhouseCoopers LLP ("PwC") which Defendants now claim is attorney work product. PwC served as the independent auditor for Defendant Redwire Corporation ("Redwire" or the "Company") f/k/a/ Genesis Park Acquisition Corp. ("GPAC").

1

████████████████████████████████████████

███████

In March 2022 and April 2022, Redwire disclosed to the public, in press releases and SEC filings audited by PwC, the findings of the Audit Committee investigation, including that unnamed members of Redwire's senior management "failed to consistently message and set certain aspects of an appropriate tone at the top" by failing to "reinforce the need for compliance with certain of the Company's accounting and finance policies and procedures, including reinforcement of appropriate communication." ¶¶ 75, 77.[1] ████████████████████████

████████████████████████████████████████

███████████████ *See also* ¶¶ 23 n. 7 , 75, 79. The "tone at the top" disclosure was followed by the termination of Defendant CFO William Read in June 2022. ¶ 81.

Based on the disclosures of a deficient "tone at the top," internal control material weaknesses, and Defendant CFO Read's firing, Plaintiff filed this securities fraud class action. In denying Defendants' motion to dismiss, the Court held that the misrepresentations alleged by Plaintiff all shared the same omission: "Defendants'

---

[1] "¶" refers to paragraphs in the First Amended Complaint (ECF No. 47).

[2] *See* Declaration of Reed Kathrein ("Kathrein Decl."), Ex. G at 61 (Report of Independent Registered Public Accounting Firm from Redwire's Form 10-K, filed April 11, 2022).

failure to disclose Redwire's deficient tone at the top." ECF No. 62 at 10.  To date, however, Defendants have produced virtually no documents supporting its public disclosures at the end of the Class Period, in particular the facts underlying the "tone at the top finding," what Defendants knew about "tone at the top" throughout the Class Period, and the reasons for the firing of Defendant CFO Read following these disclosures.

Nonetheless, through third-party discovery efforts, Plaintiff received the PwC Memo after Defendants first reviewed PwC's production for privilege.  *See* Kathrein Decl., ¶¶ 3-4 and Exs. A-B. In November 2023, Plaintiff asked PwC about documents referred to in the PwC Memo that had not been produced nor logged by PwC or Defendants.  *Id.*, ¶ 6 and Ex. C.  In mid-December 2023, Plaintiff also asked Defendants about the missing documents referenced in the PwC Memo as part of ongoing meet and confers over Defendants' document production.[3] *Id.*, ¶ 7 and Ex. E. A few days later, PwC made a supplemental production of some, but not all, of the documents referenced in the PwC Memo, and said they were continuing to review Plaintiff's requests. *Id.*, ¶ 6 and Ex. D. Then, nearly two weeks after the meet

---

[3] To this day, no log has been provided for the PwC Memo itself.  Kathrein Decl., ¶ 10. Without having received the PwC Memo, Plaintiff would not have been aware of the missing documents referred to therein. While not requested in this motion, Plaintiff contends Defendants' failure to provide a privilege log identifying the PwC Memo and the documents referred to therein has waived any claim of privilege. *See* Fed. R. Civ. P. 26(b)(5)(A) (noting that a party must "expressly make" a privilege claim and "describe the nature of the documents, communications, or tangible things not produced or disclosed" in a manner that "will enable other parties to assess the claim").

3

and confer with Plaintiff, Defendants sought to claw back the PwC Memo claiming attorney work product. *Id.*, ¶ 8 and Ex. F.  A subsequent meet-and-confer was held on January 10, 2024, where Defendants confirmed their assertion of work product protection over the PwC Memo. *Id.*, ¶ 9. Plaintiff disagreed with this assertion and stated counsel would review the case law on the subject. *Id.*

After a thorough review of the case law, it is clear the PwC Memo is not protected work product. ████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████

In addition, while not necessary for this decision, Defendants cannot show the primary purpose of the Audit Committee investigation itself was to prepare for ongoing or anticipated litigation. Rather, the investigation was necessary to address accounting issues and to allow Redwire to finalize its financial statements, to permit PwC to express an audit opinion, and to appease any shareholder concerns.

Based on these reasons, the Court should reach a similar conclusion after reviewing the PwC Memo *in camera*.

## II.    FACTUAL BACKGROUND

### A.    Overview of Case

This case concerns misstatements and omissions made by Defendants in

4

taking Redwire public through a de-SPAC transaction with GPAC. To persuade investors to invest in the pre-merger SPAC and vote for the merger, Defendants repeatedly made representations concerning the impeccable management and financial prowess, experience, and credentials of the individual Defendants, the Company's adherence to its published Code of Ethics and Conduct, and the Company's remediation efforts to bring the internal controls for financial reporting of the combined entity up to regulatory standards as a public company. ¶¶ 46-81.

Shortly after the merger, and under the protection of a newly adopted whistleblower policy, hints of the truth came out through a whistleblower complaint received by the Company. ¶¶ 63-67, 70-73, 94. On November 10, 2021, Redwire issued a press release announcing it would postpone the release of its third quarter earnings results, as Redwire "was notified by an employee of potential accounting issues at a business subunit," the Company had self-reported the issue to the SEC, and the Audit Committee would begin an independent investigation. ¶ 70. On this news, Redwire's stock plummeted 16%. ¶ 71. Days later, Redwire stated that due to the pending investigation, Redwire could not "finalize its financial statements or its assessment of the effectiveness of its disclosure controls and procedures." ¶ 72. Redwire's stock fell another 8.3%. ¶ 73.

On February 3, 2022, Redwire issued a press release announcing preliminary financial results for the year ended December 31, 2021. *See* Kathrein Decl., Ex. H.

The press release included an update on the Audit Committee investigation, including that the "Audit Committee and Board of Directors have received a preliminary briefing from the independent investigation" and that to date "there have been no material misstatements identified in the Company's previously filed financial statements." *Id.* In the press release, Defendant Cannito noted that the "Board of Directors and the entire Redwire team take very seriously the values of accuracy and compliance in the preparation of our financial statements." *Id.*

Nearly two months later, in a March 30, 2022 press release, Redwire claimed that its Audit Committee "confirm[ed] that the previously announced independent investigation into potential accounting issues at a business subunit [was] resolved" following a "comprehensive review" that did not identify "any material misstatements or the need for any restatements of Redwire's previously filed financial statements." *See* Kathrein Decl., Ex. I. Redwire also mentioned its current work with its external auditor (PwC) to complete its audit, and thanked shareholders "for supporting us over the last quarter." *Id.*

The next day, March 31, 2022, Redwire announced financial results for the fiscal year ended December 31, 2021. ¶ 75. In the press release, Redwire revealed that the Audit Committee investigation into the whistleblower complaint "confirmed the existence of previously identified internal control deficiencies as well as identified certain additional internal control deficiencies," specifically that "certain

6

members of senior management failed to reinforce the need for compliance with certain of the Company's accounting and finance policies and procedures, including reinforcement of appropriate communication." *Id.* Following the March 31, 2022 press release, Redwire's stock plummeted nearly 30%. ¶¶ 20, 76, 108, 116.

Additional disclosures in April 2022, in Redwire's 10-Q and 10-K, reiterated that "certain members of senior management failed to consistently message and set certain aspects of an appropriate tone at the top" by failing to "reinforce the need for compliance" with accounting and finance policies and procedures, including "reinforcement of appropriate communication." ¶ 77. Redwire further revealed that (a) "disclosure controls and procedures were not effective as of September 30, 2021, (b) "full remediation will likely go beyond December 31, 2022," and such "remediation measures will be time consuming, will result in the Company incurring additional costs, and will place additional demands on our financial and operational resources," and (c) "the design of internal controls over financial reporting for the Company post-Merger has required and will continue to require significant time and resources from management and other personnel," which meant "management was unable, without incurring unreasonable effort or expense to conduct an assessment of [Redwire's] internal control over financial reporting as of December 31, 2021." ¶¶ 21-23, 77-79. After these additional disclosures, Defendant CFO Read was terminated. ¶¶ 24, 34, 81, 95-97.

7

**B.     Redwire's Audit Committee Investigation.**

Discovery to date shows, upon receiving the whistleblower complaint in November 2021, the Audit Committee retained King & Spalding LLP ("K&S") to conduct an "independent investigation" of "potential accounting issues with a business unit" raised by "an employee in connection with his resignation." *See* Kathrein Decl., Ex. J, ¶¶ 6-7 (Jonathan Baliff Declaration). In turn, King & Spalding retained a team of forensic accountants from KPMG LLP to work at its direction during the investigation. *Id.*, Ex. K, ¶ 4 (Alec Koch Declaration). ███████████

████████████████████████████████████████████████████████████

████████████████████████████████████████

**C.     PwC Acted Solely as Redwire's Independent Auditor**

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████ *See* Kathrein Decl., Ex. L at RDW-0001181 (December 21, 2020 audit engagement letter); Ex. M at RDW-0007730 (June 18, 2021 audit engagement letter). [4]

---

[4] ████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████



*Id.* at RDW-0001181; *id.* at RDW-0007730.

*Id.*

*Id.* at RDW-0001182; *id.* at RDW-0007731-32.[5]

9



*See, e.g.*, Kathrein Decl., Ex. N at RDW-0003939

Ex. O at RDW-0003948

Kathrein Decl., Ex. P at RDW-0008903.[6]

*See Id.*, Ex. Q at PwC000003.

[6]



*Id.* at PwC000004.

*Id.*

See Kathrein Decl., Ex. P at RDW-0008889-90, 8910-11, 9075-76.

*Id.* at RDW-0008903.

Kathrein Decl., ¶ 5.

## D.    Redwire's Request to Claw Back the PwC Memo

In September 2023, Plaintiff subpoenaed PwC documents related to the November 2021 whistleblower complaint against Redwire, "tone at the top" issues, and assessment of internal controls. *See* Kathrein Decl., ¶ 1 and Ex. A. Before production, Defendants reviewed PwC documents for privilege. *Id.*, ¶ 4 and Ex. B. After review, Defendants did not claim any privilege. *Id.*

PwC's October 30, 2023 production ████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████ *Id.*, ¶¶ 5-6. Concerned by these missing documents, Plaintiff wrote to PwC on November 29, 2023 asking PwC to confirm it would produce the missing documents or assert grounds for withholding them  *Id.*, ¶ 6 and Ex. C. Similarly, in a December 14, 2023 meet and confer with Defendants and follow-up email, Plaintiff flagged these missing documents for Defendants, noted that they had not been logged by Defendants, and asked Defendants to confirm whether they had the documents in their possession, custody, or control.  *Id.*, ¶ 7 and Ex. E.

Several days after the parties met and conferred, PwC served a supplemental production of documents that included some, but not all, of the documents identified in the PwC Memo.  *Id.*, ¶ 6.  The supplemental production did not include an assertion of privilege over the missing documents, although PwC said it was continuing to review the request from Plaintiff.  *Id.*, ¶ 6. and Ex. D.

On December 25, 2023, nearly two weeks after the parties met and conferred and Plaintiff flagged the missing documents from the PwC Memo, Defendants sent an email requesting to claw back the PwC Memo as protected work product.  *Id.*, ¶ 8 and Ex. F.  A meet and confer followed on January 10, 2024, where Defendants confirmed that the PwC Memo was not in their possession, custody, or control until

12

this litigation. *Id.*, ¶ 9.   The parties could not reach agreement on the work product claims during the conferral process.  *Id.*   To date, Defendants have not provided a privilege log specifically identyfing the PwC Memo nor the missing documents referred to therein.  *Id.*, ¶ 10.

### III.    ARGUMENT

### A.    In Order to Establish Work Product, Defendants Have A Heavy Burden

The party claiming work product immunity always has the burden to establish the claimed protection. *Republic of Ecuador v. Hinchee*, 741 F.3d 1185, 1189 (11th Cir. 2013). More significantly, "[t]his burden, to sustain a claim of privilege, is heavy because privileges are 'not lightly created nor expansively construed, for they are in derogation of the search for the truth.'" *See Holladay v. Royal Caribbean Cruises Ltd.*, 334 F.R.D. 628, 631 (S.D. Fla. 2020) (citing *U.S. v. Nixon*, 418 U.S. 683, 710 (1974)).

### B.    The PwC Memo Was Not Prepared "For" Defendants in "Anticipation of Litigation or for Trial"

In order to qualify as work product, PwC000042 must have been prepared "for" a party "in anticipation of litigation or for trial". *See* Fed. R. Civ. P. 26(b)(3)(A).

13

Kathrein Decl.  Exs. L-M (engagement letters). ██████████████████████

████████████████████████████████ *Id.*, Ex. P at RDW-0008903. ████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

███████████████████████████ *Id.* PwC never shared this document with

Defendants or their litigation counsel. *Id.*, ¶ 9.

The facts here are similar to those in *United States v. Wachovia Bank, N.D.*, 2011 WL 13302099 (M.D. Fla. June 7, 2011).  In *Wachovia Bank*, the court found no work product protection for a third-party valuation report, despite ongoing litigation, when the engagement letter stated its purpose was to assist in the preparation of filing an estate tax return and "there exists nothing in the document[] which was created for purposes of anticipated or ongoing litigation or which reflect 'preparation of a client's case,' trial strategy, or mental impressions regarding either of the cases." 2011 WL 13302099, at *2, *4.



Like in *Wachovia Bank*, ████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████ *See supra* § II.C. ████████████████████████ ████████████████████████████████████████████████████████████████

14

███████████ Kathrein Decl., ¶ 5. As such, the document is not work product and cannot be withheld on that basis.

## C.    At a Minimum, PwC's "Primary Purpose" in Using the Information Contained in the PwC Memo Was a Non-Litigation Purpose

While Defendants may claim information provided to PwC and referred to in the PwC Memo was Audit Committee work product, Defendants cannot establish that PwC created the document at issue in anticipation and preparation of *any* litigation, or at the direction of counsel in order to give legal advice in current or anticipated litigation, as required under the Federal Rules. *See* Fed. R. Civ. P. 26(b)(3)(A).

In evaluating whether a document was prepared in "anticipation of litigation," the Court has applied the "primary purpose" test. *See Norris v. Williams*, 2017 WL 5054763, at *2 (M.D. Fla. Nov. 3, 2017) (Barksdale, MJ). Under that test, a "document or tangible thing was prepared in anticipation of litigation if 'the primary motivating purpose' behind its creation was '*to aid in possible future litigation.*'" *Id.* (emphasis added). "Materials assembled in the ordinary course of business, or *pursuant to public requirements unrelated to litigation*, or for other nonlitigation purposes" are not protected as work product. *Id.* (citing Fed. R. Civ. P. 26(b)(3), Advisory Comm. Notes to 1970 Amend.) (emphasis added).

███████████████████████████████████

███████████████████████████████████

15

███████████████████████████████████████████ *See* 15

U.S.C.A. § 78j-1[7]; *see also* Kathrein Decl., Ex. P at RDW-0008889-90 ████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

Indeed, ████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████    *Id.* at RDW-0008903; *see also* Kathrein Decl., Ex. Q at PwC000004

██████████████████████████████████████████████████

██████████████████████████████████████████████████

## D.    Redwire Also Cannot Show the Audit Committee's Investigation is Protected Work Product

To be clear, by this motion, Plaintiff is not currently seeking the underlying materials or the missing documents provided to PwC that are referred to generally, but not included, in the PwC Memo. No privilege log has been provided which

---

[7] Pursuant to the Sarbanes-Oxley Act, an auditor like PwC is required to "consider the possible effect" of a potential "illegal act" on a company's financial statements. *See* 15 U.S.C.A. § 78j-1(b). This requirement further supports a finding that PwC evaluated the Audit Committee investigation in its role as an auditor, not to aid Redwire in any current or ongoing litigation.

specifically identifies ███████████████████████████████

██████ referred to in the PwC Memo.  *See* Kathrein Decl., ¶ 10.  Moreover, their

continued existence is yet unknown, despite repeated requests to PwC and

Defendants.  *Id.*, ¶¶ 6-7. Regardless, while the Court need not decide the question at

this time, based on the "primary purpose" principles discussed above, courts have

found that audit committee investigation material created in similar situations are

not protected work product.

In *Miller v. Dyadic Int'l, Inc.*, 2010 WL 11591901 (S.D. Fla. March 30, 2010),

an audit committee engaged outside counsel to investigate its "own potential

wrongdoing and for purposes of corporate housecleaning to protect the corporation's

shareholders and investors." 2010 WL 11591901, at *6. In light of this purpose, the

court held "materials assembled and generated" by the law firm were "collected

primarily for other [non-litigation] purposes," and therefore the work product

privilege did not apply. *Id.*

In *S.E.C. v. Microtune, Inc.*, 258 F.R.D. 310 (N.D. Tex. 2009), a similar

investigation led by outside counsel related to the development of "new corporate

'best practices'" and efforts to "restat[e] the company's financial disclosure."  258

F.R.D. at 319.  As such, the court held the company and its lawyers "would have

created most of the documents at issue for business purposes, regardless of the

prospects of litigation" even in light of an informal SEC investigation into a stock

option issue.  *Id.* In reaching this conclusion, the court applied the standard that for

work product to apply, the "primary motivating purpose" behind the creation of any

of the documents must be to "aid in possible future litigation." *Id.* at 318 (collecting

cases). Under this standard, the work product doctrine must be strictly construed,

and "[i]f the document would have been created without regard to whether litigation

was expected to ensue, it was made in the ordinary course of business and not in

anticipation of litigation." *Id.*[8]

---

[8] Even if the Court were to apply a standard that would allow documents created for both
litigation and business purposes to be withheld pursuant to the work product protection, courts
applying such a standard under circumstances similar to this case have found the protection does
not apply. For example, in *In re OM Sec. Litig.*, 226 F.R.D. 579 (D. Ohio 2005), the court addressed
documents created for both litigation and business purposes arising out of a company's audit
committee investigation of inventory problems that directly affected its earnings and financial
statements.  226 F.R.D at 585-86.  In light of the company's public announcement that it
anticipated restating its financial statements, the court found that the accuracy of earnings and
financial statements was a significant factor driving the audit committee's investigation.  *Id.* at
587.  Therefore, the court held the audit committee would have conducted the investigation and
prepared the documents regardless of the prospect of litigation, which included then on-going
shareholder litigation that commenced *prior* to the start of the audit committee's investigation.  *Id.*
at 585, 587.

In *In re Allied Irish Banks v. Bank of America, N.A.*, 240 F.R.D. 96 (S.D.N.Y. 2007), the court
found that work product protection did not apply to documents generated during an internal
investigation regarding a rogue trading scheme involving bank employees. 240 F.R.D. at 99, 106-
108. Although the court acknowledged that the bank's expectation of litigation was "reasonable,"
it found the materials would have been prepared regardless of the potential for litigation, and
therefore the work product protection did not apply. *Id.* The court described several facts in
concluding that the materials were not protected work product, including (1) "the investigation
was announced to the press"; (2) the prominent "business reasons" for preparing the material,
including to "make recommendations" for "improvements" of "[internal] policies and controls";
and (3) the use of the materials to "address . . . control systems, and organizational issues." *Id.* at
107-108; *see also In re Kidder, Peabody Sec. Litig.*, 168 F.R.D. 459, 465 (S.D.N.Y.1996) (finding
that work product privilege did not apply to factual summaries of statements made by interviewees
as part of an internal investigation by outside counsel because the company "would have hired
outside counsel to perform such an inquiry even if no litigation had been threatened at the time"
given the magnitude and critical nature of the business crisis); *In re Leslie Fay Companies, Inc.
Sec. Litig.,* 161 F.R.D. 274, 281 (S.D.N.Y.1995) (finding that "the internal Audit Committee

Here, the Audit Committee investigation was conducted pursuant to Redwire's Audit Committee Charter and Whistleblower Policy. *See* Kathrein Decl., Ex. J ¶ 6. The upfront purpose of the Whistleblower Policy was to ensure Redwire "conduct[s] business with efficiency, fairness and integrity and encourage[s] behavior that will maintain the public's confidence and trust in its operations." *See id.*, Ex. R (Whistleblower Policy). Similarly, the number one purpose of the Audit Committee was to "assist the Board with oversight of [] the integrity of the Company's financial statements" and it was to be "responsible for maintaining free and open communication between itself and the independent auditor, internal audit function and management of the Company." *Id.*, Ex. S. (Audit Committee Charter). The Audit Committee's "principal responsibility is one of oversight" and "[t]he Company's internal and outside counsel are responsible for assuring compliance with laws and regulations[.]" *Id.* Assuring compliance with laws was not the responsibility of the Audit Committee. *Id.*

After receiving the whistleblower complaint, and pursuant to these policies, Redwire required an Audit Committee investigation to (1) confirm the facts underlying the whistleblower complaint before Redwire could finalize its financial

---

investigation was not conducted *primarily* in anticipation of litigation," but rather for business reasons).

19

statements and (2) assuage the fears of investors.[9] *See supra*, § II.A. (discussing November 2021 and February 2022 press releases). The totality of these circumstances demonstrate that the purpose of the Audit Committee investigation "was not [] litigation but rather the need to satisfy [Redwire's] accountants, and thereby the SEC, financial institutions, and the investing public, that the identified 'accounting' issues were being addressed and remedied." *In re Royal Ahold NV Sec. and ERISA Litig.*, 230 F.R.D. 433, 436 (D. Md. 2005) (no work product privilege as to interview memoranda and investigative reports underlying the report, particularly since report was disclosed to improve the corporation's position with investors, financial institutions and regulatory agencies); *see also Holladay*, 334. at 635-36 (finding no work product protection for document reflecting investigation results conducted for "several business reasons" and noting that an "additional litigation preparation purpose" would not change the result).

---

[9] Defendants have provided declarations from Jonathan Baliff, the chair of the Audit Committee during the investigation, and Alec Koch, an attorney from King & Spalding who led the Audit Committee investigation, to support the withholding of documents they have produced in this litigation pursuant to privilege and work product assertions. *See* Kathrein Decl., Exs. J and K. Notably, these declarations do not make even conclusory assertions that the Audit Committee conducted its investigation in anticipation of any litigation. *Id.* Courts have rejected assertions of work product when parties brought more detailed declarations, including specific assertions that the party anticipated litigation, than the ones Defendants offer here. *See, e.g., Microtune*, 258 F.R.D. at 318-19 (detailing declaration from chair of audit committee and noting that "[n]otwithstanding th[e] self-serving testimony" that the company anticipated litigation, "other evidence in the record suggests that litigation concerns were not the primary motivating purpose behind the internal investigation"); *In re Allied Irish Banks,* 240 F.R.D. at 106 (noting declaration from in-house counsel that "shareholder litigation was likely" but rejecting claim of work product protection for documents that would have been "prepared in essentially similar form irrespective of litigation").

Accordingly, though the Court need not decide this question at this juncture to deny Defendants' claim that the PwC Memo is protected work product, Redwire cannot even show ███████████████████████████████████ in the PwC Memo were ever subject to work product protection.

## IV.   CONCLUSION

Lead Plaintiff respectfully requests the Court grant this motion and review the PwC Memo *in camera* to confirm that the information contained in the document is not protected by the work product protection.

Dated: February 12, 2024          Respectfully submitted,

HAGENS BERMAN SOBOL SHAPIRO LLP

By: *s/ Reed R. Kathrein*
    Reed R. Kathrein (Fla. Bar. No. 262161)
Lucas E. Gilmore (admitted *pro hac vice*)
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile:  (510) 725-3001
Email: reed@hbsslaw.com
Email: lucasg@hbsslaw.com

Steve W. Berman (admitted *pro hac vice*)
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile:  (206) 623-0594
Email: steve@hbsslaw.com

*Lead Counsel for Lead Plaintiff*
*Jared Thompson*

21

Brian Schall (admitted *pro hac vice*)
THE SCHALL LAW FIRM
2049 Century Park East, Suite 2460
Los Angeles, CA 90067
Telephone: (424) 303-1964
brian@schallfirm.com

*Additional Counsel for Lead Plaintiff*
*Jared Thompson*

David M. Buckner (Fla. Bar No. 60550)
BUCKNER + MILES
2020 Salzedo Street, Suite 302
Coral Gables, FL 33134
Telephone: (305) 964-8003
Facsimile:  (786) 523-0485
Email: david@bucknermiles.com

*Liaison Counsel for Lead Plaintiff*
*Jared Thompson*

22

## LOCAL RULE 3.01(G) CERTIFICATION

I hereby certify that on January 10, 2024, Plaintiff's counsel conferred with counsel for Defendants regarding the relief requsted in this Motion, Defendants' counsel indicated that they do not agree with any of the relief sought in this Motion, and the conference referenced herein occurred via videoconference between the undesigned and Defendants' counsel, Alfred J. Bennington, Jr., Glennys Ortega Rubin, and Benjamin F. Elliot.

/s/     *Reed R. Kathrein*

23

## CERTIFICATE OF SERVICE

I hereby certify that on February 12, 2024, I electronically filed the foregoing document using the CM/ECF system, which will send notice of this filing to all counsel of record. Additionally, I caused to be served complete, unredacted copies of the documents filed as placeholders, as required by Local Rule 1.11(d) via secure email transfer.

/s/     *Reed R. Kathrein*