# EXHIBIT A

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the

Middle District of Florida

| | | |
|---|---|---|
| JED LEMEN, et al. | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.  3:21-cv-01254-TJC-PDB |
| REDWIRE CORPORATION, PETER CANNITO, and WILLIAM READ, | ) ) | |
| *Defendant* | ) | |

**SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION**

To: PricewaterhouseCoopers LLP
c/o United Agent Group Inc. 600 Mamaroneck Avenue #400, Harrison, NY, 10528

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Exhibit A

| Place: Hagens Berman Sobol Shapiro LLP 68 3rd St. Suite 249 Brooklyn, NY 11231 (or otherwise agreed to by parties) | Date and Time: 10/02/2023 9:00 am |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   09/01/2023

*CLERK OF COURT*

OR

_____          /s/ Reed R. Kathrein
*Signature of Clerk or Deputy Clerk*              _____
                                                    *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*   Plaintiffs
, who issues or requests this subpoena, are:

Reed R. Kathrein, 715 Hearst Ave. Suite 202 Berkeley, CA 94710, reed@hbsslaw.com, (510) 725-3000

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.  3:21-cv-01254-TJC-PDB

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❒ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❒ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ ___0.00___ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## Exhibit A

This Subpoena pertains to a securities class action lawsuit now pending against Redwire Corporation f/k/a Genesis Park Acquisition Corp., Peter Cannito, and William Read in the Middle District of Florida (Case No. 3:21-cv-01254-TJC-PDB).

Pursuant to Rules 26, 34, and 45 of the Federal Rules of Civil Procedure, Lead Plaintiff Jared Thompson ("Lead Plaintiff"), by and through his undersigned counsel, hereby requests that PricewaterhouseCoopers LLP ("PwC") produce for inspection and copying within thirty (30) days of the date of this Request all documents described below in accordance with the following Definitions and Instructions.

### DEFINITIONS

1.    "Action" refers to the above-captioned action.

2.    "All," "any" or "each" shall each be construed as encompassing any and all.

3.    "And" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the request all responses that might otherwise be construed to be outside the scope of the request.

4.    "Board of Directors" or "Board" means the Board of Directors of GPAC, Old Redwire, and New Redwire[1] during the Relevant Period (as defined below) and all committees of the Board of Directors, unless otherwise specified.

5.    "Class Period" means the period between March 25, 2021, and March 31, 2022, inclusive.

6.    "Communication" or "Communications" refers to any exchange of information, words, numbers, pictures, charts, studies, or graphs by any means of transmission, sending, or receipt of information of any kind by or through any means including, but not limited to, personal delivery, speech, writings, Documents (as defined herein), language (machine, foreign, or otherwise) of any kind, computer electronics or Electronically-Stored Information (as defined

---

[1] *See, e.g.,* Complaint ¶¶ 33, 41 (discussing Old Redwire and New Redwire).

LEAD PLAINTIFF'S SUBOENA TO THIRD
PARTY (PWC) FOR DOCUMENTS                    -1-
3:21-CV-01254-TJC-PDB

herein), sound, radio or video signals, telecommunication, telephone, facsimile, mail, film, photographic film of all types, or other media of any kind. The term "Communication" also includes, without limitation, all inquiries, discussions, conversations, Correspondence (as defined herein), negotiations, agreements, presentations, understandings, meetings (as defined herein), notices, requests, responses, demands, complaints, press, publicity, or trade releases.

7.      "Complaint" refers to the First Amended Complaint filed on June 17, 2022 (ECF No. 47) in this Action. As used herein, the paragraph symbol (¶) followed by a specific number refers to the corresponding numbered paragraph of the Complaint and the allegation or information contained therein.

8.      "Concerning" means relating to, referring to, describing, evidencing, regarding or constituting.

9.      "Correspondence" means any letter, memorandum, note, e-mail, facsimile, text message, instant message, internet message board posting, smartphone message, or any other writing containing a Communication from one person or persons to another person or persons.

10.     "Document" is intended to have the broadest possible meaning under Rule 34(a) of the Federal Rules of Civil Procedure, and includes, without limitation, electronic or computerized data compilations; electronic file backup tapes; hard drives and images of hard drives; all drafts; Communications; Correspondence; memoranda; records; presentations; books; manuals; reports and summaries of personal conversations or interviews; diaries; graphs; charts; diagrams; tables; photographs; recordings; tapes; microfilms; minutes, transcripts and summaries of meetings (as defined herein) or conferences; records and reports of consultants; press releases; stenographic, handwritten, or any other notes; work papers; checks and check vouchers; check stubs and receipts; statements, scripts, questions and answers ("Q&A's"), transcripts of testimony, subpoenas and any paper or writing of whatever description, including any computer database or information contained in any computer although not yet printed out. A draft or nonidentical copy of any Document is a separate Document within the meaning of this term.

11.    "Electronically-Stored Information" or "ESI" - Unless otherwise superseded in this case by an Order Governing the Use of Electronically-Stored Information, ESI is defined herein to include the following:

(a)    all items covered by Fed. R. Civ. P. 34(a)(1)(A);

(b)    information or data that is generated, received, processed, and recorded by computers and other electronic devices, including metadata (*e.g.*, author, recipient, file creation date, file modification date, etc.);

(c)    files, information, or data saved on backup tapes or hard drives;

(d)    internal or external web sites;

(e)    output resulting from the use of any software program, including, without limitation, word processing Documents, spreadsheets, database files, charts, graphs and outlines, electronic mail, instant messenger (or similar programs), bulletin board programs, operating systems, source code, PRF files, PRC files, batch files, ASCII files, and all miscellaneous media on which they reside regardless of whether said electronic data exists in an active file, a deleted file, or file fragment; and

(f)    activity listings of electronic mail receipts and transmittals; and any and all items stored on computer memories, hard disks, USB flash drives, CD-ROM, magnetic tape, microfiche, or on any other media for digital data storage, or transmittal, such as, but not limited to, personal digital assistants (*e.g.*, iPads), hand-held wireless devices (*e.g.*, iPhones, Android, or BlackBerry smartphones), or similar devices, and file folder tabs, or containers and labels appended to, or relating to, any physical storage device associated with each original or copy of all Documents requested herein.

12.    "Employee" or "Employees" means any person who at any time during the Relevant Period (as defined herein) acted or purported to act on behalf of an entity, or another person or persons including, but not limited to, all present and former officers, directors, executives, Board members, partners, principals, managers, staff personnel, accountants, agents,

representatives, in-house attorneys, independent contractors, advisors, and consultants of such entity, person, or persons.

13.    "Executive Defendants" refers to Peter Cannito and William Read.

14.    "GAAP" means Generally Accepted Accounting Principles.

15.    "GPAC" refers to Genesis Park Acquisition Corporation.

16.    "Inappropriate Conduct" refers to questionable accounting or auditing matters as detailed in the Whistleblower Policy adopted on September 2, 2021.[2]

17.    "Including" is used to emphasize the type of Document requested and does not limit the request in any way.

18.    "Meeting" or "Meetings" refers to the contemporaneous presence of any natural person (including by telephone, Skype, Zoom or any other electronic meeting format) for any purpose, whether or not such presence was by chance or prearranged, and whether or not the meeting was formal or informal or occurred in connection with some other activity. The term "Meeting" also includes presentations and conferences.

19.    "Person" or "persons" includes any natural person, firm, association, organization, partnership, limited partnership, sole proprietorship, trust, corporation, or legal or governmental entity, association, or body.

20.    "Policy" or "Policies" means any rule, procedure, practice, or course of conduct, whether formal or informal, written or unwritten, recorded or unrecorded, that was recognized or followed, explicitly or implicitly.

21.    "Redwire" refers to Redwire Corporation f/k/a Genesis Park Acquisition Corporation and any of its subsidiaries, divisions, or affiliates (foreign and domestic), predecessors, successors, including Old and New Redwire as referred to in the Complaint, and any present and former officers, directors, Employees (as defined herein), agents, representatives,

---

[2] The Whistleblower Policy is available at https://d1io3yog0oux5.cloudfront.net/_1e953fca85d2c2fd0c4b7a009d272fee/redwirespace/db/867/7491/file/Redwire+-+Whistleblower+Policy.pdf

LEAD PLAINTIFF'S SUBOENA TO THIRD
PARTY (PWC) FOR DOCUMENTS                    -4-
3:21-CV-01254-TJC-PDB

members of its Board of Directors, accountants, attorneys, advisors, and all other persons and agents acting or purporting to act on its behalf.

22.     "Refer" or "Relate" or "Referring" or "Relating" means all Documents that explicitly or implicitly, in whole or in part, were received in conjunction with or were generated as a result of, the subject matter of the request, including, but not limited to, all Documents that reflect, record, memorialize, discuss, describe, compare, consider, concern, constitute, embody, evaluate, analyze, review, report on, comment on, impinge upon, or impact the subject matter of the request.

23.     "SEC" means the United States Securities and Exchange Commission and any Employee, agent, representative, or subdivision thereof.

24.     "Senior Management" includes the Executive Defendants as well as any past or present Redwire Employee who directly reports/reported to:

(a)     any of the Executive Defendants; or

(b)     any officer of Redwire, including the Chief Executive Officer, President(s), Chief Financial Officer(s), Chief Operating Officer(s), Chief Information Officer, Chief Technology Officer, Chief Compliance Officer, Chief Accounting Officer and Corporate Controller(s).

25.     "You," "Your," "Yours," "PricewaterhouseCoopers," or "PwC" means PricewaterhouseCoopers LLP, and refers to the audit work performed for Redwire, including any subsidiaries, divisions, or affiliates (foreign and domestic), predecessors, successors, and any present and former officers, directors, Employees (as defined herein), agents, representatives, members of its Board of Directors, accountants, attorneys, advisors, and all other persons, contractors and agents acting or purporting to act on their behalf, individually or collectively.

26.     "Whistleblower Complaint(s)" means the whistleblower complaint(s) relating to accounting or auditing matters, internal controls over financial reporting, "tone at the top," or other related Inappropriate Conduct.

27.     "Workpapers," "Work Papers," or "Working Papers" means all documents prepared in connection with documenting audit procedures, and includes, but is not limited to, audit documentation as described by AU-C 230, *Audit Documentation*, American Institute of Certified Public Accountants (2015).

## INSTRUCTIONS

1.     In responding to these requests, all Documents shall be produced in accordance with Rules 26 and 34 of the Federal Rules of Civil Procedure.

2.     In responding to these requests, You shall produce all responsive Documents that are in Your possession, custody or control. A Document shall be deemed to be within Your control if You have the ability or right to secure the Document or a copy of the Document from another person having possession or custody of the Document.

3.     All Documents responsive to these requests that are stored on Your electronic backup tapes or hard drives shall be produced.

4.     Pursuant to the Federal Rules of Civil Procedure, You are to produce for inspection and copying by Lead Plaintiff original Documents as they are kept in the usual course of business in their original folders, binders, covers, and containers, or facsimile thereof, or You shall organize and label the Documents to correspond to the categories in these requests. With respect to ESI, You are to follow the foregoing instructions and also produce the ESI as described in an ESI Protocol as agreed upon by the parties. If the original Document is not in Your custody, then You are to produce an identical copy thereof, as well as any nonidentical copies that differ for any reason (including, without limitation, the making of notes thereon) from the original or from the other copies produced.

5.     These requests are specifically intended to encompass any data or information maintained in any form of computer memory or on computer hard drives or diskettes, including any word processing or spreadsheet programs or electronic mail systems, or in any form of electronic or computer-related storage, whether or not You currently have "hard copy" printouts of the same.

6.    If You claim any form of privilege or any other objection, whether based on statute, common law, or otherwise, as a ground for not producing any requested Document, You shall furnish a list identifying each Document for which the privilege or other objection is claimed together with the following information:

(a)    the privilege or grounds for withholding being asserted;

(b)    the date of the Document;

(c)    the author and recipients of the Documents, and whether they are attorneys;

(d)    a description of the subject of the Document and its nature (e.g., letter, memorandum, tape, etc.);

(e)    if a portion of any Document responsive to these requests is withheld under claim of privilege, any non-privileged portion of such Document must be produced with the portion claimed to be privileged redacted;

(f)    You are to produce each Document requested herein in its entirety, without deletion or excision (except as redacted for privilege), regardless of whether You consider the entire Document to be relevant or responsive to the requests. All Documents must be produced with all attachments and enclosures, and in their original folder, binder, or other cover or container, regardless of whether You consider the entire Document to be relevant or responsive to the request. Whenever a Document or group of Documents is removed from a file folder, binder, file drawer, file box, notebook, or other cover or container, a copy of the label of such cover or other container must be attached to the Document or group of Documents;

(g)    The singular of any term includes the plural, and the disjunctive shall include the conjunctive, and vice versa;

(h)    If in responding to these requests You can claim any ambiguity in interpreting a Document request or a Definition or Instruction applicable thereto, such claim shall not be utilized by You as a basis for refusing to produce responsive Documents, but there shall be set forth as part of Your response the language deemed to be ambiguous, and the interpretation chosen or used in responding to the request;

(i)    With respect to any category of Documents, if the production of which You contend is in some way burdensome or oppressive, state the specific reason for that objection;

(j)    All requests shall be deemed continuing and ongoing, and You are required to supplement Your responses with new or newly discovered material in accordance with Rule 26(e) of the Federal Rules of Civil Procedure.

## RELEVANT TIME PERIOD

Unless otherwise stated, the relevant period for these Requests is from January 1, 2020, to the present. The requests seek the production of all Documents, whenever prepared, that concern that period.

## DOCUMENTS REQUESTED

**REQUEST FOR PRODUCTION NO. 1:**

All Documents provided to You or created by You in connection with Your work for Redwire concerning Redwire's postponement of the release of its Q3 2021 earnings as publicly disclosed on November 10, 2021 (*see* Complaint ¶ 70), including, but not limited to, Workpapers or other Documents concerning any Whistleblower Complaint.

**REQUEST FOR PRODUCTION NO. 2:**

All Documents provided to You or created by You in connection with Your work for Redwire concerning any internal or external investigation into the allegations set forth in any Whistleblower Complaint, including all Workpapers, interview transcripts or notes, and reports of findings and conclusions.

**REQUEST FOR PRODUCTION NO. 3:**

All Documents provided to You or created by You in connection with Your work for Redwire concerning Redwire's internal control over financial reporting and disclosure controls and procedures, including all Workpapers or other Documents related to any steps taken by PwC to address Redwire's internal control over financial reporting and disclosure controls and procedures.

**REQUEST FOR PRODUCTION NO. 4:**

All Documents provided to You or created by You in connection with Your work for Redwire concerning Redwire's Remediation Plans, as described in Redwire's April 1, 2022 Form 10-Q for the period ended September 30, 2021 and April 11, 2022 Form 10-K for the year ended December 31, 2021  (*see* Complaint ¶ 78), including all Workpapers or other Documents related to any steps taken by PwC to design and develop the Remediation Plans.

**REQUEST FOR PRODUCTION NO. 5:**

All Documents provided to You or created by You in connection with Your work for Redwire relating to Redwire's Code of Ethics adopted on November 23, 2020 and attached as Exhibit 14 to the Annual Report on Form 10-K for the period ending December 31, 2020, and Redwire's revised Code of Conduct and Ethics adopted on September 2, 2021 (*see* Complaint ¶¶ 49, 64-65).

**REQUEST FOR PRODUCTION NO. 6:**

All Documents provided to You or created by You in connection with Your work for Redwire relating to Redwire's Whistleblower Policy adopted on September 2, 2021 (*see* Complaint ¶¶ 66-67).

**REQUEST FOR PRODUCTION NO. 7:**

All Documents provided to You or created by You in connection with Your work for Redwire relating to Redwire's statements regarding "material weaknesses" in Redwire's internal control over financial reporting, as described in Redwire's Registration Statement filed on Form S-4 with the SEC on May 12, 2021 and July 6, 2021, Amended Registration Statement filed on Forms S-4/A and pursuant to Rule 424(b)(3) on August 5, 2021, Definitive Prospectus filed pursuant to Rule 424(b)(3) on August 11, 2021, Registration Statement filed on Form S-1 with the SEC on September 23, 2021, Form 10-Q filed on April 1, 2022 for the period ended September 30, 2021, and Form 10-K filed on April 11, 2022 for the period ended December 31, 2021 (*see e.g.,* Complaint ¶¶ 52, 54, 59-60, 100) including:

    a. "[A]n insufficient complement of resources with an appropriate level of accounting knowledge, experience and training commensurate with our structure and financial

reporting requirements to appropriately analyze, record and disclose accounting matters timely and accurately, and establish effective processes and internal controls. The limited personnel resulted in an inability to consistently establish appropriate authorities and responsibilities in pursuit of financial reporting objectives, as demonstrated by, among other things, insufficient segregation of duties in our finance and accounting functions."

b. The failure to "design and maintain an effective risk assessment process at a precise enough level to identify new and evolving risks of material misstatement in the consolidated financial statements. Specifically, changes to existing controls or the implementation of new controls have not been sufficient to respond to changes to the risks of material misstatement to financial reporting."

c. The failure to "design and maintain formal accounting policies, procedures and controls to achieve complete, accurate and timely financial accounting, reporting and disclosures, including controls over the preparation and review of business performance reviews, account reconciliations, journal entries and contract estimates used in determining the recognition of revenue."

d. The failure to "design and maintain effective controls to address the identification of and accounting for certain non-routine, unusual or complex transactions, including the proper application of U.S. GAAP to such transactions. Specifically, we did not design and maintain effective controls to account for purchase business combinations, including the appropriate review of the assumptions, data and models used in the forecasted cash flows, used to determine the fair value of the acquired assets and liabilities."

**REQUEST FOR PRODUCTION NO. 8:**

All Documents provided to You or created by You in connection with Your work for Redwire relating to Redwire's statements regarding measures to remediate the "material weaknesses" in Redwire's internal control over financial reporting, as described in Redwire's Registration Statement filed on Form S-4 with the SEC on May 12, 2021 and July 6, 2021, Amended Registration Statement filed on Forms S-4/A and pursuant to Rule 424(b)(3) on August 5, 2021, Definitive Prospectus filed pursuant to Rule 424(b)(3) on August 11, 2021, and Registration Statement filed on Form S-1 with the SEC on September 23, 2021 (*see e.g.,* Complaint ¶¶ 52, 54, 59-60, 100-101) including:

a. "We are in the process of implementing measures designed to improve our internal control over financial reporting and remediate the deficiencies that led to the material weaknesses, including hiring additional finance and accounting personnel, designing and implementing new control activities, and enhancing existing control activities."

b. "We are in the process of designing and implementing additional review procedures within our accounting and finance department to provide more robust and comprehensive internal control over financial reporting that address the relevant financial statement assertions and risks of material misstatement within our business processes, including implementing a comprehensive close process checklist with additional layers of reviews as well as controls

around non-routine, unusual or complex transactions, including controls over the accounting for purchase business combinations."

c.  "We will continue to document our processes and procedures, including accounting policies, across the Company to ensure consistent application including controls over the preparation and review of business performance reviews, account reconciliations, journal entries and contract estimates used in determining the recognition of revenue."

d.  "We are working to remediate the material weaknesses as efficiently and effectively as possible and expect full remediation will likely go beyond December 31, 2021. At this time, we cannot provide an estimate of costs expected to be incurred in connection with implementing this remediation plan; however, these remediation measures might be time consuming, will result in the Company incurring additional costs, and will place additional demands on our financial and operational resources."

e.  "If we are unable to successfully remediate our existing or any future material weaknesses or other deficiencies in our internal control over financial reporting, the accuracy and timing of our financial reporting may be adversely affected; loss of status as an emerging growth company, investors may lose confidence in our financial reporting; we could become subject to litigation or investigations by the NYSE, the SEC or other regulatory authorities."

**REQUEST FOR PRODUCTION NO. 9:**

All Documents provided to You or created by You in connection with Your work for Redwire relating to Redwire's statements regarding "material weaknesses" in Redwire's internal control over financial reporting and remediation efforts to address these weaknesses, as described in Redwire's April 1, 2022 Form 10-Q for the period ended September 30, 2021 and April 11, 2022, Form 10-K for the period ended December 31, 2021 (*see, e.g.,* Complaint ¶¶ 77-80), including:

a.  "[D]isclosure controls and procedures were not effective as of [September 30, 2021/ December 31, 2021] due to the [] material weaknesses in internal control over financial reporting."

b.  "We did not maintain an effective control environment, as certain members of senior management failed to consistently message and set certain aspects of an appropriate tone at the top. Specifically, certain members of senior management failed to reinforce the need for compliance with certain of the Company's accounting and finance policies and procedures, including reinforcement of appropriate communication."

c.  "The material weakness related to certain aspects of tone at the top did not result in a misstatement to the consolidated financial statements for either the Successor or Predecessor periods."

d.  Statements regarding specific steps to "implement[] measures designed to improve our internal control over financial reporting and remediate deficiencies that led to material weaknesses," as detailed in the "Remediation Plans" section of the Form 10-Q and Form 10-K.

e.  "We are working to remediate the material weaknesses as efficiently and effectively as possible and expect full remediation will likely go beyond December 31, 2022. At this time, we cannot provide an estimate of costs expected to be incurred in connection with implementing this remediation plan; however, these remediation measures will be time consuming, will result in the Company incurring additional costs, and will place additional demands on our financial and operational resources."

f.  If we are unable to successfully remediate our existing or any future material weaknesses in our internal control over financial reporting, the accuracy and timing of our financial reporting may be adversely affected; investors may lose confidence in our financial reporting; we could become subject to litigation or investigations by the New York Stock Exchange ("NYSE"), the SEC or other regulatory authorities."

**REQUEST FOR PRODUCTION NO. 10:**

All Documents provided to You or created by You in connection with Your work for Redwire relating to following statements in Redwire's April 11, 2022 Form 10-K for the period ended December 31, 2021 (*see, e.g.,* Complaint ¶¶ 79-80):

a.  "This Annual Report on Form 10-K does not include a report of management's assessment regarding our internal control over financial reporting (as defined in Rule 13a-15(f) and 15d-15(f) under the Exchange Act), or an attestation report of our independent registered public accounting firm, as allowed by the SEC for reverse acquisitions between an issuer and a private operating company when it is not possible to conduct an assessment of the private operating company's internal control over financial reporting in the period between the consummation date of the reverse acquisition and the date of management's assessment of internal control over financial reporting (pursuant to Section 215.02 of the SEC Division of Corporation Finance's Regulation S-K Compliance & Disclosure Interpretations)."

b.  "As discussed elsewhere in this Annual Report on Form 10-K, we completed the Merger on September 2, 2021. Prior to the Merger, we were a special purpose acquisition company formed for the purpose of effecting a merger, capital stock exchange, asset acquisition, stock purchase, reorganization or other similar business combination with one or more operating businesses. As a result, previously existing internal controls are no longer applicable or comprehensive enough as of the assessment date as our operations prior to the Merger were insignificant compared to those of the consolidated entity post-Merger. The design of internal controls over financial reporting for the Company post-Merger has required and will continue to require significant time and resources from management and other personnel. As a result, management was unable, without incurring unreasonable effort or expense to conduct an assessment of our internal control over financial reporting as of December 31, 2021."

**REQUEST FOR PRODUCTION NO. 11:**

All Documents provided to You or created by You in connection with Your work for Redwire relating to the "material audit adjustments" resulting from the "material weaknesses" in Redwire's internal control over financial reporting, as described in Redwire's Registration Statement filed on Form S-4 with the SEC on May 12, 2021 and July 6, 2021, Amended Registration Statement filed on Forms S-4/A and pursuant to Rule 424(b)(3) on August 5, 2021, Definitive Prospectus filed pursuant to Rule 424(b)(3) on August 11, 2021, Registration Statement filed on Form S-1 with the SEC on September 23, 2021, Form 10-Q filed on April 1, 2022 for the period ended September 30, 2021 filed, and Form 10-K filed on April 11, 2022 for the period ended December 31, 2021 (*see e.g.,* Complaint ¶ 100):

   a. "[M]aterial audit adjustments to substantially all accounts and disclosures in the Successor consolidated financial statements as of December 31, 2020 and for the period from February 10, 2020 to December 31, 2020[.]"

   b. "[M]aterial audit adjustments to substantially all accounts and disclosures in . . . the Predecessor consolidated financial statements for the period from January 1, 2020 to June 21, 2020 as of and for the year ended December 31, 2019."

**REQUEST FOR PRODUCTION NO. 12:**

All Documents provided to You or created by You in connection with Your work for Redwire relating to any adjustments to accounts and disclosures in:

   a. Redwire's consolidated financial statements for the year ended December 31, 2021, as set forth in Redwire's Form 10-K for the year ended December 31, 2021;

   b. Redwire's consolidated financial statements as of September 30, 2021 and for the period nine months ended to September 30, 2021, as set forth in Redwire's Form 10-Q for the period ended September 30, 2021.

**REQUEST FOR PRODUCTION NO. 13:**

All Documents provided to You or created by You in connection with Your work for Redwire relating to Redwire's decision to "transition [William Read] from his role as Chief Financial Officer" and replacing him with the head of the Board of Directors' Audit Committee,

as described in Redwire's June 1, 2022, announcement (*see, e.g.,* Complaint ¶ 81), including the separation agreement Read entered into with Redwire.

**REQUEST FOR PRODUCTION NO. 14:**

All Documents provided to You or created by You in connection with Your work for Redwire relating to any disciplinary action(s), including Employee termination, concerning Redwire's internal controls, accounting practices, "tone at the top," and/or financial reporting compliance during the Relevant Time Period, including all Documents relating to the termination, resignation, or departure of William Read.

**REQUEST FOR PRODUCTION NO. 15:**

All internal Communications with PwC personnel, including internal experts, Concerning Redwire's internal controls over financial reporting.

**REQUEST FOR PRODUCTION NO. 16:**

All minutes, notes, transcripts, recordings, presentations, or other records of any Meetings between You and Redwire (including but not limited to Redwire's Board, Audit Committee, or Senior Management team).

**REQUEST FOR PRODUCTION NO. 17:**

All Documents provided to You or created by You in connection with Your work for Redwire relating to the de-SPAC transaction announced on March 25, 2021 (*see* Complaint ¶ 8).

**REQUEST FOR PRODUCTION NO. 18:**

All Workpapers or other Documents memorializing or describing all procedures performed by PwC with respect to identifying and assessing the risks of material misstatement of the reported financial statements (and PwC's responses to such risks), in connection with PwC's audit of Redwire.

**REQUEST FOR PRODUCTION NO. 19:**

All Workpapers or other Documents concerning PwC's auditor's reports of Redwire, including Your Workpapers documenting all audit steps and procedures performed in the course of auditing the financial statements of Redwire, including but not limited to procedures related to

the amounts of Redwire's: a) revenues; b) inventory; c) cost of goods sold; d) gross profits; e) goodwill; f) purchased intangibles; and g) accounts receivable.

**REQUEST FOR PRODUCTION NO. 20:**

All Workpapers or other Documents concerning any quarterly reviews, annual reviews or other interim procedures performed on Redwire's quarterly and year-end financial statements or results.

**REQUEST FOR PRODUCTION NO. 21:**

All Workpapers or other Documents related to any audit, performance of risk assessment procedures or other review of Redwire's systems of internal controls over financial reporting, as that term is described in AU-C 315.04.[3]  This request specifically includes all work done in connection with the audit of Redwire's financial statements, as well as any quarterly reviews, assessment, audit, or any other procedures undertaken.

**REQUEST FOR PRODUCTION NO. 22:**

All Documents, notes, memoranda, files, transcripts, or other records concerning the conclusions, views, findings, or recommendations—preliminary or final—reached or offered by PwC concerning Redwire during the Relevant Time Period.

**REQUEST FOR PRODUCTION NO. 23:**

To the extent not covered by any other request for production, all Communications with Redwire regarding the subject matters of the foregoing requests.

DATED:  September 1, 2023                    **HAGENS BERMAN SOBOL SHAPIRO LLP**

                                            By: *s/ Reed R. Kathrein*
                                                Reed R. Kathrein (Fla. Bar. No. 262161)
                                            Lucas E. Gilmore (admitted *pro hac vice*)
                                            715 Hearst Avenue, Suite 202
                                            Berkeley, CA 94710
                                            Telephone: (510) 725-3000

---

[3] AU-C Section 315, *Understanding the Entity and Its Environment*, American Institute of Certified Public Accountants (2015).

Facsimile:  (510) 725-3001
Email: reed@hbsslaw.com
Email: lucasg@hbsslaw.com

Steve W. Berman (admitted *pro hac vice*)
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile:  (206) 623-0594
Email: steve@hbsslaw.com

Peter A. Shaeffer (admitted *pro hac vice*)
455 North Cityfront Plaza Drive, Suite 2410
Chicago, IL 60611
Telephone: (708) 628-4949
Facsimile: (708) 628-4950
Email: petersh@hbsslaw.com

*Lead Counsel for Lead Plaintiff*
*Jared Thompson*

Brian Schall (*pro hac vice* forthcoming)
THE SCHALL LAW FIRM
2049 Century Park East, Suite 2460
Los Angeles, CA 90067
Telephone: (424) 303-1964
brian@schallfirm.com

*Additional Counsel for Lead Plaintiff Jared Thompson*

David M. Buckner (Fla. Bar No. 60550)
BUCKNER + MILES
2020 Salzedo Street, Suite 302
Coral Gables, FL 33134
Telephone: (305) 964-8003
Facsimile:  (786) 523-0485
Email: david@bucknermiles.com

*Liaison Counsel for Lead Plaintiff*
*Jared Thompson*

LEAD PLAINTIFF'S SUBOENA TO THIRD
PARTY (PWC) FOR DOCUMENTS                -16-
3:21-CV-01254-TJC-PDB

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | |
|---|---|
| JED LEMEN, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiffs,<br><br>v.<br><br>REDWIRE CORPORATION f/k/a GENESIS PARK ACQUISITION CORP., PETER CANNITO, and WILLIAM READ,<br><br>    Defendants. | Case No.: 3:21-CV-1254-TJC-PDB<br><br>    <u>CLASS ACTION</u><br><br>**STIPULATION ESTABLISHING THE PROTOCOL FOR THE PRODUCTION OF DOCUMENTS AND ELECTRONICALLY STORED INFORMATION ("ESI") IN RESPONSE TO LEAD PLAINTIFF'S FIRST SET OF REQUESTS FOR THE PRODUCTION OF DOCUMENTS AND THIRD-PARTY SUBPOENAS**<br><br>Hon. Timothy J. Corrigan |

Pursuant to the agreement reached between Lead Plaintiff Jared Thompson ("Lead Plaintiff") and Defendants Redwire Corporation f/k/a Genesis Park Acquisition Corporation, Peter Cannito, and William Read (collectively, "Defendants"), the parties stipulate to the following Protocol relating to the Production of Documents and Electronically Stored Information ("ESI") in response to Lead Plaintiff's First Set of Requests for Production of Documents and Third-Party Subpoenas, which binds all parties and their counsel of record in this Action (collectively, the "Parties"). The failure of this

1

Protocol to address any particular issue is without prejudice to any position that a Party may take on that issue.

## I.    PURPOSE

This Stipulated Protocol for Producing Documents and ESI (the "ESI Protocol") will govern the Production of Documents and ESI in response to Lead Plaintiff's First Set of Requests for Production of Documents (the "Requests"), and will serve as a supplement to the Federal Rules of Civil Procedure, this Court's Civil Discovery Handbook,[1] and any other applicable orders and rules.  The Parties further acknowledge their intention that this ESI Protocol be treated and enforced as if it were an order entered by the Court.

The ESI Protocol shall be attached to any subpoena issued in this action, and the Parties shall request that parties responding to any subpoena produce documents or information in accordance with this ESI Protocol.

## II.    PRESERVATION

Defendants understand their preservation obligations under applicable law and agree that quickly following Defendants' responses and objections to the Requests, the parties will meet and confer to attempt to reach an agreement on the following:

---

[1] https://www.flmd.uscourts.gov/civil-discovery-handbook

a.    the relevant period of time for which ESI will be preserved and searched;

b.    the categories of information that have been or shall be preserved in connection with this litigation and/or categories of information necessary to facilitate the parties' negotiations.

b.    a list of the most likely custodians of relevant ESI or, in the alternative, the job descriptions of the most likely custodians;

c.    the number of custodians per party for whom ESI will be preserved and searched;

d.    likely relevant data sources, including meeting and conferring to attempt to agree on any data sources that the parties agree are not reasonably accessible because of undue burden or cost pursuant to Fed. R. Civ. P. 26(b)(2)(B);

e.    whether discovery is limited to certain custodians or data sources in the first instance.

Where disputes arise concerning the production of allegedly inaccessible ESI, the parties shall follow the procedures set forth in the Court's Civil Discovery Handbook.

## III.   SEARCH

3

The parties agree that they will meet and confer in good faith in an attempt to resolve issues relating to the search and collection of relevant ESI in response to the Requests.

## IV.  PHASING

In responding to the Requests, Defendants agree that they will use best efforts to phase ESI production where reasonably necessary, and that they will meet and confer to discuss whether certain categories of information can be prioritized over other categories. Subject to any invocation of attorney-client privilege or work product objections, the parties further agree to meet and confer regarding the sources of the Defendants' document productions and the identification of relevant custodians. Following the initial production, the parties will continue to prioritize the order of document productions in response to the Requests.

## V.  IDENTIFICATION OF RESPONSIVE DOCUMENTS

The parties shall meet and confer in good faith to come to an agreement on the search methods used to identify responsive Documents and ESI in response to the Requests.  Such meet and confers will include any disclosures necessary for Lead Plaintiff to understand and assess the sufficiency of the proposed search or filtering methodology, such as the nature of the processes of the search technology to be employed, including whether such processes employ predictive coding/technology-assisted review, the custodians and data

4

sources and types to which it will and will not be applied, date ranges that may be used to filter documents, file type subjects to be included or excluded from the methodology, search terms proposed to be used (if any), statistical sampling or validation techniques Defendants have used or intend to use to evaluate the sufficiency of the methodology, and whether different search methodologies will be applied to different types or sources of data.  During such discussions, Defendants shall retain the presumptive right and responsibility to manage and control searches of its data files, including the right to propose revisions to search-term methods or advanced-technology procedures in order to make them more accurate and cost-effective, and will disclose those proposed search methods and any revisions.  Nothing in this section shall limit a party's right to seek agreement from the other parties or a court ruling to modify previously agreed-upon search terms or other search parameters at any time prior to the completion of discovery.  The parties will not seek court intervention without first attempting to resolve any disagreements in good faith, based upon all reasonably available information.

    A.    **Search Terms:**

        1.    Where the parties agree that potentially responsive ESI shall be searched through the use of search terms or through predictive coding/technology-assisted review, the parties shall meet and confer to provide reasonable assurances to

Lead Plaintiff that Defendants' search terms and methodology used to apply them or Defendants' predictive coding/technology-assisted review are reasonably calculated to identify responsive Documents and ESI.   Prior to or during such meet and confer, Defendants shall make the disclosures identified above and any other disclosure necessary to facilitate the meet-and-confer efforts. If search terms are employed, Defendants shall also provide search statistics for their search terms methods, including the number of documents in corpus, the total number of documents that hit search terms, the total number of search hits with document families, and the total number of unique documents that hit on each search term.

2.  If, after disclosure of Defendants proposed search method, search parameters, and search terms, and prior to the conduct of any searches, and after a reasonable meet and confer process, Lead Plaintiff believes in good faith that Defendants proposals regarding search, retrieval and production would result in deficiencies in production, Lead Plaintiff may make prompt requests for different or additional search methods, parameters, or search terms, but

6

such requests shall only be made after the parties have met and conferred as to the alleged deficiencies identified by Lead Plaintiff. If the parties cannot resolve their disagreements regarding search term methodologies, they shall promptly bring the dispute to the Court for resolution.

3. If Defendants are aware of responsive documents in their custody and control, such documents shall be reviewed and produced regardless of where such documents are located and whether they contain any of the agreed upon search terms.

**B.** **Technology-Assisted Review**: Defendants shall not use predictive coding/technology-assisted review for the purpose of culling the documents to be reviewed or produced without notifying Lead Plaintiff prior to use and with ample time to meet and confer in good faith regarding a mutually agreeable protocol for the use of such technologies, if any. If the parties cannot resolve their disagreements about technology assisted review methodologies, they shall promptly bring the dispute to the Court for resolution.

**C.** The fact that a Document or ESI is responsive to a search term or identified as responsive by any other technology used to identify potentially responsive Documents and ESI shall not prevent Defendants from withholding such Document or ESI from production on the grounds that it is not responsive

or otherwise subject to production under the applicable discovery rules, or that it is protected from disclosure by applicable privilege or work-product protection.

## VI.    PRODUCTION

### A.    Each production will have four main components

1.    A directory titled "images" containing images of every page of every Document in the production, Bates-numbered sequentially.

2.    A directory titled "natives" containing Native Files for a subset of the Documents, each file named with the Bates number of the first page of the Document it represents with no additional text beyond this, and with the same extension as the original Native File type of the Document.

3.    A directory titled "text" containing OCR or Extracted Text files, one file per Document, each file named with the Bates number of the first page of the Document it represents with no additional text beyond this, followed by ".txt" suffix.

4.    A directory titled "data" containing image and metadata Load Files that contain the Bates ranges and Metadata for each Document.

### B.    Production of Documents Originating as Paper

8

The following production specifications apply to Documents that existed in paper format prior to production ("hard copy documents").  Documents that originated as paper but which were scanned and maintained electronically by a party prior to inception of this Action shall be produced in accordance with Part VII(B) of this ESI Protocol.

Defendants agree to produce hard copy documents in the formats described below, to the extent reasonably practicable and not unduly burdensome.  These formats are deemed to be productions in reasonably usable form.  If Defendants intend to produce any hard copy documents in any manner other than as specified herein, Defendants shall notify the requesting party of their intent, including production format (e.g., produced as paper, made available for inspection).  If the proposed production format is not acceptable to Lead Plaintiff, the parties shall meet and confer to determine a mutually acceptable producing format for such Documents.

    1.    **PDFs**. Documents shall be produced as multi-page, color PDFs.  Bates numbers, confidentiality designations (in accordance with the Stipulation Establishing the Protocol for Disclosure of Protected Material Produced in Discovery (the "Confidentiality Stipulation") agreed to by the parties in this case), and redactions (to the extent they are necessary)

9

shall be burned into the image. PDF image files shall be provided in an "Images" folder.

2. **Unitizing Documents**. In scanning paper documents, distinct documents shall not be merged into a single record, and single documents shall not be split into multiple records (*i.e.*, paper documents shall be logically unitized). For example, documents stored in a binder, folder, or similar container (each a "container") shall be produced in the same order as they appear in the container. The front cover of the container shall be produced immediately before the first document in the container. The back cover of the container shall be produced immediately after the last document in the container. Defendants will undertake reasonable efforts to, or have their vendors, logically unitize documents correctly, and will commit to address situations of improperly unitized documents.

3. **Parent-Child Relationship**. Parent-child relationships within a document family (the association between an attachment and its parent document) shall be preserved. The child-document(s) shall be consecutively produced immediately after the parent-document. Each document

shall be produced with the production number for the first and last page of that document in the "Begin Bates" and "End Bates" fields of the data load file, respectively, and with the "BegAttach" and "EndAttach" fields listing the production number for the first and last page in the document family.

4. **OCR.** Documents that exist in paper or hard copy format shall be run through optical character recognition ("OCR") software, and the full text shall be provided on a document-level in an appropriately formatted text file (.txt) that is named to match the first bates number of the document. Text files shall be provided in a "Text" folder. Text must be encoded in UTF-8. Pages must be separated by form feed character (decimal 12, hex 0xC). To the extent that a document is redacted, the text files shall not contain the text on the redacted portions.

5. **Fixed Notes.** Paper Documents that contain fixed notes shall be scanned with the notes affixed, if it can be done so in a manner so as not to obstruct other content on the document. If the content of the document is obscured by the affixed notes, the document and notes shall be scanned first

11

as the document was stored in the ordinary course of business, and then separately.

6. **Unique IDs.** Each image shall have a unique filename, which corresponds to the Bates number of that page. The filename shall not contain any blank spaces and shall be zero-padded (*e.g.*, ABC-0000001), taking into consideration the estimated number of pages to be produced. If a Bates number or set of bates numbers is skipped in a production, the producing party will so note in a cover letter or production log accompanying the production. Bates numbers will be unique across the entire production and prefixes will be consistent across all documents Defendants produce in the Action.

7. **Data Load Files.** Documents shall be provided with an Opticon Cross-Reference File and Concordance data load file using standard Concordance delimiters:

   a) Field Separator: ASCII character 20 ("¶");

   b) Quote: ASCII character 254 ("þ"); and

   c) New Line: ASCII character 174 ("®").

Concordance-compatible image and data load files shall be provided in a "Data" folder.

12

8. **Metadata**. Appendix 1 sets forth the minimum metadata fields that must be produced.  To the extent that metadata does not exist, is not reasonably accessible or available or would be unduly burdensome to collect, nothing in the ESI Protocol shall require Defendants to extract, capture, collect or produce such data.

## C.    Production of ESI

Defendants agree to produce in the formats described below.  These formats are deemed to be productions in reasonably usable form.  If any party contends that particular Documents or ESI warrant a different format, the Parties will meet and confer to determine a mutually acceptable production for such Documents.

1. **PDFs**. Documents shall be produced as multi-page, color PDFs.  The document's original orientation shall be maintained (i.e., portrait to portrait and landscape to landscape). Bates numbers, confidentiality designations (in accordance with the Confidentiality Stipulation governing the case), and redactions (to the extent they are necessary) shall be burned into the image.  PDF image files shall be provided in and "Images" folder.

2.  **Extracted Text Files**. For native files containing embedded text, **t**he full text of native files shall be extracted directly from the native file (not OCR) and shall be delivered in an appropriately formatted text file (.txt) that is named to match the first bates number of the document.  Text files shall be provided in a "Text" folder.  To the extent that a document is redacted, the document shall undergo OCR after the text has been redacted in order to remove redacted text.

3.  **Unique IDs**. Each image shall have a unique filename, which corresponds to the Bates number of that page.  The filename shall not contain any blank spaces and shall be zero-padded (*e.g.*, ABC-0000001), taking into consideration the estimated number of pages to be produced.  If a Bates number or set of Bates numbers is skipped in a production, the producing party will so note in a cover letter or production log accompanying the production.  Bates numbers will be unique across the entire production and prefixes will be consistent across all documents a party produces in the litigation.

4. **Parent-Child Relationship**. The relationship between attachments, enclosures, embedded files, and/or exhibits to any parent document shall be preserved. The child-document shall be consecutively produced immediately after the parent-document. Each document shall be produced with the production number for the first and last page of that document in the "Begin Bates" and "End Bates" fields of the data load file and with the "BegAttach" and "EndAttach" fields listing the production number for the first and last page in the document family.

5. **Native Format**.

   a) All documents produced in native format shall include the relative files path of the native files in the document production in the "NativePath" metadata field.

   b) All spreadsheets (.XLS, .XLSM, or similar file formats) shall be produced in native format, including spreadsheets containing redactions.

   c) Non-redacted presentation files (.PPT or similar file formats) shall be provided in Native Format, in addition to PDF or TIFF/JPG images. The native file

15

will be named as the first Bates number of the respective document. The corresponding load file shall include native file link information for each native file that is produced. Redacted presentation files may be processed to PDF format showing comments, hidden slides, speakers' notes and similar data. In addition to PDF images, non-redacted native files will be provided in native format.

d) Responsive audio and/or video data may be stored in audio or video recordings, voicemail text messaging, and related/similar technologies, including, but not limited to, communications transmitted over proprietary business communications platforms. Defendants will make best efforts to ensure care is taken for collection and production of any responsive audio and/or video data, and to preserve any Metadata that may be associated with those items.

e) Microsoft Word documents (.DOC, .DOCX, or substantially similar non-Microsoft file formats) shall be produced in multi-page, color PDF format for each Document, containing all images for that document,

16

and shall be imaged in a manner that captures tracked changes and comments. To the extent Lead Plaintiff believes the converted image format distorts, omits, or causes information to be improperly displayed, Lead Plaintiff may request the Document in Native Format and Defendants shall meet and confer to attempt to resolve the problem(s).

f) Lead Plaintiff may ask for certain other documents and/or databases initially produced in PDF format to be produced in their native format in the event that the PDF format is not reasonably usable or has degraded usability or searchability. Lead Plaintiff shall identify the documents by their Bates numbers and the documents shall be produced in their unaltered native format.

g) Where native files are produced in lieu of PDF images, each native file will be assigned a unique Bates number. Defendants will produce a placeholder (a single-page PDF slip sheet indicating that the native item was produced) along with the file itself in native format. The placeholder will be branded with the

17

production number in the lower right-hand corner and the phrase "PRODUCED IN NATIVE FORMAT" branded in the center of the page. Defendants will also brand any confidentiality or similar endorsements in the lower left-hand corner of the placeholder.

h) <u>Request for Native Files</u>. Other than as specifically set forth above, a producing party need not produce documents in native format. If good cause exists for Lead Plaintiff to request production of certain documents in native format, the requesting party may request production in native format by providing (1) a list of the Bates numbers of documents it requests to be produced in native format; and (2) an explanation of the need for reviewing such documents in native format. Defendants shall not unreasonably deny such requests. Defendants shall produce an overlay to ensure that the "NativePath" entry in the data load file indicates the relative file path to each Native File in such production, and all extracted text and applicable metadata fields. Documents and overlays shall be produced within 20 days of the request unless

18

the request is reasonably denied or the parties agree to a different time.

6. **Track Changes and Comments.** To the extent that a document contains track changes or comments, the document shall be imaged showing tracked changes and comments.

7. **Password Protected Files.** Defendants shall produce passwords for any password-protected files to the extent the passwords are reasonably available.

8. **Embedded Documents.** Embedded ESI documents (*e.g.*, a spreadsheet embedded within a word processing document) will be extracted, produced as independent document records, and related back to the respective top level parent document (*e.g.*, standalone file, email message, etc.) via the "BegAttach" and "EndAttach" fields referenced in Appendix 1. Related documents will be produced within a continuous Bates range.

9. **Data Load Files.** Documents shall be provided with an Opticon Cross-Reference File and Concordance data load file using standard Concordance delimiters:

    a) Field Separator: ASCII character 20 ("¶");

b) Quote: ASCII character 254 ("þ"); and

c) New Line: ASCII character 174 ("®").

Concordance-compatible image and data load files shall be provided in a "Data" folder.

10. **Metadata.** Appendix 1 sets forth the minimum metadata fields that must be produced to the extent that metadata exists for a particular document.   To the extent that metadata does not exist, is not reasonably accessible or available, or would be unduly burdensome to collect, nothing in this ESI Protocol shall require Defendants to extract, capture, collect, or produce such data.

11. **Deduplication.** Documents may be deduplicated (based on MD5 or SHA 1 hash values) at the family-group level provided that the producing party identifies the additional custodians in the "All Custodians" field, and the file paths of all duplicates provided in the "All Paths" field. Attachments shall not be eliminated as duplicates for purposes of production, unless all documents within a family, such as the parent e-mail and all attachments, are also exact duplicates.

D.   **Production of Databases and Other Structured Data**

If a database or other source of structured data contains responsive information, the parties shall meet and confer to determine a mutually agreeable format for producing the database or other structured data. Before meeting and conferring, Defendants will provide the following information about the database or structured data to the requesting party:

- Database Name;
- Type of Database;
- Software Platform;
- Software Version;
- Business Purpose;
- Users;
- Size in Records;
- Size in Gigabytes (GB);
- A List of Standard Reports;
- Identity of the Database Owner or Administrator;
- Field List; and
- Field Definitions (including field type, size, and use).

**E.    Production of Audio and Video Recordings**

If audio and/or video recordings are responsive, the parties shall meet and confer to determine a mutually agreeable format for producing the audio and/or video recording.  Before meeting and conferring, Defendants will

21

provide the following information about the responsive audio and/or video recording to the requesting party:

- Date of the recording;

- Duration of the recording;

- Names of individuals who were recorded;

- Event being recorded;

- Whether minutes for the even being recorded were prepared; and

- Whether Certified Legal Transcription was prepared by a Certified Court Reporter.

**F.    Production of Transcripts**

If deposition or other transcripts are responsive, the parties shall meet and confer to determine a mutually agreeable format for producing the transcripts.   Before meeting and conferring, Defendants will provide the following information about the responsive transcripts to the requesting party:

- Date of the depositions, trial, hearing or other event (each an "event");

- Duration of the event;

- Name of the individual(s) who was/were recorded;

- The forms in which the transcripts exist such as PDF, text file, livenote or e-transcript format (.lef, .ptx, or .ptz); and

22

- List of exhibits associated with the transcript and/or event.

**G.    Processing of Third-Party Documents**

1.    A party that issues a non-party subpoena ("Issuing Party") shall include a copy of this ESI Protocol as an attachment to the subpoena and request that the non-party produce documents in accordance with the specifications set forth herein.

2.    The Issuing Party may request that the non-party simultaneously produce documents to the Issuing Party and all other parties.  If the non-party produces documents only to the Issuing Party, to the extent practical given the data volume, productions by a non-party shall be produced by the Issuing Party to all other parties within fourteen days.

**H.    MISCELLANEOUS PROVISIONS**

The following specifications govern the production of all documents in response to the Requests, regardless of source, unless otherwise noted in the ESI Protocol:

1.    **Custodian or Originating Source.** The custodian or originating source shall be identified in the Custodian field of the database load files.  If there is more than one custodian all sources shall be identified in the "All Custodians" field.

23

Documents found in the possession of a natural person (or on a natural person's hardware or storage media) shall be produced in such fashion as to identify the natural person. Documents found in the possession of a department, group, entity, or other common facility (*e.g.*, office, file room, archive, network storage, file share, back-up, hard-drive, etc.) shall be produced in such a fashion as to identify the department, group, entity, or facility.  Defendants shall use a uniform description of a particular custodian across productions.

2. **Foreign Language.** Foreign language text files and metadata shall be delivered with the correct encoding to enable the preservation of the documents' original language.

3. **Dates.** All documents shall be processed so as to show the data and time in Coordinated Universal Time ("UTC"). Dates and times must be concatenated into a single field, with a format of MM/DD/YYYY HH:MM:SS, and must be consistent within any one field. Date delimiters, such as slashes and colons, must be consistent across all fields.

4. **Production Media.** The preferred means of producing documents is via secure FTP or secure file share.  However,

24

documents may also be provided via CD, DVD, flash drive, or hard drive if (a) the size of the production exceeds the size limitations applicable to Defendants' secure FTP or file share or (b) if the interest of preserving the confidentiality of the information produced outweighs the speed and efficiency of producing documents via secure FTP or secure file share. To the extent possible, physical media shall be write protected before it is produced.

5.  **Naming Convention for Production Media.** Whether produced via secure FTP, file share, or physical media, the files produced shall be combined into a compressed file such as .zip, .rar, etc. The compressed file shall be named so as to indicate the producing party, the date of the production, and the sequence of the production (*e.g.*, "Redwire Production 20230601-001"). If the production is made using physical media, the media shall be labeled to include (a) text referencing that it was produced in *Lemen v. Redwire Corporation f/k/a GenesisPark Acquisition Corp., et al.*, No. 3:21-cv-01254-TJC-PDB; (b) the Bates number range of the materials contained on the media; and (c) the filename(s) of

25

the compressed file(s) contained on the media such as the example included above.

6.  **Replacement Productions.** Any replacement production will be transmitted with a cover letter or email to identify the production as a replacement and cross-reference the "Begin Bates" and "End Bates" of the documents being replaced.  If the replacement production is being transmitted by physical media, the media shall include the phrase "Replacement Production."

7.  **Inability to Produce Metadata.** If Defendants are unable to produce metadata for a particular field, they will provide an explanation of that inability with its document production.

8.  **Encrypted Data.**  To the extent data is encrypted before it is produced, Defendants shall contemporaneously transmit the credentials necessary to decrypt the data.

9.  **Non-Waiver**. Nothing in this ESI Protocol shall be interpreted to require disclosure or irrelevant information or relevant information protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity.   The parties do not waive any

26

objections to the production, discoverability, admissibility, or confidentiality of documents.

10. **Confidentiality Stipulation**. Productions in response to the Requests and third-party subpoenas are subject to the Confidentiality Stipulation agreed to by the parties in this Action.

11. **Good Faith Resolution of Disputes**. The parties shall make good faith efforts to comply with and resolve any differences concerning compliance with the ESI Protocol. If Defendants, notwithstanding their good faith efforts, cannot comply with any material aspect of this ESI Protocol or if compliance with such material aspect would be unreasonable, such party shall inform the requesting party in writing a reasonable time before the date of production as to why compliance with the ESI Protocol is impossible or unreasonable. No party may seek relief from the Court concerning compliance with the ESI Protocol unless it has conferred in good faith with the affected parties.

## VII. ASSERTIONS OF PRIVILEGE

### A. Detailed Privilege Logs

27

To the extent privilege is not asserted categorically, privilege logs shall be provided in Excel format and contain the following information:

1.    a sequential number associated with each Privilege Log record:

2.    if applicable, the date the document was created, the date it was last modified, and the date it was sent;

3.    the Bates numbers of documents redacted, and a reference number for each row containing the information of documents withheld in their entirety;

4.    to the extent reasonably available, the identity of all persons who sent, authored, signed, or otherwise prepared the documents and identification of which of them are attorneys;

5.    to the extent reasonably available, the identity of all persons designated as addressees or copyees along with other information about them necessary for the requesting party to assess the privilege (*e.g.*, title, department, job function, etc.) and identification of which of them are attorneys;

6.    the title or subject of a document to the extent the title does not reveal privileged or work-product protected information;

7.    a description of the contents of the document that, without revealing information itself privileged or protected, is

28

sufficient to understand the subject matter of the document and the basis of the claim of privilege or immunity;

8.      the type or nature of the privilege asserted (*i.e.*, attorney-client privilege; work-product doctrine).

**B.      Logging of Document Families**

Documents shall be logged individually and shall not be logged on the family level. For document families in which fewer than all of the documents are withheld or redacted as privileged or protected, the privilege log entry for the withheld document(s) shall identify the Bates number of the produced family member.

The following documents presumptively need not be included on a privilege log:

1.      Communications exclusively between a party and its outside counsel regarding this action; and

2.      Work product created by outside counsel, or by an agent of outside counsel other than a party, regarding this action and created after commencement of this action.

In the interest of the parties' time, and to minimize litigation costs, the parties will negotiate in good faith the exclusion of categories of documents from the privilege log that while technically responsive and privileged, are relatively incidental to the issue in the litigation, as well as categories of

29

documents that a producing party may log categorically rather than document-by-document, the reasons therefore, and proposed log format and categories proposed.

### C.    Categorical Logging of Privileged Documents.

Nothing with regard to the stipulation above regarding the proper formatting and information for a detailed privilege log shall preclude Defendants from asserting that certain subsets of documents responsive to the Requests are categorically privileged, such that logging of individually responsive documents is unnecessary.  To the extent that Defendants make any categorical assertion of privilege, Defendants shall produce a separately titled log, which shall specifically describe the category of documents withheld, the privilege that is asserted, and provide an explanation as to the basis for categorical treatment.  Lead Plaintiff retains all rights and ability to seek to compel the production of a detailed privilege log following a conferral by the Parties.

## VIII.  LIMITED 28 U.S.C. § 1920 WAIVER

In consideration of the parties' agreed upon Protocol, Defendants agree not to seek the reimbursement of any or all of their costs relating to the production, storage, and maintenance of its ESI. Nothing herein constitutes an acknowledgement (implicit or otherwise) by any party that ESI-related costs are taxable under 28 U.S.C. § 1920.

## IX. MODIFICATION

### A. Modification by Agreement

Any practice or procedure set forth herein may be varied by agreement between the parties, which will be confirmed in writing, where such variance is deemed appropriate to facilitate the timely and economical exchange of Documents and ESI. Before seeking Court intervention, the parties shall meet and confer in good faith regarding any modification.

### B. Modification by Court Order

Nothing in this Protocol waives the right of any party to petition the Court for an Order modifying the terms upon good cause shown, provided, however, that counsel for such party must first meet and confer with the counsel for the opposing party and the parties shall use reasonable best efforts to negotiate an exception from or modification to this Protocol prior to seeking relief from the Court.

DATED: August 31, 2023

By: /s/ _____
Reed R. Kathrein (Fla. Bar. No. 262161)
Lucas E. Gilmore (admitted *pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
reed@hbsslaw.com
lucasg@hbsslaw.com

By: /s/ _____
Alfred J. Bennington, Jr., Esq.
Florida Bar No. 0404985
Glennys Ortega Rubin, Esq.
Florida Bar No. 556361
Christian M. Leger, Esq.
Florida Bar No. 100562
Shutts & Bowen LLP
300 South Orange Avenue, Suite 1600
Orlando, Florida 32801
Telephone: (407) 835-6755

31

Steve W. Berman (admitted *pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile:  (206) 623-0594
steve@hbsslaw.com

Peter A. Shaeffer (*admitted* pro hac vice)
455 North Cityfront Plaza Drive,
Suite 2410
Chicago, IL 60611
Telephone: (708) 628-4949
Facsimile:  (708) 628-4950
petersh@hbsslaw.com

*Lead Counsel for Lead Plaintiff Jared Thompson*

Brian Schall (*pro hac vice* forthcoming)
THE SCHALL LAW FIRM
2049 Century Park East, Suite 2460
Los Angeles, CA 90067
Telephone: (424) 303-1964
brian@schallfirm.com

*Additional Counsel for Lead Plaintiff Jared Thompson*

David M. Buckner (Fla. Bar No. 60550)
BUCKNER + MILES
2020 Salzedo Street, Suite 302
Coral Gables, FL 33134
Telephone: (305) 964-8003
Facsimile:  (786) 523-0485
Email: david@bucknermiles.com
*Liaison Counsel for Lead Plaintiff Jared Thompson*

Facsimile: (407) 849-7255
bbennington@shutts.com
grubin@shutts.com
cleger@shutts.com

and

H. Timothy Gillis, Esq.
Florida Bar No. 0133876
Jeffrey S. York, Esq.
Florida Bar No.: 987069
Shutts & Bowen LLP
1000 Park Street, Suite 800
Jacksonville, FL  32204
Telephone: (904) 899-9950
tgillis@shutts.com
jyork@shutts.com

*Counsel for Defendants Redwire Corporation f/k/a Genesis Park Acquisition Corp., Peter Cannito, and William Read*

32

**Appendix 1**

**ESI Metadata and Coding Fields**

A.   For scanned hard copy documents, Defendants will provide the Metadata fields below.

B.

| FIELD NAME | FIELD DESCRIPTION |
|---|---|
| Begin Bates | The production Bates number associated with the first page of a Document. |
| End Bates | The production Bates number associated with the last page of a Document. |
| BeginFamily | Begin Bates number of first page of the parent Document of family of attachments. |
| EndFamily | End Bates number of the last page of last attachment to a family of Documents. |
| Pages | Total number of pages in the Document. |
| TextPath | Link to text file for the document. |
| Placeholder | Identifies a Document has a placeholder image. |
| File Extension | The extension of the file. |
| Custodian | Identification of the custodian(s) from whom the file was sourced. |
| All Custodians | Identification of all custodians of the document. |
| Confidentiality | Confidentiality designation. |
| Redacted | (Y/N) field that identifies whether the document is redacted. |
| Production Volume | Production volume number (e.g., VOL001, VOL002, etc.). |
| Producing Party | Name of party producing the Document. |

C.   For ESI and documents that were originally stored in electronic format, all fields below should be provided, to the extent reasonably feasible. Unless otherwise agreed by the parties, the field-naming conventions shall be as stated below, and shall be consistently applied across all productions:

33

| FIELD NAME | FIELD DESCRIPTION |
|---|---|
| Begin Bates | The production Bates number associated with the first page of a Document. |
| End Bates | The production Bates number associated with the last page of a Document. |
| BegAttach | Beginning Bates number of the attached documents |
| EndAttach | Ending Bates number of the attached documents |
| BeginFamily | Begin Bates number of the first page of parent Document of family of attachments. |
| EndFamily | End Bates number of the last page of last attachment to a family of Documents. |
| AttachCount | Number of document attachments. |
| AttachNames | Native file names of each individual attachment, separated by semicolons. |
| Custodian | Identification of the custodian(s) from whom the file was sourced. |
| All Custodians | Identification of all custodians who the producing party agreed to produce and where a duplicate of the Document was de-duplicated when processing the documents. |
| File Path | The file path from which the document was collected |
| All Paths | Identification of all file paths for duplicate copies. |
| Author | Author field extracted from the Metadata of a Document or other creator identified for the Document. |
| From | From field extracted from the Metadata of an email message. |
| To | To field extracted from the Metadata of an email message. |
| Cc | Cc field extracted from the Metadata of an email message. |
| Bcc | Bcc field extracted from the Metadata of an email message. |
| Pages | Total number of pages in the Document. |
| Date Received | Datetime received (MM/DD/YYYY HH/MM/SS). |
| Date Sent | Datetime sent (MM/DD/YYYY HH/MM/SS). |
| Date Created | Datetime created (MM/DD/YYYY HH/MM/SS). |

34

| FIELD NAME | FIELD DESCRIPTION |
|---|---|
| Date Modified | Datetime that a Document was last modified (MM/DD/YYYY HH/MM/SS). |
| Last Modified By | Identification of person(s) who last modified a Document. |
| Message Id | Unique Message Id. |
| In Reply To | Message ID of email that instant email is in reply to. |
| Subject | Subject line extracted from an email, e-document or e-attachment. |
| Filename | The full name of the Native File. |
| File Extension | The extension of the file. |
| File Size | The size of the file in bytes. |
| MD5 Hash | The MD5 hash value of a Document. |
| SHA1 Hash | The SHA1 hash value of a Document. |
| Application | Name of the application used to open the file. |
| NativePath | The relative path to the native file for this Document. |
| TextPath | The relative path to the text file for this Document. |
| Redacted | Whether a Document has redactions (Y/N). |
| Placeholder | Whether a Document has a placeholder image (Y/N). |
| Confidentiality | Level of Confidentiality assigned. |
| Track Changes | Document has track changes (Y/N). |
| Hidden Content | Identifies documents with hidden content (i.e. hidden rows, columns, sheets, or slides). |
| Speaker Notes | Document has speaker notes (Y/N). |
| Has Comments | Indicates there are comments in the document. |
| Production Volume | Production volume number (e.g., V001, V002, etc.). |
| Producing Party | Name of party producing the Document. |

ORLDOCS 20838145 1

35