**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

JED LEMEN, Individually and on Behalf of All Others Similarly Situated,

Plaintiffs,

v.

REDWIRE CORPORATION f/k/a GENESIS PARK ACQUISITION CORP., PETER CANNITO, and WILLIAM READ,

Defendants.

Case No.: 3:21-CV-1254-TJC-PDB

CLASS ACTION

**DEFENDANTS' RESPONSE TO LEAD PLAINTIFF'S MOTION FOR DETERMINATION OF PRIVILEGE**

Defendants, REDWIRE CORPORATION f/k/a GENESIS PARK ACQUISITION CORP. ("Redwire"), PETER CANNITO, and WILLIAM READ (collectively, "Defendants"), respond in opposition to Lead Plaintiff JARED THOMPSON's ("Lead Plaintiff") *Motion for Determination of Privilege* (Doc. 91) (the "Motion"). The document at issue contains the work product of Defendants' outside counsel and outside auditor attendant to an audit committee investigation, and, is therefore, protected from disclosure. Lead Plaintiff's Motion misapprehends the nature of the information contained within the at issue document thus the Motion incorrectly applies the principles of the work product doctrine.   The Motion is due to be denied.

1

## I.    BACKGROUND

On November 5, 2021, Redwire received a resignation letter from then-employee Dan Gievers (the "Gievers Letter"), which made allegations as to potential accounting issues at a Redwire business subunit. **Exhibit A** ("Baliff Decl."), ¶ 5. The Gievers Letter was provided to Redwire in ██████ ████████████████████████████████████████████████ ████████████████. *Id.* Redwire, in taking the allegations seriously and demonstrating its commitment to operating ethically and lawfully, immediately notified the Audit Committee of its Board of Directors of the Gievers Letter and its contents. *Id.*, ¶ 6.

The Audit Committee determined that an investigation was needed, and hired King & Spalding LLP ("K&S") to conduct such investigation (the "Investigation"). *Id.*, ¶¶ 7-8. ██████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ██████████████████████████. *Id.*, ¶ 14. The Audit Committee selected Attorney Alec Koch to lead the Investigation, who is co-leader of the K&S Securities Enforcement and Regulation practice and a former Assistant Director in the SEC's Division of Enforcement, with 14 years of experience as an attorney at the SEC. *Id.*, ¶ 8. Redwire also hired KPMG to assist K&S. *Id.* at ¶ 11. The Investigation began within days of the Gievers Letter. *Id.*, ¶¶ 6-8.

Moreover, on November 8, 2021, Redwire notified the SEC of the Gievers Letter. *Id.*, ¶ 10. K&S and KPMG ███████████████████████

████████████████████████████████████████████

███████████, *id.*, ¶ 12, and necessarily developed theories, mental impressions, and other work product during the Investigation.

In order for Redwire's Independent Registered Public Accounting Firm, PricewaterhouseCoopers ("PwC") to prepare its statutorily required report regarding its audit of the financial statements of the company, K&S and KPMG shared details of the privileged Investigation with PwC. *Id.*, ¶ 16. The at-issue memorandum (the "Privileged Memo"), includes summary of information that K&S and KPMG shared with PwC. *Id.* at ¶ 17. PwC inadvertently provided the Privileged Memo in response to Lead Plaintiff's third-party subpoena. Upon discovering the improper nature of the production, Defendants promptly notified Lead Plaintiff of Defendants' clawing back of the Privileged Memo on the basis of work product privilege. (Doc. 91-6).[1]

The Motion seeks a determination of whether the Privileged Memo is protected work product. The Privileged Memo includes summary of ████

---

[1] Defendants were advised by PwC, post notice to Lead Plaintiff of the clawback of the Privileged Memo, that Lead Plaintiff made supplemental inquiry of PwC for documents underlying the Privileged Memo. Setting aside the impropriety of making any use of the Privileged Memo after the clawback, PwC provided two more rounds of documents to Defendants for a privilege review. These additional documents, including the Privileged Memo, have been logged in two privilege logs and the logs provided to Lead Plaintiff.

████████████████████████████████████████████████

████████████████████████████████████████████████

rendering the document privileged. *See* Baliff Decl., ¶¶ 16-17, 20. The Court should deny the attempt to access the attorney work product contained therein.

## II.   ARGUMENT

The Privileged Memo is protected work product prepared by counsel and those assisting counsel in advance of litigation. The Motion; however, misapprehends the nature of the information contained within the Privileged Memo and; therefore, fails to accurately analyze the application of the work product doctrine in proper context.

The Motion spends most of its time dissecting the relationship between PwC and Redwire, concluding that PwC could not create any protected work product. Mot., pp. 1-15. This is misplaced. Defendants do not argue that the Privileged Memo contains *PwC's* work product; rather, Defendants' assert that it memorializes the work product of Defendants' attorneys and those assisting (K&S and KPMG), created in anticipation of litigation. Consequently, much of the Motion's arguments are inapplicable in light of Defendants' actual assertion of privilege, which is: 1) the Privileged Memo contains the protected work product of Defendants' attorneys and those assisting such attorneys; and 2) disclosure of such work product to non-adversary PwC did not waive the privilege.  Thus, the Court should deny the Motion.

4

**A.      The Privileged Memo is Protected Work Product**

### 1.      Legal Standard

"Ordinarily, under the work-product doctrine 'a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative.'" *Johnson v. Gross*, 611 F. App'x 544, 547 (11th Cir. 2015) (quoting Fed. R. Civ. P. 26(b)(3)(A)). "Such 'work product' is reflected in 'interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways.'" *Id.* (quoting *Hickman v. Taylor*, 329 U.S. 495, 511 (1947)). "The party invoking the work-product privilege bears the burden of establishing that the privilege applies." *Id.* at 547.

### 2.      The Privileged Memo Contains Work Product

The Privileged Memo includes reference to information provided by the attorneys conducting the Investigation. *See* Baliff Decl., ¶¶ 16-17, 20. Specifically, the Privileged Memo includes reference to " ██████████ ██████████████████████████████████████████████ ████████████████████████ " *Id.* at ¶ 17. Of course, the Investigation required K&S and KPMG to ██████████████████████████ ██████████████████████████████████████████████ ████████████████████████ *Id.* at ¶ 12.  The Privileged Memo thus, necessarily, incorporates ████████████████████

5

███████████████████████████████████████████████████████

█████████████ that were also shared with PwC. The Privileged Memo contains work product and is protected from disclosure.

The selection of documents may constitute work product if there is "a real, rather than speculative, concern that counsel's thought processes in relation to pending or anticipated litigation will be exposed through disclosure of the compiled documents." *Hunter's Ridge Golf Co., Inc.*, 223 F.R.D. 678, 683 (M.D. Fla. 2006). Here, in looking into the allegations underlying the Audit Committee investigation, K&S and KPMG █████████████████████ ████████. Baliff Decl., ¶ 12. They then █████████████████ ████████████████████████████. There is thus a real chance that K&S and KPMG's thought processes, mental impressions, and theories as to the allegations will be revealed ████████████████████████████

███████████████████████████████████████████████████████

The Privileged Memo thus contains work product in that it ████████████ ████████████████████████████████████████.

The Privileged Memo contains further work product as it also discusses

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

*Johnson*, 611 F. App'x at 547. Indeed, the entire premise of the Privileged Memo is PwC's analysis and memorialization of the work of the Investigation.

6

It is of no consequence that the actual document containing the work product was created by PwC. In evaluating a claim of work product protection, "the question is not who created the document or how they are related to the party asserting work-product protection, but whether the document contains work product—the thoughts and opinions of counsel developed in anticipation of litigation." *United States v. Deloitte LLP*, 610 F.3d 129, 136 (D.C. Cir. 2010).

Thus, where a document reflects an attorney's thoughts and opinions that were prepared in anticipation of litigation, work product protection applies even if those thoughts and opinions were committed to writing by a non-attorney. *See id.* at 136 ("[An auditor's] preparation of the document does not exclude the possibility that it contains [the company's] work product."); *In re Grand Jury Subpoena*, 599 F.2d 504, 513 (2d Cir. 1979) ("To the extent that the accountants' workpapers reflect oral conversations with corporate employees after the retainer of [counsel], these, too, qualify as work product.").

### 3. The Work Product was Created in Anticipation of Litigation

The work product contained in the Privileged Memo was prepared in "anticipation of litigation." Fed. R. Civ. P. 26(b)(3)(A)(i). "Whether documents were prepared in anticipation of litigation should be examined on a case by case basis." *Trenary v. Busch Ent. Corp.*, 2006 WL 8440071, at *2 (M.D. Fla. Sept. 28, 2006). The facts of this case demonstrate that the Investigation was

7

carried out in anticipation of litigation.

a.    Legal Framework

In determining whether materials were created in anticipation of litigation, two approaches have emerged—the "because of" test and the "primary purpose" test. The Eleventh Circuit has not adopted any test on this issue and the district courts are in disagreement. Regardless, under either test, the work product at issue here was created in anticipation of litigation.

The majority[2] of courts have adopted the "because of" test for determining whether materials were prepared in anticipation of litigation, and this test has been relied upon for the issue of work product protection in legal guidance materials. *See* § 2024 The Work–Product Rule—Matters Protected by the Work–Product Rule, 8 Fed. Prac. & Proc. Civ. § 2024 (3d ed.) ("[T]he test should be whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained *because of* the prospect of litigation." (emphasis added)).

By contrast, the Fifth Circuit has led the "primary purpose" approach.

---

[2] *See U.S. v. Adlman,* 134 F.3d 1194, 1202 (2d Cir. 1998); *In re Grand Jury Proceedings*, 604 F.2d 798, 803 (3d Cir. 1979); *National Union Fire Ins. Co. of Pittsburgh, Pa. v. Murray Sheet Metal Co., Inc.*, 967 F.2d 980, 984 (4th Cir. 1992); *U.S. v. Roxworthy*, 457 F.3d 590, 593 (6th Cir. 2006); *Binks Mfg. Co. v. National Presto Industries, Inc.*, 709 F.2d 1109, 1119 (7th Cir. 1983); *PepsiCo, Inc. v. Baird, Kurtz & Dobson LLP*, 305 F.3d 813, 817 (8th Cir. 2002); *U.S. v. Richey*, 632 F.3d 559, 568 (9th Cir. 2011); *Cobell v. Norton*, 212 F.R.D. 24, 31 (D.D.C. 2002).

*See United States v. Davis*, 636 F.2d 1028, 1040 (5th Cir. 1981)[3] (work product protection is appropriate "as long as the *primary motivating purpose* behind the creation of the document was to aid in possible future litigation" (emphasis added)). However, just prior to *Davis*, the Fifth Circuit in *Hoover v. United States Dept. of the Interior*, 611 F.2d 1132 (5th Cir. 1980), held that government appraisal documents relating to a condemnation were protected work product because they were "obtained *both* for the purpose of providing a basis for an offer, and to support a claim of just compensation at a subsequent condemnation suit." *Id.* at 1139 n.8 (emphasis added). *Hoover* did not require a party to show that it was primarily motivated by litigation in order to receive work product protection, suggesting tension between *Hoover* and *Davis*.

Consequently, "some district courts within the Eleventh Circuit have moved away from applying the 'primary purpose' test based on an interpretation of *Davis* as dicta, and identification of *Hoover* as potentially contradictory prior precedent." *Tillman v. C.R. Bard, Inc.*, 2015 WL 1062182, at *3 (M.D. Fla. Mar. 11, 2015) (collecting cases); *see also United States v. Adlman*, 134 F.3d 1194, 1198 (2d Cir. 1998) (deeming the primary purpose language in *Davis* dicta); *Regions Fin. Corp. v. United States*, 2008 WL

---

[3] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all decisions handed down by the former Fifth Circuit before October 1, 1981.

2139008, at *5 (N.D. Ala. May 8, 2008) (examining *Hoover* and *Davis*).

As a result, a split has occurred between courts within the Eleventh Circuit with some courts applying the "because of" test, while others follow the "primary purpose" approach.[4] *Compare United States v. Mesadieu,* 166 F. Supp. 3d 1275, 1279 (M.D. Fla. 2015) (applying the "because of" test); *Carver v. Allstate Ins. Co.,* 94 F.R.D. 131 (S.D. Ga. 1982) (same); *In re: Engle Cases,* 2013 WL 12156576 (M.D. Fla. June 28, 2013) (same); *with U.S. Fid. & Guar. Co. v. Liberty Surplus Ins. Corp.,* 630 F. Supp. 2d 1332, 1337 (M.D. Fla. 2007) (applying the "primary purpose" test); *Hancock Bank v. Hill St., L.L.C.,* 2013 WL 6815055, at *6 (M.D. Fla. Dec. 24, 2013) (same); *Everbank v. Fifth Third Bank*, 2012 WL 1580778, at *3 (M.D. Fla. May 4, 2012) (same).

Under the "because of" test, the question is whether "in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the

---

[4] To make matters more confusing, some Eleventh Circuit district courts have appeared to combine or mix the two tests. *See, e.g., United States v. Zahn*, No. 3:22-CR-23-BJD-MCR, 2022 WL 17811346, at *8 (M.D. Fla. Dec. 19, 2022) ("[I]t is now well recognized that documents that serve a *dual purpose* are covered by the work product protection if they were produced 'with the '*motivating purpose'* for or '*because of*' anticipated litigation.'" (citing *Spirit Master Funding, LLC v. Pike Nurseries Acquisition, LLC*, 287 F.R.D. 680, 685 (N.D. Ga. 2012)) (emphases added)) (Richardson, J.); *Dewit v. UPS Ground Freight, Inc*., No. 1:16CV36-MW/GRJ, 2017 WL 3000029, at *1 (N.D. Fla. May 30, 2017) (anticipation of litigation exists when "*at least one of the principal purposes* for generating' the materials was to aid in possible future litigation" (quotation omitted) (emphasis added)). Further, some courts have ostensibly rejected both tests in favor of a case-specific analysis of anticipation of litigation. *See, e.g., Goosby v. Branch Banking & Tr. Co.*, 309 F. Supp. 3d 1223, 1235-36 (S.D. Fla. 2018); *Holladay v. Royal Caribbean Cruises, Ltd.*, 334 F.R.D. 628, 633 (S.D. Fla. 2020).

prospect of litigation." *In re Grand Jury Subpoena*, 357 F.3d 900, 907 (9th Cir. 2004). "The 'because of' standard does not consider whether litigation was a primary or secondary motive behind the creation of a document; rather, it considers the totality of the circumstances and affords protection when it can fairly be said that the 'document was created because of anticipated litigation, and would not have been created in substantially similar form but for the prospect of that litigation.'" *LeBlanc v. Coastal Mech. Servs., LLC*, 2005 WL 8156080, at *5 (S.D. Fla. Mar. 22, 2005) (quotation omitted).

The nature of this test gives rise to "dual purpose" documents, that is, documents which were created in anticipation of litigation but which also serve ordinary business purposes may still be protected. *See, e.g., Deloitte,* 610 F.3d at 138 (under the "because of" test, "material generated in anticipation of litigation may also be used for ordinary business purposes without losing its protected status"); *In re Grand Jury Subpoena*, 357 F.3d at 907-08 (under the "because of " standard, a document created in part because of the prospect of litigation but also due to business reasons would be protected by the work-product doctrine); *In re Prof'ls Direct Ins. Co.*, 578 F.3d 432, 439 (6th Cir. 2009).

Under the primary purpose test, while "litigation need not necessarily be imminent," work product protection will only apply if the "purportedly privileged documents were prepared with the primary motivating purpose of aiding in possible litigation." *Club Exploria, LLC v. Aaronson*, 2019 WL

11

13227590, at *3 (M.D. Fla. Dec. 9, 2019) (citing *Davis*, 636 F.2d at 1040). "Additionally, in determining whether a document was prepared in anticipation of litigation, key issues the court must consider are the function the document serves, the circumstances surrounding its creation, and the driving force behind its preparation." *Id*. (quotation omitted).

Based on the concerns as to the applicability of *Davis*, the underlying purpose of the work product protection[5], and the aforementioned jurisprudence, Defendants ask this Court to follow the majority and apply the "because of" test in examining the instant issue. Regardless, under either test, the Audit Committee investigation was conducted in anticipation of litigation as Defendants can show that the present circumstances satisfy the "primary purpose test" which inherently satisfies the "because of" test.

b.    The Audit Committee Investigation Was Conducted in Anticipation of Litigation

The Audit Committee Investigation, and the work product created therein, was done in anticipation of litigation. The genesis of the Investigation was the Gievers Letter and resignation, of which Redwire was notified on November 5, 2021. Baliff Decl., ¶ 5. The Audit Committee immediately convened, hired independent legal and accounting firms, K&S and KPMG, and

---

[5] The work product doctrine exists because "[p]roper preparation of a client's case demands that [an attorney] assemble information, sift what he considers to be the relevant from irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference." *Hickman v. Taylor*, 329 U.S. 495, 511 (1947).

12

commenced an independent investigation. *Id.*, ¶¶ 6-8, 11. In selecting K&S, the Audit Committee ███████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████████████████████. *Id.*, ¶¶ 8, 15. Moreover, nearly immediately after receipt of the Gievers Letter, Redwire notified the SEC of its contents. *Id.*, ¶ 10.

Furthermore, Gievers himself had injected the prospect of litigation into this matter. First, the ██████████████████████████████████████

████████████████████████████████████████████████████████████.

Baliff Decl., ¶ 5. Indeed, Redwire subsequently received a formal demand letter from that law firm in connection with these issues. *Id.*, n.2. Furthermore, on November 8, 2021, ██████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████ *Id.*, ¶ 9. ██████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████. *Id.*

> **(1)   *The Primary Purpose of the Investigation was Possible Litigation***

The investigation satisfied the requirements of the "primary purpose" test. In accord with the facts above, the primary force behind the Investigation was ███████████████████████████████████████



.[6] *Id.*, ¶ 14. Indeed, it was the Audit

Committee's

. *Id.*, ¶ 15. In turn, materials and information created during the Investigation, including K&S' and KPMG's selection of documents, and the legal theories, mental impressions, conclusions, witness interviews, and other tangible and intangible work of the attorneys and agents involved, were created for the primary purpose of aiding in such possible litigation. *Club Exploria*, 2019 WL 13227590, at *3 (the primary purpose test does not require litigation to be imminent, rather, the purported work product must be "prepared with the primary motivating purpose of aiding in possible litigation").

The Motion's case law (applying the primary purpose test) is distinguishable. In large part, the findings in these cases rely on various parties' own representations as to the purposes of the pertinent investigations that did not include litigation. Such circumstances simply are not present here.

In *Miller v. Dyadic Int'l, Inc.*, 2010 WL 11591901 (S.D. Fla. Mar. 30,

---

[6] Indeed, *this* litigation was commenced only approximately six weeks after Redwire's receipt of the Gievers Letter. *See* (Doc. 1) (original Complaint filed on December 17, 2021).

2010), the Court considered that the defendant claiming privilege stated that outside counsel was engaged "for the purpose of assisting [the defendant] in investigating its own potential wrongdoing and for purposes of corporate housecleaning to protect the corporation's shareholders and investors." *Id*. at *6. The Court noted that this did not mention anticipated litigation and was likely the defendant "tacitly [] abandon[ing] its claim of work product privilege." *Id*., at *6 n.3. In *S.E.C. v. Microtune, Inc.*, 258 F.R.D. 310 (N.D. Tex. 2009), the Court considered the deposition testimony of the outside counsel who led the at-issue investigation and testified that the investigation was conducted for the purpose of assessing the company's accounting principles. *Id*. at 319. As to *In re Royal Ahold N.V. Sec. & ERISA Litig.*, 230 F.R.D. 433 (D. Md. 2005), the discussion cited by the Motion goes to the court's analysis of waiver of work product privilege, not whether work product privilege existed. *Id*. at 437. Regardless, in assessing privilege, the court relied in part on the Chairman of the Board's public statement that the purpose of the at-issue investigation was simply "to enable our accountants to resume their audit work as quickly as possible." *Id*. at 435, n.2. Finally, in *Holladay v. Royal Caribbean Cruises, Ltd.*, 334 F.R.D. 628 (S.D. Fla. 2020), the court notably rejected both the primary purpose and because of tests, and stated that it would "confine the ruling to the unique facts of this specific fact pattern." *Id*. at 633. Indeed, *Holladay*, which involved an engineering report of a cruise ship.

15

Lead Plaintiff attempts, and fails, to shoehorn this case law into the aforementioned jurisprudence. Unlike those cases, here, the party claiming privilege (Redwire) provides sworn testimony through a declaration as to the legal nature of the subject investigation. Lead Plaintiff has no evidence to the contrary, making conclusory arguments sourced in speculation.

First, Lead Plaintiff cherry-picks from the Audit Committee Charter, pointing out that one of the purposes of the Audit Committee is oversight of "the integrity of [Redwire's] financial statements." Mot., p. 23; (Doc. 91-19, p. 1). However, the Motion fails to mention that the Charter directly thereafter states that another purpose is oversight of "compliance with legal and regulatory requirements," and later explains that its "legal compliance" responsibilities include to "review, with the General Counsel and outside legal counsel, legal and regulatory matters," and to "review the Company's compliance with applicable laws and regulations." (Doc. 91-19, pp. 1, 7). Attempts to frame the work of the Audit Committee as completely unrelated to legal matters fall flat. Rather, it was well within the Audit Committee's responsibilities to investigate in anticipation of litigation.

Second, the Motion argues that two declarations previously provided by Defendants "do not make even conclusory assertions that the Audit Committee conducted its investigation in anticipation of litigation." Mot., p. 20 n.9. The declarations referred to are those of Jonathan Baliff and Alec Koch. (Doc. Nos.

16

91-10, 91-11). This is irrelevant. Those declarations were not provided as a basis for why the Audit Committee Investigation is protected by work product. Rather, those declarations explained a set of redacted K&S draft meeting notes confusingly labeled as minutes of an Audit Committee meeting. *See id*. Those declarations gave a brief overview of the Investigation for context, but largely focus on the background of the redacted notes. Attached to this Response is a new declaration of Jonathan Baliff (Exhibit A), which attests to the basis of the privilege claimed regarding the Audit Committee Investigation.

Third, and on this issue, the Motion points to its background discussion of two press releases issued by Redwire during the investigation period. Mot., pp. 9-11, 24. As best as Defendants can surmise (as it is not clear), the Motion suggests that because the press releases mention how the Investigation affected Redwire's ability to make timely financial disclosures, that must mean the Investigation was unrelated to legal concerns. This is another red herring.

The first press release, issued on November 10, 2021, simply announces the notification of the allegations and the ensuing investigation and that "[g]iven the timing of the recent notification, the Company has not finalized its financial statements and expects to file an NT-10Q." **Exhibit B**, p. 1. That Redwire was unable to finalize its financial statements was a natural consequence of the timing of the Investigation, and says nothing about the purpose of the Investigation.

17

The second press release, issued on February 3, 2022, spends three pages detailing Redwire's preliminary financial results, and in only three sentences states that the Audit Committee received a preliminary briefing regarding the Investigation, that there were no identified material misstatements, and that Redwire takes its reporting requirements seriously. (Doc. 91-8, p. 3). That Redwire, in a press release about its financial results, gave a brief update on how the Investigation was affecting those results, again, is unremarkable and similarly does not speak to the purpose of the Investigation.

Simply put, *Lead Plaintiff fails to offer evidence that the purpose of the Investigation was inconsistent with the description provided in the Baliff Declaration.* Rather, through the Baliff Declaration, Defendants have shown that the primary purpose of the Investigation was to aid in possible litigation.

> (2)    *The Investigation was Conducted Because of Anticipated Litigation*

In light of the above-referenced primary purpose, the Investigation was thus also conducted *because of* the prospect of litigation. *See United States v. ISS Marine Servs., Inc.,* 905 F. Supp. 2d 121, 137 n.9 (D.D.C. 2012) ("[W]hen counsel's strategic and legal expertise is applied and counsel's involvement becomes more direct and meaningful, *i.e.,* when counsel prioritizes the investigative steps, selects specific witnesses, conducts particular interviews, or reviews particular documents … a company's genuine anticipation of

litigation manifests itself."); *Cicel (Beijing) Sci. & Tech. Co. v. Misonix, Inc.,* 331 F.R.D. 218, 232 (E.D.N.Y. 2019) (where "government investigations and civil litigation" were anticipated, and outside counsel requested information from current and former employees and conducted interviews, the "investigatory materials—including emails and memoranda derived from the Internal Investigation—were prepared in anticipation of litigation"); *In re Am. Realty Cap. Properties, Inc. Litig.,* 2017 WL 11641957, at *4 (S.D.N.Y. Aug. 14, 2017). As stated above, here the work of K&S and KPMG involved the undertaking of investigatory efforts with an eye toward anticipation litigation. *Supra* § II(a)(3)(b)(1). Thus, the *because of* test is also satisfied in this matter.

### B.   Work Product Protection has not been Waived

Disclosure to PwC did not waive the work product protections. "Work product protection … is not automatically waived by disclosure to third persons." *State Nat'l Ins. Co. v. Lamberti*, 2009 WL 10667731, at *2 (S.D. Fla. Mar. 19, 2009). It is only waived when protected materials are "disclosed in a manner . . either inconsistent with maintaining secrecy against *opponents* or substantially increases the opportunity for a potential *adversary* to obtain the protected information." *Brown v. NCL (Bahamas), Ltd.*, 155 F. Supp. 3d 1335, 1339 (S.D. Fla. 2015) (emphasis in original) (internal citations omitted).

Disclosure of protected materials to outside accountants does not waive the work-product privilege because "the accountants are not considered a

19

conduit to a potential adversary." *Gutter v. E.I. Dupont de Nemours & Co.*, 1998 WL 2017926, at *5 (S.D. Fla. May 18, 1998)[7]

Here, disclosure of the Investigation's work product was necessary for PwC to appropriately prepare its statutorily required report. Baliff Decl., ¶ 16. There was an expectation of confidentiality in the work product shared and an expectation that it would only be used for these limited purposes. *Id.*, ¶ 18. Because ████████████████████████████████████████████ ████████████████████████████████, disclosure to PwC could not and did not waive any protections. *Id.*, ¶ 19; *Gutter*, 1998 WL 2017926, at *5.

## III.    CONCLUSION

For the reasons stated, the Privileged Memo is entitled to work product protection and that the work product protection has not been waived.

| | |
|---|---|
| */s/ Alfred J. Bennington, Jr.* | **H. TIMOTHY GILLIS, ESQ.** |
| **ALFRED J. BENNINGTON, JR., ESQ.** | Florida Bar No.: 0133876 |
| Florida Bar No. 0404985 | tgillis@shutts.com |
| **GLENNYS ORTEGA RUBIN, ESQ.** | **JEFFREY S. YORK, ESQ** |
| Florida Bar No. 556361 | Florida Bar No. 987069 |
| grubin@shutts.com | jyork@shutts.com |
| **SHUTTS & BOWEN LLP** | **SHUTTS & BOWEN LLP** |
| 300 South Orange Avenue, Suite 1600 | 1000 Riverside Ave., Suite 800 |
| Orlando, Florida 32801 | Jacksonville, Florida 32204 |
| Telephone: (407) 835-6755 | Telephone: (904) 899-9926 |
| Facsimile:  (407) 849-7255 and | *Attorneys for Defendants* |

---

[7] *See also In re Pfizer Inc. Sec. Litig.*, 1993 WL 561125, at *6 (S.D.N.Y. Dec. 23, 1993); *United States v. Sanmina Corp.*, 968 F.3d 1107, 1122 (9th Cir. 2020) (disclosure of its work product to an independent auditor does not constitute disclosure to an adversary sufficient to waive the protection."); *Deloitte*, 610 F.3d at 142; *United States v. Petit*, 438 F. Supp. 3d 212, 214 n.2 (S.D.N.Y. 2020).