**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**

| | |
|---|---|
| JED LEMEN, Individually and On Behalf of All Others Similarly Situated<br><br>Plaintiffs,<br><br>v.<br><br>REDWIRE CORPORATION f/k/a GENESIS PARK ACQUISITON CORP., PETER CANNITO, and WILLIAM READ,<br><br>Defendant. | Case No. 3:21-cv-01254-TJC-PDB<br><br>CLASS ACTION |

**LEAD PLAINTIFF JARED THOMPSON'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL AS TO DEFENDANTS' FIRST SET OF REQUESTS FOR ADMISSION**

Lead Plaintiff received, and was expected to answer, more than four-hundred (400) requests for admission (the "Requests" or "RFAs") when the parties had barely started discovery. Standing alone, answering these Requests was time consuming and took Lead Plaintiff weeks to sort through them while at the same time responding to interrogatories and requests to produce. Still, Lead Plaintiff answered the RFAs in good faith and with the information available to him at the time. However, many of these Requests asked Lead Plaintiff to admit or deny the content of Defendants' public statements that were taken out of the context from the press releases, investor presentations, SEC filings, and interviews from which they came.

- 1 -

The Requests also addressed disputed issues of fact that courts recognize are not the proper subject of RFAs.  Lead Plaintiff thus had substantive objections, which he raised along with providing full answers to most of the RFAs. Defendants now challenge the responses in several ways in their Motion to Compel (the "Motion or "Mot.") (ECF No. 95), all of which the Court should reject.

First, despite the fact that Defendants served the RFAs before substantive discovery was completed, Lead Plaintiff answered the RFAs with the information currently available to him.  It is not clear what more the Court should compel.

Second, Defendants do not substantively address Lead Plaintiff's objection that the RFAs improperly concern disputed issues of fact, and rather assert that the only limit is relevance.  The Court should follow the case law cited by Lead Plaintiff finding that RFAs addressing disputed facts go beyond what is appropriate under the Federal Rules.

Third, Lead Plaintiff objected to over 150 RFAs asking Lead Plaintiff to admit or deny the content of isolated statements taken out of context from press releases, investor presentations, SEC filings, and interviews during the Class Period.  The responses, the parties meet and confer discussions, the First Amended Complaint, the motion to dismiss briefing and the appendixes to Defendants' motion and Lead Plaintiff's opposition (*see* Declaration of Reed Kathrein ("Kathrein Decl."), Ex. B (ECF No. 48) at 33-39; Ex. C (ECF No. 58) at 29-40) provide Defendants with an

understanding of the "context" under which Lead Plaintiff answered the RFAs. The Motion offers no grounds for why Lead Plaintiff must amend the responses to these 150 RFAs to reflect additional information on the "context" objection.

Fourth, Lead Plaintiff properly objected on specific, non-conclusory grounds, and answered the RFAs subject to those objections. Defendants offer no authority or persuasive arguments that Lead Plaintiff cannot answer the RFAs "[a]s limited by" these objections.

Finally, Defendants' "ordinary" interpretation of the terms "author" and "speaker" is inappropriate in the context of federal securities laws, for which there is extensive case law and debate. Lead Plaintiff properly objected to those terms as "vague and ambiguous" and responded given the broad interpretation under the securities laws.

For the following reasons, the Motion should be denied.

## I.    FACTUAL BACKGROUND

On August 31, 2023, Defendants served three sets of requests for admission, totaling 406 requests.[1] Kathrein Decl., ¶ 3. Lead Plaintiff served his RFA responses on November 8, 2023. *Id.*, ¶ 6. At that time, Defendants had only produced 892 documents totaling 7,568 pages, and no depositions had been scheduled, let alone

---

[1] For a full discussion, Lead Plaintiff refers the Court to the "Factual Background" section in the opposition to Defendants' motion to compel concerning the document requests and the Kathrein Declaration.

taken. *Id.*, ¶¶ 4-5(c). Defendants have only produced an additional 499 documents, totaling 4,763 pages, since Lead Plaintiff completed his initial responses. *Id.*, ¶ 4. Thus, to date, Defendants production consist of less than 1,400 documents. *Id.* Based on counsel's experience, the case complexity, and number of issues, this is a very small amount of document discovery for a securities class action case especially given that Defendants claim to have produced all non-privileged known responsive documents. *Id.* Lead Plaintiff's responses thus reflected the limited amount discovery in the case and raised objections to the premature and improper requests. *See* ECF Nos. 95-1, 95-2, 95-3.

During the months of December 2023 and January 2024, the parties met and conferred regarding Lead Plaintiff's responses to the RFAs. Kathrein Decl., ¶¶ 10-15. The discussions included Lead Plaintiff's "context" objections to certain RFAs. *Id.*, ¶ 13. Specifically, Lead Plaintiff explained that where raised, the applicable RFAs concerned "individual statements from broader press releases, presentations, SEC filings, and interviews." *Id.* Therefore, Lead Plaintiff's answers were "not based solely on the isolated statements but were made with the full presentation in mind, including the purpose for each press release, presentation, SEC filing, and interview." *Id.*

The parties also conferred on Lead Plaintiff answering RFAs "[a]s limited by" the objections. *Id.*, ¶ 13. Lead Plaintiff noted that where an RFA was admitted or

- 4 -

denied in part, Lead Plaintiff "specifically made note of what was being admitted or denied." *Id.* Lead Plaintiff further clarified that if an RFA was "admitted" or "denied" without any elaboration, such admissions or denials were in full. *Id.*

On February 21, 2024, Lead Plaintiff was in the process of finalizing a fulsome discovery letter relating to other issues raised during the meet and confers and in the parties' correspondence, and to confirm certain agreements for amending the responses, when Defendants' filed the Motion. *Id.*, ¶ 16. Lead Plaintiff sent the letter the same day, and requested that Defendants' continue the meet and confer process to see if the issues could be narrowed. *Id.* The letter included a proposal to address the "context" objections, where Lead Plaintiff would answer amended RFAs from Defendants addressing statements "isolated from the full presentation and standing alone." *Id.* Defendants declined this offer. *Id.*

While the parties resolved some disputes related to the discovery requests, they could not come to agreement on all the issues related to Lead Plaintiff's RFA responses. *Id.*, ¶ 17.

## II. ARGUMENT

**A. Several of Defendants' Issues with Lead Plaintiff's Responses Are Moot.**

The parties have resolved the following issues during the conferral process:

***"You," "Your," and/or "Lead Plaintiff" Objection* (Mot. at 5-7).** Lead Plaintiff has agreed to amend to confirm that he is not "aware of any other third

parties under Lead Plaintiff's control that would have responsive information in their possession, custody, or control." *See* Kathrein Decl., ¶ 15.

***Vague and Ambiguous Objections* (Mot. at 9-13).**   Lead Plaintiff has agreed to drop the remaining vague and ambiguous objections.

**B.      Lead Plaintiff's Other Objections to the RFAs are Proper.**

**1.      Lead Plaintiff Answered the RFAs Based on Currently Available Information and Defendants Need No Relief.**

Defendants assert that Lead Plaintiff must respond to RFAs "based on the currently available information and documents" rather than wait for the completion of substantial discovery.   *See* Mot. at 4.   Otherwise, Defendants claim a "surge of discovery and motion practice" at the end of the discovery would overwhelm the parties and the Court.   *Id.*

Lead Plaintiff, however, *did* respond to the RFAs with the information and documents currently available to him, while properly objecting that the RFAs demanded a response before the substantial completion of discovery.   *See generally* ECF Nos. 95-1, 95-2, and 95-3.   Where appropriate, and as permitted under Rule 36, Lead Plaintiff also noted where he made "reasonable inquiry" and the "information currently available to him is insufficient to enable him to admit or deny" the RFA. *See, e.g.,* ECF No. 95-1 at 89.   It is not clear what more Lead Plaintiff can do to supplement the responses, and Defendants' relief should be denied.

- 6 -

### 2. RFAs Addressing Disputed Issues of Fact are Improper.

Defendants' claim that the relevance standards of Rule 26 govern whether the subject matter of an RFA is appropriate. *See* Mot. at 5. This argument ignores the case law cited in the responses stating that RFAs are meant to be a "time saver" and to "relieve the parties of the cost of proving facts that will not be disputed at trial." *See, e.g., Perez v. Miami-Dade Cty.*, 297 F.3d 1255, 1268 (11th Cir. 2002).

Here, Defendants' RFAs address central facts in dispute, including whether the individual Defendants "author[ed]" certain statements or "exercise[d]" control over certain statements. *See, e.g.,* ECF Nos. 95-2 at 10, 12. Defendants' RFAs also ask Lead Plaintiff to admit or deny the content of public statements taken out of context and cutting against the allegations in the First Amended Complaint. *See, e.g.,* ECF No. 95-1 at 8-12. These are not proper topics for RFAs. *See, e.g., Whitaker v. Belt Concepts of Am., Inc.,* 189 B.R. 846, 853 (Bankr. M.D. Fla. 1995) (finding requests for admissions were "improperly propounded to force the defendant to concede a highly contested factual issue prior to trial"); *Bruggemann v. Amacore Grp., Inc.*, 2011 WL 1899251, at *4 (M.D. Fla. Apr. 1, 2011) (finding requests for admission were inappropriate by seeking party "to admit facts which are contrary to the allegations" made in a counterclaim).

### 3. The "Context" Objections are Proper.

Over one-hundred (100) of Redwire's RFAs asked Lead Plaintiff to admit or

deny whether specific representations regarding internal controls over financial reporting and management's "attitude" toward internal controls were made in isolated statements from Defendants' press releases, presentations, SEC filings, and public interviews. *See, e.g.,* ECF No. 95-1 at 8-12. Lead Plaintiff properly objected that these RFAs were improper because they took the statements out of context and did not consider the full presentation. Lead Plaintiff stated he would answer them "in context and not in isolation." *Id.* Lead Plaintiff later confirmed that the answers were provided "with the full presentation in mind, including the purpose for each press release, presentation, SEC filing, and interview." Kathrein Decl., ¶ 13. Defendants now seek additional information on the "context" of the "full presentation" and the "purpose" Lead Plaintiff assigns to each statement. *See* Mot. at 7.

Defendants, as the drafters of the RFAs, know that each identified statement was sourced from materials pre-dating the consummation of the de-SPAC merger between GPAC and Redwire on September 2, 2021. *See generally,* ECF No. 95-1. These sources fully overlap with the press releases, investor presentations, SEC filings, and public interviews discussed in the First Amended Complaint and further laid out in the parties' motion to dismiss briefing and accompanying appendices. *See* ECF No. 47 ¶¶ 46-62; Kathrein Decl., Ex. B (ECF No. 48) at 33-39; Kathrein Decl., Ex. C (ECF No. 58) at 29-40. As such, the First Amended Complaint provides the

necessary "context" and "purpose" of the full presentations and states they were "directed towards soliciting investors and their vote" on the de-SPAC merger and "emphasized the impeccable management, operational and financial experience and credentials of Redwire's senior management and the Individual Defendants."  *See* ECF No. 47 ¶ 9.  Same with the motion to dismiss briefing.  *See, e.g.,*  ECF No. 58 at 13 ("To sell the merger to SPAC investors, Defendants repeatedly emphasized and reasserted, in SEC filings and investor presentations, the quality of Redwire's 'proven' and 'strong' management'[.]").

Defendants have not provided any legal authority that requires Lead Plaintiff to amend nearly 150 RFAs to provide additional information regarding the "context" objections. This relief is particularly unnecessary given Lead Plaintiff has already provided the "context" in the responses themselves, the First Amended Complaint, and the motion to dismiss briefing. Lead Plaintiff offered to make the "context" objections moot by answering amended RFAs from Defendants addressing statements "isolated from the full presentation and standing alone."  Kathrein Decl., ¶ 16.  Defendants declined this offer. Lead Plaintiff should not have the burden to amend the RFAs where the "context" is not in doubt.

**4.    Lead Plaintiff's Answers, "Limited by the Foregoing" Objections, are Proper.**

Lead Plaintiff properly answered the RFAs "[a]s limited by the foregoing general and specific objections."  *See* Mot. at 8.  Defendants do not argue that any

of Lead Plaintiff's specific objections are "generic" or "boilerplate." *See* Mot. at *passim*. Nor could they, as Lead Plaintiff has raised only specific, substantive objections regarding:

1. the prematurity of the RFAs in light of the discovery to date,

2. the need to answer the RFAs "in context" of the "full presentation" of the source of a statement, and

3. the RFAs improperly addressing disputed facts. *See supra*, § II.B.1-3.

Courts have upheld such non-typical, non-formulaic objections even when RFAs are answered. *See, e.g., Hearndon v. Hearndon*, 2019 WL 5590431, at \*2 (M.D. Fla. Sept. 5, 2019) (upholding objections to RFAs when party answered them and observing the objections were "not your typical, formulaic objections based on vagueness, relevancy, over broadness, or the like"). The cases cited by Defendants, which come from a single judge outside of this District, do not hold differently. *See, e.g., Planet Bingo, LLC v. Kerr*, 2011 WL 13238348, at \*3 (N.D. Fla. Oct. 27, 2011) (addressing responses to RFPs and noting its "disfavor[]" of the party's "boilerplate objections" to the RFPs and responding to RFPs subject to "formulaic" objections); *Prosonic Corp. v. Baker*, 2008 WL 11340070, at \*3-4 (N.D. Fla. Mar. 14, 2008) (addressing party's responses to RFPs and interrogatories and offering no analysis of answering RFAs subject to specific, non-formulaic objections).

Defendants' claim that the answers are "unclear and confusing as to which portions of the RFAs are admitted or denied" (*see* Mot. at 8) ignores the substance of Lead Plaintiff's objections. When objecting based on incomplete discovery or the fact that the RFAs addressed disputed facts, Lead Plaintiff raised these objections to preserve arguments regarding the timing and propriety of the RFAs as discovery progresses, without limiting their answers. *See, e.g.,* ECF No. 95-1 at 8-12. Similarly, when raising "context" objections, Lead Plaintiff made it clear that their answers considered the "context of the full presentation" rather than answering only a "portion" of the relevant RFAs. *Id.* at 7. Likewise, when objecting to "author" and speaker" as being vague and ambiguous, Lead Plaintiff specified he interpreted the terms "with the broadest possible meaning" when answering the RFAs. *See, e.g.,* ECF No. 95-2 at 16-17. Consequently, there should be no confusion when Lead Plaintiff answered RFAs "in full" or stated that after reasonable inquiry, "the information currently available to him is insufficient" to admit or deny the RFA. *See* Mot. at 8-9. Defendants have not offered any valid grounds for relief.

**5.     The Terms "Author" and "Speaker" are Vague and Ambiguous.**

Defendants contend that the terms "speaker" and "author" are not vague or ambiguous, asserting that these terms "can easily be understood as the person or entity making the referenced statements." *See* Mot. at 12-13. However, this oversimplified interpretation fails to account for the complex legal landscape

surrounding the definition of a "maker of a statement" under the securities laws. The Supreme Court's decisions in *Janus Cap. Grp., Inc. v. First Derivative Traders*, 564 U.S. 135 (2011) and *Lorenzo v. SEC*, 139 S. Ct. 1094 (2019) have established nuanced and context-specific standards for determining who qualifies as the "maker of a statement."

In *Janus*, the Supreme Court held that the "maker of a statement is the entity with authority over the content of the statement and whether and how to communicate it." 564 U.S. at 144. This holding emphasized the importance of control and authority over the statement's content and dissemination in identifying the "maker." *Id.* at 143-44.

However, the Supreme Court's subsequent decision in *Lorenzo* added a new layer of complexity to this analysis. In *Lorenzo*, the Supreme Court expanded liability under Rule 10b-5 to individuals who disseminate false or misleading statements, even if they are not the "maker" of the statement under *Janus*. 139 S. Ct. at 1100-01. The Court held that disseminating false or misleading statements with the intent to defraud can give rise to liability under subsections (a) and (c) of Rule 10b-5, even if the disseminator did not have "ultimate authority" over the statement under *Janus*. *Id.* at 1101-04. This decision significantly broadened the scope of potential liability for those involved in the creation and dissemination of false or misleading statements.

- 12 -

The interplay between *Janus* and *Lorenzo* highlights the complexity and fact-specific nature of determining who qualifies as the "maker," "author," or "speaker" of a statement under the securities laws. Defendants' attempt to reduce these terms to a simple matter of identifying the "person or entity making the referenced statements" fails to capture the legal nuances and potential liability exposures created by these Supreme Court precedents.

Moreover, the use of the terms "author" and "speaker" in the RFAs, without proper context and definition, risks conflating these terms with the legal concepts of a "maker" under *Janus* or a "disseminator" under *Lorenzo*. This ambiguity could lead to confusion and misapplication of the relevant legal standards, undermining the purpose of the discovery process.

Given the complex legal landscape established by *Janus* and *Lorenzo*, and the potential for confusion and misinterpretation, the Court should uphold Lead Plaintiff's objections to the terms "author" and "speaker" as used in the requests for admission. Defendants' simplistic interpretation of these terms fails to account for the nuanced legal standards governing liability for false or misleading statements under the securities laws. If Lead Plaintiff were compelled to respond to these requests without clarity as to the meaning and scope of these terms, it could lead to responses that are inaccurate, incomplete, or unfairly prejudicial. Such responses could be used against Lead Plaintiff later in the litigation, potentially undermining

- 13 -

the integrity of the judicial process. The Court should reject Defendants' arguments and affirm Lead Plaintiff's position that these terms are impermissibly vague and ambiguous in the context of the requests for admission.

### III.   CONCLUSION

For the foregoing reasons, the Court should deny Defendants' motion in its entirety.

Dated: March 13, 2024

Respectfully submitted,

**HAGENS BERMAN SOBOL SHAPIRO LLP**

By: *s/ Reed R. Kathrein*
Reed R. Kathrein (Fla. Bar. No. 262161)
reed@hbsslaw.com
Lucas E. Gilmore (admitted *pro hac vice*)
lucasg@hbsslaw.com
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001

Steve W. Berman (admitted *pro hac vice*)
steve@hbsslaw.com
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

Peter A. Shaeffer (admitted *pro hac vice*)
petersh@hbsslaw.com
455 N. Cityfront Plaza Drive, Suite 2410
Chicago, IL 60611
Telephone: (708) 628-4949
Facsimile: (708) 628-4950

*Lead Counsel for Lead Plaintiff Jared Thompson*

**THE SCHALL LAW FIRM**
Brian Schall (admitted *pro hac vice*)
brian@schallfirm.com

*Additional Counsel for Lead Plaintiff*

**BUCKNER + MILES**
David M. Buckner (Fla. Bar No. 60550)
david@bucknermiles.com

*Liaison Counsel for Lead Plaintiff*