**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA**

| | |
|---|---|
| JED LEMEN, Individually and On Behalf of All Others Similarly Situated<br><br>Plaintiffs,<br><br>v.<br><br>REDWIRE CORPORATION f/k/a GENESIS PARK ACQUISITON CORP., PETER CANNITO, and WILLIAM READ,<br><br>Defendant. | Case No. 3:21-cv-01254-TJC-PDB<br><br>CLASS ACTION |

**LEAD PLAINTIFF JARED THOMPSON'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL AS TO DEFENDANTS' <u>FIRST SETS OF INTERROGATORIES</u>**

Defendants' motion to compel (the "Motion" or "Mot.") (ECF No. 96) mischaracterizes the context and content of the interrogatories ("Interrog.") served on Lead Plaintiff Jared Thompson ("Lead Plaintiff"). The interrogatories sought Lead Plaintiff to identify the alleged false and misleading statements, and the facts, documents, and witnesses underlying the key elements of his federal securities law claims. Defendants claim the interrogatories simply seek to clarify the claims asserted and identify the relevant issues in the case.

Defendants, however, ignore that Lead Plaintiff overcame the stringent pleading standards of the Private Securities Litigation Reform Act ("PSLRA"). Under the PSLRA, Lead Plaintiff had to plead facts with particularity in support of

- 1 -

his allegations that Defendants made false and misleading statements with knowledge of the statements' falsity. The motion to dismiss briefing provided additional information regarding the statements at issue and the basis for their falsity. And the Court's order denying the motion made clear that all the misrepresentations related to one key omission: "Redwire's deficient tone at the top." Defendants thus cannot credibly claim that the interrogatories have the narrow purpose of clarifying the key issues in the litigation.

In reality, Defendants served improper contention interrogatories. The interrogatories ask Lead Plaintiff to provide a narrative of the key elements of his claims, which goes against the guidance from this District's Discovery Handbook and the relevant case law. The interrogatories are also premature given that they seek Lead Plaintiff to identify the facts, documents, witnesses, and expert testimony underlying his claims before the substantial completion of fact discovery and the close of expert discovery. Despite these improprieties, Lead Plaintiff answered the interrogatories with the best information available to him by referring to the First Amended Complaint (ECF 47) and Amended Initial Disclosures. Lead Plaintiff should not be compelled to do more at this time, and for the following reasons, the Motion should be denied.

## I.    FACTUAL BACKGROUND

Defendants served the interrogatories on August 31, 2023, and Lead Plaintiff

served his interrogatory responses on October 30, 2023.[1]  Kathrein Decl., ¶¶ 3, 6. The responses reflected that Lead Plaintiff overcame the strict pleading requirements of the PSLRA, meaning that the Amended Complaint contained factual detail and explanations of the claims going far beyond what is normally presented in a complaint.  *Id.*, ¶ 8. Moreover, when Lead Plaintiff submitted the responses, Defendants had only produced 892 documents (totaling 7,568 pages) and no depositions had been conducted.  *Id.*, ¶ 4.  Defendants have only produced an additional 499 documents, totaling 4,763 pages, since Lead Plaintiff served his responses. *Id.*  Based on counsel's experience, the case complexity, and number of issues, this is a very small amount of document discovery for a securities class action case, especially given that Defendants claim to have produced all non-privileged known responsive documents.  *Id.* Lead Plaintiff thus responded in light of the limited discovery in the case, raised objections to the premature and broad nature of the interrogatories, and reserved the right to revise many of the responses after the completion of discovery.  *Id.*, ¶ 8.

During December 2023 and January 2024, the parties met and conferred on the interrogatory responses. *Id.*, ¶ 10-15.  These discussions addressed Defendants' challenges to the "premature," "contention interrogatory," and "premature expert"

---

[1] For a full discussion, Lead Plaintiff refers the Court to the "Factual Background" section in the opposition to Defendants' motion to compel concerning the document requests and the Declaration of Reed Kathrein ("Kathrein Decl.") and attached exhibits.

objections and the references to the First Amended Complaint and Amended Initial Disclosures in the interrogatory responses. *Id.*, ¶ 12.   In response to Defendants' requests, counsel for Lead Plaintiff also stated they were willing to (i) amend the responses to confirm that Lead Plaintiff was not aware of any third-party documents and information under his possession, custody, or control, and (ii) further explain why documents being withheld based on privilege and/or work product assertions would not be logged pursuant to the Stipulated ESI Protocol. *Id.*, ¶ 15.

On February 21, 2024, Lead Plaintiff was in the process of finalizing a discovery letter addressing the issues raised during the meet and confers, and to confirm certain agreements for amending the responses, when Defendants filed the motion to compel. *Id.*, ¶ 16. Lead Plaintiff sent the letter that same day, and requested that Defendants continue the meet and confer process to see if the issues could be narrowed. *Id.*   While the parties resolved some disputes related to the interrogatory responses, they could not come to agreement on all the issues. *Id.*, ¶ 17.

## II.    ARGUMENT

**A.    Several of Defendants' Issues with Lead Plaintiff's Responses Are Moot.**

The parties have resolved the following issues during the conferral process: ***"You," "Your," and/or "Lead Plaintiff" Objection*** **(Mot. at 4-5).** Lead Plaintiff has agreed to amend the responses to the interrogatories to confirm that he is not "aware of any other third parties under Lead Plaintiff's control that would have

responsive information in their possession, custody, or control." *See* Kathrein Decl., ¶¶ 15-16. ***Privilege Information* (Mot. at 5-6)***.  Lead Plaintiff will amend the responses to confirm that Lead Plaintiff will not provide a privilege log for (1) communications between counsel and Lead Plaintiff and (2) counsel's work product. *See* Kathrein Decl., ¶¶ 15-16***.  "Vague and Ambiguous" and "Relevance" Objections* (Mot. at 14-16).**  Lead Plaintiff has agreed to drop these objections.

**B.     Defendants' Specific Issues with the Interrogatory Responses Do Not Warrant the Requested Relief.**

**1.     Lead Plaintiff's Objections Are Proper.**

The Handbook on Civil Discovery Practice in this District states contention interrogatories "*should be used sparingly* and, if used, should be designed (1) to target claims, defenses, or contentions that the propounding attorney reasonably suspects may be the proper subject of early dismissal or resolution or (2) to identify and narrow the scope of unclear claims, defenses, and contentions." *See* Middle District Discovery (2021) at § IV.C.2. Moreover, interrogatories seeking a "detailed narrative" are "generally improper because they are overbroad and oppressive." *Id.* Because of the abusive and improper use of interrogatories, some districts go further. For instance, in the U.S. District Court for the Southern District of New York, unless the interrogatories are limited to the identity of witnesses and the location of

documents, they are improper until 30 days prior to the close of discovery.[2]

Similarly, the Handbook states that "[i]nterrogatories designed to force an exhaustive or oppressive catalogue of information are generally improper." *See* Middle District Discovery (2021) at § IV.C.4. As an example, the Handbook notes that "an interrogatory such as 'identify each and every document upon which you rely in support of your claim in Count Two' is objectionably overbroad[.]" *Id.*

Here, Defendants ask the Court to order further answers to the interrogatories and argue they only seek to clarify the claims asserted and identify relevant issues based on current knowledge. *See* Mot. at 6-12. But such a recharacterization of the interrogatories and pretend ignorance fail. Bottom line, what Defendants are asking for is Lead Plaintiff to re-write the First Amended Complaint, and re-write the opposition to the motion to dismiss. The Court's order denying dismissal, and not requiring amendment, has already dealt with such a request. *See* ECF No. 62.

a.  **Defendants Are Not Entitled to More Clarity at This State of the Litigation.**

Defendants argument the interrogatories are needed to "narrow the scope of Lead Plaintiff's generically stated claims" to "determine the relevant issues of this case" is without basis *See* Mot. at 8. Defendants disregard the PSLRA's stringent pleading requirements which required Lead Plaintiff to (i) "[s]pecify each statement

---

[2] *See* S.D.N.Y Local Civil Rule 33.3.

alleged to have been misleading, the reason or reasons why the statement is misleading," (ii) "state with particularity" all facts for why a statement is allegedly misleading, and (iii) "state with particularity" facts supporting a "strong inference" that Defendants acted with scienter. *See* 15 U.S.C. § 78u-4(b)(1)(B), (b)(2)(A). The Court found that the First Amended Complaint met those standards and denied Defendants' motion to dismiss. *See* ECF No. 62. Moreover, the Court concisely identified the relevant issues, stating the alleged misrepresentations all shared the same omission: "Defendants' failure to disclose Redwire's deficient tone at the top." *See* ECF No. 62 at 10.

The motion to dismiss briefing further undermines Defendants' characterization of the interrogatories' purpose. In their motion to dismiss, Defendants put together their own appendix of Lead Plaintiff's false and misleading statements (*see* Kathrein Decl. Ex. B (ECF No. 48) at 33-38, identifying 11 documents with multiple statements) to which Lead Plaintiff responded with a revised appendix that stated why each was misleading and adding additional documents and statements. *See* Kathrein Decl., Ex. C (ECF No. 58) at 29-40. In turn, the Amended Initial Disclosures identify documents and witnesses upon which Lead Plaintiff, at this time, plans to rely. This information contradicts Defendants' claim they lack clarity about the "relevant issues in the case." *See* Mot. at 8.

    **b.**    **A Plain Reading of the Interrogatories at Issue Demonstrate They are Improper Interrogatories and Prematurely Seek Lead Plaintiff**

**to Provide a Detailed Narrative of His Claims Before the Substantial Completion of Discovery.**

Defendants' interrogatories are improper interrogatories and premature. None of Defendants' arguments as to each interrogatory warrants a different conclusion.

***Redwire Interrogatory Nos. 1-2 and 8.*** Redwire Interrog. No. 1 asks Lead Plaintiff to identify each false or misleading statement, Interrog. No. 2, asks in what way (*i.e.,* affirmative misrepresentation or omission) each statement was false or misleading, and Interrog. No. 8 asks for the exact language of the corrective disclosures. *See* ECF No. 96-1 at 4, 6, 8. Defendants claim they are not improper "contention" interrogatories because they seek to "identify and narrow unclear claims," mainly "which statements are actually at issue in this case" and "which statements by Redwire are allegedly corrective disclosures." *See* Mot. at 8-10.

Certainly, if this were a case where mere notice pleading was sufficient, such information may be needed. But it is not. As noted above, Defendants already have this information in detail. *See supra*, § II.B.1.a. Moreover, there is little more Lead Plaintiff could do, at this point, than repeat the First Amended Complaint, the motion to dismiss briefing, the appendixes, and the Court Order. And Defendants do not cite a single portion of the First Amended Complaint that is unclear. Accordingly, Redwire Interrog. Nos. 1, 2 and 8 are improper.

***Redwire Interrogatory Nos. 3-7.*** Redwire Interrog. No. 3 seeks for each statement, the "facts of which Lead Plaintiff is are aware" that make them false and

"the facts" that should have been disclosed. *See* ECF No. 96-1 at 6. Redwire Interrog. Nos. 4 and 5 say "describe the facts or events" demonstrating Defendants' knowledge as to falsity or omitted information. *Id.* at 7. Redwire Interrog. Nos. 6 and No. 7 ask Lead Plaintiff to "identify any documents" or "witnesses" supporting the responses to Interrogs. Nos. 4-5. *Id.* at 7-8. Defendants claim Redwire Interrogatory Nos. 3-7 do not seek "a detailed narrative of Lead Plaintiff's case." *See* Mot. at 8-10. Not so.

First, it is beyond argument, that these interrogatories are premature in light of current state of discovery, specifically that Defendants have produced less than 1,400 documents and no depositions have been taken. *See* Kathrein Decl., ¶ 4. Discovery does not close until August 5, 2024 (ECF No. 90). *See, e.g., Bonutti Skeletal Innovations LLC v. Linvatec Corp.*, 2014 WL 186123, at *4 (M.D. Fla. Jan. 16, 2014) (finding it was improper for a discovery request to ask the party to provide a detailed explanation of a substantial part of its case prematurely in the litigation); *A.R. v. Dudek*, 2015 WL 11143084, at *5 (S.D. Fla. 2015) ("Typically, service of contention interrogatories is premature until designated discovery is complete."). Second, Lead Plaintiff served Initial Disclosures in May 2023 and Amended Initial Disclosures in August 2023, so Defendants have notice of potential witnesses and documents upon which Lead Plaintiff may rely. Kathrein Decl., ¶ 5(a).

Third, there is no doubt these are improper contention and overbroad

interrogatories under the discovery guidelines of this District. They require Lead Plaintiff to detail the two key pillars of his Section 10(b) and Rule 10b-5 claim – falsity and scienter. *See* Middle District Discovery (2021) at § IV.C.2 (explaining contention interrogatories seeking a "detailed narrative" are "generally improper because they are overbroad and oppressive"); § IV.C.4 (asking for each and every document relied upon is objectionably overbroad); *Bingham v. Baycare Health Sys.,* 2016 WL 1546504, at *2 (M.D. Fla. Apr. 15, 2016) ("The interrogatory request broadly calls for a narrative of Plaintiff's case in that it seeks information relating to the underlying chain of events that forms the basis of this lawsuit.").

Finally, given the information already provided through the First Amended Complaint, the motion to dismiss briefing, the Court's motion to dismiss order, and the Amended Initial Disclosures, the interrogatories impose an undue burden on the Lead Plaintiff. *See supra*, § II.B.1.a.

***Redwire Interrogatory No. 9*** asks Lead Plaintiff to "identify the manner in which" each statement identified in response to Redwire Interrog. No. 1 "relates to Defendants' 'tone at the top.'". ECF No. 96-1 at 9. But the Court has already held that Defendants' false and misleading statements shared the same omission: "Redwire's deficient tone at the top." *See* ECF No. 62 at 10. Rather than narrow claims, it forces Lead Plaintiff to create a narrative connecting each false and misleading statement to Redwire's deficient "tone at the top." Interrog. No. 9 is

therefore improper. *See* Middle District Discovery (2021) at § IV.C.2; *Bingham,* 2016 WL 1546504, at \*2; *Linvatec Corp.*, 2014 WL 186123, at \*4; *Dudek*, 2015 WL 11143084, at \*5.

***Redwire Interrogatory No. 10*** seeks for each statement identified in response to Redwire Interrog. No. 1 a narrative of the impact of each statement on the stock price, including whether it had "had some other effect." *See* ECF No. 96-1 at 9.

Again, this interrogatory does not "narrowly seek[]" information regarding Lead Plaintiff's damages. *See* Mot. at 10. For example, the First Amended Complaint lays out as required allegations of loss causation. ECF 47 at 103-4. A request for a narrative concerning damages is improper. *See* Middle District Discovery (2021) at § IV.C.2; *Bingham,* 2016 WL 1546504, at \*2; *Linvatec Corp.*, 2014 WL 186123, at \*4; *Dudek*, 2015 WL 11143084, at \*5. Regardless, it is premature expert discovery as discussed in II.B.3., and such information will be produced in in conformity with the Court's Amended Case Management and Scheduling Order (ECF No. 90).

***Cannito Interrogatory No. 1 and Read Interrogatory No. 1.*** Defendants argue these interrogatories simply "seek to identify which statements *are attributable to the respective defendants*" "because it "is not clear". *See* Mot. at 10-11. Again not so.  Per the Court's order, Lead Plaintiff has adequately alleged that Defendants Read and Cannito were control persons.  *See* ECF No. 47 ¶¶ 142-147;

- 11 -

ECF No. 62 at 12.  Defendants cannot credibly claim there is uncertainty about the statements attributable to the only two individual Defendants in the case. *See* Middle District Discovery (2021) at § IV.C.2. More critically, it is premature to ask Lead Plaintiff to provide any more information given the limited discovery on their control over the content and dissemination of the statements at issue.  *See Linvatec Corp.*, 2014 WL 186123, at *4; *Dudek,* 2015 WL 11143084, at *5.

 ***Cannito Interrogatory Nos. 2-7, 10 and Read Interrogatory Nos. 2-7, 10.*** Defendants mischaracterize these interrogatories as necessary to "clarify" whether "Read and/or Cannito had control over the false and misleading statements." *See* Mot. at 11.  They argue "[t]hese interrogatories do not ask Lead Plaintiff to state all of its facts, evidence, or legal theories. *Id.*  Not so. Interrog. Nos 2 and 5 ask for "any facts" demonstrating Defendant Cannito or Defendant Read exercised "authority or control" over the content and dissemination of each alleged false and misleading statement.  *See, e.g.,*  ECF No. 96-2 at 6, 8.  Interrog. Nos. 3 and 6 asks for "any witnesses that Lead Plaintiff expects to have knowledge" regarding Defendant Read's and Defendant Cannito's authority and control.  *Id.* at 6-8. Interrog. Nos. 4 and 7 ask for "any documents" demonstrating authority or control. *Id.* at 7-8. And Interrog. No. 10 asks Lead Plaintiff to "describe the facts known" supporting any allegation that Defendant Read or Defendant Cannito controlled the content of GPAC statements. *Id.* at 9.  Defendants thus request a narrative as to the

key element of Lead Plaintiff's Section 20(a) claim, which as noted above is well plead in the First Amended Complaint and has been upheld by the Court. These are thus improper contention interrogatories, overbroad, and, at best, premature given the discovery provided to date. *See, e.g., See* Middle District Discovery (2021) at § IV.C.2 and § IV.C.4; *Bingham,* 2016 WL 1546504, at *2; *Linvatec Corp.*, 2014 WL 186123, at *4; *Dudek*, 2015 WL 11143084, at *5.

***Cannito Interrogatory Nos. 8-9 and Read Interrogatory Nos. 8-9*** ask "[d]oes Lead Plaintiff allege" Defendant Cannito or Defendant Read "participated in the management of GPAC" and if so to "describe the facts known." *See, e.g.,* ECF No. 96-2 at 8-9. Lead Plaintiff fully answered he currently makes no such allegation, but reserved his objections as discovery "may uncover evidence." *Id.; see also In re Domestic Air Transp. Antitrust Litig.*, 1992 WL 120351, at *2 (N.D. Ga. 1992) (rejecting a motion to compel responses to contention interrogatories "before meaningful discovery ha[d] been completed"); *Dudek*, 2015 WL 11143084, at *5.

      **c.     Defendants' Case Law Does Not Support, and in Some Cases Contradicts, Their Arguments That Lead Plaintiff's Objections are Improper.**

Defendants' case law does not support their arguments regarding the propriety of Lead Plaintiff's objections. *See* Mot. at 7-8. Defendants acknowledge *Petruzzella v. Allstate Ins. Co.*, 2020 WL 13369663, at *1-2 (M.D. Fla. 22, 2020) for the broadly accepted position that interrogatories purporting to "require a detailed narrative of

the opposing parties' case" are improper. Mot. at 8.  In *Petruzzella*, the court found interrogatories asking "Defendant to sort through all of Plaintiff's medical bills and '[l]ist all reasons why' it believes specific bills are unrelated to the accident and/or unreasonable" and "Defendant to explain in detail its valuation of portions of Plaintiff's damages" impermissibly sought "a detailed narrative of [Defendant's] case." 2020 WL 13369663 at *2. Here, Defendants seek much more than the plaintiff in *Petruzzella*. The interrogatories seek Lead Plaintiff to identify all false and misleading statements, and for each statement, identify the facts, witnesses, and documents (and in some cases to explain why or how) supporting the key issues of liability in this case (*i.e.*, falsity, control, and price impact).  *See* ECF Nos. 96-1-3.

Cases cited by Defendants also find that contention interrogatories served at the beginning of discovery are premature.  *See, e.g., In re Reliance Fin. & Inv. Grp., Inc.*, 2006 WL 8435541, at *4 (S.D. Fla. Feb. 14, 2006) ("Due to the nature of contention interrogatories, they are more appropriately used after a substantial amount of discovery has been concluded – typically at the end of the discovery period.")[3]; *Christie v. Royal Caribbean Cruises, Ltd.,* 2021 WL 2217494, at *1 (S.D. Fla. May 29, 2021) (noting "the well accepted position that contention

---

[3] Notably, *In re Reliance* found that an interrogatory seeking "the factual basis" of a specific issue still qualified as a contention interrogatory.  *See In re Reliance Fin. & Inv. Grp., Inc.*, 2006 WL 8435541, at *4. *In re Reliance* cuts against Defendants' position that since the Interrogatories at issue do not ask "Lead Plaintiff to state all of its facts, evidence, or legal theories[,] [t]hey are thus not contention interrogatories." *See* Mot. at 11.

- 14 -

interrogatories are often premature until the end of discovery").

*Hendricks v. Mirabilis Ventures, Inc.*, 2008 WL 423566, at \*2 (M.D. Fla. Feb. 13, 2008), which addresses a party's need to answer discovery in the early stages of a case, is also distinguishable. In *Hendricks*, the contention interrogatory involved a defendant's affirmative defenses, and a defendant arguably does not need substantial discovery to provide the factual bases for those defenses. 2008 WL 423566, at \*2. The interrogatories at issue here concern Lead Plaintiff's claims against Defendants, and it is Defendants, not Lead Plaintiff, that have possession of the witnesses and documents that will establish the facts and elements of the claims.

### d. Lead Plaintiff Answered the Interrogatories Based on Current Knowledge, and Iterative Supplementations Are Not Efficient Uses of the Parties' Resources.

Finally, Defendants claim that Lead Plaintiff should be ordered to respond to interrogatories "based on the currently available information and documents" rather than wait for substantial discovery to be completed. *See* Mot. at 7. Otherwise, Defendants claim, there will be a "surge of discovery and motion practice" at the end of the discovery that would overwhelm the parties and the Court. *Id.*

To start, it is simply incorrect that Lead Plaintiff "decline[d] to answer the Interrogator[ies] altogether," as Defendants claim. *See* Mot. at 7. For each interrogatory at issue, Lead Plaintiff cited the First Amended Complaint and/or the Amended Initial Disclosures. *See* ECF Nos. 96-1, 96-2, and 96-3. These materials

- 15 -

identify the alleged false and misleading statements, and Lead Plaintiff's understanding of the facts and witnesses with knowledge concerning the claims. *Id.* To require Lead Plaintiff to replicate these documents in a response is simply oppressive and harassing.

Lead Plaintiff further contends that it is not efficient for Lead Plaintiff to supplement interrogatories with limited discovery, meet and confer with Defendants, raise any potential disputes, and *then* further supplement the responses once discovery is substantially completed. To that end, should the Court find the current answers need more detail, it should "order that the interrogatory need not be answered until designated discovery is complete, or until a pretrial conference or some other time." *See* Fed. R. Civ. P. 33(a)(2).

**2.    Lead Plaintiff Properly Referenced the First Amended Complaint and Amended Initial Disclosures in the Responses.**

Lead Plaintiff's reference to the First Amended Complaint and First Amended Disclosures are sufficient. *See* Mot. at 12-13.  Federal Rule of Civil Procedure 26(b)(2)(C)(i) states that "the court must limit the frequency or extent of discovery" if the discovery sought "can be obtained from some other source that is more convenient, less burdensome, or less expensive." The information sought by Defendants can be obtained from the First Amended Complaint, motion to dismiss briefing, and Amended Initial Disclosures, which are "more convenient" and "less burdensome" than answering the interrogatories without reference to these pleadings

and earlier discovery responses.

As explained above, the PSLRA required that Lead Plaintiff detail "each statement alleged to have been misleading" in the complaint, and to state with "particularity" the facts showing why the statements are misleading and Defendants' knowledge of their falsity. *See* 15 U.S.C. § 78u-4(b)(1)(B), (b)(2)(A). Defendants argued that Lead Plaintiff's First Amended Complaint failed to identify material misstatements or omissions and failed to "allege facts supporting a strong inference of scienter for *each* defendant with respect to *each* violation." *See* ECF No. 48 at 8-16, 23. The Court rejected these arguments and found that the First Amended Complaint met the strict requirements of the PSLRA. ECF No. 62 at 6-11. Defendants also put together their own appendix of Lead Plaintiff's false and misleading statements (*see* Kathrein Decl., Ex. B (ECF No. 48) at 33-39, identifying 11 documents with multiple statements) to which Lead Plaintiff responded. *See* Kathrein Decl., Ex. C (ECF No. 58) at 29-40 (identifying 15 documents with additional multiple statements). In turn, the Amended Initial Disclosures lay out the documents and witnesses upon which Lead Plaintiff, at this time, plans to rely. Therefore, pursuant to Rule 26(b)(2)(C)(i), the discovery sought by Defendants can be found in the First Amended Complaint, the appendices to the motion to dismiss briefing, and the Amended Initial Disclosures. Defendants have not explained why

Lead Plaintiff should replicate the relevant portions of these documents in the interrogatory responses.

Defendants' reliance on *Friskney v. Am. Park & Play, Inc.*, 2005 WL 8156082, at *2 (S.D. Fla. June 21, 2005) does not compel a different conclusion. *Friskney* involved an interrogatory related to a damages calculation, not the identification of alleged false and misleading statements that have already survived a motion to dismiss and were detailed in an amended complaint. Furthermore, the information sought in *Friskney* was more readily available to the party answering discovery. Here, the substantive evidence related to the statements are in the possession of the party serving the discovery request.

Similarly, *Schwarz v. City of Treasure Island*, 2010 WL 11474978, at *2 (M.D. Fla. Oct. 13, 2010) involved a response to an interrogatory that came when the "case ha[d] progressed" to a degree that a "contention interrogatory" was "appropriate." Given the case posture, the court found that defendants' reference to its disclosures was insufficient. *Id.* Here, discovery has been limited and Defendants are in the possession of the information relevant to the interrogatories. *See supra*, §§ I, II.B.1.c.

### 3. Redwire Interrogatory No. 10 Prematurely Requests Expert Discovery, and Merits Reports Are Not Due Until Fall 2024.

Lead Plaintiff properly objected to Redwire Interrogatory No. 10 based on it seeking premature expert discovery. *See* Mot. at 13-14. Under the current schedule,

merits expert reports are not due until September 27, 2024. *See* ECF No. 90. Lead Plaintiff sees no reason why the parties' carefully negotiated schedule – put in place to set appropriate deadlines for disclosures and motions – should be disturbed based on a given interrogatory.

In fact, Defendants' cited case law recognizes that a party can properly object to an interrogatory when it seeks premature expert discovery. *See Petruzzella*, 2020 WL 13369663, at *2 (denying motion based in part on "the interrogatories seek[ing] information that is the subject of expert discovery" and noting "[e]xpert opinions are normally obtained through receipt of the expert's report and depositions if needed").

The other cases cited by Defendants are factually distinguishable. *Christie v. Royal Caribbean Cruises, Ltd.*, 2021 WL 2217494, at *2 (S.D. Fla. May 29, 2021) involved a party not responding to an interrogatory that touched on expert work at the close of fact discovery. That is not the case here. *Essex Builders Grp., Inc. v. Amerisure Ins. Co.*, 230 F.R.D. 682, 685 (M.D. Fla. 2005) is a non-securities class action case and dealt with an interrogatory seeking a party to "itemize the 'exact amount of monetary damages.'" That interrogatory is far different from Redwire's Interrogatory No. 10, which essentially asks Lead Plaintiff to detail the impact of each false and misleading statement on Redwire's stock price. Any discussion of the impact on Redwire's stock price caused by the false and misleading statements relies almost exclusively on expert work.

Finally, the "premature expert discovery" objection is still proper considering that since responding Lead Plaintiff has filed class certification motion and accompanying expert declaration. *See* Mot. at 14. Merits expert discovery has not yet started in this case, and Interrogatory No. 10 invariably touches on expert work related to damages and price impact. *See* ECF No. 96-1 at 9-10.

## III.    CONCLUSION

For the foregoing reasons, the Court should deny Defendants' motion in its entirety.

Dated: March 13, 2024

Respectfully submitted,

**HAGENS BERMAN SOBOL SHAPIRO LLP**

By: *s/ Reed R. Kathrein*
Reed R. Kathrein (Fla. Bar. No. 262161)
reed@hbsslaw.com
Lucas E. Gilmore (admitted *pro hac vice*)
lucasg@hbsslaw.com
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001

Steve W. Berman (admitted *pro hac vice*)
steve@hbsslaw.com
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

Peter A. Shaeffer (admitted *pro hac vice*)
petersh@hbsslaw.com
455 N. Cityfront Plaza Drive, Suite 2410
Chicago, IL 60611
Telephone: (708) 628-4949
Facsimile: (708) 628-4950

*Lead Counsel for Lead Plaintiff
Jared Thompson*

**THE SCHALL LAW FIRM**
Brian Schall (admitted *pro hac vice*)
brian@schallfirm.com

*Additional Counsel for Lead Plaintiff*

**BUCKNER + MILES**
David M. Buckner (Fla. Bar No. 60550)
david@bucknermiles.com

*Liaison Counsel for Lead Plaintiff*