# EXHIBIT B

Reed Kathrein (Fla. Bar. No. 262161)
Lucas E. Gilmore (admitted *pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 300
Berkeley, CA  94710
Telephone: (510) 725-3000
Facsimile:  (510) 725-3001
Email:  reed@hbsslaw.com
       lucasg@hbsslaw.com

*Lead Counsel for Lead Plaintiff Jared Thompson*

[Additional counsel appear on signature page.]

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| JED LEMEN, Individually and On Behalf of All Others Similarly Situated,<br><br>               Plaintiff,<br><br>v.<br><br>REDWIRE CORPORATION f/k/a GENESIS PARK ACQUISITION CORP., PETER CANNITO, and WILLIAM READ,<br><br>               Defendants | Case No. 3:21-cv-01254-TJC-PDB<br><br>**LEAD PLAINTIFF'S 30(b)(6) AMENDED NOTICE OF VIDEOTAPED DEPOSITION TO DEFENDANT REDWIRE CORPORATION f/k/a GENESIS PARK ACQUISITION CORP.**<br><br>CLASS ACTION |

LEAD PLTFF'S 30(B)(6) AMENDED
NOTICE OF VIDEOTAPED DEPOSITION
CASE NO. 3:21-CV-01254-TJC-PDB

PLEASE TAKE NOTICE that, pursuant to Rules 26 and 30(b)(6) of the Federal Rules of Civil Procedure, Lead Plaintiff Jared Thompson ("Lead Plaintiff"), by and through his undersigned counsel, will take the deposition of Defendant Redwire Corporation f/k/a Genesis Park Acquisition Corporation ("Redwire" or the "Company") on a date to be agreed upon by the parties, and at a location mutually agreed upon by the parties.

Pursuant to Rule 30(b)(6), Redwire must designate and produce one or more representatives, as may be required, who possess(es) the most knowledge to testify on Redwire's behalf for each of the topics of examination identified below.  Lead Plaintiff requests that Redwire produce a copy of each designated representative's current curriculum vitae or resume at least two business days before the deposition.

The deposition(s) will be taken before a person authorized to by law to administer oaths, pursuant to Rule 28, and will proceed in accordance with the Federal Rules of Civil Procedure.  The deposition(s) will be recorded by stenographic and audiovisual means and will continue from day to day until completed, excluding Saturdays, Sundays, and Court-recognized holidays.

This amended notice reflects meet and confer discussions with Redwire over the original notice served on September 6, 2023.  Lead Plaintiff reserves the right to notice and conduct one or more Rule 30(b)(6) depositions of Redwire on separate, non-duplicative topics.

**Duty to Designate**

By designating a representative, Redwire indicates its representative has authority to speak on its behalf on the matters listed in the notice – not only to facts, but also to subjective beliefs and opinions.[1]

**Duty to Substitute**

If it becomes clear that the chosen representative is unable to respond to questions on the matters listed in this notice for which he or she has been designated, Redwire must immediately

---

[1] *QBE Ins. Corp. v. Jorda Enters., Inc.*, 277 F.R.D. 676, 689 (S.D. Fla. 2012).

LEAD PLTFF'S 30(B)(6) AMENDED
NOTICE OF VIDEOTAPED DEPOSITION             -1-
Case No. 3:21-cv-01254-TJC-PDB

provide a substitute knowledgeable witness. This is required even if Redwire's initial designation was made in good faith.[2]

**Duty to Prepare**

The testimony elicited in the deposition represents Redwire's knowledge, not the individual deponent's knowledge. Pursuant to Rule 30(b)(6), Redwire must conduct a thorough investigation in response to the deposition notice and must prepare a witness to testify to all maters "known or reasonably available to the organization." Therefore, if Redwire's designee is not knowledgeable about the matters specified in the deposition notice, it must nonetheless prepare such designee to give knowledgeable, binding answers.[3]

"Reasonably available" information includes all documents that the organization has the authority, legal right, or practical ability to obtain.[4] An inadequately prepared designated witness will amount to an impermissible refusal to answer and a sanctionable failure to appear.[5]

## DEFINITIONS

1. "Action" refers to the above-captioned action.

2. "All," "any" or "each" shall each be construed as encompassing any and all.

3. "And" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the request all responses that might otherwise be construed to be outside the scope of the request.

4. "Board of Directors" or "Board" means the Board of Directors of GPAC, Old Redwire, and New Redwire[6] during the Relevant Period (as defined below) and all committees of the Board of Directors, unless otherwise specified.

[2] *Miller v. Johnson & Johnson*, 2014 WL 12617444, at *3 (M.D. Fla. July 14, 2014).

[3] *Dragon Jade Int'l, Ltd. v. Ultroid, LLC*, 2018 WL 11319090, at *2–3 (M.D. Fla. Dec. 28, 2018); *Hannah v. Armor Corr. Health Servs., Inc.*, 2020 WL 10692760, at *4 (M.D. Fla. June 30, 2020).

[4] *Hannah*, 2020 WL 10692760, at *4.

[5] *Dragon Jade Int'l, Ltd.*, 2018 WL 11319090, at *2-3.

[6] *See, e.g.,* Complaint ¶¶ 33, 41 (discussing Old Redwire and New Redwire).

LEAD PLTFF'S 30(B)(6) AMENDED
NOTICE OF VIDEOTAPED DEPOSITION          -2-
Case No. 3:21-cv-01254-TJC-PDB

5. "Communication" or "Communications" refers to any exchange of information, words, numbers, pictures, charts, studies, or graphs by any means of transmission, sending, or receipt of information of any kind by or through any means including, but not limited to, personal delivery, speech, writings, Documents (as defined herein), language (machine, foreign, or otherwise) of any kind, computer electronics or Electronically-Stored Information (as defined herein), sound, radio or video signals, telecommunication, telephone, facsimile, mail, film, photographic film of all types, or other media of any kind. The term "Communication" also includes, without limitation, all inquiries, discussions, conversations, Correspondence (as defined herein), negotiations, agreements, presentations, understandings, meetings (as defined herein), notices, requests, responses, demands, complaints, press, publicity, or trade releases.

6. "Complaint" refers to the First Amended Complaint filed on June 17, 2022 (ECF No. 47) in this Action. As used herein, the paragraph symbol (¶) followed by a specific number refers to the corresponding numbered paragraph of the Complaint and the allegation or information contained therein.

7. "Concerning" means relating to, referring to, describing, evidencing, regarding or constituting.

8. "Correspondence" means any letter, memorandum, note, e-mail, facsimile, text message, instant message, internet message board posting, smartphone message, or any other writing containing a Communication from one person or persons to another person or persons.

9. "Document" is intended to have the broadest possible meaning under Rule 34(a) of the Federal Rules of Civil Procedure, and includes, without limitation, electronic or computerized data compilations; electronic file backup tapes; hard drives and images of hard drives; all drafts; Communications; Correspondence; memoranda; records; presentations; books; manuals; reports and summaries of personal conversations or interviews; diaries; graphs; charts; diagrams; tables; photographs; recordings; tapes; microfilms; minutes, transcripts and summaries of meetings (as defined herein) or conferences; records and reports of consultants; press releases; stenographic, handwritten, or any other notes; work papers; checks and check vouchers; check stubs and receipts;

LEAD PLTFF'S 30(B)(6) AMENDED
NOTICE OF VIDEOTAPED DEPOSITION          -3-
Case No. 3:21-cv-01254-TJC-PDB

statements, scripts, questions and answers ("Q&A's"), transcripts of testimony, subpoenas and any paper or writing of whatever description, including any computer database or information contained in any computer although not yet printed out. A draft or nonidentical copy of any Document is a separate Document within the meaning of this term.

10.    "Electronically-Stored Information" or "ESI" - unless otherwise superseded in this case by an Order Governing the Use of Electronically-Stored Information, ESI is defined herein to include the following:

(a)    all items covered by Fed. R. Civ. P. 34(a)(1)(A);

(b)    information or data that is generated, received, processed, and recorded by computers and other electronic devices, including metadata (e.g., author, recipient, file creation date, file modification date, etc.);

(c)    files, information, or data saved on backup tapes or hard drives;

(d)    internal or external web sites;

(e)    output resulting from the use of any software program, including, without limitation, word processing Documents, spreadsheets, database files, charts, graphs and outlines, electronic mail, instant messenger (or similar programs), bulletin board programs, operating systems, source code, PRF files, PRC files, batch files, ASCII files, and all miscellaneous media on which they reside regardless of whether said electronic data exists in an active file, a deleted file, or file fragment; and

(f)    activity listings of electronic mail receipts and transmittals; and any and all items stored on computer memories, hard disks, USB flash drives, CD-ROM, magnetic tape, microfiche, or on any other media for digital data storage, or transmittal, such as, but not limited to, personal digital assistants (e.g., iPads), hand-held wireless devices (e.g., iPhones, Android, or BlackBerry smartphones), or similar devices, and file folder tabs, or containers and labels appended to, or relating to, any physical storage device associated with each original or copy of all Documents requested herein.

LEAD PLTFF'S 30(B)(6) AMENDED
NOTICE OF VIDEOTAPED DEPOSITION          -4-
Case No. 3:21-cv-01254-TJC-PDB

11.    "Employee" or "Employees" means any person who acted or purported to act on behalf of an entity, or another person or persons including, but not limited to, all present and former officers, directors, executives, Board members, partners, principals, managers, staff personnel, accountants, agents, representatives, in-house attorneys, independent contractors, advisors, and consultants of such entity, person, or persons.

12.    "Executive Defendants" refers to Peter Cannito and William Read.

13.    "GPAC" refers to Genesis Park Acquisition Corporation.

14.    "Inappropriate Conduct" refers to the questionable accounting or auditing matters as detailed in the Whistleblower Policy adopted on September 2, 2021.

15.    "Including" is used to emphasize the type of Document requested and does not limit the request in any way.

16.    "Meeting" or "Meetings" refers to the contemporaneous presence of any natural person (including by telephone, Skype, Zoom or any other electronic meeting format) for any purpose, whether or not such presence was by chance or prearranged, and whether or not the meeting was formal or informal or occurred in connection with some other activity. The term "Meeting" also includes presentations and conferences.

17.    "Person" or "persons" includes any natural person, firm, association, organization, partnership, limited partnership, sole proprietorship, trust, corporation, or legal or governmental entity, association, or body.

18.    "Redwire" refers to Redwire Corporation f/k/a Genesis Park Acquisition Corporation and any of its subsidiaries, divisions, or affiliates (foreign and domestic), predecessors, successors, including Old and New Redwire as referred to in the Complaint, and any present and former officers, directors, Employees (as defined herein), agents, representatives, members of its Board of Directors, accountants, attorneys, advisors, and all other persons and agents acting or purporting to act on its behalf.

19.    "Policy" or "Policies" means any rule, procedure, practice, or course of conduct, whether formal or informal, written or unwritten, recorded or unrecorded, that was recognized or followed, explicitly or implicitly.

20.    "Refer" or "Relate" or "Referring" or "Relating" means reflect, record, memorialize, discuss, describe, compare, consider, concern, constitute, embody, evaluate, analyze, review, report on, comment on, impinge upon, or impact the subject matter of the request.

21.    "Senior Management" includes the Executive Defendants as well as any past or present Redwire Employee who directly reports/reported to:

     (a)    any of the Executive Defendants; or

     (b)    any officer of Redwire, including the Chief Executive Officer, President(s), Chief Financial Officer(s), Chief Operating Officer(s), Chief Information Officer, Chief Technology Officer, Chief Compliance Officer, Chief Accounting Officer and Corporate Controller(s).

22.    "Whistleblower Complaint(s)" means any whistleblower complaint(s) relating to accounting or auditing matters, internal controls over financial reporting, "tone at the top," or other related Inappropriate Conduct.

23.    "You" "Your" or "Yours" means Redwire, and all other persons acting or purporting to act on Redwire's behalf, including, but not limited to, the Individual Defendants and Your Employees, in-house and external attorneys, accountants, representatives, agents, or other persons purporting to act on behalf of Redwire.

## RELEVANT TIME PERIOD

Unless otherwise stated, the relevant period for these topics is January 1, 2020, to the present.

## DESIGNATION OF TESTIMONY

In accordance with Rule 30(b)(6) of the Federal Rules of Civil Procedure, Redwire must designate and produce one or more representative to testify on the following topics:

**A.    "Tone at the Top"**

1.    The April 1, 2022 disclosure that Redwire "did not maintain an effective control environment, as certain members of senior management failed to consistently message and set certain aspects of an appropriate tone at the top. Specifically, certain members of senior management failed to reinforce the need for compliance with certain of the Company's accounting and finance policies and procedures, including reinforcement of appropriate communication." This topic shall include:

a.    The identity of the "senior management" referenced in the April 1, 2022 disclosure.

b.    The specific "accounting and finance policies and procedures" that "senior management failed to reinforce the need for compliance."

c.    The specific "appropriate communication" senior management failed to "reinforce[]."

d.    All facts gathered or considered in making the "tone at the top" findings or conclusions, including the persons involved, the timing (and location if applicable) of any investigation related to "tone at the top", and the identification, location, and custodians of any documents or communications relating to any investigation of "tone at the top."

e.    The extent to which the "tone at the top" finding overlapped with the findings resulting from any Audit Committee investigation.

2.    For all individuals identified in response to topic 1, Lead Plaintiff seeks identification of:

a.    if applicable, their job titles, employment status, and predecessor(s) or successor(s);

b.    the scope of their duties or responsibilities

c.    their chain of command and lines of direct or indirect reporting;

d.    their office location;

LEAD PLTFF'S 30(B)(6) AMENDED
NOTICE OF VIDEOTAPED DEPOSITION          -7-
Case No. 3:21-cv-01254-TJC-PDB

e. the type of and subject matter of information under their control;

f. the scope and time period(s) such information encompasses; and

g. in the case of individuals no longer employed or contracted to Redwire, the last known addresses and contact information for such former employee/contractor.

3. The data storage platforms, repositories, and physical locations of potentially relevant ESI and documents relating to the topics in Section A, whether individually, departmentally, or centrally retained within Redwire, or otherwise maintained offsite (or some combination of both), including:

a. document management systems ("DMS") and DMS backup systems, including the identity and description of any electronic document management system used by Redwire. An explanation of the extent to which any such system can be searched for documents, including by "keywords";

b. e-mail, e-mail journaling, and e-mail backup systems;

c. shared drives (i.e., collaboration platforms, including SharePoint, Slack, Microsoft Team, E-rooms, groupware, company intranet, etc.) and shared drive backup systems;

d. voicemail and voicemail backup systems;

e. instant messaging (including DM capable applications like iMessage, Facebook Messaging Snapchat, Signal, Telegram, WhatsApp, Wickr, Theema, etc.) and instant message backup systems;

f. social media;

g. offsite storage;

h. records retention policies or schedules for all records, including hard copy documents;

i. the identity and description of any file naming protocols or policies in place at Redwire during the relevant period, including the assignment and use of "keywords"; and

LEAD PLTFF'S 30(B)(6) AMENDED
NOTICE OF VIDEOTAPED DEPOSITION -8-
Case No. 3:21-cv-01254-TJC-PDB

j.   all security protocols and procedures related to the security and access to each source of potentially relevant ESI and documents.

**B.    William Read**

4.    The June 1, 2022 announcement that William Read would "transition from his role as Chief Financial Officer." This topic shall include:

    a.  The decision to "transition" Mr. Read from his role as CFO, including but not limited to the role of any Whistleblower Complaint and/or Audit Committee investigation in the decision.

    b.  All facts gathered or considered in the decision, including the persons involved, the timing (and location if applicable) of any investigation related to the decision, the identification, location, and custodians of any documents or communications relating to the decision.

    c.  The timeline of discussions related to Mr. Read's role at Redwire following the revelation of the Gievers' Whistleblower Complaint and the Audit Committee investigation.

    d.  Mr. Read's separation agreement, including the negotiations and locations and existence of communications related to Mr. Read's transition and the terms of the agreement.

5.    For all individuals identified in response to topic 4, Lead Plaintiff seeks identification of:

    a.  if applicable, their job titles, employment status, and predecessor(s) or successor(s);

    b.  the scope of their duties or responsibilities;

    c.  their chain of command and lines of direct or indirect reporting;

    d.  their office location;

    e.  the type of and subject matter of information under their control;

    f.  the scope and time period(s) such information encompasses; and

g. in the case of individuals no longer employed or contracted to Redwire, the last known addresses and contact information for such former employee/contractor.

6. The data storage platforms, repositories, and physical locations of potentially relevant ESI and documents relating to the topics in Section B, whether individually, departmentally, or centrally retained within Redwire, or otherwise maintained offsite (or some combination of both), including:

a. document management systems ("DMS") and DMS backup systems, including the identity and description of any electronic document management system used by Redwire. An explanation of the extent to which any such system can be searched for documents, including by "keywords";

b. e-mail, e-mail journaling, and e-mail backup systems;

c. shared drives (i.e., collaboration platforms, including SharePoint, Slack, Microsoft Team, E-rooms, groupware, company intranet, etc.) and shared drive backup systems;

d. voicemail and voicemail backup systems;

e. instant messaging (including DM capable applications like iMessage, Facebook Messaging Snapchat, Signal, Telegram, WhatsApp, Wickr, Theema, etc.) and instant message backup systems;

f. social media;

g. offsite storage;

h. records retention policies or schedules for all records, including hard copy documents;

i. the identity and description of any file naming protocols or policies in place at Redwire during the relevant period, including the assignment and use of "keywords"; and

j. all security protocols and procedures related to the security and access to each source of potentially relevant ESI and documents.

LEAD PLTFF'S 30(B)(6) AMENDED
NOTICE OF VIDEOTAPED DEPOSITION          -10-
Case No. 3:21-cv-01254-TJC-PDB

DATED:  December 21, 2023               **HAGENS BERMAN SOBOL SHAPIRO LLP**

By: *s/ Reed R. Kathrein*
    Reed R. Kathrein (Fla. Bar. No. 262161)
Lucas E. Gilmore (admitted *pro hac vice*)
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
Email: reed@hbsslaw.com
Email: lucasg@hbsslaw.com

Steve W. Berman (admitted *pro hac vice*)
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
Email: steve@hbsslaw.com

Peter A. Shaeffer (admitted *pro hac vice*)
455 North Cityfront Plaza Drive, Suite 2410
Chicago, IL 60611
Telephone: (708) 628-4949
Facsimile: (708) 628-4950
Email: petersh@hbsslaw.com


*Lead Counsel for Lead Plaintiff*
*Jared Thompson*

Brian Schall (*pro hac vice* forthcoming)
THE SCHALL LAW FIRM
2049 Century Park East, Suite 2460
Los Angeles, CA 90067
Telephone: (424) 303-1964
brian@schallfirm.com

*Additional Counsel for Lead Plaintiff Jared Thompson*

LEAD PLTFF'S 30(B)(6) AMENDED
NOTICE OF VIDEOTAPED DEPOSITION          -11-
Case No. 3:21-cv-01254-TJC-PDB

David M. Buckner (Fla. Bar No. 60550)
BUCKNER + MILES
2020 Salzedo Street, Suite 302
Coral Gables, FL 33134
Telephone: (305) 964-8003
Facsimile: (786) 523-0485
Email: david@bucknermiles.com

*Liaison Counsel for Lead Plaintiff
Jared Thompson*

LEAD PLTFF'S 30(B)(6) AMENDED
NOTICE OF VIDEOTAPED DEPOSITION          -12-
Case No. 3:21-cv-01254-TJC-PDB

## CERTIFICATE OF SERVICE

I, Reed R. Kathrein, hereby certify that on December 21, 2023, I caused a true and correct copy of the foregoing LEAD PLAINTIFF'S 30(b)(6) AMENDED NOTICE OF VIDEOTAPED DEPOSITION TO DEFENDANT REDWIRE CORPORATION f/k/a GENESIS PARK ACQUISITION CORP. to be served on counsel of record for Defendants in the above-captioned action via email to the electronic addresses for counsel of record.

I certify under penalty of perjury that the foregoing is true and correct. Executed on December 21, 2023.

/s/ *Reed R. Kathrein*
Reed R. Kathrein

LEAD PLTFF'S 30(B)(6) AMENDED
NOTICE OF VIDEOTAPED DEPOSITION          -13-
Case No. 3:21-cv-01254-TJC-PDB