# EXHIBIT C

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

|  |  |
|---|---|
| JED LEMEN, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiffs,<br><br>v.<br><br>REDWIRE CORPORATION f/k/a GENESIS PARK ACQUISITION CORP., PETER CANNITO, and WILLIAM READ,<br><br>    Defendants. | Case No.: 3:21-CV-1254-TJC-PDB<br><br><u>CLASS ACTION</u> |

## DEFENDANTS' OBJECTIONS TO LEAD PLAINTIFF'S 30(B)(6) AMENDED NOTICE OF VIDEOTAPED DEPOSITION TO DEFENDANT REDWIRE CORPORATION F/K/A GENESIS PARK ACQUISITION CORP.

Defendant REDWIRE CORPORATION f/k/a GENESIS PARK ACQUISITION CORP. ("Redwire"), hereby responds to Lead Plaintiff JARED THOMPSON's ("Lead Plaintiff") *30(b)(6) Notice of Videotaped Deposition to Defendant Redwire Corporation f/k/a Genesis Park Acquisition Corp.* (the "Notice") as follows:

## I.   Preliminary Objections

A. Definitions

1. "Board of Directors" or "Board" means the Board of Directors of GPAC, Old Redwire, and New Redwire during the Relevant Period

1

(as defined below) and all committees of the Board of Directors, unless otherwise specified.

**Response: Redwire objects to this definition as overbroad to the extent that it requires preparation of a witness on matters related to any entity that existed prior to September 2, 2021. Redwire is the result of a business combination consummated on that date. Redwire objects to the extent the definitions within the Notice require Redwire to prepare a witness as to knowledge of other entities than the one to which the Notice is directed.**

2. "GPAC" refers to Genesis Park Acquisition Corporation.

**Response: Redwire objects to this definition as overbroad to the extent that it requires preparation of a witness on matters related to any entity that existed prior to September 2, 2021. Redwire is the result of a business combination consummated on that date. Redwire objects to the extent the definitions within the Notice require Redwire to prepare a witness as to knowledge of other entities than the one to which the Notice is directed.**

3. "Redwire" refers to Redwire Corporation f/k/a Genesis Park Acquisition Corporation and any of its subsidiaries, divisions, or affiliates (foreign and domestic), predecessors, successors, including Old and New Redwire as referred to in the Complaint, and any present and former officers, directors, Employees (as defined herein), agents, representatives, members of its Board of Directors, accountants, attorneys, advisors, and all other persons and agents acting or purporting to act on its behalf.

**Response: Redwire objects to this definition as overbroad to the extent that it requires preparation of a witness on matters related to any entity that existed prior to September 2, 2021. Redwire is the result of a business combination consummated on that date. Redwire objects to the extent the definitions within the Notice require Redwire to prepare a witness as to knowledge of other entities than the one to which the Notice is directed.**

4. "Senior Management" includes the Executive Defendants as well as any past or present Redwire Employee who directly reports/reported to:

     (a)  any of the Executive Defendants; or

     (b)  any officer of Redwire, including the Chief Executive Officer, President(s), Chief Financial Officer(s), Chief Operating Officer(s), Chief Information Officer, Chief Technology Officer, Chief Compliant Officer, Chief Accounting Officer and Corporate Controller(s).

**Response**: **Redwire objects to this definition to the extent it includes individuals other than the "senior management" referenced in the April 1, 2022 disclosure, as discussed in topic A.1. Insofar as this definition includes individuals outside such "senior management," it is overbroad and not proportionately tailored to the Redwire employees at issue in this case.**

5. "Whistleblower Complaint(s)" means any whistleblower complaint(s) relating to accounting or auditing matters, internal controls over financial reporting, "tone at the top," or other related Inappropriate Conduct.

**Response**: **Redwire objects to this definition because it seeks documents beyond those related to the single putative whistleblower complaint referenced in the Amended Complaint. To the extent that this definition seeks testimony in regard to any putative whistleblower complaint, without limitation and beyond the single putative whistleblower complaint at-issue in the operative complaint (if any exist at all), it seeks irrelevant information disproportionate to the needs of this case.**

B. Time Period: Unless otherwise stated, the relevant period for these topics is January 1, 2020, to the present.

**Response**: **Redwire objects to the time period proscribed in the Amended Notice, as it includes periods of time that are not relevant to the parties' claims or defenses, nor proportional to the needs of the case. The relevant events alleged in the Amended Complaint begin in early 2021 and run through June 1, 2022. Redwire thus will interpret the time limit as January 1, 2021 through June 1, 2022.**

C. Single 30(b)(6) Deposition

**Pursuant to Federal Rule of Civil Procedure 30, Lead Plaintiff is entitled to a single corporate representative deposition, limited to 1 day of 7 hours. Lead Plaintiff previously noticed topics for inquiry pursuant to a Rule 30(b)(6) deposition but has since voluntarily withdrawn such topics (the "Abandoned Topics"). Redwire reiterates its position that Lead Plaintiff's decision to proceed with only the topics identified in the present Notice waives any right to notice a subsequent deposition under Rule 30(b)(6) as to either (a) the Abandoned Topics, or (b) any other topic not identified in the present Notice. Redwire is not obligated under Rule 30(b)(6) to produce a corporate representative for deposition in serial fashion every time Lead Plaintiff finds the need to inquire about new topics. Subject to the objections stated herein, Redwire will produce a corporate representative *once* to answer questions only on the topics identified in the present Notice.**

II.   **Objections to Designated Topics**

A. **"Tone at the Top"**

1. The April 1, 2022 disclosure that Redwire "did not maintain an effective control environment, as certain members of senior management failed to consistently message and set certain aspects of an appropriate tone at the top. Specifically, certain members of senior management failed to reinforce the need for compliance with certain of the Company's accounting and finance policies and procedures, including reinforcement of appropriate communication." This topic shall include:
   a. The identity of the "senior management" referenced in the April 1, 2022 disclosure.
   b. The specific "accounting and finance policies and procedures" that "senior management failed to reinforce the need for compliance."
   c. The specific "appropriate communication" senior management failed to "reinforce[]."
   d. All facts gathered or considered in making the "tone at the top" findings or conclusions, including the persons involved, the timing (and location if applicable) of any investigation related to "tone at the top", and the identification, location,

4

and custodians of any documents or communications relating to any investigation of "tone at the top."

e. The extent to which the "tone at the top" finding overlapped with the findings resulting from any Audit Committee investigation.

**Response**: **Redwire does not object to subtopics 1(a)-(c).**

**Redwire objects to subtopic 1(d), as to the phrase "findings or conclusions," as this phrase is vague and ambiguous. It is unclear what is meant by this phrase, and no "findings or conclusions" are otherwise referred to in this topic. Accordingly, Redwire requests clarification regarding the information sought.**

**As to subtopics 1(d) and 1(e), to the extent such subtopics seek information regarding any investigation conducted by counsel and/or communications between Redwire and counsel regarding any investigation, Redwire objects on the basis of privilege.**

2. For all individuals identified in response to topic 1, Lead Plaintiff seeks identification of:
   a. if applicable, their job titles, employment status, and predecessor(s) or successor(s);
   b. the scope of their duties or responsibilities;
   c. their chain of command and lines of direct or indirect reporting;
   d. their office location;
   e. the type of and subject matter of information under their control;
   f. the scope and time period(s) such information encompasses; and
   g. in the case of individuals no longer employed or contracted to Redwire, the last known addresses and contact information for such former employee/contractor.

**Response**: **Redwire objects to this topic in its entirety as vague insofar as it may require the witness to provide information on individuals whose identification is unforeseeable. The witness thus cannot be expected to prepare the requested information for such unanticipated persons. Should such situation arise,**

**Redwire will follow-up after the deposition with the requisite information.**

**Redwire also objects to this topic in its entirety as overbroad and irrelevant to the extent it seeks employee data well beyond and unrelated to the scope of issues as framed in the Amended Complaint.**

**Redwire objects to subtopic 2(d) as overbroad and irrelevant. An employee's office location has no relevance to the matters at issue in this case.**

3. The data storage platforms, repositories, and physical locations of potentially relevant ESI and documents relating to the topics in Section A, whether individually, departmentally, or centrally retained within Redwire, or otherwise maintained offsite (or some combination of both), including:

   a. document management systems ("DMS") and DMS backup systems, including the identity and description of any electronic document management system used by Redwire. An explanation of the extent to which any such system can be searched for documents, including by "keywords";

   b. e-mail, e-mail journaling, and e-mail backup systems;

   c. shared drives (i.e., collaboration platforms, including SharePoint, Slack, Microsoft Team, e-rooms, groupware, company intranet, etc.) and shared drive backup systems;

   d. voicemail and voicemail backup systems;

   e. instant messaging (including DM capable applications like iMessage, Facebook Messaging Snapchat, Signal, Telegram, WhatsApp, Wickr, Theema, etc.) and instant message backup systems;

   f. social media;

   g. offsite storage;

   h. records retention policies or schedules for all records, including hard copy documents;

   i. the identity and description of any file naming protocols or policies in place at Redwire during the relevant period, including the assignment and use of "keywords"; and

   j. all security protocols and procedures related to the security and access to each source of potentially relevant ESI and documents.

6

**Response**: **Redwire objects to topic 3 in its entirety, as there is no basis for the information requested therein. There are no allegations in this case as to any discovery or document management issues or misconduct. This topic thus wholly lacks relevance in the absence of such issues and is otherwise disproportional to the needs of the case.**

## B. William Read

4. The June 1, 2022 announcement that William Read would "transition from his role as Chief Financial Officer." This topic shall include:

   a. The decision to "transition" Mr. Read from his role as CFO, including but not limited to the role of any Whistleblower Complaint and/or Audit Committee investigation in the decision.

   b. All facts gathered or considered in the decision, including the persons involved, the timing (and location if applicable) of any investigation related to the decision, the identification, location, and custodians of any documents or communications relating to the decision.

   c. The timeline of discussions related to Mr. Read's role at Redwire following the revelation of the Gievers' Whistleblower Complaint and the Audit Committee investigation.

   d. Mr. Read's separation agreement, including the negotiations and locations and existence of communications related to Mr. Read's transition and the terms of the agreement.

**Response**:

**Redwire objects to topic 4 in its entirety to the extent that it implicates any privileged communications or attorney mental impressions.**

**Redwire objects to subtopics 4(a) and 4(b) to the extent they mischaracterize Mr. Read's departure from Redwire as a unilateral "decision" by Redwire. Redwire further objects to subtopic 4(b) as it rests on a false narrative that Mr. Read's departure from Redwire was the result of any "investigation".**

**Redwire is unable to prepare a corporate representative to testify on circumstances that do not exist. Redwire agrees to prepare the witness on the topic of Mr. Read's departure from Redwire, but otherwise objects to these subtopics on the aforementioned bases.**

**Redwire does not object to subtopic 4(c) to the extent it seeks information on discussions related to Mr. Read's role at Redwire during the time periods identified through reference to the putative "Gievers' Whistleblower Complaint" and/or the "Audit Committee investigation". However, Redwire objects and will not prepare the witness as to the false implication that Mr. Read's employment was affected by such events.**

**Redwire objects to subtopic 4(d), to the extent such subtopic implicates privilege. Mr. Read's separation agreement was prepared by counsel, and the negotiations and communications leading to the consummation of such agreement similarly involved counsel; thus, certain information sought by this subtopic is privileged.**

5. For all individuals identified in response to topic 4, Lead Plaintiff seeks identification of:
   a. if applicable, their job titles, employment status, and predecessor(s) or successor(s);
   b. the scope of their duties or responsibilities;
   c. their chain of command and lines of direct or indirect reporting;
   d. their office location;
   e. the type of and subject matter of information under their control;
   f. the scope and time period(s) such information encompasses; and
   g. in the case of individuals no longer employed or contracted to Redwire, the last known addresses and contact information for such former employee/contractor.

<u>Response</u>: **Redwire objects to this topic in its entirety as vague insofar as it may require the witness to provide information on individuals whose identification is unforeseeable. The witness thus cannot be expected to prepare the requested information**

8

**for such unanticipated persons. Should such situation arise, Redwire will follow-up after the deposition with the requisite information.**

**Redwire also objects to this topic in its entirety as overbroad and irrelevant to the extent it seeks employee data well beyond and unrelated to the scope of issues in the Amended Complaint.**

**Redwire objects to subtopic 5(d) as overbroad and irrelevant. An employee's office location has no relevance to the matters at issue in this case.**

6. The data storage platforms, repositories, and physical locations of potentially relevant ESI and documents relating to the topics in Section B, whether individually, departmentally, or centrally retained within Redwire, or otherwise maintained offsite (or some combination of both), including:

   a. document management systems ("DMS") and DMS backup systems, including the identity and description of any electronic document management system used by Redwire. An explanation of the extent to which any such system can be searched for documents, including by "keywords";

   b. e-mail, e-mail journaling, and e-mail backup systems;

   c. shared drives (i.e., collaboration platforms, including SharePoint, Slack, Microsoft Team, e-rooms, groupware, company intranet, etc.) and shared drive backup systems;

   d. voicemail and voicemail backup systems;

   e. instant messaging (including DM capable applications like iMessage, Facebook Messaging Snapchat, Signal, Telegram, WhatsApp, Wickr, Theema, etc.) and instant message backup systems;

   f. social media;

   g. offsite storage;

   h. records retention policies or schedules for all records, including hard copy documents;

   i. the identity and description of any file naming protocols or policies in place at Redwire during the relevant period, including the assignment and use of "keywords"; and

   j. all security protocols and procedures related to the security and access to each source of potentially relevant ESI and documents.

9

**Response**: **Redwire objects to topic 6 in its entirety, as there is no basis for the information requested therein. There are no allegations in this case as to any discovery or document management issues or misconduct. This topic thus wholly lacks relevance in the absence of such issues.**

Dated: February 12, 2024.

/s/ *Alfred J. Bennington, Jr.*
**ALFRED J. BENNINGTON, JR., ESQ.**
Florida Bar No. 0404985
bbennington@shutts.com
**GLENNYS ORTEGA RUBIN, ESQ.**
Florida Bar No. 556361
grubin@shutts.com
**SHUTTS & BOWEN LLP**
300 South Orange Avenue, Suite 1600
Orlando, Florida 32801
Telephone: (407) 835-6755
Facsimile:  (407) 849-7255
and
**H. TIMOTHY GILLIS, ESQ.**
Florida Bar No. 0133876
tgillis@shutts.com
**JEFFREY S. YORK, ESQ.**
Florida Bar No. 987069
jyork@shutts.com
**SHUTTS & BOWEN LLP**
1000 Riverside Ave., Suite 800
Jacksonville, Florida 32204
Telephone: (904) 899-9926
*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 12th day of February, 2024, a true and correct copy of the foregoing has been served via electronic mail upon the following CM/ECF Participants:

10

Reed R. Kathrein, Esq. *(Pro Hac Vice)*
reed@hbsslaw.com
Lucas E. Gilmore, Esq. *(Pro Hac Vice)*
lucasg@hbsslaw.com
HAGENS    BERMAN    SOBOL
SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile:  (510) 725-3001
and
Peter A. Shaeffer, Esq. *(Pro Hac Vice)*
petersh@hbsslaw.com
HAGENS    BERMAN    SOBOL
SHAPIRO LLP
455 N. Cityfront Plaza Dr.
Suite #2410
Chicago, IL 60611
Telephone: 708-628-4955
and
Steve W. Berman, Esq. *(Pro Hac Vice)*
steve@hbsslaw.com
HAGENS    BERMAN    SOBOL
SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile:  (206) 623-0594

*Lead Counsel for Lead Plaintiff Jared Thompson*

Brian Schall, Esq. (pro hac vice forthcoming)
brian@schallfirm.com
THE SCHALL LAW FIRM
2049 Century Park East, Suite 2460
Los Angeles, CA 90067
Telephone: (424) 303-1964

*Additional Counsel for Lead Plaintiff Jared Thompson*
and

David M. Buckner, Esq.
david@bucknermiles.com
BUCKNER + MILES
2020 Salzedo Street, Suite 302
Coral Gables, FL 33134
Telephone: (305) 964-8003
Facsimile:  (786) 523-0485

*Liaison Counsel for Lead Plaintiff Jared Thompson*

/s/ *Alfred J. Bennington, Jr.*
**ALFRED J. BENNINGTON, JR., ESQ.**

11