# EXHIBIT E

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | |
|---|---|
| JED LEMEN, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiffs,<br><br>v.<br><br>REDWIRE CORPORATION f/k/a GENESIS PARK ACQUISITION CORP., PETER CANNITO, and WILLIAM READ,<br><br>    Defendants. | Case No.: 3:21-CV-1254-TJC-PDB<br><br><u>CLASS ACTION</u> |

**<u>DEFENDANTS' OBJECTIONS TO LEAD PLAINTIFF'S</u>**
**<u>SECOND 30(B)(6) NOTICE OF VIDEOTAPED DEPOSITION</u>**
**<u>TO DEFENDANT REDWIRE CORPORATION F/K/A GENESIS PARK</u>**
**<u>ACQUISITION CORP.</u>**

Defendant REDWIRE CORPORATION f/k/a GENESIS PARK

ACQUISITION CORP. ("Redwire"), hereby responds to Lead Plaintiff JARED

THOMPSON's ("Lead Plaintiff") *Second 30(b)(6) Notice of Videotaped*

*Deposition to Defendant Redwire Corporation f/k/a Genesis Park Acquisition*

*Corp.* (the "Second Notice") as stated below:

**I.    <u>Preliminary Objections</u>**

A. Definitions

    1. "Redwire" refers to Redwire Corporation f/k/a Genesis Park
       Acquisition Corporation and any of its subsidiaries, divisions, or

1

affiliates (foreign and domestic), predecessors, successors, including Old and New Redwire as referred to in the Complaint, and any present and former officers, directors, Employees (as defined herein), agents, representatives, members of its Board of Directors, accountants, attorneys, advisors, and all other persons and agents acting or purporting to act on its behalf.

**Response: Redwire objects to this definition as overbroad to the extent that it requires preparation of a witness on matters related to Genesis Park Acquisition Corporation. Redwire objects to the extent the definitions within the Second Notice require Redwire to prepare a witness as to knowledge of entities other than the one to which the Second Notice is directed. Moreover, prior to the business combination that led to the creation of the present Redwire entity, Genesis Park Acquisition Corporation itself was operated by a third-party over which Defendants have no control.**

B. Time Period: Unless otherwise stated, the relevant period for these topics is January 1, 2020, to the June 30, 2022.

**Response: Redwire objects to the time period proscribed in the Amended Notice, as it includes periods of time that are not relevant to the parties' claims or defenses, nor proportional to the needs of the case. The relevant events alleged in the Amended Complaint begin in early 2021 and run through Spring, 2022.**

**As such, early in discovery, the parties agreed to limit their document collection efforts to the time period of January 1, 2021 through June 1, 2022, because it provided a cushion of several months on the front and back end of the events alleged in the Amended Complaint from which to draw, giving each party's effort's the best odds at returning relevant documents. Redwire sees no basis for expanding the previously-agreed relevant time period.**

**Redwire thus agrees to prepare the witness on the noticed topics for the time period of January 1, 2021 through June 1, 2022, with the specification that for the period preceding September 2, 2021, the witness will be prepared to testify only as to "old-Redwire," that is, the privately held Redwire entity that existed before the de-SPAC merger. Redwire is incapable of preparing a witness to**

2

testify as to information held by Genesis Park Acquisition Corp., as Redwire does not possess such information. **However, and to be clear, to the extent the witness may have personal knowledge outside of the agreed-upon temporal scope, Lead Plaintiff may inquire into that witnesses' personal knowledge. But, the witness will not be educated or prepared on events outside of the previously agreed scope for purposes of providing 30(b)(6) testimony.**

C. Single 30(b)(6) Deposition

**Redwire maintains its position that Lead Plaintiff is only entitled to a single, seven (7) hour 30(b)(6) deposition as to all topics. To be clear, it is Redwire's position that the same individual may be the appropriate deponent on all topics noticed in the prior December 21, 2023** *Lead Plaintiff's 30(b)(6) Amended Notice of Videotaped Deposition to Defendant Redwire Corporation f/k/a Genesis Park Acquisition Company* **(the "Amended Notice") and the instant Second Notice. Therefore, it would not be appropriate to depose the same individual piecemeal, multiple times and/or exceeding the seven (7) hour threshold. Subject to the objections stated herein, Redwire will produce a corporate representative** *once* **to answer questions only on the topics identified in the present Second Notice and the Amended Notice. Redwire further reiterates its prior objection that once the Lead Plaintiffs take the deposition of Redwire's corporate representative on topics identified in the Second Notice and the Amended Notice, it would be improper for Lead Plaintiff to serve serial deposition notices on additional[1] topics.**

## II.    Objections to Designated Topics

### A. Basis of internal controls over financial reporting deficiencies disclosed in March and April 2022.

The basis for Redwire's disclosures regarding internal control deficiencies on March 31, 2022, April 1, 2022, and April 11, 2022 set forth in Complaint ¶¶ 75, 77-80, and 107, and how they differed from prior disclosures regarding internal

---

[1] Redwire notes that prior to the Amended Notice, Lead Plaintiff served a deposition notice with other additional topics for inquiry, but has since withdrawn them. Such withdrawn topics would be improper for deposition testimony after Redwire provides its corporate representative for deposition.

3

control deficiencies and related material audit adjustments contained in SEC filings during the Class Period (*see e.g.*, Complaint ¶¶ 52, 54, 59-60, 99-100) including:

    a.  Facts gathered and/or considered in preparing the disclosures.

    b.  The identity of Persons, outside auditors, or outside counsel involved in preparing the disclosures or who have knowledge of the basis of those disclosures.

    c.  The identification, location, and custodians of Documents and Communications underlying and supporting or used in the preparation of Redwire's disclosures.

**Response**: **Redwire does not object generally to deposition inquiry related to the referenced disclosures on March 31, April 1, and April 11, 2022. Nor does Redwire object to deposition inquiry on how the referenced March 31, April 1, and April 11, 2022 disclosures differ from prior disclosures made during the Class Period. Redwire notes; however, that the proposed Class Period as stated in the operative *First Amended Complaint* expires on March 31, 2022. Thus, Redwire reserves its right to dispute the admissibility or subsequent use of information related to events occurring outside the class period.**

**Redwire further does not object to subtopics A(b)-(c).**

**Redwire objects to subtopic A(a) on the basis of the attorney-client privilege, attorney work product privilege, and any other applicable privilege to the extent that such subtopic seeks (a) information regarding the substance of any investigation conducted by counsel including the mental impressions of such counsel, and/or (b) communications between Redwire and counsel regarding any investigation and/or the content of any of the referenced disclosures. Without waiver of these objections, Redwire agrees to the process of asserting privilege set forth in section 7 of Lead Plaintiff's letter dated February 20, 2024.**

**B. Basis of remediation efforts for internal controls over financial reporting disclosed in April 2022.**

The basis for Redwire's disclosures regarding measures to remediate the deficiencies in Redwire's internal controls on April 1, 2022 and April 11, 2022, and how they differed from prior disclosures regarding remediation efforts

contained in SEC filings during the Class Period (*see e.g.*, Complaint ¶¶ 52, 54, 59-60, 78-80, 101) including:

    a. Facts gathered and/or considered in preparing the disclosures.
    b. The identity of Persons, outside auditors, or outside counsel involved in preparing the disclosures or who have knowledge of the basis of those disclosures.
    c. The identification, location, and custodians of Documents and Communications underlying and supporting or used in the preparation of Redwire's disclosures.

<u>Response</u>:

**Redwire does not object generally to deposition inquiry related to the disclosures addressing remediation deficiencies in internal controls made on April 1 and April 11, 2022. Nor does Redwire object to deposition inquiry on how disclosures addressing remediation in the referenced April 1 and April 11, 2022 disclosures differ from prior disclosures made during the Class Period. Redwire notes; however, that the proposed Class Period as stated in the operative *First Amended Complaint* expires on March 31, 2022. Thus, Redwire reserves its right to dispute the admissibility or subsequent use of information related to events occurring outside the class period.**

**Redwire further does not object to subtopics B(b)-(c).**

**Redwire objects to subtopic B(a) on the basis of the attorney-client privilege, attorney work product privilege, and any other applicable privilege to the extent that such subtopic seeks (a) information regarding the substance of any investigation conducted by counsel including the mental impressions of such counsel, and/or (b) communications between Redwire and counsel regarding any investigation and/or the content of any of the referenced disclosures. Without waiver of these objections, Redwire agrees to the process of asserting privilege set forth in section 7 of Lead Plaintiff's letter dated February 20, 2024.**

**C. Whistleblower complaints from January 1, 2021 to June 30, 2022**

5

All complaints, reports, or other information received by Redwire from Dan Gievers or any other whistleblower concerning "tone at the top," accounting issues, false representations, fraud, and/or internal controls including:

a. The identity of all individuals at Redwire who received, reviewed, or were made aware of the complaints from Gievers or other whistleblowers.

b. All actions taken by Redwire to investigate the allegations raised in the whistleblower complaints, including but not limited to identifying all individuals interviewed, Documents reviewed, and any other investigative steps.

c. All findings, conclusions, and determinations made by Redwire as a result of its investigation(s) into any whistleblower allegations.

d. All remedial or corrective actions, if any, taken by Redwire in response to the findings of its investigation(s).

e. All communications between Redwire and the whistleblowers or any third parties including auditors or outside counsel regarding Redwire's investigation(s) and findings.

f. Redwire's policies and procedures during the relevant time period for receiving, investigating and addressing employee complaints or reports of misconduct.

g. The Identity of Persons, outside auditors, or outside counsel involved in responding to the Gievers' Whistleblower Complaint.

h. The decision to disclose the Gievers' Whistleblower Complaint in the November 10, 2021 press release.

i. The disclosure of the Gievers' Whistleblower Complaint to the SEC.

**Redwire does not object generally to deposition inquiry related to whistleblower complaints from January 1, 2021 through June 30, 2022 concerning the stated topics. Redwire notes; however, that the proposed Class Period as stated in the operative *First Amended Complaint* expires on March 31, 2022. Thus, Redwire reserves its right to dispute the admissibility or subsequent use of information related to events occurring outside the class period.**

**Redwire further does not object to subtopics C(a), (d), (f), or (g).**

**Redwire objects to subtopics C(b), (c), (e), (h), and (i) on the basis of the attorney-client privilege, attorney work product privilege, and any other applicable privilege to the extent that such subtopics seek (a) information regarding the substance of any**

**investigation conducted by counsel including the mental impressions of such counsel, and/or (b) communications between Redwire and counsel. Without waiver of these objections, Redwire agrees to the process of asserting privilege set forth in section 7 of Lead Plaintiff's letter dated February 20, 2024.**

**D. The decision to reschedule Redwire's earnings announcement for the third quarter ended September 30, 2021**

The basis for Redwire's disclosure announcing the decision to reschedule Redwire's earnings announcement for the third quarter ended September 30, 2021 and all subsequent disclosures announcing decisions to defer the earnings announcement including:

a. Facts gathered and/or considered in preparing the disclosures.
b. The identity of Persons, outside auditors, or outside counsel involved in preparing the disclosures or who have knowledge of the basis of those disclosures.
c. The identification, location, and custodians of Documents and Communications underlying and supporting or used in the preparation of Redwire's disclosures.

**Redwire does not object generally to deposition inquiry related to disclosure as to the timing of Redwire's earnings announcement for the third quarter ended September 30, 2021 or subsequent disclosures announcing decision to defer Redwire's earnings announcement for the third quarter ended September 30, 2021.**

**Redwire further does not object to subtopics D(b)-(c).**

**Redwire objects to subtopic D(a) on the basis of the attorney-client privilege, attorney work product privilege, and any other applicable privilege to the extent that such subtopic seeks (a) information regarding the substance of any investigation conducted by counsel including the mental impressions of such counsel and/or (b) communications between Redwire and counsel. Without waiver of these objections, Redwire agrees to the process of asserting privilege set forth in section 7 of Lead Plaintiff's letter dated February 20, 2024.**

7

**E. The Audit Committees investigation of the Gievers' Whistleblower Complaint**

   a. The scope of the Audit Committee's investigation, and whether it went beyond the alleged accounting or auditing matters detailed in the Gievers' Whistleblower Complaint.

   b. The Identity of Persons involved in the Audit Committee Investigation.

   c. The Identity of witnesses interviewed during the Audit Committee's investigation into the Gievers' Whistleblower Complaint.

   d. All facts gathered and/or considered over the course of the Audit Committee investigation.

   e. The identification, location, and custodians of Documents and Communications relating to the Audit Committee Investigation.

   f. The roles of King & Spalding LLP, Kirkland & Ellis LLP, and KPMG LLP to assist in the Audit Committee investigation.

   g. Any sharing of information, documents, findings, and/or conclusions with the SEC or other governmental regulators.

   h. Any changes to Redwire's policies resulting from the Audit Committee investigation.

   i. Any disciplinary action(s), including employee termination, resulting from the Audit Committee's investigation.

**Redwire does not object generally to subtopic E(a) except to the extent that such subtopic seeks (a) information regarding the substance of any investigation conducted by counsel including the mental impressions of such counsel and/or (b) communications between Redwire and counsel on the basis of the attorney-client privilege, attorney work product privilege, and any other applicable privilege.**

**Redwire does not object generally to subtopic E(b) to the extent it seeks information on the identity of who the Audit Committee selected to carry out the referenced investigation. Otherwise, Redwire objects that subtopic E(b) is impermissibly vague as it is unclear what is meant by "involved in" the investigation. To the extent that Lead Plaintiff clarifies the information sought by this sub-topic, Redwire may be able to refine its response. Accordingly, absent further clarification, and subject to the aforementioned topic for which there is no objection, Redwire objects to subtopic E(b) on the basis of the attorney-client**

8

privilege, attorney work product privilege, and any other applicable privilege to the extent that such subtopic seek (a) information regarding the substance of any investigation conducted by counsel including the mental impressions of such counsel and/or (b) communications between Redwire and counsel.

Redwire does not object generally to sub-topics E(e)-(f), (h)-(i) except to the extent that questioning during deposition seeks (a) information regarding the substance of any investigation conducted by counsel including the mental impressions of such counsel and/or (b) communications between Redwire and counsel in which case Redwire objects on the basis of the attorney-client privilege, attorney work product privilege, and any other applicable privilege.

Redwire objects to subtopics E(c)-(d), and (g) on the basis of the attorney-client privilege, attorney work product privilege, and any other applicable privilege to the extent that such subtopics seek (a) information regarding the substance of any investigation conducted by counsel including the mental impressions of such counsel and/or (b) communications between Redwire and counsel.

Without waiver of the above objections, Redwire agrees to the process of asserting privilege set forth in section 7 of Lead Plaintiff's letter dated February 20, 2024.

Dated: March 25, 2024.

/s/ Glennys Ortega Rubin
**ALFRED J. BENNINGTON, JR., ESQ.**
Florida Bar No. 0404985
bbennington@shutts.com
**GLENNYS ORTEGA RUBIN, ESQ.**
Florida Bar No. 556361
grubin@shutts.com
**BENJAMIN F. ELLIOTT, ESQ.**
Florida Bar No.: 1010706
belliott@shutts.com
**SHUTTS & BOWEN LLP**
300 South Orange Avenue, Suite 1600
Orlando, Florida 32801

9

Telephone: (407) 835-6755
Facsimile: (407) 849-7255
and
**H. TIMOTHY GILLIS, ESQ.**
Florida Bar No. 0133876
tgillis@shutts.com
**JEFFREY S. YORK, ESQ.**
Florida Bar No. 987069
jyork@shutts.com
**SHUTTS & BOWEN LLP**
1000 Riverside Ave., Suite 800
Jacksonville, Florida 32204
Telephone: (904) 899-9926
and
**FRANK A. ZACHERL, ESQ.**
Florida Bar No. 868094
fzazherl@shutts.com
**SHUTTS & BOWEN LLP**
200 South Biscayne Boulevard, Suite
4100
Miami, FL 33131
Telephone: (305) 358-6300
Facsimile: (305) 381-9982

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 25th day of March, 2024, a true and correct copy of the foregoing has been served via electronic mail upon the following CM/ECF Participants:

| | |
|---|---|
| Reed R. Kathrein, Esq. *(Pro Hac Vice)* | Brian Schall, Esq. (pro hac vice forthcoming) |
| reed@hbsslaw.com | brian@schallfirm.com |
| Lucas E. Gilmore, Esq. *(Pro Hac Vice)* | THE SCHALL LAW FIRM |
| lucasg@hbsslaw.com | 2049 Century Park East, Suite 2460 |
| HAGENS BERMAN SOBOL SHAPIRO LLP | Los Angeles, CA 90067 |
| 715 Hearst Avenue, Suite 202 | Telephone: (424) 303-1964 |

10

Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile:  (510) 725-3001
and
Peter A. Shaeffer, Esq. *(Pro Hac Vice)*
petersh@hbsslaw.com
HAGENS     BERMAN     SOBOL
SHAPIRO LLP
455 N. Cityfront Plaza Dr.
Suite #2410
Chicago, IL 60611
Telephone: 708-628-4955
and
Steve W. Berman, Esq. *(Pro Hac Vice)*
steve@hbsslaw.com
HAGENS     BERMAN     SOBOL
SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

*Lead   Counsel   for   Lead   Plaintiff Jared Thompson*

*Additional Counsel for Lead Plaintiff Jared Thompson*
and

David M. Buckner, Esq.
david@bucknermiles.com
BUCKNER + MILES
2020 Salzedo Street, Suite 302
Coral Gables, FL 33134
Telephone: (305) 964-8003
Facsimile: (786) 523-0485

*Liaison   Counsel   for   Lead   Plaintiff Jared Thompson*

/s/ Glennys Ortega Rubin
**GLENNYS ORTEGA RUBIN**

11