**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | |
|---|---|
| JED LEMEN, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiffs,<br><br>v.<br><br>REDWIRE CORPORATION f/k/a GENESIS PARK ACQUISITION CORP., PETER CANNITO, and WILLIAM READ,<br><br>    Defendants. | Case No.: 3:21-CV-1254-TJC-PDB<br><br><u>CLASS ACTION</u> |

**DEFENDANT REDWIRE'S RESPONSE TO LEAD PLAINTIFF'S**
**MOTION TO COMPEL RULE 30(B)(6) TESTIMONY**

Defendant, REDWIRE CORPORATION f/k/a GENESIS PARK

ACQUISITION CORP. ("Redwire"), responds in opposition to Lead Plaintiff

JARED THOMPSON's ("LP") *Motion to Compel Rule 30(b)(6) Testimony* (Doc.

132) (the "Motion").

LP's Motion rests on factual inaccuracies and meritless arguments. The

theme of the Motion is as follows: LP must seek 30(b)(6) testimony because

Redwire, along with co-Defendants Peter Cannito, and William Read

(collectively, "Defendants"), have "thwart[ed]" discovery by refusing to agree to

LP's proposed document search terms in response to prior requests for

1

Exhibit A

production. In LP's story, Redwire's objections to LP's noticed deposition topics are merely further obstruction. Unfortunately for LP, this fiction falls apart after a cursory review of the documented facts. In truth, Redwire has dutifully responded to discovery in this matter and the remaining objections to the noticed 30(b)(6) topics are valid. The Court should ignore the hyperbole and deny the Motion.

## I.   BACKGROUND

LP injects into this Motion about deposition topics, lengthy descriptions about the discovery in this case. Accordingly, Redwire provides clarification below as to the actual course of discovery such that the Court may understand the true context of the deposition that is at-issue in the Motion.

### A.   LP's First Document Request

The Motion devotes significant ink to the circumstances surrounding LP's *First Set of Requests for Production of Documents Directed to All Defendants* (the "First RFPs").

By way of background, Defendants served their *Responses and Objections to Lead Plaintiff's First Request for Production of Documents* ("Written Responses") on July 20, 2023.  (**Ex. 1**).  Defendants thereafter developed a list of search terms to identify documents potentially responsive to the First RFPs and disclosed such list to LP's counsel on August 14, 2023.  (**Ex. 2**).  Then Defendants began a linear review of documents responsive to

the search terms using a team of seven attorneys (including both associate and partner attorneys). (**Ex. 3,** *Declaration of Glennys Ortega Rubin, Esq.*, ¶ 5) ("Rubin Decl."). That review continued through a final production on November 29, 2023. (**Composite Ex. 4**, p. 1). Such review required the use of significant resources by way of hundreds of attorney hours at great cost to Redwire. Rubin Decl., ¶ 5.

Parallel to the above-referenced review and production, LP's counsel took the position that Defendants' initial search terms were not sufficient to identify documents responsive to the First RFPs. *Id.*, ¶ 6. Defendants invited LP's counsel to suggest additional search term. *Id.* On September 28, 2023, LP sent Defendants their first proposal (the "First Proposal") for additional search terms. (**Ex. 5**, p. 1). The First Proposal[1] returned over 1.4 million responsive documents. (**Ex. 6**). Given the estimated time and resources necessary to review another round of voluminous documents, Redwire communicated that

---

[1] The First Proposal listed eighty-three (83) separate search queries. Ex. 5, pp. 2-8. Notably, many of the queries were long and complicated such that a number of the queries were actually composites of discreet searches joined together by use of "OR". By example, as one single search, LP sought documents responsive to the following search query: "ethic* OR unethic* OR harmful* OR toxic* OR danger* OR illegal* OR controver* OR objection* OR fail* OR inappropriate* OR fraud* OR deceiv* OR misrep* OR misstate* OR mislead* OR fals* OR inaccurat* OR distort* OR fabricat* OR incorrect* OR deceit* OR improper* OR error* OR unfound*OR untru* OR omit* OR cheat* OR violat* OR unlawful* OR fictic* OR wrongful* OR alter* OR hid* OR secre* OR artific* OR overstate* OR coerc* OR retailiat* OR humiliat* OR harass* OR transpar* OR open* OR hones* OR dishonest* OR troubl* OR silenc* OR afraid OR reputation*". *Id.*, p. 2. This single search is really forty-eight (48) separate searches. Such practice was common throughout all of LP's proposed searches and contributed to the broad nature of LP's proposals.

the First Proposal was overbroad and provided an alternative list of search terms. *Id.* The parties then engaged in an extensive series of negotiations that lasted approximately seven months during which time they exchanged further proposal and counter-proposals. Rubin Decl., ¶¶ 8-9. During these seven months the parties participated in numerous conversations via email, Zoom, and telephone. *Id.*, ¶ 8.

As part of these negotiations, on February 7, 2024, with still no agreement, Defendants greatly increased the scope of the proposed supplemental search terms, but added into the contemplated review process, use of a technology-aided review ("TAR") tool that would make an initial determination of what documents may be relevant before any attorneys reviewed documents for responsiveness and privilege. *Id.*, ¶ 10. The TAR tool, as proposed, would have used the results of Defendants' now-completed laborious first document review efforts as data to make such determinations. *Id.*; (**Ex. 7**). Indeed, it was LP's counsel that had first suggested using some type of TAR tool months earlier. (**Ex. 8**, p. 1).

During this process, Defendants' counsel repeatedly expressed concern about the time it was taking to resolve the issues and that perhaps court intervention was needed. (**Composite Ex. 9**; *see also* Ex. 7). Indeed, on March 7, 2024 Defendants' counsel sent a formal letter to LP's counsel stating their concern that the process was taking too long and that continued delay

4

threatened their ability to complete document production prior to the close of discovery. (**Ex. 10**). LP's counsel responded noting: "We understand that Defendants want to reach agreement as soon as possible to begin the review." (Ex. 9, p. 2).

Ultimately, Defendants offered to accept a sub-set of LP's supplemental search terms (as-refined by the parties over months of negotiations) that would have yielded more than 245,000 documents for review, with the use of the above-mentioned TAR tool to make a first pass determination of relevancy. Rubin Decl., ¶¶ 10-11; (Exs. 7; 9, p. 1; 10, p. 2). Attorneys would have then reviewed documents identified as responsive by the TAR protocol to confirm such responsiveness and identify privilege. *Id.*, ¶ 10.

LP rejected Defendants' offer. *Id.*, ¶ 12. On April 4, 2024, Defendants requested to address the document issue in an upcoming conferral. (**Ex. 11**). While the parties conferred thereafter, it became clear that LP would not accept any offer. Rubin Decl., ¶ 12. Now, as the calendar turns to May, over half a year since the search term conferrals began, the parties are not actively engaged in any negotiations related to the First RFPs as Lead Plaintiffs appear to have abandoned any additional efforts to reach a resolution on search terms. Instead, LP's focus has shifted to the Rule 30(b)(6) deposition of Redwire.

### B.    Rule 30(b)6 Deposition

Separate from the above-referenced document production negotiations,

LP served a 30(b)(6) *Notice for Deposition to Redwire* (the "First Notice") on September 6, 2023. (Doc. 132-2).

Importantly, in the present Motion, LP claims that he served the First Notice "to help break [the] purported burden logjam" resulting from the search term issue.  Mot., p. 3.  This characterization breaks from reality. As described above, LP did not serve its First Proposal on supplemental document terms until September 28, 2023—*three weeks after the First Notice.*  Negotiations on the supplemental search term would proceed for an additional *seven* months! There is no way that the First Notice was served to clear any "logjam" associated with document production when, at the time, the negotiations about document production *had not even started*.

The Motion also claims that the First Notice was served to "test Defendants' privilege and work product assertions over underlying documents they refused to produce," (Mot., p. 3), but, Defendants' final privilege logs for the First RFPs were not served until November of 2023. (Ex. 3).  Again, LP's narrative that Defendants' alleged discovery issues necessitated the First Notice is shown to be false simply by considering the date of its service.

As to the substance, the First Notice contained twenty-five (25) topics with voluminous subparts. *See* (Doc. 132-2). As the Motion explains, (Mot., pp 3-4), the parties began engaging in conferrals regarding the 30(b)(6) deposition based on the content of the First Notice. Rubin Decl., ¶ 14. During this time,

6

Redwire made clear its positions that LP was entitled to one 30(b)(6) deposition as a matter of right[2]. *Id.*, ¶ 15. As part of such conferrals, LP stated in a letter to Defendants on November 6, 2023 that it would limit the deposition to two topics (1) tone at the top, and (2) William Read's departure from Redwire. (Ex. 8, p. 2). Moreover, LP also acknowledged that "Lead Plaintiff understands that Defendants may require Lead Plaintiff to seek relief for further 30(b)(6) depositions." *Id.* p. 3.

On December 21, 2023, LP served an *Amended Notice for 30(b)(6) Deposition* (the "Amended Notice"), which included just the two topics referenced above. (Doc. 132-3). The parties continued to confer on the 30(b)(6) deposition. Rubin Decl., ¶¶ 18-19. Throughout this time, Redwire maintained its objections. *Id.* Redwire also reminded LP that, as to conferrals regarding the appropriate time frame, he would have the ability to depose the 30(b)(6) witness as to his personal knowledge regardless of the noticed time period. *Id.*, ¶ 19.

On January 24, 2024, LP confirmed February 21, 2024 as the date for the deposition. *Id.*, ¶ 17. Redwire ultimately memorialized, in writing, its

---

[2] Redwire believed one individual could be prepared to testify as to the topics in the First Notice. Redwire was concerned; however, that LP intended to notice Redwire's corporate representative for deposition numerous times in a piecemeal fashion in order to cover all of the topics in the First Notice, which Redwire believed, and still believes, to be inappropriate under the applicable rules. *Infra*, § II.B.2.b.

objections to the Amended Notice which repeated prior objections that formed part of the conferral effort. (Doc. 132-4). The parties conferred on the written objections, but, ultimately, LP postponed the deposition. Rubin Decl., ¶ 20.

Following postponement, the parties continued negotiations and resolved certain of the objections to the Amended Notice. *Id.*, ¶ 21. On March 5, 2024, LP served a *Second Notice for 30(b)(6) Deposition* (the "Second Notice"), which added four additional topics for deposition. (Doc. 132-5). Roughly three weeks later, Redwire served its written objections to the Second Notice. (Doc. 132-6). The parties have since conferred as to the remaining objections to the Amended and Second Notices, but have not reached a resolution. Rubin Decl., ¶ 23. The 30(b)(6) deposition has been tentatively rescheduled for June of 2024. *Id.*, ¶ 24.

## II.   ARGUMENT

The Motion presents a false narrative that Defendants engaged in a pattern of obstruction and places the remaining objections to the Amended and Second Notices within such fictitious pattern. Not only have Defendants proceeded in good faith and engaged in months of negotiations related to numerous discovery issues, but the remaining objections are proper. The Court should deny the Motion.

### A.   Redwire's Objections are Timely

LP argues that Redwire's remaining objections to the Amended and

8

Second Notices should be barred as untimely. Mot., p. 7. The argument fails.

Federal Rule of Civil Procedure 30(b)(6) requires that "promptly after the notice or subpoena is served, the serving party and the organization must confer in good faith about the matters for examination." Redwire did just that. *See, supra.* As an initial matter, the Motion appears to suggest that Rule 30(b)(6) requires *written* objections be served "promptly." Mot., p. 7. However, no such obligation exists under the language of the Rule.

In truth, the parties engaged in lengthy conferral on the Rule 30(b)(6) deposition and LP was on notice for months that Redwire had significant concerns with the way in which LP was proceeding to notice the deposition. LP's claims of surprise ring hollow. **LP admits that Redwire began conferral with LP following service of the First Notice**, (Mot., p. 3), in line with its Rule 30 obligations. It was such conferrals that led LP to narrow the topics from the First Notice and to serve the Amended Notice. Mot., pp. 3-4; (Ex. 8, pp. 2-3 (LP recognizing Redwire's position on the 30(b)(6) testimony limits in November of 2023)). Similarly, the Motion states that as of January 17, 2024, LP was aware that Redwire intended to provide written objections. Mot., p. 4.

Moreover, even if the Court ignored the months of conferral on the deposition topics, Redwire provided sufficient *written* notice. Redwire served such written objections to the Amended Notice two and a half weeks after the

9

deposition date was confirmed. At such time, there remained a week and a half before the scheduled deposition to resolve any issues. Also, the then-scheduled deposition was to take place *six months* before the close of discovery in this case. (Doc. 90 (setting close of discovery as Aug. 5, 2024)). Thus, LP had sufficient time to resolve any issues. *See New World Network Ltd. v. M/V NORWEGIAN SEA,* No. 05-22916 CIV, 2007 WL 1068124, at *4 (S.D. Fla. Apr. 6, 2007).

LP's argument is even weaker as to Redwire's objections to the Second Notice. The Second Notice propounded four new topics for deposition that required new review by Redwire. (Doc. 132-5). LP had Redwire's objections to the Second Notice in hand in under three weeks. (Doc. 132-6). Moreover, at the time Rewire served such objections, the 30(b)(6) had not yet been rescheduled. Redwire did not waive its objections.

LP puts forth no caselaw that supports a finding to the contrary. The one case cited by the Motion, *Schwarz v. City of Treasure Island*, involved a party who did not initially raise objections when discussions as to a 30(b)(6) deposition began, and then later issued surprise written objections. No. 8:05-CV-1696-T-30MAP, 2010 WL 11470984, at *5 (M.D. Fla. Oct. 12, 2010). By contrast, here, Redwire has objected and conferred on the notices, as the Motion admits, since the beginning. This case is distinguishable.

More comparable is *Frasca v. NCL (Bahamas) Ltd.,* No. 12-20662-CIV,

10

2014 WL 695413, at *6, n.6 (S.D. Fla. Feb. 24, 2014); where the court denied a motion to compel.  There, the court explained that the plaintiff "did not move to compel or schedule a hearing on the objections before taking the deposition," even though the plaintiff had thirteen days in between when the written objections were received and the deposition was scheduled.  *Id.*  The court also noted that the plaintiff could have rescheduled the deposition, as there was still two weeks left in the discovery period.  *Id.*, at *6 n.6.

Here, LP was aware that Redwire had significant objections for months as the parties had engaged in substantial discussions on the deposition topics. Moreover, LP had, and continues[3] to have, sufficient time to resolve any issues. Thus, Redwire complied with Rule 30(b)(6) and did not waive its objections.

## B.    Redwire's Objections have Merit

The Motion also improperly contends that Redwire's remaining objections are without substantive merit. This is incorrect.

### 1.    *Restriction of the Time Period is Appropriate*

The Amended and Second Notice's timeframes are overbroad, disproportionate, and seek irrelevant information, and should be limited.

---

[3] It is unclear what harm LP purports to have suffered from the timing of Defendants' objections. LP chose to reschedule the deposition with plenty of time left in the discovery period and will receive a more fulsome 30(b)(6) deposition as he has noticed more topics in the interim. The deposition has been tentatively rescheduled for mid-June of 2024, a month and a half before the close of discovery.

11

The Amended Notice defines the relevant time period as January 2020 to the present. (Doc. 132-3, p. 8). The Second Notice defines the relevant time period as January 1, 2020 to June 30, 2022. (Doc. 132-6, p. 3). Redwire objected to these time periods as not relevant nor proportional, and stated it will prepare a witness for the time frame of January 1, 2021 through June 1, 2022. (Doc. Nos. 132-4, p. 4; 132-6, pp. 3-4).

The Amended Complaint seeks relief for a class period of March 25, 2021 to March 31, 2022. (Doc. 47, p. 4). The parties previously agreed to limit their document collection to a time period of January 1, 2021 through June 1, 2022 which provides a reasonable buffer of time before and after the class period. (Doc. 132-6, pp. 3-4); Rubin Decl., ¶ 19. Redwire believes the justification for the time frame applied in document production similarly applies to 30(b)(6) testimony.

LP's arguments to the contrary fail. The Motion argues that an earlier start to the time period is necessary because some documents produced in discovery are dated or appear to reference events prior to 2021. Mot., p. 9-10. The allegations of the Amended Complaint revolve around the de-SPAC merger, where Genesis Park Acquisition Corp. ("GPAC"), and a private company ("Pre-Merger Redwire"), merged to become Redwire, the resulting, public company. (Doc. 47, ¶¶ 6-8, 11). LP alleges that during the period of the announcement of the merger through its consummation (March through

12

September of 2021), various purported misstatements were made. *See generally* Doc. 47.

Documents pointed to in the Motion, such as a presentation discussing internal controls findings developed prior to January 2021 are irrelevant. Mot., pp. 9-10. The ruling in *In re Brinker Data Incident Litig.*, 337 F.R.D. 424, 425 (M.D. Fla. 2020) is instructive. There, the court found that whether the defendant "may have been out of compliance with required security measures in 2014 has little relevance to whether it was implementing appropriate security measures in 2018." *Id.* at 425. The court reached such ruling despite argument by plaintiffs (the noticing party) that compliance with prior standards would have prevented a 2018 breach. *Id.* Instead, the court found that "[e]ven if true, this does not mean the relevant period should now begin in 2014. Brinker was allegedly supposed to be … compliant in 2018 and it allegedly was not—that is the main focus of the case." *Id.* The court ultimately granted the defendant's motion for protective order and limited the time period of the at-issue 30(b)(6) deposition. *Id.*

Similarly, here, the status of the internal controls of Pre-Merger Redwire in 2020 has little relevance to the status of the internal controls in 2021 and 2022, which is the focus of the allegations in the Amended Complaint. Like *Brinker,* in this case, "the burden and expense of the proposed discovery outweighs its limited potential benefit." *Id.*

LP fails to show that requiring a deponent to be prepared to testify as to a much larger time frame is proportional. LP only argues that preparing a witness is less burdensome than document production because of Defendants' purported refusal to agree to search terms. Mot., pp. 10-11. As explained above, *supra* § I.A, such characterization of the search term dispute by LP is entirely incorrect. Indeed, it appears that LP mischaracterizes the document production efforts so as to manufacture a need for expanded discovery elsewhere, *i.e.*, through 30(b)(6) testimony. Such tactics are entirely improper.

Moreover, LP ignores the fact that the designated corporate representative will be Redwire's CEO Peter Cannito. As explained during conferral discussions, Redwire's objection relates only to the obligation to prepare a witness as to the noticed topics. Defendants acknowledge that LP will be able to ask the witness as to his personal knowledge regardless of the noticed time period. As the representative will be the company's CEO, LP will get the benefit of his knowledge related to the earlier timeframe regardless of the time period in the Notices.

Defendants' suggested time period of January 1, 2021 through June 1, 2022 (consistent with prior agreement as to written discovery) is appropriate.

> **2. *Lead Plaintiff is Entitled to a Single, Seven-Hour 30(b)(6) Deposition***
>
>> a. <u>Lead Plaintiff Should be Permitted One, Seven-Hour 30(b)(6) Deposition</u>

<div align="center">14</div>

LP seeks to depose Redwire's corporate representative for up to ten-hours across two days. Mot., pp. 12, 13.  LP's arguments for such extension are unavailing.

Initially, the default rule for deposition length is, like all other depositions, one day of seven hours. *See Belfor USA Grp., Inc. v. Bray & Gillespie, LLC*, No. 605CV1624ORL18JGG, 2007 WL 9723121, at *3 (M.D. Fla. Apr. 23, 2007) ("B&G has agreed to produce Gillespie for the Rule 30(b)(6) deposition and, under the rules, that deposition has a presumptive time limit of seven hours." (citations omitted)).  It is appropriate to apply such default rule to the anticipated 30(b)(6) deposition in this case.

First, the Motion cites to *Max v. Provident Life & Accident Ins. Co.*, 2013 WL 12156102, at *2 n.2 (M.D. Fla. Apr. 22, 2013), wherein the application of this rule was considered in the context of more than one individual being designated as corporate representative, and is inapplicable here. Mot., p. 12. Redwire has, from the beginning, communicated that one individual would testify as corporate representative as to the topics noticed by LP thus far. Thus, LP's caw law is not relevant here.

Second, the Motion's request for extension of the default rule falls flat. Mot., p. 12.  Rule 30(d)(1) states that the court "must allow additional time consistent with Rule 26(b)(1) and (2) if needed to fairly examine the deponent or if the deponent, another person, or any other circumstance impedes or

15

delays the examination." Rule 26(b)(2)(A) proscribes that "the court may alter the limits in these rules on the … length of depositions under Rule 30." However, Rule 26(b)(2)(C) also states that "the court must limit the frequency or extent of discovery otherwise allowed by these rules," if, among other things, "the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Rule 26(b)(1) sets the scope of discovery, including consideration of "whether the burden or expense of the proposed discovery outweighs its likely benefit."

In support of the request for additional time, LP merely claims that a "fair examination" of Redwire's corporate representative "**may** require more than seven hours." Mot., p. 12 (emphasis added). The Motion offers <u>no other reason or rationale</u> for why additional time is needed.  The Motion provides no basis for the Court to find that the seven topics in the Amended and Second Notices cannot be covered in the standard time.

Finally, the Motion is silent as to why Redwire should suffer the added burden of having to reserve two days for completion of the instant deposition. Extending the time to ten hours will almost certainly require two days, which imposes a burden on Redwire in preparing and coordinating its corporate representative (Redwire's CEO) to be available for deposition across multiple days. This burden outweighs the likely benefit, which such benefit has not even been established by LP, who has only claimed that the additional hours across two days "may" be required "if need be." Mot., p. 12; Fed. R. Civ. P. 26(b)(1);

16

Fed. R. Civ. P. 26(2)(C)(iii).

The Court should find that LP fails to justify that additional time, beyond the normal limit, for the deposition of Redwire's corporate representative is necessary or warranted.

      b.    <u>Lead Plaintiff is Not Entitled to Future 30(b)(6)
Depositions as a Matter of Right</u>

LP improperly and without justification seeks an order "making clear that Plaintiff can notice and take other 30(b)(6) depositions as allowed under the Federal Rules of Civil Procedure." Mot., p. 13.

Initially, LP seeks an improper advisory opinion. LP's request that the Court "make clear" that he may at a later date choose (or not choose) to seek additional 30(b)(6) depositions is premature. *See Holderbaum v. Carnival Corp.*, No. 13-24216-CIV, 2015 WL 5006071, at *8 (S.D. Fla. Aug. 23, 2015) (declining to determine whether anticipated testimony would be admissible because "[t]here are ample federal rules that the parties can look to for guidance on what is and is not proper testimony … [i]t is not necessary for this Court to issue an advisory opinion reiterating one or more rules in the absence of an actual controversy"). Here, there is no actual controversy, as LP has not yet sought additional 30(b)(6) testimony; rather, he is improperly asking the Court to prematurely advise as to his rights under the federal rules.

Moreover, LP's position that he is entitled to serial depositions as a

17

matter of right is mistaken. Instead, a party seeking an additional deposition of a deponent who has already been deposed must get consent or leave of court. Fed. R. Civ. P. 30(a)(2)(ii) ("A party must obtain leave of court ... if the parties have not stipulated to the deposition and ... the deponent has already been deposed in the case."). District courts within the Eleventh Circuit routinely apply this rule to 30(b)(6) depositions, such that to obtain additional 30(b)(6) testimony, LP must either seek Redwire's consent or leave of court. *See e.g. Wurtz v. MSC Cruises, S.A.*, No. 18-62547-CIV, 2019 WL 13237598, at *2 (S.D. Fla. July 29, 2019) (As "Plaintiff had previously deposed a Corporate Representative, a second Corporate Representative deposition could be convened only if Defendant consented…or if the Court granted leave."); *Culliver v. BP Expl. & Prod., Inc.*, No. 3:21CV4942-MCR-HTC, 2023 WL 9229126, at *1 (N.D. Fla. Oct. 5, 2023) ("[A]bsent…agreement, Plaintiff must seek leave from this Court" for a second corporate representative deposition); *USA v. Halifax Hosp. Med. Ctr.*, No. 609CV1002ORL31TBS, 2012 WL 12919215, at *2 (M.D. Fla. Dec. 21, 2012) (applying Rule 30(a)(2) to request for additional 30(b)(6) testimony); *McPherson v. Wells Fargo Bank, N.A.*, 292 F.R.D. 695, 697 (S.D. Fla. 2013) ("[A]bsent an agreement…Plaintiff can only serve one corporate representative deposition notice with specific multiple topics.").

If LP, at a concrete time in the future, determines that he desires a

18

second 30(b)(6) deposition, he can bring such issue to the Court which can then assess the considerations attendant to the need or burden of the requested additional testimony. *See, e.g., Wurtz*, 2019 WL 13237598 at \*3 (granting protective order against additional 30(b)(6) testimony considering no new, important discovery was disclosed after the first 30(b)(6) deposition); *Tingley Sys., Inc. v. HealthLink, Inc.*, No. 805CV1936T27MAP, 2007 WL 1365341, at \*2 (M.D. Fla. May 9, 2007) (additional 30(b)(6) testimony not warranted where the plaintiff failed to ask for leave of court and the additional testimony would not be helpful). Such considerations would, of course, be based on the circumstances at the time, and not present circumstances.

Here, if LP desires further testimony, he must, at the appropriate time, obtain leave of court through a sufficient showing of need for an additional deposition[4]. Any request for leave to take additional depositions embedded in the Motion is improper and premature. *See Lane Constr. Corp. v. Skanska USA Civ. Se., Inc.*, No. 6:21-CV-164-RBD-DCI, 2022 WL 17463566, at \*1 (M.D. Fla. Apr. 1, 2022) ("This request is due to be denied as premature. On this record, Defendant has not conducted the first deposition yet; it is unclear how

---

[4] Nor does the instant motion actually attempt to justify the need for such further depositions. Notably, the Motion is silent as to any additional topics that LP believes warrant further testimony, and otherwise gives no basis for its request other than its flawed premise that "there is not limitation on the number of 30(b)(6) depositions beyond the limit on all depositions." Mot., p. 12.

Defendant can justify a second deposition of Plaintiff's corporate representative before it has even conducted the first."). That LP disagrees with this approach does not mean Redwire is attempting to "thwart discovery" in this case; Mot., p. 13; and is not a basis for LP's requested relief.

The Court should deny the Motion's request for an order clarifying LP may take unlimited future 30(b)(6) depositions.

## III.  <u>CONCLUSION</u>

For the reasons stated above, the Motion should be denied.

Respectfully submitted,                    Dated: May 9, 2024.

<div style="margin-left: 40%;">

*/s/ Glennys Ortega Rubin*
**ALFRED J. BENNINGTON, JR., ESQ.**
Florida Bar No. 0404985
bbennington@shutts.com
**GLENNYS ORTEGA RUBIN, ESQ.**
Florida Bar No. 556361
grubin@shutts.com
**FRANK A. ZACHERL, ESQ.**
Florida Bar No. 868094
fzazherl@shutts.com
**BENJAMIN F. ELLIOTT, ESQ.**
Florida Bar No.: 1010706
belliott@shutts.com
**SHUTTS & BOWEN LLP**
300 South Orange Avenue, Suite 1600
Orlando, Florida 32801
Telephone: (407) 835-6755
Facsimile: (407) 849-7255

*Attorneys for Defendants*

</div>