**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | |
|---|---|
| JED LEMEN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>REDWIRE CORPORATION f/k/a GENESIS PARK ACQUISITION CORP., PETER CANNITO, and WILLIAM READ,<br><br>Defendants. | Case No.: 3:21-CV-1254-TJC-PDB<br><br>CLASS ACTION<br><br>**DEFENDANTS' RESPONSE TO LEAD PLAINTIFF'S MOTION TO COMPEL DOCUMENT-BY-DOCUMENT PRIVILEGE LOGS** |

REDWIRE CORPORATION f/k/a GENESIS PARK ACQUISITION CORP. ("Redwire"), PETER CANNITO, and WILLIAM READ (collectively "Defendants") oppose Lead Plaintiff JARED THOMPSON's ("LP") *Motion to Compel Rule Document-by-Document Privilege Logs* (Doc. 133) (the "Motion"). Defendants' categorical logs comply with applicable case law and the parties' ESI Protocol. Moreover, LP's requested revisions would be unduly burdensome and there is no material benefit to the relief that LP seeks. Nevertheless, Redwire will agree to certain revisions to one of the logs as described below. The Court should otherwise deny the Motion.

## I.    BACKGROUND

Lead Plaintiff served its *First Request for Production of Documents Directed to All Defendants* ("First RFPs") on May 19, 2023. (**Ex. 1**). Defendants

1

Exhibit B

served answers and objections and began rolling production of responsive documents. Defendants identified large swaths of responsive, but privileged documents that easily fell into similar categories and implicated the same privileges such that logging them individually would be unnecessarily time-intensive only to generate a document that simply repeated the same information. Thus, under the circumstances and in compliance with prior agreement between the parties, Defendants determined that a categorical log (the "Redwire Log") was the best approach. Defendants served the Redwire Log and an individual log at the end of November of 2023. (**Ex. 2**).

The Redwire Log asserts privileges as to correspondences relating to (1) SEC filings, (2) press releases or public presentations, and (3) the de-SPAC merger. (Doc. 133-2). Defendants broke these three topics out into nine categories, organized first by subject and then by the types of individuals included on each document in the category.[1] *Id.* The log also contains the type and number of documents in each category, category descriptions, whether the documents are redacted or withheld entirely, and the pertinent dates. *Id.*

Thereafter, the parties engaged in conferral as to the Redwire Log. (**Ex.**

---

[1] The Motion complains that LP notified Defendants that the categorical log is "wholly insufficient" in its identification of senders/recipients, because it "lumped together groups of people who may or may not be on particular correspondence in the category…." Mot., p. 6. While on the next page, LP admits that Defendants "clarif[ied] some aspects of the categorical log," *id.*, p. 7, LP does not explain that Defendants clarified that *all* groups of people identified in the sender/recipient columns of the Redwire Log (Columns I and J) are on *each* document in the associated category. *See* (Ex. 3, pp. 1-2).

**3**). Most recently, the parties again conferred on April 11, 2024, regarding the Redwire Log. While meet and confers were ongoing, LP filed the Motion.

The Motion also takes issue with the categorical log[2] served by Defendants as to documents in the possession, custody, or control of PricewaterhouseCoopers ("PwC") and responsive to Lead Plaintiff's third-party subpoena (the "PwC Log"). Mot., p. 5. PwC previously served as Redwire's outside auditor. In the PwC Log, Redwire asserts work product privilege over two categories of documents: (1) "Documents collected in accordance with [the] Audit Committee investigation;" and (2) internal PwC memorandum summarizing work product created in connection with investigation by Redwire's Audit Committee as conducted by attorneys. (Doc. 133-4).

The PwC Log was created as all the documents were collected by counsel in accordance with the Audit Committee investigation or otherwise memorialized Audit Committee information. Defendants have consistently asserted that the Audit Committee materials are privileged. *See, e.g.,* Doc. 105 (Def's Response to LP's Mot. for Determination of Privilege). Specifically, that selection of documents for review is privileged work product because it reveals counsel's thought processes, mental impressions, and theories.[3] *See id.*, p. 6.

---

[2] Defendants also served an individual privilege log attendant to PwC documents. (**Ex. 4**).

[3] *Hunter's Ridge Golf Co., Inc.*, 223 F.R.D. 678, 683 (M.D. Fla. 2006) (The selection of documents may constitute work product if there is "a real, rather than speculative, concern that counsel's thought processes in relation to pending or anticipated litigation will be exposed through disclosure of the compiled documents.").

Logging the documents individually would reveal information (such as the types of documents and individuals the Audit Committee investigation was considering), over which Redwire claims privilege. Thus, Redwire produced an individual log that contained documents for which individual logging would not reveal confidential information, and a categorical log for the remainder.

LP argues that Defendants should be ordered to produce individual logs of the documents on the Redwire Log and PwC Log (together, the "Logs"), or otherwise revise the Logs. However, the Logs are an appropriate use of the categorical logging method and provide sufficient information for Lead Plaintiff to assess the privileges asserted therein.

Notwithstanding Defendants' arguments below, Defendants agree to make certain revisions to the Redwire Log within a reasonable time following adjudication of this Motion. Specifically, Defendants agree to the following:

- Revise reference to "external accountants" in the Redwire Log to identify which accounting firm is meant by such reference;

- Revise Redwire Log to identify the "other necessary partners" referenced in present Category 4; and

- Divide each present category in the Redwire Log in two subsections based by date as either before or after the November 2021 receipt of an employee complaint.

Had LP not filed the instant Motion while negotiations were still open, these

4

issues would not be before the Court.

Argument herein addresses the request for any further revisions to either of the Logs and LP's request for individualized logs.

## II.    **ARGUMENT**

LP's Motion (relating to the content of privilege logs) states in sweeping and conclusive fashion, that he has not received information that he apparently seeks. Of course, LP's choices and those of his attorneys thus far in discovery—including spurning Defendants' offer to conduct a supplemental review of approximately 245,000 documents—that he or his counsel may regret have no bearing on the matters now before the Court. This narrow motion only concerns the content of two privilege logs. Indeed, as the propriety of Defendants' privilege claims is not before the Court nor is LP's failure to engage in a thoughtful discovery process at issue, LP's complaints made without citation as to what information he does or does not have are irrelevant. Review of the facts and law demonstrate that the Logs are proper.

Defendants, in accordance with parties' prior agreement and applicable jurisprudence, appropriately produced the Logs in categorical form. LP's requests to individually log each privileged document or, in the alternative, revise the Logs to provide certain further information, are not warranted. The Logs, including the above-referenced agreement for certain further revisions, satisfy all necessary requirements.  The Court should deny the Motion.

"[M]any courts, including this one, have endorsed the use of 'categorical privilege logging' in appropriate circumstances." *Nationwide Mut. Fire Ins. Co. v. Kelt, Inc.*, 2015 WL 1470971, at *8 (M.D. Fla. Mar. 31, 2015). "A categorical log may be used where (a) a document-by-document listing would be unduly burdensome and (b) the additional information to be gleaned from a more detailed log would be of no material benefit to the discovering party in assessing whether the claim is well-grounded." *Teledyne Instruments, Inc. v. Cairns*, 2013 WL 5781274, at *16 (M.D. Fla. Oct. 25, 2013) (quotation omitted). Importantly, "the sufficiency of a categorical privilege log turns on whether the categories of information are sufficiently articulated to permit the opposing party to assess the claims of privilege or work product protection." *Id.* Moreover, the parties' *Stipulation Establishing the Protocol for the Production of Documents and Electronically Stored Information* (the "ESI Protocol") (Doc. 133-3) expressly permits the use of categorical logs.

Here, Defendants prepared the Logs in compliance with applicable case law and the parties' ESI Protocol. LP's request for further revision or individual logs would be unduly burdensome, and there is no material benefit to such relief. The Court should deny the Motion.

### A. The Redwire Log Was Prepared in Accordance with Parties' Agreement

As a threshold matter, Defendants are entitled to file a categorical log in

response to the First RFPs. Specifically, the ESI Protocol states:

> To the extent that Defendants make any categorical assertion of privilege, Defendants shall produce a separately titled log, which shall specifically describe the category of documents withheld, the privilege that is asserted, and provide an explanation as to the basis for categorical treatment.

(Doc. 133-3, § C). Defendants prepared the Redwire Log based on, and in compliance with, this right. Moreover, the Redwire Log meets the requirements of the ESI Protocol as it includes a category description of the documents withheld and the privileges asserted. And, the foregoing information demonstrates a basis for why categorical treatment is appropriate, most notably the voluminous documents addressing the same topics.

The Motion mistakenly argues that Defendants did not follow the ESI Protocol by not conferring with LP beforehand. Mot., p. 3. Such argument is misleading. LP erroneously points to a section within the ESI Protocol concerning the logging of document *families* as a basis for his claim that the parties were to required to "negotiate" the use of a categorical privilege log before production. *Id.* That negotiation requirement, however, is not found within the separate section governing "Categorical Logging of Privilege Documents," Section C. (Doc. 133-3). Indeed, LP's argument ignores language in the section of the protocol devoted to categorical logs which states: "Nothing with regard to the stipulation above regarding the proper formatting and information for a detailed privilege log shall preclude Defendants from

7

asserting that certain subsets of documents responsive to the Requests are categorically privileged, such that logging of individually responsive documents is unnecessary." *Id.*, § C. Thus, Defendants created the logs in compliance with requirements under the ESI Protocol.

### B. Individual Logs Would Be Unduly Burdensome

The Motion incorrectly argues that individually logging documents or providing additional data would not be unduly burdensome. Mot., pp. 8-9. This is not the case and the Court should reject LP's position.

LP unconvincingly states that the bare number of documents is dispositive. Specifically, LP cites to out-of-circuit case law to establish a standard based solely on the quantity of documents. *See U.S. Bank Nat'l Ass'n v. Triaxx Asset Mgmt. LLC*, 2021 WL 1968325, at *4 (S.D.N.Y. Mar. 31, 2021); *In re Aenergy, S.A.*, 451 F. Supp. 3d 319, 325–26 (S.D.N.Y. 2020). This argument holds no weight. Those courts evaluated the appropriateness of categorical logs under their own local rules and, even in those instances, based their judgments on the adequacy of information present within the specific logs at-issue. *See id.* Such unique circumstances have no connection to this matter whatsoever. In truth, and for the reasons discussed here, the proposed revisions would be unduly burdensome to Defendants.

The Redwire Log contains almost two thousand documents spanning years and numerous authors. (**Ex. 5**, *Declaration of Glennys Ortega Rubin,*

8

*Esq.*, ¶ 6) ("Rubin Decl."); (Doc. 133-2); *Teledyne*, 2013 WL 5781274, at \*15-16

(permitting categorical log for documents spanning three months); *U.S. ex rel.*

*Keeler v. Eisai, Inc.*, 2012 WL 12842995, at \*3 (S.D. Fla. Sept. 27, 2012)

("individually logging years of privileged attorney communications would be

burdensome and of little benefit"); *Club Exploria, LLC v. Aaronson, Austin,*

*P.A.*, 2019 WL 13150470, at \*6 (M.D. Fla. Aug. 26, 2019) (categorical log not

necessary where production was sought from one individual). Creating an

individual log would unnecessarily require the dedication of significant

resources, i.e., extremely time-intensive and potentially requiring attorney

time for a span of several weeks. Rubin Decl., ¶ 9; *see infra,* § II.C. Such an

exercise would thus be burdensome, particularly where the categorical log

follows the parties' ESI Stipulation, and where an individual log would not

provide a material benefit. *Id.*; *see infra,* § II.C.

As to the PwC Log, the burden lies not in the number of documents to be

logged, but, rather, in the type of privilege that is asserted over such

documents. Individually logging the documents would improperly reveal

privileged information. Indeed, Rule 26(b)(5)(A)(ii) requires a party to provide

information regarding their privilege claims "in a manner that, **without**

**revealing information itself privileged or protected**, will enable other

parties to assess the claim." (emphasis added). "Ultimately, the creation of an

adequate privilege log requires a delicate balancing act—on the one hand, the

withholding party must not supply too little or indecipherable information, and on the other, the withholding party must not reveal too much detail for fear that the privileged information itself may seep into the log." *Johnson v. Ford Motor Co.*, 309 F.R.D. 226, 233 (S.D.W. Va. 2015).

Here, requiring Defendants to produce the PwC Log in an individual format tips the "delicate balancing act" into an undue burden. Such revision would implicate Redwire's claimed privileges and is not necessary. In fact, the Motion makes <u>no</u> argument that the information in the PwC Log is insufficient; rather, the remainder of the Motion focuses solely on the Redwire Log. The Motion only points out the number of documents on the PwC Log, and that one document on the PwC Log was recently produced[4]. Mot., p. 9.

Revisions to the Logs would be unduly burdensome to Defendants.

## C.    No Material Benefit to Revising Logs or Mandating Individual Logging

The Logs provide sufficient detail to permit LP to assess the claims of privilege or work product protection.  Thus, there is no material benefit to LP's request for further revisions beyond those agreed to herein.

### 1.    *The Redwire Log Sufficiently Describes the Categories of Privileged Documents*

The Motion argues that the subject descriptions in the Redwire Log are

---

[4] Defendants produced this record after LP pointed out that Defendants had affirmatively referenced the content of the record in a recent filing, not because there was any determination as to the privileged status of the document.

general and vague. Mot., pp. 10-11. However, the categories contain sufficient information to permit LP to assess the privileges asserted therein.

First, the Motion incorrectly argues that more "context" is needed as to the privileges over SEC filings and press releases. As to the SEC filings, the Motion cites to *City of Roseville Emps.' Ret. Sys. v. Apple Inc.*, 2022 WL 3083000, at *11 (N.D. Cal. Aug. 3, 2022) in claiming there is no "per se" rule that communications relating to "regulatory compliance" are privileged, and *In re Seroquel Prod. Liab. Litig.*, 2008 WL 1995058, at *7 (M.D. Fla. May 7, 2008) for the general proposition that the existence of regulation does not automatically equate to privilege. Mot., p. 10.

LP's case law is inapplicable as Defendants do not argue that all communications relating to regulatory issues are *per se* privileged. Rather, the Redwire Log asserts that certain documents regarding SEC filings in Categories 1-4 are privileged either because of their direct involvement with counsel, and/or because the correspondences were "at the direction of legal counsel and necessary for the rendition of legal advi[s]e and services." (Doc. 133-2). Indeed, "there is certainly good reason to anticipate that corporations will consult with their attorneys over compliance with legally mandated disclosures," as SEC filings often "require[] extremely detailed financial, legal, and structural information pertaining to the company." *Roth v. Aon Corp.,* 254 F.R.D. 538, 539, 541-42 (N.D. Ill. 2009) (attorney-client privilege applied to

11

email from Defendant's CFO to CEO and General Counsel, regarding a draft SEC Form 10-K, because "[t]he determination of what information should be disclosed for compliance is not merely a business operation, but a legal concern."). The Redwire Log provides context as to the subject and dates of the privileged documents, as well as the individuals involved. The information in is sufficient for LP to assess the claims of privileges relating to SEC filings.

As to press releases, the Motion's cited case law is also distinguishable. At issue in *Lights Out Holdings, LLC v. Nike, Inc.*, was whether documents shared with a third-party public relation ("PR") firm were necessary for the rendition of legal services. 2015 WL 11254687, at *4 (S.D. Cal. May 28, 2015) ("Privilege will only attach in the very limited circumstance where disclosure to ML Strategies was necessary for Plaintiffs' attorney to render sound legal advice." (emphasis removed)). Here, the Redwire Log does not seek to withhold documents related to press release or public statements created or shared with a third-party PR firm. (Doc. 133-2). Indeed, Defendants specifically did not withhold, but rather produced, documents involving Redwire's PR firm.

In *Rodney K. v. Mobile Cnty. Bd. of Educ.*, the Defendants "only [sought] documents that Plaintiffs and their counsel have submitted to the press …, not documents that have been kept confidential and contain the thoughts and impressions of attorneys." 2021 WL 6012704, at *4 (S.D. Ala. Mar. 9, 2021). The court found that the Plaintiffs put forth only "conclusory conclusions" as

to why such narrow category of documents should be withheld. *Id.* Here, the documents on the Redwire Log relating to press releases are asserted to involve legal counsel, and/or were "at the direction of legal counsel and necessary for the rendition of legal advi[s]e and services." (Doc. 133-2); *In re Johnson & Johnson Talcum Powder Prod. Mktg., Sales Pracs., & Prod. Liab. Litig.*, 2021 WL 3144945, at *6 (D.N.J. July 26, 2021) (privilege properly asserted over press releases reflecting counsel's legal input and analysis). There is sufficient information in the Redwire Log for Lead Plaintiff to assess the claims of privilege as to documents regarding press releases.

Moreover, several of the Motion's cited cases do not assess the propriety of a categorical versus individual log, but, rather, address substantive challenges to privileges, where the court conducts a closer look at justification for a privilege. *Lights Out Holdings*, 2015 WL 11254687, at *1 ("joint motion for determination of discovery dispute regarding discovery requests"); *Rodney K.*, 2021 WL 6012704, at *1 (motion to compel production of documents); *City of Roseville Employees' Ret. Sys. v. Apple Inc.*, 2022 WL 3083000, at *1 (N.D. Cal. Aug. 3, 2022) ("Motion to Compel Production of Documents as Privileged"). That is not the case here, rendering that case law inapplicable.

The two cases cited in the Motion addressing the sufficiency of a privilege log weigh in *Defendants' favor*. The dispute in *In re Seroquel* involved a party claiming that "virtually everything" it says publicly is privileged and the court,

13

naturally, found such broad claims to be insufficient to establish privilege. 2008 WL 1995058, at *6. By contrast, here, the Redwire Log makes specific, narrow assertions of privilege. Similarly, *Neelon v. Krueger*, found broad category descriptions such as communications "concerning events that occurred" and "documents that were issued or presented" to be insufficient. 2015 WL 1037992, at *3 (D. Mass. Mar. 10, 2015). The Redwire Log lays out the subject of the categories much more clearly than that in *Neelon*.

Finally, the Motion argues that more detail is needed because the Redwire Log explains that certain categories of documents are privileged even though counsel is not involved, but because the documents were prepared at the direction legal counsel. Mot., p. 11. It appears that LP adequately understands Defendants' assertions of privilege. LP does not explain what information is purportedly missing from the Redwire Log on this issue, rather, he simply claims this is "insufficient."[5] *Id*. It is unclear what additional information LP requires at this point. Defendants note they provided further legal support for such claims of privilege, as requested by LP, to wit:

> To the extent documents in these categories are withheld according to attorney-client privilege, such privilege has not been waived through disclosure to agents. *Foodonics Int'l, Inc. v. Srochi,*

---

[5] Lead Plaintiff cites to the case *United States v. Davita, Inc.*, where a motion to compel production of documents was before the court. 301 F.R.D. 676, 682 (N.D. Ga. 2014). The court noted that allegations of documents being transmitted at the direction of counsel "does not in itself support a claim of privilege," as an explanation for why the Court "looked to the communication itself and other evidence provided" to determine whether privilege applied. *Id*. It is unclear what application this discussion has to the instant case.

14

No. 3:17-CV-1054-J-32JRK, 2020 WL 9670613, at *3 (M.D. Fla. Mar. 20, 2020) (Attorney-client privilege is not waived by disclosure "where the disclosure is to a third party who is an 'agent' of the client."); *id*. ("Under this 'agency' exception, a client or attorney may disclose privileged information to non-attorney professionals, such as accountants, with whom the communication is necessary for the rendition of legal services to the client.").

To the extent documents in these categories are withheld according to work product privilege, some documents are work product created by third parties at the direction of counsel, which is protected under the work product doctrine. *Lake Shore Radiator, Inc. v. Radiator Express Warehouse*, No. 3:05CV1232 J12MCR, 2007 WL 842989, at *5 (M.D. Fla. Mar. 19, 2007) (the "work product doctrine also applies to work prepared for or by a party's representative"); *Advanced Polymer Tech. Corp. v. Textile Mgmt. Assocs., Inc.*, No. 4:08-CV-0018-HLM, 2009 WL 10669413, at *3 (N.D. Ga. Aug. 10, 2009) ("Documents or information prepared or gathered by a party's agent in anticipation of litigation, at the instruction of that party's counsel, can qualify for protection under the work product doctrine."). Some documents involve work product created by counsel or counsel's agents, which privilege has not been waived through disclosure to nonadversaries. *Gutter v. E.I. Dupont de Nemours & Co.*, No. 95-CV-2152, 1998 WL 2017926, at *3 (S.D. Fla. May 18, 1998).

To the extent documents in these categories are withheld according to the self-critical analysis privilege, such privilege does not require the involvement of counsel. *See Reichhold Chemicals, Inc. v. Textron, Inc.*, 157 F.R.D. 522, 526-27 (N.D. Fla. 1994).

(Ex. 3, pp. 2-3).

In sum, the Motion appears to take issue with the actual veracity of the asserted privileges, rather than the sufficiency of the information provided therein. LP offers no explanation for what "context" as to the communications would be provided in an individual log. Indeed, the Redwire Log's category descriptions appropriately explain the type of documents, the subject matter

15

of the documents, where counsel is involved, and why privilege still applies where counsel is not involved. This, in conjunction with the other information provided in the log, is sufficient to permit LP to assess the privileges asserted therein. Any additional information provided in an individual log would have no material benefit to the issues raised by LP.

### 2.    *Redwire Log Adequately Asserts Privileges*

Next, LP argues that the Redwire Log is deficient because it asserts multiple privileges for each category, instead of further breaking out the categories by singular privileges. Mot., p. 12-13. Such additional information would provide no material benefit to LP.

Defendants explained to LP that they cannot confirm whether the privileges asserted in each category of the Redwire Log apply to each document in the category. (Ex. 3, pp. 1-2). However, such information is not necessary, as LP already has the information he needs to assess the claims of privilege.

LP argues that his concern is, in particular, the ability to assess waiver of privilege, because disclosure to, for instance, an outside accountant may not waive work product, but may waive attorney-client privilege. Mot., p. 12. LP can already make this assessment based on the current Redwire Log. For instance, Category 3 indicates that "external accountants" are on each of the correspondences in that category. (Doc. 133-2). If LP believes that inclusion of such accountants waives the work product privilege, LP can make that

argument as to the documents in Category 3 over which work product privilege is asserted. There is no material benefit in LP knowing exactly how many documents in Category 3 Defendants are claiming work product over (the information he would receive if the categories were broken down beyond the proposed revisions above or an individual log was produced), when it comes to assessing whether the work product privilege has been waived.

Indeed, breaking the categories out by privileges asserted would not provide LP with any meaningful additional information. The key information for assessing privileges and waiver (subject matter of the documents and the persons involved), are already provided, and are the same for each document in the respective category. For instance, as to Category 3, the "Category Description" applies to each document in that category, and the types of persons involved (Columns I and J) are the same for each document in that category. (Doc. 133-2). Thus, breaking Category 3 out by various combinations of privileges asserted would simply repeat the majority of information in the log, with only the number of documents and date range changing. Such minor details are not necessary for LP to appropriately assess privilege.

In fact, these considerations are why Defendants structured the Redwire Log the way they did, that is organized by category *and* by types of individuals involved. Defendants intentionally broke down the categories to those involving (1) Redwire personnel and counsel; (2) Redwire personnel only; (3)

17

Redwire personnel and other parties; and (3) Redwire personnel, other parties, and counsel. (Doc. 133-2). This was done so that Lead Plaintiff could easily ascertain where Redwire, counsel, and other parties were and weren't involved in each category, and make his assessments of privilege and waiver therein.

Moreover, as there are three privileges asserted in each category, there are up to seven different ways the privileges may apply to the documents (individually, and with each other). Separating the Rewire Log into every iteration possible would drastically increase its size, with nominal, if any, benefit.  Also, there are documents that naturally implicate more than one privilege. This would thus just put LP in the same position—evaluating the sufficiency of multiple privilege claims over a category of documents.

Finally, ordering Defendants to produce an individual log would not provide a material benefit on this issue, for the same reasons described above. Namely, the necessary information for assessing privilege and waiver is already provided in the Redwire Log, and an individual log would provide only a handful more details that are inconsequential to LP's arguments.

### 3. *Proposed Revision to Redwire Log Addresses Concern as to Time Period*

The proposed revision noted above to divide the existing categories in the Redwire Log by date resolves the Motion's arguments as to the time period in the current log. Specifically, the Motion asserts that knowing whether a

18

document was created before or after November 2021 is relevant to assessment of Redwire claim of privilege under the work-product doctrine. Mot. p. 13. While Redwire disagrees, it agrees to provide such distinction in a revised draft of the Redwire Log. This argument is, accordingly, moot.

### 4.    *Redwire Log Adequately Lists Authors & Recipients*

Finally, the Motion takes issue with the Redwire Log's description of the individuals who sent or received the correspondences, found in Columns I and J of the Redwire Log. (Mot., pp. 14-15); (Doc. 133-2). Defendants believed that providing a string cite of names, without further explanation as to who those individuals are and their roles, would not be helpful. Rather, Defendants provided "groups" of individuals that are on the at-issue correspondences. (Doc. 133-2). As explained, *supra* § II.C.2, this was done with the intent that LP could more easily make his assessments of privilege and waiver therein.

The Motion in fact raises only two issues with this information, both of which Defendants are willing to resolve. First, Defendants are willing to revise entry in Category 4 to add additional information as to the referenced "other necessary partners." Mot., p. 14. Second, Defendants are also willing to revise the Redwire Log to replace the "external accountants" label with identification to the specific entities referenced. *Id.* Defendants believe these revisions will resolve the Motion's issues raised as to persons referenced on the Redwire Log, will provide sufficient information for LP to assess privilege, and is more

19

appropriate than creating new individual logs.

### 5. PwC Log Provides Sufficient Information

There similarly would be little material benefit to individual logging of documents in the PwC Log. The PwC Log provides sufficient information to permit assessment of the privileges claimed therein. Indeed, LP cannot argue he is unable to assess whether documents within that category is privileged when, in the same breath, he argues why documents "collected by counsel" may not be privileged. Mot., p. 9. LP clearly has sufficient information to assess the privileges in the PwC Log, and the Court should deny arguments on this issue.

## III. CONCLUSION

For the reasons stated above, the Court should deny the Motion.

Respectfully submitted,                          Dated: May 9, 2024.

*/s/ Glennys Ortega Rubin*                       **FRANK A. ZACHERL, ESQ.**
**ALFRED J. BENNINGTON, JR., ESQ.**             Florida Bar No. 868094
Florida Bar No. 0404985                          fzazherl@shutts.com
bbennington@shutts.com                           **SHUTTS & BOWEN LLP**
**GLENNYS ORTEGA RUBIN, ESQ.**                   300 South Orange Avenue,
Florida Bar No. 556361                           Suite 1600
grubin@shutts.com                                Orlando, Florida 32801
**BENJAMIN F. ELLIOTT, ESQ.**                    Telephone: (407) 835-6755
Florida Bar No.: 1010706                         Facsimile: (407) 849-7255
belliott@shutts.com                              *Attorneys for Defendants*

20