**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | |
|---|---|
| JED LEMEN, Individually and on Behalf of All Others Similarly Situated, | Case No.: 3:21-CV-1254-TJC-PDB |
| Plaintiffs, | <u>CLASS ACTION</u> |
| v. | **DEFENDANTS' RESPONSE TO LEAD PLAINTIFF'S "TIME SENSITIVE MOTION TO STRIKE DEFENDANTS' DAUBERT MOTION"** |
| REDWIRE CORPORATION f/k/a GENESIS PARK ACQUISITION CORP., PETER CANNITO, and WILLIAM READ, | |
| Defendants. | |

REDWIRE CORPORATION f/k/a GENESIS PARK ACQUISITION CORP. ("Redwire"), PETER CANNITO, and WILLIAM READ (collectively "Defendants") oppose Lead Plaintiff JARED THOMPSON's ("LP") (collectively, the "Parties") *Time Sensitive Motion to Strike Defendants' Daubert Motion* (Doc. 143) (the "Motion") as, on its face, it relies on illogical factual assertions without reference to any supporting legal authority and is otherwise procedurally flawed.

The confusing Motion asks the Court to, on a time sensitive basis, strike Defendants' recently filed *Daubert Motion to Exclude the Expert Opinions of Matthew D. Cain* dated May 8, 2024 (Doc. 136) (the "Daubert Motion") as untimely. *See* Mot. Importantly, the Court previously ordered that the

1

deadline for *Daubert* motions is not until January 27, 2024—eight months in the future.  Doc. 90.  The instant Motion (which requires undersigned and the Court to put aside other work to address the baseless arguments given its improper time-sensitive designation) fails to demonstrate that the Daubert Motion is improper. Not only is relief under Rule 12(f) impossible here given that the Daubert Motion is not a pleading, but there is no basis for the Court to strike the Daubert Motion under its inherent authority for the reasons discussed herein. The Court should summarily deny the requested relief.

## I.    BACKGROUND

The Court should deny the Motion by simple reference to its prior order setting January 27, 2025 as the deadline for *Daubert* motions.  *See* Doc. 90.  No other "background" facts or context should be necessary.  Nevertheless, as the Motion is based almost exclusively on opposing counsel's characterization of events, undersigned provides the following table-setting for complete context.

LP sought class certification in this matter on January 19, 2024.  (Doc. 85) (the "Certification Motion").    Defendants timely responded to the Certification Motion on April 24, 2024.   Doc. 129 (the "Certification Opposition").   Thereafter, Defendant brought the separate Daubert Motion prior to the Court's deadline for same.  Doc. 136.

The Parties previously negotiated the deadline for opposing the Certification Motion and submitted two separate *joint* requests to the Court on such topic. Doc. Nos. 88 (the "First Extension Motion"), 120 (the "Second Extension Motion"). The Parties first sought to extend the deadline to respond to the Certification Motion until March 29, 2024; Doc. 88; and then later sought further extension until April 24, 2024. Doc. 120. The Court granted both motions. Doc. Nos. 89, 121. The First Extension Motion also sought to revise the remaining case deadlines through the final pretrial conference as a consequence of delaying opposition to the Certification Motion and to permit LP to file a reply in support of the Certification Motion; Doc. 88; which the Court also granted. Doc. 89. Therafter, the Court entered the operative *Amended Case Management and Scheduling Order*. Doc. 90 (the "Amended CMSO"). In granting the Second Extension Motion extending dates to oppose the Certification Motion and to file a reply in support, the Court kept the remainder of the Amended CMSO in place. Doc. 121.

The proposed schedule in the First Extension Motion also included a *deadline* for filing dispositive and *Daubert* motions; Doc 88, p. 2; that the Court adopted. Doc. 90. As to *Daubert* motions, the Amended CMSO states the following:

**"Dispositive and Daubert Motions Deadline: January 27, 2025"**

3

Doc. 90, p. 2 (emphasis added). The Second Extension Motion did not seek to amend such date. Doc. 120, p. 4 ("The requested extensions are made in good faith and will not affect any other deadlines in the CMSO."). Thus, the deadline for *Daubert* motions remains January 27, 2025.

On April 24, 2024, consistent with the Court's order (Doc. 121), Defendants filed the Certification Opposition. Doc. 129. The Certification Opposition stated why LP failed, through the Certification Motion, to meet the legal standard for class certification under Fed. R. Civ. P. 23. *Id.* Thus, the Certification Opposition asserted that the Court should deny the Certification Motion. *Id.* Separately, on May 8, 2024, Defendants filed the Daubert Motion. Doc. 136. That motion presented legal argument as to why Dr. Matthew Cain's opinions and testimony, as stated in his previously disclosed report, failed to meet the standard under *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993) and related case law. *Id.* Defendants filed the May 8, 2024 Daubert Motion over eight (8) months ***before*** the deadline for filing *Daubert* motions as stated in the Amended CMSO. *See* Doc. 90.

Now, LP states that the Court should strike the Daubert Motion—filed eight months *before* the applicable deadline—on the purported grounds that Defendants missed the deadline for such filing. *See* Mot. The Motion not only lacks any logical sense but is legally infirm in that it is improper to strike the

4

Daubert Motion under Rule 12(f) as the Daubert Motion is not a pleading and because LP's illogical arguments are insufficient to warrant exercise of the Court's inherent powers. Denial of the Motion is warranted.

## II.    LEGAL STANDARD

"A motion to strike is a drastic remedy generally disfavored by the courts, and will ordinarily be denied unless the material sought to be stricken is insufficient as a matter of law." *Arthurs v. Glob. TPA LLC*, No. 614CV1209ORL40TBS, 2015 WL 13652716, at *1 (M.D. Fla. Feb. 6, 2015).

Motions to strike are generally governed by Federal Rule of Civil Procedure 12(f). Because Rule 12(f) only provides for the striking of a "pleading," the Middle District of Florida has routinely held that a "motion is not a pleading, and thus a motion to strike a motion is not proper under 12(f)," and has routinely denied motions to strike a motion on this basis. *Morroni v. Gunderson*, 169 F.R.D. 168, 170 (M.D. Fla. 1996) (denying motion to strike a motion as procedurally improper); *Weiss v. PPG Indus., Inc.*, 148 F.R.D. 289, 292 (M.D. Fla. 1993) (same); *Mahon v. City of Largo, Fla.*, 829 F. Supp. 377 (M.D. Fla. 1993) (same).

Alternatively, Courts have the inherent authority to strike improperly-filed papers from the docket. *See Soto v. Miami-Dade Cty.*, 281 F. Supp. 3d 1320, 1322 (S.D. Fla. 2017), *aff'd*, 760 F. App'x 855 (11th Cir. 2019) ("District

5

courts also possess[] the inherent power to police [their] dockets."); *Fisher v. Whitlock*, 784 F. App'x 711, 714 (11th Cir. 2019) (noting that striking a motion is within the inherent powers of the Court); *Byrne v. Nezhat*, 261 F.3d 1075, 1129 n. 105 (11th Cir. 2001) (noting that "Fed.R.Civ.P. 12(f) ... is a codification of part of the district court's inherent power to manage pending litigation"). "[T]he Court has inherent authority to strike any filed paper which it determines to be abusive or otherwise improper under the circumstances." *Cavner v. Bounceback, Inc.*, No. 8:14-MC-97-T-36EAJ, 2015 WL 467682, at \*1 (M.D. Fla. Feb. 3, 2015) (quotation omitted).  As motions to strike are, however, not favored, they "will be denied unless the allegations have no possible relation to the controversy. If there is any doubt whether the challenged matter may raise an issue of fact or law, the motion to strike should be denied."  *Id.* (quotation omitted).

## III.   **ARGUMENT**

LP's arguments to strike the Daubert Motion are not proper under any legal standard for a motion to strike. As a threshold matter, however, the Motion rests on a flawed factual premise, to wit: that the Daubert Motion is untimely despite coming eight months before the operative deadline. The Motion's protests to the contrary all fail to dispute this inscrutable fact. The Court should also reject the Motion as it would be improper to strike the Daubert Motion as it is not a pleading (period) and because LP's illogical

6

arguments do not justify relief under the Court's inherent authority. The Court should reject this frivolous Motion whole cloth.

### A.     The Motion Rests on A Flawed Premise

The Motion is logically flawed. Most simply stated, the Motion argues that Defendants filed the Daubert Motion too late. *See* Mot. LP acknowledges that the deadline for *Daubert* motions in the Amended CMSO is January 27, 2025, but still insists that the Daubert Motion is somehow untimely. Mot. p. 7. The Motion makes numerous irrelevant and erroneous claims in an effort ignore the Amended CMSO's deadline and avoid a substantive response to the Daubert Motion. The Motion's entire premise is mistaken and the Court should deny it.

As noted, the Court set January 27, 2025 as the deadline for *Daubert* motions. Doc. 90. Defendants filed the Daubert Motion on May 8, 2024—**over eight months before the applicable deadline**. Doc. 136. Thus, despite all the Motion's rhetoric, the Daubert Motion is not untimely, and the Court should deny the Motion. *See* Doc. 90.

Simple reference to a calendar should have dissuaded LP from filing the Motion in the first instance. Instead, the Motion makes numerous irrelevant assertions that fail to change the simple fact that May 2024 comes before January 2025.

7

**First**, the Motion references the Parties' negotiations on the briefing schedule for opposition to the Certification Motion. Mot., pp. 3-6. LP asserts in a variety of ways that the Parties did not discuss *Daubert* motions during such negotiations or in related briefing submitted to the Court. *Id.* On this point, Defendants agree. That topic was not discussed, because the Parties were conferring on the schedule for opposing class certification, not about *Daubert* motions. *See* Docs. 88, 120 (Extension motions addressing the deadlines to oppose the Certification Motion). The Motion offers no authority, nor could it, to suggest that in conferral about one motion, the Parties are obligated to confer about other—separate—motions. *See* Mot.

**Second**, and relatedly, the Motion contradicts itself by also falsely suggesting a tacit agreement existed between the Parties that a *Daubert* motion would only be proper if filed contemporaneous to the Certification Opposition. Mot. p. 6 ("[T]he parties' negotiations, at most, contemplated any *Daubert* motion related to class certification to be filed with the opposition brief."). No such agreement exists. Moreover, the Motion concedes that *Daubert* motions were **never discussed during negotiations related to the Certification Motion or opposition thereto.** Mot., p. 3 ("Since the start of discovery, the parties have negotiated and submitted to the Court multiple proposed case schedules and joint motions related to class certification briefing that never contemplated class certification and *Daubert*

8

motions being filed either *in addition to or after* the deadlines for the parties' class certification briefs.) (emphasis original); p. 6 ("As the foregoing demonstrates, the parties negotiated multiple case schedules and issues related to the class certification briefing without Defendants ever once raising the possibility they would file a *Daubert* motion concerning Plaintiff's expert either with their opposition or after filing their opposition."). Thus, the idea that the Parties had some unspoken and nowhere memorialized understanding that *Daubert* motions were only proper only if filed alongside the Certification Opposition is a total fabrication. *See id.*

**Third**, the Motion asserts that the Defendants are precluded from filing a *Daubert* motion *before* the deadline listed in the Amended CMSO. Mot. p. 6-7. This argument glaringly ignores what a deadline[1] is. Again, LP cites no authority for his position that the Parties are precluded from taking such action prior to the stated deadline. *See* Mot. Indeed, LP's own actions in this case betray his argument. Notably, in connection with the Certification Motion itself, LP disclosed an expert report despite the Amended CMSO listing the

---

[1] For purposes of the record, a "deadline" is considered to be "[a] cutoff date for taking some action." DEADLINE, Black's Law Dictionary (11th ed. 2019). Similarly, "deadline" is defined as "a date or time before which something must be done." Deadline, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/deadline (last visited May 13, 2024). A deadline does not mean that some specific action—here, filing a Daubert motion—must occur on the listed date and no others. *See id.* Instead, a deadline provides the date by which the act must occur. *Id.*

9

"deadline" for expert reports as September 27, 2024. *See* Doc. 86-1 (LP's expert report).

The Motion offers the inapplicable hypothetical that Defendants would likely object had LP served an expert report in support of their Certification Motion weeks after the deadline for same. Mot. p. 7. However, in that instance, the issue would not be the timeliness of the expert report in relation to the Amended CMSO, but rather, the sufficiency of the Certification Motion's proof in order to meet its evidentiary burden. There is no comparison to current circumstances. Defendants Certification Opposition is not relying on the Daubert Motion for evidentiary support. *See* Doc. 129. Rather, the Daubert Motion is a separate motion seeking different relief on different legal basis. *Compare* Doc. 129 *with* Doc. 136.

**Fourth**, the Motion suggests that *Daubert* motions are more applicable in the context of "whether expert testimony is admissible on summary judgment or for trial." Mot. p. 7. As is LP's pattern, the Motion makes such statement without any actual legal authority in support. *See id.* Nor could it as nothing in *Daubert* confines the Court's gatekeeping role to those contexts. 509 U.S. 579 (1993).

Moreover, Courts may properly consider *Daubert* motions at the class certification stage. *See Sher v. Raytheon Co.*, 419 F. App'x 887, 890 (11th Cir.

10

2011) (District Court erred by not conducting *Daubert* analysis prior to ruling on class certification).[2]  Indeed, in *Jerue v. Drummond Co., Inc.,* the Court granted a *Daubert* challenge in the context of a class certification motion; No. 8:17-CV-587-TPB-AEP, 2023 WL 6610603 (M.D. Fla. Aug. 25, 2023), *report and recommendation adopted,* No. 8:17-CV-587-TPB-AEP, 2023 WL 6586087 (M.D. Fla. Oct. 10, 2023); notwithstanding that the defendant filed the *Daubert* motion in that case almost two months *after* opposing class certification. *Compare* No. 8:17-CV-587-TPB-AEP, Doc. 155, *with* No. 8:17-CV-587-TPB-AEP, Doc. 170.

**Fifth,** the Motion claims that the Daubert Motion is prejudicial.  Mot. p. 8-9.  Notably, such argument has nothing to do with Defendants' right to file such motion.  LP claims that it should not have to respond to the Daubert Motion while also working to draft a reply in support of the Certification Motion.  *Id.* at p. 8.  Of course, the Motion conveniently ignores that the current deadline affords LP a very generous ***eight weeks*** to draft a reply.  Doc. 121. Indeed, the Motion itself concedes that there is substantive overlap between the Certification Opposition and the Daubert Motion; *id.*, p. 8; yet makes no mention that such overlap would reduce the amount of "extra" work to respond to the Daubert Motion.  *See id.*  Importantly, however, the press of litigation

---

[2] The Motion acknowledges, but does not dispute, this case law.  Mot., p. 9.

11

should have no bearing on whether Defendants are properly entitled to seek relief under *Daubert.*

LP claims further prejudice in that its deadline to oppose the Daubert Motion falls prior to the scheduled deposition of Defendants' expert.  Mot. p. 8.  This would still be the case, however, if Defendants filed the Daubert Motion of the same date as the Certification Opposition, which the Motion seems to suggest may have been appropriate.  *See* Mot. p. 6.  Thus, it is unclear how this scheduling is relevant to a determination of whether the Court should strike the Daubert Motion.

**Sixth**, the Motion's limited reference to case law is unconvincing. The Motion cites to **only two cases** [3] on the second to last page, as supposed authority for LP's position that the *Daubert* Motion was untimely. However, these cases are easily disregarded as inapplicable. In the first case, *Rodriguez v. GEICO Gen. Ins. Co.*, the at-issue *Daubert* motion was found untimely when it was filed without leave two weeks after the deadline established for *Daubert* Motions *in the Court's Case Management Scheduling Order.*     No. 619CV1862ORL40GJK, 2021 WL 1053156, at *1 (M.D. Fla. Feb. 4, 2021).  If anything, this case cuts against LP as Defendants' *Daubert* Motion was filed months before the deadline to do so in the Amended CMSO, and thus was not

---

[3] Indeed, the Motion fails to include even the legal standard for motions to strike.

12

untimely.  The second case, *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, is similarly irrelevant, as it, again, involved a *Daubert* challenge made after the deadline set by the Court and on the eve of trial.  326 F.3d 1333, 1349 (11th Cir. 2003).  Indeed, the language in the parenthetical cited by the Motion quotes *Quite Tech.*'s citation to the case *Alfred v. Caterpillar, Inc.*, which explained that *Daubert* challenges should not operate as a "gotcha" and that Tenth Circuit caselaw "permits a district court to reject as untimely Daubert motions *raised late in the trial process*…."  262 F.3d 1083, 1087 (10th Cir.2001) (emphasis added).  *Quiet Tech.*'s discussion of untimely *Daubert* motions filed after the Court's established deadlines and in the *trial* process is inapplicable here.

Ultimately, none of LP's arguments discussed above change the fact that the Court granted the Parties the right to file *Daubert* motions through January 27, 2025 which deadline has not passed.  Doc. 90.  Each of the above arguments ignore this simple and dispositive fact. Thus, in addition to the particular deficiencies of such arguments, the Court should ignore each of LP's protests and deny the Motion.

**B.    The Motion Fails to Satisfy Requirements for Motions to Strike under Either Rule 12(f) or this Court's Inherent Authority**

Beyond the deficient factual characterization discussed above, the Motion does not even attempt to show that striking the Daubert Motion would

13

be proper under any applicable standard. *See* Mot. Indeed, the Motion is completely silent as to the proper legal standards for this request. *Id.* Nevertheless, under either Rule 12 or the Court's inherent authority, there is no basis to strike the Daubert Motion.

First, as noted, the Court's Rule 12 authority is limited to striking *pleadings. Morroni*, 169 F.R.D. at 170. The Daubert Motion is not a pleading. Fed. R. Civ. P, Rule 7(a) (identifying limited types of documents that count as a "pleading"). Thus, the Court does not have authority under Rule 12 to strike the Daubert Motion. *See e.g. Morroni,* 169 F.R.D. at 170 (M.D. Fla. 1996); *Weiss*, 148 F.R.D. at 292; *Mahon*, 829 F. Supp. 377; *Edgerton v. City of St. Augustine, Fla.*, No. 3:20-CV-941-BJD-PDB, 2021 WL 1789368, at *3 (M.D. Fla. May 5, 2021).

Second, it would be improper to strike the Daubert Motion through exercise of the Court's inherent authority. As stated, Defendants filed the Daubert Motion eight months *prior to* the deadline in the Amended CMSO. *See* Doc. 90. Thus, it cannot be said that the Daubert Motion is "abusive or otherwise improper under the circumstances" such that exercise of such authority—which is reserved for limited circumstances—is proper. *See Cavner*, 2015 WL 467682 at *1; *see also United States for Use & Benefit of S. Site & Underground, Inc. v. McCarthy Improvement Co.*, No. 3:14-CV-919-J-

14

PDB, 2016 WL 11505394, at *6 n.11 (M.D. Fla. Aug. 23, 2016) ("Although a court has inherent authority to strike any filing, it must use that authority in a limited manner; for example, to strike an unnecessary filing that undermines the respect and decorum federal court demands."). Given that the Motion fails to even argue that the Daubert Motion meets this standard and that the arguments it does make are all illogical or factually incorrect, the Court should refrain from using its inherent power in the disfavored manner of striking the Daubert Motion. *See Cavner*, 2015 WL 467682 at *1.

Accordingly, there is no legal justification for Defendants' requested relief.

## IV.    CONCLUSION

For the reasons stated above, the Court should deny the Motion in its entirety.

Respectfully submitted,                              Dated: May 13, 2024.

*/s/ Glennys Ortega Rubin*                    **FRANK A. ZACHERL, ESQ.**
**ALFRED J. BENNINGTON, JR., ESQ.**    Florida Bar No. 868094
Florida Bar No. 0404985              fzazherl@shutts.com
bbennington@shutts.com               **SHUTTS & BOWEN LLP**
**GLENNYS ORTEGA RUBIN, ESQ.**         300 South Orange Avenue,
Florida Bar No. 556361               Suite 1600
grubin@shutts.com                    Orlando, Florida 32801
**BENJAMIN F. ELLIOTT, ESQ.**          Telephone: (407) 835-6755
Florida Bar No.: 1010706             Facsimile: (407) 849-7255
belliott@shutts.com                  *Attorneys for Defendants*

SBDOCS 350093 2

15