UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| JED LEMEN, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>REDWIRE CORPORATION f/k/a GENESIS PARK ACQUISITON CORP., PETER CANNITO, and WILLIAM READ,<br><br>Defendants. | Case No. 3:21-cv-01254-TJC-PDB<br><br>CLASS ACTION |

**DECLARATION OF REED R. KATHREIN IN SUPPORT OF LEAD
PLAINTIFF JARED THOMPSON'S MOTION
TO COMPEL PRODUCTION OF ALLEGED WORK PRODUCT
AND OTHER DOCUMENTS**

**REDACTED PUBLIC VERSION**

I, Reed R. Kathrein, declare as follows:

1.      I am a partner with the law firm of Hagens Berman Sobol Shapiro LLP ("Hagens Berman"), counsel for Proposed Class Representative Jared Thompson in this action. Along with my Hagens Berman colleagues Steve Berman and Lucas Gilmore, I was appointed by the Court as Lead Counsel by Order dated April 4, 2022. *See* ECF No. 43.

2.      I submit this declaration in support of Lead Plaintiff' Jared Thompson's ("Plaintiff") motion to compel production of work product and other documents. I have personal knowledge of the matters described in this declaration and I am competent to testify thereto.

3.      On June 2, 2023, Defendants served their initial disclosures. The disclosures stated that the only documents Defendants may use to support their defenses are public documents "filed with the U.S. Securities and Exchange Commission." In a June 5, 2023 email, Defendants responded to Plaintiff's protest that the initial disclosures were insufficient and Defendants had adequate time to identify other documents by claiming the disclosures were complete and appropriate.

4.      Plaintiff served document requests and one set of interrogatories to all Defendants on May 19, 2023.

5.      To expedite the process of receiving documents, on May 30, 2023, Plaintiff identified core known, responsive documents that could be identified and

- 1 -

produced without any search tool.  Specifically, Plaintiff requested: (1) the Board and Audit Committee documents; (2) reports from the Audit Committee; (3) the whistleblower complaints; (4) investigations and reports following up on the complaints; (5) documents relating to the Audit Committee findings regarding "tone at the top"; and (6) documents relating to the termination of William Read. Plaintiff further explained the core documents would help develop targeted search terms for identifying responsive documents. Given counsel's presumed knowledge of Defendants' documents, Plaintiff also requested a search term proposal.

6.     After a stipulated extension, Defendants responded to the interrogatories and RFPs on July 20, 2023. The responses from each individual Defendant to the interrogatories were nearly identical.  A true a correct copy of Redwire's responses and objections to the interrogatories is attached as Exhibit A, and a true and correct copy of Defendants' responses to the document requests is attached as Exhibit B.

7.     In a July 26, 2023 email, Plaintiff requested a meet and confer with Defendants before Defendants began the review and production of documents via search terms.  Plaintiff also stated that the parties should agree on search terms and custodians by mid-August. Plaintiff noted, moreover, that Defendants had previously indicated they would produce known, responsive documents concurrently with their discovery responses.  Yet by July 26, 2023, Defendants had

not made the production.  Finally, Plaintiff added an additional set of known responsive documents to the previous May 30, 2023 request – (7) documents relating to auditor reports/communications to Redwire relating to the "tone at the top" and other allegations in the operative complaint – and maintained that the identification and production of the documents did not require search terms.

8.      During an August 3, 2023 meet and confer call, Defendants stated that King & Spalding almost exclusively prepared the Board and Audit Committee materials requested by Plaintiff, and therefore, any initial document production would not be significant.  Defendants also said a privilege log would be forthcoming.

9.      On August 11, 2023, Defendants identified only two documents that fell within the previously requested categories of known responsive documents and were not privileged: the whistleblower complaint and William Read's separation agreement.  Defendants also sent an initial list of custodians and document sources against which Defendants would run their self-selected terms.  The parties, however, agreed that the process would be iterative with each party reserving rights.

10.      A few days later, August 14, 2023, Plaintiff received Defendants' initial list of search terms and a corresponding hit report.  The search terms appeared to reflect no effort by Defendants to use their knowledge to craft terms best-suited to identify responsive documents.  Rather, Defendants simply pulled words from their public disclosures. Per Defendants' report, their initial search terms hit for

approximately 46,000 non-unique documents.    A true and correct copy of Defendants' initial set of search terms and hit report is attached as Exhibit C.

11.    Defendants also served their first privilege log identifying Audit Committee materials on August 11, 2023.  The ██████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████ A true and correct copy of Defendants' initial privilege log is attached as Exhibit D.

12.    On September 28, 2023, Plaintiff sent Defendants a set of proposed terms.  Because very little was known (and continues to be unknown) about the facts on which the disclosures were based, the proposed terms were purposefully broad to have a greater chance to capture key responsive documents.  A true and correct copy of Plaintiff's counter-proposal is attached as Exhibit E.

13.    Defendants sent a counterproposal to Plaintiff's terms on October 13, 2023.  Defendants noted that Plaintiff's proposal returned 1.4 million documents, which Defendants claimed was "unduly burdensome, disproportional to the needs of the case and extremely costly."  Per Defendants, their counterproposal, which consisted mainly of conclusory words, hit 32,385 documents (not including family records).

- 4 -

14.     Following receipt of Defendants' counterproposal, Plaintiff continued negotiations with Defendants over other discovery issues, including the production of documents from GPAC, Defendants' objections to the first set of document requests, and the collection period of documents relating to William Read's departure, among other issues.  Plaintiff also took the time to review Defendants' initial document production to help refine the search term proposal.  In fact, Plaintiff's review of documents uncovered a codename for the Audit Committee investigation that had not been identified in Defendants' initial set of search terms.

15.     Plaintiff sent the next counterproposal on November 29, 2023.  The parties exchanged additional proposals on December 8, 2023 (Defendants), December 14, 2023 (Plaintiff), January 5, 2024 (Defendants), and January 22, 2024 (Plaintiff).

16.     Defendants sent their "final" counterproposal on February 7, 2024.  A true and correct copy of Defendants February 7, 2024 counterproposal converted into multiple PDF parts for ease of the Court's review, which reflects the parties' previous proposals identified in paragraph 15, is attached as Exhibit F(a), F(b), and F(c).

17.     When sending their "final" counterproposal, Defendants for the first time proposed using Technology Assisted Review ("TAR") to review the documents culled by search terms to further narrow the number of documents for manual

review.    Defendants made this proposal despite previously stating during a December 14, 2023 meet and confer that the number of documents would be a "roadblock" for the application of TAR.

18.        Plaintiff sent a letter addressing Defendants' proposal to use TAR on February 15, 2024.  The letter outlined how TAR should be used and noted that when properly employed, TAR can identify 80% or more responsive documents in a corpus, compared to the 25-30% of responsive documents search terms generally retrieve.  Plaintiff argued that if used, TAR should be run over the largest possible document corpus because when search terms and TAR are combined – as Defendants proposed – the resulting estimated recall level will be the product of the recall at each stage.  Nonetheless, Plaintiff was willing to discuss Defendants' proposal and seek further clarification.  Attached as Exhibit G is a demonstrative created by Plaintiff's counsel demonstrating the issues with the recall level of using search terms and TAR to identify responsive documents.

19.        On February 28, 2024, Plaintiff learned that Defendants proposed to limit the use of TAR further by using it statically, *i.e.,* without "continuous," "active" learning.  After additional exchanges of questions and answers, Defendants provided the final response on March 29, 2024, and made clear that the process Defendants were amenable to would have a very low probability of identifying the key

- 6 -

documents in the case. A true and correct copy of Defendants' March 29, 2024 email is attached hereto as Exhibit H.

20. On April 11, 2024, Plaintiff informed Defendants they reached an impasse, and on April 19, 2024, Plaintiff requested that the parties reach out to the Court to jointly discuss the dispute. Defendants never responded to Plaintiff's request.

21. During discovery, Plaintiff served a document subpoena dated November 30, 2023 on KPMG LLP, and served a notice of subpoena on Defendants that same day. KPMG served responses and objections to the subpoena on January 26, 2024, and asserted privilege over nearly all of the requested documents. Yet, despite repeated requests from Plaintiff, neither KPMG nor Defendants served a privilege log covering the documents until May 13, 2024. That day, Defendants served a ███████████████████████████████████████████████ ███████████████████████████████████████████████ ███████████████████████████████████████. A true and correct copy of the Defendants' May 13, 2024 privilege log is attached as Exhibit I.

22. Plaintiff also served a document subpoena on King & Spalding LLP on April 3, 2024, and provided notice of the subpoena to Defendants one day prior. To date, Plaintiff has received no response to the subpoena nor a privilege log. On May

- 7 -

13, 2024, Defendants for the first time claimed that Plaintiff's service on King & Spalding had not been "effected."

23.     To date, Defendants have produced less than 1,400 documents, none of which disclose the basis for the Audit Committee findings and conclusions.

24.     Attached as Exhibit J is a true and correct copy of excerpts from Redwire's Form 10-Q filed on April 1, 2022 where the Audit Committee made its findings and conclusions public.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Executed this 13th day of May, 2024 in Berkeley, California.

_/s/ Reed R. Kathrein_        
REED R. KATHREIN