# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

|  |  |
|---|---|
| JED LEMEN, Individually and on Behalf of All Others Similarly Situated, | |
| Plaintiffs, | |
| v. | Case No.: 3:21-CV-1254-TJC-PDB |
| REDWIRE CORPORATION f/k/a GENESIS PARK ACQUISITION CORP., PETER CANNITO, and WILLIAM READ, | CLASS ACTION |
| Defendants. | |

**NOTICE OF SERVICE OF REDWIRE CORPORATION'S ANSWERS AND OBJECTIONS TO LEAD PLAINTIFF'S FIRST SET OF INTERROGATORIES**

Defendants, Redwire Corporation f/k/a Genesis Park Acquisition Corp ("Redwire"), Peter Cannito ("Cannito"), and William Read ("Read") (Redwire, Cannito, and Read collectively, "Defendants"), by and through the undersigned counsel, hereby give notice of serving Redwire's answers and objections to Lead Plaintiff's First Set of Interrogatories directed to All Defendants dated May 19, 2023.

Dated: July 20, 2023.

Respectfully submitted,

*/s/ Christian M. Leger*
**ALFRED J. BENNINGTON, JR., ESQ.**

Florida Bar No. 0404985
bbennington@shutts.com
**GLENNYS ORTEGA RUBIN, ESQ.**
Florida Bar No. 556361
grubin@shutts.com
**CHRISTIAN M. LEGER, ESQ.**
Florida Bar No. 0100562
cleger@shutts.com
**SHUTTS & BOWEN LLP**
300 South Orange Avenue, Suite 1600
Orlando, Florida 32801
Telephone: (407) 835-6755
Facsimile:  (407) 849-7255

and

**H. TIMOTHY GILLIS, ESQ.**
Florida Bar No. 0133876
tgillis@shutts.com
**JEFFREY S. YORK, ESQ.**
Florida Bar No. 987069
jyork@shutts.com
**SHUTTS & BOWEN LLP**
1022 Park Street, Suite 308
Jacksonville, Florida 32204
Telephone: (904) 899-9926

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 20th day of July, 2023, a true and correct copy of the foregoing has been electronically filed with the Clerk of Court using the Court's CM/ECF filing system, which will serve a copy via electronic mail upon the following CM/ECF Participants, and on the aforementioned date I caused a true and correct copy of the foregoing to be

2

served via U.S. Mail, postage prepaid, upon the following non-CM/ECF Participants:

Reed R. Kathrein, Esq. *(Pro Hac Vice)*
reed@hbsslaw.com
Lucas E. Gilmore, Esq. *(Pro Hac Vice)*
lucasg@hbsslaw.com
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: 510-725-3000
Facsimile: 510-725-3001

and

Steve W. Berman, Esq. *(Pro Hac Vice)*
steve@hbsslaw.com
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: 206-623-7292
Facsimile: 206-623-0594

*Lead Counsel for Lead Plaintiff Jared Thompson*

and

Brian Schall, Esq. (pro hac vice forthcoming)
brian@schallfirm.com
THE SCHALL LAW FIRM
2049 Century Park East, Suite 2460
Los Angeles, CA 90067
Telephone: (424) 303-1964

*Additional Counsel for Lead Plaintiff Jared Thompson*

and

David M. Buckner, Esq.
david@bucknermiles.com
BUCKNER + MILES
2020 Salzedo Street, Suite 302
Coral Gables, FL 33134
Telephone: (305) 964-8003
Facsimile: (786) 523-0485

*Liaison Counsel for Lead Plaintiff Jared Thompson*

/s/ Christian M. Leger
**CHRISTIAN M. LEGER, ESQ.**

3

**NOTICE OF SERVICE OF REDWIRE'S ANSWERS AND OBJECTIONS TO LEAD PLAINTIFF'S FIRST SET OF INTERROGATORIES**

**GENERAL OBJECTIONS**

Redwire states the following General Objections applicable to all Interrogatories propounded by Lead Plaintiff in the First Set of Interrogatories:

1.      Redwire objects to these Interrogatories to the extent that they purport to be four (4) separate interrogatories, yet twenty-three (23) separate interrogatories are propounded.  For ease of reference, these Answers and Objections incorporate the numbering convention as established by Lead Plaintiff.

2.      Redwire objects to the definition of "Redwire" employed by Lead Plaintiff in the Interrogatories as vague and confusing because it fails to separately differentiate between Genesis Park Acquisition Corporation ("GPAC") from formation through September 2, 2021, the pre-merger Redwire as it existed prior to September 2, 2021, and the merged companies from September 2, 2021 forward.   To avoid confusion, these Answers and Objections use the following naming convention:

   a.   "GPAC" shall mean and refer to Genesis Park Acquisition Corporation as it existed from its formation though the date of merger, September 2, 2021.

   b.   "Pre-Merger Redwire" shall mean and refer to the entity(ies) that combined with GPAC in the September 2, 2021 merger that was consummated through a vote of GPAC shareholders.

   c.   "Redwire" shall mean and refer to the merged companies from September 2, 2021 forward.

3.      Redwire objects to all Interrogatories based on the purported timeframe, which is identified as "January 1, 2020, to the present," which is well beyond the timeframe of proportionality to the needs of the case in accordance with Rule 26. As such, unless stated otherwise, the answers to the Interrogatories stated herein are

4

limited and given for the period of January 1, 2021 through June 1, 2022, which Redwire asserts is proportional to the needs of the case. January 1, 2021 through June 1, 2022 is referred to herein as the "Relevant Period."

4.      These Interrogatories largely call for the identification of witnesses with information related to various subject-matters.  By virtue of Redwire's disclosure of the identities of such witnesses, Redwire is not asserting that information or documents that such persons or entities possess is discoverable.  To the contrary, the information of many persons or entities identified herein is protected by various privileges or immunities, including, without limitation, the attorney-client privilege, the work-product privilege/immunity, the self-critical analysis privilege, and/or other applicable state and federal privileges or immunities.

## INTERROGATORY NO. 1:

Identify all persons or entities likely to have knowledge or information relevant to the subject matters of this action, including, without limitation, persons with knowledge or information of the allegations in the Complaint including:

> **Redwire objects to this Interrogatory as disproportionate to the needs of the case and unduly burdensome to the extent that it purports to require Redwire to undertake an effort to interview each and every person or third-party that could potentially have information relevant to any issue that might arise in this action. Additionally, Redwire objects that this Interrogatory fails to comply with the Middle District of Florida Discovery Handbook, § IV.C.4., which states that interrogatories should be reasonably particularized and not "designed to force an exhaustive or oppressive catalogue of information."**

> **As limited by the foregoing objection, and in accordance with Middle District of Florida Discovery Handbook, § IV.C.6., Redwire agrees to provide information regarding those persons known to Redwire and its senior management to likely have**

5

**information on the individual topics listed below, except as otherwise specifically stated in response to each topic.**

**To the extent any individual is identified in response to this Interrogatory, his/her/its contact information is identified in the attached Exhibit 1.**

(a)   Redwire's statements described in Redwire's April 1, 2022, Form 10-Q for the period ended September 20, 2021 (*see, e.g.,* Complaint ¶77) including:

i)   "disclosure controls and procedures were not effective as of September 30, 2021, due to ...material weaknesses in internal control over financial reporting."; and

ii)   "we did not maintain an effective control environment, as certain members of senior management failed to consistently message and set certain aspects of an appropriate tone at the top. Specifically, certain members of senior management failed to reinforce the need for compliance with certain of the Company's accounting and finance policies and procedures, including reinforcement of appropriate communication."

**ANSWER:  Redwire objects to this Interrogatory as overly broad and disproportionate to the needs of the case to the extent that it purports to relate to all statements set forth in the 10-Q filed with the SEC on April 1, 2022 for the period ending September 30, 2021.  The vast majority of the statements and information set forth in such 10-Q lack any relevance to the claims asserted by**

6

Lead Plaintiff.  Indeed, the allegations of the First Amended Complaint only touch on a narrow subset of the statements made in the 10-Q, and identification of every person with personal knowledge of statements in the 10-Q not identified in the First Amended Complaint would be unduly burdensome. Additionally, Redwire objects to the request as vague and lacking specificity to the extent that it relates to any statement beyond those identified in subparts (i) and (ii).  Redwire also notes that, to the extent that the remainder of these Interrogatories have called out specific statements from the 10-Q for which Lead Plaintiff seeks information, Redwire has not objected to identification of witnesses that may have knowledge regarding those statements.

As it relates to subparts (i) and (ii), in accordance with Middle District of Florida Discovery Handbook, § IV.C.6., Redwire states that Peter Cannito, William Read, Jonathan Baliff, Louis "Reggie" Brothers, John Bolton, and Chris Edmunds from either Redwire or its Board of Directors participated in meetings of Redwire's Audit Committee during the Relevant Period related to the Audit Committee investigation identified in the First Amended Complaint.   Accordingly, Redwire expects these individuals to have knowledge regarding the statements in subparts (i) and (ii).

Additionally, PricewaterhouseCoopers, King & Spalding LLP, KPMG, and/or Kirkland & Ellis LLP, and persons employed by each of those entities, may have knowledge or information regarding the above-stated statements, some or all of which is protected by various privileges depending upon a variety of factors that Redwire is not required to detail here.  However, for the avoidance of doubt, Redwire intends to fully assert all privileges and immunities related to these parties to the extent applicable, and nothing about their identification herein should be construed as a waiver of any such privilege or immunity or an indication that Redwire or any Defendant intends to affirmatively disclose, utilize, or in any way rely upon these individuals in defense of this case (and such entities are not identified on Redwire's Rule 26(a) disclosures for this express purpose).

7

**PricewaterhouseCoopers served as Redwire's outside auditor during the Relevant Period.  Kirkland & Ellis LLP served as Redwire's outside counsel during the Relevant Period.  King & Spalding was retained by Redwire as its outside counsel to Redwire's Audit Committee to assist with investigation of the whistleblower claims asserted against Redwire.  KPMG was retained by King & Spalding to assist it in the investigation of whistleblower claims.**

(b)   Redwire's internal control Remediation Plans and/or Remediation Programs, as described in Redwire's April 1, 2022, Form 10-Q for the period ended September 20, 2021 (*see, e.g.,* Complaint ¶ 78);

**ANSWER:  Redwire states that Peter Cannito, William Read, Jonathan Baliff, Louis "Reggie" Brothers, John Bolton, and Chris Edmunds from either Redwire or its Board of Directors participated in meetings of Redwire's Audit Committee during the Relevant Period, and may have knowledge regarding internal control Remediation Plans and/or Remediation Programs.**

**Additionally, PricewaterhouseCoopers, King & Spalding LLP, KPMG, and/or Kirkland & Ellis LLP, and persons employed by each of those entities, may have knowledge or information regarding the above-stated statements, some or all of which is protected by various privileges depending upon a variety of factors that Redwire is not required to detail here.  However, for the avoidance of doubt, Redwire intends to fully assert all privileges and immunities related to these parties to the extent applicable, and nothing about their identification herein should be construed as a waiver of any such privilege or immunity or an indication that Redwire or any Defendant intends to affirmatively disclose, utilize, or in any way rely upon these individuals in defense of this case (and such entities are not identified on Redwire's Rule 26(a) disclosures for this express purpose).**

**PricewaterhouseCoopers served as Redwire's outside auditor during the Relevant Period.  Kirkland & Ellis LLP served as**

**Redwire's outside counsel during the Relevant Period. King & Spalding was retained by Redwire as its outside counsel to Redwire's Audit Committee to assist with investigation of the whistleblower claims asserted against Redwire. KPMG was retained by King & Spalding to assist it in the investigation of whistleblower claims.**

(c)    Redwire's statement that "certain members of senior management failed to reinforce the need for compliance with certain of the Company's accounting and finance policies and procedures, including reinforcement of appropriate communication," as described in Redwire's April 11, 2022, Form 10-K for the period ended December 31, 2021 (*see, e.g.,* Complaint ¶ 79);

> **ANSWER: Redwire states that Peter Cannito, William Read, Jonathan Baliff, Louis "Reggie" Brothers, John Bolton, and Chris Edmunds from either Redwire or its Board of Directors participated in meetings of Redwire's Audit Committee during the Relevant Period, and may have knowledge regarding the statement set forth above.**
>
> **Additionally, PricewaterhouseCoopers, King & Spalding LLP, KPMG, and/or Kirkland & Ellis LLP, and persons employed by each of those entities, may have knowledge or information regarding the above-stated statements, some or all of which is protected by various privileges depending upon a variety of factors that Redwire is not required to detail here. However, for the avoidance of doubt, Redwire intends to fully assert all privileges and immunities related to these parties to the extent applicable, and nothing about their identification herein should be construed as a waiver of any such privilege or immunity or an indication that Redwire or any Defendant intends to affirmatively disclose, utilize, or in any way rely upon these individuals in defense of this case (and such entities are not identified on Redwire's Rule 26(a) disclosures for this express purpose).**

9

**PricewaterhouseCoopers served as Redwire's outside auditor during the Relevant Period. Kirkland & Ellis LLP served as Redwire's outside counsel during the Relevant Period. King & Spalding was retained by Redwire as its outside counsel to Redwire's Audit Committee to assist with investigation of the whistleblower claims asserted against Redwire. KPMG was retained by King & Spalding to assist it in the investigation of whistleblower claims.**

(d)    Redwire's statement that "the design of internal controls over financial reporting for the Company post-Merger has required and will continue to require significant time and resources from management and other personnel. As a result, management was unable, without incurring unreasonable effort or expense to conduct an assessment of [Redwire's] internal control over financial reporting as of December 31, 2021[,]" as described in Redwire's April 11, 2022, Form 10-K for the period ended December 31, 2021 (*see, e.g.,* Complaint ¶¶ 79–80);

> **ANSWER:  Redwire states that Peter Cannito, William Read, Jonathan Baliff, Louis "Reggie" Brothers, John Bolton, and Chris Edmunds from either Redwire or its Board of Directors participated in meetings of Redwire's Audit Committee during the Relevant Period, and may have knowledge regarding the statements set forth above.**
>
> **Additionally, PricewaterhouseCoopers, King & Spalding LLP, KPMG, and/or Kirkland & Ellis LLP, and persons employed by each of those entities, may have knowledge or information regarding the above-stated statements, some or all of which is protected by various privileges depending upon a variety of factors that Redwire is not required to detail here. However, for the avoidance of doubt, Redwire intends to fully assert all privileges and immunities related to these parties to the extent**

10

**applicable, and nothing about their identification herein should be construed as a waiver of any such privilege or immunity or an indication that Redwire or any Defendant intends to affirmatively disclose, utilize, or in any way rely upon these individuals in defense of this case (and such entities are not identified on Redwire's Rule 26(a) disclosures for this express purpose).**

**PricewaterhouseCoopers served as Redwire's outside auditors during the Relevant Period. Kirkland & Ellis LLP served as Redwire's outside counsel during the Relevant Period. King & Spalding was retained by Redwire as its outside counsel to Redwire's Audit Committee to assist with investigation of the whistleblower claims asserted against Redwire. KPMG was retained by King & Spalding to assist it in the investigation of whistleblower claims.**

(e)   Redwire's management's or an independent accounting firm's

assessment regarding Redwire's internal control over financial reporting (as

described in the Complaint, e.g., ¶¶ 79-80);

**ANSWER: Redwire states that Peter Cannito, William Read, Jonathan Baliff, Louis "Reggie" Brothers, John Bolton, and Chris Edmunds from either Redwire or its Board of Directors participated in meetings of Redwire's Audit Committee during the Relevant Period, and may have knowledge regarding assessments of Redwire's internal controls over financial reporting.**

**Additionally, PricewaterhouseCoopers, King & Spalding LLP, KPMG, and/or Kirkland & Ellis LLP, and persons employed by each of those entities, may have knowledge or information regarding the above-stated statements, some or all of which is protected by various privileges depending upon a variety of factors that Redwire is not required to detail here. However, for the avoidance of doubt, Redwire intends to fully assert all privileges and immunities related to these parties to the extent applicable, and nothing about their identification herein should be construed as a waiver of any such privilege or immunity or**

11

an indication that Redwire or any Defendant intends to affirmatively disclose, utilize, or in any way rely upon these individuals in defense of this case (and such entities are not identified on Redwire's Rule 26(a) disclosures for this express purpose).

PricewaterhouseCoopers served as Redwire's outside auditors during the Relevant Period. Kirkland & Ellis LLP served as Redwire's outside counsel during the Relevant Period. King & Spalding was retained by Redwire as its outside counsel to Redwire's Audit Committee to assist with investigation of the whistleblower claims asserted against Redwire. KPMG was retained by King & Spalding to assist it in the investigation of whistleblower claims.

(f)     Redwire's decision to "transition [William Read] from his role as Chief Financial Officer" and replacing him with the head of the Board of Directors Audit Committee, as described in Redwire's June 1, 2022, announcement (*see, e.g.,* Complaint ¶ 81), including the separation agreement Read entered into with Redwire;

ANSWER: Redwire states Peter Cannito, Jonathan Baliff, Louis "Reggie" Brothers, John Bolton, Faith Horowitz, Nathan O'Konek, and William Read may have knowledge regarding Read's separation from Redwire in June of 2022, including the terms of the Separation and Release Agreement filed with the SEC.

Additionally, PricewaterhouseCoopers, Kirkland & Ellis LLP, and persons employed by each of those entities, may have knowledge or information regarding the above-stated subject matter, some or all of which is protected by various privileges depending upon a variety of factors that Redwire is not required to detail here. However, for the avoidance of doubt, Redwire intends to fully assert all privileges and immunities related to these parties to the extent applicable, and nothing about their

12

identification herein should be construed as a waiver of any such privilege or immunity or an indication that Redwire or any Defendant intends to affirmatively disclose, utilize, or in any way rely upon these individuals in defense of this case (and such entities are not identified on Redwire's Rule 26(a) disclosures for this express purpose).

(g)   Redwire's Code of Ethics, adopted on November 23, 2020, and revised Code of Conduct and Ethics, adopted on September 2, 2021 (as described in the Complaint, e.g., ¶¶ 49, 53, 64– 65);

**ANSWER: Regarding the November 23, 2020 Code of Ethics, Redwire objects that the information sought is outside the Relevant Period, and thus, neither relevant to the parties' claims or defenses or proportional to the needs of the case.**

**Regarding the September 2, 2021 Code of Conduct and Ethics, Redwire states that Peter Cannito, Jonathan Baliff, John Bolton, Louis "Reggie" Brothers, Les Daniels, Joanne Isham, Kirk Konert, Faith Horowitz, Chris Edmunds, Nathan O'Konek may have knowledge regarding the drafting and adoption of the Code of Conduct and Ethics.**

**Additionally, PricewaterhouseCoopers, Kirkland & Ellis LLP, Ernst & Young, and persons employed by each of those entities, may have knowledge or information regarding the above-stated subject matter, some or all of which is protected by various privileges depending upon a variety of factors that Redwire is not required to detail here. However, for the avoidance of doubt, Redwire intends to fully assert all privileges and immunities related to these parties to the extent applicable, and nothing about their identification herein should be construed as a waiver of any such privilege or immunity or an indication that Redwire or any Defendant intends to affirmatively disclose, utilize, or in any way rely upon these individuals in defense of this case (and such entities are not identified on Redwire's Rule 26(a) disclosures for this express purpose).**

13

(h)    Redwire's Whistleblower policy adopted on September 2, 2021 (as described in the Complaint, e.g., ¶¶66–67);

**ANSWER: Regarding the September 2, 2021 Whistleblower Policy, Redwire states that Peter Cannito, Jonathan Baliff, John Bolton, Louis "Reggie" Brothers, Les Daniels, Joanne Isham, Kirk Konert, Faith Horowitz, Chris Edmunds, Nathan O'Konek may have knowledge regarding the drafting and adoption of the Whistleblower Policy.**

**Additionally, PricewaterhouseCoopers, Kirkland & Ellis LLP, Ernst & Young, and persons employed by each of those entities, may have knowledge or information regarding the above-stated subject matter, some or all of which is protected by various privileges depending upon a variety of factors that Redwire is not required to detail here. However, for the avoidance of doubt, Redwire intends to fully assert all privileges and immunities related to these parties to the extent applicable, and nothing about their identification herein should be construed as a waiver of any such privilege or immunity or an indication that Redwire or any Defendant intends to affirmatively disclose, utilize, or in any way rely upon these individuals in defense of this case (and such entities are not identified on Redwire's Rule 26(a) disclosures for this express purpose).**

(i)    Redwire's accounting, financial reporting, and internal control policies and procedures;

**ANSWER: Redwire objects to this Interrogatory as overly broad and lacking proportionality to the needs of the case to the extent that it purports to seek information regarding any and all accounting policies and procedures for the entire company. The First Amended Complaint centers around disclosures related to material weaknesses over management attitudes toward internal controls over financial reporting, which Lead Plaintiff refers to as "tone at the top," and this Interrogatory is not tailored to that subject-matter, rendering it overly broad and disproportionate to the case under Rule 26.**

14

As limited by the foregoing objection, and in accordance with Middle District of Florida Civil Discovery Handbook, § IV.C.6., Redwire states that, for the Relevant Period, Peter Cannito, William Read, Jonathan Baliff, Louis "Reggie" Brothers, John Bolton, Chris Edmunds may have knowledge regarding the Redwire's financial reporting and internal control policies and procedures.

Additionally, PricewaterhouseCoopers, King & Spalding LLP, KPMG, Kirkland & Ellis LLP, Ernst & Young, and persons employed by each of those entities, may have knowledge or information regarding the above-stated subject matter, some or all of which is protected by various privileges depending upon a variety of factors that Redwire is not required to detail here. However, for the avoidance of doubt, Redwire intends to fully assert all privileges and immunities related to these parties to the extent applicable, and nothing about their identification herein should be construed as a waiver of any such privilege or immunity or an indication that Redwire or any Defendant intends to affirmatively disclose, utilize, or in any way rely upon these individuals in defense of this case (and such entities are not identified on Redwire's Rule 26(a) disclosures for this express purpose).

(j)    Redwire's "tone at the top," as described in the Complaint;

ANSWER: Redwire objects to the request to the extent that this Interrogatory seeks to incorporate the Complaint's description of the term "tone at the top" because the Complaint does not consistently describe the phrase or give a definition that is susceptible to specific identification. Additionally, the request does not specify whether it refers to the "tone at the top" of Pre-Merger Redwire's management, GPAC's management, or Redwire's management post-merger. Accordingly, Redwire objects to the request as vague and ambiguous as to the information sought.

To provide Lead Plaintiff with information that Redwire agrees would be properly discoverable, Redwire identifies the following persons who, by virtue of their positions within the company may have personal knowledge regarding the attitudes of

15

Redwire management toward internal controls over financial reporting.  Based on the allegations of the First Amended Complaint, Redwire objects that any other potential aspect of a definition would be irrelevant.

As limited by the foregoing objection, and in accordance with Middle District of Florida Civil Discovery Handbook, § IV.C.6., Redwire identifies Peter Cannito, William Read, Jonathan Baliff, Louis "Reggie" Brothers, John Bolton, and Chris Edmunds from either Redwire or its Board of Directors participated in meetings of Redwire's Audit Committee during the Relevant Period or were members of Redwire's management team themselves, and may have knowledge regarding these statements.

Additionally, PricewaterhouseCoopers, King & Spalding LLP, KPMG, and/or Kirkland & Ellis LLP, and persons employed by each of those entities, may have knowledge or information regarding the above-stated statements, some or all of which is protected by various privileges depending upon a variety of factors that Redwire is not required to detail here.  However, for the avoidance of doubt, Redwire intends to fully assert all privileges and immunities related to these parties to the extent applicable, and nothing about their identification herein should be construed as a waiver of any such privilege or immunity or an indication that Redwire or any Defendant intends to affirmatively disclose, utilize, or in any way rely upon these individuals in defense of this case (and such entities are not identified on Redwire's Rule 26(a) disclosures for this express purpose).

PricewaterhouseCoopers served as Redwire's outside auditor during the Relevant Period.  Kirkland & Ellis LLP served as Redwire's outside counsel during the Relevant Period.  King & Spalding was retained by Redwire as its outside counsel to Redwire's Audit Committee to assist with investigation of the whistleblower claims asserted against Redwire.  KPMG was retained by King & Spalding to assist it in the investigation of whistleblower claims.

16

(k)   Redwire's Audit Committee's investigation into any complaints regarding senior management's "tone at the top," including any whistleblower complaint relating to Redwire's internal control weaknesses (as described in the Complaint, e.g., ¶¶70–72, 75);

**ANSWER: Redwire objects to this request to the extent that it assumes the false premise that any complaint was ever lodged regarding "senior management's 'tone at the top,'" or that Redwire's Audit Committee ever has ever conducted an investigation prompted by Redwire's management's "tone at the top," both of which are factually inaccurate.  Additionally, Redwire objects to the Interrogatory to the extent that it implies that a whistleblower complaint was lodged regarding "Redwire's internal control weaknesses" as described in the Complaint, which is also inaccurate.**

**As limited by for foregoing objection, and in accordance with Middle District of Florida Civil Discovery Handbook, § IV.A.3., Redwire construes the Interrogatory as seeking the identity of persons with information regarding the Audit Committee investigation that was conducted from approximately November 2021 through March 2022. Redwire identifies Jonathan Baliff, Louis "Reggie" Brothers, and John Bolton as the members of the Redwire Audit Committee that conducted the investigation and asserts that they may have knowledge regarding any statements related to senior management's "tone at the top" as identified in this Interrogatory.**

**Additionally, King & Spalding LLP, KPMG, and/or Kirkland & Ellis LLP, and persons employed by each of those entities, may have knowledge or information regarding the above-stated statements, some or all of which is protected by various privileges depending upon a variety of factors that Redwire is not required to detail here.  However, for the avoidance of doubt, Redwire intends to fully assert all privileges and immunities related to these parties to the extent applicable, and nothing about their identification herein should be construed as a waiver of any such privilege or immunity or an indication that Redwire or any Defendant intends to affirmatively disclose,**

17

utilize, or in any way rely upon these individuals in defense of this case (and such entities are not identified on Redwire's Rule 26(a) disclosures for this express purpose).

Kirkland & Ellis LLP served as Redwire's outside counsel during the Relevant Period. King & Spalding was retained by Redwire as its outside counsel to Redwire's Audit Committee to assist with investigation of the whistleblower claims asserted against Redwire. KPMG was retained by King & Spalding to assist it in the investigation of whistleblower claims.

(l)     the spring 2021 de-SPAC merger transaction between Old Redwire and GPAC (as described in the Complaint, e.g., ¶¶1–2, 7–11, 36–44);

ANSWER: Redwire objects to this requests as overly broad and disproportionate to the needs of the case to the extent that it purports to seek information regarding witnesses with knowledge of all aspects of the September 2021 merger, without limitation, when the actual merger itself is not germane to the vast majority of the allegations of the First Amended Complaint.

As limited by the foregoing objection, and in accordance with Middle District of Florida Civil Discovery Handbook, § IV.C.6., Redwire states that, from the GPAC side of the merger, Jonathan Baliff is likely to have information related to internal controls over financial reporting associated with the merger. Redwire states that, from the Pre-Merger Redwire, Peter Cannito, William Read, and Andrew Rush have knowledge regarding Pre-Merger Redwire's management and any internal controls over financial reporting.

(m)     any investigation, whether informal or formal, by any government or administrative agency, concerning Old Redwire and New Redwire's accounting, internal controls, "tone at the top," and financial reporting practices;

18

**ANSWER:** **Redwire objects to this request as vague, confusing and ambiguous because it purports to seek information regarding "the allegations in the Complaint including. . . (m) any investigation, whether informal or formal, by any government or administrative agency, concerning Old Redwire and New Redwire's accounting, internal controls, 'tone at the top,' and financial reporting practices," yet, upon a thorough review of the Complaint, no allegation exists regarding any investigation. Because no such allegations exist, Redwire is unable to identify any witness with knowledge of the allegations. Furthermore, because the subject matter identified is not part of the claims or defenses alleged, Redwire objects that the information sought is neither relevant nor proportional to the needs of the case given the issues presented by the parties' claims or defenses.**

(n)     any other action against Redwire concerning the subject matter of this Action, or Redwire's accounting, internal controls, "tone at the top," and financial reporting practices;

**ANSWER:** **Redwire objects to this request as vague, confusing and ambiguous because it purports to seek information regarding "the allegations in the Complaint including. . . (p) any other action against Redwire concerning the subject matter of this action," yet, upon a thorough review of the Complaint, no allegations exist regarding other actions filed against Redwire. Because no such allegations exist, Redwire is unable to identify any witness with knowledge of the allegations. Furthermore, because the subject matter identified is not part of the claims or defenses alleged, Redwire objects that the information sought is neither relevant nor proportional to the needs of the case given the issues presented by the parties' claims or defenses.**

(o)     the Executive Defendants' role and involvement in the drafting, review, certification, or publication of Redwire's press releases, presentations,

19

and filings with the SEC during the Class Period that are alleged in the Complaint;

> **ANSWER: Redwire objects to this request as vague, confusing and ambiguous because it purports to seek information regarding "the allegations in the Complaint including. . . (o) the Executive Defendants' role and involvement in the drafting, review, certification or publication of Redwire's press releases," yet, upon a thorough review of the Complaint, no allegations exist regarding the Executive Defendants' actions in this regard. Because no such allegations exist, Redwire is unable to identify any witness with knowledge of the allegations.  Furthermore, because the subject matter identified is not part of the claims or defenses alleged, Redwire objects that the information sought is neither relevant nor proportional to the needs of the case given the issues presented by the parties' claims or defenses.**
>
> **As narrowed by the foregoing objections, and in accordance with Middle District of Florida Civil Discovery Handbook, § IV.C.6., Redwire would expect that Cannito and Read have information regarding any personal involvement they may have had in any press releases, presentations, and filings with the SEC during the Class Period.**

(p)    the Executive Defendants' preparation for or participation in quarterly and annual earnings calls during the Class Period;

> **ANSWER:  Redwire objects to this request as vague, confusing and ambiguous because it purports to seek information regarding "the allegations in the Complaint including. . . (p) the Executive Defendants' preparation for or participation in quarterly and annual earnings calls during the class period," yet, upon a thorough review of the Complaint, no allegations exist regarding Cannito or Read's preparation for or involvement in quarterly and annual earnings calls during the class period.  Because no such allegations exist, Redwire is unable to identify any witness with knowledge of the allegations.  Furthermore, because the subject matter identified is not part of the claims or defenses alleged, Redwire objects that the information sought is neither relevant nor proportional**

to the needs of the case given the issues presented by the parties' claims or defenses.

As narrowed by the foregoing objections, and in accordance with Middle District of Florida Civil Discovery Handbook, § IV.C.6., Redwire would expect that Cannito and Read have information regarding any personal involvement they may have had in such earnings calls.

(q)     Redwire's executive compensation, bonuses, and bonus plans;

**ANSWER: Redwire objects to this requests as overly broad and disproportionate to the needs of the case to the extent that it seeks information regarding executive compensation generally, which is not at issue in First Amended Complaint. Additionally, this Interrogatory purports to seek information regarding "the allegations in the Complaint including. . . (q) Redwire's executive compensation, bonuses, and bonus plans," yet the only allegations regarding executive compensation relate to the compensation that Cannito and Read received upon consummation of the merger between Pre-Merger Redwire and GPAC. *See* [ECF No. 47, at ¶¶ 89, 92]. Accordingly, only the information related to the allegations of paragraph 89 and 92 are relevant.**

**With regard to the compensation received by Cannito and Read as alleged in paragraphs 89 and 92 of the First Amended Complaint, in accordance with Middle District of Florida Civil Discovery Handbook, § IV.C.6., Redwire expects Cannito and Read to have knowledge of the compensation they received, the terms thereof, and any discussions with GPAC related to that compensation. From GPAC, Redwire expects that Jonathan Baliff would have information regarding the same subject matters.**

(r)     the Executive Defendants' trading in Redwire's securities;

**ANSWER: Redwire objects to this request as vague, confusing and ambiguous because it purports to seek information regarding "the allegations in the Complaint including. . . (r) the**

21

**Executive Defendants' trading in Redwire securities," yet, upon a thorough review of the Complaint, no allegations exist regarding Cannito or Read's trading of Redwire securities. Accordingly, it is entirely unclear what allegations Lead Plaintiff intends to reference. Furthermore, because the subject matter identified is not part of the claims or defenses alleged, Redwire objects that the information sought is neither relevant nor proportional to the needs of the case given the issues presented by the parties' claims or defenses.**

**Additionally, Redwire notes that the Executive Defendants did not trade Redwire stock during the Class Period.**

(s)     due diligence into the professional qualifications and experience of

Redwire's senior management and the Executive Defendants; and

**ANSWER:  Redwire objects to this request as vague, confusing and ambiguous because it purports to seek information regarding "the allegations in the Complaint including. . . (s) due diligence into the professional qualifications and experience of Redwire's senior management and the Executive Defendants," yet, upon a thorough review of the Complaint, no allegations exist regarding due diligence conducted by GPAC as to the qualifications or experience of Pre-Merger Redwire's senior management, Cannito, or Read. Furthermore, because the subject matter identified is not part of the claims or defenses alleged, Redwire objects that the information sought is neither relevant nor proportional to the needs of the case given the issues presented by the parties' claims or defenses.**

(t)     the causes of the declines in Redwire's stock price, as alleged in the

Complaint.

**ANSWER: Redwire is presently unaware of any witness with personal knowledge regarding the motivations underlying why market participants purchased or sold any particular shares of Redwire stock, other than the purchasers or sellers themselves, which are both too numerous to list.  To the extent this**

22

Interrogatory can be construed as seeking the identities of all purchasers and sellers or Redwire stock during the Class Period, Redwire objects to the Interrogatory as disproportional to the needs of the case and unduly burdensome.

As is customary, Redwire intends to rely upon expert testimony for the purpose of establishing the causes of any declines in Redwire's stock price during the Class Period. Redwire objects to this Interrogatory to the extent that it purports to require Redwire to identify its expert witnesses prior to the time required by the Court's forthcoming scheduling order.

## INTERROGATORY NO. 2:

For each person or entity identified in response to Interrogatory No. 1, state the substance of that person's or entity's knowledge that has caused You to identify him, her, or it in response to Interrogatory No. 1.

ANSWER: Redwire objects to this interrogatory as overly broad and oppressive to the extent that it purports to require Redwire to set forth a complete narrative of every witness' knowledge related to this matter. Moreover, the witnesses are identified in response to Interrogatory 1 to correspond with the various subject-matters set forth in subparts (a) through (t), which accomplishes the purpose of Interrogatory No. 2. For example, when Redwire identifies witnesses in subpart (b) with knowledge of Redwire's remediation plans for controls over financial reporting, by virtue of the identification alone, Redwire is disclosing "the substance of that person's or entity's knowledge that has caused [Redwire] to identify him, her, or it in response to Interrogatory No. 1."

Additionally, in response to Interrogatory No. 1, Redwire has identified the basis for identification of each witness in the preceding twenty Interrogatories, and incorporates such information herein by reference.

23

### INTERROGATORY NO. 3:

For each person or entity identified in response to Interrogatory No. 1 provide that person's or entity's office phone number(s), work cell phone number(s), personal cell phone number(s), home phone number(s), e-mail address(es), and instant messaging username(s).

> **ANSWER:  Redwire has identified the available professional contact information for each witness in the preceding Interrogatories, and incorporates such information herein by reference.   To the extent that the Interrogatory seeks information regarding the individual's personal cell phone numbers or home telephone numbers, Redwire objects to the request as disproportionate to the needs of the case, as such information is unnecessary for Lead Plaintiff to contact the witnesses.**

### INTERROGATORY NO. 4:

Identify the existence, custodian, and location of all Documents relevant to the subject matters of the Complaint, including those identified in Interrogatory No. 1 and provide a general description of all such Documents.

> **ANSWER: Redwire    objects    that    this    Interrogatory    is disproportionate to the needs of the case and calls for legal conclusions as it purports to require Redwire to undertake an inventory of all documents that may be relevant to the claims asserted in the pleadings and prepare a general description of each and every document, its custodian, and its location.  Such a task would be unduly burdensome and oppressive in the same manner as contention interrogatories, which are disfavored. *See* Middle District of Florida Discovery Handbook, § IV.C.2. Additionally,    the    Interrogatory    directly    infringes    upon Defendants' work product privilege/immunity as it would require disclosure of documents that Redwire's counsel asserts**

24

**are relevant to the various factual allegations and its defenses, and such information should be protected from disclosure under Rule 26.**

DocuSign Envelope ID: A34354A5-6DE7-46D3-B282-CEEF09DA66DE

## VERIFICATION

I declare under penalty of perjury that the foregoing is true and correct.

**REDWIRE CORPORATION**

DocuSigned by:

*Peter Cannito*

7D1EABF05D194B9...

**Peter Cannito**
Chairman and Chief Executive Officer
Redwire Corporation

As to objections:

/s/ Alfred J. Bennington, Jr.
**ALFRED J. BENNINGTON, JR., ESQ.**
Florida Bar No. 0404985
bbennington@shutts.com
**GLENNYS ORTEGA RUBIN, ESQ.**
Florida Bar No. 556361
grubin@shutts.com
**CHRISTIAN M. LEGER, ESQ.**
Florida Bar No. 0100562
cleger@shutts.com
**SHUTTS & BOWEN LLP**
300 South Orange Avenue, Suite 1600
Orlando, Florida 32801
Telephone: (407) 835-6755
Facsimile: (407) 849-7255

and

**H. TIMOTHY GILLIS, ESQ.**
Florida Bar No. 0133876
tgillis@shutts.com
**JEFFREY S. YORK, ESQ.**
Florida Bar No. 987069
jyork@shutts.com

26

**SHUTTS & BOWEN LLP**
1022 Park Street, Suite 308
Jacksonville, Florida 32204
Telephone: (904) 899-9926

SBDOCS 291861 3