UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | |
|---|---|
| JED LEMEN, Individually and On Behalf of All Others Similarly Situated,<br><br>        Plaintiff,<br><br>    v.<br><br>REDWIRE CORPORATION f/k/a GENESIS PARK ACQUISITON CORP., PETER CANNITO, and WILLIAM READ,<br><br>        Defendants. | Case No. 3:21-cv-01254-TJC-PDB<br><br><u>CLASS ACTION</u><br><br>**LEAD PLAINTIFF JARED THOMPSON'S DAUBERT MOTION TO EXCLUDE THE OPINIONS OF ANDREW H. ROPER** |

Lead Plaintiff Jared Thompson ("Lead Plaintiff") moves to exclude the report, opinions, and testimony of Dr. Andrew H. Roper offered by Defendant Redwire Corporation ("Redwire") f/k/a Genesis Park Acquisition Corp. ("GPAC"), Defendant Peter Cannito, and Defendant William Read (collectively, "Defendants") in opposition to Lead Plaintiff's class certification motion. *See* ECF Nos. 85, 129.

## I. **INTRODUCTION**

Lead Plaintiff respectfully moves to exclude the expert report and testimony of Dr. Roper under *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993) ("*Daubert*") and Federal Rule of Evidence 702. Dr. Roper's opinions regarding

- 1 -

market efficiency and damages are legally incorrect, fundamentally flawed, and unreliable for three key reasons.

First, Dr. Roper's market efficiency analysis is premised on a legally incorrect standard that contradicts established Supreme Court and Eleventh Circuit precedent. Dr. Roper insists that demonstrating market efficiency requires showing that stock prices adjust efficiently to new unexpected information. However, courts have repeatedly rejected this rigid view, instead adopting a more holistic approach based on factors like trading volume, analyst coverage, and market makers. By applying the wrong legal standard, Dr. Roper's opinions are irrelevant and unhelpful to the Court's class certification analysis.

Second, certain of Dr. Roper's specific opinions on price impact and market efficiency are unreliable and contradicted by basic financial principles. For example, the assertion that Redwire common stock (traded on the NYSE as "GNPK" prior to the completion of the business combination) had an absolute floor of $10.15 due to a redemption right ignores fundamental concepts of present value and time value of money. Similarly, his claim that a $0.20 overnight price change is a "telltale sign" of market inefficiency is refuted by empirical data showing such changes are routine for stocks trading in presumptively efficient markets.

Third, Dr. Roper's criticisms of Lead Plaintiff's damages methodology are premature and irrelevant at the class certification stage. Courts have consistently

- 2 -

held that plaintiffs are not required to perform a full damages analysis or specify all inputs to their model at this juncture. Dr. Roper's demands for such details are inappropriate and inconsistent with applicable precedent.

In sum, Dr. Roper's report and testimony should be excluded in their entirety as they fail to meet the standards of relevance and reliability required by *Daubert* and Rule 702. His opinions are based on incorrect legal standards, contradict established financial principles, and focus on issues not properly before the Court at class certification. Allowing this flawed testimony would not assist the trier of fact and risks misleading the Court in its class certification analysis.

## II.   FACTUAL BACKGROUND

Lead Plaintiff filed for class certification in January 2024. ECF No. 85. As part of the motion, Lead Plaintiff submitted an expert report from Dr. Cain. *See* ECF No. 86-1 ("Cain Rpt."). Dr. Cain was asked to determine whether the market for Redwire's common stock, options, and warrants was efficient during the Class Period (March 25, 2021 to March 31, 2022). Cain Rpt., ¶ 1. Dr. Cain evaluated the factors articulated in *Cammer v. Bloom*, 711 F. Supp. 1264 (D.N.J. 1989) ("*Cammer*"), *Krogman v. Sterritt*, 2022 F.R.D. 467 (N.D. Tex. 2001) ("*Krogman*"), as well as additional factors accepted and applied by courts in the Eleventh Circuit to assess market efficiency. *Id.*, ¶ 3. Dr. Cain's analysis included an event study to address *Cammer* Factor 5, which concerns a "cause and effect relationship between

company disclosures and resulting movements in stock price." *Cammer*, 711 F. Supp. at 1291. In the event study, Dr. Cain compared the price reaction of Redwire's common stock on "news" days versus "no news" days.  Cain Rpt., ¶ 75.  After his evaluation,  Dr. Cain found Redwire common stock, options, and warrants traded in an efficient market. *Id.*, ¶ 3.  As such, Lead Plaintiff invokes *Basic's* "fraud-on-the-market" presumption of reliance to establish Rule 23(b)(3) predominance.  *See Basic v. Levinson*, 485 U.S. 224, 246 (1988).

In further support of predominance, Dr. Cain opined that damages for all Class members who purchased or otherwise acquired Redwire common stock, options, and/or warrants are readily calculable using the standard "out-of-pocket" methodology. *See* Cain Rpt., ¶¶ 126-40. This methodology is based on the inflation in the price of Redwire's securities caused by Defendants' alleged misrepresentations and omissions. *Id.*

Defendants oppose class certification.  *See* ECF No. 129.  As part of their opposition, Defendants submitted the report of Dr. Roper (ECF No. 129-5) ("Roper Rpt.") addressing Dr. Cain's market efficiency and damages opinions.  The Roper Report does not provide a clear summary of opinions or conclusions.  In fact, during his deposition, Dr. Roper refused to identify the opinions purportedly detailed in the sixteen (16) paragraph "Executive Summary" section of his report, claiming that "[he] cannot count an opinion" because he "wouldn't know where one starts and one

stops." *See* Roper Dep. Tr. (Ex. B) at 41:16-42:4. [1] Nevertheless, based on Lead Plaintiff's review of Dr. Roper's report and understanding of his proposed testimony, his opinions regarding market efficiency, price impact, and damages depend on application of incorrect legal standards and analyses contradicted by basic financial principles. Accordingly, any other aspect of Dr. Roper's report and testimony are not viable absent the irrelevant, unhelpful, and unreliable opinions and analyses challenged by Lead Plaintiff in this motion. The entirety of Dr. Roper's expert opinion and testimony should therefore be excluded under *Daubert* and Federal Rule of Evidence 702.

### III.    LEGAL STANDARD

The proponent of expert testimony bears the burden of establishing its admissibility. *See U.S. v. Frazier*, 387 F.3d 1244, 1260. (11th Cir. 2004). Federal Rule of Evidence 702, which governs admissibility of expert testimony, requires that evidence "assist the trier of fact," or in other words, that it be relevant to the issues presently before the Court. *See Dias v. GeoVera Specialty Ins. Co.*, 543 F. Supp. 3d 1282, 1286 (M.D. Fla. 2021). Rule 702 also demands that expert testimony be reliable, and that it relate to scientific, technical, or other specialized knowledge, which does not include unsupported speculation and subjective beliefs. *Id.*

---

[1] All "Ex." Citations are to Exhibits in the Kathrein Declaration.

"[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert."  *Id.* at 1287 (citing *Williams v. Mosaic Fertilizer, LLC*, 889 F.3d 1239, 1249 (11th Cir. 2008)).

### IV.    ARGUMENT

**A. Dr. Roper's Market Efficiency Opinion is Premised on a Legally Incorrect Standard.**

In Dr. Roper's opinion, the "central question being addressed with the inquiry into market efficiency" is "whether prices adjust efficiently."  *See* Roper Rpt., ¶ 78. In "colloquial" terms, a component of "prices adjust[ing] efficiently" is that "good news causes stock prices to go up and bad news causes stock prices to go down." *See* Roper Dep. Tr. at 79:19-80:6.  Per Dr. Roper, "a proper test of market efficiency requires the researcher to objectively specify whether the unexpected new information is expected to cause prices to increase, decrease, or stay the same."  *See, e.g.,* Roper Rpt., ¶ 155.  Since Dr. Cain did not make this determination in his event study, Dr. Roper opines that his analysis is "fatally flawed" for providing a reliable economic assessment of market efficiency to invoke the *Basic* presumption of reliance.  *Id.*, ¶ 173; *see also* ¶¶ 155-58.

But Dr. Roper's standard for invoking the *Basic* presumption – a showing of efficient adjustment in stock prices – is contrary to the legal requirements articulated by the Supreme Court and applied by courts in the Eleventh Circuit.  Therefore, his

opinions relying on his own legal standard of market efficiency for purposes of demonstrating market reliance should therefore be excluded because they are not relevant to the Court's predominance inquiry. *See, e.g.,  Williamson Oil Co., Inc. v. Philip Morris USA*, 346 F.3d 1287, 1323 (11th Cir. 2003) ("However, [the expert] defined 'collusion' to include conscious parallelism. Put differently, he did not differentiate between legal and illegal pricing behavior . . . This testimony could not have aided a finder of fact to determine whether appellees' behavior was or was not legal."); *Bailey v. Allgas, Inc.*, 148 F. Supp. 2d 1222, 1242-46 (N.D. Ala. 2000), *aff'd*, 284 F.3d 1237 (11th Cir. 2002) (rejecting expert's methodology to determine "relevant geographic market" and "market power" in antitrust suit and finding his "conclusions are based upon analyses that are contrary to the law as established by the Eleventh Circuit and United States Supreme Court").[2] Put differently, Dr. Roper's opinions are not relevant to the legal standards already set by the courts, requiring a degree of theoretical and debatable economic precision long rejected.

Specifically, Dr. Roper's opinions ignore that the Supreme Court has expressly refused to "adopt any particular theory of how quickly and completely

---

[2] *See also In re Novatel Wireless Sec. Litig.*, 846 F. Supp. 2d 1104, 1108 (S.D. Cal. 2012) (excluding expert because his opinions were "based on a loss causation standard that is incompatible with that set forth by the Ninth Circuit"); *In re Apple Inc. Sec. Litig.*, 2023 WL 4556765, at *10 (N.D. Cal. July 17, 2023) (rejecting portion of expert opinion in securities class action that gave wrong legal standard for loss causation).

publicly available information is reflected in the market price." *See Basic*, 485 U.S. at 248 n. 28. In fact, the Supreme Court in *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258 (2014) ("*Halliburton II*") reiterated that it would not "enter the fray" of academic debates about what constitutes an efficient market. 573 U.S. at 271-72. Rather, the Supreme Court reconfirmed that market efficiency is based on "the fairly modest premise that 'market professionals generally consider most publicly announced material statements about companies, thereby affecting stock market prices.'" *Id.* (quoting *Basic*, 485 U.S. at 247 n.24). In applying *Basic*, "[d]ebates about the precise *degree* to which stock prices accurately reflect public information are thus largely beside the point," and that the "'price [of a stock] may be inaccurate does not detract from the fact that false statements affect it, and cause loss.'" *Id.* (internal citation omitted).

Similarly, the Eleventh Circuit has identified "some features of an efficient market: high-volume trading activity facilitated by people who analyze information about the stock or who make trades based upon that information." *See Local 703 v. Regions Fin. Corp.*, 762 F.3d 1248, 1255 (11th Cir. 2014). Like the Supreme Court, the Eleventh Circuit requires no finding of efficient adjustments in stock prices to invoke the *Basic* presumption. *Id.* at 1255-58.

Reflecting the Supreme Court's guidance in *Halliburton II*, courts have consistently rejected Dr. Roper's view that an efficient adjustment in prices is

necessary to show market efficiency in securities litigation. *See, e.g., Första AP-Fonden v. St. Jude Medical, Inc.*, 312 F.R.D. 511, 521 n.5 (D. Minn. 2015) (rejecting requirement to show that the stock price reaction "was directionally consistent with the tenor of the news"); *Willis v. Big Lots, Inc.*, 2017 WL 1074048, at *5 (S.D. Ohio Mar. 17, 2017) (recognizing "several courts have rejected the notion that a failure to include a directional hypothesis is fatal to an event study on market efficiency for purposes of securities litigation"); *In re Teva Sec. Litig.,* 2021 WL 872156, at *29 (D. Conn. Mar. 9, 2021) (citing cases "credit[ing] non-directional event studies"). Courts in the Eleventh Circuit have also readily accepted event studies addressing *Cammer* Factor 5, like the one offered by Dr. Cain, that do no assess whether the stock price accurately reflected public information. *See, e.g., Thorpe v. Walter Inv. Mgmt., Corp.*, 2016 WL 4006661, at *13 (S.D. Fla. Mar. 16, 2016) (crediting event study assessing whether "'financial releases' promptly caused an identifiable price movement"); *In re Netbank, Inc. Secs. Litig.*, 259 F.R.D. 656, at 674 (N.D. Ga. 2009) (accepting event study showing that "price of [] stock moves more on news days than non-news days").

Based on this rejected view, Dr. Roper concludes that *Cammer* Factor 3 (market makers), *Cammer* Factor 4 (SEC Form S-3 eligibility), the *Krogman* factors (market capitalization, public float, and bid-ask spreads), and other indicators relied upon by Dr. Cain are irrelevant to the Court's class certification analysis. *See* Roper

Rpt., ¶¶ 78-82; *see also* Roper Dep Tr. at 61:16-23 (characterizing *Krogman* factors as being "not commonly accepted by the field"); 63:5-14 (stating *Cammer* factors aside from Factor 5 are not "commonly accepted methodologies").

But courts in the Eleventh Circuit have looked to *Cammer* Factors 3-4, the *Krogman* Factors, and institutional ownership (Additional Factor 4 in Dr. Cain's report) as part of a holistic analysis when evaluating market efficiency at class certification. *See, e.g, Monroe Cty. Emps' Ret. Sys. v. S. Co.*, 332 F.R.D. 370, 383 (N.D. Ga. 2019) (addressing market makers and Form S-3 eligibility); *In re Scientific-Atlanta, Inc. Sec. Litig.*, 571 F. Supp. 2d 1315, 1339 (N.D. Ga. 2007) (addressing market capitalization); *Cheney v. Cyberguard Corp.*, 213 F.R.D. 484, 501 (S.D. Fla. 2003) (addressing bid-ask spread); *In re Netbank Inc.*, 259 F.R.D. at 672-73 (addressing public float); *Regions*, 762 F.3d at 1258 (identifying the presence of "institutional investors" as a feature of an efficient market). Other courts have also found analysis of autocorrelation (Additional Factor 5) and the presence of active options trading (Additional Factor 6) as indicative of market efficiency. *See Första,* 312 F.R.D. at 519 (addressing autocorrelation); *Sheet Metal Workers Nat'l Pension Fund v. Bayer Aktiengesellschaft*, 2023 WL 3569981, at *9 (N.D. Cal. May 19, 2023) (addressing active options trading).

The Eleventh Circuit has held that *Cammer* Factor 5 is not an "unwavering evidentiary requirement" for market efficiency, and has even affirmed a district

court's finding of market efficiency where plaintiffs offered no event study in support. *Regions*, 762 F.3d at 1256-57; *see also see also In re NetBank*, 259 F.R.D. at 669, 674-75 (noting that "[p]roof of every single factor is not always necessary" and finding that "Defendants' arguments on the [fifth] factor are insufficient to overcome a prima facie showing of market efficiency at the class certification stage."). Nonetheless, Dr. Roper testified that the "central testable hypothesis of efficient market theory" – whether a stock price adjusts efficiently – "relates to the discussion that *Cammer* factor five identifies." *See* Roper Rpt., ¶ 66; Roper Dep. Tr. at 76:3-14. Courts have rebuked opinions similar to Dr. Roper's which ignore the majority of the *Cammer* factors and focus on *Cammer* Factor 5. *See, e.g., Willis*, 2017 WL 1074048, at *4 ("It may be that many financial economists [] dispute the relevancy of the first four *Cammer* factors to a determination of market efficiency, but the *Cammer* factors nonetheless reflect the *legal* standard for market efficiency[.]") (emphasis added); *In re Scientific-Atlanta, Inc. Sec. Litig.*, 571 F. Supp. 2d at 1339 (declining to find the market inefficient, in part because defendants produced a study relating to only one of the nine factors identified to determine market efficiency).

In sum, Dr. Roper readily admits that he does not concern himself with the relevant legal standards for market efficiency, and thus "only describ[ed] the boundaries of economic theory." *See* Roper Dep. Tr. at 79:14-18; *see also id.* at

61:16-23; 63:5-14.  But the issue before the Court is whether Lead Plaintiff has established market efficiency for purposes of class certification, not an academic debate.  The Court should therefore exclude Dr. Roper's opinions because his rigid view of market efficiency is contrary to and thus not relevant to the applicable legal questions that must be answered at class certification.  *See Williamson Oil Co.*, 346 F.3d at 1323 (excluding expert opinion that applied incorrect legal standard for "collusion" in antitrust case); *Bailey*, 148 F. Supp. 2d at 1242-46 (excluding expert's opinion because they were "based upon analyses that are contrary to the law as established by the Eleventh Circuit and United States Supreme Court").

### B. Certain of Dr. Roper's Market Efficiency and Price Impact Opinions Are Unreliable.

Dr. Roper also offers two opinions related to price impact and market efficiency that are unreliable because they are devoid of any support and contradict basic financial principles.

First, Dr. Roper asserts that the existence of the $10.15 redemption right meant that "[w]henever GNPK stock price traded at $10.15 or below, GNPK stock price was not inflated."  *See* Roper Rpt., ¶ 43.  He opines the Court can therefore conclude, based on "reliable economic analysis," that the "share price was not impacted by any of the alleged prior misrepresentations regardless of whether the market was efficient."  *Id.*, ¶ 44.  Dr. Roper, however, did not conduct any loss causation analysis. *See* Roper Dep. Tr. at 13:17-20. Thus, his opinion that there was

no artificial inflation is unsupported and at best speculative. *See, e.g., In re BankAtlantic Bancorp., Inc. Sec. Litig.*, 2010 WL 6397501, at *4 (S.D. Fla. Aug. 23, 2010) (excluding opinion from defendant's expert who made "no effort to explain why" certain market conditions were "inconsistent with artificial inflation"); *In re Zonagen, Inc. Sec. Litig.*, 322 F. Supp. 2d 764, 781-82 (S.D. Tex. 2003) (finding the record "almost entirely devoid of any proof of loss causation" when expert "merely relied on and verified court rulings" and offered no independent statistical analysis).

Dr. Roper's opinion is also contradicted by basic finance and valuation principles. *See* Rebuttal Report of Dr. Matthew D. Cain (Ex. A) ("Cain Rbtl."), ¶ 83. Dr. Roper's analysis relies on investors being able to redeem their GNPK shares for $10.15 at any point in time during the Class Period. *Id.* But the redemption right was only available if the merger closed, and any delay would mean shareholders would have to wait longer for the $10.15 redemption. *Id.* Furthermore, basic finance and valuation principles state the value of an investment can be represented by the discounted value of its future cash flows. *Id.* ¶ 84. Stated differently, if investors were uninterested in the merger and only wished to receive the redemption value, the *present* value of receiving $10.15 at some point in the future would be lower than $10.15 per share. *Id.* Dr. Roper's failure to consider these basic principles in asserting a $10.15 floor on the GNPK share price, and thereby finding no inflation when GNPK traded at $10.15 or below, renders his opinion unreliable. Cain Rbtl., ¶

- 13 -

85; *see also KW Plastics v. U.S. Can Co.*, 131 F. Supp. 2d 1289, 1293 (M.D. Ala. 2001) (excluding opinion where "the court cannot find with any degree of certainty that [the expert] applied sound economic principles in a reliable way").

*Second*, Dr. Roper claims there was a "telltale" sign of market inefficiency between September 2, 2021 and September 3, 2021, the period where GNPK re-tickered as RDW and the share price "changed dramatically despite there being no new unexpected information" released to the market. *See* Roper Rpt., ¶ 54. In the opinion of Dr. Roper, this change in price "corrupted the price formation process" and "prevent[ed]" the *Basic* presumption from being applied through the remainder of the Class Period. *Id.*

For this opinion, Dr. Roper refers to the fact that Redwire's common stock closed at $10.50 on September 2, 2021, and opened trading at $10.70 on September 3, 2021. *See* Cain Rbtl., ¶ 35. In other words, because the stock price increased by just $0.20 overnight, Dr. Roper concludes that this is a "telltale sign of market inefficiency." *Id.* Indeed, Dr. Roper further opined during his deposition that stock prices in an efficient market should never change in the absence of new information. *See* Roper Dep. Tr. at 69:6-15 ("Q. So is it your opinion that if no new unexpected information comes out, stock prices should not change? A. Not in an efficient market."); *see also id.* at 69:25-70:23.

Dr. Roper's opinion that a $0.20 change in stock price indicates inefficiency

- 14 -

is belied by basic principles of financial trading and markets. As explained by Dr. Cain, stock prices routinely change even in the absence of new information, as the "mere activity of trading by investors causes stock prices to change." *See* Cain Rbtl., ¶ 37. Dr. Cain further examined the common stock prices for all public companies listed on the NYSE and NASDAQ between March 25, 2021 and March 31, 2022 (i.e., the Class Period). *Id.*, ¶ 38. In this sample of over 1 million daily company observations, more than 93% had a change in stock price from market close on one day to market open on the following trading day. *Id.* Therefore, his opinion is contradicted by the trading dynamics present in virtually all publicly listed companies, and has no basis in how stock markets function. *Id.*

Dr. Roper also did not perform any type of market efficiency analysis accepted by courts in reaching this opinion, as he testified that he did not apply the majority of the *Cammer* factors and none of the *Krogman* factors to assess market efficiency for the period between September 2-3, 2021.[3] *See* Roper Dep. Tr. at 74:10-75:7. Dr. Roper's report also cites to no academic literature and case law to support his conclusion that the purported instance of market inefficiency between September 2-3, 2021 precluded application of the *Basic* presumption for the remainder of the Class Period. *See* Roper Rpt., ¶ 54. He also could not identify any

---

[3] It is also not clear, as demonstrated in Dr. Cain's rebuttal report, that there was no new unexpected information released to the market after hours on September 2, 2021. *See* Cain Rbtl., ¶¶ 34-41.

academic literature or case law in support of this position during his deposition. *See* Roper Dep. Tr. at 70:24-73:20. Given that Dr. Roper's inefficiency opinion lacks support and flies against basic principles of financial trading and markets, it is properly excluded under Rule 702 and *Daubert*. *See, e.g., Gulf States Reorganization Grp., Inc. v. Nucor Corp.*, 2010 WL 11561917, at *6 (N.D. Ala. Sept. 2, 2010) (excluding expert whose "methodology" was not based on "applied [] economic principles").

### C.   Dr. Roper's Damages Criticisms Are Irrelevant.

Finally, Dr. Roper contends that Dr. Cain's proposed use of the "out-of-pocket" methodology for calculating damages is flawed for three main reasons. First, Dr. Cain has not provided a specific method to estimate inflation in the stock price. *See* Roper Rpt., ¶ 193. Second, Dr. Roper asserts any inflation calculation must account for periods during the Class Period where there was purportedly no artificial inflation due to the GNPK redemption right. *Id.*, ¶¶ 186-87. Third, any method to calculate artificial inflation needs to distinguish between inflation caused by the alleged misconduct and inflation resulting from alleged market inefficiencies during the Class Period. *Id.*, ¶ 188.

Dr. Roper's criticisms, however, are not substantive challenges to Dr. Cain's methodology. Dr. Roper has not opined that damages cannot be calculated on a class-wide basis, or that the out-of-pocket damages methodology cannot be applied. *See*

Roper Dep. Tr. at 112:5-113:10.  Instead, these criticisms are speculative concerns about potential complications in calculating damages at a later stage of the proceedings.[4]  Put differently, Dr. Roper faults Dr. Cain for not having "identified the inputs to [the out-of-pocket methodology] and how he's going to be able to measure those reliably." *Id.*

But at class certification, Dr. Cain does not need to specify "which valuation tools – an input into the damages model – he will ultimately use," and a damages methodology is suitable for class certification "even though certain of the inputs to [the] model are not yet ascertainable."  *See S.Co.*, 332 F.R.D. at 399. Nor is Dr. Cain required to perform his full damages and loss causation analyses at this time, including the disaggregation of non-fraud confounding information and accounting for varying levels of inflation. *See, e.g.*, *City of Sunrise Gen. Emps. Ret. Plan v. FleetCor Tech., Inc.*, 2019 WL 3449671, at *7 n.2 (N.D. Ga. July 17, 2019) ("Plaintiff is not required to prove loss causation at the class certification stage."); *Thorpe*, 2016 WL 4006661, at *16 (same); *S.Co.*, 332 F.R.D. at 399 n.36 ("But Plaintiffs are not required at the class certification stage to perform a damages analysis.").

---

[4] For the reasons stated herein (*see supra* at 12-16), and discussed in Dr. Cain's rebuttal report, Dr. Roper's opinions regarding the lack of artificial inflation and alleged moments of market inefficiencies – which serve as the foundation to his damages opinions – are flawed and unsupported. Cain Rbtl., ¶¶ 34-41, 71-89.

In essence, Dr. Roper's damages opinion does not directly refute Dr. Cain's work. Rather, it presents alleged complications that may or may not materialize as the case progresses. Dr. Roper thus departs from applicable precedent by demanding a level of detail and focusing on resolution of certain facts that are unnecessary and inappropriate at class certification. This departure from what the Court should properly consider at this stage in the case means his damages opinions should be excluded. *See Williamson Oil Co.*, 346 F.3d at 1323; *Bailey*, 148 F. Supp. 2d at 1242-46.

## V.    CONCLUSION

For the reasons stated herein, Lead Plaintiff respectfully requests that the Court exclude Dr. Roper's report and proposed testimony.

## LOCAL RULE 3.01(g) CERTIFICATION

Lead Plaintiff's counsel conferred with Defendants' counsel in good faith to resolve this Motion via telephone on July 1, 2024. Defendants oppose the relief sought herein.

Dated: July 2, 2024

Respectfully submitted,

**HAGENS BERMAN SOBOL SHAPIRO LLP**

By: *s/ Reed R. Kathrein*
Reed R. Kathrein (Fla. Bar. No. 262161)
reed@hbsslaw.com

Peter A. Shaeffer (admitted *pro hac vice*)
petersh@hbsslaw.com
455 N. Cityfront Plaza Drive, Suite 2410
Chicago, IL 60611
Telephone: (708) 628-4949
Facsimile: (708) 628-4950

Lucas E. Gilmore (admitted *pro hac vice*)
lucasg@hbsslaw.com
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001

Steve W. Berman (admitted *pro hac vice*)
steve@hbsslaw.com
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

*Lead Counsel for Lead Plaintiff*
*Jared Thompson*

**THE SCHALL LAW FIRM**
Brian Schall (admitted *pro hac vice*)
brian@schallfirm.com

*Additional Counsel for Lead Plaintiff*

**BUCKNER + MILES**
David M. Buckner (Fla. Bar No. 60550)
david@bucknermiles.com

*Liaison Counsel for Lead Plaintiff*