**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**

| | |
|---|---|
| JED LEMEN, Individually and On Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br> v.<br><br>REDWIRE CORPORATION f/k/a GENESIS PARK ACQUISITION CORP., PETER CANNITO, and WILLIAM READ,<br><br>    Defendants. | Case No. 3:21-cv-01254-TJC-PDB<br><br>CLASS ACTION<br><br>**LEAD PLAINTIFF JARED THOMPSON'S MOTION FOR DETERMINATION OF PRIVILEGE AND MOTION TO COMPEL PRODUCTION OF WAIVED PRIVILEGED MATERIALS**<br><br>**REDACTED PUBLIC VERSION** |

## I.  INTRODUCTION

This case centers on Redwire Corporation's failure to disclose material weaknesses in its internal controls and accounting practices. After receiving a whistleblower complaint in November 2021, Redwire's Audit Committee launched an internal investigation that prevented the company from timely filing its quarterly financial report. Months later, in March and April 2022, Redwire finally disclosed the investigation's results and revealed significant deficiencies in internal controls, including that "certain members of senior management failed to reinforce the need for compliance" with accounting policies and set an inappropriate "tone at the top."

These disclosures revealing the investigation results and conclusions are at the

- 1 -

heart of Lead Plaintiff's securities fraud claims. Yet Defendants have shielded from discovery the very documents and communications detailing the facts underlying those disclosures by asserting sweeping claims of attorney-client privilege and work product protection over the investigation materials.

Recent events demonstrate that Defendants' claims of privilege must be set aside. First, Defendants' document production in June 2024 shows that Redwire waived any privilege by voluntarily disclosing the Audit Committee investigation's findings and methodology to the SEC. In this Circuit, voluntary disclosure of privileged information to a government agency waives the privilege. *In re Chiquita Brands Int'l, Inc. Alien Tort Statute & S'holder Derivative Litig.*, 270 F. Supp. 3d 1332, 1338-39 (S.D. Fla. 2017) (attorney-client privilege and work product waived through voluntary disclosure to DOJ); *Jane Doe No. 1 v. United States*, 749 F.3d 999, 1008 (11th Cir. 2014) (work product waived through voluntary production to U.S. Attorney's office).[1] Here, the Audit Committee investigators, King & Spalding LLP ("K&S") and KPMG LLP, gave at least two detailed presentations to the SEC in February and June 2022, revealing the investigation's conclusions and underlying factual basis. This voluntary disclosure effected a broad subject matter waiver under

---

[1] *See also Westinghouse Elec.Corp. v. Republic of Philippines*, 951 F.2d 1414, 1418 (3d Cir. 1991) (attorney-client privilege and work product waived through disclosure to SEC and DOJ); *In re Colombia/HCA Healthcare Corp. Billing Pracs. Litig.*, 293 F.3d 289, 295-307 (6th Cir. 2002) (attorney-client privilege and work product waived through disclosure to DOJ).

Federal Rule of Evidence 502(a).

Second, fairness under Rule 502(a) demands that Lead Plaintiff have access to the full evidentiary basis for the Audit Committee's conclusions. Defendants intend to rely on those conclusions (as stated in their SEC filings) as part of their defense, asserting lack of scienter and good faith. They cannot be permitted to selectively disclose investigation findings that support their position while shielding from discovery the underlying facts and documents. Courts have consistently found broad subject matter waiver of undisclosed investigation materials to prevent such "sword and shield" tactics. *See, e.g., United States v. Coburn*, 2022 WL 357217, at *7 (D.N.J. Feb. 1, 2022) (disclosure to DOJ waived privileges over undisclosed investigative materials); *In re Anadarko Petroleum Corp. Sec. Litig.*, 2023 WL 2733401, at *5 (S.D. Tex. Mar. 31, 2023) (disclosure to SEC waived privileges over undisclosed investigative materials); *see also In re King's Daughters Health Sys., Inc.*, 31 F.4th 520, 528-29 (6th Cir. 2022) (disclosure of expert report to government resulted in waiver of privileges for underlying documents concerning the report).

Third, Defendants waived any attorney-client privilege over their documents by asserting affirmative defenses of "lack" of "scienter" and "good faith," thereby placing the contents of privileged communications at issue. *See Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1419 (11th Cir. 1994) (noting a party "waives the privilege if it injects into the case an issue that in fairness requires an examination

- 3 -

of otherwise protected communications")

The documents at issue – including the ███████████████████ ████████████████████████████████, witness interview notes or memoranda, and other materials underlying the Audit Committee's findings (including those related documents listed in privilege logs from Defendants, KPMG, and PricewaterhouseCoopers LLP ("PwC")) [2] are critical to Lead Plaintiff's ability to prove his case and test Defendants' defenses. They are apparently the sole basis for and go to the core issues of the Audit Committee's conclusions: what Defendants knew about Redwire's internal control deficiencies and "tone at the top," when they knew it, and the basis for their public statements. Allowing Defendants to selectively disclose investigation findings while withholding the underlying materials would give them an unfair advantage and hinder the search for truth.

Finally, Lead Plaintiff recognizes that the Court just ruled the Audit Committee conducted its investigation in anticipation of an SEC enforcement action or other litigation potentially triggered by allegations raised by Daniel Gievers, the whistleblower, in his resignation letter. *See* ECF No. 174 at 3.  The Court made this ruling, however, without the benefit of the facts newly revealed by the belated

---

[2] Despite Defendants' agreement to serve a revised categorical privilege log, as represented to the Court, none has been served to date. *See* Kathrein Decl., ¶ 26, submitted herewith. Based on the Court's ruling, Lead Plaintiff plans to continue to meet and confer with Defendants once the revised categorical log is received. *See* ECF No. 174 at 14-16.

identification and production of the SEC presentations. The presentations reveal the

████████████████████████████████████████████████████████████████

██████████████████████████████████████████████. *See, e.g,* Ex. N

at -12547.[3] ██████████████████████████████████████████. *Id.*

at *passim*.

In fact, ████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████████████████████ *See* Ex.

O, at -12627. Defendants, moreover, recently stated that Kirkland & Ellis LLP

("Kirkland") – the original litigation counsel in this case – independently represented

Redwire in connection with legal issues and legal advice related to Mr. Gievers'

allegations and other matters. Kathrein Decl., ¶ 43. Furthermore, ████████████

████████████████████████████████████████████████████████████████

█████████████████████████████ *Id.*, ¶ 47. This recently disclosed

information calls into question the basis for Defendants' assertions of attorney-client

privilege and work product over K&S's and KPMG's work on behalf of the Audit

Committee.

Critically, this motion comes at this late stage of the proceedings solely

---

[3] All "Ex." citations are to Exhibits in the Kathrein Declaration.

because Defendants improperly withheld crucial information. Until their recent production on June 21, 2024, Defendants had not disclosed the existence of the SEC presentations or the underlying documents now at issue. In fact, Defendants previously asserted they had no responsive documents related to any formal or informal government investigations, ███████████████████████████████ ████████████████████ *See* Ex. P, at -12650. This concealment hampered Lead Plaintiff's ability to seek appropriate discovery.

Accordingly, Lead Plaintiff respectfully requests that the Court enter an order compelling Defendants to produce the ██████████████████████████████ ████████, witness interview notes or memoranda, and any other material supporting the investigation.

## II.    FACTUAL BACKGROUND

### A.    Defendants Identify Their Plan to Rely Solely on SEC Public Filings, "Good Faith," and Lack of Scienter in Their Defense.

In June 2023, Defendants served initial disclosures. Kathrein Decl., ¶ 3. The disclosures cite only public SEC filings containing the findings from the Audit Committee investigation. *Id.* Currently, these filings are the only identified documentary basis for Defendants' assertion of "lack []" of "scienter" and "good faith" as their Ninth and Eleventh Affirmative Defenses. ECF No. 68 at 26-27. Although Defendants recently stated that they will rely on some of the documents

identified in the SEC presentations, they will not amend their initial disclosures to reflect this fact until some unknown later date. Kathrein Decl., ¶ 45.

> **B.      Defendants Stonewall Discovery Efforts, Hiding Crucial Information.**

When Lead Plaintiff sought Audit Committee investigation documents, Defendants erected a wall of privilege claims and obfuscation. In May 2023, Lead Plaintiff served requests for production ("RFP") and requested for early production core known, responsive documents related to the investigation, whistleblower complaint, and the "tone at the top" finding. Kathrein Decl., ¶¶ 5-6. After repeated requests, Defendants identified the whistleblower complaint and Defendant Read's separation agreement as the only non-privileged "known" documents. *Id.*, ¶¶ 7,11.

Defendants responded to the RFPs on July 20, 2023. *Id.*, ¶ 6. In addition to the above two documents, Defendants agreed to produce a few non-privileged Audit Committee meeting records. Ex. B at 36-40. Defendants insisted all other documents would have to be identified and collected using search terms. *Id.* Defendants also insisted on running their own search terms (crafted without input from Lead Plaintiff) with agreement the parties would negotiate additional terms for use in future productions. *Id.*, ¶¶ 9-10. Defendants ultimately produced less than 1,400 documents, and very few shed light on the underlying basis for the March 2022 and April 2022 SEC disclosures. *Id.*, ¶ 21.

Otherwise, Defendants claimed privilege over documents concerning the

investigation. Ex. B at 36-40. Defendants served two individual privilege logs and one categorical log. *Id.*, ¶¶ 23-24. The individual logs largely identified only Audit Committee draft meeting minutes authored by K&S and witness interview notes created by Kirkland. *Id.*, ¶ 23 and Ex. H.  Defendants did not confirm until August 2024 that K&S *also* drafted witness interview notes. [4] *Id.*, ¶ 41.

### C.     Defendants' Undisclosed SEC Presentations are Belatedly Revealed.

Given the deficiencies in Defendants' productions, in May 2024 Lead Plaintiff filed a motion to compel production of the purportedly privileged investigation materials based primarily on substantial need for the materials and undue burden. *See* ECF No. 148. Defendants then sought to discuss a production of investigation materials. Kathrein Decl., ¶ 32. In exchange for Lead Plaintiff withdrawing the motion and pausing further compliance with third-party subpoenas issued to K&S, KPMG, and PwC, Defendants agreed to produce February 2022 and June 2022 presentations made by K&S and KPMG and documents identified in those presentations. *Id.*, ¶ 33. Defendants did not indicate that the presentations were made to anyone but the Audit Committee. *Id.*

---

[4] The Court should view the current motion in light of Defendants' obstruction of Lead Plaintiff's assessment of privilege. Notably, in the November 2023 individual privilege log, Defendants obscured the K&S/KPMG February 2022 presentation by redacting the fact that it was given to the SEC. Kathrein Decl., ¶ 25 and Ex. I at entry no. 116. The June 2022 SEC presentation was never logged at all, with Defendants claiming this omission was due to their objection to not produce anything beyond June 1, 2022, save for certain exceptions. *Id.*, ¶¶ 12, 25.

Defendants made the supplemental production on June 21, 2024. *Id.*, ¶ 35. Shockingly, despite Defendants' earlier unqualified statements that they had no responsive documents related to any formal or informal government investigations (*see* Ex. B at 50-51), the newly produced documents revealed the K&S/KPMG exculpatory presentations were given to the SEC. *Id.* The presentations detailed the

███████████████████████████████████████████████████████

████████████████████. *See, e.g.,* Ex. N at -12547, -554. ████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████    *Id.* at -12547; *id.* at *passim*.  ██████████████████

███████████████████████████████████████████████████████

████████████████████████████  *Id.* at -12554-55. Defendants have since confirmed the investigators gave oral descriptions of the witness interviews to the SEC. *See* Kathrein Decl., ¶ 41.

███████████████████████████████████████████████████████

█████████████████████████████████████████████████ Ex. N at -12566. ████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████  *Id.* at -12566, -569. As disclosed in public filings, the SEC closed the "matter" without

further action. *Id.,* ¶ 38.

> **D.   During the Parties' Meet and Confers, Defendants Refuse to Produce Critical Investigation Materials Despite Clear Waiver.**

Lead Plaintiff promptly initiated meet and confer efforts.  On July 23, 2024, Lead Plaintiff sent a comprehensive letter and asserted that the SEC presentations demonstrated the non-privileged nature of the Audit Committee investigation and, alternatively, that any privilege had been waived through disclosure to the SEC. Kathrein Decl., ¶¶ 37, 40. Lead Plaintiff requested the production of the ███████ ████████████████████████████████████████████, witness interview materials, and any other documents concerning the Audit Committee's findings. *Id.*[5]

Defendants maintained their blanket privilege claims, and refused to produce the requested materials. *Id.*  During the meet and confers, Defendants stated Kirkland did not perform the Audit Committee investigation but independently represented Redwire in connection with legal issues and legal advice related to Mr. Gievers' allegations and other matters. *Id.*, ¶ 43.   Kirkland, moreover, authored its own

---

[5] Defendants argue they identified over 200,000 documents through search terms that they agreed to review. Kathrein Decl., ¶ 20. This offer presented its own technical problems based on Defendants' proposed use of Technology Assisted Review but masks a fundamental issue. *Id.* ████ ████████████████████████████████████████████████████████████, and these documents formed the basis of the Audit Committee's conclusions. These are the documents that should be produced, along with the search criteria. The evidence shows that Defendants employed a deficient search criterion, as they produced less than 1,400 documents compared ███████████████████ ████████████████████████, and only a handful of the documents identified in the June 2022 SEC presentation were part of Defendants' original productions. *Id.*, ¶¶ 21-22, 40. Defendants clearly did not employ an adequate review process, meaning their document review proposal rings hollow.

different set of notes for witness interviews conducted by K&S. *Id.*, ¶ 42.

Defendants further disclosed that . *Id.*, ¶ 43 and Ex. Q.

Defendants' recent document production also shows that

. *See*

Ex. P, at -12650.

## III.    ARGUMENT

### A.    Redwire Waived Any Privileges by Disclosing Audit Committee Material to the SEC.

Attorney-client privilege is lost "if there is a disclosure inconsistent with maintaining the confidential nature [of] the attorney-client relationship," such as to a third-party. *See In re Chiquita Brands Int'l*, 270 F. Supp. 3d at 1338. A party waives work product through voluntary disclosure of materials in "a manner which is either inconsistent with maintaining secrecy against opponents or which 'substantially increases the opportunity for potential adversaries to obtain the information.'" *Id.*

Federal Rule of Evidence 502(a) governs the scope of any waiver. With respect to an intentional disclosure of privileged communications or information to a government agency, Rule 502(a) provides the waiver extends to undisclosed documents or communications in a federal proceeding only if: "(1) the waiver is

- 11 -

intentional; (2) the disclosed and undisclosed communications or information concern the same subject matter; and (3) they ought in fairness to be considered together." Subject matter waiver occurs in "unusual situations in which fairness requires a further disclosure of related, protected information, in order to prevent a selective and misleading presentation of evidence to the disadvantage of the adversary." *See* Fed. R. Evid. 502 Advisory Committee Notes, Subsection (a).

It is undisputed that Redwire's Audit Committee disclosed the investigation's findings, conclusions, and supporting documents to the SEC. *See supra* at 8-9. As such, Defendants waived any privilege over the materials disclosed to the SEC, as courts in the Eleventh Circuit unequivocally hold. *See, e.g., In re Chiquita Brands Int'l,* 270 F. Supp. 3d at 1339 (holding "a party may not voluntarily waive the attorney-client or work product privileges for its own benefit in dealings with a third-party government agency, then hide behind the privilege in subsequent civil litigation"); *Jane Doe No. 1.,* 749 F.3d at 1008 (work product waived over correspondence voluntarily sent to the U.S. Attorneys' office during criminal plea negotiations); *In re Disposable Contact Lens Antitrust Litig.,* 2018 WL 10579444, at \*5 (M.D. Fla. Apr. 25, 2018) (attorney-client privilege waived by voluntary disclosure of privileged information to New York Attorney General).

**B.     Under Rule 502(a), the Disclosure of Privileged Material to the SEC Supports Broad Subject-Matter Waiver.**

***Redwire's Waiver was Unquestionably Intentional.*** K&S and KPMG made

at least two detailed presentations to the SEC in February and June 2022, revealing

the investigation's conclusions, methodology, and supporting evidence. *See supra* at

8-9. These presentations were not made inadvertently but as part of a deliberate

strategy to address potential SEC concerns.

*Same Subject Matter.* The undisclosed documents, including the ████

██████████████████████████████, witness interview materials, and other

supporting documentation, clearly concern the same subject matter as the SEC

presentations: the Audit Committee's investigation into the whistleblower

complaint. *See Dougherty v. Esperion Therapeutics*, 2020 WL 7021688, at *3 (E.D.

Mich. Nov. 30, 2020) (finding request for counsel's notes, editorial comments,

memoranda, and emails relating to the drafting involved the same subject matter as

defendant's disclosure of draft press releases and filings to SEC and FDA). Indeed,

the ██████████████ and witness interviews are directly referenced in the

presentations, establishing an undeniable link between the disclosed and undisclosed

information.[6] *See, e.g.,* Ex. N at -12554-55.

*Fairness.* Fairness dictates that Lead Plaintiff receive the undisclosed

---

[6] Defendants confirmed during the meet and confers that K&S's oral presentations to the SEC included "characterization[s]" of witness interviews. *See* Kathrein Decl., ¶ 41. Such oral downloads provided to the SEC are grounds for waiver of the witness interview notes themselves. *See, e.g., SEC v. Herrera*, 324 F.R.D. 258, 264 (S.D. Fla. 2017) (finding law firm waived privilege over witness notes and memoranda when providing "oral downloads of the substance of the 12 witness interview notes and memos"); *see also Gruss v. Zwirn*, 2013 WL 3481350, at *13 (S.D.N.Y. July 10, 2013) (ordering production of interview notes and summaries because portions of them were disclosed to the SEC).

investigative materials. In the June 2022 presentation, ████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████████ *See id.* at

-12566. The investigation also identified no material misstatements or the need to

restate Redwire's financials, but did find "certain members of senior management"

had inappropriate "tone at the top."  *See* ECF No. 109 at 6-7. These conclusions

underpin Redwire's March and April 2022 SEC filing disclosures, which will

undoubtedly form a cornerstone of Defendants' "lack[]" of "scienter" and "good

faith" affirmative defenses. *Id.*; *see supra* at 6-7. Defendants have also confirmed

that they will rely on some of the documents identified in the SEC presentations,

although they will not amend their initial disclosures to reflect this fact until some

unknown later date. *See* Kathrein Decl., ¶ 45. Allowing Defendants to rely on these

documents and conclusions while shielding other documents and underlying facts

would enable them to cherry-pick favorable findings while suppressing potentially

contradictory evidence. To prevent such a selective and manipulative presentation

of evidence, fairness requires a broad subject matter waiver. *See In re King's*

*Daughters Health Sys., Inc.*, 31 F.4th at 528-29 (fairness requires company's

privilege claims over undisclosed material related to expert study previously

disclosed to government "must give way to allow for a 'complete and accurate

presentation' of the study" in subsequent trial).

*United States v. Coburn* and *In re Anadarko Petroleum Corp. Sec. Litig.* underscore this point. In both cases, courts found broad waivers of undisclosed internal investigation documents after voluntary disclosures to government agencies. In *United States v. Coburn*, the court ruled a company's "revelation of the fruits of its investigation" waived privilege of the following undisclosed material: (1) "all memoranda, notes, summaries, or other records of the interviews"; (2) underlying documents and communications directly referenced in the summaries; and (3) "documents and communications that were reviewed and formed any part of the basis" of any presentation to the DOJ.  2022 WL 357217, at *7.

In *In re Anadarko Petroleum Corp. Sec. Litig.*, the court found a presentation delivered to the SEC by a company's outside counsel, which detailed witness interviews and internal company documents, waived undisclosed material covering the entire subject matter of the investigation. 2023 WL 2733401, at *5. In assessing waiver, the court noted the company's reliance on the SEC's decision to not bring an enforcement action while withholding the underlying facts as privileged. *Id.*

Defendants disclosed the "fruits" of their investigation to the SEC. *See supra* at 8-9. Defendants, moreover, intend to rely on public SEC filings and some of the documents identified in the SEC presentations for their defense and have asserted lack of scienter and good faith defenses. *Id.* at 6-7. These defenses are inextricably intertwined with the Audit Committee's findings and conclusions, including no

- 15 -

material misstatements or need for a restatement. *See* ECF No. 109 at 6-7. Fairness means Defendants cannot rely on the investigation's results as a sword while asserting privilege to shield the underlying facts.

**C. Defendants Waived the Attorney-Client Privilege Through Their Affirmative Defenses.**

Separately, a party "waives the privilege if it injects into the case an issue that in fairness requires an examination of otherwise protected communications." *See Cox*, 17 F.3d at 1419. Here, Defendants' lack of scienter and good faith affirmative defenses operate as a waiver. *See supra* at 6-7. The defenses place Defendants' state of mind, knowledge, and basis for their beliefs and the accuracy of their statements directly at issue, making the privileged investigation materials and related legal advice highly relevant to testing and challenging those defenses. In *Mattel, Inc. v. MGA Ent., Inc.*, 2010 WL 3705902 (C.D. Cal. Sept. 22, 2010), the court found waiver over communications and materials in similar circumstances where defendants did not explicitly state they were relying on privileged material but put their state of mind and basis for their good faith at issue through their defenses. *Id.* at *5-9; *see also In re Broadcom Corp. Secs. Litig.*, 2005 WL 1403516, at *2 (C.D. Cal. Feb. 10, 2005) (finding implied waiver of privilege where defendants asserted good faith defense); *Cox*, 17 F.3d at 1419 (holding good faith defense waived

- 16 -

attorney-client privilege).[7]

> ### D.  Alternatively, New Evidence Shows the Audit Committee Materials are Not Protected by the Attorney-Client Privilege and Work Product Doctrine.

> ### 1.  To Establish Privilege, Defendants Have a Heavy Burden.

Defendants have the burden to establish attorney-client privilege and work product immunity. *See Kaleta v. City of Holmes Beach*, 682 F. Supp. 3d 1062, 1065 (M.D. Fla. 2023). This is a heavy burden, as privileges are "not lightly created nor expansively construed, for they are in derogation of the search for the truth." *See Holladay v. Royal Caribbean Cruises, Ltd.*, 334 F.R.D. 628, 631 (S.D. Fla. 2020).

The attorney-client privilege protects confidential communications between an attorney and client for the purpose of securing legal advice or assistance. *Kaleta*, 682 F. Supp. 3d at 1070. When a communication "serve[s] both business and legal purposes," a corporation "cannot claim that the primary purpose of the communication was for legal advice or assistance." *In re Seroquel Prod. Liab. Litig.*, 2008 WL 1995058, at *4 (M.D. Fla. May 7, 2008).

To qualify as work product, documents must have been prepared "for" a party "in anticipation of litigation or for trial." Fed. R. Civ. P. 26(b)(3)(A). This Court has

---

[7] Furthermore, Redwire's production of Audit Committee material to PwC waives the attorney-client privilege. *See Colonial BancGroup Inc. v. PwC*, 2016 WL 9711528, at *2 (M.D. Ala. June 24, 2016) (finding waiver by providing PwC with protected material); Kathrein Decl., ¶ 27 and Ex. K.

previously applied the "primary purpose" test, where a "document or tangible thing was prepared in anticipation of litigation if 'the primary motivating purpose' behind its creation was 'to aid in possible future litigation.'" *See Norris v. Williams*, 2017 WL 5054763, at \*2 (M.D. Fla. Nov. 3, 2017) (Barksdale, MJ) (citing *United States v. Davis*, 636 F.2d 1028, 1040 (5th Cir. 1981)). Under the primary purpose test, work product does not apply to "[m]aterials assembled in the ordinary course of business, or pursuant to public requirements unrelated to litigation." *Id*.

As this Court recognized, other courts apply the "because of" test, which affords work product protection when a "document was created because of anticipated litigation, and would not have been created in substantially similar form but for the prospect of that litigation." *See, e.g., LeBlanc v. Coastal Mech. Servs., LLC*, 2005 WL 8156080, at \*5 (S.D. Fla. Mar. 22, 2005).

### 2.    New Evidence Raises Doubt as to Whether Materials Created by K&S and KPMG Are Privileged or Work Product.

Lead Plaintiff has previously described the events leading to the Audit Committee investigation. *See* ECF No. 109 at 5-7. In brief, the Audit Committee investigation launched immediately after Redwire received the whistleblower complaint in early November 2021. *Id.* at 5. On November 10, 2021, Redwire announced it could not timely file its quarterly financials due to receipt of the complaint. *Id.* Redwire provided an update on February 3, 2022, announcing

- 18 -

preliminary financials and stating that the investigation had not yet identified any "material misstatements." *Id.* at 6. Notably, this press release cites no pending or anticipated litigation. *See* ECF No. 92-8 at 3. Redwire did not disclose the final findings of the investigation until March and April 2022, coinciding with its belated financial results. *See* ECF No. 109 at 6-7. Those findings focused on internal control weaknesses and "tone at the top" issues that were relevant to Redwire's required disclosures as a public company, as well as the lack of any identifiable "material misstatements." *Id.* Redwire made no mention of litigation, a SEC enforcement action, or legal advice. *Id.*

In finding that the Audit Committee conducted its investigation in anticipation of litigation, the Court held that testimony from Jonathan Baliff, the chair of the Audit Committee during the investigation, satisfied Defendants' burden. *See* ECF No. 174 at 3. Mr. Baliff stated in a sworn declaration that the Audit Committee anticipated an SEC enforcement action or other litigation potentially triggered by Mr. Gievers' allegations in his whistleblower complaint. *Id.* (citing ECF No. 108-1).

Facts revealed in the belatedly produced SEC presentations – not before the Court when finding the Audit Committee anticipated litigation – undermine the purported basis for attorney-client privilege and work product protection. Those presentations demonstrate that ███████████████████████████████████

███████████████████████████████████████████████████

- 19 -



. *See, e.g.,* Ex. N at -12547.

. *Id.* at -12553.

*Id.* at -12553-54.

*Id.* at -12554.

. *See* Exs. M and N at *passim.*

*See* Ex. O at -12627.

As for any anticipated SEC enforcement action, Kirkland, not K&S, notified the SEC of the whistleblower complaint. *See* ECF No. 108-1, ¶ 10. Critically,

*See* Ex. P at -12650.

Additional facts raise further questions on the purported privileged basis of the investigation materials. Defendants confirmed that Kirkland independently represented Redwire in connection with legal issues and legal advice related to Mr. Gievers' allegations and other matters, and did not perform the Audit Committee investigation. *See* Kathrein Decl., ¶ 43.





. *Id.*, ¶ 43. Kirkland also drafted its own set of notes for witness interviews conducted by K&S. *Id.*, ¶ 42.

Given this new evidence, it appears Kirkland, and not K&S and KPMG, could have been responsible for investigating Mr. Givers' litigation claims. ▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.*, ¶ 47. ▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

further calls into question the anticipation of a potential SEC enforcement action. *Id.*, ¶ 39 and Ex. P. Simply put, these facts cast doubt on Defendants' prior representations to the Court in support of their work product claim, as well as any assertion of attorney-client privilege.[8]

### 3. Courts Have Found No Privileges for Investigation Materials.

In the prior motion concerning the clawed back PwC memorandum, Lead

---

[8] Defendants have asserted a "self-critical analysis" privilege over certain Audit Committee documents. The Court should reject its application, as the Federal Rules and the Eleventh Circuit do not recognize the privilege. *See Burrow v. Forjas Taurus S.A.*, 334 F. Supp. 3d 1222, 1232-33 (S.D. Fla. 2018). Courts have also found the privilege does not apply in securities fraud actions. *See, e.g., In re Sahlen & Assocs., Inc.*, 1990 WL 284508, at \*1 (S.D. Fla. Nov. 5, 1990) (finding "self-evaluative" privilege inapplicable in action for securities fraud); *In re Winstar Commc'ns, Sec. Litig.*, 2007 WL 4115812, at \*2 (S.D.N.Y. Nov. 15, 2007) (noting the self-evaluative privilege does not "protect those accused of securities fraud scienter" from disclosing "evidence which may bear on knowledge and intent"). The privilege also does not attach "unless the report is prepared for purely internal review purposes," which is inapplicable given Defendants' disclosures to the SEC. *See In re Air Crash*, 959 F. Supp. 1529, 1532 (S.D. Fla. 1997).

Plaintiff cited several cases demonstrating that work product does not automatically apply for internal investigation material even when a party claiming the protection anticipated litigation, was subject to an SEC investigation, or created documents with both litigation and business purposes.  *See* ECF No. 109 at  17-18, 18 n.8. Due to the newly revealed facts contradicting Defendants' prior grounds for anticipating litigation, Lead Plaintiff respectfully and in good-faith believes the Court can reconsider this case law in a new light.

*Miller v. Dyadic Int'l, Inc.* addressed an audit committee engaging outside counsel to investigate its "own potential wrongdoing . . . to protect the corporation's shareholders." 2010 WL 11591901, at *6 (S.D. Fla. March 30, 2010). The court held that "while the [company] may have anticipated that there would be litigation at some point, the materials assembled and generated" by the law firm were "collected primarily for other purposes," and were not protected work product. *Id.*

Likewise, in *S.E.C. v. Microtune, Inc.*, outside counsel led an internal investigation related to the development of "new corporate 'best practices'" and financial restatements. 258 F.R.D. 310, 319 (N.D. Tex. 2009). In finding work product did not apply to the investigative materials, the court analyzed the "primary motivating purpose" behind their creation. *Id.*  The court held the investigators "would have created most of the documents at issue for business purposes, regardless of the prospects of litigation," and reached this decision even though the

SEC had initiated an informal investigation when the documents were created. *Id.*

In *Allied Irish Banks v. Bank of America, N.A.*, the court held that the work product protection did not apply to documents generated during an internal investigation regarding a rogue trading scheme. 240 F.R.D. 96, 99, 106-08 (S.D.N.Y. 2007). Although the court acknowledged that the bank's expectation of litigation was "reasonable," it found the materials would have been prepared regardless of the potential for litigation, precluding any application of work product. *Id.* The court identified facts supporting this finding that are relevant here, including the investigation being "announced to the press" and the prominent "business reasons" for preparing the material like making "recommendations" for "improvements" of "[internal] policies and controls" and addressing "control systems and organizational issues." *Id.* at 107-108.

As for attorney-client privilege, the Court has not previously addressed whether Defendants have met their burden in asserting privilege over the Audit Committee materials. Along with the Baliff declaration that has since been contradicted by recently revealed facts, Defendants previously provided a declaration from Alec Koch, an attorney from K&S who led the Audit Committee investigation. *See* ECF No. 92-11.  In his declaration, Mr. Koch broadly asserted that K&S "rendered legal advice and counsel." *Id.*, ¶ 5.  Defendants, moreover, have specifically identified few investigation documents and have not provided a

document-by-document log concerning the Audit Committee materials. *See supra* at 7-8; ECF No. 133 at 9-11.  Lead Plaintiff can only speculate as to when, where, how, to whom, and in what manner Defendants received purported legal advice.

Courts reject conclusory assertions of privilege like the ones offered by Defendants here. In *In re FirstEnergy Corp. Sec. Litig.*, the court held a party failed to establish attorney-client privilege based on "broad assert[ions] . . . that because the company faced several lawsuits and eventually cooperated with the government, all the investigations' materials must be privileged." *In re FirstEnergy Corp. Sec. Litig.*, 2024 WL 1984802, at *11 (S.D. Ohio May 6, 2024).  Similarly, in *Microtune, Inc.*, a party supported its attorney-client privilege assertion with a declaration providing only "background information" about the internal investigation and outside counsel's involvement. 258 F.R.D. at 316. The court found the declaration "improper[ly]" adopted a "categorical approach" by "assum[ing] all documents relating to the investigation … are protected from discovery because they were made by or sent to outside counsel." *Id.* Likewise, in *In re Allied Bank*, the court held privilege did not apply to a memo of counsel's investigation interviews and reports of counsel's communications with the board of directors based solely on the assertion that outside counsel "provided legal advice." 240 F.R.D. at 104.

## IV.    CONCLUSION

Lead Plaintiff respectfully requests that the Court order Defendants to produce

the ███████████████████████████████████████████████, witness interview notes or memoranda, and any other material underlying the investigation's findings and conclusions.

## LOCAL RULE 3.01(G) CERTIFICATION

Undersigned hereby certifies that on July 23, 2024, July 30, 2024, July 31, 2024, and August 13, 2024, Lead Plaintiff's counsel conferred with counsel for Defendants via written correspondence and videoconference regarding the relief requested and Defendants' counsel do not agree with the relief sought.

Dated: August 23, 2024

Respectfully submitted,

**HAGENS BERMAN SOBOL SHAPIRO LLP**

By: *s/ Reed R. Kathrein*
Reed R. Kathrein (Fla. Bar. No. 262161)
reed@hbsslaw.com
Lucas E. Gilmore (admitted *pro hac vice*)
lucasg@hbsslaw.com
715 Hearst Avenue, Suite 300
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001

Steve W. Berman (admitted *pro hac vice*)
steve@hbsslaw.com
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

Peter A. Shaeffer (admitted *pro hac vice*)
petersh@hbsslaw.com
455 N. Cityfront Plaza Drive, Suite 2410
Chicago, IL 60611
Telephone: (708) 628-4949
Facsimile: (708) 628-4950

*Lead Counsel for Lead Plaintiff*
*Jared Thompson*

**THE SCHALL LAW FIRM**
Brian Schall (admitted *pro hac vice*)
brian@schallfirm.com

*Additional Counsel for Lead Plaintiff*

**BUCKNER + MILES**
David M. Buckner (Fla. Bar No. 60550)
david@bucknermiles.com

*Liaison Counsel for Lead Plaintiff*