**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA**

| | |
|---|---|
| JED LEMEN, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>REDWIRE CORPORATION f/k/a GENESIS PARK ACQUISITION CORP., PETER CANNITO, and WILLIAM READ,<br><br>Defendants. | Case No. 3:21-cv-01254-TJC-PDB<br><br>CLASS ACTION<br><br>**LEAD PLAINTIFF JARED THOMPSON'S MOTION FOR SANCTIONS**<br><br>**REDACTED PUBLIC VERSION** |

## I.   INTRODUCTION

Defendants' persistent pattern of discovery misconduct, spanning over a year, has significantly hampered Lead Plaintiff's ability to effectively litigate this action. Defendants' actions go beyond mere oversight or negligence, they represent a calculated strategy to obstruct Lead Plaintiff's access to critical evidence, conceal relevant information, and unduly delay the litigation's proceeding. This motion, brought pursuant to Federal Rules of Civil Procedure ("FRCP") 26(g), 37(c)(1), and 37(d), seeks to remedy this misconduct and ensure the fair resolution of this case.

Defendants' recent production of two presentations made by the Audit Committee investigators, King & Spalding LLP ("K&S") and KPMG LLP, to the Securities and Exchange Commission ("SEC") in 2022 underscores the severity of their misconduct. These presentations, not previously identified and belatedly

- 1 -

produced over a year after they were first requested, reveal a disturbing pattern of misrepresentation, concealment, and obfuscation. They expose the Defendants' mischaracterization of the Audit Committee investigation, their failure to disclose a massive volume of relevant documents, their misleading discovery responses, and their continued efforts to shield crucial evidence from Lead Plaintiff.

First, to justify broad assertions of privilege and work product protection over investigation materials, Defendants asserted that the Audit Committee conducted the investigation in anticipation of litigation over harassment and retaliation claims brought by the whistleblower, Daniel Gievers, as well as a potential SEC enforcement action. The Court accepted these representations in holding that the investigation was conducted in anticipation of litigation. ECF No. 174 at 3.

The presentations confirm, however, that ███████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████ Subsequent discussions with Defendants and recently produced documents further indicate that separate counsel, Kirkland & Ellis ("Kirkland"),

independently represented Redwire concerning Mr. Gievers' allegations, ████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████

Second, the presentations identify a massive volume of material that Defendants improperly withheld from Lead Plaintiff despite admitting they are likely to rely upon some of it for their defenses. The presentations show the

██████████████████████████████████████████████████████

████████████████████████████████████████. Yet Defendants produced less than 1,400 "responsive" documents based on their initial collection and review efforts. This production only included six of the over 50 documents shown to the SEC.  Defendants also failed to produce ████████████████████████, which Defendants never identified as a source of relevant ESI and Lead Plaintiff only learned about ██████████████████████, taking the untenable position they are not documents.

Third, the SEC presentations show as false Defendants' prior discovery responses that they were "unaware of any investigation by a governmental or

administrative agency" and that they were not withholding "known responsive documents" concerning the whistleblower complaint investigation. These documents were unquestionably known to Defendants as responsive, as they were

████████████████████████████████████████████████████ .

Fourth, Defendants' November 2023 individual privilege log concealed the very existence of these SEC presentations through intentional strategic redactions to the log, which they frivolously claim were made to conceal privileged information (*e.g.*, the fact that the document was a presentation to the SEC) and thus implicating waiver.

Fifth, Defendants refuse to supplement their June 2, 2023 initial disclosures, while conceding that they will "likely" rely on some of Audit Committee materials identified in the belatedly produced SEC presentations. Current disclosures still identify only three individuals - Peter Cannito, William Read, and Jonathan Baliff - as persons likely to have discoverable information, and cite only public SEC filings, and no non-public documents, as those they may use in their defenses.

Sixth, Defendants obstructed the June 2024 deposition of Mr. Gievers by failing to produce known documents authored by him and given to the SEC until just days after the deposition. Defendants also ██████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

- 4 -

██████████████████████████, the prejudice has been done.

Courts in the Eleventh Circuit have not hesitated to impose sanctions in similar circumstances. *See Kona Spring Water Distrib., Ltd. v. World Triathlon Corp.*, 2007 WL 737624, at *3 (M.D. Fla. Mar. 7, 2007) (barring plaintiff from using wrongfully withheld evidence where defendant was "forced to conduct almost all of its discovery without the knowledge or benefit" of the withheld materials); *see* also Fed. R. Civ. P. 26(g)(3), 37(c)(1) (providing for sanctions when a party fails to make required disclosures or cooperate in discovery). Sanctions do not require a finding of willfulness or bad faith when they involve the exclusion of evidence. *See Browning v. Bay Radiology Assocs. PL*, 2024 WL 3200472, at *4 (11th Cir. June 27, 2024). Moreover, prejudice to the Lead Plaintiff should be "analyzed from an *ex ante* perspective," considering how the discovery violations "unfairly impaired the prosecution of [Lead] Plaintiff's case." *Roca v. Alphatech Aviation Servs., Inc.*, 2013 WL 12333471, at *3 (S.D. Fla. June 19, 2013).

Despite Lead Plaintiff's good faith efforts to resolve these issues without Court intervention, Defendants' obstruction continues. While Defendants now concede that the SEC presentations were responsive to the discovery requests, they refuse to produce the ████████████████████████████████ or any witness interview materials. While Defendants' initial disclosures are now admittedly deficient, they only state they will amend them in advance of trial. While

Defendants will now belatedly ███████████████████████ ████████████████████, and permit additional questioning by Lead Plaintiff on the SEC presentation documents they produced just two days after the deposition, they will agree to no more than one additional hour. Mr. Gievers, moreover, has no obligation to sit for more questioning.

A year and over 2,400 hours of Lead Plaintiff's counsel's time has been wasted as a result of Defendants' tactics. Kathrein Decl., ¶ 49. Lead Plaintiff has diligently attempted to resolve these discovery issues without Court intervention, but the Defendants' never-ending uncooperative and evasive responses necessitate the present motion. Thus, Lead Plaintiff respectfully requests that the Court: (1) bar Defendants from relying on any witness or documents not presently listed in their FRCP 26(a)(1) disclosures, including those identified in their supplemental production served on June 21, 2024 or any Audit Committee materials reviewed by them; (2) order the production of all withheld Audit Committee materials; (3) grant Lead Plaintiff additional time for discovery; and (4) order other relief as is appropriate.

## II.   FACTUAL BACKGROUND

### A.   Defendants' Deficient Initial Disclosures and Misleading Discovery Responses.

From the start of discovery, Defendants have obstructed access to critical evidence. Defendants served their bad-faith initial disclosures on June 2, 2023,

identifying only three witnesses and SEC public filings as those they may use in their defense. Kathrein Decl., ¶ 3. Defendants claimed their disclosures were complete and appropriate. *Id.* They maintain that position, even though they now concede that they will "likely" rely on some of the documents identified in the SEC presentations they belatedly produced. *Id.*, ¶¶ 3, 45.

Lead Plaintiff's RFP Nos. 29 and 38, served in May 2023, requested information and documents concerning the investigation of the whistleblower complaint and informal or formal government investigations. Ex. B at 36-37, 50-51.[1] Defendants' responses falsely stated they were not withholding known responsive documents and claimed they were "unaware" of any informal or formal government investigations. *Id.* Defendants made these representations when in fact they ███████████████████████████████████████████████ the investigators had made two presentations to the SEC, one of which detailed dozens of documents concerning the whistleblower allegations, and Redwire later disclosed to investors that the SEC "matter" was closed.[2] Kathrein Decl., ¶¶ 33, 35, 38-39. Defendants, moreover, served these discovery responses after Kirkland, their initial litigation counsel, sat in on witness interviews during the investigation, drafted notes of those interviews, ████████████████████████████████████████

---

[1] All "Ex." citations are to Exhibits in the Kathrein Declaration.

[2] Defendants also stated in September 2023 that K&S and KPMG provided no written reports to any third-party concerning the Audit Committee investigation.  Kathrein Decl., ¶ 11.

██████████████████████████████████████. *Id.*, ¶¶ 42-43.

Separately, Lead Plaintiff requested early production of known, responsive documents related to the Audit Committee investigation, whistleblower complaint, and the publicly disclosed "tone at the top" finding to aid discovery. *Id.*, ¶ 5. In August 2023, Defendants represented that K&S almost exclusively prepared the board/audit materials requested by Lead Plaintiff, for which they claimed litigation privilege and thus few documents would be produced. *Id.*, ¶ 8. Defendants identified only the whistleblower complaint and Defendant Read's separation agreement as "known documents" previously requested by Lead Plaintiff that were not privileged. *Id.*, ¶ 9. As the belated productions of the non-privileged 2022 SEC presentations demonstrate, Defendants were aware of far more responsive documents than they identified and produced in discovery's early stages. *See infra* at 10-11.

**B.     Defendants Limit Document Production, Claiming Privilege and Burden.**

Claiming it would be burdensome to look for more, Defendants insisted all other responsive documents would only be produced using search terms. *See, e.g.,* Ex. B at 36-40.  Defendants had already begun running their own search terms (crafted without input from Lead Plaintiff). Kathrein Decl., ¶¶ 9-10. The date ranges and custodians used were represented to encompass those used by K&S and KPMG during the Audit Committee investigation to collect documents. *Id.*, ¶ 11. Yet, Defendants produced less than 1,400 documents by the end of November 2023, as

- 8 -

compared to the ▮▮▮▮▮▮▮▮ Lead Plaintiff now knows were selected for review during the investigation. *Id.*, ¶ 21; *infra* at 10-11. Only six of the over 50 documents included in the June 2022 SEC presentation were part of the ~1,400 documents produced. *Id.*, ¶ 22.

Otherwise, Defendants claimed privilege over all investigation materials. *See* Ex. B at 36-40. To date, Defendants served two individual privilege logs and one categorical log. *Id.*, ¶¶ 23-24. The August 2023 individual log identified Audit Committee draft meeting minutes authored by K&S. *Id.*, ¶ 23 and Ex. H. But Defendants just this month revealed that K&S drafted notes of witness interviews it conducted during the investigation. *Id.*, ¶ 41. In the November 2023 individual log, Defendants obscured the K&S/KPMG February 2022 presentation by redacting the fact that it was given to the SEC. *Id.*, ¶ 25. The June 2022 SEC presentation was never logged at all. *Id.*

The August 2023 individual log also identified an unspecified number of "[a]ttorney notes from witness interviews" conducted by Kirkland in anticipation of litigation. *Id.*, ¶ 23 and Ex. H. Defendants, however, now admit these were notes taken by Kirkland as it sat in on K&S witness interviews during the Audit Committee investigation. *Id.*, ¶ 42.

### C.  Defendants Obstruct the Deposition of Daniel Gievers.

Lacking substantive discovery, Lead Plaintiff served a deposition and

document subpoena on Mr. Gievers in May 2024. *Id.*, ¶ 28. Prior to the deposition on June 18, 2024, Defendants did not tell Lead Plaintiff that additional documents *authored by Mr. Gievers* would be coming in a couple of days. *Id.*, ¶ 33. At the deposition, Defendants ███████████████████████████████████████████████ ████████████████████████████████████████████████████. *See* Ex. L at 16:3-19:12, 177:20-180:5; *see also* Kathrein Decl., ¶ 29. Defendants even raised ███████████████████████████████████████████████ ███████████████████████████████████. Ex. L at 276:6-16.

###    D.    Defendants Belatedly Disclose the SEC Presentations.

After Lead Plaintiff's May 2024 substantial need motion was filed, Defendants requested a further meet and confer. Kathrein Decl., ¶ 32. In exchange for Lead Plaintiff withdrawing the motion and pausing compliance with third-party subpoenas issued to K&S, KPMG, and PwC, Defendants would produce K&S/KPMG February 2022 and June 2022 presentations and documents directly referenced therein. *Id.*, ¶ 33. Defendants did not identify that those presentations were made to the SEC, nor that the supplemental production contained never-before-seen documents authored by Mr. Gievers. *Id.*

Shockingly, Defendants' June 21, 2024 production revealed, despite earlier assertions that no government investigations or related documents existed, the K&S/KPMG presentations were given to the SEC. *Id.*, ¶ 35. █████████████

- 10 -



. *See, e.g.,* Ex. N at -12547.

. *Id.* at -12554-555. Finally, just days after his deposition, the production included numerous emails authored by Mr. Gievers relating to his whistleblower complaint never seen by Lead Plaintiff and never before produced. *Id.*, ¶ 36.

### E.    Impasses Remain After the Parties' Meet and Confers.

Lead Plaintiff promptly initiated meet and confer efforts by sending a comprehensive letter on July 23, 2024. *Id.*, ¶ 37.  Initially defending their denial of an investigation, Defendants have now produced

. *Id.*, ¶¶ 38-39; Ex. P at -12650. Defendants still refuse to produce the documents reviewed and witness interview materials created by the investigators and Kirkland. *Id.*, ¶ 40. Defendants offer no timetable to update their initial disclosures (despite conceding that they will rely on some of the documents from their supplemental production). *Id.*, ¶ 45. While Defendants

, they will agree to only one additional hour of questioning to address their late production of documents and have still failed to produce other relevant documents reviewed by

- 11 -

the Audit Committee investigators. *Id.*, ¶¶ 40, 46-47.

### III.   LEGAL STANDARD

FRCP 26(g) requires attorneys to vouch for the completeness, truthfulness, and good faith nature of disclosures, discovery requests, responses, and objections. A party that fails to conduct a reasonable search to ensure complete and timely disclosures of items sought in discovery requests violates FRCP 26(g). *See Waddell v. HW3 Inv. Grp., LLC*, 2021 WL 9781801, at *2 (N.D. Fla. Dec. 23, 2021) (sanctioning defendants for "not diligently search[ing] all of their records"). "[A]ppropriate" sanctions are available under FRCP 26(g)(3).

Under FRCP 37(c)(1), a party may be sanctioned if it fails to provide information or identify a witness as required under FRCP 26 (a) or (e). Courts have applied this rule in ordering sanctions for the late production of documents. *See Houston Specialty Ins. Co. v. Vaughn*, 763 F. App'x 853, 855 (11th Cir. 2019) (affirming sanctions where party did not timely disclose relevant insurance policy). FRCP 37(d) similarly permits sanctions for "untimely production of documents and information required to be produced" under FRCP 34. *See Hyde Park Storage Suites Daytona, LLC v. Crown Park Storage Suites, LLC*, 2022 WL 2132652, at *1 (M.D. Fla. Mar. 17, 2022).

Sanctions under FRCP 37 are bound by what is "'reasonable' in light of the circumstances," *see Preferred Care Partners Holding Corp. v. Humana, Inc.*, 2009

WL 982460, at *3 (S.D. Fla. Apr. 9, 2009), and courts have "substantial discretion." *See Bernath v. Seavey*, 2017 WL 564941, at *4 (M.D. Fla. Feb. 13, 2017). For sanctions, "the court may consider 'the unsuitability of another remedy, the intransigence of a party, and the absence of an excuse,'" and need not find bad faith. *Id.; see also Devaney v. Cont'l Am. Ins. Co.,* 989 F.2d 1154, 1161 (11th Cir. 1993) (noting the 1970 amendments eliminated the "bad faith requirement").

Sanctions under FRCP 37(c)(1) include not allowing the offending party "to use [the] information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  A decision to exclude evidence is informed by the "particular circumstances of the case," and should account for the (1) "reason for not complying with Rule 26[]"; (2) "the importance of the information to be excluded"; (3) the "prejudice to the opposing party due to the nondisclosure"; and (4) the Court's "ability to ameliorate the prejudice through a lesser sanction." *See Loc. Access, LLC v. Peerless Network, Inc.*, 2017 WL 951651, at *2 (M.D. Fla. Mar. 10, 2017).  Additional FRCP 37 sanctions include "prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence." *See* Fed. R. Civ. P. 37(c)(1); 37(b)(2)(A)(i-vi); 37(d)(3).

## IV.   ARGUMENT

### A. Defendants' Systematic Discovery Misconduct Warrants Sanctions.

- 13 -

***Mischaracterization of Audit Committee Investigation's Scope and Purpose.*** The Court has only recently accepted Defendants' representations that the Audit Committee investigation was conducted in anticipation of an SEC enforcement action and potential litigation from Mr. Gievers. *See* ECF No. 174 at 3. Yet, the belatedly produced SEC presentations show that ████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████ *See supra* at 10-11; Kathrein Decl., ¶ 35. ████████████████████████████

████████████████████████████████████████████

██████████████████████████████████. *See* Ex. A at 17; Ex. P at -12650.

████████████████████████████████████████████

████████████████████████████████. *See* Ex. O at -12627. Finally, ██████

████████████████████████████████████████████. *See* Kathrein Decl., ¶ 47. These facts contradict Defendants' broad assertions of privilege and work product based on the Audit Committee anticipating potential litigation from the SEC or Mr. Gievers. *See* ECF No. 108-1, ¶¶ 14-15.

***Failure to Disclose and Produce Key Documents.*** The SEC presentation reveals the investigators reviewed ████████████, yet Defendants produced to Lead Plaintiff less than 1,400 documents. *See supra* at 8-9. Of the fifty-nine

documents produced by Defendants in June 2024, which represented the two SEC presentations and the documents identified to the SEC, only six were previously produced (mainly drafts and the final version of Mr. Gievers' resignation letter). Kathrein Decl., ¶¶ 21-22.  Defendants even concede that *only* 64% (38/59) of these known responsive documents were included in the collected documents Defendants offered to review in their final document review proposal that Lead Plaintiff rejected as deficient. *Id*.

Defendants also failed to disclose and produce ███████████████ ████████ in their original collection and production. Defendants never identified ███████████████████ as a source of ESI and Lead Plaintiff only learned about such ████████ during the deposition of Mr. Gievers. *Id.* ¶ 48. Specifically, Mr. Gievers testified that ███████████████████████████████████ ████████████████████████████████████. *See* Ex. L at 126:22-128:3, 267:24-268:10. When confronted in subsequent meet and confers, Defendants claimed these ████████ were not responsive to any document request, and their production would be overbroad and disproportionate to the needs of the case. Kathrein Decl., ¶ 48. However, a ████████████████████ ██████████████████ would be plainly responsive to RFP No. 29, among other requests. *Id.* Lead Plaintiff further defined "Document" to include "████████" which Defendants never objected to as being overbroad or

disproportionate. *See* Ex. R at 2; Ex. B at 1-2; *see also Waddell*, 2021 WL 9781801, at \*2 (granting sanctions under FRCP 26(g) in form of compelling additional discovery and awarding fees and costs for "not diligently search[ing] all of their records").

***Evasive and Misleading Discovery Responses.*** Defendants now concede the ██████████████████████████████████████████, meaning contrary to the original response to RFP No. 38, they were "aware" of a government investigation. Kathrein Decl., ¶ 39; Ex. P at -12650. As such, when initially answering the request, Defendants applied a frivolously narrow interpretation of the term "informal or formal" investigation to exclude Redwire's voluntary disclosures to the SEC. *See Elite Mitigation Servs., LLC v. Westchester Surplus Lines Ins. Co.*, 2020 WL 6122068, at \*3 (N.D. Fla. Apr. 6, 2020) (A party "should exercise reason and common sense to attribute ordinary definitions to terms and phrases utilized in discovery requests."); *Parrish v. Freightliner, LLC*, 471 F.Supp.2d 1262, 1270 (M.D. Fla. 2006) (parties in discovery should not "hide the ball").[3]

Nor have Defendants identified a reasonable excuse for redacting information in their log identifying the SEC as a recipient, or for not producing or logging the

---

[3] Lead Plaintiff had no obligation to read between the lines to figure out that Redwire likely made presentations to the SEC, and Defendants have no grounds to argue waiver on this point. *See Stanton v. Jones Lang LaSalle Americas, Inc.*, 2019 WL 13214223, at \*4 (N.D. Ga. Jan. 17, 2019) (noting the argument that a party should request undisclosed documents "wrongly shifts the burden" under Rule 26).

June 2022 SEC presentation. Kathrein Decl., ¶ 25. Specifically, Defendants' insistence upon a June 1, 2022 end-date for production ignores their superior knowledge and the provisional nature of that agreement based on Defendants' representation that the Audit Committee investigation concluded in March 2022. *Id.*, ¶ 12; Ex. A at 17. It also ignores that Defendants' August 13, 2024 letter and recent production now show ███████████████████████████████ ███████████████████████. *Id.*, ¶ 43. Finally, none of Defendants' justifications address the fact the June 2022 presentation included internal communications authored by Mr. Gievers responsive to RFP No. 29, among other documents, of which Defendants were aware, but did not produce. *Id.*, ¶ 36; *supra* at 7.

**Deficient Privilege Log.** Through strategic redactions, Defendants' privilege log intentionally obfuscated that a presentation was made to the SEC in direct violation of FRCP 26(b)(5)(A) and the discovery guidelines in this District. Other than purposefully hiding this fact, which would have clearly implicated waiver, there is no other reason to have done so. *See* Middle District Discovery Handbook, § VI.A.1 (a party "must describe the nature" of withheld documents to "enable" an assessment of the claimed privilege); Kathrein Decl., ¶ 25. Inadequate privilege logs can result in waiver of privilege. *See, e.g., Nationwide Mut. Fire Ins. Co. v. Kelt, Inc.*, 2015 WL 1470971, at *9 (M.D. Fla. Mar. 31, 2015) (party waived privilege

based on deficient privilege log); *Hodges v. Chatham Cnty., Ga.*, 2023 WL 4384449, at \*10 (S.D. Ga. July 6, 2023) (privilege waived by failing to "properly document the privilege assertion" on log).

**Inadequate Initial Disclosures.** Defendants' initial disclosures, served over a year ago, list only three witnesses and SEC filings upon which they are likely to rely for their defenses. *See supra* at 6-7. Despite knowledge of additional relevant witnesses and documents as evidenced in the SEC presentation materials, some of which Defendants now state they are "likely" to rely on, the initial disclosures are silent. Kathrein Decl., ¶ 45. Failing to supplement initial disclosures is sanctionable under FRCP 37(c)(1). *See Browning*, 2024 WL 3200472, at \*3 (affirming decision to exclude evidence not disclosed in initial disclosures).

**Obstruction of Mr. Gievers' Deposition.** Defendants' failure to produce numerous known, responsive documents authored by Mr. Gievers himself until just two days after his deposition further compromised a thorough examination of a key witness and violated the Federal Rules. *See supra* at 10-11. Defendants knew well before the deposition that they were withholding relevant communications involving Mr. Gievers related to his allegations. Defendants also violated this District's discovery guidelines by ████████████████████████████████████████ ██████████████████████████████████████████████████████████████████.

*See* Middle District Discovery Handbook § VI.A.2 (setting forth details that must be

provided when objecting to testimony concerning purportedly protected information). ████████████████████████████████████████████, Lead Plaintiff is still prejudiced. *See supra* at 11. Mr. Gievers (a third party) has no obligation to sit again, and Defendants' conduct obstructed Lead Plaintiff from

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████. *Id.* at 9-10. Courts, moreover, have found that confidentiality concerns should not preclude discovery, and have sanctioned parties for such baseless and obstructive objections during depositions. *See, e.g., Solidda Grp., S.A. v. Sharp Elecs. Corp.*, 2013 WL 12091057, at *2-3 (S.D. Fla. Mar. 19, 2023) (holding intent to keep consulting agreement as "confidential" did not shield the document, nor the facts within it, from discovery); *Blount v. Stanley Eng'g Fastening*, 2020 WL 5038522, at *7-8 (W.D. Ky. Aug. 26, 2020) (awarding sanctions for raising confidential objections that were "without merit").

## B. Defendants' Conduct Has Severely Prejudiced Lead Plaintiff.

The Court should "analyze [] prejudice from an 'ex ante perspective,'" considering how violations "unfairly impair[] the prosecution of [Lead] Plaintiff's case." *Roca*, 2013 WL 12333471, at *3. Here, Defendants' misconduct has severely prejudiced Lead Plaintiff's ability to prosecute the case, delayed the proceedings,

and resulted in unnecessary costs and resources to address discovery disputes.

The Audit Committee materials at the center of the discovery disputes are critical, as the investigation's findings and conclusions are the sole basis for the March and April 2022 disclosures relating to "tone at the top" at the heart of this case and for which Lead Plaintiff must prove scienter. *See* ECF No. 47, ¶¶ 75, 77-99; ECF No. 62 at 3-4, 6-7. Had Defendants properly disclosed at the start of discovery that Redwire had made multiple presentations to the SEC concerning the investigation, the parties could have promptly met and conferred about production of these materials and the scope of any privilege waiver.  *See supra* at 10-12. The presentations, moreover, identified key witnesses and events, and early production would have aided the drafting of tailored search terms and identifying necessary custodians. *Id.* at 10-11.  Instead, the parties spent months unsuccessfully negotiating a search protocol. Kathrein Decl., ¶¶ 5-20. And rather than review documents and take depositions, Lead Plaintiff has had to focus on briefing the Court on Defendants' discovery obstructions and privilege claims. *See, e.g.,* ECF No. 132.

The current fact discovery deadline has been moved to November 5, 2024, affecting other key dates. *See* ECF No. 158. Even if the Court does not order further production, the new documents produced, as well as Defendants' additions to their privilege logs and amended discovery responses, will all take time for Lead Plaintiff to review, digest and use in depositions yet to be scheduled. Kathrein Decl., ¶¶ 36-

44. These depositions will include named Defendants and persons identified in the documents produced to the SEC so Lead Plaintiff can challenge Defendants' assertion of "lack[]" of "scienter" and "good faith" as their Ninth and Eleventh Affirmative Defenses.  ECF No. 68 at 26-27.

### C.      The Requested Sanctions Are Appropriate and Necessary.

Given the extent and impact of Defendants' misconduct, the requested sanctions are both appropriate and necessary to remedy the prejudice to Lead Plaintiff and deter future violations.

First, Lead Plaintiff seeks to bar Defendants from relying on any witness or documents not presently listed in their FRCP 26(a)(1) disclosures, including those identified in their supplemental production served on June 21, 2024. This sanction is warranted under FRCP 37(c)(1) and FRCP 37(d) and is supported by Eleventh Circuit precedent. *See, e.g., Kona*, 2007 WL 737624, at *3 (barring plaintiff from using evidence wrongfully withheld for over a year where defendant conducted "almost all of its discovery without the knowledge or benefit" of the withheld materials). The Eleventh Circuit even affirmed a lower court ruling excluding untimely disclosed evidence that resulted in dismissal of three of four of the plaintiff's counts without any finding of willfulness or bad faith. *See Browning*, 2024 WL 3200472, at *3-4.

Second, Lead Plaintiff requests an order for the production of all withheld

Audit Committee materials, including ████████████████████ ████████, witness interview notes or memoranda, and any other documents supporting the presentations and conclusions to the SEC. While full production is necessary given Defendants' waiver of privilege through SEC disclosures, compelling production is an appropriate sanction under FRCP 26 and 37 by reason of their conduct. *See, e.g., Williams v. Taser Int'l, Inc.*, 274 F.R.D. 694, 698 (N.D. Ga. 2008) (imposing sanction of waiver of attorney-client privilege and work product protection due to "unjustified delay in providing a meaningful privilege log" that rose to "level of bad faith"); *In re Papst Licensing GMBH & Co. KG Litig.*, 550 F. Supp. 2d 17, 22 (D.D.C. 2008) (finding waiver of privilege as discovery sanction for delay in responding to discovery requests pursuant to court order).

Third, Lead Plaintiff requests the court order any relief the Court deems appropriate to deter Defendants' continued obstruction, including prohibiting Defendants from relying on their "lack" of "scienter" and "good faith" affirmative defenses. *See* Fed. R. Civ. P. 37(c)(1)(c) and 37(d) (the Court may impose any sanction under FRCP 37(b)(2)(A)(i)-(vi), including "prohibiting the disobedient party from supporting or opposing designated claims or defenses"); *see also Adana Investing, Inc. v. Wells Fargo Bank, N.A.,* 2017 WL 3668553, at *4-10 (S.D. Fla. Apr. 10, 2017) (striking affirmative defenses as sanctions for defendants' "failure to timely produce key documents and witnesses"). Lead Plaintiff also requests that the

discovery cut-off be extended sufficiently after production, so counsel can review the documents and take the necessary depositions. *See, e.g., Hyde Park*, 2022 WL 2132652, at \*1 (affirming sanctions to plaintiffs for untimely production of documents, including the ability to conduct limited discovery on new documents after close of fact discovery period).

## V.    CONCLUSION

Lead Plaintiff respectfully requests that the Court grant the requested sanctions for Defendants' improper discovery conduct.

## LOCAL RULE 3.01(G) CERTIFICATION

Undersigned hereby certifies that on July 23, 2024, July 30, 2024, July 31, 2024 and August 13, 2024, Lead Plaintiff's counsel conferred with counsel for Defendants via written correspondence and videoconference regarding the relief requested in this Motion and Defendants' counsel indicated that they do not agree with the relief sought.

Dated: August 23, 2024

Respectfully submitted,

**HAGENS BERMAN SOBOL SHAPIRO LLP**

By: *s/ Reed R. Kathrein*
Reed R. Kathrein (Fla. Bar. No. 262161)
reed@hbsslaw.com
Lucas E. Gilmore (admitted *pro hac vice*)
lucasg@hbsslaw.com

Peter A. Shaeffer (admitted *pro hac vice*)
petersh@hbsslaw.com
455 N. Cityfront Plaza Drive, Suite 2410
Chicago, IL 60611
Telephone: (708) 628-4949
Facsimile:  (708) 628-4950

*Lead Counsel for Lead Plaintiff
Jared Thompson*

- 23 -

715 Hearst Avenue, Suite 300
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile:  (510) 725-3001

Steve W. Berman (admitted *pro hac vice*)
steve@hbsslaw.com
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile:  (206) 623-0594

**THE SCHALL LAW FIRM**
Brian Schall (admitted *pro hac vice*)
brian@schallfirm.com

*Additional Counsel for Lead Plaintiff*

**BUCKNER + MILES**
David M. Buckner (Fla. Bar No. 60550)
david@bucknermiles.com

*Liaison Counsel for Lead Plaintiff*