**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**

| | |
|---|---|
| JED LEMEN, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> REDWIRE CORPORATION f/k/a GENESIS PARK ACQUISITION CORP., PETER CANNITO, and WILLIAM READ, <br><br> Defendants. | Case No. 3:21-cv-01254-TJC-PDB <br><br> <u>CLASS ACTION</u> <br><br> **LEAD PLAINTIFF JARED THOMPSON'S SUR-SUR-REPLY IN SUPPORT OF CLASS CERTIFICATION** |

Defendants incorrectly claim that *MacPhee v. MiMedx Grp., Inc.*, 73 F.4th 1220 (11th Cir. 2023) provides dispositive appellate direction that Lead Plaintiff ("LP") cannot show loss causation, therefore defeating typicality and standing. ECF 170 at 3-4. Defendants argue LP cannot demonstrate loss causation because while he purchased before the corrective November 2021 disclosures, he sold his shares before the final March/April 2022 disclosures – a fact known to Defendants since the start of this litigation. *Id.* But *MacPhee* addressed a 12(b)(6) motion. We are now at class certification, not merits, and Defendants admit loss causation is not to be determined at this stage. ECF 169 at 14 (citing *Amgen Inc.* v. *Conn. Ret. Plans and Trust Funds*, 568 U. S. 455, 475 (2013) (loss causation is common question that need not be adjudicated before a class is certified) and *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 813-15 (2011) (holding no requirement to "prove

- 1 -

loss causation at the certification stage" because "[l]oss causation has no logical connection to the facts necessary to establish the efficient market predicate to the fraud-on-the-market theory")). More important, Defendants provide no economic "evidence" to rebut loss causation. Dr. Roper claims no opinion on loss causation. ECF 161 at 12, ECF 169 at 14.  And while it is not LP's burden on class certification (ECF 161 at 17[1]), Dr. Cain's supplemental declaration ("Cain Decl.") supports loss causation and damages for LP.[2]

Second, *MacPhee* is factually distinguishable. The analysis there, as in *Meyer v. Greene*, 710 F.3d 1189 (11th Cir. 2013), was focused categorical and isolated on the mere announcement of an investigation and lawsuits. *MacPhee*, 73 F. 4th at 1247-48. Additionally, in *MacPhee*, the facts leading up to the investigations were long known to the market over a period of years and the announced additional investigations were merely newly added risk of future corrective action, not indications, later confirmed, of concealed wrongdoing. *Id.* at 1231-34. Here, the November disclosures were not the mere "commencement of an SEC investigation, without more." *Meyer*, 710 F.3d at 1201. Here, the something more includes

---

[1] Citing *Monroe Cty. Emps' Ret. Sys. v. S. Co.*, 332 F.R.D. 370, 399 (N.D. Ga. 2019), *City of Sunrise Gen. Emps. Ret. Plan v. FleetCor Tech., Inc.*, 2019 WL 3449671, at *7 n.2 (N.D. Ga. July 17, 2019) and *Thorpe v. Walter Inv. Mgmt., Corp.*, 2016 WL 4006661, at *16 (S.D. Fla. Mar. 16, 2016).

[2] *See* Supplemental Declaration of Matthew D. Cain, Phd in Support of Lead Plaintiff's Sur-Sur-Reply in Support of Class Certification, attached as Exhibit A to the Declaration of Reed R. Kathrein in support hereof filed herewith.

Redwire's announced receipt of a whistleblower complaint raising "potential accounting issues" in a business subunit, resulting in the voluntary reporting of the matter to the SEC and undertaking of an Audit Committee internal investigation, followed five days later with a revelation that Redwire could not "finalize its financial statements or its assessment of the effectiveness of its" internal controls, with both disclosures causing a significant stock drop. ECF 47 ("AC") ¶¶ 70-73, 106; Cain Decl., ¶¶ 23-24. To the extent similar additional disclosures may have existed in *MacPhee*, they were not considered. Economic literature shows a filing delay frequently acts as a signal of past unrevealed deficient internal controls, as it did here. Cain Decl., ¶¶ 27-33. Further, as required by *Meyer*, these disclosures with something more were "coupled *with a later finding of fraud or wrongdoing.*" 710 F.3d at 1201 at n.13. Redwire's November disclosures were economically and logically connected to the final corrective announcements in March and April as acknowledged by the Defendants. AC ¶¶ 75-81, 107-108; Cain Decl., ¶¶ 25, 27-35.

A holding before merits and at the class certification stage – that the November disclosures (which reveal more than mere investigations) are not partially corrective as a matter of law unless the investor held his inflated stock until the final findings — would also be contrary to the Eleventh Circuit's own precedent. *See Meyer*, 710 F.3d at 1201 n.13 (stating that an investigation could be a partial corrective disclosure if the "investigation is coupled with a later finding of fraud or

wrongdoing"). A disclosure need not precisely mirror an earlier misrepresentation, but instead must relate to the misrepresentation and not other negative information about the company. *Id.* at 1197. Furthermore, a corrective disclosure can come from any source, and can take any form from which the market would absorb the information and accordingly react. *FindWhat Inv. Grp. v. FindWhat.com*, 658 F.3d 1282, 1312, 1315 (11th Cir. 2011).[3] Here, there is no dispute that the initial disclosures are coupled with the latter finding of fraud or wrongdoing, and collectively indicated Defendants' prior statements were false or misleading. AC ¶¶ 75-81, 107-108; Cain Decl at ¶¶ 25, 27-35.[4]

Finally, Defendants also incorrectly cite *MacPhee* to argue LP lacks standing. ECF 170 at 4. But *MacPhee* rejected that argument. 73 F. 4th at 1239-40. And LP submits his claims are typical of the class as, per *Meyer,* LP needs to prove, for his claim as well as for all other class members, that the March/April statements disclosed the relevant truth. Further, for those who held over the March/April statements, LP has every incentive to prove the November statements were

---

[3] *FindWhat* is consistent in holding that the plaintiff must have held shares after a corrective disclosure. *Id.* at 1315. But in *FindWhat*, there was only one alleged disclosure, so, of course, a purchaser who did not hold their stock through the only corrective disclosure would have no damages. *Id.* at 1313.

[4] *Compare In re Flowers Foods, Inc. Sec. Litig.*, 2018 WL 1558558, at *18-20 (M.D. Ga. Mar. 23, 2018) (citing *Meyer* and finding commencement of a DOL investigation sufficient for loss causation along with latter disclosures reasonably indicating wrongdoing); *In re Equifax Inc. Sec. Litig.*, 357 F. Supp. 3d 1189, 1250 (N.D. Ga. 2019) (finding data breach along with subsequent revelations detailing cybersecurity problems revealed the truth).

additional corrective disclosures or leakage causing additional damages. *See Thorpe,* 2016 WL 4006661, at \*10 (certifying class and holding that plaintiffs' divestiture after first alleged partial corrective disclosure but before the final second corrective disclosure did not render them inadequate or atypical). Thus, LP's claims are not in conflict with and are typical to those of the class. Nevertheless, to protect the class from undue prejudice, LP is moving contemporaneously for leave to amend the complaint to add an additional representative plaintiff under Rule 15(a)(2) or 23(d)(B(iii).

Dated: September 4, 2024

Respectfully submitted,

**HAGENS BERMAN SOBOL SHAPIRO LLP**

By: *s/ Reed R. Kathrein*
Reed R. Kathrein (Fla. Bar. No. 262161)
reed@hbsslaw.com
Lucas E. Gilmore (admitted *pro hac vice*)
lucasg@hbsslaw.com
715 Hearst Avenue, Suite 300
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile:  (510) 725-3001

Steve W. Berman (admitted *pro hac vice*)
steve@hbsslaw.com
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile:  (206) 623-0594

Peter A. Shaeffer (admitted *pro hac vice*)
petersh@hbsslaw.com
455 N. Cityfront Plaza Drive, Suite 2410
Chicago, IL 60611
Telephone: (708) 628-4949
Facsimile:  (708) 628-4950

*Lead Counsel for Lead Plaintiff*
*Jared Thompson*

**THE SCHALL LAW FIRM**
Brian Schall (admitted *pro hac vice*)
brian@schallfirm.com

*Additional Counsel for Lead Plaintiff*

**BUCKNER + MILES**
David M. Buckner (Fla. Bar No. 60550)
david@bucknermiles.com
*Liaison Counsel for Lead Plaintiff*