# EXHIBIT A

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| JED LEMEN, Individually and On Behalf of All Others Similarly Situated,<br><br>                                 Plaintiff,<br><br>      v.<br><br>REDWIRE CORPORATION f/k/a GENESIS PARK ACQUISITION CORP., PETER CANNITO, and WILLIAM READ,<br><br>                               Defendants. | Case No.  3:21-cv-01254-TJC-PDB<br><br>CLASS ACTION |

SUPPLEMENTAL DECLARATION OF MATTHEW D. CAIN, PHD IN SUPPORT OF LEAD PLAINTIFF'S SUR-SUR-REPLY IN SUPPORT OF CLASS CERTIFICATION

September 4, 2024

**Table of Contents**

1.   Introduction ..................................................................................................................... 1

2.   Summary of Opinions ...................................................................................................... 2

3.   Overview of Plaintiff's Allegations ................................................................................ 3

   3.1  Alleged Misrepresentations ..................................................................................... 3
   3.2  Alleged Corrective Disclosures ............................................................................... 5

4.   The November 10, 2021 and November 15, 2021 Disclosures Partially Corrected the

Alleged Misrepresentation .................................................................................................... 8

   4.1  Economic and Valuation Principals ......................................................................... 9
   4.2  The November 10, 2021 and November 15, 2021 Disclosures are Linked to the Alleged
   Final Corrective Disclosures ................................................................................... 10

Appendix A ........................................................................................................................ 14

Appendix B ........................................................................................................................ 21

## 1. INTRODUCTION

1. I have previously filed two expert reports in this matter (collectively, my "Prior Reports").[1] In connection with Lead Plaintiff's Motion for Class Certification,[2] on January 19, 2024, I submitted an expert report on market efficiency in this matter (my "Efficiency Report"), in which I concluded that:

   a) the market for shares of Redwire's Common Stock was efficient throughout the course of the Class Period,[3,4]

   b) the markets for Redwire's Options and Warrants were efficient throughout the course of the Class Period,[5] and

   c) Common Stock, Warrants and Options damages in this matter can be calculated on a class-wide basis subject to a common methodology.[6]

2. On July 2, 2024, I submitted an additional expert report in this matter (my "Efficiency Rebuttal Report") in response to the April 24, 2024 Expert Report of Dr. Andrew H. Roper ("Roper Report"), Defendants' Opposition to Class Certification ("Def's Opp Brief")[7] and the May 8, 2024 Defendants' Daubert Motion ("Def's Daubert Motion").[8] In my Efficiency Rebuttal Report, I concluded that none of Dr. Roper's, Def's Opp Brief's or Def's Daubert Motion's criticisms disturb my Efficiency Report conclusions.[9] In addition, I concluded that the alleged misrepresentations had price impact because my event study demonstrates that each of the

---

[1] Unless otherwise noted, capitalized terms in this report have the same meaning as in my Prior Reports, all emphasis in this report is added, and all times cited in this report are in Eastern Time.

[2] I understand Lead Plaintiff to be Jared Thompson. *See*, First Amended Complaint for Violations of the Federal Securities Laws, *Lemen v. Redwire Corporation,* No. 3:21-cv-01254-TJC-PDB (Doc. 47) ("Complaint").

[3] I understand that Lead Plaintiff is seeking to certify a Class Period of from March 25, 2021 to March 31, 2022, inclusive. Complaint p.1.

[4] Efficiency Report ¶¶3, 147.

[5] *Id.*

[6] *Id.*

[7] Defendants' Response in Opposition to Lead Plaintiff's Motion for Class Certification, Apr. 24, 2024 (Doc. 129).

[8] Defendants' Daubert Motion to Exclude the Expert Opinions of Matthew D. Cain, May 8, 2024 (Doc. 136).

[9] Efficiency Rebuttal Report ¶13.

alleged corrective disclosures was followed by a statistically significant stock price decline, and I find that the alleged corrective disclosures are economically linked to the alleged misrepresentations.[10] Nothing I have reviewed or analyzed in forming the opinions expressed in this report has caused me to change any of the opinions expressed in my Prior Reports and I continue to hold those opinions.

3. Lead Plaintiff, through his attorneys Hagens Berman Sobol Shapiro LLP, the Schall Law Firm, and Buckner + Miles ("Lead Plaintiff's Counsel", or "Counsel"), has asked me to review the Complaint and opine on whether the disclosures on November 10, 2021, and November 15, 2021 alleged in the Complaint were partially corrective of the alleged misrepresentations and would generate damages and loss causation for any Class members who sold stock after these partial corrective disclosures but prior to the final corrective disclosures, assuming Plaintiffs are able to prove their case.

4. My qualifications and rate of compensation for work in this matter are identified in my Efficiency Report, and I attach an updated version of my curriculum vitae as **Appendix A**. I reserve the right to amend this report to reflect new information that becomes available to me in light of the discovery process or future rulings from the Court.

5. In formulating my opinions set forth in this Report, I have relied upon the analyses already described in my Efficiency Report and Efficiency Rebuttal Report, as well as my knowledge, professional experience, and formal training in economics, finance, and statistics, in addition to the allegations and facts in this matter. All of the materials I considered in forming my opinions are identified in **Appendix B** to this report in addition to **Appendix B** in both my Efficiency Report and Efficiency Rebuttal Report.

## 2.   SUMMARY OF OPINIONS

6. Based on my analysis to date and the evaluation of the economic impact of the corrective disclosure dates alleged in the Complaint, I have formed the following opinions:

7. **Opinion 1**: The alleged partial corrective disclosures of the relevant truth on November 10,

---

[10] Efficiency Rebuttal Report ¶¶73-78.

2021 and November 15, 2021 are economically connected to the final alleged corrective disclosures on March 31 and April 1, 2022.

8.  **Opinion 2**: The alleged partial corrective disclosures on November 10, 2021 and November 15, 2021 partially corrected Redwire's alleged misrepresentations.

9.  **Opinion 3**: The timeline of the alleged corrective disclosures and the resulting abnormal stock drops are consistent with academic research and economic principles which document that material weaknesses in internal controls are typically revealed over time and often include disclosures of investigations and/or inability to file financial statements on a timely basis, as was the case in this matter.

10. **Opinion 4**: The November 10 and 15, 2021 alleged corrective disclosures would thus generate damages and loss causation for any Class members who sold stock after these partial corrective disclosures but prior to the final corrective disclosure, assuming Plaintiffs are able to prove their case.

11. The remainder of my report is organized as follows: **Section 3** describes the case background and outlines the alleged misrepresentations and alleged corrective disclosures. **Section 4** presents my analysis of the information imparted to the market on November 10, and November 15, 2021, how the timing of the information released mirrors what academic research shows is typical, and how this information is both factually connected to the final corrective disclosures on March 31, and April 1, 2022, as well as partially corrective of the alleged misrepresentations.

## 3.  OVERVIEW OF PLAINTIFF'S ALLEGATIONS

### 3.1  Alleged Misrepresentations

12. The Complaint alleges that throughout the Class Period, Defendants made misstatements and omissions about Redwire's senior management and their purported commitment to being honest and principled with respect to the Company's internal controls over its accounting, financial reporting, and ethics.

13. Specifically, the Complaint alleges that Redwire, and its respective officers and directors,

concealed material deficiencies in its internal controls over its financial disclosures, emanating from a deficient "tone at the top," including that certain members of the senior management team at the Company had failed to enforce internal policies related to accounting practices and internal communications.[11] The alleged misrepresentations can be categorized as follows: a) statements related to Defendants' ability to manage the Company prior to the de-SPAC merger; and b) statements related to Defendants' commitment to promoting ethical standards established by the Company.

14. Prior to the de-SPAC merger, GPAC released multiple statements touting the experience of the Redwire management team as "best-in-class private and public management."[12] For example, Defendants cited the "proven management team['s]" "30+ years of experience in operational finance" in the Company's March 25, 2021, press release and presentation identifying Legacy Redwire as the SPAC's target company.[13]

15. Defendants reiterated similar claims when discussing Legacy Redwire with investors. In its July 9, 2021 Analyst Day presentation, Defendants emphasized the "world-class team of executives" assembled at Redwire.[14] Similarly, in an August 12, 2021 interview, GPAC CEO Jonathan Bailiff mentioned that the assembled team included "10 executives with deep experience."[15]

16. Defendants also produced filings to the SEC which repeated the alleged misstatements during the Class Period. For example, when filing a Form S-4 Draft Registration Statement on May 12, 2021, the Company emphasized its "experienced and proven management team."[16]

17. Defendants also made multiple allegedly misleading claims in the lead up to the business combination regarding the ethical standards to which the Company's reporting was being held. For example, in its Form 10-K filed with the SEC on March 29, 2021, the Company adopted

---

[11] Complaint ¶ 25.

[12] Complaint ¶ 48.

[13] Complaint ¶¶ 46-48.

[14] Complaint ¶ 58.

[15] Complaint ¶ 61.

[16] Complaint ¶ 50.

an ethics code which "promote[d] honest and ethical conduct…full, fair, accurate, timely, and understandable disclosure in reports and documents that the Company [filed] with the [SEC]…[and] compliance with the applicable governmental laws, rules, and regulations."[17]

18. On September 2, 2021, the Company published an updated version of this code of ethics following the successful business combination vote. In this updated code of ethics, Redwire reiterated its commitment to "honest and ethical conduct" and that the Company was "dedicated to conducting business with efficiency, fairness and integrity and encourage[d] behavior that [would] maintain the public's confidence and trust in its operations."[18]

19. Despite the years of experience lauded by GPAC and Legacy Redwire during the Class Period, as well as the self-imposed ethical code laid out in its SEC filings, the Company allegedly failed to adhere to proper "tone at the top" as some members of the management team did not enforce proper internal controls. Therefore, the Company was allegedly unable to maintain proper disclosure of internal control failures and, as a result of these alleged failures, the Company's Auditing Committee was forced to conduct an internal investigation while the Company itself was unable to file its first SEC quarterly report to provide updates to investors regarding its financials.[19]

### 3.2    Alleged Corrective Disclosures

20. The Complaint alleges that the relevant truth was revealed on (at least) November 10, 2021, November 15, 2021, March 31, 2022 and April 1, 2022. On March 31, 2022, after market hours, Redwire disclosed that the Audit Committee investigation "confirmed the existence of previously identified internal control deficiencies as well as identified certain additional internal control deficiencies" and that "certain members of senior management failed to reinforce the need for compliance with certain of the Company's accounting and finance

---

[17] Complaint ¶ 49.

[18] Complaint ¶ 64.

[19] Complaint ¶ 25.

policies and procedures, including reinforcement of appropriate communication."[20,21] On April 1, 2022, when Redwire filed its Quarterly Report for the quarterly period ending September 30, 2021, it stated that one of the material weaknesses in internal control over financial reporting was that "we did not maintain an effective control environment, as certain members of senior management failed to consistently message and set certain aspects of an appropriate tone at the top."[22,23]

21. The Complaint alleges that the relevant truth about Redwire's deficiencies partially emerged on November 10, 2021, when Redwire announced that it would postpone the release of its third quarter earnings results due to a notification from an employee about "potential accounting issues at a business subunit," that its Audit Committee had opened an internal investigation, and that the Company had voluntarily reported the matter to the SEC.[24]

22. The Complaint alleges that the relevant truth was further partially revealed on November 15, 2021, when Redwire confirmed that it could not file its quarterly report for the period ended September 30, 2021—its first quarter as an operating company— in a timely manner, stating that "[g]iven the timing of the notification, the Company [had] not been able to finalize its financial statements or its assessment of the effectiveness of its disclosure controls and procedures and any impact."[25]

23. To summarize,

a) The November 10, 2021 disclosure allegedly *revealed* to investors that Redwire had

---

[20] Complaint ¶ 19.

[21] *See* Redwire Corporation Reports Full Fiscal Year 2021 Financial Results on Form 8-K and press release dated March 31, 2022, available at:
https://www.sec.gov/Archives/edgar/data/0001819810/000181981022000014/exhibit991redwire12312021e.htm
.

[22] Complaint ¶ 21.

[23] *See* Redwire Corp. 10-Q dated April 1, 2022, available at:
https://www.sec.gov/ix?doc=/Archives/edgar/data/0001819810/000181981022000021/rdw-20210930.htm.

[24] *See* Redwire, Press Release, November 10, 2021, available at: https://ir.redwirespace.com/news-events/press-releases/detail/34/redwire-corporation-announces-updates-on-q3-2021-earnings.

[25] *See* Redwire Notification of Late Filing on Form 12b-25 dated November 15, 2021, available at: https://www.sec.gov/Archives/edgar/data/1819810/000162828021023269/nt10-qredwirecorporation.htm.

"potential accounting issues at a business subunit" and thus the Company would potentially be late in filing its third quarter 2021 results due to an Audit Committee investigation launched from the internal notification of these issues. On this news, Redwire's stock price fell $1.92, or 16%, from $11.91 per share at the close of trading on November 9, 2021, to close at $9.99 per share on November 10, 2021, on unusually heavy trading volume.[26]

b) The November 15, 2021 disclosure *confirmed* to investors that Redwire would be unable to file its third quarter results, due to the "timing of the notification", i.e., due to the commencement of the independent internal investigation launched by the Audit Committee following the notification of allegations of potential accounting issues. On this news, Redwire's stock price fell another $0.93, or 8.3%, over two consecutive trading sessions from $11.25 per share on November 12, 2021 to close at $10.32 per share on November 16, 2021, on unusually heavy trading volume.[27]

c) Finally, on March 31, 2022, and April 1, 2022, Redwire announced the Audit Committee had "confirmed the existence of previously identified internal control deficiencies as well as identified certain additional internal control deficiencies." Specifically, it found "certain members of senior management failed to reinforce the need for compliance with certain of the Company's accounting and finance policies and procedures, including reinforcement of appropriate communication." This finding resulted in Redwire reporting "an additional material weakness with respect to its control environment in its Quarterly Report on Form 10-Q and Annual Report on Form 10-K."[28] On this news, Redwire's stock price fell $2.43, or 29%, from a close of $8.48 per share on March 31, 2022 to a close of $6.05 per share on April 1, 2022.[29]

---

[26] Complaint ¶¶ 15-16, 70-71. I also observe that the price of Redwire fell $1.03, or 8.65%, from $11.91 per share at the close of trading on November 9, 2021 to $10.88 per share at the close of trading on November 11, 2021.

[27] Complaint ¶¶ 17-18, 72-73.

[28] *See* Redwire Corporation Reports Full Fiscal Year 2021 Financial Results on Form 8-K and press release dated March 31, 2022, available at: https://www.sec.gov/Archives/edgar/data/0001819810/000181981022000014/exhibit991redwire12312021e.htm .

[29] Complaint ¶¶ 19-20, 75-76.

### 4. THE NOVEMBER 10, 2021 AND NOVEMBER 15, 2021 DISCLOSURES PARTIALLY CORRECTED THE ALLEGED MISREPRESENTATION

24. As discussed in **Section 3** above, it is clear that the alleged November 10 and 15, 2021 disclosures extend well beyond the mere indication or announcement of an investigation, as they involved the disclosure of: [30]

   a. A whistleblower's complaint concerning potential issues with Redwire's accounting practices, which was deemed significant enough to prompt its public disclosure and an investigation by the internal Audit Committee.

   b. Issues under investigation by the internal Audit Committee that were considered serious enough for Redwire to self-report to the SEC.

   c. Redwire filing an NT-10Q in form 12b-25, stating that due to the ongoing investigation, "the Company [had] not been able to finalize its financial statements or its assessment of the effectiveness of its disclosure controls and procedures and any impact" on the report.[31]

25. If Lead Plaintiff successfully proves that the alleged disclosures on March 31, 2022 and April 1, 2022 are corrective of the misstatements described in **Section 3.1**, it logically follows that the alleged partial disclosures on November 10, and November 15, 2021 are also corrective. This is because these partial disclosures provided initial context and explanation related to the internal investigation, which directly led to the disclosures of the improper "tone at the top" and deficient internal controls revealed on March 31, and April 1, 2022.[32] Moreover, as noted above in **Section 3.2**, the final alleged corrective disclosures referenced the previously

---

[30] I note that Defendants' Sur-Reply to Lead Plaintiff's Reply in Support of the Motion for Class Certification ("Def's Sur-Reply") asserts that "[t]he November Statements' vague disclosure of the investigation and delay of filings do not address or otherwise 'evidence' anything regarding management, remediation, and internal controls," citing Meyer, 710 F.3d at 1201 ("The announcement of an investigation reveals just that—an investigation—and nothing more"). This characterization clearly does not align with the actual information disclosed in the November 10 and November 15, 2021 statements.

[31] *See* Redwire Notification of Late Filing on Form 12b-25 dated November 15, 2021, available at: https://www.sec.gov/Archives/edgar/data/1819810/000162828021023269/nt10-qredwirecorporation.htm.

[32] *See* Redwire Corp. 10-Q dated April 1, 2022, available at: https://www.sec.gov/ix?doc=/Archives/edgar/data/0001819810/000181981022000021/rdw-20210930.htm

disclosed Audit Committee investigation[33] further reinforcing the conclusions that the earlier alleged corrective disclosures a) were connected to the final alleged corrective disclosures, and b) provided relevant corrective information to investors regarding the Company's internal control deficiencies.

26. As discussed below, each of these alleged partial disclosures provided compelling reasons for investors to reassess the Company's value because tone at the top and internal control issues have a substantial impact on a company's valuation.

## 4.1    Economic and Valuation Principals

27. Academic research and economic theory suggest that internal control issues can significantly impact firm value. This is because the information contained in the internal control weakness disclosures is informative and is used by investors to reevaluate their expectations about firm value.[34]

28. It logically follows that late filings associated with potential internal control issues related to financial reporting can significantly impact firm value. This is also supported and well documented by academic research which shows firms exhibiting material weaknesses experience negative price returns around late filing notifications.[35]

29. In this matter, moreover, the late filing and investigation announcements disclosed during the

---

[33] *See* Redwire Corporation Reports Full Fiscal Year 2021 Financial Results on Form 8-K and press release dated March 31, 2022, available at: https://www.sec.gov/Archives/edgar/data/0001819810/000181981022000014/exhibit991redwire12312021e.htm.

[34] *See*, Hammersley, J. S., Myers, L. A., & Shakespeare, C. (2008). Market reactions to the disclosure of internal control weaknesses and to the characteristics of those weaknesses under section 302 of the Sarbanes Oxley Act of 2002. *Review of Accounting Studies*, *13*, 141-165 at 144. *Id.* ("investors appear to be concerned about the presence of any weaknesses that may impact the financial statement auditor's ability to conduct a successful audit"). *See also,* Li, Y., Yu, J., Zhang, Z., & Zheng, S. X. (2016). The effect of internal control weakness on firm valuation: Evidence from SOX Section 404 disclosures. *Finance Research Letters*, *17*, 17-24 ("firms reporting ICW [internal control weakness] under Section 404 of Sarbanes-Oxley Act have 13% lower valuation than non-ICW firms").

[35] *See*, Impink, J., Lubberink, M., Van Praag, B., & Veenman, D. (2012). Did accelerated filing requirements and SOX Section 404 affect the timeliness of 10-K filings?. *Review of Accounting Studies*, *17*, 227-253 ("While late filers should notify the SEC and provide an explanation for filing late on Form 12b-25, we show that an explanation triggers negative abnormal returns (-1.35%) when it pertains to material internal control weaknesses. Additional tests show that market reactions to Form 12b-25 filings are more negative for firms subsequently disclosing material weaknesses in the 10-K and that market reactions to 10-K filings").

alleged partial disclosures were accompanied by self-reporting to the SEC and an internal whistleblower complaint, with Redwire stating that it was unable to assess "the effectiveness of its disclosure controls and procedures."[36]

### 4.2    The November 10, 2021 and November 15, 2021 Disclosures are Linked to the Alleged Final Corrective Disclosures

30. The alleged partial disclosures on November 10 and November 15, 2021, stemmed from the whistleblower complaint and investigation announcement, which are economically connected to the final alleged corrective disclosures. This connection was also acknowledged by the Defendant in Redwire's March 31 and April 1, 2022 disclosures.

> The *previously disclosed* results of the Audit Committee investigation into potential accounting issues at a business subunit […] confirmed the existence of previously identified internal control deficiencies as well as identified certain additional internal control deficiencies. *Consequently*, the Company expects to report an additional material weakness with respect to its control environment in its Quarterly Report on Form 10-Q.
>
> As *previously disclosed*, the Company self-reported this matter to the SEC on November 8, 2021 and intends to continue to cooperate with any requests from the SEC.[37]

31.  Academic research indicates that a filing delay frequently acts as an initial signal to investors of deficient internal controls at a company.[38] The timeline of the alleged corrective disclosures and resulting abnormal stock drops is also consistent with academic research which establishes that disclosures of material weaknesses lead to downward revisions of firm value *before* the investigation conclusion on internal control effectiveness is reached.[39] For example, one academic study (Impink, et al.) documented the following findings:

---

[36] *See*, Redwire Notification of Late Filing on Form 12b-25 dated November 15, 2021, available at: https://www.sec.gov/Archives/edgar/data/1819810/000162828021023269/nt10-qredwirecorporation.htm.

[37] *See*, https://ir.redwirespace.com/news-events/press-releases/detail/47/redwire-corporation-reports-full-fiscal-year-2021-financial.

[38] *See,* Impink, J., Lubberink, M., Van Praag, B., & Veenman, D. (2012). Did accelerated filing requirements and SOX Section 404 affect the timeliness of 10-K filings? *Review of Accounting Studies*, *17*, 227-253.

[39] *Id.* at 246 ("given the association between material weaknesses and late filing, the evidence suggests that material weakness disclosures are associated with downward belief revisions about firm value prior to the 10-K report on internal control effectiveness").

- "[M]any Section 404 material weakness firms experience negative abnormal returns around late filing notifications before filing the 10-K."[40]

- "While late filers should notify the SEC and provide an explanation for filing late on Form 12b-25, we show that an explanation triggers negative abnormal returns (-1.35%) when it pertains to material internal control weaknesses. Additional tests show that market reactions to Form 12b-25 filings are more negative for firms subsequently disclosing material weaknesses in the 10-K and that market reactions to 10-K filings for material weakness firms are significantly less negative when preempted by a Form 12b-25. Section 404 material weaknesses thus trigger negative stock market reactions."[41]

32. Another academic study (Hammersley, et al.) similarly concluded that internal control weaknesses are important to investors:

- "Overall, these results reveal that some of the information contained in the internal control weakness disclosures is informative and is used by investors to revise their average expectations about firm value… investors appear to be concerned about the presence of any weaknesses that may impact the financial statement auditor's ability to conduct a successful audit."[42]

33. The fact that Redwire's initial announcement related to a whistleblower complaint served to notify investors that the filing delay was the result of potential internal control issues. Therefore, the alleged November 10 and 15, 2021 disclosures, along with the March 31 and April 1, 2022 disclosures, collectively reflect the price impact of the alleged misrepresentations.[43] The combined effect of these alleged disclosures would thus be expected to amount to

---

[40] *Id*. at 227.

[41] *Id*. at 228-9.

[42] Hammersley, J. S., Myers, L. A., & Shakespeare, C. (2008). Market reactions to the disclosure of internal control weaknesses and to the characteristics of those weaknesses under section 302 of the Sarbanes Oxley Act of 2002. *Review of Accounting Studies*, *13*, 141-165.

[43] As noted above, my opinions are based on Plaintiffs proving the allegations contained within the Complaint. Any future assessments of loss causation may consider additional elements of the relevant information environment before and during the Class Period.

approximately the same impact as announcing the investigation and its findings simultaneously.

34. To further illustrate this, consider the following two hypothetical scenarios:

    a.  Under Scenario 1, a company conducts an internal investigation and only has one corrective disclosure announcing the findings of material weaknesses in internal controls. In response to this disclosure, the stock drops from $100 to $90, leading investors who held over this single disclosure to incur $10 in damages.

    b.  Under Scenario 2, a company announces the need to investigate internal claims of financial issues. In response to this news, the stock drops $5. Several months later, the company in question announces that the investigation revealed material weaknesses in internal controls at that company, and in response, the stock drops another $5.

35. In an efficient market, investors have already priced in some of the impact of the hypothetical company's internal control weaknesses in Scenario 2 by the time the results of the internal investigation are revealed. Claiming that total damages to investors who held the company's stock over all relevant disclosures are different under the two scenarios would contradict basic principles of economics. Thus, an investor who sold after the initial disclosure in Scenario 2 would still incur $5 of damages. It follows that in this hypothetical scenario, the initial disclosure would generate damages and loss causation for any Class members who sold stock after this partial corrective disclosure but prior to the final corrective disclosure. Hypothetical Scenario 2 shares similarities to the case of Redwire, in which a whistleblower complaint alerted investors to internal accounting issues and the need for an internal investigation, later leading to the confirmation and disclosure of internal control weaknesses at the Company. As a result, the Redwire disclosures on November 10, 2021, and November 15, 2021 alleged in the Complaint were partially corrective of the alleged misrepresentations and would generate damages and loss causation for any Class members who sold stock after these partial corrective disclosures but prior to the final corrective disclosure, assuming Plaintiffs are able to prove their case.

I declare under penalty of perjury that the foregoing is true and correct.

RESPECTFULLY SUBMITTED

Matthew D. Cain, Ph.D.

13

**APPENDIX A**

## Matthew D. Cain, Ph.D.                                September 2024

E-mail: mdcain@outlook.com
Mobile: 574-485-8065

### Education

Ph.D., Finance, August 2007                    Purdue University, West Lafayette, IN
B.S., Finance, May 2001                        Grove City College, Grove City, PA

### Professional and Academic Experience

*Senior Fellow*, New York University School of Law, 2024-Present

*Senior Fellow*, Berkeley Center for Law and Business, 2019-2024

*Visiting Scholar*, Vanderbilt Law School, 2021-2022

*Senior Visiting Scholar*, Berkeley Law School, University of California, 2019-2021

*Visiting Research Fellow*, Harvard Law School Program on Corporate Governance, 2018-2019

*Advisor to Commissioner Robert J. Jackson, Jr.*, U.S. Securities and Exchange Commission, 2018

*Economic Fellow / Financial Economist*, Office of Litigation Economics, Division of Economic and Risk Analysis, U.S. Securities and Exchange Commission, 2014-2018

*Assistant Professor of Finance*, Mendoza College of Business, University of Notre Dame, Notre Dame, IN, 2008-2014

*Visiting Faculty*, Krannert School of Management, Purdue University, West Lafayette, IN, 2007-2008

*Analyst*, Debt Capital Markets, National City Bank, Cleveland, OH, 2001-2003

### Publications

Does Voluntary Financial Disclosure Matter? The Case of Fairness Opinions in M&A (with Adam B. Badawi and Steven Davidoff Solomon), *Journal of Law and Economics* 66, 535-555 (2023).

Retail Shareholder Participation in the Proxy Process: Monitoring, Engagement and Voting (with Alon Brav and Jonathon Zytnick), *Journal of Financial Economics* 144, 492-522 (2022).

Does *Revlon* Matter? An Empirical and Theoretical Study (with Sean J. Griffith, Robert J. Jackson, Jr., and Steven Davidoff Solomon), *California Law Review* 108, 1683-1731 (2020).

Intermediation in Private Equity: The Role of Placement Agents (with Stephen B. McKeon and Steven Davidoff Solomon), *Journal of Financial and Quantitative Analysis* 55, 1095-1116 (2020).

Mootness Fees (with Jill E. Fisch, Steven Davidoff Solomon, and Randall S. Thomas), *Vanderbilt Law Review* 72, 1777-1816 (2019).

The Myth of Morrison: Securities Fraud Litigation Against Foreign Issuers (with Robert Bartlett, Jill E. Fisch, and Steven Davidoff Solomon), *The Business Lawyer* 74, 967-1013 (2019).

The Shifting Tides of Merger Litigation (with Jill E. Fisch, Steven Davidoff Solomon, and Randall S. Thomas), *Vanderbilt Law Review* 71, 603-640 (2018).

Do Takeover Laws Matter? Evidence from Five Decades of Hostile Takeovers (with Stephen B. McKeon and Steven Davidoff Solomon), *Journal of Financial Economics* 124, 464-485 (2017).

CEO Personal Risk-Taking and Corporate Policies (with Stephen B. McKeon), *Journal of Financial and Quantitative Analysis* 51, 139-164 (2016).

How Corporate Governance Is Made: The Case of the Golden Leash (with Jill E. Fisch, Sean J. Griffith, and Steven Davidoff Solomon), *University of Pennsylvania Law Review* 164, 649-702 (2016).

A Great Game: The Dynamics of State Competition and Litigation (with Steven Davidoff Solomon), *Iowa Law Review* 100, 465-500 (2015).

Broken Promises: Private Equity Bidding Behavior and the Value of Reputation (with Antonio J. Macias and Steven Davidoff Solomon), *Journal of Corporation Law* 40, 565-598 (2015).

Information Production by Investment Banks: Evidence from Fairness Opinions (with David J. Denis), *Journal of Law and Economics* 56, 245-280 (2013).

Delaware's Competitive Reach (with Steven Davidoff Solomon), *Journal of Empirical Legal Studies* 9, 92-128 (2012).

Form Over Substance? Management Buy-outs and the Value of Corporate Process (with Steven Davidoff Solomon), *Delaware Journal of Corporate Law* 36, 1-54 (2011).

Earnouts: A Study of Financial Contracting in Acquisition Agreements (with David J. Denis and Diane K. Denis), *Journal of Accounting and Economics* 51, 151-170 (2011).

**Presentations**

- All Indiana Conference
- American Bar Association, Business Law, Private Equity M&A Subcommittee meeting
- American Finance Association, annual meetings
- American Law and Economics Association, Stanford Law School
- American Law and Economics Association, University of Chicago
- Argentum Centre for Private Equity Symposium, Bergen, Norway
- Argentum Conference and Symposium on "Private Equity: The Road Ahead," Stockholm, Sweden
- Arizona State University College of Law

15

- Berkeley Center for Law and Business
- The Brattle Group
- Conference on Empirical Legal Studies, Yale Law School
- Cornell University, finance class guest lectures
- Cornerstone Research
- Financial Management Association, annual meeting
- George Washington University Law School
- Indiana University
- Institute for Law and Economics, University of Pennsylvania
- Ohio State
- Ohio University
- Oxera, London
- Penn State
- Peregrine Economics
- Purdue Alumni Conference
- Purdue University
- U.C. Berkeley M&A Roundtable, New York
- U.C. Berkeley School of Law
- U.S. Securities and Exchange Commission
- University of Arizona
- University of Colorado
- University of Florida
- University of Georgia
- University of Kentucky
- University of North Carolina at Chapel Hill
- University of Notre Dame
- University of Oregon
- University of Pittsburgh
- Vanderbilt University Law School
- Virginia Commonwealth University
- Virginia Tech
- Western Finance Association, annual meeting

**Journal Referee**:  *Review of Financial Studies*, *Journal of Financial and Quantitative Analysis*, *Journal of Corporate Finance*, *Journal of Banking and Finance*, *European Financial Management*, *Journal of Empirical Legal Studies, Financial Management, North American Journal of Economics and Finance, International Review of Law & Economics, Managerial and Decision Economics*, *Annals of Finance, Journal of Economics and Business*

**Teaching Experience**

UC Berkeley School of Law

    LAW 246.31:  Economic Expert Witnesses: Depositions and Testimony, Spring 2022-2024

    LAW 251.52:  Economics of Corporate and Securities Litigation, Fall: 2020-2023

16

University of Notre Dame, Mendoza College of Business

    FIN 70400:  Corporate Restructuring, Mergers & Acquisitions (MBA Elective), Fall: 2008-2013

    FIN 40410:  Mergers and Acquisitions, Fall: 2008-2013

Purdue University, Krannert School of Management

    MGMT 412: Financial Markets and Institutions, Spring: 2006 & 2008

    MGMT 610: Financial Management I (MBA Core), Fall: 2007

### Expert Witness Experience

- *Securities and Exchange Commission v. American Renal Associates Holdings, Inc., et al.*, Case No. 22-cv-10651-NMG (D. Mass.). Report June 2024.

- *Securities and Exchange Commission v. Kevin A. Van de Grift and Gil Friedman*, Case No. 1:23-cv-01491 (S.D. N.Y.). Report June 2024.

- *El Paso Firemen & Policemen's Pension Fund, et al. v. InnovAge Holding Corp., et al.*, Case No. 21-cv-02770-WJM-SKC (D. Co.). Report May 2024.

- *In re Bed Bath & Beyond Corporate Securities Litigation*, Case No. 1:22-cv-02541-TNM (D.D.C.). Report February 2024. Deposition April 2024. Rebuttal Report June 2024. Report July 2024. Hearing August 2024.

- *In the Matter of Joshua Abrahams*, File No. 3-21214, (SEC Admin. Proc.). Rebuttal Report February 2024.

- *In re Emergent Biosolutions Inc. Securities Litigation*, Case No. 8:21-cv-00955-PWG (D. Md.). Report February 2024.

- *In re Upstart Holdings, Inc. Securities Litigation*, Case No. 2:22-cv-02935-ALM-EPD (S.D. Oh.). Report January 2024. Deposition April 2024.

- *Jed Lemen, et al. v. Redwire Corporation, et al*., Case No. 3:21-cv-01254-TJC-PDB (M.D. Fl.). Report January 2024. Deposition March 2024. Rebuttal Report July 2024.

- *In re Exxon Mobil Corp. Securities Litigation*, Case No. 3:21-cv-00194-N (N.D. Tx.). Report January 2024.

- *In re Grand Canyon Education, Inc. Securities Litigation*, Case No. 1:20-cv-00639-MN-CJB (D. Del.). Report January 2024.

- *In re Vaxart, Inc. Securities Litigation*, Case No. 3:20-cv-05949-VC (N.D. Ca.). Report November 2023. Deposition January 2024. Rebuttal Report March 2024. Report July 2024. Deposition August 2024.

- *William C. Theodore, et al. v. PureCycle Technologies, Inc., et al.*, Case No. 6:21-cv-809-PGB-GJK (M.D. Fl.). Report November 2023. Deposition January 2024. Rebuttal Report February 2024.

- *Robert Lematta et al. v. Casper Sleep, Inc., et al.*, Case No. 1:20-cv-02744 (E.D. N.Y.). Report November 2023.

- *In re Turquoise Hill Resources Ltd. Securities Litigation*, Case No. 1:20-cv-8585-LJL (S.D. N.Y.). Report October 2023.

- *Jonnie Homyk, et al. v. ChemoCentryx, Inc. and Thomas J. Schall*, Case No. 4:21-cv-03343 (N.D. Ca.). Report August 2023. Deposition October 2023. Rebuttal Report January 2024.

- *In re Vale S.A. Securities Litigation*, Case No. 19-cv-526-RJD-SJB (E.D. N.Y.). Rebuttal Report April 2023. Deposition September 2023.

- *In re Romeo Power Inc. Securities Litigation*, Case No. 1:21-cv-03362-LGS (S.D. N.Y.). Report March 2023. Deposition April 2023.

- *Luis Torres, et al. v. Berry Corporation, et al.*, Case No. 3:20-cv-3464-S (N.D. Tx.). Report February 2023. Rebuttal Report May 2023.

- *In re Lyft, Inc. Securities Litigation*, Case No. 4:19-cv-02690-HSG (N.D. Ca.). Report February 2023.

- *Thomas S. Swanson, et al. v. Interface, Inc., et al.*, Case No. 1:20-cv-05518-BMC (E.D. N.Y.). Report January 2023.

- *Seafarers Pension Plan, derivatively on behalf of The Boeing Company v. Robert A. Bradway, et al. and The Boeing Company*, Case No. 1:19-cv-08095 (N.D. Ill.). Declaration November 2022.

- *In re: CBL & Associates Properties, Inc. Securities Litigation*, Case No. 1:19-cv-00181-JRG-CHS (E.D. Tenn.). Report August 2022. Deposition October 2022. Rebuttal Report December 2022.

- *Delaware County Employees Retirement System, et al. v. AdaptHealth Corp. f/k/a DFB Healthcare Acquisitions Corp., et al.*, Case No. 2:21-cv-03382-HB (E.D. Pa.). Report July 2022. Deposition February 2023. Rebuttal Report May 2023.

- *In re: QuantumScape Securities Class Action Litigation*, Case No. 3:21-cv-00058-WHO (N.D. Ca.). Report July 2022. Deposition September 2022. Rebuttal Report November 2022. Report March 2024.

- *Bond v. Clover Health Investments, Corp., et al.*, Case No. 3:21-cv-00096 (M.D. Tenn.). Report July 2022. Deposition August 2022.

- *In re: 2U, Inc. Securities Class Action*, Case Nos. 19-3455 and TDC-20-10006 (D. Md.). Report December 2021.

- *Zachary E. Gerut, v. Biospecifics Technologies Corp. and Endo International PLC*, Case No. 01-21-0002-2009 (Amer. Arb. Assoc.). Report December 2021. Arbitration March 2022.

- *In re: Under Armour Securities Litigation*, Case No. RDB-17-388 (D. Md.). Report November 2021. Deposition December 2021. Report April 2023. Rebuttal Report June 2023. Deposition July 2023.

- *Bar Mandalevy, et al. v. BofI Holding, Inc., et al.*, Case No. 17-cv-00667-GPC-KSC (S.D. Ca). Report November 2021.

18

- *Securities and Exchange Commission v. Anatoly Hurgin, et al.*, Case No. 1:19-cv-05705 (S.D. N.Y.). Report November 2021. Deposition December 2021. Declaration February 2022.

- *In re: Oracle Corporation Derivative Litigation*, Case No. 2017-0337-SG (Del. Chancery). Rebuttal Report October 2021. Deposition November 2021. Trial July-August 2022.

- *John Alberici, et al. v. Recro Pharma, Inc., et al.*, Case No. 2:18-cv-02279-MMB (E.D. Pa.). Report September 2021. Deposition October 2021. Report January 2022.

- *Securities and Exchange Commission v. Christopher Clark and William Wright*, Case No. 1:20-cv-01529 (E.D. Va.). Report August 2021. Trial December 2021.

- *Honey Baked Ham Inc. v. Honey Baked Ham Company, LLC and HBH Licensing, LLC*, Case No. 8:19-cv-01528-JVS (DFMx) (C.D. Ca.). Rebuttal Report August 2021.

- *In re: Purdue Pharma L.P., et al., Debtors* (Chapter 11), Case No. 19-23649 (RDD) (U.S. Bankruptcy Court, S.D. N.Y.). Rebuttal Report July 2021. Confirmation Hearing August 2021.

- *Abu Dhabi Investment Authority v. Mylan N.V. and Mylan Inc.*, Case No. 1:20-cv-01342 (S.D. N.Y.). Report May 2021. Deposition August 2021.

- *International Brotherhood of Electrical Workers Local 98 Pension Fund, et al. v. Deloitte & Touche, LLP and Deloitte LLP*, Case No. 3:19-cv-3304 (D. Sc.). Report April 2021. Deposition September 2021. Rebuttal Report March 2024.

- *Securities and Exchange Commission v. James Wallace Nall, III, et al.*, Case No. 2:19-cv-702-TFM-C (S.D. Al.). Report April 2021. Rebuttal Report June 2021. Deposition June 2021.

- *Mark Stoyas, et al., v. Toshiba Corporation*, Case No. 2:15-cv-04194-DDP(JCx) (C.D. Ca.). Report February 2021. Deposition May 2021. Rebuttal Report August 2021.

- *Plymouth County Retirement System, et al. v. Patterson Companies, Inc., et al.*, Case No. 0:18-cv-00871-MJD-HB (D. Mn.). Report January 2021. Deposition March 2021.

- *In re Novo Nordisk Securities Litigation*, Case No. 3:17-cv-00209-BRM-LHG (D. Nj.). Rebuttal Report December 2020. Deposition February 2021.

- *In re Facebook, Inc. Securities Litigation*, Case No. 5:18-cv-01725-EJD (N.D. Ca). Declaration October 2020.

- *In re Qualcomm/Broadcom Merger Securities Litigation*, Case No. 3:18-cv-01208-CAB-AHG (S.D. Ca.). Declaration May 2020.

- *In re Banc of California Securities Litigation*, Case No. 8:17-cv-00118-AG-DFM (C.D. Ca.). Report April 2019.

- *Tharp v. Acacia Communications, Inc.*, Case No. 17-cv-11504 (D. Mass.). Declaration November 2018.

19

- *Securities and Exchange Commission v. Avent*, Case No. 1:16-cv-02459-WMR (N.D. Ga.). Report March 2017. Deposition May 2017. Jury Trial August 2019.

- *In the Matter of Lawrence I. Balter d/b/a Oracle Investment Research*, File No. 3-17614 (SEC Admin. Proc.). Report March 2017.

- *Securities and Exchange Commission v. Huang*, Case No. 2:15-cv-00269-MAK (E.D. Pa.). Report September 2015. Declaration October 2015. Jury Trial January 2016.

- *Securities and Exchange Commission v. Alyasin*, Case No. 4:15-cv-00566 (S.D. Tex.). Declaration March 2015.

## APPENDIX B

**Court Documents:**

- First Amended Consolidated Complaint for Violations of the Federal Securities Laws, No. 3:21-cv-01254-TJC-PDB (Doc. 47).

- Order Denying Defendants' Motion to Dismiss, dated Mar. 22, 2023 (Doc. 62).

- Expert Report of Matthew D. Cain, Ph.D., dated Jan. 19, 2024 (Doc. 86-1).

- Defendants' Response in Opposition to Lead Plaintiff's Motion for Class Certification, dated Apr. 24, 2024 (Doc. 129).

- Expert Report of Andrew H. Roper, Ph.D., dated Apr. 24, 2024 (Doc. 129-5).

- Defendants' Daubert Motion to Exclude The Expert Opinions of Matthew D. Cain, May 8, 2024 (Doc. 136).

- Defendants' Sur-Reply to Lead Plaintiff's Reply in Support of the Motion for Class Certification, dated August 6, 2024 (Doc. 170).

**Academic Literature:**

- Hammersley, J. S., Myers, L. A., & Shakespeare, C. (2008). Market reactions to the disclosure of internal control weaknesses and to the characteristics of those weaknesses under section 302 of the Sarbanes Oxley Act of 2002. *Review of Accounting Studies*, *13*, 141-165.

- Li, Y., Yu, J., Zhang, Z., & Zheng, S. X. (2016). The effect of internal control weakness on firm valuation: Evidence from SOX Section 404 disclosures. *Finance Research Letters*, *17,* 17-24.

- Impink, J., Lubberink, M., Van Praag, B., & Veenman, D. (2012). Did accelerated filing requirements and SOX Section 404 affect the timeliness of 10-K filings?. *Review of Accounting Studies*, *17*, 227-253.

**Data Sources:**

- Bloomberg Terminal
- Factiva News
- CRSP
- SEC Edgar Online
- Redwire Press Releases and SEC Filings

**Other:**

All other data and documents cited or referred to within this report