**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

|  |  |
|---|---|
| JED LEMEN, Individually and on Behalf of All Others Similarly Situated, Plaintiffs, <br><br> v. <br><br> REDWIRE CORPORATION f/k/a GENESIS PARK ACQUISITION CORP., PETER CANNITO, and WILLIAM READ, Defendants. | Case No.: 3:21-CV-1254-TJC-PDB <br><br> <u>CLASS ACTION</u> <br><br> **DEFENDANTS' RESPONSE IN OPPOSITION TO LEAD PLAINTIFF'S MOTION FOR DETERMINATION OF PRIVILEGE AND MOTION TO COMPEL PRODUCTION OF WAIVED PRIVILEGED MATERIALS** |

Defendants oppose Lead Plaintiff Jared Thompson's ("LP") *Motion for Determination of Privilege and Motion to Compel Production of Waived Privileged Materials* (Doc. 176) (the "Motion"). The Motion, replete with procedural errors, is LP's latest strategic maneuver to garner privileged materials rather than diligently prosecute his case through routine discovery.

## I.    BACKGROUND

On May 19, 2023, LP served lengthy requests for production on Defendants ("First RFPs"), to which Defendants responded and objected. Doc. 179-2. In response to Requests as to the attorney[1]-conducted Audit Committee investigation ("AC Investigation"), Defendants, as is their right, objected to production based on privilege, proportionality, and undue burden. *Id.*, pp. 12-

---

[1] Redwire retained King & Spalding, LLP ("KS") to conduct the Investigation with the assistance of KPMG, LLP ("KPMG").

1

16. LP now, in broad brush, seeks an order "compelling Defendants to produce the ███████████████████████████████████████████, witness interview notes or memoranda, and any other material supporting the investigation." ("Investigation Materials"). Mot., p. 6.

Defendants first produced a handful of known, responsive non-privileged documents, and on August 14, 2023, served a preliminary privilege log. Mot., p. 7; Doc. 139-2. The preliminary log included witness interview notes drafted by Defendants' outside counsel Kirkland and Ellis LLP ("KE"). Doc. 179-8, p. 3. Defendants then employed search terms to gather responsive documents, and produced about 1,400 documents. Doc. 139-3, ¶ 5. LP did not object to Defendants' use of search terms, which were promptly disclosed. Doc. 139-2. Defendants also produced further individual and categorical privilege logs that identified 1,963 responsive documents withheld on the basis of privilege. Doc. 133-1, Ex. A; Doc. 179-9. LP notified Defendants that he believed additional search terms were needed. Doc. 139-3, ¶ 6. The parties engaged in a seven-month long negotiation process, but, ultimately LP declined Defendants' offer to review of over 245,000 documents. *Id.*, ¶¶ 3-9, 12.

As part of various conferrals during this time, Defendants have produced amended privilege logs and an amended RFP response. **Composite Ex. 1**.

On June 21, 2024, Defendants voluntarily produced ("June Production") ████████████████████ ("Presentations") (Doc. Nos. 179-13, 179-14) ████████████

████████████████████████████████████████████████████

**Composite Ex. 2**, p. 1.[2] The June Production and a subsequent small August 2024 production also included documents relied upon by the Presentations and all identifiable communications between Redwire's counsel (KS and KE) and ██████ related to the Presentations. *Id*.; **Ex. 3**, pp. 5-6. Defendants maintained that production of the Investigation Materials would be disproportionate and would reveal protected work product. **Ex. 3**, pp. 3-4.

## II.    ARGUMENT

Not only is the Motion procedurally infirm, but LP cannot justify production of all Investigation Materials. Specifically, there was no waiver of privilege as to *all* Investigation Materials, the Court's prior determination that such records are privileged was proper, and LP does not attempt to show that production is proper in the face of Defendants other, non-privilege, objections.

### A.    The Motion is Procedurally Improper

LP yet again failed to adequately confer, continues to attempt to evade page limitations, and improperly seeks reconsideration of this Court's order.

#### 1.    LP Failed to Adequately Confer

LP—once again—did not adequately confer with Defendants before filing this Motion as required by M.D.Fla. LR 3.01(g). Not until LP filed this Motion

---

[2] The June Production also included a simultaneous production of records from PricewaterhouseCoopers, LLC ("PwC").

were Defendants aware of the relief sought and the grounds for such relief.[3]

Just *forty-eight hours* before LP filed the Motion, the Court denied an earlier motion by LP for failure to confer. Doc. 174, pp. 15-16. Rather than heed the Court's instruction, LP immediately violated it. On August 21, 2024, LP's counsel sent an email as to three motions generally referencing prior discussions between counsel. **Ex. 4**, p. 3. Defendants responded that LP failed to identify what specific documents it would seek to compel given that Defendants already produced the documents that counsel's email suggested would be the target of the forthcoming motion. *Id.*, p.1. LP's counsel *never responded*. LP simply filed this and the other discovery motions. There was no "substantive" conferral. The Court should deny the Motion on this basis alone.

2.    LP Improperly Exceeds Pages Permitted for Briefing

LP ignores page limitations. Local Rules provide that a motion must be "in a **single document** no longer than **twenty-five pages** inclusive of all parts." M.D.Fla. LR 3.01(a) (emphasis added). LP awarded himself *double* the permitted pages by filing this and a separate motion seeking the same relief.

The Motion seeks production of the Investigation Materials. Mot., p. 25. A contemporaneously filed motion to compel (Doc. 177) ("Substantial Need Motion") seeks production of the same. Doc. 177, p. 5. The motions thus seek

---

[3] The Court previously directed LP to show cause as to why it should not be sanctioned for failure to comply with LR 3.01(d) in connection with another filing. Doc. No. 112.

the same relief, and are both twenty-five pages long.[4] *See* Mot., Doc. 177.  The motions also rely on a twenty-two-page declaration of counsel (Doc. 179), that provides additional substantive background, thereby gaining yet more pages and also spreading argument between multiple submissions. LP never sought leave to exceed page limits.[5] The Court should deny the Motion on this basis too. *Se. Metals Mfg. Co. v. Fla. Metal Prod., Inc.*, 2011 WL 833260, *1 (M.D. Fla. Mar. 7, 2011) ("[I]f multiple motions are allowed a party could exceed the page limitation by simply filing a separate motion for each issue. Clearly, this tactic is forbidden by the rules of this Court absent prior permission."); *Thomas v. Waste Pro USA, Inc.*, 2019 WL 265182, *2 (M.D. Fla. Jan. 18, 2019).

3.    The Motion Improperly Seeks Reconsideration

The last seven pages of the Motion lobby the Court to reconsider its August 21, 2024 Order ("WP Order") (Doc. 174). Mot., pp. 17-23. Therein, the Court found that KS and KPMG's work as to the AC Investigation was work product. Doc. 174, p. 3. LP acknowledges that this Motion relitigates prior positions rejected by the Court on this issue, yet argues that such action is warranted due to the Presentations. Mot., pp. 17-23. This is improper.

There are specific instances where a court may reconsider an order.

---

[4] The Substantial Need Motion states that it may be moot depending on the outcome of this Motion. Doc. 177, p. 2.
[5] Defendants also raised this in correspondence requesting to confer on this Motion and to which LP's counsel never responded. **Ex. 4**, p.1.

*Smith v. Ocwen Fin.*, 488 F. App'x 426, 428 (11th Cir. 2012). LP does not acknowledge or otherwise address any of these standards. *See e.g.*, Mot. Should LP believe reconsideration of the Discovery Order is warranted, which Defendants deny, *infra*, § II.C.1, he must demonstrate that the current circumstances meet applicable standards. The Motion wholly fails to do this.

## B.    Defendants Have Not Waived Privilege

LP asserts that the Court should compel production of the Investigation Materials based on an overbroad appeal of the waiver doctrine.

### 1.    Subject-Matter Waiver has Not Occurred

The Motion makes overbroad demands, arguing disclosure of the Presentations ██████████ warrants subject-matter waiver of *all* materials as to the AC Investigation pursuant to FRE 502(a); Mot., pp. 11-16; and seeks "**any other** material supporting the investigation," inclusive of ██████████ ████████████████████████████████. Mot., p. 6 (emphasis added).

Rule 502(a) permits a finding of subject-matter waiver where (1) the waiver is intentional; (2) the disclosed and undisclosed materials concern the same subject matter; and (3) they ought in fairness[6] to be considered together. The rule was revised to "curtail[] [the] prior waiver doctrine significantly." *Chick-fil-A v. ExxonMobil Corp.*, 2009 WL 3763032, at *4 (S.D. Fla. Nov. 10,

---

[6] "Fairness depends in each case on the specific context in which the privilege is asserted." *Pensacola Firefighters' Relief & Pension Fund Bd. of Directors v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 2010 WL 4683935, at *5 (N.D. Fla. Nov. 10, 2010)

6

2009) (quotation omitted). "[T]he subject-matter waiver doctrine does not extend to materials protected by the opinion work product privilege." *Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1422 (11th Cir.).

Rule 502(a) Advisory Committee Notes explain that waiver "is reserved for those **unusual situations** in which fairness requires a further disclosure of related, protected information, **in order to prevent a selective and misleading presentation of evidence to the disadvantage of the adversary**." (emphases added). Such unusual situation is not present here.

Here, fairness does not require further production as there has been no selective disclosure. In addition to production of the Presentations themselves, Defendants produced *all* documents that support the Presentations' conclusions. *Supra*, § I; *see generally* **Ex. 3**. LP thus has the full scope of records upon which the conclusions were reached as stated by the investigators themselves. *Id*. As LP has the Presentations and all underlying materials, his argument that Defendants are using privilege as a sword and shield to "cherry-pick" the best documents misses the mark. Mot, pp. 14-16. LP and Defendants are equally free to use any of the underlying documents as they see fit.

This case differs from those LP cites where full production of the documents or information disclosed was *not* made. *In re King's Daughters Health Sys., Inc.*, 31 F.4th 520, 528 (6th Cir. 2022) (partial disclosure of expert findings necessitated waiver as to the complete findings); *United States v.*

7

*Coburn*, 2022 WL 357217, *7 (D.N.J. Feb. 1, 2022) (waiver extended only to unproduced materials whose contents were directly conveyed to the government or which formed the basis of the presentation to the government).

Again, Defendants already produced the investigators' complete findings and all documents relied upon in the Presentations. This is not the type of "selective and misleading presentation of evidence" that indicates Defendants were trying to gain a "tactical advantage" that would disadvantage LP and warrant a broad waiver. Fed. R. Ev. 502(a) Advisory Committee Notes. *Paramount Fin. Commc'ns, Inc. v. Broadridge Inv. Commc'n Sols., Inc.*, 2016 WL 5404462, at *4 (E.D. Pa. Sept. 28, 2016) (no waiver where plaintiffs did not establish defendants used document to gain tactical advantage).

Importantly, fairness does not require LP to disproportionally gain access to every document (numbering in the tens of thousands) created in regard to the AC Investigation.[7] Given the breadth of the requested relief, such

---

[7] By footnote, LP argues that privilege as to witness interview notes is also waived. Mot., p. 13. n.6. LP cites *United States Sec. & Exch. Comm'n v. Herrera*, where the court found waiver from law firm' oral summaries to the SEC of specific interview memorandum and notes. 324 F.R.D. 258, 263-264 (S.D. Fla. 2017). There, the law firm "[did] not contend that it provided only vague references of the witness notes and memoranda to the SEC, nor [did] it argue that only detail-free conclusions or general impressions were orally provided." *Id.* The court explained the waiver "is *limited* to only the witnesses whose interview notes and memoranda were orally provided, which is far less than all the witnesses [] interviewed." *Id.* at 260. In *Gruss v. Zwirn*, the court found waiver of witness summaries that were set forth in PowerPoint presentations to the SEC. 2013 WL 3481350, *2 (S.D.N.Y. July 10, 2013). These cases are inapplicable. Here, KS gave "characterization[s] of the witness interviews," which "were not memorialized." **Ex. 3**, p. 5. This is not a situation like above where the oral discussions were premised on specific memorandum, notes, or PowerPoints. There is no indication that such characterizations were at all related to KS' personal interview notes or

a production would be a gratuitous and unnecessary invasion of protected attorney work product and attorney-client communications extending well beyond the small handful of actually meaningful—and already disclosed—documents. *See Pittman v. Frazer,* 129 F.3d 983, 987-88 (8th Cir. 1997) (No waiver for entire investigatory file despite disclosure of some of the protected material gathered by the investigator); *Betz v. Fed. Home Loan Bank of Des Moines*, 2022 WL 18777440, at *4 (S.D. Iowa July 12, 2022) ("[F]airness does not require production of the entire…Report because [not]…engaged in a 'selective and misleading presentation of evidence to the disadvantage of [Plaintiff]' …."); *Benson v. City of Lincoln*, 2022 WL 426563, at *10 (D. Neb. Feb. 11, 2022) ("While the City…waived any claim of privilege to the disclosed document,…waiver does not extend to every single document, interview, note, and communication underlying [the] report."); *United States v. Treacy,* 2009 WL 812033, at *2 (S.D.N.Y. Mar. 24, 2009) ("[A]ll of the interview memoranda that were disclosed to the Government have now been provided to defendant. Accordingly, the instant case does not present any of the 'unusual circumstances' that otherwise would require a finding of waiver.").

---

those of the separate law firm KE. This case is more akin to *B.M.I. Interior Yacht Refinishing, Inc. v. M/Y Claire*, where privilege was not waived over report where only a vague and general description of the report was given, and no one could recall what portion of the report was disclosed, so evidence was lacking as to what was waived. 2015 WL 4316929, *5-7 (S.D. Fla. July 15, 2015); *S.E.C. v. Vitesse Semiconductor Corp.*, 2011 WL 2899082 (S.D.N.Y. July 14, 2011) (waiver "probably would not apply" if party "merely provided general impressions of the interviews without organizing the presentations 'in a witness-specific fashion'").

The Motion also argues for waiver based on Defendants' affirmative defenses of scienter and good faith. Mot., pp. 14-15. That Defendants may rely on the AC Investigation findings does not mean that broad implied waiver is the automatic result.[8] To waive privilege a defendant must do more than just deny a plaintiff's allegations, but must "inject a new factual or legal issue." *Cox*, 17 F.3d at 1419; *Infra*, § II.B.2. The AC Investigation conclusions are not new. They were raised in LP's Amended Complaint, which purports to support the elements of his claims, in part, through the AC Investigation findings. *See* Doc. 47. That Defendants may defend themselves through a different presentation of the same findings is not a "selective and misleading" use of new, privileged information, let alone, one that requires disclosure of significantly more, tangential materials beyond those already produced to LP.

A broad subject-matter waiver of tens of thousands of privileged documents that have minimal relevance is not warranted by fairness.

### 2.    Affirmative Defenses do not Waive Attorney-Client Privilege

The Motion mistakenly asserts that Defendants impliedly waived attorney-client privilege through scienter and good faith affirmative defenses.

---

[8] "Implied waivers are consistently construed narrowly. Courts must impose a waiver no broader than needed to insure the fairness of the proceedings before it. A broad waiver rule would no doubt inhibit the kind of frank attorney-client communications and vigorous investigation of all possible defenses that the attorney-client and work product privileges are designed to promote." *Travelers Cas. & Sur. Co. of Am. v. Grace & Naeem Uddin, Inc.*, 2009 WL 10667831, *3 (S.D. Fla. Oct. 23, 2009) (quotation omitted).

As an initial, and dispositive matter, LP's position is simply illogical. LP claims that Defendants made alleged misstatements between March 25, 2021 and September 23, 2021. Doc. 129-6. Through this Motion, LP seeks attorney-client communications that occurred attendant to the AC Investigation, which began *after* the alleged misstatements, on November 5, 2021. It would be logically impossible for Defendants to argue that the basis of their alleged misstatements were attorney-client communications that occurred *months later*. Nor do Defendants intend to make such an illogical argument.

Nevertheless, the cited defenses do not put communications related to the AC Investigation at issue. An implied waiver of attorney-client privilege may exist where, as relevant here, "a client places the attorney-client relationship directly at issue," or "asserts reliance on an attorney's advice as an element of a claim or defense." *Cox*, 17 F.3d at 1418. "To waive a privilege, a party must do more than merely deny the opposing party's accusations, but must affirmatively raise the issue involving privileged communications." *In re Hillsborough Holdings Corp.*, 176 B.R. 223, 239 (M.D. Fla. 1994).

Both the Ninth (lack of scienter) and Eleventh (good faith) Affirmative Defenses simply respond to the elements of LP's claims and do not affirmatively inject the issue of attorney-client communications relating to the AC Investigation into this case. As to the Ninth Affirmative Defense, scienter is an element of LP's Section 10(b) claims. *Dura Pharms., Inc. v. Broudo*, 544

11

U.S. 336, 342 (2005). This defense denies LP's allegations as to this element but does not indicate that Defendants will rely on KS' advice or communications to establish lack of scienter. Doc. 68, p. 26. Similarly, the Eleventh Affirmative Defense responds to LP's Section 20(a) claim which proscribes derivative liability on "controlling persons" "unless the controlling person acted in good faith ...." 15 U.S.C. § 78t(a). "Section 20(a) is a derivative liability statute because it in effect requires, through the affirmative defense, a defendant to disprove certain wrongful conduct on its part." *Laperriere v. Vesta Ins. Grp., Inc.*, 526 F.3d 715, 721 (11th Cir. 2008). LP thus required Defendants to defend themselves with a good faith basis defense. *Westchester Surplus Lines Ins. Co. v. Portofino Masters Homeowners Assoc., Inc.*, 2024 WL 3607894, *5 (N.D. Fla. July 9, 2024) ("A party does not waive the attorney-client privilege simply by ... defending a lawsuit."). This defense denies the elements of LP's Section 20(a) claim, and, does not assert that Defendants will rely on attorney-client communications with KS as to the AC Investigation.[9]

Such defenses fail to establish waiver. *Siegmund v. Xuelian Bian,* 2018 WL 3725775, at *12 (S.D. Fla. Aug. 1, 2018) ("Here, Defendants have not raised

---

[9] *See Blake v. Batmasian,* No. 15-CV-81222, 2017 WL 10059251, at *11 (S.D. Fla. Oct. 5, 2017) (good faith affirmative defense did not waive privilege where defendants "never expressly stated that they are relying upon advice of counsel to support any defense in this case"); *Butterworth v. Lab'y Corp. of Am. Holdings*, No. 3:08-CV-411-J-34JRK, 2010 WL 11470895 (M.D. Fla. Dec. 2, 2010) ("In other words, Defendant's assertion of good faith in its affirmative defense is separate and apart from the advice it received from counsel.).

12

an affirmative defense that may be influenced by the advice of counsel. Instead, Defendants have merely asserted compliance with the statute. The fact that the statute requires that directors act 'in good faith' does not mean Defendants have placed their subjective good faith at issue. Similarly, Defendants' denial of liability pursuant to § 607.0831 and their disclaimer of liability for the actions of others does not translate into good faith reliance on the advice of counsel.); *Cox*, 17 F.3d at 1419; *In re Hillsborough*, 176 B.R. at 239.

Defendants' inability to rely on communication with the AC Investigation attorneys in advance of the alleged misrepresentations distinguishes the present case from those cited in the Motion, none of which involved a Section 20(a) claim. In *Mattel, Inc. v. MGA Ent., Inc.*, the court found waiver where the "examples of [the party] putting counsel's advice at issue [were] legion," including numerous statements made in court testimony. 2010 WL 3705902, at *5 (C.D. Cal. Sept. 22, 2010). In *In re Broadcom Corp. Sec. Litig.*, the court considered that defendants represented that their good faith defense would include reliance on the advice of their lawyers. 2005 WL 1403516, at *2 (C.D. Cal. Feb. 10, 2005); *id.* ("Rather than simply deny scienter, defendants assert good faith based on an expectation the lawyers would tell them if anything illegal was happening."). Finally, in *Cox*, a finding of waiver should have been made where the waiving parties asserted that their actions were legal and otherwise relied on attorney testimony. 17 F.3d at 1422.

LP's argument on this issue are due to be denied.

## C.    The Investigation Materials Remain Privileged

LP argues that "new evidence shows the Audit Committee materials" are not privileged. Mot., p. 17. In addition to being procedurally improper, *supra* § II.A.3, the "new" evidence—the Presentations—fails to contradict prior assertions. The AC Investigation remains protected work-product and Defendants' asserted attorney-client communication privileges are sufficient.

### 1.    Work Product

#### a.    *Defendants' Work Product Privilege has not Changed*

LP fails to show that the Presentations suggest that the AC Investigation was not carried out in anticipation of litigation. Mot., pp. 19-21.

**First**, the Presentations confirm—rather than contradict—concerns of potential litigation articulated in prior briefing. Defendants previously explained that there was concern that ███████████████████████████ ████████████████████████████████████████████████. Doc. 105, pp. 12-14; Doc. 105-1, ¶ 14. In doing so, Defendants advised the Court that Redwire self-reported the allegations to the SEC (the "Self-Report"). Doc. 105-1, ¶ 10. The Presentations (part of such self-reporting) simply confirm the concern and strengthen the basis for the Court's prior findings.

**Second**, LP complains that the Presentations suggest that KS and KPMG ███████████████████████████████████. Mot., pp.

14

19-20. This is irrelevant. Defendants never claimed that the sole basis for their anticipation of litigation was Gievers' retaliation and harassment claims. Defendants stated that they were notified of potential accounting issues and started an investigation thereto, *see, e.g.,* (Doc. Nos. 105, pp. 3, 12-13; 105-1, ¶¶ 5-7), as *confirmed* by the Presentations. And, the subject matter of potential litigation whether brought by the SEC, Gievers, or a third-party (i.e. *this very lawsuit*), was inextricably intertwined with the allegations as to potential accounting issues, as demonstrated by the fact that Gievers himself ███████ ████████████████████████. Doc. 105-1, Ex. 1.

**Third,** LP states that ██████████████████████████████ ████████. Mot., p. 20. While unclear, this seems to suggest that ██████ ████████████████ KS was not providing *legal* advice. *Id.* This is absurd. Defendants showed KS was retained as independent legal counsel to provide legal advice attendant to the AC Investigation. Doc. 105-1, ¶¶ 8, 11, 13.

**Fourth**, the Motion states, again without further explanation, that the Presentations ██████████████████████████████████████ ████████████." Mot., p. 20. Again, it is unclear what LP's point is. Defendants previously stated that "the accounting firm KPMG was hired to assist K&S in its rendering of legal advice in connection with the Audit Committee Investigation." Doc. 105-1, ¶ 11. That the Presentations ███████ ████████████████████████████████████████is unremarkable.

15

**Fifth**, and easily disposed of, is LP's complaint that the Presentations

███████████████████████████████████████████. Mot., p. 20. There is

no requirement that every document protected by work product explicitly state

such protection. LP's characterization of the KS cover letter ██████████ is

similarly flawed. *Id.* A fair reading of such letter is that KS ███████████

███████████████████████████████████████████ This

is not inconsistent with Defendants' work product privilege claims.

**Sixth**, the Motion points out that KE notified the SEC of the allegations

in the Gievers' letter (i.e., the Self-Report). *Id.* In addition to having no

significance, this is not new information, as it was previously stated in, among

other documents, the Baliff Declaration. Doc. 105-1, ¶ 10.

**Seventh**, the Motion overstates the significance of ███████████████

███████████████████████████████████████████

Mot. p. 20. Indeed, the knowledge of that number does not change the fact that

Defendants reported the Gievers allegations to the SEC in November 2021 and

that KS—the attorneys conducting the AC Investigation—████████████

██████████████████

**Finally**, the Motion devolves into unsubstantiated and irrelevant

hypothesizing as to KE's role.[10] Mot., pp. 20-21. Such speculation misses the

---

[10] Following the June Production, LP, for the first time, raised questions as to KE's role. Defendants explained that KE "did not perform the Audit Committee's investigation, but independently represented Redwire in conjunction with legal issues and legal advice",

point, however, in regard to *KS* and *KPMG's* investigation at issue in this case. It was KS and KPMG that conducted the investigation into issues that may give rise to SEC enforcement action or litigation and thus, unsurprisingly, *KS* ████████████████████████████. That Redwire had additional legal counsel who resolved or were involved in other aspects of related legal issues does not render KS' work more or less related to prospective litigation.

Moreover, nothing about KE cited in the Motion is "new" as LP appears to argue. Rather, Defendants disclosed that KE drafted interview notes over a year ago on August 14, 2023. *Supra*, § I. Similarly, Defendants advised the Court that KE initiated the Self-Report through the Baliff Declaration on March 1, 2024. *See* Doc. 105-1. LP cannot now introduce such facts to claim the absence of work-product privilege *after* the Court entered the WP Order.

The Court should reject LP's attempt to manufacture "mischaracterizations" to avoid the Discovery Order's ruling.

b.    *LP's Caselaw is Inappropriate and Inapplicable*

LP attempts to improperly re-argue the application of case law previously offered in advance of the Discovery Order. Such caselaw fares no better now, Mot., pp. 22-23, and the response remains unchanged. Namely, that the findings in these cases rely on various parties' representations as to

---

including but not limited to, allegations by former employee Gievers. **Ex. 3**, p. 8. Defendants have since provided further detail in an amended privilege log. **Composite Ex. 1**

17

the purposes of the pertinent investigations that did not include litigation. *Miller v. Dyadic Int'l, Inc.*, 2010 WL 11591901, *6 (S.D. Fla. Mar. 30, 2010) (defendant stated counsel was engaged "for the purpose of assisting [the defendant] in investigating its own potential wrongdoing and for purposes of corporate housecleaning to protect the corporation's shareholders and investors," without mention of litigation); *S.E.C. v. Microtune, Inc.*, 258 F.R.D. 310, 319 (N.D. Tex. 2009) (Outside counsel testified that investigation was conducted for the purpose of assessing the company's accounting principles); *Allied Irish Banks v. Bank of Am., N.A.*, 240 F.R.D. 96, 106 (S.D.N.Y. 2007) (finding the "issue [of whether other reasons for the investigation other than anticipation of litigation existed] is easily resolved here inasmuch as AIB concedes the point and the contemporaneous evidence is overwhelming," including statements made by executives that investigation was not in anticipation of litigation).

No such statements or concessions have been made here, and the Presentations do not change this fact.

      2.    <u>Attorney-Client Privilege</u>

Finally, LP makes a haphazard argument as to attorney-client privilege. Mot., pp. 23-24. Such argument is a prime example of confusion caused by LP's practice of speaking imprecisely in regard to the Investigation Materials, thereby making it difficult to understand and respond to LP's arguments—

18

further supporting the premise that there was a lack of proper conferral.

The Motion takes issue with Defendants' attorney-client privilege over "the Audit Committee materials." Mot., p. 23. To the extent this references the ████████████████████████████████████████████████, Defendants have continuously asserted work product privilege over such materials. Doc. 179-2, pp. 12-16. Defendants have also explained that such materials may include protected attorney-client communications. *Id*. But, the Motion appears to be confused. Such documents were Redwire documents gathered by KS. Thus, there would not be attorney-client communication *from* KS therein. Rather, Defendants anticipate that there is likely attorney-client communication between Redwire and its general counsel or other outside counsel, occurring naturally, through normal operation, in such materials.

Defendants have also asserted proportionality and burden objections as to the production of such large number of documents with little relevance. *Id*. Thus, Defendants have not—and are not required—to individually log such documents as the Motion complains. Mot., p. 24; *NITV, LLC v. Computer Voice Stress Testing & Consulting, Inc,* 2007 WL 9701853, *4 (S.D. Fla. Feb. 2, 2007) ("[I]f a party's pending objections apply to allegedly privileged documents, the party need not log the document until the court rules on its objections.").

To the extent LP references general attorney-client communications from KS relating to the AC Investigation, LP has all the information needed to

19

assess privilege on a general basis. As the Motion acknowledges, KS "rendered legal advice and counsel" to Redwire's Audit Committee. Mot., p. 23; Doc. 92-11, ¶ 5. Communications between KS and its client (Redwire, its Audit Committee, and employees) and/or necessary agents as to such legal advice would be protected by the attorney-client privilege. Doc. 179-2, pp. 12-16.

**D.    LP Fails to Argue Documents Are Otherwise Discoverable**

LP seeks production of the Investigation Materials but ignores and fails to address all of Defendants' objections to such materials, including objections based on privilege *and* proportionality and burden grounds. Doc. 146-3, p. 37. The Motion ignores the non-privilege objections. *See e.g.* Mot. Thus, there is no pending motion (compliant with Fed. R. Civ. P. 37(a) or the Local Rules) addressing these objections justifying an order to compel production.

For the reasons stated above, the Court should deny the Motion.

Respectfully submitted,                     Dated: September 6, 2024.

*/s/ Glennys Ortega Rubin*               **FRANK A. ZACHERL, ESQ.**
**ALFRED J. BENNINGTON, JR., ESQ.**      Florida Bar No. 868094
Florida Bar No. 0404985                  fzazherl@shutts.com
bbennington@shutts.com                   **SHUTTS & BOWEN LLP**
**GLENNYS ORTEGA RUBIN, ESQ.**           300 South Orange Avenue,
Florida Bar No. 556361                   Suite 1600
grubin@shutts.com                        Orlando, Florida 32801
**BENJAMIN F. ELLIOTT, ESQ.**            Telephone: (407) 835-6757
Florida Bar No.: 1010706                 Facsimile: (407) 425-8316
belliott@shutts.com                      *Attorneys for Defendants*