## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

| | |
|---|---|
| JED LEMEN, Individually and on Behalf of All Others Similarly Situated, <br>      Plaintiffs, <br><br> v. <br><br> REDWIRE CORPORATION f/k/a GENESIS PARK ACQUISITION CORP., PETER CANNITO, and WILLIAM READ, <br>      Defendants. | Case No.: 3:21-CV-1254-TJC-PDB <br><br> <u>CLASS ACTION</u> <br><br> **DEFENDANTS' RESPONSE IN OPPOSITION TO LEAD PLAINTIFF'S RENEWED MOTION TO COMPEL PRODUCTION OF ALLEGED WORK PRODUCT (SUBSTANTIAL NEED)** |

Defendants oppose Lead Plaintiff Jared Thompson's ("LP") deficient *Renewed Mot. to Compel Production of Alleged Work Product (Substantial Need)* (Doc. 177) ("Motion").

The Motion seeks the production of materials *collected* and *generated* by attorneys at King & Spalding, LLP ("KS") and those assisting them at KPMG, LLP ("KPMG") who investigated allegations of former employee, Daniel Gievers, at the direction of Redwire's Audit Committee ("AC Investigation"). Mot., p. 5. The Motion also seeks records created by Redwire's other outside counsel Kirkland & Ellis LLP ("KE") memorializing interviews conducted as part of the AC Investigation (collectively, "Investigation Materials"). *Id.*

Notably, the Court already determined that the Investigation Materials are work-product. Doc. 174, p. 3 ("WP Order") ("The work product comprises the investigatory work of [KS] and KPMG, hired by Redwire's Audit

1

Committee in anticipation of an SEC enforcement action or other litigation…").

Nevertheless, LP seeks production[1] claiming a "substantial" or "compelling" need for these records despite that (a) such materials likely contain significant numbers of irrelevant documents, (b) LP has *not* attempted to obtain the same information through alternative means, and (c) LP possesses other documents that articulate the AC Investigation process and conclusions along with supporting records. Instead of conducting routine discovery, LP asks the Court to overrule long-asserted—and judicially confirmed—privileges.

In support, LP disparages Defendants' good faith discovery efforts. In reality, the Motion (and two others filed contemporaneously) is an acknowledgement that LP failed to adequately pursue his own case and now seeks a short-cut through the invasion of protected records. The Court should reject LP's efforts and deny the Motion as factually and legally without merit.

## I.     DISCOVERY OVERVIEW

**Interrogatories**. LP served interrogatories on May 19, 2023. (Doc. 146-2, p. 2). Defendants answered and objected on July 20, 2023. (Doc. 146-2); Mot., pp. 6-7. LP has neither moved to compel nor served additional interrogatories.

**Depositions**. LP deposed Defendants' expert on June 5, 2024, and fact witness Gievers on June 18, 2024. The expert deposition—limited to class

---

[1] LP does not challenge that the Investigation Materials are work-product in this Motion.

2

certification issues—is not relevant to this Motion. The Gievers deposition was suspended but is not yet concluded as the parties agreed to continue testimony to a later date due to technical issues. Doc. 179-12, 323:3-25. Gievers' counsel has offered multiple dates to conclude such deposition and has confirmed that Gievers will assent to further direct examination by LP's counsel. **Ex. 1**. LP previously noticed the deposition of Redwire's corporate representative for February 21, 2024, but postponed such deposition to resolve procedural disagreements. Doc. 139-3, ¶¶ 17, 20. The WP Order largely denied LP's motion to compel on the matter. Doc. 174, pp. 13-14. LP waited until the day of this opposition to inquire as to rescheduling depositions.

**Subpoenas**. LP served subpoenas for documents on several accountants and attorneys. As to those subpoenaed, some of these non-parties have produced documents (and in some instances supplemented the production), or, otherwise, have not produced documents based on agreement of the parties.

LP served a subpoena for corporate representative testimony on PwC on March 25, 2024. **Ex. 2**. PwC filed a motion to quash the subpoena in the U.S. District Court for the Eastern District of New York, which was denied on July 26, 2024. *See Lemen v. Redwire Corporation*, 1:24-mc-2000, Doc. 9 (E.D.N.Y.). LP waited until the day of this opposition to suggest scheduling the deposition.

**Document Requests**. LP served requests for production on Defendants ("First RFPs") that contained fifty-seven Requests with forty-six subparts, and

3

sought "all documents concerning" each Request. Doc. 146-3. Defendants responded and objected to the First RFPs on July 20, 2023. *Id.* The objections included undue burden, proportionality, and privilege objections. *Id.* LP has not moved to overrule Defendants' burden or proportionality objections. LP did not challenge Defendants' privilege assertions until May 13, 2024, in their now-withdrawn motion to compel.[2] *See* Doc. Nos. 146, 148, 156.

Defendants first produced a handful of known, responsive non-privileged documents, and on August 14, 2023, produced a limited, preliminary privilege log.[3] Mot., pp. 9-10; Doc. 139-2. Defendants then employed search terms, as explained below, to gather responsive documents and completed a rolling production on November 29, 2023 including approximately 1,400 documents ("Initial Production"). Doc. 139-3, ¶ 5; Doc. 139-4, p. 1. The Motion omits that Defendants also produced further individual and categorical privilege logs that identified 1,963 responsive documents withheld on the basis of privilege. Doc. 141-2. On April 25, 2024, LP filed a motion to compel in regard to Defendants' privilege logs. Doc. 133. While the Court denied the motion without prejudice,

---

[2] LP filed a *Rule 26(B)(5)(B) Motion for Determination of Privilege* (Doc. 91) on February 12, 2024 as to a specific inadvertently produced document but represented that he was only seeking a determination of privilege as to that record, not Audit Committee-related materials as a whole. Doc. 124 at 12:21-13:1.

[3] Again, LP mischaracterizes the record. LP claims that in briefing on the Clawback Document, Defendants "revealed they had failed to produce, log or otherwise identify a more detail letter from the whistleblower." Mot., p. 8 n.7. LP is referring to a demand letter sent by Gievers' attorney. This was included in the PwC privilege log. Defendants produced, post conferral, such letter to LP given Defendants' reference to such in their responsive briefing.

(Doc. 174, pp. 14-16), Defendants separately agreed to amend such logs which they provided on September 6, 2024. **Ex. 3**. Defendants also re-visited some prior designations and produced an additional 129 documents. *Id.*

**Initial Search Terms**. Defendants disclosed search terms[4] used to form the Initial Production ("Initial Search Terms") on August 14, 2023. Doc. 139-2. LP did not object to Defendants using search terms. Defendants' counsel (over seven attorneys) then reviewed documents responsive to the Initial Search Terms for responsiveness and privilege. Doc. 139-3, ¶ 5. LP complains that the Initial Search Terms were "self-selected," Mot., p. 9, but, the ESI Protocol does not require that the Parties reach a preliminary agreement, only that the parties confer in regard to the process. ESI Protocol, § V.A.1-2. LP also claims that the Initial Search Terms are insufficient because they "simply pulled words from [Defendants'] public disclosures…" Mot., p. 11. Notably, however, twelve of the First RFPs seek documents concerning statements made in Defendants' public disclosures, with the RFPs directly quoting or summarizing the disclosures. Doc. 146-3, pp. 17-33. Thus, that some of the Initial Search Terms are tailored to the public disclosures at issue in the RFPs is indicative of properly crafted terms rather than any defect. *See id.* Moreover, review of the Initial Search Terms reveals numerous terms that do not contain language

---

[4] As contemplated by the Parties' *Stipulation Establishing the Protocol for the Production of Documents and Electronically Stored Information* ("ESI Protocol"). **Ex. 4**.

from the public disclosures. *See* Doc. 179-3, pp. 5-7.

**Potential Supplemental Search**. After LP asserted that the Initial Search Terms were insufficient (Doc. 139-3, ¶ 6); Defendants invited LP to suggest additional terms to guide a supplemental production. *Id*. LP's first proposal returned over 1.4 million responsive documents. Doc. 139-6. The Parties then engaged in a seven-month negotiation to identify new terms. Doc. 139-3, ¶¶ 8-9. During this time, Defendants spent significant resources analyzing the proposed searches in a concerted effort to reach an accord.

In February of 2024, Defendants conceded to a significant increase in proposed terms resulting in the potential review and analysis of over 245,000 documents. *Id.*, ¶¶ 10, 11. Defendants conditioned review of such a wide swath of documents on use of a technology-aided review ("TAR") tool, whose use was first suggested by LP. *Id.*, ¶¶ 10-11; Doc. 139-7; Doc. 139-8, p. 1.

Defendants' counsel also repeatedly expressed concern about the delay in resolving these issues and that court intervention was needed. Doc. Nos. 139-7; 139-9. On March 7, 2024, counsel formally reiterated their concern and noted that continued delay threatened the completion of any production prior to the close of discovery. Doc. 139-10. LP's counsel simply responded: "We understand that Defendants want to reach agreement as soon as possible to begin the review." Doc. 139-9, p. 2. But, only minimal discussions on the issue followed, and it became clear that LP would not accept any offer. Doc. 139-3, ¶

6

12. LP never moved to compel a review process he deemed sufficient.

**June 2024 Voluntary Production**. On June 21, 2024, Defendants[5] voluntarily produced ("June Production") ████████████████████ ("Presentations") █████████████████████████████████████ ████████████████████. **Ex. 5**, p. 1; Doc Nos. 179-13, 179-14. The June Production and a subsequent small August 2024 production also included the documents discussed in the Presentations and all identifiable communications between Redwire's counsel (KS and KE) and ██████ related to the Presentations. **Ex. 5**, p. 2; **Ex. 6**, pp. 5-6. Defendants maintained that (a) production of ███████████████████████████, but not ultimately relied upon in their conclusions, would be disproportionate and would reveal protected work product, and (b) that witness interview notes or memorandum drafted by KE are protected attorney work product. **Ex. 6**, pp. 3-4.

## II.    ARGUMENT

The Motion suffers from fatal procedural and substantive defects. Initially, the Motion is procedurally improper as LP failed to adequately confer and transparently seeks to evade applicable page limits. Substantively, the Motion fails to justify disclosure of fact or opinion work product. Moreover, the Motion wholly ignores that Defendants assert other objections to production of

---

[5] The June Production also included a simultaneous production of records from of PricewaterhouseCoopers, LLC ("PwC").

the Investigation Materials beyond privilege. Finally, LP appears to have abandoned its request for extension of the discovery window in this Motion.[6]

### A.    The Motion is Procedurally Improper

LP failed to confer and improperly seeks to evade page limitations.

#### 1.    LP Failed to Adequately Confer

LP—once again—did not adequately confer with Defendants before filing this Motion as required by M.D.Fla. LR 3.01(g).[7] Not until LP filed this Motion were Defendants aware of the relief sought and the grounds for such relief.

Just *forty-eight hours* before LP filed the Motion, the Court denied an earlier motion by LP for failure to confer. Doc. 174, pp. 15-16. The Court stated that Rule 3.01(g) is "strictly enforced" and that "[t]he term 'confer'…means a substantive discussion…" *Id.*, p. 15 (quoting Middle District Discovery (2021), § I.A.2). Rather than heed the Court's instruction, LP immediately violated it.

On August 21, 2024, LP's counsel sent an email as to three motions generally referencing prior discussions between counsel. **Ex. 7**, p. 3. Defendants responded that as to the instant Motion, LP failed to identify what specific documents it would seek to compel given that Defendants already

---

[6] LP asserts such request to extend the discovery deadline in a single sentence, but doesn't identify how much time it seeks or the basis for relief. Mot., p. 5. To the extent a party makes passing reference to an argument without addressing it, it is deemed to be abandoned. *Dash 224 LLC v. Aerovias de Integracion Reg'l Aires SA*, 605 F. App'x 868, 870 (11th Cir. 2015); *OCR Sols., Inc. v. CharacTell, Inc.*, 2017 WL 6948587, at *1 (M.D. Fla. Oct. 6, 2017).

[7] The Court previously directed LP to show cause as to why it should not be sanctioned for failure to comply with LR 3.01(d) in connection with another filing. Doc. 112.

produced the documents that counsel's email suggested were to be the target of the forthcoming motion. *Id.*, p. 1. LP's counsel *never responded*. Instead, LP simply filed this and other discovery motions. Given such outstanding issue, there was no "substantive" conferral. Denial is warranted on this basis alone.

### 2.    LP Improperly Exceeds Pages Permitted for Briefing

LP seeks to circumvent page limitations. Local Rules provide that a motion must be "in a **single document** no longer than **twenty-five pages** inclusive of all parts." M.D. Fla. LR 3.01(a) (emphasis added). LP filed this and a separate motion seeking the same relief thereby giving himself *double* the number of pages permitted.[8] This Motion states that it seeks production of:

> (1) ██████████████████████████████████; (2) witness interview notes authored by K&S, KPMG and Kirkland and Ellis LLP ("Kirkland"); (3) materials gathered, reviewed or created by their auditor PricewaterhouseCoopers LLP ("PwC") concerning the Audit Committee investigation; and (4) any other materials underlying the Audit Committee's investigation.

Mot., 5.  The contemporaneously filed motion (Doc. 176) also seeks an order:

> [C]ompelling Defendants to produce ████████████████████ ███████████████, witness interview notes or memoranda, and any other material supporting the investigation.

Doc. 176, p. 6.  This is the same relief.  Indeed, the Motion states that "[t]his motion may be moot if the Court rules pursuant to [LP's] pending motion that

---

[8] Defendants also asked to confer on the other motion and the issue of multiple motions seeking the same relief, but LP's counsel never responded. **Ex. 7**, p. 1.

Defendants have not shown privilege or have waived privilege." Mot., p. 2. Both filings are twenty-five pages long. *Id.*; Doc. 176.

Further, throughout both motions LP relies on a twenty-two-page declaration of counsel (Doc. 179) containing substantive background, thereby gaining yet more pages and spreading argument between multiple documents.

LP never sought leave to exceed the page limits. Courts routinely find that piecemeal motions separating issues into separate filings are an improper attempt to circumvent page limitations. *Se. Metals Mfg. Co. v. Fla. Metal Prod., Inc.*, 2011 WL 833260, at *1 (M.D. Fla. Mar. 7, 2011) ("[I]f multiple motions are allowed a party could exceed the page limitation by simply filing a separate motion for each issue. Clearly, this tactic is forbidden by the rules of this Court absent prior permission."); *Thomas v. Waste Pro USA, Inc.*, 2019 WL 265182, at *2 (M.D. Fla. Jan. 18, 2019) ("[D]uplicative motions for summary judgment filed without...leave of the Court" improper "because such motions addressed common questions of law and fact; constituted wasteful, piecemeal pretrial activity; or sought to circumvent the page limit."). The Court should deny the Motion based on LP's efforts to circumvent rules on page limitations.

## B. LP Fails to Demonstrate that the Court Should Ignore Defendants' Work-Product Privileges

The Motion does not justify compelling protected work-product.

### 1. Defendants Search Terms Were Proper

LP flimsily attacks Defendants' Initial Search Terms and the proposed supplemental search terms to justify a "substantial" or "compelling" need for the protected materials. Mot., pp. 15-18. This is unavailing.

First, the Initial Search Terms were not a "dereliction" of Defendants' duties. *Id.*, p. 16. As discussed, Defendants drafted, disclosed, and utilized search terms tailored to LP's requests, including those relating to specific public disclosures, in response to the First RFPs. *Supra*, § I. LP argues that the Initial Search Terms were flawed because they did not capture 100% of the Presentation documents. Mot., pp. 15-16. But LP misses the point. Indeed, LP's own authority states that search terms must only capture "as many of the relevant documents targeted by the disputed search terms as possible." *L–3 Commc'ns Corp. v. Sparton Corp.,* 313 F.R.D. 661, 670 (M.D. Fla. 2015). This is precisely what Defendants did. Defendants employed search terms in accordance with the ESI Stipulation and modern discovery practices in an attempt to capture as many relevant documents as possible.

Second, proposed supplemental search parameters resulted in a robust offer to review *nearly a quarter of a million* documents that LP rejected without good cause. *Supra*, § I. Importantly, while the Motion tries to paint a "glass half-empty" picture, the supplemental search terms successfully captured the target information as the proposed review would have included *over two-thirds* of the June Production. **Ex. 6**, p. 2. LP would have, months ago, received a

11

majority of the documents he claims to need. Indeed, per the Motion, "search terms generally retrieve just 20% of relevant materials from a given set of ESI." Mot., p. 12. Thus, LP's own estimate shows that Defendants' proposal—which would have produced 64% of the Presentation documents—would be *over three times* more effective than standard search terms.

LP's tangent as to use of TAR is irrelevant. *Id.*, pp. 17-18. If LP did not agree with the proposal, he should have sought Court relief. Instead, he just sat in the weeds. Indeed, *Defendants asked* LP to seek relief from the Court if an agreement could not be reached, to no avail. *See* Doc. Nos. 139-7, 139-9.

The Motion claims that "critically" the issue is that Defendants have the ability to produce ███████████████ and attorney-drafted witness interview notes.[9] Mot., p. 18. What is critical is that LP argues that Defendants must disregard their right to object and instead must produce any documents that LP desires, without limitation. Defendants have steadfastly objected to producing the documents gathered by KS on the basis of proportionality, undue burden, and privilege; and, have similarly asserted privilege over interview notes and memorandum. LP has offered no reason for why Defendants should have already produced such documents in contravention of their objections.

---

[9] LP again mischaracterizes the discovery history, claiming that "Defendants refused to answer in response to the interrogatories." Mot., p. 18. This is false, Defendants simply responded with certain answers and objections as is appropriate under Fed. R. Civ. P. 33.

12

In sum, Defendants' production processes have not been deficient. That LP made the unilateral decision to not pursue more discovery from Defendants, either by agreeing to the proposed supplemental search terms or seeking Court relief as to its own preferred terms, is not a reason to now overcome Defendants' long-asserted work product privileges and other stated objections.

2.    LP Fails to Overcome Work Product Privileges

The Motion fails to demonstrate that the Court should overcome the work product doctrine in regard to fact or opinion work-product.

a.    *LP Fails to Justify Disclosure of Fact Work Product*

LP has not shown "both a substantial need for the information and that seeking the information through other means would cause undue hardship." *See United Kingdom v. United States*, 238 F.3d 1312, 1322 (11th Cir. 2001). Indeed, it has shown neither. Moreover, this is LP's burden. *Bridgewater v. Carnival Corp.*, 286 F.R.D. 636, 639–40 (S.D. Fla. 2011).

**LP Has Not Shown Substantial Need**. The Motion fails to show (and cannot show) that LP has a "substantial need" for the undisclosed AC Investigation materials. "A non-exhaustive list of factors are assessed in determining substantial need including: (1) the importance of the materials to the party seeking them for case preparation, (2) the difficulty the party will have obtaining them by other means, and (3) the likelihood that the party, even if he obtains the information by independent means, will not have the

substantial equivalent of the documents he seeks." *Burrow v. Forjas Taurus S.A.*, 334 F. Supp. 3d 1222, 1229 (S.D. Fla. 2018) (citation omitted).

*First*, undisclosed Investigation Materials are not highly important to this case. Adjudication of LP's allegations, inclusive of Defendants' affirmative defenses, does not require review of every single document generated or collected as part of the AC Investigation. At best, LP need only review documents that support the AC Investigation's ultimate conclusions. Saliently, Defendants have produced all such documents.

Here, the attorney investigators only identified a small number of documents as necessary to support the conclusions stated in the Presentations, *see* Doc Nos. 179-13, 179-, which Defendants have produced. Other, undisclosed, Investigation Materials are inherently less relevant to the investigators' conclusions as the investigators did not see fit to cite to them in support of their conclusions. *See id.*

Moreover, undisclosed materials are of nominal, if any, value to this case due to their limited relation to the AC Investigation conclusions. To the extent that Defendants will rely on AC Investigation conclusions[10], including as

---

[10] Reliance by Defendants on the AC Investigation conclusions would not inject a new issue into this case giving rise to a disclosure requirement as LP himself implicates the AC Investigation conclusions in the operative complaint. *See generally* Doc. 47; *Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1419 (11th Cir.) (To waive privilege "a defendant must do more than merely deny a plaintiff's allegations. The holder must inject a new factual or legal issue into the case.") (quotation omitted).

stated previously in this case, only the records that support such conclusions are worthy of disclosure. *See Travelers Cas. & Sur. Co. of Am. v. Grace & Naeem Uddin, Inc.*, No. 08-61868-CIV, 2009 WL 10667831, at *3 (S.D. Fla. Oct. 23, 2009) ("Implied waivers are consistently construed narrowly. Courts 'must impose a waiver no broader than needed to insure the fairness of the proceedings before it.... A broad waiver rule would no doubt inhibit the kind of frank attorney-client communications and vigorous investigation of all possible defenses that the attorney-client and work product privileges are designed to promote.'"). Defendants have already produced all such documents. The broad swath of undisclosed Investigation Materials sought by this Motion are, thus, unimportant to LP's case preparation.

*Second*, LP will not have difficulty obtaining relevant information through his own investigation using normal discovery tools. The KS attorney-investigators do not hold exclusive license to the underlying facts related to pending claims. Rather, the underlying facts remain discoverable. For instance, LP could take fact depositions, review documents offered for production (which LP did not accept), seek additional discovery, or move to compel. *See supra*, § I. LP's failure to prosecute this case precludes LP from credibly asserting a substantial need for the Investigation Materials. *See United States Sec. & Exch. Comm'n v. Herrera*, 324 F.R.D. 258, 267 (S.D. Fla. 2017) ("[C]ourts must not allow parties to claim substantial need as a means

15

to 'short-cut' preparation of cases."); *Stern v. O'Quinn*, 253 F.R.D. 663, 686 (S.D. Fla. 2008) (Plaintiff did not demonstrate substantial need because he could use other discovery tools to obtain information).

*Third*, LP will be able to develop a substantial equivalent of the records sought herein. For instance, the Presentations provide a list of witnesses from which discovery could be sought. LP cannot credibly claim an inability to develop substantially similar records when it has not tried *anything*.

*Finally*, the Motion's cited caselaw is inapplicable. *Martensen v. Koch* involved an investigative report that had a "significant role" in defendant's decision to engage in certain conduct.  301 F.R.D. 562, 580-81 (D. Colo. 2014). Here, the AC Investigation had no role in the circumstances surrounding the at-issue statements, which were made before the AC Investigation began. *See* Doc. 47. *United States v. Petit* is a criminal case where at-issue documents "contain[ed] and reference[d] possible exculpatory information" that the defendants were entitled to. 438 F. Supp. 3d 212, 215 (S.D.N.Y. 2020). No similar "exculpatory information" is implicated by the Investigation Materials. In *Shenwick v. Twitter, Inc.*, 2021 WL 1232451, at *4 (N.D. Cal. Mar. 31, 2021) and *State of Fla. ex rel. Butterworth v. Indus. Chemicals, Inc.*, 145 F.R.D. 588, 588 (N.D. Fla. 1991) the court either prevented the use of withheld documents or ordered production on the grounds that the withholding party was asserting reliance on advice of counsel or otherwise explicitly placed such materials at

issue in the case. Here, Defendants have already produced the AC Investigation conclusions and those records necessary to support those conclusions, such that to the extent any defenses put the AC Investigation at-issue, Defendants have satisfied any disclosure obligation.

LP has not shown *substantial need* for the Investigation Materials.

**LP has not Shown Undue Hardship**. LP also has not shown undue hardship. Indeed, the Motion pays only passing reference to such requirement, instead focusing on the deficient substantial need argument. Mot., pp. 18-22.

A party seeking production cannot establish requisite hardship while refusing to engage in any meaningful discovery. *Castle v. Sangamo Weston, Inc.,* 744 F.2d 1464, 1467 (11th Cir. 1984) (Failure to "use the basic tools of discovery" precludes finding of undue burden.). Further, a party seeking production must show information was otherwise inaccessible. *Leberman v. State of Ala. Bd. Of Pardons and Paroles, et al.*, 2020 WL 12991595, at *2 (M.D. Ala. Oct. 8, 2020) (finding no substantial need or undue burden where party failed to show information was otherwise inaccessible through other means).

Here, LP has not attempted other means to obtain similar information. Nor can LP credibly claim the information is otherwise inaccessible given that it now has the Presentation to act as a guide. Thus, LP fails to establish undue hardship. *See Castle,* 744 F.2d at 1467; *Leberman*, 2020 WL 12991595, at *2.

In sum, LP cannot show substantial need and undue hardship to

17

overcome Defendants' privileges simply because it is easier to obtain the Investigation Materials than to engage in basic discovery.

> b.    *LP Fails to Justify Disclosure of Opinion Work Product*

LP also has not shown extraordinary circumstances to compel opinion work product. "[O]pinion work product enjoys a nearly absolute immunity and can be discovered only in very rare and extraordinary circumstances." *Cox*, 17 F.3d at 1422 (quotation omitted). The Motion does not meet this high standard.

First, LP's argument that extraordinary circumstances exist due to a purported subject matter waiver in Defendants' affirmative defenses fails because, as held in *Cox*, "the subject-matter waiver doctrine does not extend to materials protected by the opinion work product privilege." *Id.*

LP attempts, but fails, to fit this case into limited exceptions to the *Cox* rule. The cited cases explain that opinion work product may be waived where an *attorney's* mental impressions are placed at issue. *Maplewood Partners, L.P. v. Indian Harbor Ins. Co.*, 2011 WL 3918597, *7 (S.D. Fla. Sept. 6, 2011); *Cozort v. State Farm Mut. Auto. Ins. Co.*, 233 F.R.D. 674, 676-77 (M.D. Fla. 2005); *Monitronics Int'l, Inc. v. Hall, Booth, Smith, P.C.*, 2017 WL 218397, *3 (N.D. Ga. Jan. 18, 2017). These cases involved insurance or legal malpractice claims, where an attorney's mental impressions are *necessarily* at issue. *Maplewood*, 2011 WL 3918597, *7; *Cozort*, 233 F.R.D. at 676 ("in the context of bad faith actions, the only evidence of the claim itself is the entire claim file, including

18

the impressions and advice of counsel."); *Monitronics*, 2017 WL 218397, *3 (evaluating "the particular circumstances of this legal malpractice case....").

However, where a *client*'s thoughts and mental impressions are at issue, *Cox* still controls and opinion work product is not waivable. *See Maplewood*, 2011 WL 3918597, *7. Here, KS's *mental state* is not inherently at issue in the operative claims or Defendants' affirmative defenses. *See* Doc. 68. LP's attempt to argue that KS' mental state is at issue is unfounded. Mot., p. 23. Opinion work product in the Investigation Materials cannot be waived.

Second, LP argues that opinion work product is discoverable as "inextricably intertwined with the facts upon which those opinions are based." Mot., p. 24. Caselaw holds the *opposite*. "When the facts are so intertwined with the mental impressions of the attorney or other work product protected materials, **other methods exist for obtaining the factual information without disturbing the work-product protection.**" *Spirit Master Funding, LLC v. Pike Nurseries Acquisition, LLC*, 287 F.R.D. 680, 687 (N.D. Ga. 2012) (emphasis added). A party "may obtain them through other means of discovery, such as through depositions and interrogatories." *Id.* (quotation omitted); *see also United States v. Zahn*, 2022 WL 17811346 (M.D. Fla. Dec. 19, 2022). LP's arguments actually support denial of the Motion.

Finally, LP argues that even if LP could replicate the AC Investigation, LP's efforts would bear little similarity to the actual AC Investigation. Mot., p.

19

24. As noted above, this argument is unavailing. *Supra*, § II.B.2.a.

Thus, the Motion fails to demonstrate extraordinary circumstances.

### C.    LP Fails to Argue Documents Are Otherwise Discoverable

The Motion seeks the production of Investigation Materials but ignores and fails to address all of Defendants' objections. *See* Mot. In response to LP's request related to the Investigation Materials, Defendant's object on privilege *and* on proportionality and burden grounds. Doc. 146-3, p. 37. The Motion ignores[11] the non-privilege objections. *See* Mot. Thus, there is no pending motion (compliant with Fed. R. Civ. P. 37(a) or the Local Rules) addressing these objections such that an order compelling production would be just.

For the reasons stated above, the Court should deny the Motion.

Respectfully submitted,                                    Dated: September 6, 2024.
*/s/ Glennys Ortega Rubin*                          **FRANK A. ZACHERL, ESQ.**
**ALFRED J. BENNINGTON, JR., ESQ.**       Florida Bar No. 868094
Florida Bar No. 0404985                              fzazherl@shutts.com
bbennington@shutts.com                          **SHUTTS & BOWEN LLP**
**GLENNYS ORTEGA RUBIN, ESQ.**          300 South Orange Avenue,
Florida Bar No. 556361                               Suite 1600
grubin@shutts.com                                    Orlando, Florida 32801
**BENJAMIN F. ELLIOTT, ESQ.**                Telephone: (407) 835-6757
Florida Bar No.: 1010706                            Facsimile: (407) 425-8316
belliott@shutts.com                                   *Attorneys for Defendants*

---

[11] By example, LP doesn't articulate why consideration of standard proportionality factors weigh in favor of production. *See* Fed. R. Civ. P. 26(b)(1). The importance of the Investigation Materials to this matter is limited at best given the mis-match between the subject AC Investigation and this litigation. *Supra* § II.B.2.a. Comparison of such marginal benefit to the intrusion of protected materials further militates against overruling such objection. *Id.*