**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | |
|---|---|
| JED LEMEN, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiffs,<br><br>v.<br><br>REDWIRE CORPORATION f/k/a GENESIS PARK ACQUISITION CORP., PETER CANNITO, and WILLIAM READ,<br><br>    Defendants. | Case No.: 3:21-CV-1254-TJC-PDB<br><br>CLASS ACTION<br><br>**STIPULATION ESTABLISHING THE PROTOCOL FOR THE PRODUCTION OF DOCUMENTS AND ELECTRONICALLY STORED INFORMATION ("ESI") IN RESPONSE TO LEAD PLAINTIFF'S FIRST SET OF REQUESTS FOR THE PRODUCTION OF DOCUMENTS AND THIRD-PARTY SUBPOENAS**<br><br>Hon. Timothy J. Corrigan |

Pursuant to the agreement reached between Lead Plaintiff Jared Thompson ("Lead Plaintiff") and Defendants Redwire Corporation f/k/a Genesis Park Acquisition Corporation, Peter Cannito, and William Read (collectively, "Defendants"), the parties stipulate to the following Protocol relating to the Production of Documents and Electronically Stored Information ("ESI") in response to Lead Plaintiff's First Set of Requests for Production of Documents and Third-Party Subpoenas, which binds all parties and their counsel of record in this Action (collectively, the "Parties"). The failure of this

1

Exhibit 4

Protocol to address any particular issue is without prejudice to any position that a Party may take on that issue.

## I.    PURPOSE

This Stipulated Protocol for Producing Documents and ESI (the "ESI Protocol") will govern the Production of Documents and ESI in response to Lead Plaintiff's First Set of Requests for Production of Documents (the "Requests"), and will serve as a supplement to the Federal Rules of Civil Procedure, this Court's Civil Discovery Handbook,[1] and any other applicable orders and rules.  The Parties further acknowledge their intention that this ESI Protocol be treated and enforced as if it were an order entered by the Court.

The ESI Protocol shall be attached to any subpoena issued in this action, and the Parties shall request that parties responding to any subpoena produce documents or information in accordance with this ESI Protocol.

## II.    PRESERVATION

Defendants understand their preservation obligations under applicable law and agree that quickly following Defendants' responses and objections to the Requests, the parties will meet and confer to attempt to reach an agreement on the following:

---

[1] https://www.flmd.uscourts.gov/civil-discovery-handbook

a. the relevant period of time for which ESI will be preserved and searched;

b. the categories of information that have been or shall be preserved in connection with this litigation and/or categories of information necessary to facilitate the parties' negotiations.

b. a list of the most likely custodians of relevant ESI or, in the alternative, the job descriptions of the most likely custodians;

c. the number of custodians per party for whom ESI will be preserved and searched;

d. likely relevant data sources, including meeting and conferring to attempt to agree on any data sources that the parties agree are not reasonably accessible because of undue burden or cost pursuant to Fed. R. Civ. P. 26(b)(2)(B);

e. whether discovery is limited to certain custodians or data sources in the first instance.

Where disputes arise concerning the production of allegedly inaccessible ESI, the parties shall follow the procedures set forth in the Court's Civil Discovery Handbook.

## III. SEARCH

The parties agree that they will meet and confer in good faith in an attempt to resolve issues relating to the search and collection of relevant ESI in response to the Requests.

## IV.   PHASING

In responding to the Requests, Defendants agree that they will use best efforts to phase ESI production where reasonably necessary, and that they will meet and confer to discuss whether certain categories of information can be prioritized over other categories. Subject to any invocation of attorney-client privilege or work product objections, the parties further agree to meet and confer regarding the sources of the Defendants' document productions and the identification of relevant custodians. Following the initial production, the parties will continue to prioritize the order of document productions in response to the Requests.

## V.   IDENTIFICATION OF RESPONSIVE DOCUMENTS

The parties shall meet and confer in good faith to come to an agreement on the search methods used to identify responsive Documents and ESI in response to the Requests.  Such meet and confers will include any disclosures necessary for Lead Plaintiff to understand and assess the sufficiency of the proposed search or filtering methodology, such as the nature of the processes of the search technology to be employed, including whether such processes employ predictive coding/technology-assisted review, the custodians and data

sources and types to which it will and will not be applied, date ranges that may be used to filter documents, file type subjects to be included or excluded from the methodology, search terms proposed to be used (if any), statistical sampling or validation techniques Defendants have used or intend to use to evaluate the sufficiency of the methodology, and whether different search methodologies will be applied to different types or sources of data. During such discussions, Defendants shall retain the presumptive right and responsibility to manage and control searches of its data files, including the right to propose revisions to search-term methods or advanced-technology procedures in order to make them more accurate and cost-effective, and will disclose those proposed search methods and any revisions. Nothing in this section shall limit a party's right to seek agreement from the other parties or a court ruling to modify previously agreed-upon search terms or other search parameters at any time prior to the completion of discovery. The parties will not seek court intervention without first attempting to resolve any disagreements in good faith, based upon all reasonably available information.

    **A.    Search Terms:**

        1.    Where the parties agree that potentially responsive ESI shall be searched through the use of search terms or through predictive coding/technology-assisted review, the parties shall meet and confer to provide reasonable assurances to

Lead Plaintiff that Defendants' search terms and methodology used to apply them or Defendants' predictive coding/technology-assisted review are reasonably calculated to identify responsive Documents and ESI. Prior to or during such meet and confer, Defendants shall make the disclosures identified above and any other disclosure necessary to facilitate the meet-and-confer efforts. If search terms are employed, Defendants shall also provide search statistics for their search terms methods, including the number of documents in corpus, the total number of documents that hit search terms, the total number of search hits with document families, and the total number of unique documents that hit on each search term.

2. If, after disclosure of Defendants proposed search method, search parameters, and search terms, and prior to the conduct of any searches, and after a reasonable meet and confer process, Lead Plaintiff believes in good faith that Defendants proposals regarding search, retrieval and production would result in deficiencies in production, Lead Plaintiff may make prompt requests for different or additional search methods, parameters, or search terms, but

such requests shall only be made after the parties have met and conferred as to the alleged deficiencies identified by Lead Plaintiff.  If the parties cannot resolve their disagreements regarding search term methodologies, they shall promptly bring the dispute to the Court for resolution.

3.  If Defendants are aware of responsive documents in their custody and control, such documents shall be reviewed and produced regardless of where such documents are located and whether they contain any of the agreed upon search terms.

**B.  Technology-Assisted Review**: Defendants shall not use predictive coding/technology-assisted review for the purpose of culling the documents to be reviewed or produced without notifying Lead Plaintiff prior to use and with ample time to meet and confer in good faith regarding a mutually agreeable protocol for the use of such technologies, if any.  If the parties cannot resolve their disagreements about technology assisted review methodologies, they shall promptly bring the dispute to the Court for resolution.

**C.**  The fact that a Document or ESI is responsive to a search term or identified as responsive by any other technology used to identify potentially responsive Documents and ESI shall not prevent Defendants from withholding such Document or ESI from production on the grounds that it is not responsive

or otherwise subject to production under the applicable discovery rules, or that it is protected from disclosure by applicable privilege or work-product protection.

## VI. PRODUCTION

### A. Each production will have four main components

1. A directory titled "images" containing images of every page of every Document in the production, Bates-numbered sequentially.

2. A directory titled "natives" containing Native Files for a subset of the Documents, each file named with the Bates number of the first page of the Document it represents with no additional text beyond this, and with the same extension as the original Native File type of the Document.

3. A directory titled "text" containing OCR or Extracted Text files, one file per Document, each file named with the Bates number of the first page of the Document it represents with no additional text beyond this, followed by ".txt" suffix.

4. A directory titled "data" containing image and metadata Load Files that contain the Bates ranges and Metadata for each Document.

### B. Production of Documents Originating as Paper

The following production specifications apply to Documents that existed in paper format prior to production ("hard copy documents"). Documents that originated as paper but which were scanned and maintained electronically by a party prior to inception of this Action shall be produced in accordance with Part VII(B) of this ESI Protocol.

Defendants agree to produce hard copy documents in the formats described below, to the extent reasonably practicable and not unduly burdensome. These formats are deemed to be productions in reasonably usable form. If Defendants intend to produce any hard copy documents in any manner other than as specified herein, Defendants shall notify the requesting party of their intent, including production format (e.g., produced as paper, made available for inspection). If the proposed production format is not acceptable to Lead Plaintiff, the parties shall meet and confer to determine a mutually acceptable producing format for such Documents.

    1.    **PDFs**. Documents shall be produced as multi-page, color PDFs. Bates numbers, confidentiality designations (in accordance with the Stipulation Establishing the Protocol for Disclosure of Protected Material Produced in Discovery (the "Confidentiality Stipulation") agreed to by the parties in this case), and redactions (to the extent they are necessary)

shall be burned into the image.  PDF image files shall be provided in an "Images" folder.

2.   **Unitizing Documents**. In scanning paper documents, distinct documents shall not be merged into a single record, and single documents shall not be split into multiple records (*i.e.,* paper documents shall be logically unitized).  For example, documents stored in a binder, folder, or similar container (each a "container") shall be produced in the same order as they appear in the container.  The front cover of the container shall be produced immediately before the first document in the container.  The back cover of the container shall be produced immediately after the last document in the container.  Defendants will undertake reasonable efforts to, or have their vendors, logically unitize documents correctly, and will commit to address situations of improperly unitized documents.

3.   **Parent-Child Relationship**. Parent-child relationships within a document family (the association between an attachment and its parent document) shall be preserved. The child-document(s) shall be consecutively produced immediately after the parent-document.  Each document

10

shall be produced with the production number for the first and last page of that document in the "Begin Bates" and "End Bates" fields of the data load file, respectively, and with the "BegAttach" and "EndAttach" fields listing the production number for the first and last page in the document family.

4. **OCR.** Documents that exist in paper or hard copy format shall be run through optical character recognition ("OCR") software, and the full text shall be provided on a document-level in an appropriately formatted text file (.txt) that is named to match the first bates number of the document. Text files shall be provided in a "Text" folder. Text must be encoded in UTF-8. Pages must be separated by form feed character (decimal 12, hex 0xC). To the extent that a document is redacted, the text files shall not contain the text on the redacted portions.

5. **Fixed Notes.** Paper Documents that contain fixed notes shall be scanned with the notes affixed, if it can be done so in a manner so as not to obstruct other content on the document. If the content of the document is obscured by the affixed notes, the document and notes shall be scanned first

11

as the document was stored in the ordinary course of business, and then separately.

6. **Unique IDs.** Each image shall have a unique filename, which corresponds to the Bates number of that page. The filename shall not contain any blank spaces and shall be zero-padded (*e.g.*, ABC-0000001), taking into consideration the estimated number of pages to be produced. If a Bates number or set of bates numbers is skipped in a production, the producing party will so note in a cover letter or production log accompanying the production. Bates numbers will be unique across the entire production and prefixes will be consistent across all documents Defendants produce in the Action.

7. **Data Load Files.** Documents shall be provided with an Opticon Cross-Reference File and Concordance data load file using standard Concordance delimiters:

   a) Field Separator: ASCII character 20 ("¶");

   b) Quote: ASCII character 254 ("þ"); and

   c) New Line: ASCII character 174 ("®").

Concordance-compatible image and data load files shall be provided in a "Data" folder.

12

8.  **Metadata**. Appendix 1 sets forth the minimum metadata fields that must be produced.  To the extent that metadata does not exist, is not reasonably accessible or available or would be unduly burdensome to collect, nothing in the ESI Protocol shall require Defendants to extract, capture, collect or produce such data.

C.  **Production of ESI**

Defendants agree to produce in the formats described below.  These formats are deemed to be productions in reasonably usable form.  If any party contends that particular Documents or ESI warrant a different format, the Parties will meet and confer to determine a mutually acceptable production for such Documents.

1.  **PDFs**. Documents shall be produced as multi-page, color PDFs.  The document's original orientation shall be maintained (i.e., portrait to portrait and landscape to landscape). Bates numbers, confidentiality designations (in accordance with the Confidentiality Stipulation governing the case), and redactions (to the extent they are necessary) shall be burned into the image.  PDF image files shall be provided in and "Images" folder.

2. **Extracted Text Files**. For native files containing embedded text, the full text of native files shall be extracted directly from the native file (not OCR) and shall be delivered in an appropriately formatted text file (.txt) that is named to match the first bates number of the document. Text files shall be provided in a "Text" folder. To the extent that a document is redacted, the document shall undergo OCR after the text has been redacted in order to remove redacted text.

3. **Unique IDs**. Each image shall have a unique filename, which corresponds to the Bates number of that page. The filename shall not contain any blank spaces and shall be zero-padded (*e.g.*, ABC-0000001), taking into consideration the estimated number of pages to be produced. If a Bates number or set of Bates numbers is skipped in a production, the producing party will so note in a cover letter or production log accompanying the production. Bates numbers will be unique across the entire production and prefixes will be consistent across all documents a party produces in the litigation.

4.  **Parent-Child Relationship**. The relationship between attachments, enclosures, embedded files, and/or exhibits to any parent document shall be preserved. The child-document shall be consecutively produced immediately after the parent-document. Each document shall be produced with the production number for the first and last page of that document in the "Begin Bates" and "End Bates" fields of the data load file and with the "BegAttach" and "EndAttach" fields listing the production number for the first and last page in the document family.

5.  **Native Format**.

    a)  All documents produced in native format shall include the relative files path of the native files in the document production in the "NativePath" metadata field.

    b)  All spreadsheets (.XLS, .XLSM, or similar file formats) shall be produced in native format, including spreadsheets containing redactions.

    c)  Non-redacted presentation files (.PPT or similar file formats) shall be provided in Native Format, in addition to PDF or TIFF/JPG images. The native file

15

will be named as the first Bates number of the respective document. The corresponding load file shall include native file link information for each native file that is produced. Redacted presentation files may be processed to PDF format showing comments, hidden slides, speakers' notes and similar data. In addition to PDF images, non-redacted native files will be provided in native format.

d) Responsive audio and/or video data may be stored in audio or video recordings, voicemail text messaging, and related/similar technologies, including, but not limited to, communications transmitted over proprietary business communications platforms. Defendants will make best efforts to ensure care is taken for collection and production of any responsive audio and/or video data, and to preserve any Metadata that may be associated with those items.

e) Microsoft Word documents (.DOC, .DOCX, or substantially similar non-Microsoft file formats) shall be produced in multi-page, color PDF format for each Document, containing all images for that document,

16

and shall be imaged in a manner that captures tracked changes and comments. To the extent Lead Plaintiff believes the converted image format distorts, omits, or causes information to be improperly displayed, Lead Plaintiff may request the Document in Native Format and Defendants shall meet and confer to attempt to resolve the problem(s).

f) Lead Plaintiff may ask for certain other documents and/or databases initially produced in PDF format to be produced in their native format in the event that the PDF format is not reasonably usable or has degraded usability or searchability. Lead Plaintiff shall identify the documents by their Bates numbers and the documents shall be produced in their unaltered native format.

g) Where native files are produced in lieu of PDF images, each native file will be assigned a unique Bates number. Defendants will produce a placeholder (a single-page PDF slip sheet indicating that the native item was produced) along with the file itself in native format. The placeholder will be branded with the

17

production number in the lower right-hand corner and the phrase "PRODUCED IN NATIVE FORMAT" branded in the center of the page.  Defendants will also brand any confidentiality or similar endorsements in the lower left-hand corner of the placeholder.

h) <u>Request for Native Files</u>.  Other than as specifically set forth above, a producing party need not produce documents in native format.  If good cause exists for Lead Plaintiff to request production of certain documents in native format, the requesting party may request production in native format by providing (1) a list of the Bates numbers of documents it requests to be produced in native format; and (2) an explanation of the need for reviewing such documents in native format.  Defendants shall not unreasonably deny such requests.  Defendants shall produce an overlay to ensure that the "NativePath" entry in the data load file indicates the relative file path to each Native File in such production, and all extracted text and applicable metadata fields. Documents and overlays shall be produced within 20 days of the request unless

18

the request is reasonably denied or the parties agree to a different time.

6. **Track Changes and Comments.** To the extent that a document contains track changes or comments, the document shall be imaged showing tracked changes and comments.

7. **Password Protected Files.** Defendants shall produce passwords for any password-protected files to the extent the passwords are reasonably available.

8. **Embedded Documents.** Embedded ESI documents (*e.g.*, a spreadsheet embedded within a word processing document) will be extracted, produced as independent document records, and related back to the respective top level parent document (*e.g.*, standalone file, email message, etc.) via the "BegAttach" and "EndAttach" fields referenced in Appendix 1. Related documents will be produced within a continuous Bates range.

9. **Data Load Files.** Documents shall be provided with an Opticon Cross-Reference File and Concordance data load file using standard Concordance delimiters:

   a) Field Separator: ASCII character 20 ("¶");

    b)  Quote: ASCII character 254 ("þ"); and

    c)  New Line: ASCII character 174 ("®").

Concordance-compatible image and data load files shall be provided in a "Data" folder.

10.    **Metadata.** Appendix 1 sets forth the minimum metadata fields that must be produced to the extent that metadata exists for a particular document.  To the extent that metadata does not exist, is not reasonably accessible or available, or would be unduly burdensome to collect, nothing in this ESI Protocol shall require Defendants to extract, capture, collect, or produce such data.

11.    **Deduplication.** Documents may be deduplicated (based on MD5 or SHA 1 hash values) at the family-group level provided that the producing party identifies the additional custodians in the "All Custodians" field, and the file paths of all duplicates provided in the "All Paths" field. Attachments shall not be eliminated as duplicates for purposes of production, unless all documents within a family, such as the parent e-mail and all attachments, are also exact duplicates.

**D.    Production of Databases and Other Structured Data**

20

If a database or other source of structured data contains responsive information, the parties shall meet and confer to determine a mutually agreeable format for producing the database or other structured data. Before meeting and conferring, Defendants will provide the following information about the database or structured data to the requesting party:

- Database Name;

- Type of Database;

- Software Platform;

- Software Version;

- Business Purpose;

- Users;

- Size in Records;

- Size in Gigabytes (GB);

- A List of Standard Reports;

- Identity of the Database Owner or Administrator;

- Field List; and

- Field Definitions (including field type, size, and use).

**E.    Production of Audio and Video Recordings**

If audio and/or video recordings are responsive, the parties shall meet and confer to determine a mutually agreeable format for producing the audio and/or video recording.    Before meeting and conferring, Defendants will

21

provide the following information about the responsive audio and/or video recording to the requesting party:

- Date of the recording;

- Duration of the recording;

- Names of individuals who were recorded;

- Event being recorded;

- Whether minutes for the even being recorded were prepared; and

- Whether Certified Legal Transcription was prepared by a Certified Court Reporter.

**F.    Production of Transcripts**

If deposition or other transcripts are responsive, the parties shall meet and confer to determine a mutually agreeable format for producing the transcripts.    Before meeting and conferring, Defendants will provide the following information about the responsive transcripts to the requesting party:

- Date of the depositions, trial, hearing or other event (each an "event");

- Duration of the event;

- Name of the individual(s) who was/were recorded;

- The forms in which the transcripts exist such as PDF, text file, livenote or e-transcript format (.lef, .ptx, or .ptz); and

- List of exhibits associated with the transcript and/or event.

**G.    Processing of Third-Party Documents**

1.    A party that issues a non-party subpoena ("Issuing Party") shall include a copy of this ESI Protocol as an attachment to the subpoena and request that the non-party produce documents in accordance with the specifications set forth herein.

2.    The Issuing Party may request that the non-party simultaneously produce documents to the Issuing Party and all other parties.  If the non-party produces documents only to the Issuing Party, to the extent practical given the data volume, productions by a non-party shall be produced by the Issuing Party to all other parties within fourteen days.

**H.    MISCELLANEOUS PROVISIONS**

The following specifications govern the production of all documents in response to the Requests, regardless of source, unless otherwise noted in the ESI Protocol:

1.    **Custodian or Originating Source.** The custodian or originating source shall be identified in the Custodian field of the database load files.  If there is more than one custodian all sources shall be identified in the "All Custodians" field.

23

Documents found in the possession of a natural person (or on a natural person's hardware or storage media) shall be produced in such fashion as to identify the natural person. Documents found in the possession of a department, group, entity, or other common facility (*e.g.*, office, file room, archive, network storage, file share, back-up, hard-drive, etc.) shall be produced in such a fashion as to identify the department, group, entity, or facility. Defendants shall use a uniform description of a particular custodian across productions.

2. **Foreign Language.** Foreign language text files and metadata shall be delivered with the correct encoding to enable the preservation of the documents' original language.

3. **Dates.** All documents shall be processed so as to show the data and time in Coordinated Universal Time ("UTC"). Dates and times must be concatenated into a single field, with a format of MM/DD/YYYY HH:MM:SS, and must be consistent within any one field. Date delimiters, such as slashes and colons, must be consistent across all fields.

4. **Production Media.** The preferred means of producing documents is via secure FTP or secure file share. However,

24

documents may also be provided via CD, DVD, flash drive, or hard drive if (a) the size of the production exceeds the size limitations applicable to Defendants' secure FTP or file share or (b) if the interest of preserving the confidentiality of the information produced outweighs the speed and efficiency of producing documents via secure FTP or secure file share. To the extent possible, physical media shall be write protected before it is produced.

5.    **Naming Convention for Production Media.** Whether produced via secure FTP, file share, or physical media, the files produced shall be combined into a compressed file such as .zip, .rar, etc. The compressed file shall be named so as to indicate the producing party, the date of the production, and the sequence of the production (*e.g.*, "Redwire Production 20230601-001"). If the production is made using physical media, the media shall be labeled to include (a) text referencing that it was produced in *Lemen v. Redwire Corporation f/k/a GenesisPark Acquisition Corp., et al.*, No. 3:21-cv-01254-TJC-PDB; (b) the Bates number range of the materials contained on the media; and (c) the filename(s) of

the compressed file(s) contained on the media such as the example included above.

6. **Replacement Productions.** Any replacement production will be transmitted with a cover letter or email to identify the production as a replacement and cross-reference the "Begin Bates" and "End Bates" of the documents being replaced. If the replacement production is being transmitted by physical media, the media shall include the phrase "Replacement Production."

7. **Inability to Produce Metadata.** If Defendants are unable to produce metadata for a particular field, they will provide an explanation of that inability with its document production.

8. **Encrypted Data.** To the extent data is encrypted before it is produced, Defendants shall contemporaneously transmit the credentials necessary to decrypt the data.

9. **Non-Waiver**. Nothing in this ESI Protocol shall be interpreted to require disclosure or irrelevant information or relevant information protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity. The parties do not waive any

objections to the production, discoverability, admissibility, or confidentiality of documents.

10. **Confidentiality Stipulation**. Productions in response to the Requests and third-party subpoenas are subject to the Confidentiality Stipulation agreed to by the parties in this Action.

11. **Good Faith Resolution of Disputes**. The parties shall make good faith efforts to comply with and resolve any differences concerning compliance with the ESI Protocol. If Defendants, notwithstanding their good faith efforts, cannot comply with any material aspect of this ESI Protocol or if compliance with such material aspect would be unreasonable, such party shall inform the requesting party in writing a reasonable time before the date of production as to why compliance with the ESI Protocol is impossible or unreasonable. No party may seek relief from the Court concerning compliance with the ESI Protocol unless it has conferred in good faith with the affected parties.

## VII. ASSERTIONS OF PRIVILEGE

### A. Detailed Privilege Logs

To the extent privilege is not asserted categorically, privilege logs shall be provided in Excel format and contain the following information:

1. a sequential number associated with each Privilege Log record:

2. if applicable, the date the document was created, the date it was last modified, and the date it was sent;

3. the Bates numbers of documents redacted, and a reference number for each row containing the information of documents withheld in their entirety;

4. to the extent reasonably available, the identity of all persons who sent, authored, signed, or otherwise prepared the documents and identification of which of them are attorneys;

5. to the extent reasonably available, the identity of all persons designated as addressees or copyees along with other information about them necessary for the requesting party to assess the privilege (*e.g.*, title, department, job function, etc.) and identification of which of them are attorneys;

6. the title or subject of a document to the extent the title does not reveal privileged or work-product protected information;

7. a description of the contents of the document that, without revealing information itself privileged or protected, is

28

sufficient to understand the subject matter of the document and the basis of the claim of privilege or immunity;

8.   the type or nature of the privilege asserted (*i.e.*, attorney-client privilege; work-product doctrine).

### B.   Logging of Document Families

Documents shall be logged individually and shall not be logged on the family level. For document families in which fewer than all of the documents are withheld or redacted as privileged or protected, the privilege log entry for the withheld document(s) shall identify the Bates number of the produced family member.

The following documents presumptively need not be included on a privilege log:

1.   Communications exclusively between a party and its outside counsel regarding this action; and

2.   Work product created by outside counsel, or by an agent of outside counsel other than a party, regarding this action and created after commencement of this action.

In the interest of the parties' time, and to minimize litigation costs, the parties will negotiate in good faith the exclusion of categories of documents from the privilege log that while technically responsive and privileged, are relatively incidental to the issue in the litigation, as well as categories of

29

documents that a producing party may log categorically rather than document-by-document, the reasons therefore, and proposed log format and categories proposed.

### C.    Categorical Logging of Privileged Documents.

Nothing with regard to the stipulation above regarding the proper formatting and information for a detailed privilege log shall preclude Defendants from asserting that certain subsets of documents responsive to the Requests are categorically privileged, such that logging of individually responsive documents is unnecessary.  To the extent that Defendants make any categorical assertion of privilege, Defendants shall produce a separately titled log, which shall specifically describe the category of documents withheld, the privilege that is asserted, and provide an explanation as to the basis for categorical treatment.  Lead Plaintiff retains all rights and ability to seek to compel the production of a detailed privilege log following a conferral by the Parties.

## VIII.  LIMITED 28 U.S.C. § 1920 WAIVER

In consideration of the parties' agreed upon Protocol, Defendants agree not to seek the reimbursement of any or all of their costs relating to the production, storage, and maintenance of its ESI. Nothing herein constitutes an acknowledgement (implicit or otherwise) by any party that ESI-related costs are taxable under 28 U.S.C. § 1920.

## IX.    MODIFICATION

### A.    Modification by Agreement

Any practice or procedure set forth herein may be varied by agreement between the parties, which will be confirmed in writing, where such variance is deemed appropriate to facilitate the timely and economical exchange of Documents and ESI. Before seeking Court intervention, the parties shall meet and confer in good faith regarding any modification.

### B.    Modification by Court Order

Nothing in this Protocol waives the right of any party to petition the Court for an Order modifying the terms upon good cause shown, provided, however, that counsel for such party must first meet and confer with the counsel for the opposing party and the parties shall use reasonable best efforts to negotiate an exception from or modification to this Protocol prior to seeking relief from the Court.

DATED: August 31, 2023

By: /s/ _____
Reed R. Kathrein (Fla. Bar. No. 262161)
Lucas E. Gilmore (admitted *pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
reed@hbsslaw.com
lucasg@hbsslaw.com

By: /s/ _____
Alfred J. Bennington, Jr., Esq.
Florida Bar No. 0404985
Glennys Ortega Rubin, Esq.
Florida Bar No. 556361
Christian M. Leger, Esq.
Florida Bar No. 100562
Shutts & Bowen LLP
300 South Orange Avenue, Suite 1600
Orlando, Florida 32801
Telephone: (407) 835-6755

31

Steve W. Berman (admitted *pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO
LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile:  (206) 623-0594
steve@hbsslaw.com

Peter A. Shaeffer (*admitted* pro hac vice)
455 North Cityfront Plaza Drive,
Suite 2410
Chicago, IL 60611
Telephone: (708) 628-4949
Facsimile:  (708) 628-4950
petersh@hbsslaw.com

*Lead Counsel for Lead Plaintiff
Jared Thompson*

Brian Schall (*pro hac vice* forthcoming)
THE SCHALL LAW FIRM
2049 Century Park East, Suite 2460
Los Angeles, CA 90067
Telephone: (424) 303-1964
brian@schallfirm.com

*Additional Counsel for Lead Plaintiff
Jared Thompson*

David M. Buckner (Fla. Bar No. 60550)
BUCKNER + MILES
2020 Salzedo Street, Suite 302
Coral Gables, FL 33134
Telephone: (305) 964-8003
Facsimile:  (786) 523-0485
Email: david@bucknermiles.com
*Liaison Counsel for Lead Plaintiff Jared
Thompson*

Facsimile: (407) 849-7255
bbennington@shutts.com
grubin@shutts.com
cleger@shutts.com

and

H. Timothy Gillis, Esq.
Florida Bar No. 0133876
Jeffrey S. York, Esq.
Florida Bar No.: 987069
Shutts & Bowen LLP
1000 Park Street, Suite 800
Jacksonville, FL  32204
Telephone: (904) 899-9950
tgillis@shutts.com
jyork@shutts.com

*Counsel for Defendants Redwire
Corporation f/k/a Genesis Park
Acquisition Corp., Peter Cannito, and
William Read*

32

## Appendix 1

### ESI Metadata and Coding Fields

A. For scanned hard copy documents, Defendants will provide the Metadata fields below.

B.

| FIELD NAME | FIELD DESCRIPTION |
|---|---|
| Begin Bates | The production Bates number associated with the first page of a Document. |
| End Bates | The production Bates number associated with the last page of a Document. |
| BeginFamily | Begin Bates number of first page of the parent Document of family of attachments. |
| EndFamily | End Bates number of the last page of last attachment to a family of Documents. |
| Pages | Total number of pages in the Document. |
| TextPath | Link to text file for the document. |
| Placeholder | Identifies a Document has a placeholder image. |
| File Extension | The extension of the file. |
| Custodian | Identification of the custodian(s) from whom the file was sourced. |
| All Custodians | Identification of all custodians of the document. |
| Confidentiality | Confidentiality designation. |
| Redacted | (Y/N) field that identifies whether the document is redacted. |
| Production Volume | Production volume number (e.g., VOL001, VOL002, etc.). |
| Producing Party | Name of party producing the Document. |

C. For ESI and documents that were originally stored in electronic format, all fields below should be provided, to the extent reasonably feasible. Unless otherwise agreed by the parties, the field-naming conventions shall be as stated below, and shall be consistently applied across all productions:

| FIELD NAME | FIELD DESCRIPTION |
|---|---|
| Begin Bates | The production Bates number associated with the first page of a Document. |
| End Bates | The production Bates number associated with the last page of a Document. |
| BegAttach | Beginning Bates number of the attached documents |
| EndAttach | Ending Bates number of the attached documents |
| BeginFamily | Begin Bates number of the first page of parent Document of family of attachments. |
| EndFamily | End Bates number of the last page of last attachment to a family of Documents. |
| AttachCount | Number of document attachments. |
| AttachNames | Native file names of each individual attachment, separated by semicolons. |
| Custodian | Identification of the custodian(s) from whom the file was sourced. |
| All Custodians | Identification of all custodians who the producing party agreed to produce and where a duplicate of the Document was de-duplicated when processing the documents. |
| File Path | The file path from which the document was collected |
| All Paths | Identification of all file paths for duplicate copies. |
| Author | Author field extracted from the Metadata of a Document or other creator identified for the Document. |
| From | From field extracted from the Metadata of an email message. |
| To | To field extracted from the Metadata of an email message. |
| Cc | Cc field extracted from the Metadata of an email message. |
| Bcc | Bcc field extracted from the Metadata of an email message. |
| Pages | Total number of pages in the Document. |
| Date Received | Datetime received (MM/DD/YYYY HH/MM/SS). |
| Date Sent | Datetime sent (MM/DD/YYYY HH/MM/SS). |
| Date Created | Datetime created (MM/DD/YYYY HH/MM/SS). |

| FIELD NAME | FIELD DESCRIPTION |
|---|---|
| Date Modified | Datetime that a Document was last modified (MM/DD/YYYY HH/MM/SS). |
| Last Modified By | Identification of person(s) who last modified a Document. |
| Message Id | Unique Message Id. |
| In Reply To | Message ID of email that instant email is in reply to. |
| Subject | Subject line extracted from an email, e-document or e-attachment. |
| Filename | The full name of the Native File. |
| File Extension | The extension of the file. |
| File Size | The size of the file in bytes. |
| MD5 Hash | The MD5 hash value of a Document. |
| SHA1 Hash | The SHA1 hash value of a Document. |
| Application | Name of the application used to open the file. |
| NativePath | The relative path to the native file for this Document. |
| TextPath | The relative path to the text file for this Document. |
| Redacted | Whether a Document has redactions (Y/N). |
| Placeholder | Whether a Document has a placeholder image (Y/N). |
| Confidentiality | Level of Confidentiality assigned. |
| Track Changes | Document has track changes (Y/N). |
| Hidden Content | Identifies documents with hidden content (i.e. hidden rows, columns, sheets, or slides). |
| Speaker Notes | Document has speaker notes (Y/N). |
| Has Comments | Indicates there are comments in the document. |
| Production Volume | Production volume number (e.g., V001, V002, etc.). |
| Producing Party | Name of party producing the Document. |

ORLDOCS 20838145 1