**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | |
|---|---|
| JED LEMEN, Individually and on Behalf of All Others Similarly Situated, Plaintiffs, | Case No.: 3:21-CV-1254-TJC-PDB |
| v. | CLASS ACTION |
| REDWIRE CORPORATION f/k/a GENESIS PARK ACQUISITION CORP., PETER CANNITO, and WILLIAM READ, Defendants. | **DEFENDANTS' RESPONSE IN OPPOSITION TO LEAD PLAINTIFF'S MOTION FOR SANCTIONS** |

Lead Plaintiff Jared Thompson ("LP") has not diligently pursued his case. In the two years since LP filed his *Amended Complaint* (Doc. 47) inclusive of a lengthy extension to the discovery window, LP has taken just *two* depositions (one which remains unfinished and the other confined to the narrow question of class certification). LP otherwise rejected offers by Defendants Redwire Corporation, Peter Cannito, and William Read (collectively, "Defendants") to resolve protracted discovery disputes. The *Motion for Sanctions* (Doc. 178) ("Motion") (filed without adequate conferral) seeks to erase LP's inaction through mischaracterization and omission of key events. LP cannot justify the requested relief. The Motion should be denied.

## I. BACKGROUND

Throughout this case, the parties have disagreed on the question of whether materials collected and created by attorney-investigators at the law

1

firm of King & Spalding, LLP ("KS") and those assisting them at KPMG, LLC ("KPMG") who investigated the allegations of former employee, Daniel Gievers, at the direction of Redwire's Audit Committee ("AC Investigation") were attorney work-product. The Court recently determined, however, that the doctrine *does* apply to such materials. Doc. 174, p. 3 ("WP Order").

Prior to the WP Order, on June 21, 2024 ("June Production") Defendants produced presentations ("Presentations") ███████████████████ ██████████████████████████ (Doc Nos. 179-13, 179-14) that ████████████████████████████████████████████████, along with the underlying referenced documents[2]. **Ex. 1**, pp. 1, 9-10. The June Production followed negotiations with LP who had complained that he did not have insight into the investigators' process and conclusions due to Defendants' privilege assertions. *See* **Ex. 1**. In the wake of the WP Order, LP now weaponizes the voluntary June Production casting the Presentations as smoking guns in a false narrative of discovery misconduct so as to remedy its tepid[3] prosecution of this case and reverse the recent WP Order. This is legally and factually

---

[1] The instant Motion is also likely attributable to the fact that, even with the Presentations in hand, LP is still unable to identify documents supporting their larger case narrative that Defendants knowingly made misrepresentations to the public. The fishing exercise continues.

[2] Some other underlying documents were provided in a separate August transmittal.

[3] LP seeks to remedy its deficient prosecution of the case *by belatedly attempting to add a new plaintiff* (Doc. 183) (motion to add new class representative) beyond the amendment deadline, after certification briefing and after Defendants have established that *LP lacks standing*. Doc. Nos. 129, pp. 5-8, 170 pp. 1-5 (Briefing in opposition to class certification).

deficient.

The June Production came after LP walked away from a ***seven-month*** negotiation to identify records that Defendants could produce in response to LP's first (and only) document requests ("First RFPs") without revealing the work-product of the KS attorneys. Doc. 139-3, ¶¶7-12 (Summary of failed negotiations). Contemporaneous to Defendants' initial production pursuant to their own collection protocol[4], LP asked for a supplemental review pursuant to additional ESI search parameters that would have required review of over 1.4 million documents. Doc. 139-6. Following lengthy negotiation, Defendants agreed to review over 245,000 documents. Doc. 139-10, p. 2. LP abandoned this effort and the multi-month negotiation was wasted. *See* Doc. 139-11.

Thereafter, Defendants voluntarily (without Court order) provided the June Production on the grounds that such materials would provide LP the information it claimed to need without revealing protected attorney work product. **Ex. 1.** In receipt of the Presentations, LP apparently decided to convert Defendants' good faith effort to resolve a discovery roadblock, coupled with other parts of the discovery record, into allegations of misconduct by reaching back into the history of the case to argue that production should have been made earlier and that Defendants' written submissions were now in error.

---

[4] Defendants disclosed the search terms used to locate responsive documents contemporaneous to such efforts. Doc. Nos. 139-2, 179, ¶ 10.

Not only does a passing analysis of these allegations reveal each to be without merit; *see infra*, § III.A.B.1, but the entire thesis of LP's argument is illogical: why would Defendants produce the Presentations through a specific production of such materials if they wanted to hide them or related information? Why do so in June, when LP would still have months left in discovery to propound follow-up discovery, which LP has not done? This is yet another attempt by LP to manufacture false controversy.

At present, Defendants are not withholding any records other than those over which they have asserted timely objections or placed on a privilege log. Defendants have properly revised discovery responses based on their evolving understanding of the facts, produced materials without Court order, offered common-sense resolution to LP's stated concerns, and have offered robust alternatives to the disclosure of the work product of Redwire's counsel, to no avail. LP could proceed to litigate its case in the normal course during the time he has left in discovery, but still chooses not to. Instead, LP brought this Motion seeking to erase months of his own poor litigation decisions and prior Court order. The Court should reject such efforts and deny the Motion.

## II.    LEGAL STANDARD

Rule 26(g) provides that signatures on discovery papers "certifies that the filing conforms to the discovery rules, is made for a proper purpose, and does not impose undue burdens on the opposing party in light of the

circumstances of the case." *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1372 (11th Cir. 1997). "This rule imposes a duty on an attorney to make a reasonable inquiry under the circumstances." *Gian Biologics, LLC v. Cellmedix Holdings, LLC*, 2016 WL 6568014, *4 (M.D. Fla. Nov. 4, 2016) (citing Fed. R. Civ. P. 26(g)). "The standard under Rule 26(g) depends heavily on the circumstances of each case, and the certification speaks as of the time it is made." *Id.* If Rule 26(g) is violated the court must impose sanctions, although the court has discretion to decide what sanctions are appropriate. *Id.* "A party who allegedly has failed to comply with Rule 26 has the burden to show that its actions were substantially justified or harmless." *Id.* (citation omitted).

"Federal Rule of Civil Procedure 37(c) provides for sanctions if a party fails to provide information or disclose a witness as required by Rule 26(a) or supplement such information as required by Rule 26(e)." *Friedman v. Ace Ins. Co. of Midwest,* 2023 WL 11256678, *1 (M.D. Fla. Aug. 1, 2023). "By its terms, Rule 37(c)(1) applies only if the failure to comply with Rule 26(a) was not 'substantially justified or harmless.'" *Go Mobile Flooring, LLC v. Blue Banyan Sols., Inc.*, 663 F. Supp. 3d 1294, 1305 (M.D. Fla. 2023).

"Rule 37(d)(1)(A)(ii) provides that if a party, after being properly served with a request for production, fails to respond, the court may, on motion, impose sanctions." *United States v. Halifax Hosp. Med. Ctr.*, 2014 WL 12634466, *4 (M.D. Fla. May 8, 2014). Sanctions should not be awarded if the

party's actions were "substantially justified or other circumstances make an award of expenses unjust." *Bailey v. Final Touch Acrylic Spray Decks, Inc.*, 2008 WL 3982501, *3 (M.D. Fla. Aug. 25, 2008).

## III.  ARGUMENT

The Motion is procedurally improper as LP failed to adequately confer and is substantively improper as the Motion presents a factually false or incomplete narrative and fails to demonstrate how the complained-of issues justify sanctions or that LP suffered any prejudice. Also, the requested relief is disconnected from the facts and law, warranting denial of the Motion, in full.

### A.    LP Failed to Adequately Confer Before Filing the Motion

LP—once again—did not adequately confer with Defendants before filing the Motion as required by M.D. Fla. LR 3.01(g). Not until LP filed this Motion were Defendants aware of the relief sought and the grounds for such relief.

Just *forty-eight hours* before LP filed the Motion, the Court denied an earlier motion by LP for failure to confer.[5] Doc. 174.; pp. 15-16. The Court stated that Rule 3.01(g) is "strictly enforced" and noted that the Middle District Discovery Handbook states that "[t]he term 'confer'…means a substantive discussion…" *Id.*, p. 15 *quoting Middle District Discovery (2021)*, § I.A.2. Rather than heed the Court's instruction, LP immediately violated it.

---

[5] Also, the Court previously directed LP to show cause as to why it should not be sanctioned for failure to comply with LR 3.01(d) in connection with another filing. Doc. No. 112.

On August 21, 2024, LP's counsel sent an email as to three motions - generally referencing prior discussions between counsel. **Ex. 2**, p. 3. As to this Motion, undersigned responded that LP failed to identify what issues would form the basis of the Motion and, importantly, what relief LP would seek. *Id.*, p. 1. LP's counsel *never responded*. Instead, LP filed this and the other discovery motions. Given outstanding issues, there was no "substantive" conferral. Given that Defendants have resolved or provided paths to resolve many of these issues, the lack of conferral is particularly impactful. *See Lennen v. Marriott Ownership Resorts, Inc.*, No. 616CV855ORL41EJK, 2019 WL 13023804, at *3 (M.D. Fla. Sept. 16, 2019) (Failure to confer "particularly applicable" to sanctions motion where responding party "offered to resolve" the "complained of behavior...").

This alone is a basis to deny the Motion.

**B.     The Motion Fails to Articulate a Basis for Sanctions**

The Motion seeks sanctions based on a false narrative that improperly characterizes prior discovery efforts and invents prejudice where none exists. To the contrary, any purported prejudice is a result of Lead Plaintiff's own inaction. Moreover, the Motion fails to explain how the manufactured concerns warrant sanctions pursuant to Fed. R. Civ. P. 26(g), 37(c)(1), or 37(d) under which LP moves, or how the requested relief is proper in any event.

1.     <u>The Motion Mischaracterizes & Exaggerates the Record</u>

LP presents a false narrative of the record in this case such that it fails to point the Court to any conduct worthy of sanction. Mot., pp. 13-19.

**First**, the Motion incorrectly asserts that the Presentations show Defendants "mischaracterized" the AC Investigation's "scope and purposes" in prior briefing. Mot., p. 14. LP alleges misrepresentations in Defendants' *Resp. to Lead Pl.'s Mot. for Determination of Privilege* (Doc. 105) ("Privilege Response"). *See* Mot., p. 14 (citing declaration in support of Privilege Response). This is false. The Presentations only bolster past representations.

The Presentations confirm—rather than contradict—concerns of potential litigation articulated in prior briefing. Defendants previously explained that the allegations of a letter by former employee, Dan Gievers, ███████████████████████████████████████████ Doc. 105, pp. 12-14; Doc. 105-1, ¶ 14. The Court determined that the specter of SEC enforcement action or other litigation justifies the claim of work-product. Doc. 174, p. 3 ("The work product comprises the investigatory work of King & Spalding and KPMG, hired by Redwire's Audit Committee in anticipation of an SEC enforcement action or other litigation…"). The Presentations ████

████████████████████████████████████████████

███████████. *See* Doc Nos. 179-13, 179-14. ████████████████

████████████████████████████████████████████. *Id.*

Rather it confirms the concern and strengthens the basis for the Court's prior

findings.

LP also complains that the Presentations suggest ██████████████████ ████████████████████████████████████████████████████. Mot., p. 14. This is irrelevant. So too is the fact that ████████████████████ ██████████████████████████████████████████. *See* Doc. 179, ¶ 47. Defendants never claimed that Gievers' retaliation and harassment claims were the sole basis of their anticipation of litigation. *See* Doc. 105. None of this shows that Defendants were unconcerned about other types of potential litigation as LP fails to rebut the stated basis for such concern: ████████ ██████████████████████████. *Id.*, p. 13. Moreover, the subject matter of potential litigation whether brought by the SEC, Gievers, or a third-party (i.e. *this very lawsuit*), was inextricably intertwined as demonstrated by the fact that ████████████████████████████████████████████. Doc. 105-1, Ex. 1. Indeed, *LP's continued efforts to obtain AC Investigation materials for use in this case even after reviewing the Presentations concedes that the work of attorney-investigators may be applicable to litigation beyond an SEC enforcement action.*

The Motion raises a series of other irrelevant issues connected to the threat of litigation. LP states that the Presentations "make no reference to

---

[6] ██████████████████████████████████████████████ ██████████████████████. *Confid. Sep. Agreement and General Release*, **Ex. 3.**

litigation, legal advice, privilege, or work product," Mot., p. 14; yet, there is no requirement that every document protected by work product explicitly state same. LP also notes that paper copies of the Presentations were sent to the SEC after the conclusion of the investigation, but does not explain why this is significant. *Id.* Of course, conclusions can only be communicated *after* the investigation concludes. No misrepresentations were made in prior briefing.

**Second**, the Motion argues that Defendants failed to produce "key" documents as Defendants have not produced ███████████████████ ████████████████ or Microsoft Teams videos referenced in Gievers' deposition. Mot., pp. 14-15. LP further argues that the June Production contained new materials not part of any prior production. *Id.* This ignores that Defendants timely asserted objections to production of the AC Investigation materials, LP never requested the referenced video recordings, and Defendants original collection effort employed search terms to identify responsive documents which they contemporaneously disclosed to LP.

As to documents assembled through the AC Investigation, Defendants timely objected to the request as "disproportionate" and that the "specific compilation and/or selection of documents by the Audit Committee's outside counsel would reflect the mental impressions of outside counsel, and thus, be protected by the work-product immunity." Doc. 179-2, p. 39 ("RFP Resp."). Thus, Defendants have no obligation to produce them over pending objections

10

that the Court has not yet adjudicated. *See* Fed. R. Civ. P. 34(b)(2).

As to any Microsoft Teams recordings[7], Defendants promptly informed LP that they do not consider such materials responsive to any Request. Notably, LP <u>has not</u> moved to compel its production or propounded additional discovery seeking the records. Substantively, LP conclusively asserts that one recording referenced in the demand letter sent by Gievers' attorney would be responsive to Request No. 29[8]. Mot. p. 15. This seeks: "All Documents concerning Redwire's notification, decisions to investigate, and investigation of the whistleblower complaint relating to 'accounting issues with a business subunit' (as described in the Complaint, e.g., ¶¶70–72, 75)." Doc. 179-2, p. 12. The cited testimony does not reveal the recordings to touch on these topics. Further, even if responsive, which it arguably is not, Defendants also objected to Request No. 29 as overbroad, disproportionate and unduly burdensome. RFP Resp., pp. 36-37. Defendants advised LP of their position that these materials were not responsive within one week after inquiry by opposing counsel. Aug. 13, 2024 Correspondence, **Ex. 4**, p. 10. As noted, LP has taken no action[9] to

---

[7] Testimony suggests that there may be recordings of ████████████████████████████; Doc. 179-12, 126:22-128:3; and "██████████████████████████████ ████████[.]" *Id. at* 267:24-268:10.

[8] The Motion claims that the recordings would also be responsive to "other requests," but does not identify any other RFPs. Mot., p. 15. Defendants have not identified any RFPs to which the recordings of general company meetings would be responsive.

[9] The contemporaneously filed motions to compel (Doc Nos. 176-77) *do not* seek production of these records.

compel or otherwise seek such records.

As to the fact that Defendants produced new materials as part of the June Production, the Motion ignores that Defendants' initial collection and production relied on search terms generated in a good faith response to the First RFPs and contemporaneously disclosed to LP. *See supra*, p. 3. Notably Defendants previously offered—but LP rejected—a substantial supplemental production that would have captured most of the new material.

To the extent that LP disagrees with Defendants' timely responses and objections or its collection efforts, it can seek judicial relief. Defendants reliance on such positions, however, does not suggest sanctionable misconduct.

**Third**, LP mischaracterizes Defendants' written discovery responses to claim that Defendants engaged in a calculated plot to obstruct discovery while ignoring that the Rules expressly provide for amendment of written responses and that the full information was always known to LP.

Request No. 38 seeks the production of documents related to governmental *investigations* on certain topics. Doc. 179-2, pp. 21-22. The Request emphasizes documents that would show classic tools of an investigation like witness interviews, document requests, or subpoenas. *Id.* Defendants have no knowledge of such an investigation, as stated in response. *Id.*, p. 22. Separate from such type of an investigation, however, Redwire self-reported the allegations that prompted the AC Investigation to the SEC ("Self-

Report"). At end, the SEC closed the matter and never appeared to take any action as a result. **Ex. 5**, p. 2 ("The Company self-reported this matter to the SEC on November 8, 2021 and on August 1, 2023, the SEC notified the Company's counsel that this matter is closed."). As Defendants did not consider the Self-Report to be an investigation, as suggested by the Request, it was not referenced in the original response. Defendants, however, later noted that in the course of the Self-Report that the SEC, as an apparent matter of routine, assigned the matter an investigation number. The significance of such number is unknown. In any event, it was disclosed to LP on the *same day* Defendants' counsel learned of it, **Ex. 4**, p. 6, and the response updated. *Defs. First Am. Resp. to Lead Pl's First Set of Req. for Produc. of Docs. to All Defs.*, Aug. 28, 2024, **Ex. 6.** Such discussion as to the number is a red herring—LP has everything regarding the Presentations.

Notwithstanding the amended response, *LP has known of the Self-Report for the entire duration of this litigation*. Importantly, the operative complaint directly quotes multiple Redwire press releases, detailing the Self-Report. Doc. 47, ¶ 19 ("As previously disclosed, the Company self-reported this matter to the SEC on November 8, 2021 and *intends to continue to cooperate with any requests from the SEC.* (emphasis in original)), ¶ 70 ("The Company has voluntarily reported the matter to the Securities and Exchange Commission."), ¶ 75 (same), ¶ 107 (same). Moreover,

13

in response to a prior motion in this case, Defendants offered a declaration that expressly discusses the Self-Report. Doc. 105-1, ¶ 10. At no point was the Self-Report hidden from LP. Rather, it was repeatedly referenced. Indeed, Defendants voluntarily produced—without Court order—the Presentations (part of the Self-Report process) that LP now touts as some hidden fact.

Accordingly, the Motion attempts to convert an alleged failure to timely amend a discovery response, which Defendants volunteered to do in advance of LP filing this Motion, into a demonstration of some larger plot. This is not convincing given the ubiquity of references to the Self-Report.

**Fourth**, the Motion complains Defendants previously redacted the full title of the February presentation to the SEC in a prior privilege log. Yet, this ignores that Defendants *voluntarily* produced such document without Court order and have removed it from their log. *See supra*, p. 3. Plus, at the time Defendants served the log, Defendants made certain redactions to information in the "Title/Subject" line that Defendants believed would reveal privileged work product information. *See* Fed. R. Civ. P. 26(5)(A) (withheld documents must be described "in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim"); *Cabot v. Wal-Mart Stores, Inc.*, No. CIV 11-0260 JB/RHS, 2012 WL 592874, at *13 (D.N.M. Feb. 16, 2012) (permitting log redactions where "[a]n entry may itself reveal work product"). Nevertheless, the entry still detailed the document as

14

"Redwire Corporation Presentation," "King & Spalding presentation slides,"
and otherwise identified KS and KPMG as the authors. Doc. 179-9, p. 10.

Defendants had a good faith basis to redact the information of the
attorney-investigators' decision of who to make presentations to and withhold
the February presentation through reliance on caselaw that supported the
position that a self-report to the SEC does not waive work product privilege as
the parties in such circumstance are positioned in a common interest position.
*See In re Cardinal Health, Inc. Sec. Litig.,* No. C2 04 575 ALM, 2007 WL
495150, at *9 (S.D.N.Y. Jan. 26, 2007) (self-report and production of Audit
Committee materials did not waive work product; the Audit Committee
determined that it and the SEC shared a "common interest"); *see also In re
Symbol Techs., Inc. Sec. Litig.*, No. CV053923DRHAKT, 2016 WL 8377036, at
*6 (E.D.N.Y. Sept. 30, 2016) (declining to adopt *per se* rule that voluntary
disclosure of documents to governmental entities is waiver of work product
privilege). Then, Defendants re-visited the analysis and the logging of the
document and *self-produced* it. As with much of the Motion's arguments, any
stated concerns as to this entry are now moot and do not reveal any effort to
improperly conceal facts but reflect the evolution of the discovery process.

**Fifth**, the Motion incorrectly argues that Defendants' Rule 26 initial
disclosures are deficient. Mot., p. 18. LP's position misstates the requirements
of Rule 26(a)(1). Pursuant to Rule 26(a)(1)(A), a party must disclose documents

15

or witnesses "that the disclosing party may use to support its claims or defenses…" LP seems to argue that this obligates Defendants to identify every witness and document of which they have knowledge, or otherwise identify every source where discoverable or relevant information may be located. Mot. p. 18. This is not the law. Rather, supplementation of a Rule 26 disclosures is common in civil litigation and not grounds for sanctions where an opposing party is otherwise aware of the information in question, or is able to meaningfully prepare its case. *First Baptist Ferry Pass Inc. v. W. World Ins. Co.*, 681 F. Supp. 3d 1257, 1266 (N.D. Fla. 2023) ("The critical question in determining whether there has been a violation of Rule 26(e)(1)(A) is whether the opposing party had meaningful notice to prepare its case."); *id.* at 1266-67 (no disclosure supplementation needed when the other party has learned of the information otherwise).

Here, LP brings the Motion based on information he learned months before discovery closure. The Motion complains of discovering information through routine discovery processes, which is not a violation of Rule 26. *See id.* Also, Defendants supplemented their disclosures well before the close of discovery. **Ex. 7**. Additional individuals and documents referenced on the updated Rule 26 disclosure are not new to LP. The updated disclosure references Defendants' expert (who has already been deposed) and one additional Redwire executive already known to LP and mentioned by name in

16

prior depositions. *Id.* As to documents, the amendment referenced only those already produced in this case. *Id.*

Accordingly, Defendants have complied with Rule 26.

**Finally**, LP incorrectly claims that Defendants "obstructed" the deposition of Gievers. Mot., pp. 18-19. LP refuses to acknowledge that the cause of its complaint is self-created, includes accommodation of the personal vacation schedule of his own counsel, that all issues have been resolved or that ███████████████████████████████████, permitting him access to Gievers.

LP asserts that Defendants obstructed the deposition by producing documents three days following the deposition. That production, however, was the result of negotiations (initiated by Defendants) that began on May 22, 2024 and whose conclusion[10] was delayed to accommodate the vacation of LP's counsel. **Ex.** 4, p. 6 n. 3; **Ex.** 1. Had the negotiations proceeded without such accommodation, LP would have received the documents sooner. LP conducted Gievers' deposition with full knowledge that it would receive a supplemental document production within a matter of days—which it did. *See id.*

LP complains of obstruction as Defendants objected to the production/discussion of a *confidential* separation agreement between Gievers

---

[10] Attorney Kathrein was traveling on vacation for much of June and negotiations did not conclude until June 17 after his return. Ex. 4, p. 6 n. 3. The agreement precipitating the June Production included LP's withdrawal of a pending motion on June 20—after Gievers' deposition on June 18. *See* Doc. 156. The production followed on June 21. *Id.*

and Redwire. Mot., p. 19. However, following conferral with Gievers' counsel, Defendants withdrew their objections. Gievers produced the agreement. Mot., p. 19. LP's citation to cases addressing objections to certain agreements are irrelevant. *Solidda Grp., S.A. v. Sharp Elecs. Corp.*, 2013 WL 12091057, at *2-3 (S.D. Fla. Mar. 19, 2013); *Blount v. Stanley Eng'g Fastening*, 2020 WL 5038522, at *7-8 (W.D. Ky. Aug. 26, 2020). Here, the objection was withdrawn.

LP's complaints related to Gievers' deposition are now moot: LP can continue his examination of Gievers to the extent needed in regard to the June Production and the separation agreement. The Motion rejects such solution by suggesting that that Gievers has no obligation[11] to sit for further examination yet _fails to inform the Court_ that the parties and Gievers _already agreed_ that his testimony would continue at a future date. Doc. 179-12, 323:3-245. Gievers' counsel has offered multiple dates to conclude his deposition and will assent to further direct examination by LP's counsel. **Ex. 8.**  Indeed, for the first time, on the day of this opposition, LP's counsel appears willing to discuss rescheduling this deposition. **Ex. 9**. Thus, the stated concerns related to this Deposition appear resolved.  *See* **Exs.** 8, 9.

**In sum**, the Motion presents a series of allegations without fully informing the Court of important circumstances that demonstrate Defendants

---

[11] This argument is also disingenuous as it fails to account for the fact that ███████ ████████████████████. Doc. 179-12, 320:15-18.

18

have acted in good faith throughout the discovery process.

### 2.    Sanctions Are Not Warranted under Rule 26 or 37

LP's factually incorrect or irrelevant assertions do not support sanctions under Rules 26(g), 37(c)(1), or 37(d). Importantly, the Motion fails to explain—nor could it—how each of the above-referenced concerns justify the imposition of sanctions. *See generally* Mot. Moreover, any late disclosure here is harmless as there is no basis to find that such issues prejudiced LP. To the contrary, to the extent LP has been prejudiced, it is by virtue of his own poor litigation decisions.

Initially, the cited rules only apply to discovery conduct. To the extent that the Motion asserts Defendants made misrepresentations in prior *briefing*, which it did not; *see supra*, pp. 8-10; there are no grounds for such sanctions.

Moreover, all three cited Rules provide that sanctions are improper where a party's conduct was substantially justified. *Supra*, § II. Here, Defendants' conduct throughout has been substantially justified. As to the aforementioned briefing, Defendants took the position that the AC Investigation materials were protected because of a fear of litigation including an enforcement action by the SEC—a fear which is *confirmed* rather than disproved by the Presentations. *See supra*, pp. 8-10. As to the withholding of documents (AC Investigation materials, Teams recordings, or otherwise), Defendants simply stand on their timely objections, valid interpretation of

19

pending requests, and disclosed reasonable search terms—an issue that is regularly addressed through routine motion practice that LP can—and now has, partially—availed himself of. *Id.* As to the written discovery response and privilege log entries, Defendants proceeded under a reasonable interpretation of the fact and law at the time, but *sua sponte* amended the responses and log immediately upon a development in such understanding, which responses exist in the context of the case where the Self-Report has always been known. *Id.* As to the disclosure of information following Gievers' deposition, Defendants have shown such disclosure to be the result of good faith negotiations that started before the deposition. Finally, as to the first version of Defendants' initial disclosures, Defendants based the content on information known at the time which has only slightly changed to include otherwise known documents and individuals. Accordingly, Defendants' conduct is substantially justified.

Finally, both Rules 26(g) and 37(c)(1) preclude sanctions where there is no harm. *Supra*, § II. Similarly, Rule 37(d) precludes unjust sanctions. *Id.* "A failure to timely make the required disclosures is harmless when there is no prejudice to the party entitled to receive the disclosure." *Hewitt v. Liberty Mut. Grp., Inc.*, 268 F.R.D. 681, 683 (M.D. Fla. 2010) In this context, "[p]rejudice generally occurs when late disclosure deprives the opposing party of a meaningful opportunity to perform discovery and depositions related to the

20

documents or witnesses in question." *Jones v. Jones*, 2020 WL 9596787, *2 (M.D. Fla. Dec. 4, 2020) (internal quotation omitted); *Berryman-Dages v. City of Gainesville Fla.*, 2012 WL 1130074, *2 (N.D. Fla. Apr. 4, 2012) (same). That is demonstratively *not* the case here as the discovery window remains open.

Here, LP complains exclusively of issues that are either entirely resolved, of disclosures made well before the close of discovery, or issues of his own making. Again, discovery remains open as of the filing of this opposition. *See* Doc. 158, p.1 (setting discovery deadline as November 5, 2024). As to the allegations related to Gievers' deposition, Defendants immediately offered a means to fully resolve LP's concerns yet LP refused to agree to a reasonable resolution, until the date of this opposition, suggesting the true motivation was to manufacture a fake controversy. Nevertheless, a resolution is at hand and there is no identifiable harm in connection with the deposition. Exs. 8, 9. As to the supplementation of initial disclosures, Defendants did not violate Rule 26(e)(1)(A) because LP knew of the Presentations and other information with substantial time left in discovery, *See First Baptist Ferry Pass Inc.*, 681 F. Supp. 3d at 1267; *see also* § 2049.1 1993 Expansion of Duty to Supplement or Correct, 8A Fed. Prac. & Proc. Civ. § 2049.1 (3d ed.)("[T]here is no need as a matter of form to submit a supplemental disclosure to include information already revealed by a witness in a deposition or otherwise through formal discovery.").

Further, even if the Court were to determine that Defendants should have produced or disclosed information earlier, all materials and information—other than those for which Defendants' properly asserted objections that remain pending—were produced *months* before the close of discovery. Indeed, the Presentations were produced in June, *five* months before the close of discovery. Thus, even if the Court were to accept the unbelievable claim that LP had no knowledge of Redwire's interactions with the SEC in accordance with the Self-Report beforehand, by June, LP had full knowledge of such events with ample time to perform discovery and depositions related thereto. The fact that LP has, since June, propounded zero discovery on the topic reveals that (a) the issue is less significant than claimed, and (b) any prejudice is of LP's own making by failing to pursue the issue in discovery.

Nor are LP's claims of prejudice compelling. Mot., pp. 19-21. At best, the Motion asserts that the AC Investigation was important because it prompted March and April 2022 public disclosures. *Id.*, p. 21. The Motion suggests that earlier disclosure would have permitted conferral on Defendants' claims of privilege. *Id.* Yet, the Motion ignores that Defendants *already* produced the Presentations, nothing about the Presentations changes whether the AC Investigation materials are protected work-product, and LP cannot show an inability to engage in subsequent discovery after the June Production. *See* Mot.

Also, the cases referenced in the Motion are inapposite. In *Roca v.*

22

*Alphatech Aviation Servs., Inc.*, the Court found prejudice where, in support of summary judgment, a party filed a deposition transcript from an unrelated case as the opposing party was unable to depose the newly disclosed witness prior to filing a timely response in opposition to summary judgment. 2013 WL 12333471, *3 (S.D. Fla. June 19, 2013). Notably, the Court only granted relief as to use of the transcript in the at-issue briefing, but permitted the witness' testimony at trial given that the movant would be able to depose the witness prior to trial. *Id.* at *1, n. 1. LP does not identify (nor could it) any briefing deadline put in jeopardy here. *See* Mot. Moreover, even LP's own cited case law notes that sanctions are inappropriate where—like here—a party has ample time to conduct subsequent discovery. *Id.*

Precedent dictates that disclosure months before the close of discovery precludes an imposition of sanctions based on a lack of prejudice. *See Jones*, 2020 WL 9596787, at *3 (Late disclosure was harmless where made before the close of discovery). There is no basis for the Court to impose sanctions.

**C.    Requested Relief is Improper in these Circumstances**

The relief sought by the Motion is improper and should be denied.

1.    <u>Exclusion of Materials Not in Original Rule 26 Disclosure is Improper</u>

First, LP mistakenly requests that the Court preclude Defendants from relying on witnesses or documents not listed on the original Rule 26 disclosure.

23

Mot., p. 21. This argument relies on misunderstanding of the law, of which Defendants have repeatedly attempted to educate LP, to no avail. Specifically, the Rules expressly permit supplementing initial disclosures. Fed. R. Civ. P. 26(e)(1)(A). The law does not require formal update of initial disclosure forms where a litigant is otherwise provided the information in question. *See First Baptist Ferry Pass Inc.*, 681 F. Supp. 3d at 1267; *see also* 8A Fed. Prac. & Proc. Civ. § 2049.1 (3d ed.). LP cannot cite to any disclosure warranting sanction.

At best, this request is premature as the Motion does not point to any actual document or witness that is included in some hypothetical future disclosure. Not until LP presents the Court with something concrete could the Court possibly determine whether the challenged witness or document was adequately disclosed. *See Friedman v. Ace Ins. Co. of Midwest*, No. 6:22-CV-939-RBD-RMN, 2023 WL 11256678, at *1-2 (M.D. Fla. Aug. 1, 2023) (motion for exclusion of information pursuant to Rules 26 and Rule 37 was premature where disclosing party had not yet relied on the purported untimely discovery).

Finally, LP's cited cases are inapplicable. In *Kona Spring Water Distrib., Ltd. v. World Triathlon Corp.*, a litigant's violation of *court order* to produce certain records and belated production caused opposing party to "revisit its prior discovery and to re-depose witnesses at considerable expense." 2007 WL 737624, *3 (M.D. Fla. Mar. 7, 2007). Here, Defendants did not ignore a Court order and given that LP has conducted almost no discovery, there is no need to

24

re-do anything. In *Browning v. Bay Radiology Assocs. PL*, a litigant claimed damages *in a summary judgement motion* not listed on their initial disclosures. 2024 WL 3200472, *2 (11th Cir. June 27, 2024). The court excluded evidence of such damages and noted that the moving party "failed to provide any supplement to any disclosure during the pendency of his case." *Id.,* at *2. LP cannot claim this case to be similar as the discovery period remains open and summary judgment briefing is well in the future. Indeed, to the extent that LP complains that Defendants have voluntarily updated disclosures in this case (formally or otherwise), LP complains of the exact conduct that the Court in *Browning* suggested would have saved the sanctioned party from sanction. *Id.*

LP fails to justify its request for exclusion of any evidence.

### 2.    AC Investigation Documents and Witness Interview Notes

Second, LP asks for production of "all withheld Audit Committee materials, including the ███████████████████████████████ ██████████, witness interview notes or memoranda, and any other documents supporting the presentations and conclusions to the SEC." Mot., p. 22. LP seeks such relief based on (a) waiver of privilege based on disclosure to the SEC, and (b) generically, as a "sanction". *Id.* This is unreasonable and conflates the various motions LP simultaneously filed, exceeding page limits.

Initially, LP briefly asserts that Defendants waived privilege by disclosure to the SEC. *Id.* Yet, LP fails to articulate in what way there was any

waiver as to records beyond those disclosed to the SEC *and already produced here. Id.* This argument is actually briefed (albeit unconvincingly) in LP's other motion. *See* Doc. 176. Defendants separately respond to that issue, which is not related to the imposition of sanctions, in their contemporaneously-filed response. To the extent waiver is sought as a *sanction*, the Motion ignores that this is "an extreme sanction that should be reserved for cases of unjustifiable delay, inexcusable conduct, or bad faith in responding to discovery requests." *Payne v. Seminole Elec. Coop., Inc.*, No. 3:19-CV-1173-J-32MCR, 2020 WL 7324683, at *3 (M.D. Fla. Dec. 11, 2020) (quotation omitted). "[M]inor procedural violations, good faith attempts at compliance, and other mitigating circumstances will militate against finding waiver." *Id.* (quotation omitted). Here, Defendants have consistently asserted work product privilege over materials relating to the AC Investigation. This includes the documents selected for review by the investigators and interview notes. *See supra,* p. 10.

The Motion does not appear to argue that Defendants engaged in alleged misconduct in regard to ███████████████, or interview notes or memorandum. Rather, LP seeks to take advantage of the Presentations to force the production of over ██████████████████████████████████ and materials created in the course of the AC Investigation *without having to substantively address Defendants' asserted privileges.*

Such a harsh sanction is improper. Defendants have not engaged in

26

"unjustifiable delay, inexcusable conduct, or bad faith in responding to discovery requests." *Payne*, 2020 WL 7324683, at \*3. Indeed, the facts of this case differ drastically from those cases cited in the Motion. *See Williams v. Taser Int'l, Inc.*, 274 F.R.D. 694, 696-98 (N.D. Ga. 2008) (Waiver of privilege "is the most extreme sanction that a court can impose for failure to follow required procedure…." but adopted such sanction where defendant *refused to comply with court's order* directing revisions to inadequate privilege log.); *In re Papst Licensing GMBH & Co. KG Litig.*, 550 F. Supp. 2d 17, 22 (D.D.C.) (Sanctions warranted where party *ignored the court's order* and delayed providing *any* discovery response to the defendant's discovery.).

By contrast, here, Defendants have not disobeyed a Court order or refused to engage in discovery as in *Williams* and *In re Pabst*. Rather, Defendants provided seventy-one pages of substantive answers and objections to the First RFPs, multiple privileges logs (amended and supplemented), an expensive production of documents, all in good faith based on Defendants' understanding, *sua sponte* revised written responses, as appropriate, provided multiple supplemental productions without prompting, and engaged in months long negotiations to work through discovery roadblocks (many of which led nowhere due to LP's repeated refusal to reach any accord).

### 3.   Relying on Affirmative Defenses

Third, LP requests the strictest of sanctions - the striking of Defendants'

27

affirmative defenses. Mot., p. 22. Such a sanction would be disproportionate.

In *Adana Investing, Inc. v. Wells Fargo Bank, N.A.*, cited by LP, the court issued a sanction where defendant made a *misrepresentation to the court after an order compelling production* that such production was complete. Almost a month a*fter the discovery deadline*, it was revealed that more responsive documents existed. No. 1:16-CV-21562-UU, 2017 WL 3668553, at *7-10 (S.D. Fla. Apr. 10, 2017). The court reopened discovery only for the purpose of allowing the plaintiff to take depositions on newly-disclosed documents. *Id*, *9.

Here, Defendants did not make misrepresentations or ignore Court orders, but rather, voluntarily disclosed the Presentations following their revisiting, in good faith, of prior privilege claim with almost half a year left in discovery. While in *Adana*, the plaintiff was permitted limited additional discovery, here, LP has indicated that he intends to conduct significant written discovery and depositions moving forward in the remaining discovery time and requested undefined extension of time. Permitting LP to conduct fulsome discovery while precluding Defendants from maintaining their defenses would be a disproportionate sanction. *See Palma v. Fla. Neurological Ctr. LLC,* No. 5:10-CV-00117-MMH, 2011 WL 6153601, at *4 (M.D. Fla. Sept. 7, 2011) ("Cases are best decided on their merits which will not occur if the defense cannot fully litigate its … defense. Whatever prejudice [plaintiff] may have suffered from not learning about the [] transcript until after he was deposed

28

appears to be outweighed by the benefits. ... Under these circumstances the striking of the defendants' affirmative defense and a prohibition against the use of the [] transcript at trial would unfairly punish the defendants.").

### 4.    Undefined Extension of Discovery

Finally, in one sentence, and further bolstering that there was no adequate conferral on the request for extension of time as a discovery sanction, the Motion concludes with a request for an undefined extension of the discovery deadline. Mot., pp. 22-23. LP still fails to state how much time he seeks; *id.*, having not adequately conferred with Defendants on such request in the first instance. *Supra*, § III.A. Should LP desire an extension of time, it should confer with Defendants and then file a motion under Fed. R. Civ. P. 6 and 16 so the request can be assessed under the standards therein *after* the parties actually confer on a specific request. As Defendants did not engage in sanctionable conduct, an extension is not warranted in the form of a sanction. Moreover, Defendants produced the Presentations in June 2024, but LP knew about the Self-Report for the entire duration of the case. Thus, LP has had ample time to conduct any discovery it desires before the close of the current discovery period.

For the reasons stated above, the Court should deny the Motion, in full.

Respectfully submitted,                         Dated: September 6, 2024.

*/s/ Glennys Ortega Rubin*                 **FRANK A. ZACHERL, ESQ.**
**ALFRED J. BENNINGTON, JR., ESQ.**       Florida Bar No. 868094
Florida Bar No. 0404985                   fzazherl@shutts.com

29

bbennington@shutts.com
**GLENNYS ORTEGA RUBIN, ESQ.**
Florida Bar No. 556361
grubin@shutts.com
**BENJAMIN F. ELLIOTT, ESQ.**
Florida Bar No.: 1010706
belliott@shutts.com

**SHUTTS & BOWEN LLP**
300 South Orange Avenue,
Suite 1600
Orlando, Florida 32801
Telephone: (407) 835-6757
Facsimile: (407) 425-8316
*Attorneys for Defendants*