

GLENNYS ORTEGA RUBIN
PARTNER
Shutts & Bowen LLP
300 South Orange Avenue
Suite 1600
Orlando, Florida  32801
DIRECT  (407) 835-6757
FAX      (407) 425-8316
EMAIL   grubin@shutts.com

August 13, 2024

**VIA EMAIL**

HAGENS BERMAN SOBOL SHAPIRO LLP

Reed Kathrein, Esq. (reed@hbsslaw.com)
715 Hearst Avenue, Suite 202
Berkeley, CA 94710

Peter A. Shaeffer, Esq. (petersh@hbsslaw.com)
455 North Cityfront Plaza Drive, Suite 2410
Chicago, IL 60611

**Re:**    ***Jed Lemen v. Redwire Corporation f/k/a Genesis Park Acquisition Corp., et al.,*** **Case No.: 3:21-CV-1254-TJC-PDB**

**Defendants' Response to Lead Plaintiff's Prior Discovery Correspondence and Conversation**

Counsel:

This letter responds to your correspondence in regard to the above-referenced matter dated July 23, 2024 (the "Jul. 23 Ltr.") and July 31, 2024 (the "Jul. 31 Letter") (together, the "Letters"), the conversation held between counsel on July 30, 2024 (the "Zoom Conversation"), and your email inquiry dated August 6, 2024 (the "Aug. 6 Email"). Our responses herein are the result of substantial efforts to further investigate and make additional inquiry of the issues you have raised.

Please note that we do not endeavor by way of this response to address every point raised in the Letters that total a combined twenty-seven pages of single-spaced text or the Zoom Conversation that lasted approximately an hour and a half. Rather, this letter memorializes our good faith response to your discovery inquiries, identifies solutions to many of your articulated concerns, and narrows the issues where a genuine (and routine) discovery dispute remains that may require Court adjudication. Accordingly, be advised that silence as to any assertions in earlier correspondence or conversation does not equate to agreement as to your characterizations.

First, however, Defendants take this opportunity—before addressing the specific points below—to reject any statement in either of your Letters or the Zoom Conversation suggesting that Defendants have not acted in good faith during discovery in this matter. Defendants have invested significant time and resources into complying with their discovery obligations and disagree with any assertions to the contrary. Indeed, Defendants have made voluntary disclosures and production

Exhibit 4

August 13, 2024
Page 2

in earnest. Furthermore, Defendants continue to voluntarily disclose responsive information through this letter as we learn such information. As discussed in more detail below, following the Zoom Conversation, we made further and additional inquiry into the various topics raised in your Letters. For example, we will provide additional clarification of prior interactions with the SEC (including based on information only learned today), agree to the production of certain previously disputed materials, and agree to further refine our written discovery responses in that regard. Accordingly, Lead Plaintiff has suffered no prejudice in this matter as a result of the concerns raised in the Letters or Zoom Conversation. Discovery is ongoing and the extended discovery deadline is in November.

Defendants' production efforts began with a voluminous document review project that took months and cost hundreds of thousands of dollars in attorney's fees based on a collection protocol that Defendants disclosed before commencing such efforts. Thereafter, Defendants willingly—and without Court order—participated in a _**seven**_-month exercise to endeavor to agree on a supplemental document review that Lead Plaintiff inexplicably walked away from despite Defendants' offer to review nearly a quarter of a million documents. Numerous times during those negotiations, Defendants cautioned Lead Plaintiff verbally and in writing that such negotiations were taking too long and were jeopardizing a timely completion of discovery in this case, but Lead Plaintiff simply ignored the issue and failed to act with any urgency.

Thereafter, in June 2024 and in the wake of Lead Plaintiff's choice not to pursue a larger supplemental production, Defendants—again without Court order—voluntarily made a limited production of documents of certain records that provided the type of information Lead Plaintiff stated it felt was needed. Specifically, Lead Plaintiff articulated a need for understanding of the Audit Committee investigation and results. Importantly, of the fifty-nine documents that Defendants produced in June 2024, at least thirty-eight[1] would have been included in the universe of records that Defendants previously offered to review, but that Lead Plaintiff abandoned. Had Lead Plaintiff not belatedly terminated such efforts, it would have received these records much sooner.

Finally, despite Lead Plaintiff's recent tone, the existence of records related to the investigation by Redwire's Audit Committee is not a new issue. An overriding theme throughout the discovery period in this case has been the parties' opposing views on the discoverability of materials related to that investigation. Since the inception of this case Lead Plaintiff has known that there was an Audit Committee investigation, having referenced such investigation in his own complaint and sought documents related thereto. Defendants have opposed certain aspects of those requests. Indeed, in February of this year, Lead Plaintiff filed a motion that touched on these disputes. Doc. 91. But, in a March hearing on the matter, Lead Plaintiff's counsel expressly stated that it was not seeking an order addressing the discoverability of the Audit Committee documents at large. Thus, throughout, Lead Plaintiff has known Defendants' position.

To the extent that Lead Plaintiff believes he lacks certain records at this point in discovery, he need only consider the litigation choices he has made during the progression of this case—most

---

[1] These are documents that are exact matches or near matches to the documents produced in June.

August 13, 2024
Page 3

notably, choosing to abandon the fruit of lengthy negotiations related to a potential supplemental production—rather than unprofessionally attack Defendants' good faith discovery efforts.

Despite Lead Plaintiff's unnecessarily combative tone of late, we continue to endeavor to take a proactive and professional approach to resolving discovery issues in a manner that is fruitful. To that end, we do believe that there are certain areas where the parties may be able to resolve their disagreements and we hope that such issues can be disposed of quickly. Such areas are discussed below. Of course, we also recognize that there will be issues that may need Court adjudication. That is not remarkable. To the extent that we can resolve any issues between the parties we welcome such opportunity. Otherwise, we anticipate regular motion practice.

## Audit Committee Investigation & SEC Presentations

In the Letters and the Zoom Conversation, Lead Plaintiff made a variety of arguments as to why it contends records related to (a) the Redwire Audit Committee investigation or (b) the investigators' presentation to the U.S. Securities and Exchange Commission ("SEC") and communications with the SEC are discoverable.

First, Defendants are not persuaded that further materials related to the Audit Committee investigation generally and in broad brush are discoverable. Second, Defendants have already produced materials related to the only SEC presentations of which they are aware, but will agree to make certain limited additional productions discussed below in furtherance of their good faith efforts to resolve discovery issues related to the SEC presentations and to ensure a complete record as to exchanges with the SEC (although Defendants note that all substantive information has already been produced).

*Audit Committee Investigation – Generally*

As an initial matter, Lead Plaintiff has, throughout this case, failed to discuss investigation-related materials with appropriate levels of specificity thereby complicating prior conferrals and motion practice. Instead, Lead Plaintiff (including in the Letters and Zoom Conversation) often refers generally to Audit Committee materials as a monolithic source of records despite notable differences within. It appears—although Defendants remain uncertain—that Lead Plaintiff seeks the following:

(a)    Redwire records ███████████ collected on behalf of, and at the direction of, attorneys during the course of their legal work conducted on behalf of Redwire's Audit Committee;

(b)    Redwire records ██████████ identified by attorneys during the course of their legal work conducted on behalf of Redwire's Audit Committee for further review;

(c)    Materials created by attorneys during the course of such work; and/or

(d)    Communications between Redwire and its attorneys/their agents.

These categories of documents are not subject to the same analysis. Yet, Lead Plaintiff fails to distinguish between them. Nevertheless, Defendants oppose the further production of these

August 13, 2024
Page 4

records. Not only are the above documents protected by various privileges, but production of such records is also objectionable pursuant to Defendants' relevancy and proportionality objections. Finally, Redwire reminds Lead Plaintiff that it has already produced in June 2024 the opinions of the investigators as disclosed to the SEC and the records upon which such opinions were based. Further production of thousands of records are of limited or no value as they would reveal attorney mental impressions and work-product while unnecessarily costing Redwire an inordinate amount of resources to review such voluminous documents for production. This request is unreasonable and unduly burdensome and Redwire properly objects to such productions.

As indicated, however, undersigned has made further inquiry as to the attorney-investigators at King & Spalding, LLP ("K&S") on certain related questions raised by Lead Plaintiff. Based on such conversation, Redwire represents the following:

- Documents that K&S identified for further analysis during their investigation are segregated and presently recoverable in their system[2];

- K&S does not have any transcripts or recordings of any witness interviews conducted during their investigation; and

- K&S does have attorney-drafted notes of the witness interviews conducted during their investigation which are protected work-product as they memorialize attorney mental impressions.

Based on the above inquiries, Redwire will update its privilege logs to reflect materials in K&S' possession, simultaneous to also making previously offered amendments to such logs with the understanding that inclusion of such documents on Defendants' logs does not waive other objections, including but not limited to, proportionality and relevancy.

Redwire reminds Lead Plaintiff that had it accepted Redwire's offer for a supplemental document production in the Spring of 2024, it is likely that such effort would have resulted in the production of many documents otherwise collected as part of the Audit Committee investigation without the production of non-responsive and irrelevant material. As to records in K&S' possession, Redwire objects as to the production of all such records as a single collection as doing so would (a) reveal attorney mental impressions, and (b) necessarily include numerous irrelevant records whose production is disproportionate to the needs of this case. Said differently, Lead Plaintiff has alternative means to collect these records without intruding on protected attorney thoughts but has, thus far, eschewed such discovery tools.

At this point, the parties have reached an impasse on this issue.

---

[2] Redwire disputes that all of these voluminous records reflect documents on which attorneys based their conclusions.

August 13, 2024
Page 5

*Audit Committee Investigation – SEC Presentations & Productions*

Defendants have already produced copies of the K&S presentation slides delivered to the SEC in February and June 2022.

Redwire further advises Lead Plaintiff that:

- K&S never made any other presentations to the SEC in regard to the work of the Audit Committee investigation;

- Any oral statements made during the presentations, which would have included characterization of the witness interviews, were not memorialized by anyone at K&S; and

- Redwire and the SEC did not execute any written confidentiality agreement related to information that Redwire shared with the SEC beyond those noted.

In further regard to the interaction between the Audit Committee investigators and the SEC, K&S transmitted copies of the February and June 2022 presentation slides via a cover letter. The two slide decks were transmitted bearing Bates numbers RDWAC-SEC-000001 through RDWAC-SEC-000097. Redwire previously produced a copy of both presentations to Lead Plaintiff. Further analysis reveals that the transmittal cover letter dated June 8, 2022 from K&S to the SEC was not part of the prior production. Although that cover letter includes nothing of substance and is simply a matter of logistics, Defendants will produce such document in the name of completeness.

Relatedly, during the Zoom Conversation, Lead Plaintiff's counsel inquired why the June presentation began at Bates No. RDWAC-SEC-000014 suggesting that there were other records that had not been produced. Undersigned notes that Bates Nos. RDWAC-SEC-000001 through RDWAC-SEC-000013 represents the February 2022 presentation. Redwire's prior production of the February presentation slides merely transmitted a copy that did not have such bates numbering on the document. Defendants will re-produce a copy of the February 2022 presentation slides bearing such Bates numbers for sake of completeness. It is our understanding that K&S never produced any other materials to the SEC.

In further examination of this issue, undersigned is now aware that a separate law firm—Kirkland & Ellis LLP ("K&E")—transmitted to the SEC on July 5, 2022 copies of documents referenced in the February and June 2022 K&S presentations. As noted, Redwire's June 2024 production (and those produced simultaneously through PwC) included both the presentation slides and identifiable records referenced therein. Thus, Lead Plaintiff already has nearly all of the documents that K&E transmitted to the SEC. The remaining documents not yet produced in this matter are either (a) logos and other images embedded in other records that populate as stand-alone documents, (b) excel files that we previously indicated we had difficulty locating, or (c) three attachments to a parent email that was previously produced. Again, in the name of completeness

August 13, 2024
Page 6

and despite the existence of duplicate files, Defendants will produce the K&E SEC transmittal including such ancillary documents.

Finally, as discussed on the Zoom Conversation and based on the above, we have made further inquiry of both K&S and K&E as to other communications with the SEC. In response, today we received additional documents from such attorneys that we previously did not have possession of and that indicate that, after Redwire self-reported the Gievers' allegations, the SEC assigned an "investigation number." Therefore, we will update the written response to RFP No. 38 accordingly and produce the limited number of communications between these law firms and the SEC which, again, are largely logistical in nature. We intend to produce these limited emails to you by the end of the week.

To be clear and avoid doubt, after our latest inquiries and exploration of this issue since our last exchange, and following production of the aforementioned records, undersigned is not aware of any other documents that K&S or K&E submitted to the SEC or any other written communications between them.

While Defendants disagree with Lead Plaintiff's various characterizations as to the disclosure of the SEC presentations, as Lead Plaintiff already had the applicable documents since June (with nearly a half year remaining in discovery thereafter) and will receive any outstanding ancillary records as described above, any of Lead Plaintiff's alleged concerns on this topic are moot and this issue is fully resolved.

## Deposition Testimony of Daniel Gievers

On June 18, 2024 Lead Plaintiff took the deposition of Mr. Daniel Gievers. Thereafter, Lead Plaintiff raised concerns that he was unable to fully depose Mr. Gievers because of subsequently received additional materials[3] from Defendants and because Redwire objected to questioning related to a confidential separation agreement between Redwire and Mr. Gievers.

---

[3] Defendants take this opportunity to rebut the insinuations that they purposefully withheld the referenced documents until after the Gievers deposition. This false narrative ignores the circumstances and agreement that led to the production of the referenced documents. Specifically, on May 22 Defendants' counsel reached out to counsel for Lead Plaintiff to begin negotiations that would result in the June production. Thereafter, the parties filed a joint motion on May 23 extending a briefing schedule to accommodate such discussions. At the time, the date for Mr. Gievers' deposition was not even finalized as undersigned later had to seek confirmation as to the deposition date. Importantly, counsel for Lead Plaintiff Reed Kathrein was traveling on a personal vacation for a large portion of June and while the relevant conversation commenced while he was absent, such discussions did not conclude until June 17 after he returned. The agreement under which the June production was made included Lead Plaintiff's withdrawal of a pending motion which Lead Plaintiff filed on June 20—*after* the Gievers deposition had already taken place. The referenced production followed the next day on June 21. Had the negotiations proceeded without accommodation of Attorney Kathrein's vacation, it is likely that Lead Plaintiff would have had the documents sooner. Moreover, as negotiations began in late May, Lead Plaintiff was aware at the time it took the Gievers deposition that the June production was likely forthcoming. Finally, Defendants note that of the twenty-one documents referenced in the Jul. 23. Ltr., at least fourteen of the documents were included in the set of documents that Defendants offered to review in February/March 2024 for a supplemental production that Lead Plaintiff rejected. Had Lead Plaintiff accepted that proposed supplemental production this would be a non-issue.

August 13, 2024
Page 7

During the Zoom Conversation, Defendants offered a solution to Lead Plaintiff's concerns. Specifically, Defendants offered Lead Plaintiff an opportunity to continue his examination of Mr. Gievers to address the recently disclosed records. Lead Plaintiff not only refused to accept this resolution, but stated on the Zoom Conversation that it would not agree to a date for Mr. Gievers' further deposition thereby prolonging any resolution to this issue unnecessarily.

The Jul. 23 Ltr. asserts that Lead Plaintiff was prejudiced because Defendants produced twenty-one[4] specific documents after the date of the deposition. Jul. 23 Ltr., pp. 12-13. As offered in the Zoom Conversation, Defendants consent to Lead Plaintiff continuing its direct examination of Mr. Gievers for an additional sixty minutes to ask him questions about the referenced twenty-one documents. At the conclusion of Mr. Gievers' prior testimony, the parties agreed that we would return at a mutually agreeable time to continue such deposition so that Defendants could conclude their cross-examination of Mr. Gievers. *Gievers Dep.* at 323:3-15; 325:6-12. Given that Mr. Gievers' deposition was set to continue notwithstanding your complaints, the additional offered direct examination may take place without any additional logistical[5] difficulty.

During both the Zoom Conversation and in the Jul. 30 Ltr. Lead Plaintiff failed to acknowledge that such additional testimony will cure any alleged harm stemming from the June production. Instead, Lead Plaintiff focuses his comments on the matters related to the Gievers separation agreement. Thus, it appears that Defendants' offer does in fact mollify Lead Plaintiff's concerns and the true dispute lies in regard to the separation agreement.

In further regard to Mr. Gievers, following the Zoom Conversation and at the request of Lead Plaintiff, the undersigned sent an email to Mr. Gievers' counsel to inquire as to the identity[6] of records Mr. Gievers has in his possession and was withholding. Mr. Gievers' counsel indicated that the only records in his client's possession were (a) a copy of the separation agreement, and (b) communications between Mr. Gievers and his prior attorneys. Mr. Gievers' attorney stated that he would not produce the communications with prior counsel to any party in this litigation based on Mr. Gievers' own privileges. To the extent Lead Plaintiff takes issue with such withholding, it should direct its disagreement to Mr. Gievers' counsel.

---

[4] The Jul. 23. Ltr. references RDW-0012332 twice.

[5] During the Zoom Conversation, Lead Plaintiff initially seemed to reject this offer because they had no procedural way to call Mr. Gievers back for further direct testimony. At that time, Defendant reminded them that the parties agreed to further testimony. Defendants also reminded Lead Plaintiff that Defendants have not begun any deposition of Mr. Gievers so if there was ever any procedural concern with taking Mr. Gievers' deposition, Defendants could simply notice their own deposition. Ultimately, Defendants expect that Mr. Gievers will agree to sit for a limited extended direct testimony on top of the remainder of Defendants' cross-examination on a single day rather than be forced to return for an entire separate day of testimony. As counsel for Lead Plaintiff did not press this point during the Zoom Conversation and it is not mentioned in the Jul. 30 Ltr., Defendant's assume that Lead Plaintiff agrees.

[6] As noted previously, Mr. Gievers indicated at the deposition that he possessed less than five documents, including a copy of a confidential separation agreement between him and Redwire. Defendants had no knowledge of what those records were. Initially, counsel for Defendants instructed Mr. Gievers not to answer questions about the separation agreement at the deposition. Thereafter, counsel for Mr. Gievers instructed his client not answer questions about other documents in his possession as doing so would, based on such counsel's assessment, violate the terms of the separation agreement. At no point in the deposition, did Lead Plaintiff's counsel suspend the questioning to call the Magistrate Judge for a ruling on whether the questioning as to the separation agreement was proper. Nor has counsel for Lead Plaintiff moved the Court for a such a determination in the weeks following the deposition.

August 13, 2024
Page 8

After such discussions with Mr. Gievers' counsel, however, Defendants have revisited their confidentiality concerns. Defendants agree to withdraw their prior objection to Mr. Gievers' production of the separation agreement (to the extent it is produced as "Attorneys' Eyes Only" pursuant to the operative *Stipulation Establishing the Protocol for Disclosure of Protected Material Produced in Discovery*) and would permit Lead Plaintiff to question Mr. Gievers on that document during the additional direct examination (and such deposition testimony would also be marked as "Attorneys' Eyes Only").

Based on the above proposed remedy, Defendants believe they have offered all that is needed to address this issue and invite Lead Plaintiff's counsel to cooperate with defense counsel and work on rescheduling the conclusion of Mr. Gievers' testimony.

## Role of Outside Counsel and Auditors

*Kirkland & Ellis, LLP*: In both Letters and the Zoom Conversation, Lead Plaintiff requested clarification as to the role of K&E. Undersigned stated that it was improper for Lead Plaintiff to propound discovery through the cloak of conferral discussion. It so follows that it is also improper for Lead Plaintiff to develop a factual record through informal conversations of counsel. Defendants have, however, communicated throughout this litigation that K&E did not perform the Audit Committee's investigation, but independently represented Redwire in conjunction with legal issues and legal advice, including but not limited to, Mr. Gievers' allegations. Moreover, Lead Plaintiff is certainly aware that K&E represented Defendants as counsel of record in this litigation. However, Defendants suggested that Lead Plaintiff serve a single interrogatory on the matter which Defendants would answer on an expedited basis. Lead Plaintiff rejected this suggestion despite the fact that such answer would create a clear record on the matter and provide Defendants with a better understanding as to what specifically Lead Plaintiff wants to make inquiry of above and beyond that which has already been disclosed. While Lead Plaintiff rejected such suggestion, Defendants will update their prior privilege log related to K&E interview notes to include further detail as to K&E's role. Accordingly, we consider this matter resolved.

*Other Parties*: Defendants note that the Jul. 23 Ltr. suggests confusion as to the role of other parties including K&S, KPMG, LLP, and Pricewaterhouse Coopers. Lead Plaintiff did not raise these other entities during the Zoom Conversation nor are they referenced in the Jul. 30 Ltr. Accordingly, Defendants assume that Lead Plaintiff no longer has any confusion about these entities and their roles.

## Internal Messaging System

On August 11, 2023 Redwire disclosed the sources from where it would look for documents responsive to Lead Plaintiff's document requests. That list includes "MS Teams Chats". Redwire's supplemental June 2024 production included records of internal Redwire employee chat conversations. Those records were gathered from the previously referenced "MS Team Chats".

August 13, 2024
Page 9

**Custodians**

On August 11, 2023 Redwire disclosed to Lead Plaintiff the identity of twelve custodians from whom it would gather records responsive to Lead Plaintiff's document requests. The February and June 2022 presentations to the SEC reference that the Audit Committee collected records from eleven custodians. Each of the custodians from whom the Audit Committee gathered records were included in the list of custodians searched for purposes of this litigation.

As to the three individuals that the Audit Committee interviewed but that were not included in the August 11, 2023 custodian list, Defendants' position is that their inclusion in any collection and production is disproportionate to the needs of the case as their roles do not suggest that they played a critical part in the relevant events or that further document collection would result in disclosure of any new information.

**Privilege Log Update**

As noted in prior briefing before the Court, Defendants will make updates to their prior categorical privilege logs. During the Zoom Conversation, Defendants also agreed to review the individual logs. Initially, Defendants will remove from the logs (including those relating to third-parties) any documents already produced in this matter as part of the June 2024 production. Moreover, Defendants will consider whether any remaining redactions can be adjusted out of a good-faith effort to reduce issues before the Court. Finally, and as discussed above, Defendants will update their privilege logs to (a) reflect materials in K&S' possession, and (b) clarify K&E's role.  To the extent such efforts reveal further documents for production, Defendants will make them available to Lead Plaintiff.

**Initial Disclosures**

The Letters assert the position that Defendants' prior Rule 26 disclosures are improper for failure to identify documents responsive to Lead Plaintiff's request for production or identify the sources of likely responsive documents. These positions misstate the requirements of Rule 26. That Rule only states that a party must disclose information related to documents or witnesses "that the disclosing party may use to support its claims or defenses…"  Certainly, much of the material that Lead Plaintiff suggests was not properly disclosed on Defendants' Rule 26 disclosure is not information that Defendants will use in support of their defense. It seems that Lead Plaintiff believes that Rule 26 disclosures must identify every source where discoverable or relevant information may be located—this is simply not the Rule. Lead Plaintiff's protests on this point seem to be driven from a misunderstanding of the law.

Moreover, it is common in federal civil litigation that Rule 26 disclosures be updated throughout the course of litigation. Indeed, case law suggests that so long as the other side knew of the information, no update is required. As stated, Defendants will likely update their Rule 26 disclosure as this case proceeds through discovery—which is still ongoing. Nevertheless, Defendants reject any assertion that they have acted improperly in regard to their Rule 26 disclosure obligations or that Lead Plaintiff can claim any preclusive effect at this point.

August 13, 2024
Page 10

Defendants do not believe that there is any more discussion to be had on this topic.

**Aug. 6 Email**

Finally, on August 6, 2024, Lead Plaintiff inquired as to any recordings of meetings held virtually through Microsoft Teams. Defendants do not believe that these records are responsive to any pending document requests served in this matter. Moreover, even if they were, the collection and production of such materials would be overbroad and disproportionate to the needs of the case as objected to in Defendants' prior written responses. Finally, it is improper for Lead Plaintiff's counsel to interpose questions about Defendants' business practices through the Aug. 6 Email as opposed to a formal discovery tool. To the extent that Lead Plaintiff seeks such information it may propound discovery on the matter and Defendants will respond as is appropriate based on the text of such written discovery, subject to any applicable objections. Defendants reserve all rights.

**Conclusion**

Defendants believe that in the time since the Letters, Zoom Conference, and Aug. 6 Email and pursuant to this letter that they have provided good-faith responses to the various issues raised in Lead Plaintiff's prior correspondence, will be making additional productions and updating privilege logs. It is our hope that the parties can work together in a professional manner to address any remaining discovery issues as they emerge in this case.

Sincerely,

**SHUTTS & BOWEN LLP**

Glennys Ortega Rubin, Esq.