**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | |
|---|---|
| JED LEMEN, Individually and on Behalf of All Others Similarly Situated, Plaintiffs, <br><br> v. <br><br> REDWIRE CORPORATION f/k/a GENESIS PARK ACQUISITION CORP., PETER CANNITO, and WILLIAM READ, Defendants. | Case No.: 3:21-CV-1254-TJC-PDB <br><br> <u>CLASS ACTION</u> <br><br> **DEFENDANTS' RESPONSE IN OPPOSITION TO LEAD PLAINTIFF'S MOTION FOR LEAVE TO AMEND THE FIRST AMENDED COMPLAINT AND MOTION FOR CLASS CERTIFICATION** |

Defendants oppose Lead Plaintiff Jared Thompson's ("LP") *Motion for Leave to Amend the First Amended Complaint and Motion for Class Certification to Add Anthony Cueter as Additional Class Representative* (Doc. 183) (the "Motion"). Through this Motion, LP all but concedes that he lacks standing for his claims and that he cannot serve as a class representative. The Court should deny the untimely and unjustified Motion.

## I.    <u>INTRODUCTION</u>

Over two years into this litigation and at the end of a lengthy and substantial class certification briefing, LP seeks to upend this case. Specifically, LP seeks to amend the operative *First Amended Complaint* (Doc. 47) (the "Amended Complaint") and to "supplement" his pending *Motion for Class Certification, Appointment of Class Representative, and Appointment of Class Counsel* (Doc. 85) (the "Certification Motion") so as to add a new class

1

representative, well-past the applicable deadlines to do so.

While LP characterizes this Motion as an inconsequential procedural safeguard, it is actually an improper attempt to sidestep a fatal deficiency in LP's Certification Motion. Through the Motion, LP implicitly concedes that he does, in fact, lack standing to pursue his claims and is not qualified to serve as class representative, dictating that the Court should deny the Certification Motion. To avoid such outcome, LP incorrectly asks the Court to ignore the correct legal standards, prejudice to Defendants, and LP's (and his counsel's) failure to adequately scrutinize his claims *before* seeking judicial relief.

LP offers <u>no justification</u> for why his attorneys are just now assessing standing. LP points to no new evidence, change in circumstances, or other rationale for such dilatory behavior. Rather, LP points the finger at Defendants. LP's position appears to be that he can ignore any obligations to ensure his case meets the prerequisite of standing until Defendants bring it up and can then blame *Defendants* for not raising a concern sooner. Mot., pp. 5-8.

Critically, the Motion fails to correctly identify, let alone satisfy, the applicable standards that govern LP's request to amend his pleadings and Certification Motion so as to add a new class representative at this late juncture. As such, the Court should deny the Motion.

## II.    <u>BACKGROUND</u>

The Court is well aware of the history of this litigation. Thus, Defendants

highlight only the dates relevant to the instant Motion.

On February 15, 2022, LP moved for appointment as lead plaintiff, (Doc. 24), which the Court granted on March 17, 2022, (Doc. 36). Thereafter, LP filed his Amended Complaint on June 17, 2022. Doc. 47. On August 8, 2023, the Court entered its *Case Management and Scheduling Order* (the "CMSO") which set certain relevant deadlines. Doc. 82. The CMSO set October 6, 2023, as the deadline to move to join a party or amend the pleadings, and January 19, 2024, as the deadline to move for class certification. *Id.*

LP filed his Certification Motion on January 19, 2024. Doc. 85. The Certification Motion requests that the Court (a) certify the proposed class, (b) appoint LP as Class Representative, and (c) appoint LP's current counsel as Class Counsel. *Id.*, p. 25. In support of the Certification Motion, LP offered a declaration of LP himself (Doc. 86-2), and a declaration of his counsel (Doc. 86), which included such counsel's "resume" (Doc. 86-3). LP was the only individual put forth to be appointed as class representative.

The parties engaged in substantial briefing in regard to the Certification Motion. Defendants opposed (Doc. 129) ("Certification Response"), LP replied in support (Doc. 159), Defendants filed a Sur-Reply (Doc. 170), LP filed a Sur-Sur-Reply (Doc. 182), and Defendants requested leave to file a Sur-Sur-Sur-Reply on September 10, 2024 (Doc. 191), which LP did not oppose. The class certification briefing has also included *Daubert* challenges to each party's

3

respective expert. *See* Doc. Nos. 136, 160, 161, 169, 171.

In the interim, the Court entered amended case management orders that extended the discovery deadline to November 5, 2024. Doc. 158. Further, in defense of this case, Defendants served written discovery inclusive of requests for admission, interrogatories, and document requests on LP on August 31, 2023. Defendants deposed LP on April 10, 2024.

LP filed the instant Motion on September 4, 2024—*27 months* after bringing this lawsuit. *See* Mot.

## III.  **ARGUMENT**

The Motion fails to justify its untimely nature. The deadline to move to amend the pleadings was October 6, 2023, and the deadline to move for class certification was January 19, 2024. Doc. 82, p. 1. LP's Motion is well after these deadlines, and does not meet the requirements for its belated requests.

Specifically, LP makes no effort to explain why he has good cause to bring this Motion almost a year after the deadline to amend pleadings, and seven months after the class certification deadline. Moreover, LP's requested amendment is plagued by undue delay and would unduly prejudice Defendants. The Court should deny the Motion.

### A.  **LP Attempts to Avoid the Applicable Legal Standards**

The Motion fails to accurately identify the appropriate legal standard. While the Motion does contain a legal "standard" section, Mot., pp. 2-4, LP

blurs together several rules and creates his own standard to argue in favor of the requested relief. The Court should apply the standards set by the Federal Rules of Civil Procedure and case precedent, not by opposing counsel.

The Motion argues that Rule 23(d)(B)(iii)[1] eliminates the requirements of Rule 16(b). Mot., p. 3. The Motion cites no authority for this hefty claim. *Id.* Moreover, this is incorrect as litigants must still comply with Rule 16 in the class action context. *See Nolen v. Fairshare Vacation Owners Ass'n,* 2021 WL 6125521, at \*2-4 (M.D. Fla. Oct. 15, 2021) (discussing discretion provided under Rule 23 but analyzing, and denying, the request to amend the scheduling order deadline under Rule 16(b)); *see also Oliver v. Am. Express Co.,* 2023 WL 4471937, at \*7 (E.D.N.Y. July 11, 2023) (Rule 16(b)(4) applies with equal force to class action pleadings and must be independently satisfied.). The Court should reject LP's attempt to unilaterally craft a standard based on "procedural fairness" and potential class prejudice under Rule 23.

It is well-settled that when a party moves to amend the pleadings *after the scheduling order deadline*, the Court must first address whether good cause has been shown under Rule 16(b). *Sosa v. Airprint Sys., Inc.,* 133 F.3d 1417, 1419 (11th Cir. 1998). Then, after Rule 16(b) is met, the Court will consider

---

[1] This rule discusses *notices* to class members not additions of class representatives. Also, referenced Advisory Committee Notes, Mot., p. 3, only address modification of an existing Rule 23(d) order, not scheduling orders or pleadings, and former definitions as to different class types. Fed. R. Civ. P. 23, Advisory Committee Notes to 1966 and 2007 amendments.

whether the amendment is proper under Rule 15(a). *Id.* Consideration of only Rule 15(a), disregarding Rule 16(b), "would render scheduling orders meaningless and effectively would read Rule 16(b) and its good cause requirement out of the Federal Rules of Civil Procedure." *Id.*

Rule 16(b) proscribes that a deadline in a scheduling order can only be modified "upon a showing of good cause." Fed. R. Civ. P. 16(b). "This good cause standard precludes modification unless the schedule cannot 'be met despite the diligence of the party seeking the extension.'" *Sosa*, 133 F.3d at 1418 (citing Rule 16 advisory committee's notes). "Rule 16(b)(4)'s 'good cause' standard is a rigorous one, focusing not on the good faith of or the potential prejudice to any party, but rather on the parties' diligence in complying with the court's scheduling order." *Asokan v. Am. Gen. Life Ins. Co.*, 302 F. Supp. 3d 1303, 1312 (M.D. Fla. 2017) (citing *Sosa*, 133 F.3d at 1418).

Rule 15(a) provides that the Court should "freely give leave [to amend] when justice so requires." Under Rule 15(a), a court need not allow an amendment if: 1) "there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed"; 2) "allowing the amendment would cause undue prejudice to the opposing party"; or 3) "where amendment would be futile." *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001) (citation omitted).

Here, LP must satisfy both rules. First, LP must satisfy Rule 16 both in

6

regard to his failure to timely seek amendment and in regard to his failure to timely move for Mr. Cueter to be appointed as a class representative. *Sosa*, 133 F.3d at 1418. Then, LP must also satisfy Rule 15 in regard to his request to amend the Amended Complaint. *Id.* The Motion fails on all steps.

### B. The Motion Fails to Demonstrate Good Cause under Rule 16(b) to Excuse LP's Failure to Meet Deadlines

Good cause has not been shown under Rule 16(b). Thus, LP cannot belatedly amend the Amended Complaint and move for additional class certification after expiration of the deadline for either.

**First**, LP makes <u>no argument</u> that he satisfies Rule 16(b). The Motion mentions in one sentence that Rule 16(b) requires good cause, Mot., p. 3, but neither addresses this standard nor LP's diligence. Rather, the Motion discusses prejudice, which is considered under Rule 15 rather than Rule 16, *supra*, § III.A; LP's manufactured "procedural fairness" consideration, *id.*; and irrelevant complaints as to Defendants' actions. Mot., pp. 4-9.

LP's complete failure to explain why he meets the Rule 16(b) good cause standard is, alone, sufficient to deny the Motion. *See Smith v. Sch. Bd. of Orange Cty.*, 487 F.3d 1361, 1367 (11th Cir. 2007) (denial of motion to amend complaint filed after deadline appropriate where plaintiff "did not indicate with any specificity the good cause he had for untimely moving to amend his complaint[,]" including "why those facts previously were undiscoverable.");

7

*City of St. Petersburg v. Total Containment, Inc.*, 2008 WL 5427770, at *4 (S.D. Fla. Nov. 4, 2008) (untimely motion to amend complaint to add new class representative to cure standing issue was denied because "Plaintiffs have not argued, let alone shown, good cause for their tardy request to amend").

**Second**, LP does not demonstrate good cause under Rule 16(b). The Motion is silent as to LP's own diligence. Rather than explain his own diligence, LP focuses on *Defendants'* purported lack of diligence in lodging standing challenges. Mot., pp. 4-6. But, of course, the good cause inquiry is about *LP's* diligence, not Defendants'. *Sosa*, 133 F.3d at 1419. Accordingly, LP's extended discussion on Defendants' conduct is irrelevant and insufficient.

**Third**, consideration of LP's actions solidifies that LP has *not* been diligent in complying with Court deadlines. In fact, many of the Motion's arguments as to why Defendants were purportedly not diligent actually show *LP's* lack of diligence. "A plaintiff lacks diligence when, prior to the scheduling order deadline, he either (1) had full knowledge of the information with which he later sought to amend his complaint, or (2) failed to seek the information he needed to determine whether to amend the complaint." *Donley v. City of Morrow, Ga.*, 601 F. App'x 805, 811 (11th Cir. 2015) (citation omitted).

Here, LP had full knowledge of relevant information that led him to determine a need to seek the instant relief. LP and his counsel have had full knowledge of the circumstances surrounding his standing, or more accurately,

8

his lack thereof, for <u>over two years</u>. LP attached his trading history to his February 2022 motion for appointment as lead plaintiff. *See* Doc. 24-2. There is no evidence that LP's trading history has changed. Through such submission, coupled with the Amended Complaint, LP has known that the only Redwire disclosures through which he held Redwire securities were the November 2021 disclosures announcing the Audit Committee investigation ("November Disclosures") but not the later March 31 or April 1, 2022 disclosures ("Spring 2022 Disclosures"). *See generally id.*; Doc. 47. The facts of this timeline and the substance of the November Disclosures have not changed.

Indeed, the Motion itself agrees and asserts that the facts underlying LP's standing were known as early as his 2022 motion for appointment as lead plaintiff. Mot., p. 4. According to LP, this shows that Defendants could have assessed LP's standing at any time since. *Id.*, pp. 4-6. Of course, it also demonstrates that LP himself and/or his counsel could have done the same. *See id.* As noted, LP's diligence is the dispositive question. *Supra*, § III.A.

LP could have, and *should* have, assessed the foundational question of whether selling his Redwire securities before the Spring 2022 Disclosures affected his standing during this time. But he did not. *See Owino v. CoreCivic, Inc.*, 2020 WL 1550218, at *11, n.5 (S.D. Cal. Apr. 1, 2020) ("[P]ursuant to [Rule] 11, [class action plaintiffs] had an affirmative duty to investigate the theoretical underpinnings of their complaint—including their standing—

before filing. Accordingly, denial of leave to amend to cure Plaintiffs' standing is appropriate." (citations omitted)); *Soto v. Castlerock Farming & Transp., Inc.*, 2011 WL 3489876, at *7 (E.D. Cal. Aug. 9, 2011) (Where Plaintiffs knew the causes of action and class representatives when filing the first complaint, "Plaintiffs were obligated to know at that time whether they adequately represented the claims they brought in that complaint.") (citing Rule 11(b)(3)); *In re Flash Memory Antitrust Litig.*, 2010 WL 2332081 (N.D. Cal. June 9, 2010) (Motion to amend filed alongside certification motion "untimely because Plaintiffs waited until after their class certification filing to request this substitution of plaintiffs. It is axiomatic that [] Plaintiffs should have made a preliminary determination that each of their representatives actually qualified [as a representative]. Such an inquiry should have been conducted at the inception of the litigation, not years after the action had commenced.").

LP offers no explanation for why he did not or could not have conducted such exercise before the applicable CMSO deadlines. Instead, LP's failure is further amplified by the Certification Motion itself wherein LP represents that his counsel "have extensive experience in litigating complex securities fraud class actions." Doc. 85, p. 12. In support, LP includes the biographies of his counsel touting a wealth of experience in these types of cases. Doc. 86-3. Such qualified counsel certainly should have stopped to think about standing. Yet, despite all the necessary information being readily available to LP and his

10

team of attorneys it seems that this basic analysis was never done.[2]

This case is easily distinguished from those cited in the Motion. Mot., pp. 3-4. Notably, three of the five cited cases do not evaluate Rule 16(b) at all rendering them inapplicable. *See Mills v. Gen. Dynamics Info. Tech., Inc.*, 2018 WL 6321588, at*1 (M.D. Fla. Dec. 3, 2018) (motion to amend filed before the scheduling order deadline); *Morris v. Walmart Inc.*, 2022 WL 19828970, at *2 (N.D. Ala. Aug. 19, 2022) (no deadline to amend proscribed in the scheduling order); *In re Allstate Corp. Sec. Litig.*, 966 F.3d 595, 614 (7th Cir. 2020) (addition of the class representative "was routine application of Rule 15").

The remaining two cases involve situations where lead plaintiff's circumstances changed unexpectedly throughout the case. In *Sullivan v. Gov't Emps. Ins. Co.*, the original plaintiff stated that she "no longer wish[ed] to serve as a potential class representative." 2018 WL 6267352, at *1 (M.D. Fla. Nov. 30, 2018). Good cause was found "because counsel for Plaintiffs did not know, and could not have known in the exercise of due diligence, before the CMSO deadline that [the original plaintiff] would change her mind about her willingness to serve as a potential class representative." *Id.* at *3.

In *Vision Constr. Ent Inc v. Argos Ready Mix LLC*, the court denied class

---

[2] The failure to ensure LP has standing supports Defendants' previously-asserted position that LP merely put forth "an off-the-shelf, generic, motion for class certification that fails to account for the nuances and particular circumstances" of this case. Doc. 129, p. 2.

certification because it found, in part, that the proposed representative had a potential for a conflict of interest based on a business relationship with class counsel. 2020 WL 6749040, at *2 (N.D. Fla. May 20, 2020). The Court found good cause to grant a requested substitution of the representative after such order because the need for substitution did not arise until the court ruled against the plaintiff on an issue that was not obvious at the outset. *Id.* at *4-5.

At best, LP has identified that amendment is proper where circumstances related to the original proposed representative change unexpectedly. *See GB, L.L.C. v. Certain Underwriters at Lloyd's London,* 2010 WL 11506994, at *9 (S.D. Fla. Apr. 16, 2010) (good cause shown for untimely request to add new class representative because original class representative's standing unexpectedly became moot during the litigation). By contrast, LP does not, and cannot, claim that his circumstances have unexpectedly changed so as to warrant the requested relief. As explained above *and in the Motion,* facts related to LP's standing have been known and are unchanged.

Further, LP also argues that he filed the Motion "promptly after *MacPhee* was raised by the Defendants." Mot., p. 7. As an initial matter, LP provides no authority or other support for the position that Defendants' challenge to a class representative's standing is new information that LP should not have reasonably known before. And, LP claims in the Motion that the publishing of *MacPhee v. MiMedx Grp., Inc.,* 73 F.4th 1220 (11th Cir. 2023),

12

in June of 2023, gave Defendants plenty of time to raise the case "well before" the parties submitted the proposed scheduling order. Mot., p. 6. Again, however, this only means that LP also had plenty of time to assess the impact of *MacPhee* on his standing in advance of the missed deadline, and in the year since.

Further, *MacPhee* merely expanded on the principle set forth in *Meyer v. Greene*, published in 2013, that "the commencement of an SEC investigation, without more, is insufficient to constitute a corrective disclosure for purposes of § 10(b)" because "[t]he announcement of an investigation reveals just that— an investigation—and nothing more." 710 F.3d 1189, 1201 (11th Cir. 2013). As explained, *supra,* pp. 8-9, the dates of LP's sale and the November Disclosures, along with the content of the November Disclosures, have been known from the start of LP's involvement in this case. LP and his experienced counsel knew, or should have known, from the early stages of this case that this existing caselaw may preclude his standing.

**Finally**, even entertaining LP's unsupported position that the measure of diligence should run from when Defendants asserted their standing arguments, LP still does not meet the good cause standard. Defendants challenged LP's standing due to LP selling his Redwire shares before a corrective disclosure in their Certification Response, filed on April 24, 2024. Doc. 129, pp. 5-7. This is the same argument for which Defendants cited

13

*MacPhee*.[3] Doc. 170, pp. 1-4. Thus, at least by April 24, 2024, LP was on notice of Defendants' challenge to LP's standing based on the timing of LP's trading history. Yet LP waited <u>almost five months</u> to file this Motion to address the issue. During this time, the Court granted LP an extension of time to file his reply to the Certification Motion, (Doc. 149), even further briefing occurred, (Doc. Nos. 170, 182), and LP's expert was able to draft a full supplemental declaration to address standing. Doc. 182-2. Yet LP never acted.

LP again offers <u>no explanation</u> for his lack of diligence in waiting months to file this Motion following such notice of Defendants' standing arguments. Rather, LP sat back as additional resources were expended by Defendants and the Court in regard to the class certification briefings, and just now seeks intervention. This is not diligence. *See Saw Palmetto Berries Co-Op of Fla., Inc. v. Euromed USA, Inc.*, 2008 WL 11470851, at *2 (M.D. Fla. Aug. 25, 2008) (plaintiff was not diligent in waiting five months after receipt of transcripts to file motion to amend); *Sream, Inc. v. Munjal Corp.*, 2019 WL 9048996, at *1 (S.D. Fla. Mar. 26, 2019) (denying leave to amend affirmative defenses where defendant waited until five months after the deadline passed and six weeks after discovering the basis for the proposed amendment); *Gullo v. City of New York*, 540 F. App'x 45, 47 (2d Cir. 2013) (three-month failure to move for

---

[3] Defendants cited *MacPhee* itself in response to argument from LP that announcement of the Audit Committee investigation was alone a corrective statement. Doc. 159, p. 2, n 1.

amendment after learning new information failed to demonstrate diligence).

Indeed, LP's only argument is to consistently attempt to shift the blame in arguing that, somehow, it is *Defendants'* fault for not alerting LP to his lack of standing earlier in this case. Mot., pp. 5-6. Arguing that it is Defendants' obligation to ensure LP's case is adequately founded is an untenable position, and certainly not good cause. Rather, it is LP's responsibility to ensure his case is appropriately maintained by a plaintiff with standing. *Supra*, pp. 9-10. Failure to diligently investigate standing is not good cause to amend. *Id.*

In sum, LP has failed to show good cause for the untimely request to amend the Amended Complaint and move for class certification of Mr. Cueter. The Court should deny the Motion without further analysis.

## C.    The Motion Does not Demonstrate that Amendment is Warranted under Rule 15(a)

LP's request to amend the Amended Complaint is also improper under Rule 15(a). The requested amendment is plagued by LP's undue delay, and would cause undue prejudice to Defendants. *Bryant*, 252 F.3d at 1163.

### 1.    Undue Delay

LP unduly delayed this Motion's request. "A district court may find undue delay when the movant knew of facts supporting the new claim long before the movant requested leave to amend, and amendment would further delay the proceedings." *Tampa Bay Water v. HDR Eng'g, Inc.*, 731 F.3d 1171,

15

1186 (11th Cir. 2013).

LP brought this Motion eleven months after the CMSO's deadline to amend. As explained, *supra*, § III.B, LP admittedly knew of the facts underlying LP's lack of standing for at least a year before the deadline to amend, and two years before the filing of the Motion. LP does not claim, nor could he, that any new information or circumstances have arisen. *Moretto v. Wexford Health Source*, 2020 WL 8575121 (M.D. Fla. July 8, 2020) (plaintiff engaged in undue delay in waiting nine months to move to amend). And, LP has known of Defendants' standing challenges for almost five months, but has just now sought to amend. *Mahoney v. Owens*, 818 F. App'x 894 (11th Cir. 2020) (plaintiffs engaged in undue delay in waiting five months to move to amend).

LP has no reason for the delay. This is just a belated attempt, at the end of class certification briefing, to cure LP's attorneys' initial failure to ensure that LP had standing. *Lidie v. State of Cal.*, 478 F.2d 552, 555 (9th Cir. 1973) ("[W]here the original plaintiffs were never qualified to represent the class," a motion to add a new named plaintiff "represents a back-door attempt to begin the action anew, and need not be granted."). LP has engaged in undue delay.

### 2.   Undue Prejudice

Finally, Rule 15(a) dictates denial of the Motion as the requested relief would unduly prejudice Defendants. LP conclusively argues that there is no prejudice because the nature of the claims will not change and LP will agree

16

to certain expedited discovery on Mr. Cueter. Mot., p. 8. This is insufficient.

Defendants will be prejudiced if LP adds a new class representative now. "In seeking to add new class action claims and new class representatives, courts are more likely to find prejudice when the case has already progressed to or beyond the class certification phase, at which time class-related discovery and class-certification motion practice should be finished." *Oliver*, 2023 WL 4471937, at *9; *In re Milk Prod. Antitrust Litig.*, 195 F.3d 430, 438 (8th Cir. 1999) ("[P]laintiffs did not move to add new named plaintiffs until defendants responded to the motion for class certification. Granting that motion would have required reopening class discovery and further delay, precisely the sort of prejudice that justifies denial of a motion to amend under Rule 15(a).").

Here, the parties are finally facing the close of a dogged, eight-month long briefing on class certification, which has included expert opinions, *Daubert* briefings, and numerous replies. Defendants completed their class-related discovery months ago and built their litigation strategy around LP. As the Motion itself explains, "well over a year of discovery has taken place, with multiple motions, and hundreds of thousands of dollars likely spent in costs. The Court has also spent countless hours resolving disputes." Mot., p. 6.

It is also unclear how Defendants are expected to respond to LP's late attempt to add a new representative if the Court grants this Motion. First, Defendants would need to engage in a whole additional round of written and

17

deposition discovery related to Mr. Cueter. *Oliver*, 2023 WL 4471937, at *9 ("Moreover, class certification motion practice has already begun. Specifically, each new Plaintiff...would need to be deposed, after class certification briefing has already been completed. That amounts to prejudice to [the defendant].")

LP's promise of a Zoom deposition or one held in New York is plainly insufficient. Mot., p. 8. Indeed, LP has not indicated, in accordance with the general rule, that Mr. Cueter is willing to travel to the Middle District of Florida should Defendants determine that such location is most appropriate for his deposition. *Watson v. Lemongrass RPP LLC*, 345 F.R.D. 247, 248 (S.D. Fla. 2023) (the "general rule" is that "a plaintiff must make [himself] available for deposition in the judicial district in which [he] filed suit"); *Jones v. Nutiva, Inc.*, 2017 WL 3412302, at *1 (N.D. Cal. Aug. 9, 2017) (general rule of the ability to depose a plaintiff in the home forum "applies to class action suits"). Nor is the offer to "produce the same documents requested by Defendants of LP without any further discovery requests" sufficient, Mot., p. 8, as Defendants should not be constrained to the discovery directed at LP. Indeed, Mr. Cueter's individual circumstances may require further discovery, which Defendants have the right to conduct, and which would further delay these proceedings.

Second, even if Defendants were able to obtain relevant discovery, Defendants have no vehicle to assert arguments in opposition to certification in regard to Mr. Cueter. At present, Defendants are not entitled to any further

18

briefing in regard to the Certification Motion. While Defendants requested limited additional briefing, such request was limited to a narrow issue of rebutting a belated expert declaration offered for the first time in LP's Sur-Sur-Reply. Doc. 191. Thus, Defendants would need to petition the Court to file yet additional briefing (a Sur-Sur-Sur-Sur-Reply?) in opposition to the Certification Motion weeks or months from now (after cobbling together a slapdash discovery effort) delaying resolution of such motion even further.

Nor is LP's claim that adding a new representative of little substantive importance accurate. Indeed, two of the four elements for certification under Rule 23(a)—typicality and adequacy of representation—relate to the identity of the proposed class representative(s). *Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1188 (11th Cir. 2003) ("typicality" assesses whether claims or defenses of the representative are "typical" of the unnamed members, and "adequacy" assesses whether representatives can "represent the interests of the class adequately and fairly"). In *Soto*, the court noted that the parties "conducted discovery based upon the identity of" of the proposed class representatives and "claims that they may [] support." 2011 WL 3489876, at *7. Adding a new class representative "would require Defendant to examine his potential claims, conduct further discovery, identify any unique defenses, and prepare new arguments and defenses." *Id.* Thus, "suggested modification of the scheduling order following the resolution of the currently pending motion

19

would not alleviate this undue prejudice." *Id.* The same is true here: Defendants' discovery was based on LP as the representative. Supplementing Mr. Cueter as an additional representative would require Defendants to likewise "examine [their] potential claims, conduct further discovery, identify any unique defenses, and prepare new arguments and defenses," leading to incurable prejudice that warrants the Court's denial of the Motion. *See id.*

Allowing amendment at this juncture would greatly prejudice the time and costs that Defendants invested in this litigation and warrants "denial of leave to amend, notwithstanding counterarguments regarding the similarity with the issues already in the case." *Gonzalez v. Diamond Resorts Int'l Mktg., Inc.*, 2020 WL 4925702, at *7 (D. Nev. Aug. 21, 2020); *see also Oliver*, 2023 WL 4471937, at *9; *Soto*, 2011 WL 3489876, at *7. Amendment pursuant to Rule 15(a) would cause undue prejudice to Defendants.

For the reasons stated above, the Court should deny the Motion.

Respectfully submitted,                           Dated: September 18, 2024.

*/s/ Glennys Ortega Rubin*
**ALFRED J. BENNINGTON, JR., ESQ.**
Florida Bar No. 0404985
bbennington@shutts.com
**GLENNYS ORTEGA RUBIN, ESQ.**
Florida Bar No. 556361
grubin@shutts.com
**BENJAMIN F. ELLIOTT, ESQ.**
Florida Bar No.: 1010706
belliott@shutts.com

**FRANK A. ZACHERL, ESQ.**
Florida Bar No. 868094
fzacherl@shutts.com
**SHUTTS & BOWEN LLP**
300 South Orange Avenue,
Suite 1600
Orlando, Florida 32801
Telephone: (407) 835-6757
Facsimile: (407) 425-8316
*Attorneys for Defendants*