# Exhibit T
# (Redacted Public Version)

# HAGENS BERMAN

**Peter A. Shaeffer**    petersh@hbsslaw.com

ATTORNEYS AT LAW

**HAGENS BERMAN SOBOL SHAPIRO LLP**
455 NORTH CITYFRONT PLAZA DRIVE, SUITE 2410
CHICAGO, IL  60611

**hbsslaw.com**

(708) 628-4955 phone    (708) 628-4950 fax

July 23, 2024

**Via Electronic Mail**

Bud Bennington
Shutts & Bowen LLP
BBennington@shutts.com

Glennys Ortega Rubin
Shutts & Bowen LLP
GRubin@shutts.com

Benjamin F. Elliot
Shutts & Bowen LLP
BElliott@shutts.com

Re:    *Request for Meet and Confer on Defendants' Discovery*

Counsel:

Pursuant to Local Rule 3.01(g) and Federal Rule of Civil Procedure 37(a)(1), Lead Plaintiff requests a meet and confer to address several critical discovery issues that have recently come to light and are severely prejudicing Lead Plaintiff's ability to prosecute this action.

Defendants' recent production of two presentations made to the SEC in February and June 2022 has exposed a disturbing pattern of discovery misconduct and concealment by Defendants that cuts to the heart of this case. These presentations reveal the existence of a massive volume of documents and information that Defendants improperly withheld from Lead Plaintiff, in violation of their clear discovery obligations. The belated revelations in these presentations contradict Defendants' prior representations to Lead Plaintiff and the Court about the scope of the Audit Committee's investigation and the amount of documents and information under Defendants' control. It is now evident that Defendants' improper privilege assertions, inadequate privilege logs, incomplete document collections, and evasive discovery responses are part of a systematic effort to conceal crucial evidence and impede Lead Plaintiff's ability to prosecute this action. Defendants' misconduct has already caused significant prejudice by depriving Lead Plaintiff of vital

HAGENS BERMAN

Bennington, *et al.*
July 23, 2024
Page 2

discovery and disrupting the orderly progress of this case. Prompt relief from the Court is necessary to rectify these issues unless addressed immediately. Should these matters remain unresolved, reasonable fees and costs will be sought for any required motions.

Please let us know your availability to have a productive meet and confer this week.

## SUMMARY OF KEY ISSUES

### Privilege Issues

1.  Defendants improperly claim privilege for King & Spalding LLP's and KPMG LLP's work, despite clear evidence from the SEC presentations that they focused on ███████████████████████████████████████████████████████

2.  Defendants engaged in a pattern of concealment by withholding the February and June 2022 SEC presentations that revealed key information in contradiction to Defendants' response to Lead Plaintiff's RFP No. 38. Neither these presentations nor the documents referred therein were previously disclosed, produced or logged, despite discovery nearing its end.

3.  Defendants have provided conflicting information about the roles of King & Spalding, KPMG, Kirkland & Ellis LLP, and PricewaterhouseCoopers LLP ("PwC") in the Audit Committee investigation. The SEC presentations reveal ███████████████ ██████████████████████████████████████ This information contradicts the previous claims of ignorance from Defendants, including in response to Lead Plaintiff's RFP No. 30 that "Redwire does not have possession, custody, or control – or means to identify – the documents that outside counsel selected." Clarity is needed to assess Defendants' discovery conduct, determine the true burden on Defendants to produce known responsive documents, and whether there has been a spoliation of evidence.

### Late Disclosures and Omitted Evidence

4.  Despite the SEC presentations revealing King & Spalding interviewed ████████ ████████████████████████████ Defendants refuse to produce any interview notes,

Bennington, *et al.*
July 23, 2024
Page 3

recordings or transcripts. Access to this material is essential for effective cross-examination and impeachment and refreshing witnesses recollections.

5. Numerous known responsive documents authored by the whistleblower Daniel Gievers himself, clearly relating to his complaint, were improperly withheld until the SEC presentations were produced. This late production calls into question Defendants' response to Lead Plaintiff's RFP No. 29, which sought documents concerning the "investigation of the whistleblower complaint," that they were not withholding "known responsive documents." This unjustifiable delay has already hampered Lead Plaintiff's ability to depose Mr. Gievers and investigate the allegations at the heart of this case.

**Discovery Misconduct**

6. At Mr. Gievers' deposition, Defendants improperly ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (Gievers Dep. Tr. at 16:3-19:12, 176:19-178:19, 179:8-180:5, 247:13-248:21, 276:6-279:18). Defendants failed to assert privilege per the requirements of Middle District Discovery Handbook and obstructed legitimate inquiries with a key witness. Such obstruction cannot be allowed to stand any further as more depositions will follow.

7. Serious deficiencies appear to plague Defendants' document collection and preservation, including an apparent material omission of custodians, the failure to identify and produce documents from Redwire's internal messaging system, as well as discrepancies in the number of documents reviewed versus produced. Spoliation and an incomplete record are major concerns.

8. An attempt to determine if the recently produced documents were identified on any privilege log produced by Defendants reveals obfuscation by excessive redactions and the omission of meaningful descriptions that would have revealed the existence of the SEC presentations (and any privilege claimed), including the identity of recipients and custodians. This obfuscation prevented Lead Plaintiff from earlier challenging potentially improper privilege assertions and continues to hamper Lead Plaintiff's assessment of Defendants' claims of privilege.

9. Defendants' initial disclosures dated June 2, 2023 identified only three individuals and SEC filings as potential evidence upon which Defendants would rely for their defenses. The subsequent production of the SEC presentations and related documents demonstrates Defendants' grossly inadequate initial disclosures and a failure to reveal

HAGENS BERMAN

Bennington, *et al.*
July 23, 2024
Page 4

key custodians and thousands of investigation records, reflecting either a failure to conduct a reasonable inquiry or an intentional effort to conceal the scope of discoverable information in their possession, custody, or control.

In sum, it now appears apparent Defendants have engaged in an egregious pattern of discovery misconduct, concealment of evidence, and disregard for their obligations. Unless immediately addressed, prompt relief will be requested from the Court to address these issues and restore the integrity of the proceedings.

## DISCUSSION

1.    **The SEC Presentations Demonstrate the Assistance Provided by King & Spalding and KPMG is Neither Privileged nor Work Product**

Despite Defendants' prior claims, the SEC presentations do not evidence that the work of King & Spalding and KPMG (and for that matter, PwC) are protected from disclosure by the attorney-client privilege nor work product protection.

- Neither the presentation nor the documents produced ████████████ ██████████████████████████████████████████

- The February 2022 and June 2022 presentations state that King & Spalding's work was ███████████████████████████████████████████████ ███████████████████████████████ In prior representations to the Court, Defendants claimed the threat of harassment and retaliation litigation raised by Mr. Gievers' counsel in the December 10, 2022 demand letter was grounds for the work product assertion. This is contradicted by ████████████ in the SEC presentations.

- In discussing its role, King & Spalding also only refers to itself as ████████ ██████████ to the Audit Committee in investigating Mr. Gievers' allegations.

- The collection of ████████████████████████████████████████

Bennington, *et al.*
July 23, 2024
Page 5



- The SEC presentations state that the Audit Committee ███████████
  ████████████████████████████████████████████████████████████████
  ████████████████

- The SEC presentations represent that all KPMG did was █████████████
  █████████████████ Again, there is no mention of ████████████████

- In the end, the presentations state ████████████████████████████
  ███████████████████████████████ There is nothing about their

- There is ████████████████ in the Audit Committee Presentation to the SEC.

In light of the above facts, Defendants' claims of privilege lack foundation. Lead
Plaintiff therefore requests Defendants drop their claims of privilege over the Audit
Committee investigation documents including those in the possession of King & Spalding,
KPMG and PwC, including the documents gathered and reviewed. Since the documents
have already been gathered, the production has little to no cost to Defendants (unless the
documents were destroyed, which would raise separate issues).

   2.    **SEC Presentations and Related Privilege Waiver**

       a.    **Delayed Production of February and June 2022 SEC
             Presentations and Failure to Produce Related Documents**

Defendants failed to timely produce SEC presentations that are clearly responsive to
Lead Plaintiff's requests and highly relevant to this case.

- Both presentations are plainly responsive to Lead Plaintiff's RFP No. 38, which
  requested "[a]ll Documents concerning any investigation, whether informal or
  formal, by any government or administrative agency, concerning Redwire's
  accounting, internal controls, "tone at the top," and financial reporting practices,"
  as well as our prior requests for known, responsive documents related to "[r]eports
  from the Audit Committee," "[t]he Whistleblower Complaints," "[i]nvestigations
  and reports following up on the complaints," and [d]ocuments relating to the audit

HAGENS BERMAN

Bennington, *et al.*
July 23, 2024
Page 6

committee findings regarding 'tone at the top.'" *See, e.g.,* 2023.07.26 Email from P.
Shaeffer.

- Neither of these presentations nor the cited, included, and/or underlying documents
  are on a privilege log.

- In response to RFP No. 38, Defendants previously stated they were "unaware of any
  investigation by a governmental or administrative agency regarding the stated
  subject matter" when Defendants clearly had possession, custody, control, or
  knowledge of the February and June 2022 SEC presentations.

- Indeed, when directly asked whether King & Spalding and KPMG provided a
  written report to any third-party concerning the Audit Committee investigation,
  Defendants confirmed during a September 7, 2023 meet and confer that no such
  reports were provided. *See* 2023.09.08 Email from P. Shaeffer.

- In responding to Lead Plaintiff's motion related to the clawed back PwC memo,
  Defendants only made reference to the fact that the Audit Committee investigation
  "could be briefed" to the SEC, and omitted the fact that it *had been* briefed in
  February 2022 and June 2022. *See, e.g.,* ECF No. 108-1, ¶ 14.

Accordingly, Lead Plaintiff seeks:

- Explanation for the delayed production.

- Explanation as to why the SEC presentations and underlying documents  are not on
  a privilege log.

- Clarification on Defendants' previous statements made in discovery responses,
  during the September 7, 2023 meet and confer, and in response to the PwC memo
  motion.

- Information on whether there are any other written communications with the SEC
  concerning this presentation/investigation and any other documents provided to
  SEC related to the Audit Committee investigation and the issues in this case
  (including any documents concerning the witness interviews). If so, Lead Plaintiff
  would like to know why they were not on a privilege log.

Bennington, *et al.*
July 23, 2024
Page 7

- Information on any other meetings with the SEC involving oral presentations regarding the Audit Committee investigation, including whether any summaries of witness interviews were orally provided to the SEC.

Lead Plaintiff also requests:

- Defendants to voluntarily produce all the documents and witness interviews referred to in those presentations. If not, Lead Plaintiff requests the grounds, if any, Defendants are asserting for not making such a production.

- Defendants to voluntarily produce all communications with the SEC and documents provided to the SEC, and if they are not willing to do so, to provide all reasons for their refusal.

Prejudice to Lead Plaintiff: The delayed production has hindered Lead Plaintiff's ability to fully investigate the claims and prepare the case. Defendants' delay has also potentially compromised the integrity of witness testimony (Mr. Gievers) already taken. If Lead Plaintiff had proceeded with the outstanding 30(b)(6) notices, those too would have been compromised.

### b.      Waiver of Privilege Related to SEC Presentations

Defendants' presentations to the SEC waived any privilege claims for those presentations and related documents. As Defendants are well aware, the law in the Eleventh Circuit is very clear as to this waiver, which appears to be the reason these presentations were not disclosed:

- *In re Chiquita Brands Int'l, Inc. Alien Tort Statute & S'holder Derivative Litig.*, 270 F. Supp. 3d 1332, 1339 (S.D. Fla. 2017) ("[A] party may not voluntarily waive the attorney-client or work product privileges for its own benefit in dealings with a third-party government agency, then hide behind the privilege in subsequent civil litigation" and ordering production to plaintiffs of all documents previously produced to DOJ)

- *In re Disposable Contact Lens Antitrust Litig.*, 2018 WL 10579444, at *5 (M.D. Fla. Apr. 25, 2018) (finding defendant waived attorney-client privilege by voluntarily disclosing privileged information to New York Attorney General) (citing *In re Chiquita*, 270 F Supp. at 1340)

Bennington, *et al.*
July 23, 2024
Page 8

Further, Federal Rule of Evidence 502(a) states that if a disclosure is made to a federal agency that waives the attorney-client privilege or work product protection, "the waiver extends to an undisclosed communication or information in a federal [] proceeding" if "(1) the waiver is intentional; (2) the disclosed and undisclosed communications or information concern the same subject matter; and (3) they ought in fairness to be considered together."

Lead Plaintiff meets all of these factors here – Redwire knowingly offered material to the SEC, they were not designated privileged, the SEC presentation concerns the undisclosed Audit Committee materials at issue here, and as demonstrated in the withdrawn motion (*see* ECF No. 148), Lead Plaintiff has substantial need for these materials, let alone that fairness would dictate Lead Plaintiff should consider the SEC presentations in light of the full record.

Lead Plaintiff believes the waiver, if in fact the Audit Committee's work was privileged, would include ▮▮▮▮▮▮▮▮▮▮ any notes, transcripts, or recordings of the witness interviews, and any expert analysis that led to Defendants' conclusions and representations to the SEC.

Lead Plaintiff therefore seeks to discuss:

- Whether Defendants claim no waiver, a selective waiver, or concede the waiver.

- Whether Defendants will produce all documents relating to the SEC presentations, including the ▮▮▮▮▮▮▮▮▮ the witness interview notes, transcripts, or recordings, any other documents upon which the presentations were made, and any communications with the SEC related to this investigation.

- Whether Defendants will instruct King & Spalding, KPMG, and Kirkland and Ellis (*see infra* at pp. 9-11) to cooperate and produce any related materials.

- Whether Defendants will allow the presenters or representatives of King & Spalding, KPMG, and Kirkland & Ellis involved in any SEC investigation to sit for a deposition.

Prejudice to Lead Plaintiff: Withholding these materials and unfairly hiding the facts behind Redwire's disclosures have deprived Lead Plaintiff of crucial evidence and context

HAGENS BERMAN

Bennington, *et al.*
July 23, 2024
Page 9

for the allegations in this case, significantly hampering Lead Plaintiff's ability to investigate and prove his claims and prepare for depositions, summary judgment and mediation.

### 3.    External Firms' Involvement in Audit Committee Investigation

The roles of King & Spalding, KPMG, and Kirkland & Ellis in the Audit Committee investigation require clarification.

### a.    King & Spalding and KPMG:

The February and June 2022 SEC presentations note that King & Spalding and KPMG:

- ██████████████████████████████████████████████

- ████████████████████████████████ and

- ████████████████████████████████████

Despite Defendants' previous representations in response to RFP No. 30 that they do not have the means to identify the documents King & Spalding and KPMG selected (*see supra* at p. 2), Lead Plaintiff requests the following information from Defendants:

- Whether the ████████████ were not segregated, can no longer be identified, and any information relating to these documents has been destroyed.

- Whether the ████████████ were not segregated, can no longer be identified, and any information related to these documents has been destroyed.

- Whether Defendants have any information concerning the basis for what was selected and reviewed, or whether that information has been destroyed.

- The location of the witness notes, transcripts, or recordings (or whether that information has been destroyed).

King & Spaulding and KPMG LLP are controlled by Defendants and should have access to this information, which is more than evident in their apparent direction to these entities to not cooperate in responding to Lead Plaintiff's subpoenas.

Bennington, *et al.*
July 23, 2024
Page 10

Lead Plaintiff thus requests Defendants drop their objections to King & Spaulding and KPMG fully cooperating in response to Lead Plaintiff's document subpoenas and any future deposition subpoenas.

**b.      Kirkland & Ellis:**

As previously flagged in the May 31, 2024 meet and confer and Lead Plaintiff's email on that same day, Lead Plaintiff requests clarity regarding the role Kirkland & Ellis played in the Audit Committee investigation alongside King & Spalding and KPMG.

In addition, Defendants previously identified witness interview notes authored by Kirkland & Ellis in their August 14, 2023 privilege log (entry no. 13) and November 30, 2023 privilege log (entry no. 11).

Lead Plaintiff therefore seeks clarification on the following:

- Did Kirkland & Ellis make its own presentations and document production to the SEC?

- Did King & Spalding *and* Kirkland & Ellis conduct their own separate interviews for the Audit Committee investigation?

- For what purpose were the Kirkland & Ellis interviews conducted?

- How many documents constitute Kirkland & Ellis witness interview notes?

- Were the Kirkland & Ellis notes shared with the Audit Committee,  PwC, the SEC, or any other entity?

- Who did Kirkland & Ellis interview?

- Who has possession of the Kirkland & Ellis notes?

Kirkland & Ellis is controlled by Defendants, and accordingly Defendants should have no issue gathering and providing this information.  To the extent Lead Plaintiff issues document and deposition subpoenas to Kirkland & Ellis, we request Defendants do not object to their cooperation in providing fulsome responses.

Bennington, *et al.*
July 23, 2024
Page 11

      **c.**    **PwC:**

The newly produced SEC presentations, as well as the documents recently produced by PwC, ███████████████████████████████████████████████ ██████████████████████████████████████ there is no basis for Defendants to continue to claim privilege over documents created by or provided to PwC.

Prejudice to Lead Plaintiff: Lack of clarity on the external firms' roles hampers Lead Plaintiff's understanding of the scope and findings of the Audit Committee investigation and the underlying facts and issuance of Redwire's March 2022 and April 2022 disclosures. This impedes Lead Plaintiff's ability to fully investigate the claims and prepare his case.

    **4.**    **Witness Interview Notes/Recordings/Transcripts Should be Produced**

Defendants' delay in producing the SEC presentations and underlying documents, the fading memories of witnesses, and their availability for depositions mean fairness requires the production of the witness interview notes, transcripts, and/or recordings.

At present, we are coming up on three years since the Audit Committee conducted its investigation, and the relevant events covered by the investigation go back even further. Although Lead Plaintiff will have the opportunity to depose witnesses interviewed by the Audit Committee investigators, any depositions "cannot reveal the same detail" as interviews conducted "when the witnesses' memories were fresh." *See S.E.C. v. Vitesse Semiconductor Corp.*, 771 F. Supp. 2d 310, 314 (S.D.N.Y. 2011). The fading memories of the key witnesses warrants production of any witness interview notes, transcripts, and/or recordings. *See United States v. Petit*, 438 F. Supp. 3d 212, 214-15 (S.D.N.Y. 2020) (ordering production of fact work product, including statements made by potential witnesses to counsel, because party potentially could not "obtain the equivalent information elsewhere").

Moreover, ██████ of the witnesses interviewed during the Audit Committee investigation – ████████████████████████████████ – ████████████████████████████ and their availability as deposition witnesses or for trial is not guaranteed. These circumstances further support production of documents concerning witness interviews. *See Hickman v. Taylor*, 329 U.S. 495, 511 (1957) (noting a party may show substantial need when "the witnesses are no longer available or can be reached only with difficulty").

Bennington, *et al.*
July 23, 2024
Page 12

Finally, as their interviews are an integral part of the Audit Committee's conclusions, they are necessary to the Lead Plaintiff's case.

Prejudice to Lead Plaintiff: The fading memories and potential unavailability of key witnesses impedes Lead Plaintiff's fact-finding and ability to understand the underlying basis for Defendants' "tone at the top" finding and other disclosures made in March and April 2022 that go to the heart of the case.

### 5.    Documents Related to Mr. Gievers' Whistleblower Complaint

Defendants' supplemental production demonstrates they failed to produce or identify numerous known, responsive documents related to Mr. Gievers' whistleblower complaint.

Lead Plaintiff's RFP No. 29 asks for "[a]ll Documents concerning Redwire's notification, decisions to investigate, and investigation of the whistleblower complaint relating to 'accounting issues with a business subunit' (as described in the Complaint, e.g., ¶¶70–72, 75)." Defendants responded that they were "not withholding known responsive documents" and any "documents being withheld pursuant to Defendants' claim of privilege will be detailed on a forthcoming privilege log."

Defendants' production, however, indicates that they were aware, or should have been aware, of numerous known, responsive documents concerning Mr. Gievers' whistleblower complaint:

- The June 2022 presentation to the SEC contained numerous known documents relating to the Gievers' whistleblower complaint authored by Gievers directly that were produced for the first time, including RDW-0012346, RDW-0012381, RDW-0012382, RDW-0012383, RDW-0012389, RDW-0012391, RDW-0012393, RDW-0012395, RDW-0012404, and RDW-0012525. Documents authored by Mr. Gievers are critical, as the presentations noted that ███████████████ █████████████████████████████████████████████ ████████████████████ Lead Plaintiff further notes that another ███████████ of the whistleblower allegations – the December 10 letter from Mr. Gievers' counsel (CNTRL00000043) – was only produced in response to Lead Plaintiff's motion regarding Defendants' claw back of the PwC memo and was never specifically identified on Defendants' privilege logs.

Bennington, *et al.*
July 23, 2024
Page 13

- The June 2022 presentation also references documents authored by other Redwire personnel that, on their face, directly relate to the Gievers' whistleblower complaint, including RDW-0012332, RDW-0012337, RDW-0012344, RDW-0012351, RDW-0012353, RDW-0012332, RDW-0012379, RDW-0012464, RDW-0012489, RDW-0012493, RDW-0012520, and RDW-0012527. To Lead Plaintiff's knowledge, none were specifically "detailed" on any privilege log produced by Redwire to date.

As such, Lead Plaintiff seeks:

- Explanation for why these documents were not produced prior to June 2024.

- Clarification on why they were not detailed on a privilege log and if Defendants claim they were logged, the specific entries identifying the documents.

- Explanation for why these documents were not identified in Defendants' initial disclosures dated June 2, 2023.

- Explanation for why Defendants did not produce these documents or bring them to Lead Plaintiff's attention prior to Lead Plaintiff's taking of Mr. Gievers' deposition.

As a remedy, Lead Plaintiff requests that Defendants agree that they may not rely upon any of these documents in support of their defenses to this action, that Lead Plaintiff may resume his examination of Mr. Gievers and that Defendants cannot continue their cross-examination of Mr. Gievers.

Prejudice to Lead Plaintiff: The late production of these documents compromised Lead Plaintiff's ability to effectively depose Mr. Gievers and fully investigate the whistleblower claims.

**6.    Objections to the Production of the Separation/Settlement Agreement and Other Documents in Mr. Gievers' Possession and to Testimony Describing Documents in Mr. Gievers' Possession**

Defendants raised problematic/improper objections during Mr. Gievers' June 18, 2024 deposition that impeded the complete examination of a key witness in this case.

For example, during Mr. Gievers' deposition, ███████████

███████████████████████████

                                                                    *See* Gievers Dep. Tr. 16:3-19:12,

Bennington, *et al.*
July 23, 2024
Page 14



177:20-178:19, 179:8-180:5.   In objecting, ██████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████ *Id.* at 17:13-24.  Defendants further claimed that Lead Plaintiff ████
████████████████████████████████████████████████████████████████████████
████ *Id.* at 179:23-180:5.

Defendants also ███████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████ *Id.* at 16:3-19:12, 176:19-
177:19, 247:13-248:21, 276:6-279:18. The basis for Defendants' objections █████████
███████████████████████████████████████████████████████████ *Id.*

In making these objections, Defendants did not follow the Middle District Discovery Handbook.  The Handbook details very specific procedures an objecting party must follow when asserting that the information is privileged or subject to other protection from discovery. Specifically, section VI.A.2 of the Handbook requires, among other things:

1. A description of the document, e.g., letter or memorandum,

2. Its date,

3. The name, address and employer of the author(s) of the document, or the person giving, recording and/or transcribing a statement,

4. Purpose for which the document was created and transmitted,

5. Subject of the document,

6. Persons to whom the document is addressed,

7. Persons indicated thereon as having received copies,

8. Name, address, job title and employer of any person known or believed to have received or seen the document or any copy or summary thereof,

HAGENS BERMAN

Bennington, *et al.*
July 23, 2024
Page 15

9. The relationship to each other of the author, addressee, and any other recipient,

10. Degree of confidentiality with which it was treated at the time of its creation and transmission, and since,

11. Other information sufficient to identify the document for a subpoena duces tecum, including, if available, Bates numbers assigned to the document, and

12. Any other facts relevant to the elements of the particular privilege or protection asserted.

This information was not provided for the separation agreement on the record, and Defendants objected to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Accordingly, there is simply no way to tell whether ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Based on this conduct, Lead Plaintiff requests:

- Defendants drop ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

- Explanation for why the agreement is not responsive to RFP No. 29 and why ▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ were not addressed by the protective order entered in this case.

As a remedy, and as already requested above, Lead Plaintiff requests that Defendants agree that they may not rely upon any of these documents in support of their defenses to this action, that Lead Plaintiff may resume his examination of Mr. Gievers and that Defendants cannot continue their cross-examination of Mr. Gievers.

Prejudice to Lead Plaintiff: These objections and withholding of documents have impeded Lead Plaintiff's ability to fully examine a key witness and understand the circumstances of his departure from Redwire.

Bennington, *et al.*
July 23, 2024
Page 16

### 7.    Document Collection, Preservation, and Custodian Issues

#### a.    Internal Messaging Systems

Lead Plaintiff has grave concerns about the collection and preservation of internal messaging conversations.

The supplemental production included conversations in Redwire's internal messaging system (*see* RDW-0012395, RDW-0012404, RDW-0012493, RDW-0012520). No such documents were produced in Redwire's initial document productions last fall, even though "MS Team chats" were identified by Defendants on August 11, 2023 as a source for the initial document collection and review. *See* 2023.08.11 Email from C. Leger.

Lead Plaintiff therefore seeks:

- Confirmation that conversations in Redwire's internal messaging system, as evidenced by the above-cited documents, are part of the "MS Teams chats" that were searched in the initial document collection and review and that the messages are preserved.

- Identification of any other internal messaging systems utilized by Defendants and whether those messages have been preserved.

#### b.    Document Custodians and Number of Documents Produced

There appears to be a discrepancy in the number of custodians cited in various contexts:

- On August 11, 2023, Defendants identified the twelve custodians from whom they chose to collect documents for their initial production to Lead Plaintiff based on search terms. Defendants produced less than 1,400 documents based on their collection and review efforts with their search terms.

- The February 2022 and June 2022 SEC presentations state that the Audit Committee reviewed documents collected from ███████████ but they were not identified. The same presentations state King & Spalding and KPMG identified as potentially relevant and reviewed ████████████ for their investigation.

HAGENS BERMAN

Bennington, *et al.*
July 23, 2024
Page 17

- Lead Plaintiff understands, based on discussions during the September 7, 2023 meet and confer call, that the date ranges and custodians used to identify the documents accessed by King & Spalding and KPMG during the Audit Committee investigation were encompassed entirely by the date parameters and custodians relied upon by Defendants for their initial collection and review of documents. *See* 2023.09.08 Email from P. Shaeffer.

Lead Plaintiff requests:

- Explanation for this discrepancy. Why were less than 1,400 documents produced for Lead Plaintiff to review and not ████ that were known to be relevant?

- Confirmation of whether there is overlap between the ████████████ cited by King & Spalding and KPMG and the twelve custodians identified by Defendants on August 11, 2023. For instance, ████████████████████████████████████████████████████████████████████████████████████████ Why were they omitted?

- That Defendants agree to produce the ████ documents their advisors deemed relevant for review, and an understanding as to how these ████ were identified and selected.

<u>Prejudice to Lead Plaintiff</u>: Inconsistencies in document collection and preservation may result in the loss of relevant evidence crucial to Lead Plaintiff's case. This could severely impact Lead Plaintiff's ability to prove its claims and respond to Defendants' defenses.

## 8.    Deficiencies in the Individual Privilege Log

It is now plainly evident that the Individual Privilege Log served on November 30, 2023 contains significant defects that hinder proper evaluation of privilege claims.

In reviewing the SEC presentation documents produced, Lead Plaintiff attempted to determine whether any were identified in Redwire's privilege logs. In so reviewing, Lead Plaintiff determined that the November 30th Individual Privilege log is severely defective. The log contains many "redactions" which make it impossible to determine what the document is and whether it's privileged. While the log has a category for "persons

HAGENS BERMAN

Bennington, *et al.*
July 23, 2024
Page 18

designated as addressees or copyees," it is now clear recipients (whether or not designated on the face of the document) have not been identified as well as the custodian(s), rendering the description not meaningful.

The log also lacks meaningful descriptions of the withheld documents that would allow Lead Plaintiff to evaluate privilege claims. In order for Lead Plaintiff to fairly evaluate the privilege claims, Lead Plaintiff further requests that the log include information on the number of pages for each document, as well as whether a document has any attachments. *See* Middle District Discovery Handbook, § VI.A.1. (noting that to support a privilege assertion, the party "must describe the nature of the documents, communications, or things not produced or disclosed" and the description should "enable other parties to assess the applicability of the privilege or protection").

Accordingly, Lead Plaintiff requests;

- Voluntary revision of the privilege log to address these deficiencies and comply with the requirements of § VI of the Middle District Discovery Handbook.

Prejudice to Lead Plaintiff: The inadequate privilege logs have prevented Lead Plaintiff from assessing the validity of privilege claims and identifying potentially relevant, non-privileged information. This has impeded Lead Plaintiff's ability to challenge improper privilege assertions and obtain all discoverable information to which it is entitled.

9. **Failure to Disclose Documents or Witnesses in Initial Disclosures and Discovery Responses**

Defendants have failed to properly disclose documents and witnesses as required by the Federal Rules of Civil Procedure:

- Defendants' initial disclosures were served over a year ago on June 2, 2023. The disclosures only identify Peter Cannito, William Read and Jonathan Baliff as persons likely to have discoverable information that Defendants may use to support their defenses. Defendants also only identify documents filed with the SEC as documents in Defendants' possession, custody or control that Defendants may use to support their defenses. These disclosures have not been amended.

- Similarly, as noted above, Defendants' responses to RFP Nos. 29 and 38, and subsequent discussions in meet and confers, created the false impression that

HAGENS BERMAN

Defendants did not possess known, responsive documents to those requests. The production of the SEC presentations from February and June 2022 indicates otherwise, and Defendants made no amendments to their discovery responses and privilege logs and otherwise made no effort to supplement the document production until the parties were engaged in a meet and confer over Lead Plaintiff's motion regarding the Audit Committee materials.

Such failures are remediable under Federal Rules 26 and 37, 28 U.S.C. § 1927, and the Court's inherent authority.  Therefore, absent seeking relief from the court, Lead Plaintiff seeks agreement that Defendants:

- Will not rely on or use any other witnesses or documents not found in the June 2, 2023 initial disclosures.

- Cannot rely on any of the witnesses and documents identified in their supplemental production (RDW-0012332-RDW-0012626) served on June 21, 2024, and the PwC production served on June 26, 2024 (PwC000311-PwC000755) and documents or witnesses identified therein.

- Will now, if not already found to be not privileged or waived, produce all documents sought in Lead Plaintiff's previously filed, but withdrawn, motion for the production of the Audit Committee materials.

- Will withdraw their attempted claw back of the PwC Memo at issue in ECF Nos. 91 and 105.

Prejudice to Lead Plaintiff: These failures have severely hampered Lead Plaintiff's ability to prepare its case and have caused significant delays and increased costs. The late disclosure of key witnesses and documents has disrupted Lead Plaintiff's discovery strategy and may necessitate additional depositions and document review, further delaying the progression of this litigation.

## CONCLUSION

The issues outlined above have seriously impeded discovery in this case, causing substantial delays and prejudice to Lead Plaintiff. We believe that addressing these matters promptly through a meet and confer is essential to the efficient progression of this litigation. Should we be unable to resolve these issues, Lead Plaintiff intends to seek

HAGENS BERMAN

Bennington, *et al.*
July 23, 2024
Page 20

appropriate relief from the Court, including reasonable costs and expenses incurred in bringing any necessary motions.

We look forward to discussing these matters with you this week. Please let us know your availability at your earliest convenience.

Sincerely,

HAGENS BERMAN SOBOL SHAPIRO LLP

*/s/ Peter A. Shaeffer*

Peter A. Shaeffer

PAS