UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | |
|---|---|
| JED LEMEN, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>REDWIRE CORPORATION f/k/a GENESIS PARK ACQUISITION CORP., PETER CANNITO, and WILLIAM READ,<br><br>Defendants. | Case No. 3:21-cv-01254-TJC-PDB<br><br>CLASS ACTION<br><br>**LEAD PLAINTIFF JARED THOMPSON'S UNOPPOSED MOTION FOR (I) PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; (II) CERTIFICATION OF THE SETTLEMENT CLASS; AND (III) APPROVAL OF NOTICE TO THE SETTLEMENT CLASS** |

Lead Plaintiff Jared Thompson ("LP"), by and through his undersigned counsel, respectfully submit this unopposed motion, pursuant to Rule 23 of the Federal Rules of Civil Procedure, for entry of the Order Preliminarily Approving Settlement and Providing for Notice ("Preliminary Approval Order").[1]

## I.    INTRODUCTION

The Parties have agreed to settle this Action in exchange for a $8,000,000 cash payment (the "Settlement Amount") to be made for the benefit of the Settlement

---

[1] All capitalized terms used herein that are not otherwise defined have the meanings ascribed to them in the Stipulation and Agreement of Settlement dated November 15, 2024 (the "Stipulation"), filed concurrently herewith as Exhibit 1 to the Declaration of Reed R. Kathrein ("Kathrein Decl.").

Class. This is a favorable result for the Settlement Class, and it is both substantively and procedurally fair. The Court should enter the Preliminary Approval Order.

*Substantively*, LP's damages expert estimates that if LP completely prevailed on all of his loss causation and damages theories, the $8 million settlement would equate to approximately 9.0% of the $88.3 million total maximum damages potentially recoverable. However, Redwire Corporation f/k/a Genesis Park Acquisition Corp. ("Redwire" or the "Company"), Peter Cannito, and William Read ("Defendants") raised credible arguments which could have significantly reduced or eliminated the total amount of damages. A recovery of 9.0% of maximum damages is an excellent result for the Settlement Class, and exceeds the average recovery in similar situations.[2] For this reason, and others, the Settlement is substantively fair.

*Procedurally*, the Settlement was negotiated by counsel that had a thorough understanding of the strengths and weaknesses of the case. Indeed, prior to reaching the Settlement, Lead Counsel's work included: (i) a comprehensive investigation, including detailed reviews of Redwire's SEC filings, press releases, and other publicly available information; (ii) drafting the factually detailed First Amended Complaint (the "Complaint"); (iii) researching and drafting an opposition to

---

[2] *See Securities Class Action Settlements—2023 Review and Analysis* (Cornerstone Research 2023), at 6, https://www.cornerstone.com/wp-content/uploads/2024/03/Securities-Class-Action-Settlements-2023-Review-and-Analysis.pdf (finding a median settlement recovery of 5.3% for securities class actions with damages between $75M-$149M in 2023).

Defendants' motion to dismiss; (iv) consultations with damages, loss causation, and market efficiency experts; (v) propounding party and non-party discovery and reviewing documents; (vi) preparing for and conducting the deposition of the non-party whistleblower Daniel Gievers; (vii); prior to settlement, preparing for fact witness depositions as well as the 30(b)(6) depositions of Redwire and Redwire's auditor; and (viii) researching and drafting the motion for class certification and *Daubert* briefing concerning the market efficiency experts.

In advance of mediation, Lead Counsel also drafted a mediation statement and presentation highlighting key documents and addressing both liability and damages issues. Lead Counsel subsequently engaged in an all-day mediation overseen by a highly respected mediator, Gary S. Salzman, Esq., which ultimately led to an agreement in principle to settle the Action. Lead Counsel subsequently negotiated the terms of the proposed Settlement and worked with a damages expert to develop a plan of allocation that treats LP and the proposed Settlement Class equitably. The Settlement is, therefore, the result of arm's-length negotiations, conducted by informed and experienced counsel, and does not favor LP over other Settlement Class Members. It is therefore procedurally fair.

To facilitate dissemination of the Notice to potential Settlement Class Members, the holding of a final approval hearing, and the Court's final determination of whether the proposed Settlement is fair, reasonable, and adequate,

LP seeks entry of the Preliminary Approval Order. The Order will: (i) preliminarily approve the terms of the Settlement as set forth in the Stipulation; (ii) certify a Settlement Class consisting of all Persons and entities which, between March 25, 2021 and March 31, 2022, inclusive, (a) purchased or otherwise acquired Class Securities, or (b) sold or otherwise disposed of Put Options;[3] (iii) approve the form and content of the Notice, Claim Form, and Summary Notice; (iv) find that the schedule and procedures for distribution of the Notice, and Claim Form, and publication of the Summary Notice, constitute the best notice practicable under the circumstances, and comply with the requirements of due process, Fed. R. Civ. P. Rule 23, and the Private Securities Litigation Reform Act of 1995 ("PSLRA"); and (v) set a schedule and procedures for Settlement administration.

For the reasons stated herein, the proposed Settlement meets the standards for preliminary approval and is in the best interests of the Settlement Class.

## II.    OVERVIEW OF THE LITIGATION

This securities class action commenced on December 17, 2021. *See* ECF No. 1. The Court appointed LP on March 17, 2022, and Steve Berman, Reed Kathrein,

---

[3] Excluded from the Settlement Class are Defendants, the officers and directors of Redwire, at all relevant times, members of their Immediate Family and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest. Also excluded are any Persons or entities who properly exclude themselves by filing a valid and timely request for exclusion in accordance with the requirements set by the Court.

and Lucas Gilmore of Hagens Berman Sobol Shapiro LLP as Lead Counsel on April 4, 2022. ECF Nos. 36, 43.

LP filed the operative Complaint on June 17, 2022. ECF No. 47. LP alleged Defendants violated federal securities laws by making or causing to be made a series of materially false and/or misleading statements about the Company's senior management and their purported commitment to be honest and principled with respect to Redwire's internal controls over its accounting, financial reporting, and ethics. Per LP, these false and misleading statements artificially inflated the price of Redwire securities during the Class Period. When Defendants revealed the receipt of a whistleblower complaint relating to accounting issues, an investigation into the complaint to be conducted by the Audit Committee and corresponding delay in reporting financial results, and months later, the Audit Committee's determination that "certain members of senior management" failed to set "an appropriate tone at the top," LP alleged the prices of the securities declined due to the disclosure of information that corrected the allegedly misleading statements and investors were damaged. Defendants moved to dismiss (ECF No. 48), LP opposed (ECF No. 58), and in March 2023, the Court denied the motion. ECF No. 62.

Formal fact discovery commenced in May 2023. *See* Kathrein Decl., Ex. 1, ¶ H. The Parties exchanged initial Rule 26 disclosures, and LP served fifty-seven (57) document requests and four (4) interrogatories with multiple subparts. *Id.* In

response to the initial document requests, the Parties negotiated an ESI protocol and protective order, and Defendants produced over 1,700 documents. *Id.* In September 2024, LP served additional interrogatories and document requests to Defendants and noticed fact depositions. *Id.* In addition, after months of negotiations and briefing before the Court, LP had noticed and was actively preparing for the 30(b)(6) deposition of Redwire's corporate representative. ECF No. 174. The Parties agreed to settle the Action before the deadline for discovery responses and dates for the depositions. Kathrein Decl., Ex. 1, ¶ H. LP also issued document subpoenas to four (4) third-parties, resulting in additional document discovery. *Id.* ¶ I. LP served three (3) deposition notices to third-parties, and took the deposition of the whistleblower. *Id.* LP produced documents, sat for a deposition, and responded to interrogatories and RFAs. *Id.* ¶ J.

Discovery was hotly contested, and involved the filing of multiple discovery briefs concerning, among other issues, Defendants' assertion of privilege over Audit Committee investigation materials (ECF Nos. 108-109, 176-177, 185-186, 204, 206), LP's discovery responses (ECF Nos. 94-96, 113-115), and Defendants' objections to 30(b)(6) deposition notices (ECF Nos. 132, 139, 197, 201). The Court ruled in favor of Defendants in some issues, LP in others, and several motions were pending when the Parties reached the Settlement. *See* ECF Nos. 210-211.

On January 19, 2024, LP filed the class certification motion ("Certification Motion"), and offered the expert opinion of Dr. Matthew Cain, Ph.D. in support. ECF Nos. 85, 86-1. On April 24, 2024, Defendants filed their opposition to the Certification Motion, and offered the expert opinion of Dr. Andrew Roper, Ph.D. in support. ECF Nos. 129, 129-5. The Parties deposed the two experts. Kathrein Decl., Ex. 1, ¶ L. The Parties filed additional briefs regarding class certification between July and September 2024, including Lead Plaintiff's reply (ECF No. 159), Defendants' sur-reply (ECF No. 170), and Lead Plaintiff's sur-sur-reply (ECF No. 182). The Parties also sought to exclude each other's experts. ECF Nos. 136, 160-161, 169, 171. The Court had not ruled on these motions when the Parties settled. *See* ECF Nos. 210-211.

During the course of the litigation, the Parties engaged a third-party mediator, Gary S. Salzman, Esq. Kathrein Decl., Ex. 1, ¶ M. After the submission of comprehensive mediation statements and other materials, the Parties participated in a mediation via videoconference with Mr. Salzman on September 25, 2024. *Id.* Although no resolution was reached during the mediation, the Parties continued discussions. *Id.* On October 17, 2024, the Parties executed a confidential term sheet to settle the Action. *Id.* The Parties then negotiated and executed the Stipulation, and LP prepared the Notice (including working with consulting experts to develop the Plan of Allocation), Summary Notice, and Claim Form for the Court's approval.

## III.    THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL

Rule 23(e) requires court approval for any class action settlement. To determine fairness, the Court's judgment is informed by the "strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement." *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984).[4] "Judicial review of a proposed class action settlement is a two-step process: preliminary approval and a subsequent fairness hearing." *Smith v. Wm. Wrigley Jr. Co.*, 2010 WL 2401149, at *2 (S.D. Fla. June 15, 2010).

Rule 23(e)(1), as amended in 2018, provides that preliminary approval should be granted where "the parties[] show[] that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Rule 23(e)(2) governs final approval, where courts consider the following factors in determining whether a proposed settlement is fair, reasonable, and adequate:

> (A) have the class representatives and class counsel adequately represented the class; (B) was the proposal negotiated at arm's-length; (C) is the relief provided for the class adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) does the proposal treat class members equitable relative to each other. *See* Fed. R. Civ. P. 23(e)(2).

---

[4] All emphasis is added and all internal citations and quotations are omitted.

The four factors set forth in Rule 23(e)(2), however, are not intended to "displace" any factor previously adopted by the courts, but "rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Advisory Committee Notes to 2018 Amendments (324 F.R.D. 904, at 918). For this reason, the traditional factors that are utilized by Eleventh Circuit courts to evaluate the propriety of a class action settlement (certain of which overlap with Rule 23(e)(2)), are still relevant:

> (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement;[5] and (6) the stage of proceedings at which the settlement was achieved. *Bennett*, 737 2d at 986.

The proposed Settlement is fair, reasonable, and adequate under these factors.

## A.    LP and Lead Counsel Adequately Represented the Class

Rule 23(e)(2)(A) requires the Court to consider whether the "class representatives and class counsel have adequately represented the class." Here, it is undisputed that LP and Lead Counsel adequately represented the Settlement Class.

LP's claims are typical of, and coextensive with, the claims of the Settlement Class, and he has no antagonistic interests. *See infra* at p. 20. Adequacy is further demonstrated because "[LP's] interests in establishing Defendants' liability and

---

[5] The Court does not yet have the benefit of the Settlement Class's reaction because notice of the proposed Settlement has not yet been provided to the Settlement Class.

maximizing the recovery are aligned with the interests" of the Settlement Class. *See Monroe Cty. Emps.' Ret. Sys. v. S. Co.*, 332 F.R.D. 370, 379 (N.D. Ga. 2019). LP has also contributed significantly to the Action by overseeing the litigation, communicating with counsel, reviewing pleadings, producing documents, answering written discovery, sitting for a deposition, and participating in settlement discussions. ECF No. 86-2; Kathrein Decl., Ex. 1, ¶ J.

In addition, LP retained counsel who are highly experienced in securities litigation (*see* ECF No. 86-3 (Lead Counsel's firm resume)) and who have vigorously prosecuted the claims, as set forth in detail above. *See supra* at pp. 4-7. For these reasons, this factor supports preliminary approval.

## B.    The Settlement is the Product of Arm's-Length Negotiations.

Rule 23(e)(2)(B) evaluates whether the proposed settlement "was negotiated at arm's length." For this factor, the Court must "rule out the possibility of fraud or collusion behind the settlement." *In re Blue Cross Blue Shield Antitrust Litig.*, 2020 WL 8256366, at *15 (N.D. Ala. Nov. 30, 2020). As noted above, the proposed Settlement was achieved only after an all-day mediation session overseen by Mr. Salzman. *See supra* at p. 7. As part of those discussions, the Parties prepared submissions concerning, among other things, their respective views of the Action's merits and damages on a class-wide basis. *Id.* at pp. 3, 7. The negotiations focused on heavily disputed issues, which were explored in-depth. *Id.* Thus, "[t]here is no

evidence that fraud or collusion affected the settlement in any respect." *Morgan v. Public Storage*, 301 F. Supp. 3d 1237, 1248 (S.D. Fla. 2016). Accordingly, this factor weighs in favor of preliminary approval. *Id.* at 1247-48.

### C.    The Relief Provided for the Settlement Class is Adequate

Under Rule 23(e)(2)(C)(i), the Court must consider whether "the relief provided for the class is adequate, taking into account . . . the costs, risks, and delay of trial and appeal." Similarly, the second and third *Bennett* factors ask courts to consider the range of possible recovery and the point on or below the range of possible recovery at which settlement is fair, reasonable, and adequate. *Bennett*, 737 F.2d at 986. These factors are "easily combined." *Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 693 (S.D. Fla. 2014).

### 1.    The Settlement Amount is Within the Range of Reasonableness

The $8,000,000 Settlement Amount is well within the range of reasonableness to warrant preliminary approval. Here, LP's damages expert estimates that if LP had *fully prevailed* at both summary judgment and after a jury trial, if the Court certified the same class period as the Settlement Class Period, and if the Court and jury accepted LP's damages theory—i.e., the *best case scenario*—the total *maximum* damages would be approximately $88.3 million. Thus, the $8,000,000 Settlement Amount represents approximately 9.0% of the total *maximum* damages *potentially* available. Conversely, if Defendants' arguments were accepted by the Court –

including that LP's proposed damages methodology could not establish damages on a class wide basis – the maximum recoverable damages could have been drastically reduced or eliminated.  Notably, a recovery of 9.0% is above the median recovery of 5.3% for securities class actions with damages between $75 million-$149 million in 2023. *See supra* 2 at n. 2.

Moreover, a settlement is not "unfair or inadequate" because it amounts "to only a fraction of the potential recovery." *See In re Health Ins. Innovations Sec. Litig.*, 2021 WL 1341881, at *8 (M.D. Fla. Mar. 23, 2021) (approving settlement recovering 10% of $28.5 million maximum damages).  This is because "the range of possible recovery must be weighed against the risk of no recovery." *See Carpenters Health & Welfare Fund v. Coca-Cola Co.*, 2008 WL 11336122, at *9 (N.D. Ga. Oct. 20, 2008). The Settlement Amount is well within the range of reasonableness, weighing in favor of preliminary approval.

### 2. The Costs, Risks, and Delay of Trial and Appeal

In evaluating a settlement under Rule 23(e)(2)(C)(i), courts also consider "the costs, risks, and delay of trial and appeal." In turn, the first and fourth *Bennett* factors look at "the likelihood of success at trial" and "the complexity, expense and duration of litigation," respectively. *Bennett*, 737 F.2d at 986. This inquiry looks to "whether the possible rewards of continued litigation with its risks and costs are outweighed by the benefits of the settlement." *Strube v. Am. Equity Inv. Life Ins. Co.*, 226 F.R.D.

688, 697-98 (M.D. Fla. 2005). The Court need not determine if the Settlement "is the best possible deal, nor whether class members will receive as much from a settlement as they might have recovered from victory at trial." *See Roubert v. Cap. One Fin. Corp.*, 2023 WL 5916714, at *5 (M.D. Fla. July 10, 2023).

Here, there is no question that continued litigation would have been costly, risky, and protracted. Courts have noted that "[a] securities case, by its very nature, is a complex animal." *See Thorpe v. Walter Inv. Mgmt. Corp.*, 2016 WL 10518902, at *3 (S.D. Fla. Oct. 17, 2016). LP and Lead Counsel recognized the significant risk, time, and expense involved in prosecuting LP's claims through class certification, completion of discovery, summary judgment, trial, and subsequent appeals.

While LP and Lead Counsel are confident that the Settlement Class meets the requirements for certification (*see infra* Part IV), Defendants raised plausible arguments to class certification, including the inability to prove class wide reliance. Had LP failed to obtain class certification, or the proposed class period was truncated, the benefit to the Settlement Class would have been substantially reduced or eliminated. Even if the Court granted class certification, it could revisit the decision at any time, presenting a continuous risk that this case might not be maintained on a class-wide basis through trial. Thus, the risks of obtaining and maintaining class certification support approval of the Settlement in this case. *See In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*, 2024 WL 1554329, at *7

(S.D. Fla. Apr. 10, 2024) (noting that "maintaining class certification through trial is another over-arching risk" which supported approval of settlement).

Aside from risks related to class certification, had litigation continued, Defendants would argue at summary judgment and trial that the evidence demonstrated no materiality, scienter, loss causation or damages. LP would have to prevail on all of these issues at trial, as well as the inevitable appeals that would follow, before recovering anything. And the ultimate outcome – many years in the future – would remain uncertain. *See*, *e.g.*, *In re BankAtlantic Bancorp, Inc. Sec. Litig.*, 2011 WL 1585605, at *38 (S.D. Fla. Apr. 25, 2011) (granting defendants' motion for judgment as a matter of law following plaintiffs' verdict).

Finally, LP filed multiple discovery briefs to compel production of the Audit Committee investigation materials, key documents that Defendants were withholding on the basis of privilege. *See supra* at p. 6.  A ruling in Defendants' favor would have hampered LP's ability to prosecute the case. In any event, the extensive discovery necessary to prove the case, including but not limited to expert testimony to establish liability, loss causation, and damages, would have been time intensive and costly. *Thorpe*, 2016 WL 10518902, at *3 (noting "ongoing discovery and trial preparation would have substantially increased costs to the Class").

In sum, the $8 million Settlement provides a favorable, immediately recognizable recovery that eliminates all of the risk, delay, and expenses of

continued litigation. This factor therefore supports preliminary approval.

### 3. Other Factors Established by Rule 23 Support Preliminary Approval

Under Rule 23(e)(2)(C)(ii)-(iv), courts also must consider whether the relief provided for the class is adequate in light of "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims," "the terms of any proposed award of attorneys' fees, including timing of payment," and "any agreement required to be identified under Rule 23(e)(2)." Each of these factors supports the Settlement's approval or is neutral.

First, the method for claims processing and distribution follows well-established procedures. Here, Strategic Claims Services ("SCS") – the Claims Administrator selected by Lead Counsel subject to Court approval – will process claims under the guidance of Lead Counsel, provide claimants with an opportunity to cure any deficiency in their claim or request review of any denial, and, ultimately, send Authorized Claimants their *pro rata* share of the Net Settlement Fund as calculated under the Plan of Allocation. *See* Kathrein Decl., Ex. 2 (Declaration of Paul Mulholland), ¶ 16. This type of claims processing is standard in securities class action settlements and is effective.[6] *See New York State Teachers' Ret. Sys. v. Gen. Motors Co.*, 315 F.R.D. 226, 233-34, 242 (E.D. Mich. 2016) (approving settlement

---

[6] This is not a claims-made settlement. If the Settlement is approved, Defendants will not have any right to the return of a portion of the Settlement. *See* Kathrein Decl., Ex. 1, ¶ 13.

with similar distribution process).

Second, as disclosed in the Notice, Lead Counsel will apply for a percentage of the common fund for attorneys' fees in an amount not to exceed 33%. A proposed attorneys' fee of up to 33% of the Settlement Fund plus interest in a securities class action is reasonable in light of the work performed and the results obtained. *See*, *e.g.*, *In re Home Loan Servicing Sols. Ltd. Sec. Litig.*, No. 0:16-cv-60165, ECF No. 119 (S.D. Fla. Nov. 17, 2017) (awarding 33.33% of $6 million settlement amount); *Pritchard v. Apyx Med. Corp.*, 2020 WL 6937821, at *1 (M.D. Fla. Nov. 18, 2020) (awarding 33.33% of $3 million settlement fund); *In re Digital Domain Media Grp., Inc. Sec. Litig.*, No. 2:12-cv-14333, ECF No. 116 (S.D. Fla. Apr. 12, 2017) (awarding 33% of $5,500,000 settlement fund).

Third, the Parties have entered into a confidential agreement that allows Defendants to terminate the Settlement if a certain number of Settlement Class Members request exclusion (or "opt out") from the Settlement. This type of agreement is standard in securities class action settlements and has no negative impact on the fairness of the Settlement. *See In re Healthsouth Corp. Sec. Litig.*, 334 F. App'x 248, 250 n.4 (11th Cir. 2009).

### D.    All Settlement Class Members Are Treated Equitably

Rule 23(e)(2)(D) requires courts to evaluate whether the settlement treats

class members equitably relative to one another.[7] *See also In re Health Ins. Innovations Sec. Litig.*, 2021 WL 1341881, at *7 ("Rule 23(e)(2)(D) is satisfied because the Settlement treats Settlement Class Members equitably relative to one another via the Plan of Allocation.").

The Notice sets forth the proposed Plan of Allocation (the "Plan"), developed by LP's damages expert in consultation with Lead Counsel. The Plan provides a fair and reasonable method to allocate the Net Settlement Fund among Settlement Class Members who submit valid Claim Forms. *See* Ex. A-1 to Exhibit 1, ¶¶ 41-75. Under the Plan, the Claims Administrator will calculate a Recognized Loss amount for each Settlement Class Member's transactions. *Id.*

The calculation of each Settlement Class Member's Recognized Loss under the Plan of Allocation is explained in detail in the Notice and will be based on several factors, including when Class Securities were purchased and sold, the type of Class Securities purchased and sold, the purchase and sale price of Class Securities, and the estimated artificial inflation in the price of the security at the time of purchase or sale as determined by the damages expert. *Id.*, ¶ 48. The Net Settlement Fund will be allocated to Authorized Claimants –  including LP – on a *pro rata* basis based on the type of security (*i.e.*, common stock, warrant, or option) and the relative size of

---

[7] As detailed in the Notice, pursuant to the PSLRA, LP will separately seek reimbursement of costs (including lost wages) incurred as a result of his representation of the Settlement Class. *See* 15 U.S.C. §§ 78u-4(a)(4), 77z-1(a)(4).

their Recognized Loss(es). *Id.*, ¶¶ 48, 70-71. Similar plans have repeatedly been approved by courts in class action securities settlements.[8] *See*, *e.g. Pritchard v. APYX Med. Corp.*, 2020 WL 6940765, at *1-2 (M.D. Fla. Nov. 6, 2020); *In re Catalina Mktg. Corp. Sec. Litig.*, 2007 WL 9723529, at *1 (M.D. Fla. July 9, 2007) ("Although the plan of allocation benefits some members of the class differently, it was developed to fairly account for the relative strength of individual claims and the timing of the relevant securities purchases.")

### E. The Remaining Eleventh Circuit Factors Strongly Support Preliminary Approval

#### 1. The Stage of Proceedings at Which Settlement was Achieved

Courts also consider "the stage of proceedings at which settlement was achieved." *Bennett*, 737 F.2d at 986. The Court should focus on whether "Class Counsel had sufficient information to adequately evaluate the merits of the case and weigh the benefits against further litigation." *Francisco v. Numismatic Guar. Corp.*, 2008 WL 649124, at *11 (S.D. Fla. Jan. 31, 2008). As discussed in detail above, LP and Lead Counsel obtained a comprehensive understanding of the strengths and weaknesses of the case, including through document discovery, consultations with damages, loss causation, and market efficiency experts, and the deposition of the whistleblower at the heart of the case. *See supra* at 2-7. Accordingly, Lead Counsel

---

[8] The Plan of Allocation limits aggregate payments to options holders to 10% of the Net Settlement Fund. *See* Ex. A-1 to Exhibit 1, ¶ 57.

had sufficient information to conclude the reasonableness of the Settlement as weighed against the risks of continued litigation. *Numismatic Guar. Corp.*, 2008 WL 649124, at *11.

### 2. Recommendation of Experienced Counsel Favors Preliminary Approval of the Settlement

In determining whether the proposed Settlement is fair, reasonable, and adequate, the Court, "absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." *See Ponzio v. Pinon*, 87 F.4th 487, 507 (11th Cir. 2023). Here, Lead Counsel "are capable attorneys" with relevant experience, and there is no evidence of collusion or bad faith in reaching the Settlement. *Strube*, 226 F.R.D. at 703. Accordingly, this factor favors approval. *Id.*

## IV. THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS

The proposed Settlement Class meets the requirements for certification under Rule 23. First, numerosity is satisfied under Rule 23(a)(1) because there are likely thousands of Settlement Class Members. The average daily trading volume for Redwire common stock during the Settlement Class Period was 3.6 million shares and more than 59.7 million shares of Redwire common stock were outstanding during the Settlement Class Period. ECF No. 85 at 13. Redwire options were also substantially traded – totaling 544,460 call option contracts and 131,424 put option contracts during the Settlement Class Period. *Id.* at 25. Thus, the Settlement Class is likely so large that joinder of all class members is impracticable. *See Thorpe v.*

*Walter Inv. Mgmt., Corp.*, 2016 WL 4006661, at \*6 (S.D. Fla. Mar. 16, 2016) (numerosity satisfied where 3.13 million shares were traded on a weekly basis).

Second, commonality is satisfied under Rule 23(a)(2). The common questions raised by the Action include whether Defendants made material misleading statements or omissions, whether Defendants deployed a fraudulent scheme, whether Defendants acted with scienter, and whether the Settlement Class Members sustained damages due to the artificial inflation in Redwire's securities caused by Defendants' false statements. ECF No. 85 at 13-14. These common questions readily satisfy Rule 23(a)(2). *See In re Recoton Corp. Sec. Litig.*, 248 F.R.D. 606, 618 (M.D. Fla 2006) ("When a plaintiff alleges that there is a common scheme of deceptive conduct to defraud investors, the issue affects all class members, and the commonality requirement is satisfied").

Third, typicality is satisfied under Rule 23(a)(3) because LP's claims and the Settlement Class Members' claims all arise from the same course of events and legal theories: LP and Settlement Class Members (i) purchased Class Securities at prices artificially inflated by Defendants' alleged fraud; (ii) are presumed – by virtue of Class Securities trading in an efficient market – to have relied upon Defendants' alleged false statements; and (iii) suffered losses when the truth was revealed. *See Thorpe*, 2016 WL 4006661, at \*8. Typicality may even be "satisfied despite substantial factual differences . . . when there is a strong similarity of legal theories."

*Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1357 (11th Cir. 2009).

Fourth, as set forth above, adequacy is satisfied under Rule 23(a)(4) because "[LP's] interest in establishing Defendants' liability and maximizing the recovery" aligns with the interests of the Settlement Class. *Monroe*, 332 F.R.D. at 379. LP has also retained counsel experienced in class action securities litigation, who have vigorously pursued the Action on his behalf. *See Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 726-28 (11th Cir. 1987) (noting focus of Rule 23(a)(4) adequacy requirement is on whether counsel will prosecute a class action vigorously).

The Fed. R. Civ. P. 23(b)(3) requirements of predominance and superiority are likewise satisfied. Questions common to all Settlement Class Members predominate over questions affecting individual members because the elements of LP's claims (i.e., §§10(b) and 20(a) of the Exchange Act and Rule 10b–5) are all "susceptible to class-wide proof." *Monroe*, 332 F.R.D at 380 n.4. Indeed, securities class actions "have received favorable treatment in the Eleventh Circuit." *In re HealthSouth Corp. Sec. Litig.*, 257 F.R.D 260, 271 (N.D. Ala. 2009).

In addition, "the thousands of potential claims, the desirability of consistent adjudication of those claims, the high probability that individual members of the proposed class would not have a great interest in controlling the prosecution of the claims, and the economical hurdles that would make litigating the issues individually less feasible" all weigh in favor of Rule 23(b)(3) superiority. *In re Health Ins.*

*Innovations Sec. Litig.*, 2021 WL 1341881, at *6

Finally, Defendants do not object to certification of the Settlement Class for settlement purposes only. *See* Kathrein Decl., Ex. 1, ¶ 2. Although Defendants challenged class certification for litigation purposes (*see supra* at pp. 13-14), courts have certified settlement classes even when faced with challenges to, for example, the application of the fraud-on-the-market presumption (*see Stanaford v. Genovese,* 2015 WL 4930568, at *5 (S.D. Fla. Aug. 17, 2015) and the ability to calculate damages (*see In re Motorsports Merch. Antitrust Litig.*, 112 F. Supp. 2d 1329, 1334 (N.D. Ga. 2000)). Indeed, the presence of "sufficient questions regarding the ability of [LP] to ultimately certify a class . . . actually provides this Court further reason to certify the settlement class." *See Columbus Drywall & Insulation, Inc. v. Masco Corp.*, 258 F.R.D. 545, 558 (N.D. Ga. 2007). Class certification for the purposes of settlement is appropriate.

## V.    THE COURT SHOULD APPROVE THE PROPOSED SETTLEMENT CLASS NOTICE

### A.    The Method of Notice is Adequate

For any class certified under Rule 23(b)(3), both due process and Rule 23 require that class members be given "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *see also Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-75 (1974).

Here, Lead Counsel proposes to send, either by email or first-class mail, individual copies of the Notice (Exhibit A-1 to Exhibit 1) to all potential Settlement Class Members who can be identified with reasonable effort, as well as brokerage firms and other nominees who regularly act as nominees for beneficial purchasers of stock. *See* Kathrein Decl., Ex. 2, ¶¶ 6-9. Contemporaneously with the mailing/emailing of the Notice, copies of the Notice and the Claim Form (Exhibit A-2 to Exhibit 1) will be posted on a website to be developed for the Settlement. *Id.*, ¶ 12. From this website, potential Settlement Class Members will be able to download copies of the Notice and Claim Form and submit claims online. *Id.* Upon request, the Claims Administrator will also mail copies of the Notice and/or Claim Form. *Id.*, ¶ 9. The Summary Notice (Exhibit A-3 to Exhibit 1) will also be published once in *Investor's Business Daily* and transmitted once over the *PR Newswire* pursuant to the Preliminary Approval Order. *Id.*, ¶ 11. In securities class actions, this is more than sufficient to provide adequate notice. *See In re Health Ins. Innovations Sec. Litig.*, 2020 WL 10486666, at *3 (finding similar notice method adequate under Rule 23 and due process).

### B.    The Content of the Notice is Adequate

The proposed notice program also satisfies the requirements of Rule 23(c)(2) by setting forth: (i) the nature of the action; (ii) the Settlement Class definition; (iii) a description of the claims and defenses; (iv) the ability of Settlement Class

Members to enter an appearance through counsel; (v) the Settlement Class Member's ability to be excluded from the Settlement Class; and (vi) the binding effect of a Settlement Class judgment. Additionally, the notice program satisfies the PSLRA's requirements, 15 U.S.C. §§ 78u-4(a)(7), 77z-1(a)(7), by setting forth: (i) a cover page summarizing the Notice information; (ii) a statement of class member recovery, and the estimated recovery per damaged share, warrant, or option; (iii) a statement of potential outcomes of the case; (iv) a statement of attorneys' fees or costs sought; (v) contact information for counsel; and (vi) the reasons for settlement. Finally, the notice program will provide the date, time, and location of the Settlement Hearing and the process for submitting an objection to the Settlement. This Court has previously found a notice with similar information as provided by LP here adequate under Rule 23 and due process. *See City of St. Clair Shores Gen. Emps.' Ret. Sys. v. Lender Processing Servs., Inc.*, 2014 WL 12614452, at *3 (M.D. Fla. Mar. 4, 2014) (Corrigan, J.). Based on the foregoing, LP respectfully requests that the Court approve the form and content of the proposed notice program.

## VI.    PROPOSED SETTLEMENT SCHEDULE

Exhibit 3 to the Kathrein Declaration details a proposed settlement schedule, as agreed to by the Parties and set forth in the proposed Preliminary Approval Order.

## VII.   CONCLUSION

For the foregoing reasons, LP respectfully requests that the Court grant

preliminary approval of the proposed Settlement and enter the proposed Preliminary Approval Order.

## RULE 3.01(G) CERTIFICATION

Counsel for LP conferred with Defendants' Counsel on November 13, 2024 via telephone regarding the issues raised in the above motion and Defendants stated they do not oppose the Motion and relief sought.

Dated: November 15, 2024

Respectfully submitted,

**HAGENS BERMAN SOBOL SHAPIRO LLP**

By: *s/ Reed R. Kathrein*
Reed R. Kathrein (Fla. Bar. No. 262161)
reed@hbsslaw.com
Lucas E. Gilmore (admitted *pro hac vice*)
lucasg@hbsslaw.com
715 Hearst Avenue, Suite 300
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001

Steve W. Berman (admitted *pro hac vice*)
steve@hbsslaw.com
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

Peter A. Shaeffer (admitted *pro hac vice*)
petersh@hbsslaw.com
455 N. Cityfront Plaza Drive, Suite 2410
Chicago, IL 60611
Telephone: (708) 628-4949
Facsimile: (708) 628-4950

*Lead Counsel for Lead Plaintiff*
*Jared Thompson*

**THE SCHALL LAW FIRM**
Brian Schall (admitted *pro hac vice*)
brian@schallfirm.com

*Additional Counsel for Lead Plaintiff*

**BUCKNER + MILES**
David M. Buckner (Fla. Bar No. 60550)
david@bucknermiles.com

*Liaison Counsel for Lead Plaintiff*