UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | |
|---|---|
| JED LEMEN, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>REDWIRE CORPORATION f/k/a GENESIS PARK ACQUISITION CORP., PETER CANNITO, and WILLIAM READ,<br><br>Defendants. | Case No. 3:21-cv-01254-TJC-PDB<br><br>CLASS ACTION<br><br>**LEAD PLAINTIFF JARED THOMPSON'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION** |

Lead Plaintiff Jared Thompson ("LP"), on behalf of himself and the Settlement Class and through his undersigned counsel, respectfully submits this unopposed motion, pursuant to Rule 23(e)(2) of the Federal Rules of Civil Procedure, for (1) final approval of the proposed Settlement resolving this Action in exchange for payment of $8 million in cash for the benefit of the Settlement Class, and (2) approval of the proposed Plan of Allocation of the proceeds of the Settlement.[1]

---

[1] All capitalized terms used herein that are not otherwise defined have the meanings ascribed to them in the Stipulation and Agreement of Settlement dated November 15, 2024 (the "Stipulation") (ECF No. 213-2), or in the concurrently filed Declaration of Reed R. Kathrein in Support of (I)

- 1 -

## I.     INTRODUCTION

The Parties have agreed to settle this Action in exchange for a $8,000,000 cash payment (the "Settlement Amount") to be made for the benefit of the Settlement Class. This is a favorable result for the Settlement Class, and readily satisfies the standards for final approval under Rule 23(e)(2) of the Federal Rules of Civil Procedure and applicable Eleventh Circuit law. If approved, the $8 million settlement represents a recovery of approximately 9.0% of the $88.3 million total maximum damages potentially recoverable, as calculated by LP's damages expert. A recovery of 9.0% of maximum damages exceeds the average recovery in similar situations.[2]

As detailed in the accompanying Kathrein Declaration and summarized herein, the Settlement was reached after extensive, highly-contested litigation and a mediation process overseen by a highly respected mediator, Gary S. Salzman, Esq. Based on these efforts, LP and Lead Plaintiff's Counsel possessed a thorough understanding of the relative strengths and weaknesses of the claims and whether

---

Lead Plaintiff's Unopposed Motion for Final Approval of Class Action Settlement and Plan of Allocation; and (II) Lead Counsel's Unopposed Motion for an Award of Attorneys' Fees, Reimbursement of Litigation Expenses, and Compensatory Award to Lead Plaintiff (the "Kathrein Declaration"). Unless otherwise noted, all citations to "¶__" and "Ex." refer, respectively, to paragraphs in, and exhibits to, the Kathrein Declaration.

[2] *See Securities Class Action Settlements—2024 Review and Analysis* (Cornerstone Research 2024), at 7, https://www.cornerstone.com/wp-content/uploads/2025/03/Securities-Class-Action-Settlements-2024-Review-and-Analysis.pdf (finding a median settlement recovery of 7.5% for securities class actions with damages between $75M-$149M in 2024).

the Settlement obtained was fair, reasonable, and adequate.

As made clear during the litigation and settlement discussions, LP and Lead Plaintiff's Counsel believed in the strength of the claims and the amount of damages. As this Court is well aware through the extensive and intense motion practice, however, Redwire Corporation f/k/a Genesis Park Acquisition Corp. ("Redwire" or the "Company"), Peter Cannito, and William Read ("Defendants") set forth non-frivolous arguments at class certification related to LP's standing and typicality and ability to establish market efficiency that posed a significant risk of a lesser or no recovery if the litigation continued. Lead Plaintiff's Counsel and LP further understood that Defendants' challenges to scienter, falsity, materiality, loss causation, and damages would pose additional barriers to any recovery for LP and the Settlement Class.

Absent the Settlement, the Parties faced the prospect of losing on any one of these undecided issues; further litigation through the remainder of fact discovery; additional costly expert discovery; summary judgment; a trial; post-trial motion practice; and ensuing appeals. The Settlement avoids the risks and delays associated with further litigation while providing a substantial, certain, and immediate benefit to the Class in the form of a $8 million cash payment.

In light of these considerations, LP respectfully submits that the proposed Settlement is fair, reasonable, and adequate and warrants final approval by the Court.

LP also moves for approval of the proposed Plan of Allocation of the Net Settlement Fund. LP's consulting damages expert developed the Plan of Allocation and it is designed to distribute the proceeds of the Net Settlement Fund fairly and equitably. Settlement Class Members who traded the same securities – whether Common Stock, Options, or Warrants – are treated in the same manner and no Settlement Class Member (including LP) is favored over another. The Plan of Allocation is therefore fair and reasonable and it too should be approved.

Members of the Settlement Class appear to agree that the Settlement and Plan of Allocation are fair and in their best interest. Pursuant to the Court's Preliminary Approval Order (ECF No. 214), the Notice was mailed or emailed to 39,181 potential Settlement Class Members. *See* Ex. 1, Declaration of Sarah Evans ("Evans Decl."), ¶ 10.  The Notice apprised Settlement Class Members of their right to, and procedure for, objecting to the Settlement, the Plan of Allocation, or to Lead Counsel's application for attorneys' fees, expenses, and an award to LP. *See id.* at Ex. A. The time to file an objection expires on July 10, 2025. To date, no objections have been received by Lead Counsel or filed with the Court, and no Settlement Class Member has sought exclusion. *Id.*, ¶¶ 15-16; Kathrein Decl., ¶ 6. The overwhelming acceptance of the Settlement by the Settlement Class supports a finding that the Settlement and Plan of Allocation are fair, reasonable, and adequate and should be approved.

## II.    OVERVIEW OF THE LITIGATION.

The Kathrein Declaration is an integral part of this submission and, for the sake of brevity, the Court is respectfully referred to it for a detailed description of, *inter alia*: the factual background and procedural history of the Action, and the nature of the claims asserted (¶¶ 15-30); the negotiations leading to the Settlement (¶ 31); the risks and uncertainties of continued litigation (¶¶ 34-43); and the terms of the Plan of Allocation (¶¶ 55-63).

## III.   FINAL CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE.

The Court previously granted preliminary certification of the Settlement Class for settlement purposes only, and appointed LP as Class Representative and Lead Counsel as Class Counsel for the Settlement Class. *See* ECF No. 214 at 2-3. Because nothing has occurred since then to cast doubt on whether the applicable prerequisites of Rule 23 are met, the Court should now affirm its previous determinations from the Preliminary Approval Order. *See, e.g., N. Star Capital Acquisitions, LLC v. Krig*, 2011 WL 65662, at *3-4 (M.D. Fla. Jan. 10, 2011) (Corrigan, J.) (certifying class action and finding adequacy of class representative and class counsel for settlement purposes).[3]

---

[3] All emphasis is added and all internal citations and quotations are omitted.

## IV.   THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE.

### A.   The Standards for Judicial Approval of Class Action Settlements.

Rule 23(e) requires court approval for any class action settlement. The standard for determining whether to grant final approval is whether the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).  The Court's judgment is informed by the "strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement." *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984).

Rule 23(e)(2) governs final approval, where courts consider the following factors in determining whether a proposed settlement is fair, reasonable, and adequate:

> (A) have the class representatives and class counsel adequately represented the class; (B) was the proposal negotiated at arm's-length; (C) is the relief provided for the class adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) does the proposal treat class members equitable relative to each other.

"In the Eleventh Circuit, the [*Bennett*] factors are also considered in determining whether to approve a settlement." *See In re Health Ins. Innovations Sec. Litig.*, 2020 WL 10486665, at *3, 11 (M.D. Fla. Oct. 21, 2020). The *Bennett* factors, certain of which overlap with Rule 23(e), are:

(1) the likelihood of success at trial; (2) the range of possible recovery; (3)

the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved.

*Bennett*, 737 2d at 986. The proposed Settlement is fair, reasonable, and adequate under these factors.

### B. LP and Lead Plaintiff's Counsel Adequately Represented the Class.

Rule 23(e)(2)(A) requires the Court to consider whether the "class representatives and class counsel have adequately represented the class." Here, it is undisputed that LP and Lead Plaintiff's Counsel adequately represented the Settlement Class.

LP has no antagonistic interests with the Settlement Class, and in fact, "[LP's] interests in establishing Defendants' liability and maximizing the recovery are aligned with the interests" of the Settlement Class. *See Monroe Cty. Emps.' Ret. Sys. v. S. Co.*, 332 F.R.D. 370, 379 (N.D. Ga. 2019). LP has also contributed significantly to the Action by overseeing the litigation, communicating with counsel, reviewing pleadings, producing documents, answering written discovery, sitting for a deposition, and participating in settlement discussions. *See* Ex. 2, Declaration of Jared Thompson ("Thompson Decl."), ¶ 4(a)-(i).

In addition, LP retained counsel who are highly experienced in securities litigation and who have vigorously prosecuted the claims. *See* Exs. 3-5 (attaching

Lead Plaintiff's Counsel's firm resumes). As set forth in the Kathrein Declaration, Lead Plaintiff's Counsel, among other things, (i) conducted a comprehensive investigation, including detailed reviews of Redwire's SEC filings, press releases, and other publicly available information; (ii) drafted the factually detailed First Amended Complaint; (iii) researched and drafted an opposition to Defendants' motion to dismiss; (iv) consulted with damages, loss causation, and market efficiency experts; (v) propounded party and non-party discovery and reviewed documents; (vi) prepared for and conducted the deposition of the non-party whistleblower Daniel Gievers; (vii) drafted and filed multiple motions related to Defendants' discovery; (viii); prior to settlement, prepared for fact witness depositions as well as the 30(b)(6) depositions of Redwire and Redwire's auditor; and (ix) researched and drafted the motion for class certification and *Daubert* briefing concerning the market efficiency experts. Kathrein Decl., ¶¶ 11, 21-30. Since the Parties reached an agreement on resolving the case, Lead Plaintiff's Counsel has also (i) engaged in negotiations regarding the terms of the proposed Settlement; (ii) prepared the initial draft of the Stipulation and supporting documents; and (iii) worked with LP's consulting damages expert to craft the Plan of Allocation. *Id.*, ¶ 11.

For these reasons, LP and Lead Plaintiff's Counsel have adequately represented the Settlement Class. *In re Health Ins. Innovations Sec. Litig.*, 2021 WL

1341881, at \*7 (M.D. Fla. Mar. 23, 2021), *report and recommendation adopted*, 2021 WL 1186838 (M.D. Fla. Mar. 30, 2021) ("Rule 23(e)(2)(A) [] is satisfied because Lead Plaintiff and Lead Counsel have vigorously represented the Class" by, among other things, conducting "an exhaustive factual investigation . . . prior to filing the Complaint" "opposing Defendants' motion to dismiss" and participating in "intensive [settlement] negotiations.").

## C. The Settlement is the Product of Arm's-Length Negotiations.

Rule 23(e)(2)(B) evaluates whether the proposed settlement "was negotiated at arm's length." For this factor, the Court must "rule out the possibility of fraud or collusion behind the settlement." *In re Blue Cross Blue Shield Antitrust Litig.*, 2020 WL 8256366, at \*15 (N.D. Ala. Nov. 30, 2020). Here, "[w]here the parties have negotiated at arm's length, the Court should find that the settlement is not the product of collusion." *Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 692 (S.D. Fla. 2014). The proposed Settlement was achieved only after an all-day mediation session and multiple follow-up calls over the next several weeks, overseen by Mr. Salzman. Kathrein Decl., ¶ 31. As part of those discussions, the Parties prepared submissions concerning their respective views of the Action's merits and damages on a class-wide basis. *Id*. The negotiations focused on heavily disputed issues, which were explored in-depth. *Id.* Thus, "[t]here is no evidence that fraud or collusion affected the settlement in any respect." *Morgan v. Public Storage*, 301 F. Supp. 3d

1237, 1248. (S.D. Fla. 2016).

Moreover, "absent fraud, collusion, or the like, [the Court] should be hesitant to substitute its own judgment for that of counsel." *See Ponzio v. Pinon*, 87 F.4th 487, 507 (11th Cir. 2023). Here, Lead Plaintiff's Counsel "are capable attorneys" with relevant experience, and there is no evidence of collusion or bad faith in reaching the Settlement. *Strube v. Am. Equity Inv. Life Ins. Co.*, 226 F.R.D. 688, 703 (M.D. Fla. 2005). Accordingly, for all these reasons, this factor favors approval. *See Saccoccio*, 297 F.R.D. at 692 (approving settlement where "the mediator was involved in all steps in the process" and the "case was intensively litigated").

**D.    The Relief Provided for the Settlement Class is Adequate.**

**1.    The Settlement Amount is Within the Range of Reasonableness.**

The second and third *Bennett* factors ask courts to consider the range of possible recovery and the point on or below the range of possible recovery at which a settlement is fair, adequate, and reasonable. *Bennett*, 737 F.2d at 986. These factors are "easily combined." *Saccoccio*, 297 F.R.D. at 693.

The $8,000,000 Settlement Amount is well within the range of reasonableness to warrant final approval. Here, LP's damages expert estimates that if LP had *fully prevailed* at both summary judgment and after a jury trial, if the Court certified the same class period as the Settlement Class Period, and if the Court and jury accepted LP's damages theory—*i.e.*, the *best case scenario*—the total *maximum* damages

would be approximately $88.3 million. Kathrein Decl., ¶¶ 9, 45. Thus, the $8,000,000 Settlement Amount represents approximately 9.0% of the total *maximum* damages *potentially* available. Conversely, if Defendants' arguments were accepted by the Court – including that LP's proposed damages methodology could not establish damages on a class-wide basis – the maximum recoverable damages could have been drastically reduced or eliminated. *Id.*, ¶ 35. Notably, a recovery of 9.0% is above the median recovery of 7.5% for securities class actions with damages between $75 million-$149 million in 2024. *See supra* at 2 n.2.

Moreover, a settlement is not "unfair or inadequate" because it amounts "to only a fraction of the potential recovery." *See In re Health Ins. Innovations Sec. Litig.*, 2021 WL 1341881, at *8 (approving settlement recovering 10% of $28.5 million maximum damages). This is because "the range of possible recovery must be weighed against the risk of no recovery." *See Carpenters Health & Welfare Fund v. Coca-Cola Co.*, 2008 WL 11336122, at *9 (N.D. Ga. Oct. 20, 2008). The Settlement Amount is well within the range of reasonableness, weighing in favor of final approval.

### 2.    The Costs, Risks, and Delay of Trial and Appeal.

In evaluating whether the relief provided to the class is adequate under Rule 23(e)(2)(C)(i), courts consider "the costs, risks, and delay of trial and appeal." In turn, the first and fourth *Bennett* factors look at "the likelihood of success at trial"

and "the complexity, expense and duration of litigation," respectively. *Bennett*, 737 F.2d at 986. This inquiry looks to "whether the possible rewards of continued litigation with its risks and costs are outweighed by the benefits of the settlement." *Strube*, 226 F.R.D. at 697-98. The Court need not determine if the Settlement "is the best possible deal, nor whether class members will receive as much from a settlement as they might have recovered from victory at trial." *See Roubert v. Cap. One Fin. Corp.*, 2023 WL 5916714, at *5 (M.D. Fla. July 10, 2023).

Here, there is no question that continued litigation would have been costly, risky, and protracted. Courts have noted that "[a] securities case, by its very nature, is a complex animal." *See Thorpe v. Walter Inv. Mgmt. Corp.*, 2016 WL 10518902, at *3 (S.D. Fla. Oct. 17, 2016). LP and Lead Plaintiff's Counsel recognized the significant risk, time, and expense involved in prosecuting the claims through class certification, completion of discovery, summary judgment, trial, and subsequent appeals.

While LP and Lead Plaintiff's Counsel were confident in obtaining class certification (*see* ECF No. 85), Defendants raised plausible arguments against class certification, including the inability to prove class-wide reliance and LP's standing and typicality. *See* Kathrein Decl., ¶ 35. Had LP failed to obtain class certification, or the proposed class period was truncated, the benefit to the Settlement Class would have been substantially reduced or eliminated. *Id*. Even if the Court granted class

certification, it could revisit the decision at any time, presenting a continuous risk
that this case might not be maintained on a class-wide basis through trial. *Id.* Thus,
the risks of obtaining and maintaining class certification support approval of the
Settlement. *See In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*, 2024
WL 1554329, at *7 (S.D. Fla. Apr. 10, 2024) (noting that "maintaining class
certification through trial is another over-arching risk" which supported approval of
settlement).

Had litigation continued, LP would have to convince the Court at summary
judgment and a jury at trial that Defendants made actionable false and misleading
statements, with either intent or severe recklessness. Kathrein Decl., ¶ 36. LP would
also need to prove that the statements caused LP's and the Settlement Class's losses
upon revelation of the truth regarding Defendants' deficient "tone at the top." *Id.*
Defendants would argue that the evidence demonstrated no falsity, materiality,
scienter, loss causation or damages. *Id.* For example, Defendants could argue that
investors do not find a company's "tone at the top" to be material, and in any event,
falsity is undermined because Redwire was never forced to restate any of its
financials. *Id.*, ¶ 37. To show that Defendants lacked scienter and acted in good faith,
Defendants could point to the Audit Committee investigation's conclusions
regarding the whistleblower complaint, as well as the SEC's decision to not pursue
any enforcement action after learning of the complaint. *Id.*, ¶ 38. Document

discovery could also undermine any inference that Defendants knew of or condoned any deficient "tone at the top." *Id.* As for loss causation and damages, Defendants would have argued that any price declines in the Class Securities on the alleged corrective disclosure dates were due to the disclosure of negative information unrelated to the alleged fraud. *Id.*, ¶ 39. If Defendants prevailed on this argument, damages would be significantly reduced or eliminated. *Id.*, ¶ 40.

These disputed issues, moreover, would no doubt be vigorously contested in a highly contentious "battle of the experts" that could leave LP without viable claims or damages. *See, e.g., Zuckerman v. Smart Choice Auto. Grp., Inc.*, 2001 WL 686879, at \*10 (M.D. Fla. May 3, 2001) ("The determination of damages . . . is a complicated and uncertain process, typically involving conflicting expert opinions."); *Ressler v. Jacobson*, 822 F. Supp. 1551, 1554 (M.D. Fla. 1992) ("In the 'battle of experts,' it is impossible to predict with any certainty which arguments would find favor with the jury.").

LP would have to prevail on all of these issues at trial, as well as the inevitable appeals that would follow, before recovering anything. Kathrein Decl., ¶ 43. And the ultimate outcome – many years in the future – would remain uncertain. *See, e.g., In re BankAtlantic Bancorp, Inc. Sec. Litig.*, 2011 WL 1585605, at \*38 (S.D. Fla. Apr. 25, 2011) (granting defendants' motion for judgment as a matter of law following plaintiffs' verdict).

Finally, LP filed multiple discovery briefs to compel production of the Audit Committee investigation materials, key documents that Defendants were withholding on the basis of privilege. Kathrein Decl., ¶ 29. A ruling in Defendants' favor would have hampered LP's ability to prosecute the case. *Id.*, ¶ 41. In any event, the extensive discovery necessary to prove the case, including but not limited to expert testimony to establish liability, loss causation, and damages, would have been time intensive and costly. *See id.*, ¶¶ 39-42; *see also Thorpe*, 2016 WL 10518902, at *3 (noting "ongoing discovery and trial preparation would have substantially increased costs to the Class").

In sum, even if LP prevailed after trials and appeals, there is no guarantee that the Settlement Class would have obtained a judgment greater than the $8 million Settlement, or if they did, that the Class could collect upon it. *See, e.g., Robbins v. Koger Props., Inc.*, 116 F.3d 1441, 1449 (11th Cir. 1997) (reversing jury verdict of $81 million for plaintiffs). As in any securities class action, there was a very significant risk that continued litigation might yield a smaller recovery – or no recovery at all – several years in the future. Kathrein Decl., ¶ 43. In contrast, the Settlement provides a favorable, immediately recognizable recovery that eliminates all of the risk, delay, and expenses of continued litigation. *Id.*, ¶¶ 34-43. This factor therefore supports final approval.

### 3.    Other Factors Established by Rule 23 Support Final Approval.

Under Rule 23(e)(2)(C)(ii)-(iv), courts must consider whether the relief provided for the class is adequate in light of "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims," "the terms of any proposed award of attorney's fees, including timing of payment," and "any agreement required to be identified under Rule 23(e)(3)." Each of these factors supports the Settlement's approval or is neutral.

First, the method for claims processing and distribution follows well-established procedures. Strategic Claims Services ("SCS") – the Claims Administrator – will process claims under the guidance of Lead Plaintiff's Counsel, provide claimants with an opportunity to cure any deficiency in their claim or request review of any denial, and, ultimately, send Authorized Claimants their *pro rata* share of the Net Settlement Fund as calculated under the Plan of Allocation. *See* Kathrein Decl., ¶¶ 55-63; *see also* ECF No. 213-2, ¶ 24(d)-(e). This type of claims processing is standard in securities class action settlements and is effective.[4] *See New York State Teachers' Ret. Sys. v. Gen. Motors Co.*, 315 F.R.D. 226, 233-34, 242 (E.D. Mich. 2016) (approving settlement with similar distribution process).

Second, as disclosed in the Notice, Lead Counsel will apply for a percentage

---

[4] This is not a claims-made settlement. If the Settlement is approved, Defendants will not have any right to the return of a portion of the Settlement. *See* ECF No. 213-2, ¶ 13.

of the common fund for attorneys' fees in an amount not to exceed 33%. As
discussed in detail in the accompanying Fee Memorandum[5], the proposed fee award
of up to 33% of the Settlement Fund plus interest in a securities class action is
reasonable in light of the work performed and the results obtained. *See*, *e.g.*, *In re
Home Loan Servicing Sols. Ltd. Sec. Litig.*, No. 0:16-cv-60165, ECF No. 119, ¶ 16
(S.D. Fla. Nov. 17, 2017) (awarding 33.33% of $6 million settlement fund);
*Pritchard v. Apyx Med. Corp.*, 2020 WL 6937821, at *1 (M.D. Fla. Nov. 18, 2020)
(awarding 33.33% of $3 million settlement fund); *In re Digital Domain Media Grp.,
Inc. Sec. Litig.*, No. 2:12-cv-14333, ECF No. 116, ¶ 4 (S.D. Fla. Apr. 12, 2017)
(awarding 33% of $5,500,000 settlement fund). In fact, "[c]ourts within this Circuit
have routinely awarded attorneys' fees of 33 percent or more of the gross settlement
fund." *See Asselta v. Nova Se. Univ.*, 2025 WL 1560772, at *6 (S.D. Fla. May 28,
2025) *report and recommendation adopted sub nom. Rzepkoski v. Town of Palm
Beach Shores*, 2025 WL 1568129 (S.D. Fla. June 3, 2025) (citing cases).

Third, the Parties have entered into a confidential agreement that allows
Defendants to terminate the Settlement if a certain number of Settlement Class
Members request exclusion (or "opt out") from the Settlement. This type of
agreement is standard in securities class action settlements and has no negative

---

[5] *See* Lead Counsel's Unopposed Motion for an Award of Attorneys' Fees, Reimbursement of
Litigation Expenses, and Compensatory Award to Lead Plaintiff (the "Fee Memorandum").

impact on the fairness of the Settlement. *See In re HealthSouth Corp. Sec. Litig.*, 334

F. App'x 248, 250 n.4 (11th Cir. 2009).

### E.    All Settlement Class Members Are Treated Equitably.

Rule 23(e)(2)(D) requires courts to evaluate whether the settlement treats

class members equitably relative to one another.[6] The Settlement does that. Under

the proposed Plan of Allocation, each Authorized Claimant will receive his, her, or

its *pro rata* share of the Net Settlement Fund.[7] Because the proposed Plan of

Allocation does not provide preferential treatment to any Settlement Class Member

or to LP, this factor supports final approval of the proposed Settlement. This is true

even though the *pro rata* shares may differ based on the type of security transacted

by each Settlement Class Member or the date of their trades (*see infra* at 22-23). *See*

*In re Catalina Mktg. Corp. Sec. Litig.*, 2007 WL 9723529, at *1 (M.D. Fla. July 9,

2007) ("Although the plan of allocation benefits some members of the class

differently, it was developed to fairly account for the relative strength of individual

claims and the timing of the relevant securities purchases.").

---

[6] As detailed in the Notice, pursuant to the PSLRA, LP will separately seek reimbursement of costs (including lost wages) incurred as a result of his representation of the Settlement Class. *See* 15 U.S.C. §§ 78u-4(a)(4), 77z-1(a)(4).

[7] The proposed Plan of Allocation is set forth in the Notice. *See* Ex. 1, Evans Decl., Ex. A, ¶¶ 41-75.

**F.    The Remaining Eleventh Circuit *Bennett* Factors Strongly Support Final Approval.**

**1.    The Stage of Proceedings at Which Settlement was Achieved.**

In determining final approval, courts also consider "the stage of proceedings at which the settlement was achieved." *Bennett*, 737 F.2d at 986. The Court should focus on whether "Class Counsel had sufficient information to adequately evaluate the merits of the case and weigh the benefits against further litigation." *Francisco v. Numismatic Guar. Corp.*, 2008 WL 649124, at *11 (S.D. Fla. Jan. 31, 2008). As discussed in detail above, LP and Lead Plaintiff's Counsel obtained a comprehensive understanding of the strengths and weaknesses of the case, including through document discovery, consultations with damages, loss causation, and market efficiency experts, and the deposition of the whistleblower at the heart of the case. *See supra* at 8. In addition, the Parties had fully briefed class certification and had filed a number of discovery motions that provided insight into LP's case and Defendants' arguments against liability and damages. *See* Kathrein Decl., ¶¶ 29-30, 35-39. Accordingly, Lead Plaintiff's Counsel had sufficient information to determine the Settlement was reasonable when weighed against the risks of continued litigation. *Numismatic Guar. Corp.*, 2008 WL 649124, at *11.

**2.    The Substance and Amount of Opposition to the Settlement Favors Final Approval of the Settlement.**

While the deadline for filing objections is July 10, 2025, to date, Lead Counsel has not received any objections to the Settlement, and no objections have been filed on the Court's docket. *See* Kathrein Decl., ¶ 54. Nor has any Settlement Class Member sought exclusion from the Settlement. *See* Ex. 1, Evans Decl., ¶ 15. Such a favorable reaction of the Settlement Class to the Settlement supports approval. *In re Health Ins. Innovations Sec. Litig.*, 2021 WL 1341881, at *9 (finding fact that zero objections were filed "militates in favor of approval").[8]

Accordingly, each of these factors favors final approval of the Settlement.

## V.    THE NOTICE PROGRAM SATISFIES RULE 23 AND DUE PROCESS.

The Court approved the proposed notice program in the Preliminary Approval Order, and the Claims Administrator, SCS, executed the notice program in accordance with the provisions therein. *See* Kathrein Decl., ¶¶ 46-53; Ex. 1, Evans Decl., ¶¶ 2-14. SCS notified potential Settlement Class Members about the Settlement by sending a copy of the Notice via mail or emailing a link to the Notice, posting the Notice and other information on the Settlement Website, and publishing

---

[8] LP will file reply papers by July 24, 2025 addressing any objections that may be received.

the Summary Notice.[9] *See* Ex. 1, Evans Decl., ¶¶ 2-13. As of June 25, 2025, 39,181 potential Settlement Class Members either received a copy of the Notice via mail or a link to the Notice via email. *Id.*, ¶ 10.

On March 10, 2025, the Court-approved Summary Notice was published in *Investor's Business Daily* and transmitted once over the *PR Newswire. Id.,* ¶ 12. The published Summary Notice clearly and concisely provided information concerning the Settlement and the means to obtain a copy of the Notice. *See id.,* Ex. C.

Finally, the Claims Administrator posted the Notice and Claim Form, Stipulation, and other relevant documents online at the Settlement Website, and provided a toll-free telephone number for Settlement Class Members to call with any questions concerning the Settlement. *Id.* ¶¶ 13-14.

Rule 23 and due process require that class members be given "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *see also Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-75 (1974). Courts routinely find that comparable notice programs to the one performed here meet the requirements of due process and Rule 23. *See*, *e.g.*, *In re Health Ins. Innovations Sec. Litig.*, 2021 WL 1341881, at *9-10 (finding notice method adequate where (i) notice and proof

---

[9] The Settlement Website was established on February 18, 2025. *See* Ex. 1, Evans Decl., ¶ 13. From this website, potential Settlement Class Members can, *inter alia*, download copies of the Notice and Claim Form and submit claims online. *Id.*

of claim is mailed to settlement class members; (ii) summary notice is published

once in *Investor's Business Daily* and transmitted once over the *PR Newswire*; and

(iii) notice and claim form is posted on claim administrator's website).

## VI.    THE PLAN OF ALLOCATION IS FAIR AND REASONABLE.

Assessment of a plan of allocation in a class action under Rule 23 is governed

by the same standard of review applicable to approval of the settlement as a whole

– the plan must be fair, adequate, and reasonable. *See In re Rayonier Inc. Sec. Litig.*,

2017 WL 4535984, at *1 (M.D. Fla. Oct. 5, 2017) (Corrigan, J.); *see also In re IMAX

Sec. Litig.*, 283 F.R.D. 178, 192 (S.D.N.Y. 2012) ("When formulated by competent

and experienced counsel, a plan for allocation of net settlement proceeds need have

only a reasonable, rational basis.").

The proposed Plan of Allocation is set forth in the Notice. *See* Ex. 1, Evans

Decl., Ex. A, ¶¶ 41-75. Lead Plaintiff's Counsel developed the Plan of Allocation in

consultation with LP's damages expert with the objective of equitably distributing

the Net Settlement Fund to Settlement Class Members who suffered economic losses

as a result of the alleged wrongdoing. Kathrein Decl., ¶¶ 56-58. The computations

under the Plan of Allocation are a method to weigh the Claims of Authorized

Claimants against one another for the purposes of making *pro rata* allocations of the

Net Settlement Fund. *Id.*, ¶ 57.

Under the Plan of Allocation, a "Recognized Loss Amount" will be calculated for each share of Common Stock, Warrant, or Call Option purchased or otherwise acquired and for each Put Option sold during the Settlement Class Period that is listed in the Claim Form and for which adequate documentation is provided. Ex. 1, Evans Decl., Ex. A, ¶ 42. The calculation of each Settlement Class Member's Recognized Loss Amount will be based on several factors, including when the Class Security was purchased and sold, the type of Class Security purchased and sold, the purchase and sale price of the Class Security, the estimated artificial inflation in the price of the Class Security at the time of the purchase or sale, and the number of claims submitted. *Id.*, ¶ 60. The Net Settlement Fund will be allocated to Authorized Claimants – including LP – on a *pro rata* basis based on the type of Class Security (*i.e.*, Common Stock, Warrant, or Option) and the relative size of their Recognized Loss(es) based on the factors described above.[10] *Id.*, ¶ 57.

Lead Plaintiff's Counsel believes that the Plan of Allocation provides a fair and reasonable method to equitably allocate the Net Settlement Fund among Settlement Class Members who suffered losses as a result of the conduct alleged in the Action. In fact, similar plans addressing holders of common stock, warrants, and/or options have been approved by courts in class action securities settlements.

---

[10] The Plan of Allocation limits aggregate payments to options holders to 10% of the Net Settlement Fund. *See* Ex. 1, Evans Decl., Ex A, ¶ 57.

*See*, *e.g. Pritchard v. APYX Med. Corp.*, 2020 WL 6940765, at *1-2 (M.D. Fla. Nov. 6, 2020) (approving plan of allocation involving common stock and options); *Rodriguez v. Alfi, Inc.*, No. 1:21-cv-24232-KMW, ECF No. 141 (S.D. Fla. Mar. 8, 2024) (approving plan of allocation involving common stock and warrants). Moreover, to date, no objection to the Plan of Allocation has been filed with the Court or been received by Lead Counsel. *See* Kathrein Decl., ¶ 63; *see also In re Catalina Mktg. Corp. Sec. Litig.*, 2007 WL 9723529, at *1 (finding that no objections support approval of the plan of allocation); *Thorpe*, 2016 WL 10518902, at *4 (same) The Court should, therefore, approve the Plan of Allocation.

## VII.   CONCLUSION

For the foregoing reasons, LP respectfully requests that the Court approve the proposed Settlement and Plan of Allocation as fair, reasonable, and adequate, and certify the Settlement Class for purposes of settlement.[11]

### **RULE 3.01(G) CERTIFICATION**

Counsel for LP conferred with Defendants' Counsel on June 23, 2025 and June 25, 2025 via email regarding the issues raised in the above motion and Defendants stated they do not oppose the Motion and relief sought.

---

[11] A [Proposed] Order and Final Judgment was previously submitted. ECF No. 213-2 (Ex. B). A proposed Order Approving Plan of Allocation will be submitted with LP's reply papers on July 24, 2025, after the deadline for objecting to the motion and requesting exclusion from the Settlement Class has passed.

Dated: June 26, 2025

Respectfully submitted,

**HAGENS BERMAN SOBOL SHAPIRO
LLP**

By: *s/ Reed R. Kathrein*
Reed R. Kathrein (Fla. Bar. No. 262161)
reed@hbsslaw.com
Lucas E. Gilmore (admitted *pro hac vice*)
lucasg@hbsslaw.com
715 Hearst Avenue, Suite 300
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile:  (510) 725-3001

Steve W. Berman (admitted *pro hac vice*)
steve@hbsslaw.com
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile:  (206) 623-0594

Peter A. Shaeffer (admitted *pro hac vice*)
petersh@hbsslaw.com
455 N. Cityfront Plaza Drive, Suite 2410
Chicago, IL 60611
Telephone: (708) 628-4949
Facsimile:  (708) 628-4950

*Lead Counsel for Lead Plaintiff
Jared Thompson*

**THE SCHALL LAW FIRM**
Brian Schall (admitted *pro hac vice*)
brian@schallfirm.com

*Additional Counsel for Lead Plaintiff*

**BUCKNER + MILES**
David M. Buckner (Fla. Bar No. 60550)
david@bucknermiles.com

*Liaison Counsel for Lead Plaintiff*