UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | |
|---|---|
| JED LEMEN, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>REDWIRE CORPORATION f/k/a GENESIS PARK ACQUISITION CORP., PETER CANNITO, and WILLIAM READ,<br><br>Defendants. | Case No. 3:21-cv-01254-TJC-PDB<br><br><u>CLASS ACTION</u><br><br>**LEAD COUNSEL'S UNOPPOSED MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION EXPENSES, AND COMPENSATORY AWARD TO LEAD PLAINTIFF** |

Lead Counsel Hagens Berman Sobol Shapiro LLP ("Lead Counsel") respectfully moves this Court, pursuant to Fed. R. Civ. P. 23(e), for an order: (1) granting an award of attorneys' fees equaling 33% of the $8 million Settlement Fund ($2,640,000) – representing a negative lodestar – plus any interest earned on this amount at the same rate and for the same period by the Settlement Fund; (2) granting reimbursement of $430,087.97 in reasonable and necessary litigation expenses that were incurred by Lead Counsel in prosecuting this Action, plus any interest earned on this amount at the same rate and for the same period as earned by the Settlement Fund; and (3) granting a compensatory award in the amount of $10,000 to Lead

- 1 -

Plaintiff Jared Thompson ("LP") as authorized by the Private Securities Litigation Reform Act of 1995 (the "PSLRA").[1]

## I.    INTRODUCTION

The proposed Settlement, which provides for a non-reversionary cash payment of $8 million in exchange for the resolution of this Action, represents an extremely favorable result for the Settlement Class. The strength of this certain result for the Settlement Class must be juxtaposed against the significant obstacles that LP would have to overcome to prevail in this complex securities litigation. In taking this case, Lead Plaintiff's Counsel faced numerous challenges to establishing liability, loss causation and damages. The risk of losing was very real from the start, and was enhanced by litigating against a corporate defendant represented by skilled defense counsel under the PSLRA's heightened pleading standard and automatic stay of discovery. Despite these risks, Lead Plaintiff's Counsel collectively worked 4,170.80 hours for a total lodestar of $3,300,412.50 over the course of approximately three years, and advanced $430,087.97 in costs, all on a fully contingent basis without guarantee of ever being compensated. The work performed by Lead

---

[1] All capitalized terms used herein that are not otherwise defined have the meanings ascribed to them in the Stipulation and Agreement of Settlement dated November 15, 2024 (the "Stipulation") (ECF No. 213-2), or in the concurrently filed Declaration of Reed R. Kathrein in Support of (I) Lead Plaintiff's Unopposed Motion for Final Approval of Class Action Settlement and Plan of Allocation; and (II) Lead Counsel's Unopposed Motion for an Award of Attorneys' Fees, Reimbursement of Litigation Expenses, and Compensatory Award to Lead Plaintiff (the "Kathrein Declaration"). Unless otherwise noted, all citations to "¶__" and "Ex." refer, respectively, to paragraphs in, and exhibits to, the Kathrein Declaration.

Plaintiff's Counsel is summarized below and set forth in detail in the Kathrein Declaration.[2]

Lead Counsel, on behalf of all Lead Plaintiff's Counsel, respectfully requests a fee award in the amount of 33% of the Settlement Fund as compensation for their significant efforts and achievements on behalf of the Settlement Class. The requested fee is consistent with attorney-fee awards in comparable securities class action settlements, whether considered as a percentage of the Settlement or in relation to Lead Plaintiff's Counsel's lodestar. Indeed, the requested fee represents a fractional (or negative) multiplier of 0.80 on Lead Plaintiff's Counsel's lodestar, which itself strongly indicates the reasonableness of the requested fee. *See infra* at 8-9.

Lead Counsel also seeks reimbursement of $430,087.97 in out-of-pocket litigation expenses incurred in prosecuting this Action, to be paid out of the Settlement Fund. The expenses are reasonable in amount and were necessary for the successful prosecution of the Action. *Id.* at 22-23. They should be approved.

Finally, LP respectfully requests a PSLRA award in the amount of $10,000, to be paid out of the Settlement Fund, to compensate him for his time and effort expended on behalf of the Settlement Class. LP familiarized himself with the facts

---

[2] The Kathrein Declaration is an integral part of this submission and, for the sake of brevity, the Court is respectfully referred to the declaration for the procedural history of the Action (¶¶ 15-32); summary of the work performed by Lead Plaintiff's Counsel (¶ 11); and additional information on the factors that support this fee request (¶¶ 64-81), including the lodestar cross-check (¶¶ 70-71).

of the case, reviewed relevant pleadings, conferred with Lead Plaintiff's Counsel about the litigation, collected and produced relevant documents, served written discovery responses, sat for a deposition, and authorized Lead Plaintiff's Counsel to settle the case. *See id*. at 23-24. But for LP's efforts, the Settlement Class would have recovered nothing.

The reaction of the Settlement Class to date supports Lead Counsel's request for fees and expenses. Pursuant to this Court's Preliminary Approval Order, more than 39,000 Notices have been sent to potential Settlement Class Members, and the Summary Notice was published in *Investor's Business Daily* and transmitted over *PR Newswire*. *See id*. at 21-22. The Notice advises Class Members that Lead Counsel will be applying to the Court for an award of attorneys' fees in an amount not to exceed 33% of the Settlement Fund, payment of expenses in an amount not to exceed $550,000, and a PSLRA award of $10,000 for LP. *Id.* The notice further informs Settlement Class Members that they have until July 10, 2025 to object to these requests. *Id.* While the deadline to object has not passed, to date, there have been no objections to the fee and expense amounts and award to LP set forth in the Notice. *Id.* at 22-24.

For the reasons set forth herein and in the Kathrein Declaration, Lead Counsel respectfully requests that the Court award Lead Plaintiff's Counsel 33% of the Settlement Fund (plus interest), approve reimbursement of $430,087.97 in litigation-

related expenses (plus interest), and grant a PSLRA award to LP in the amount of $10,000.

## II.   LEAD PLAINTIFF'S COUNSEL IS ENTITLED TO AN AWARD OF ATTORNEYS' FEES FROM THE SETTLEMENT FUND.

The Supreme Court and the Eleventh Circuit have long recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Camden I Condominium Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 771 (11th Cir. 1991) (same).[3] Courts have also recognized that fee awards are "vital to the enforcement of the securities laws" by "reward[ing] counsel for bringing these actions and [] encourag[ing] them to bring additional such actions." *See Columbus Drywall & Insulation, Inc. v. Masco Corp.*, 2008 WL 11234103, at *5 (N.D. Ga. Mar. 4, 2008) (quoting *Ressler v. Jacobson*, 149 F.R.D. 651, 657 (M.D. Fla. 1992)).

In *Camden I*, the Eleventh Circuit provided that "attorneys' fees awarded from a common fund *shall* be based upon a reasonable percentage of the fund." *Camden I*, 946 F.2d at 774. This approach is consistent with the PSLRA. *See* 15 U.S.C. § 78u-4(a)(6) (noting fees and expenses "shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class").

---

[3] All emphasis is added and all internal citations and quotations are omitted.

## III.   A FEE AWARD OF 33% OF THE SETTLEMENT FUND IS FAIR AND REASONABLE IN THIS ACTION.

### A. The Requested 33% Fee is Reasonable Under the *Camden I* Factors.

In the Eleventh Circuit, "[t]here is no hard and fast rule mandating a certain percentage of a common fund which may reasonably be awarded as a fee." *Camden I*, 946 F.2d at 774; *see also In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1359 (S.D. Fla. 2011) (same). This means that "the amount of any fee must be determined upon the facts of each case after evaluating certain criteria." *Cabot E. Broward 2 LLC v. Cabot*, 2018 WL 5905415, at *1 (S.D. Fla. Nov. 9, 2018). Such criterion includes the twelve *Johnson* factors:

> (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to the acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances[4]; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and the length of the professional relationship with the client[5]; and (12) awards in similar cases.

*Camden I*, 946 F.2d at 772 n.3 (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)). *Camden I* also recognized that in awarding a

---

[4] Aside from normal court scheduling, no particular time limits existed in this case. Therefore, this factor is neutral. *See Thorpe v. Walter Inv. Mgmt. Corp.,* 2016 WL 10518902, at *11 (S.D. Fla. Oct. 17, 2016). "Neutral factors weigh in favor of granting fees sought." *See Asselta v. Nova Se. Univ.*, 2025 WL 1560772, at *7 (S.D. Fla. May 28, 2025), *report and recommendation adopted sub nom. Rzepkoski v. Town of Palm Beach Shores*, 2025 WL 1568129 (S.D. Fla. June 3, 2025).

[5] This factor is not applicable to the circumstances of this case.

percentage fee award, a court may properly consider "the time required to reach a settlement, whether there are any substantial objections by class members or other parties to the settlement terms or the fees requested by counsel … and the economics involved in prosecuting a class action." *Id.* at 775.

**1. The Time and Labor Expended, and the Economics Involved in a Class Action, Support the Requested Fee.**

Here, the "time and labor" required to successfully obtain the Settlement confirms the reasonableness of the requested fee. *Camden I*, 946 F.2d at 772 n.3. Lead Plaintiff's Counsel have litigated this Action for over three years. Kathrein Decl., ¶ 74. During the course of the litigation, Lead Plaintiff's Counsel, *inter alia*, (i) conducted a comprehensive investigation, including detailed reviews of Redwire's SEC filings, press releases, and other publicly available information; (ii) drafted the factually detailed First Amended Complaint; (iii) researched and drafted an opposition to Defendants' motion to dismiss; (iv) consulted with damages, loss causation, and market efficiency experts; (v) propounded party and non-party discovery and reviewed documents; (vi) prepared for and conducted the deposition of the non-party whistleblower Daniel Gievers; (vii) drafted and filed multiple motions related to Defendants' discovery and attended and argued one of those motions lasting multiple hours; (viii); prior to settlement, prepared for fact witness depositions as well as the 30(b)(6) depositions of Redwire and Redwire's auditor; (ix) researched and drafted the motion for class certification and *Daubert* briefing

concerning the market efficiency experts; (x) drafted a mediation statement containing detailed analyses of the strengths, risks, and potential issues in the litigation and participated in a full-day mediation session overseen by a well-respected mediator; (xi) prepared the initial draft of the Stipulation and supporting documents; (xii) worked with LP's damages expert to craft the Plan of Allocation; (xiii) oversaw the implementation of the notice process; and (xiv) drafted the final approval motion and supporting papers. *Id.*, ¶¶ 11, 46-53.

Lead Plaintiff's Counsel has spent 4,170.80 hours litigating this Action and completing the aforementioned tasks (*id.,* ¶ 68) and Lead Counsel incurred $430,087.97 in unreimbursed litigation expenses (*id.,* ¶ 82). These numbers reflect Lead Plaintiff's Counsel's commitment to vigorously pursuing this Action – in the face of significant financial risk given the contingency-based nature of their representation – for the benefit of LP and the Settlement Class. The economics involved in prosecuting this Action therefore support the fee. *See Thorpe*, 2016 WL 10518902, at *8 (finding the "significant time and labor that Class Counsel expended on behalf of the Class with no assurance of ultimately being paid" supported counsel's fee request of 33.3% of the Settlement Amount); *id.* at *11 (noting "economics involved in a class action" support fee request given counsel would have borne expenses in excess of $320,000 had it not prevailed).

Additionally, an analysis of the requested fee utilizing the

"lodestar/multiplier" approach as a cross-check further demonstrates the requested fee's reasonableness. *See Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1298 (11th Cir. 1999) (noting lodestar calculation may be referred to as a "figure for comparison"). Here, the cumulative time expended by Lead Plaintiff's Counsel, multiplied by current hourly rates,[6] results in a lodestar of $3,300,412.50. The requested fee thus equates to a negative (or fractional) multiplier of 0.80 (*i.e.*, the requested fee is *less than* Lead Plaintiff's Counsel's lodestar).[7] Courts have routinely recognized that a fractional multiplier strongly supports a finding that the fee award is reasonable. *See, e.g., Gilbert v. BioPlus Specialty Pharmacy Servs., LLC*, 2025 WL 99650, at *3 (M.D. Fla. Jan. 15, 2025) (finding fee award equating to a "negative lodestar multiplier of 0.59x" is reasonable); *In re Health Ins. Innovations Sec. Litig.*, 2021 WL 1341881, at *13 (M.D. Fla. Mar. 23, 2021) (finding "negative multiplier of 0.33" supports reasonableness of fee request), *report and recommendation*

---

[6] Courts use current rather than historic rates to compensate for the delay in receiving fees. *See Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1302 (11th Cir. 1988) ("In this circuit, where there is a delay the court should take into account the time value of money and the effects of inflation and generally award compensation at current rates rather than at historic rates."). Lead Plaintiff's Counsel's rates range from $800-$1,425 per hour for partners, to $525-$850 per hour for all other attorneys. *See* Exs. 3-5. Lead Plaintiff's Counsel's rates are comparable to firms engaged in similar complex litigation between 2023-2025. *See* Ex.6 (Table of Peer Law Firm Billing Rates). Additionally, this Court in 2018 approved rates similar to the majority of Lead Plaintiff's Counsel's current hourly rates. *See Finerman v. Marriott Ownership Resorts, Inc.*, No. 3:14-cv-01154-TJC-MCR, ECF No. 222 (M.D. Fla Aug. 15, 2018) (approving fee award based on 2018 rates between $350-$950 for attorneys); *id.*, ECF No. 210 at 22-23 (detailing rates).

[7] The multiplier is calculated by dividing the $2,640,000 fee request by the $3,300,412.50 lodestar that Lead Plaintiff's Counsel incurred.

*adopted*, 2021 WL 1186838 (M.D. Fla. Mar. 30, 2021).

### 2. The Novelty and Difficulty of the Issues Involved.

Courts have repeatedly recognized that securities litigation is "notably difficult and notoriously uncertain" (*Carpenters Health & Welfare Fund v. The Coca-Cola Co.*, 2008 WL 11336122, at *9 (N.D. Ga. Oct. 20, 2008)) and that "a securities case, by its very nature, is a complex animal." *Thorpe*, 2016 WL 10518902, at *3. Courts also understand that "securities actions have become more difficult from a plaintiff's perspective in the wake of the PSLRA" and other changes to the law. *Id.* at *9.

This case was no exception. Lead Plaintiff's Counsel assumed the significant risk that Defendants would aggressively defend this case at every stage of the litigation. While LP and Lead Plaintiff's Counsel were confident in obtaining class certification (*see* ECF No. 85), Defendants raised non-frivolous arguments against class certification, including the inability to prove class wide reliance and LP's standing and typicality. *See* Kathrein Decl., ¶ 35. Had LP failed to obtain class certification, or the proposed class period was truncated, the benefit to the Settlement Class would have been substantially reduced or eliminated. *Id.* Even if the Court granted class certification, it could revisit the decision at any time, presenting a continuous risk that this case might not be maintained on a class-wide basis through trial. *See In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*, 2024 WL

- 10 -

1554329, at *7 (S.D. Fla. Apr. 10, 2024) (noting that "maintaining class certification through trial is another over-arching risk").

Even if LP had achieved class certification, Lead Plaintiff's Counsel also understood that Defendants raised credible arguments challenging falsity, materiality, scienter, loss causation and damages, and ultimate success was not a foregone conclusion. *Id.*,¶¶ 36-43; *see also Ressler*, 149 F.R.D. at 654 (noting "all the multi-faceted and complex legal questions endemic to § 10(b) litigation, including proving scienter, materiality, causation, and damages").

For example, Defendants indicated they would argue that investors do not find a company's "tone at the top" to be material, and in any event, falsity is undermined because Redwire was never forced to restate its financials. Kathrein Decl., ¶ 37. To show that Defendants lacked scienter and acted in good faith, Defendants would point to the Audit Committee investigation's conclusions regarding the whistleblower complaint, as well as the SEC's decision to not pursue any enforcement action after learning of the complaint. *Id.*, ¶ 38; *see also Thorpe*, 2016 WL 10518902, at *3 ("Proving scienter at trial would have required showing not just negligence but severe recklessness, posing additional substantial risk.")

As for loss causation and damages, Defendants would have argued that any price declines in the Class Securities on the alleged corrective disclosure dates were due to the disclosure of negative information unrelated to the alleged fraud. Kathrein

- 11 -

Decl., ¶ 39. If Defendants prevailed on this argument, damages would be significantly reduced or eliminated. *Id.,* ¶ 40; *see also Dura Pharms., Inc. v. Broudo,* 544 U.S. 336, 345-46 (2005) (noting plaintiffs' burden to prove "that the defendant's misrepresentations caused the loss for which the plaintiff seeks to recover").

These disputed issues, moreover, would no doubt be vigorously contested in a highly contentious "battle of the experts" that could leave LP without viable claims or damages. *See, e.g., Coca-Cola Co.,* 2008 WL 11336122, at *8 ("The determination of loss causation and damages is a complicated and uncertain process involving conflicting expert testimony. Expert testimony could rest on many assumptions, any of which could be rejected by a jury as speculative or unreliable.")

LP would have to prevail on all of these issues at trial, as well as the inevitable appeals that would follow, before recovering anything. *See* Kathrein Decl., ¶ 43. A victory – much less one that exceeded $8 million – was far from assured. *See, e.g., In re BankAtlantic Bancorp, Inc. Sec. Litig.,* 2011 WL 1585605, at *38 (S.D. Fla. Apr. 25, 2011) (granting defendants' motion for judgment as a matter of law following plaintiffs' verdict). Even if LP prevailed in full at trial, the ultimate outcome – many years in the future – would remain uncertain. *See, e.g., Robbins v. Koger Props.,* Inc., 116 F.3d 1441, 1449 (11th Cir. 1997) (reversing jury verdict of $81 million for plaintiffs).

Despite the substantial risks inherent in this complex litigation, Lead

Plaintiff's Counsel achieved a $8 million settlement, an extremely favorable result for the Settlement Class. As such, this factor weighs heavily in favor of the requested fee. *See Thrope*, 2016 WL 10518902, at *9 (overcoming the "multi-faceted and complex legal questions endemic to cases based on alleged violations of federal securities law" supported fee request).

### 3. The Skill Required to Perform the Legal Service Adequately and the Experience, Reputation, and Ability of the Attorneys.

In determining the fee award, the Court should also look at "the experience, reputation and ability of the attorneys" involved. *Camden I*, 946 F.2d at 772 n.3. As demonstrated by their firm resumes, Lead Plaintiff's Counsel has many years of experience litigating securities class actions. *See* Kathrein Decl., Exs. 3-5 (attaching firm resumes). This experience allowed Lead Plaintiff's Counsel to thoroughly investigate the claims in the face of the PSLRA's barriers to obtaining formal discovery, identify the complex issues involved in this case, and formulate strategies to effectively prosecute the Action. *See* Kathrein Decl., ¶¶ 11, 21-31. Lead Plaintiff's Counsel's skill and experience were therefore a major factor in achieving this Settlement. *See Columbus Drywall & Insulation, Inc. v. Masco Corp.*, 2012 WL 12540344, at *4 (N.D. Ga. Oct. 26, 2012) (finding 33% fee award reflected "the degree of experience, competence, and effort required by the litigation").

In evaluating the quality of Lead Plaintiff's Counsel's work, it is also important to consider the "quality of the opposition." *See Blessinger v. Wells Fargo*

*& Co.*, 2024 WL 3851244, at *12 (M.D. Fla. Aug. 12, 2024), *report and recommendation adopted*, 2024 WL 3841856 (M.D. Fla. Aug. 16, 2024). Here, Defendants were vigorously represented by experienced and highly skilled counsel from Kirkland & Ellis LLP at the pleading stage and Shutts & Bowen LLP throughout the litigation. Notwithstanding this formidable opposition, Lead Plaintiff's Counsel's thorough investigation, vigorous opposition, strong class certification motion, and discovery efforts positioned Lead Plaintiff's Counsel to achieve a favorable recovery for the Settlement Class. *See* Kathrein Decl., ¶¶ 11, 21-31. Thus, this factor militates in favor of the requested fee. *See Blessinger*, 2024 WL 3851244, at *12 (noting defendants' "very capable" representation in granting the requested fee).

### 4. The Preclusion of Other Employment.

Lead Plaintiff's Counsel spent 4,170.80 hours prosecuting this case. Kathrein Decl., ¶ 68. This considerable amount of time could have been devoted to other matters. Moreover, Lead Plaintiff's Counsel expended this time and effort without any assurance that they would ever be compensated for their hard work. Consequently, this factor further supports the requested fee.

### 5. The Requested Fee is Customary for a Case Such As This One.

The Court should also consider the market rate when determining Lead Plaintiff's Counsel's fee award, as "[t]he percentage method of awarding fees in

class actions . . . is intended to mirror [] practice in the private marketplace where attorneys typically negotiate percentage fee arrangements with their clients." *See Pinto v. Princess Cruise Lines Ltd.*, 513 F. Supp. 2d 1334, 1340 (S.D. Fla. 2007). "In private litigation, attorneys regularly contract for contingent fees between 30% and 40% directly with their clients." *See Stoll v. Musculoskeletal Inst.*, 2022 WL 16927150, at *2 (M.D. Fla. July 27, 2022), *report and recommendation adopted sub nom. Stoll v. Musculoskeletal Inst., Chartered*, 2022 WL 16923698 (M.D. Fla. Nov. 14, 2022). Lead Plaintiff's Counsel's request for 33% of the Settlement Fund is well within the private marketplace range and is consistent with what courts routinely award in class actions, as discussed below. *See infra* at 18-20. Accordingly, this factor weighs in favor of the requested fee.

### 6. Lead Plaintiff's Counsel Assumed Substantial Risk and Pursued this Case on a Pure Contingency Basis.

A contingent fee arrangement is often "the only means a defrauded securities investor can seek assistance from an attorney." *In re Health Ins. Innovations*, 2021 WL 1341881, at *11. As such, when determining a fair fee, the Court should consider that Lead Plaintiff's Counsel "took on considerable risk by agreeing to pursue this action on a purely contingent basis." *Kukorinis v. Walmart, Inc.,* 2024 WL 3226772, at *12 (M.D. Fla. June 28, 2024).

The risk of no recovery in complex cases like this one is not illusory. In other cases, plaintiffs' counsel have suffered major defeats after years of litigation in

- 15 -

which they expended millions of dollars in time and expenses and received no compensation at all, even after a trial victory. *See, e.g., Robbins,* 116 F.3d at 1449 (overturning jury verdict); *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408, 433 (7th Cir. 2015) (reversing and remanding jury verdict of $2.46 billion after thirteen years of litigation on loss causation grounds and error in jury instruction in light of subsequent change in law). The significant risks inherent in this case, and Lead Plaintiff's Counsel's work on a contingency basis, justify the requested fee. *See In re S. Co. S'holder Derivative Litig.*, 2022 WL 4545614, at *11 (N.D. Ga. June 9, 2022) ("A contingency fee arrangement often justifies an increase in the award of attorneys' fees[.]").

### 7. The Amount Involved and Results Obtained.

The "most critical [fee award] factor is the degree of success obtained." *See Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983); *see also Ressler*, 149 F.R.D. at 655 ("It is well-settled that one of the primary determinants of the quality of the work performed is the result obtained.").

The proposed $8 million all cash, non-reversionary Settlement is an excellent result for the Settlement Class, both quantitatively and when weighed against the risk of a lesser (or no) recovery if the case proceeded through class certification, summary judgment, and trial. LP's damages expert estimates that if LP had fully prevailed at both summary judgment and after a jury trial, if the Court certified the

- 16 -

same class period as the Settlement Class Period, and if the Court and jury accepted LP' damages theory—*i.e.*, the best-case scenario—the total maximum damages would be approximately $88.3 million. *See* Kathrein Decl., ¶¶ 9,45. Thus, the $8,000,000 Settlement Amount represents approximately 9.0% of the total *maximum* damages *potentially* available. A recovery of 9.0% is above the median recovery in 2024 securities class actions with similar levels of damages, and is an excellent result when compared to the risks of continued litigation (*see supra* at 10-13).[8]

### 8. The Undesirability of the Case.

The undesirability of the case also supports the requested fee. Securities class actions have been recognized as "undesirable" due to the elevated risk of litigating under the PSLRA, formidable opposition, high out-of-pocket costs, and the distinct possibility of no recovery. *See, e.g., Health Ins. Innovations*, 2021 WL 1341881, at *12 ("The prospect of engaging in and financing protracted complex litigation without a concomitant favorable recovery is not highly desirable.").

This case was no exception. Lead Plaintiff's Counsel undertook the Action on a fully contingent basis, assuming the significant risk that the litigation would yield no recovery and leave counsel uncompensated. *See supra* at 15-16. Unlike counsel

---

[8] *See Securities Class Action Settlements—2024 Review and Analysis* (Cornerstone Research 2024), at 7, https://www.cornerstone.com/wp-content/uploads/2025/03/Securities-Class-Action-Settlements-2024-Review-and-Analysis.pdf (finding a median settlement recovery of 7.5% for securities class actions with damages between $75M-$149M in 2024).

for Defendants, who are typically paid an hourly rate and regularly reimbursed for their expenses, Lead Plaintiff's Counsel has not been compensated for any time or reimbursed for any of out-of-pocket expenses since this case began over three years ago. Kathrein Decl., ¶ 74. The only certainty was the absence of a guaranteed fee, or no reimbursement of out-of-pocket expenses, without a successful result.

Furthermore, the risks in this case were manifold. Defendants were represented by highly skilled litigators, and Lead Plaintiff's Counsel faced numerous hurdles and risks from the outset, including the PSLRA's heightened pleading standards. *See* 15 U.S.C. §78u-4(b)(1)-(2). Lead Plaintiff's Counsel also faced difficult facts, including that Redwire had not restated any financial results due to the alleged internal control issues and the SEC did not proceed with any enforcement action after the Company self-reported the whistleblower complaint in November 2021. Kathrein Decl., ¶¶ 37-38. These facts and obstacles further underscore the undesirability of this Action from a risk perspective, and the strong possibility that the case would yield little or no recovery after many years of costly litigation. *See, e.g., In re NetBank, Inc. Sec. Litig.*, 2011 WL 13176646, at *3 (N.D. Ga. Nov. 9, 2011) (noting the "serious risks and uncertainties in continuing this litigation, even of obtaining no recovery at all").

9. **Awards in Similar Cases Support a Fee Award of 33% of the Settlement Fund.**

When *Camden I* was decided over 30 years ago, the "bench mark percentage

fee award" was considered to be 25%. 946 F.2d at 774-75. However, *Camden I* made clear that there "is no hard and fast rule" for a percentage and "any fee must be determined upon the facts of each case." *Id.* Today's "benchmark" is higher, as "[c]ourts within this Circuit have routinely awarded attorneys' fees of 33 percent or more of the gross settlement fund." *See Asselta*, 2025 WL 1560772, at *6 (citing cases); *see also Hanley v. Tampa Bay Sports & Ent. LLC*, 2020 WL 2517766, at *6 (M.D. Fla. Apr. 23, 2020) (awarding a "slight increase from the one-third benchmark").

A review of attorneys' fees awarded in Eleventh Circuit securities class actions with settlement funds of under $10 million strongly supports the reasonableness of Lead Counsel's 33% fee request. *See*, *e.g.*, *Bush v. Blink Charging Co., et al.*, No. 1:20-cv-23527 ("*Blink*"), ECF No. 107, ¶ 4 (S.D. Fla. Oct. 21, 2024) (awarding 33.4% of $3,750,000 settlement fund); *Rodriguez et al. v. Alfi, Inc. et al.*, No. 1:21-cv-24232 ("*Alfi*"), ECF No. 142, ¶ 5 (S.D. Fla. Mar. 11, 2024) (awarding counsel 33.33% of $1,725,000 settlement fund); *In re Health Ins. Innovations Sec. Litig.*, No. 8:17-cv-02186 ("*Health Ins.*"), ECF No. 184 at 2 (M.D. Fla. Mar. 30, 2021) (awarding 33% of $2,800,000 settlement fund); *Pritchard v. Apyx Med. Corp.*, 2020 WL 6937821, at *1 ("*Apyx*") (M.D. Fla. Nov. 18, 2020) (awarding 33.33% of $3 million settlement fund); *In re Home Loan Servicing Sols. Ltd. Sec. Litig.*, No. 0:16-cv-60165 ("*Home Loan*"), ECF No. 119, ¶ 16 (S.D. Fla. Nov. 17, 2017)

(awarding 33.33% of $6 million settlement fund); *In re Digital Domain Media Grp., Inc. Sec. Litig.*, No. 2:12-cv-14333 ("*Digital Domain*"), ECF No. 116, ¶¶ 4-5 (S.D. Fla. Apr. 12, 2017) (awarding 33% of $5,500,000 settlement fund).

In most of the aforementioned cases, unlike the Action here, counsel were awarded 33% of the settlement fund despite settling *before* receiving a ruling on a motion to dismiss, performing substantive discovery, or filing a class certification motion.[9] As for *In re Health Ins. Innovations Sec. Litig.*, counsel received 33% of the fund after recovering a similar percentage of a lower damages total ($28 million) than Lead Plaintiff's Counsel here ($88.3 million).[10] And as explained herein, other factors support the reasonableness of the requested fee, including Lead Plaintiff's Counsel's negative multiplier of 0.80 and the substantial recovery in the face of difficult facts, including no restatements of Redwire's financials and the SEC declining to initiate a proceeding against the Company based on the allegations of the whistleblower complaint. *See supra* at 8-9, 11.

**10. LP Has Approved the Requested Fee.**

As set forth in his declaration, LP played an active role in the prosecution and

---

[9] *See, e.g., Blink*, ECF No. 99 at 12 (no filing of class certification motion before settlement); *Alfi*, ECF No. 131 at 16 (no decision on motion to dismiss before settlement); *Apyx*, ECF No. 67 at 14 (no substantive discovery completed prior to settlement); *Home Loan*, ECF No. 115 at 11, 25 (no filing of class certification motion before settlement); *Digital Domain*, ECF No. 113 at 2, 7-8 (no decision on motion to dismiss before settlement).

[10] *See Health Ins.*, ECF No. 166 at 12.

resolution of this Action, and thus has a sound basis for assessing the reasonableness of the fee request. *See* Ex. 2, Declaration of Jared Thompson, ¶ 4. LP has carefully evaluated the fee request and fully supports and approves the fee request as fair and reasonable in light of the result obtained, the work performed by Lead Plaintiff's Counsel, and the risks of the litigation. *Id.* at ¶¶ 8-9.

**11. The Settlement Class's Reaction Supports the Requested Fee.**

The reaction of the Settlement Class to date further confirms the reasonableness of the requested fee. As of June 25, 2025, Strategic Claims Services ("SCS") has disseminated the Notice to approximately 39,181 potential Settlement Class Members, informing them of Lead Counsel's intention to apply to the Court for an award of attorneys' fees of 33% of the Settlement Fund (plus interest), reimbursement of litigation expenses up to $550,000 (plus interest), and an award to LP in an amount not to exceed $10,000. Ex. 1, Declaration of Sarah Evans ("Evans Decl."), ¶ 10 and Ex. A.  Settlement Class Members were also informed of their right to object to such requests. *See id,* Ex. A, ¶¶ 83-89. In addition, SCS caused the Notice and objection deadline to be posted on the Settlement website, and the Summary Notice to be published in *Investor's Business Daily* and transmitted over the *PR Newswire*. *See id.,* ¶¶ 12-13. While the time to object does not expire until July 10, 2025, to date, no objections to the request for attorneys' fees and expenses have been received by Lead Counsel or filed on the Court's docket.  Kathrein Decl., ¶ 79. The

lack of objections is "strong evidence of the propriety and acceptability" of the fee request. *Ressler*, 149 F.R.D. at 656.

## IV.    THE LITIGATION EXPENSES INCURRED ARE REASONABLE AND WERE NECESSARY TO ACHIEVE THE BENEFIT OBTAINED.

Lead Counsel's fee application includes a request for reimbursement of $430,087.97 in litigation-related expenses that were "reasonable and necessary to obtain the [S]ettlement reached." *Ressler*, 149 F.R.D. at 657; *see also* Kathrein Decl., ¶¶ 82-87. These expenses are properly recoverable. *See Hanley*, 2020 WL 2517766, at *6 ("[A]ll reasonable expenses incurred in case preparation, during the course of litigation, or as an aspect of settlement of the case" may be recovered).

The types of expenses for which Lead Counsel seeks reimbursement were necessarily incurred and are routinely charged to classes in contingent litigation and clients billed by the hour. These expenses include, among others: expert fees, online factual and legal research fees, mediation fees, travel and lodging expenses, photocopy charges, court filing fees, and online document hosting fees. Kathrein Decl., ¶ 85; *id.* at Ex. 3, Ex. B. Reimbursement of similar expenses is routinely permitted. *See, e.g., Health Ins. Innovations*, 2021 WL 1341881, at *13 (approving reimbursement of $245,631.85 in expenses related to "experts, consultants, and mediators" as well as "computerized legal research, copying costs, travel, delivery costs, filing fees, and other incidental expenses"). Moreover, from the outset, Lead Counsel was aware that it may not recover any of these expenses or, at the very least,

would not recover anything until the Action was successfully resolved. Thus, Lead Counsel took significant steps to minimize these expenses without jeopardizing the prosecution of the Action. Kathrein Decl., ¶ 83.

Moreover, the Notice informed potential Settlement Class Members that Lead Counsel would apply for reimbursement of litigation expenses in an amount not to exceed $550,000. *See* Ex. 2, Evans Decl. at Ex A, ¶ 75. Here, the total litigation expenses in the amount of $430,087.97 is below the amount listed in the Notice and, to date, no objections to the reimbursement request have been filed with the Court nor received by Lead Counsel. Kathrein Decl., ¶ 54.

## V.   THE COURT SHOULD GRANT LP'S PSLRA AWARD REQUEST.

LP respectfully requests $10,000 in a PSLRA award to reimburse LP for time spent prosecuting the Action. *See* 15 U.S.C. §§ 77z-1(a)(4); 78u-4(a)(4) (permitting reimbursement of costs (including lost wages)); *see also Health Ins. Innovations*, 2021 WL 1341881, at *13 (granting PSLRA award to lead plaintiff in the amount of $3,125 "for his time").[11] LP's request is based on over 100 hours of work devoted

---

[11] The fact that the award requested here is specifically allowed by federal statute differentiates it from the "incentive payments" that the Eleventh Circuit held were forbidden in certain class actions, and accordingly, courts post-*Johnson* have granted PSLRA awards. *Compare Johnson v. NPAS Sols.,* 975 F.3d 1244, 1260 (11th Cir. 2020) ("[I]f either the Rules Committee or Congress doesn't like the result we've reached, they are free to amend Rule 23 or to provide for incentive awards by statute."), *with Pritchard.*, 2020 WL 6937821, at *2 (granting PSLRA award of $7,500), *Health Ins. Innovations*, 2021 WL 1341881, at *13 (granting $3,125 PSLRA award), *Maz Partners LP v. First Choice Healthcare Sols., Inc.*, Case No. 6:19-cv00619-PGB-LRH, ECF No. 81 at 4 (M.D. Fla. Aug. 2, 2021) (granting $5,000 PSLRA award), *Malespin v. Longeveron Inc.*, 2023 WL 11820921, at *6 (S.D. Fla. Oct. 16, 2023) (granting $1,500 PSLRA award), and *MissPERS v.*

to the case, which amounts to a $100 hourly rate, less than LP's hourly rate as a self-employed consultant. Ex. 2, Thompson Decl., ¶ 12.

LP has actively and effectively fulfilled his obligations as representative of the Settlement Class. LP, among other things: (i) participated in discussions with Lead Plaintiff's Counsel concerning the prosecution of the Action and strengths and weaknesses of the claims; (ii) reviewed significant pleadings; (iii) collected and produced relevant documents; (iv) served written discovery responses; (v) sat for a deposition; and (vi) participated in mediation efforts and settlement negotiations and authorized Lead Plaintiff's Counsel to settle the case. *Id*., ¶ 4. The foregoing efforts support the award to LP, and courts have approved similar sized figures in other securities cases. *See, e.g.*, *Thorpe*, 2016 WL 10518902, at *12 (awarding $15,000 to each class representative as "fair and reasonable"); *In re Flowers Foods Sec. Litig.*, 2019 WL 6771749, at *2 (M.D. Ga. Dec. 11, 2019) (awarding plaintiffs $10,000 each "as reimbursement for [their] reasonable costs and expenses"); *Mohawk Indus., Inc.*, 4:20-cv-00005-VMC, ECF No. 138 at 5 (awarding $32,450 to lead plaintiff). Moreover, to date, Lead Counsel has not received any objections to the request for an award and no such objections have been filed on the Court's docket. Kathrein Decl., ¶ 54.

---

*Mohawk Indus., Inc.*, Case No. 4:20-cv-00005-VMC, ECF No. 138 at 5 (N.D. Ga. May 31, 2023) (granting $32,450 PSLRA award).

- 24 -

## VI.    CONCLUSION

For the foregoing reasons, Lead Counsel respectfully requests the Court grant the motion.[12]

## RULE 3.01(G) CERTIFICATION

Counsel for LP conferred with Defendants' Counsel on June 23, 2025 and June 25, 2025 via email regarding the issues raised in the above motion and Defendants stated they do not oppose the Motion and relief sought.

Dated: June 26, 2025

Respectfully submitted,

**HAGENS BERMAN SOBOL SHAPIRO LLP**

By: *s/ Reed R. Kathrein*
Reed R. Kathrein (Fla. Bar. No. 262161)
reed@hbsslaw.com
Lucas E. Gilmore (admitted *pro hac vice*)
lucasg@hbsslaw.com
715 Hearst Avenue, Suite 300
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile:  (510) 725-3001

Steve W. Berman (admitted *pro hac vice*)
steve@hbsslaw.com
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile:  (206) 623-0594

Peter A. Shaeffer (admitted *pro hac vice*)
petersh@hbsslaw.com
455 N. Cityfront Plaza Drive, Suite 2410
Chicago, IL 60611
Telephone: (708) 628-4949
Facsimile:  (708) 628-4950

*Lead Counsel for Lead Plaintiff*
*Jared Thompson*

**THE SCHALL LAW FIRM**
Brian Schall (admitted *pro hac vice*)
brian@schallfirm.com

*Additional Counsel for Lead Plaintiff*

**BUCKNER + MILES**
David M. Buckner (Fla. Bar No. 60550)
david@bucknermiles.com

*Liaison Counsel for Lead Plaintiff*

---

[12] A proposed Order granting the requested relief will be submitted with Lead Counsel's reply papers on July 24, 2025, after the deadline for objecting to this motion has passed.