**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

| | |
|---|---|
| JED LEMEN, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>REDWIRE CORPORATION f/k/a GENESIS PARK ACQUISITION CORP., PETER CANNITO, and WILLIAM READ,<br><br>Defendants. | Case No. 3:21-cv-01254-TJC-PDB<br><br><u>CLASS ACTION</u> |

**LEAD PLAINTIFF'S MOTION FOR DISTRIBUTION OF CLASS SETTLEMENT FUNDS**

Pursuant to Federal Rule of Civil Procedure 23(e), Court-appointed Lead Plaintiff Jared Thompson ("Lead Plaintiff"), by and through his undersigned attorneys, hereby moves for an order: (a) approving the administrative determinations of the Court-appointed Claims Administrator[1], Strategic Claims Services ("SCS"), concerning the acceptance and rejection of claims as recommended in the Declaration of Sarah Evans Concerning the Results of the Claims Administration Process ("Evans Declaration"), attached hereto; (b) directing

---

[1] All capitalized terms used herein that are not otherwise defined have the meanings ascribed to them in the Stipulation and Agreement of Settlement dated November 15, 2024 (the "Stipulation") (ECF No. 213-2).

-1-

payment from the Net Settlement Fund to Authorized Claimants as identified in Exhibits B-1 and B-2 to the Evans Declaration, pursuant to the Stipulation and Plan of Allocation; (c) releasing and discharging all persons involved in the review, verification, calculation, tabulation, or any other aspect of the claims process from any and all claims arising out of such involvement; and (d) setting the time period for document retention related to submitted Claim Forms.

## I.    INTRODUCTION

On January 24, 2025, the Court issued its Order Preliminarily Approving Settlement and Providing for Notice ("Preliminary Approval Order"). *See* ECF No. 214. On August 18, 2025, the Court entered the Final Judgment, approved the Settlement, and found the Plan of Allocation to be a fair and reasonable method of allocating the Net Settlement Fund among Class Members. *See* ECF Nos. 220, 222.

The Claims Administrator has now completed all analyses and accounting procedures in connection with the submitted claims and has finalized its determination of which claims are authorized and which are ineligible. *See* Evans Declaration ¶9. As detailed below, the Claims Administrator has identified 5,126 properly documented, valid claims. The valid claims represent Recognized Losses of $25,591,722.95 on Redwire Corporation f/k/a Genesis Park Acquisition Corp. ("Redwire") Common Stock and Warrants and Recognized Losses of $448,347.44 on Redwire Call Options and Put Options. *Id.* ¶10(a).

All that remains to complete the Settlement process is to distribute the Net Settlement Fund to the Authorized Claimants. Lead Plaintiff therefore requests that the Court authorize the distribution of the Net Settlement Fund to the 5,126 Authorized Claimants as identified in Exhibits B-1 and B-2 to the Evans Declaration.

Furthermore, for the reasons detailed below, Lead Plaintiff also respectfully requests that the Court reject as untimely any Claims received after August 18, 2025, reject any responses to inadequacy and/or ineligibility notices received after January 12, 2026, and reject claim 287 submitted by Claimant Genesis Park II LP.

## II.    DETERMINATION OF AUTHORIZED CLAIMANTS

Under the Preliminary Approval Order, Class Members wishing to participate in the Settlement were required to submit Claim Forms postmarked or received no later than June 24, 2025. *See* Preliminary Approval Order ¶10. In total, 39,181 Settlement Notices (either via mailed Notice and Claim Form or emailed link to the Notice and Claim Form) have been sent by the Claims Administrator or nominees. Evans Declaration ¶5.

The Claims Administrator processed all claims received up to August 18, 2025. *Id.* ¶9. As a result of a very effective notice program, as of August 18, 2025, the Claims Administrator has received 14,276 Claim Forms. *Id.* The Claims Administrator carefully reviewed, analyzed, and processed the 14,276 Claim Forms

-3-

and has now finalized its determination of which claims are authorized and which are ineligible. *Id.* and Ex. A to Evans Declaration (Report of Claims Administrator).

## A. Valid and Properly-Documented Claims

The Claims Administrator has determined, following an analysis of the 14,276 Claim Forms received as of August 18, 2025, that 5,126 valid and properly-documented claims, representing Recognized Losses of $25,591,722.95 on Redwire Common Stock and Warrants and Recognized Losses of $448,347.44 on Redwire Call Options and Put Options, were filed in the Settlement Fund. *Id.* ¶10(a). Of these 5,126 claims, 5,123 were timely (i.e., postmarked or received no later than June 24, 2025) ("Timely Valid Claims") and three were postmarked after June 24, 2025 but received on or before August 18, 2025 ("Late Valid Claims"). *Id.* ¶10 n.3.

Lead Plaintiff requests that the Court accept all 5,126 valid claims, including the 5,123 Timely Valid Claims and the three Late Valid Claims. The Late Valid Claims have not caused significant delay to the distribution of the Net Settlement Fund or otherwise prejudiced any Authorized Claimant. Lead Plaintiff believes that it would be unfair to prevent an otherwise valid claim from participating in the Net Settlement Fund solely because it was submitted after the June 24, 2025 submission deadline but while claims were still being processed. *See* Preliminary Approval Order ¶10 (noting that "the Claims Administrator may, at its discretion, accept for processing late Claims provided such acceptance does not delay the distribution of

the Net Settlement Fund to the Settlement Class"); *see also Legg v. Lab'y Corp. of Am.*, 2016 WL 3944069, at *2 n.1 (S.D. Fla. Feb. 18, 2016) (recognizing court's "discretion" to accept late claims).

Lead Plaintiff therefore respectfully requests that the Court approve the 5,126 properly documented claims as listed in Exhibits B-1 and B-2 of the Evans Declaration. Lead Plaintiff also respectfully requests that the Court reject as untimely any claims received after August 18, 2025.

## B. Deficient and Ineligible Claims

### 1. Inadequately Documented Claims

SCS initially identified 1,026 inadequately documented claims. Evans Declaration ¶10(b). For all inadequately documented claims, SCS sent inadequacy notices advising claimants of the deficiency and giving them the opportunity to cure the deficiency. *Id.* and Ex. C to Evans Declaration (sample inadequacy notice). Of the 1,026 claims initially identified as inadequate, ten have been successfully cured and are now considered valid. *Id.* Each of the remaining 1,016 inadequate Claimants either did not respond to the inadequacy notice or responded with inadequate documentation. *Id.* These Claimants were sent a rejection notice explaining the reason(s) for their rejection. *Id.* To date, none of these 1,016 inadequate Claimants has objected to or contested SCS's determination. *Id.* and Ex. D to Evans Declaration (list of inadequate, rejected claimants).

## 2. Claims Rejected for Reasons Other than Inadequate Documentation

SCS has identified 8,134 Claims that it recommends for complete rejection. *See* Evans Declaration ¶10(c) and Ex. E to Evans Declaration (list of ineligible Claims). The types of rejected Claims include: (i) Claims with no Recognized Losses; (ii) Claims with Class Securities that were purchased outside of the Settlement Class Period; (iii) Claims with Class Securities that were not purchased or otherwise acquired, but were received or granted by gift, inheritance, or operation of law where the original purchase date(s) and price(s) for such shares were not reported on the Claim Form; (iv) Claims with shares of Redwire Common Stock, Warrants, or Call Options which were sold short; (v) duplicate Claims filed; (vi) Claims for Redwire common stock or warrants that were not publicly traded on the New York Stock Exchange ("NYSE") during the Settlement Class Period; (vii) Claims which were withdrawn by the filing entity; (viii) fraudulent Claims filed; and (ix) Claims filed by Persons excluded from the Settlement Class by definition ("Excluded Party" or "Excluded Parties"). *Id.* Such claimants were sent ineligibility notices advising them of SCS's determination. *Id.* and Ex. F to Evans Declaration (sample ineligibility notice). To complete administration of the Settlement, Lead Plaintiff respectfully requests that the Court reject as untimely any response to inadequacy and/or ineligibility notices received after January 12, 2026.

### 3.    Dispute Over Claim 287

To date, one ineligible Claimant has contested SCS's determination. *Id.* ¶10(c)(i). Claim 287 was filed by Genesis Park II LP. *Id.* Under the Plan of Allocation, Genesis Park II LP's Recognized Loss totals $3,950,000.00. *Id.* If accepted, Genesis Park II LP's claim would amount to $671,865.91, roughly 17% of the funds available to Authorized Claimants in the Net Settlement Fund. *Id.*

SCS had initially determined Genesis Park II LP to be excluded as a director of Redwire f/k/a Genesis Park Acquisition Corp. *Id.* ¶10(c)(ii).[2] SCS based its determination on the fact that Genesis Park II LP was identified as the managing member of Genesis Park Acquisition Corp. ("GPAC"), the SPAC sponsor identified in the Complaint and other publicly available SEC filings and named as a Defendant. *Id.* SCS issued Genesis Park II LP a notice on November 3, 2025 that its Claim was ineligible for having been filed by an Excluded Party. *Id.* and Ex. G(2) to Evans Declaration. SCS received a response from Genesis Park II LP on November 7, 2025, in which it asserted it was not an Excluded Party and disputed SCS's determination that its Claim was ineligible on that ground. *Id.*

---

[2] Under the Stipulation, the Settlement Class excludes "Defendants, the officers and directors of [Redwire Corporation f/k/a Genesis Park Acquisition Corp.], at all relevant times, members of their Immediate Family and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest." Stipulation, ¶¶ 1 (ii), (vv) (defining "Redwire" and "Settlement Class").

SCS reviewed Genesis Park II LP's Claim in light of the November 7, 2025 response and determined that Genesis Park II LP was not definitionally excluded from the Settlement Class. *Id.* ¶10(c)(iii). SCS determined, however, that Genesis Park II LP's Claim was still ineligible because it had acquired its shares during the Settlement Class Period in a "Private Investment in Public Equity" ("PIPE") transaction. *Id*. Per the definition for Common Stock in the Stipulation, eligible common stock must be publicly traded on the NYSE to be eligible for the Settlement. *Id.* (citing Stipulation ¶ 1(kk)). SCS issued its notice of this determination to Genesis Park II LP on November 17, 2025. *Id*. and Ex. G(3) to Evans Declaration. SCS received a response from Genesis Park II LP the same day, which disputed this determination. *Id*. Upon receiving this response from Genesis Park II LP, SCS promptly sent claim 287, both ineligibility notices, and all dispute materials to Class Counsel Hagens Berman Sobol Shapiro LLP ("Class Counsel") for review. *Id.* ¶10(c)(iv).

On November 24, 2025, Class Counsel sent a letter to Genesis Park II LP. *Id.* In the letter, Class Counsel upheld SCS's prior determinations regarding Genesis Park II LP's ineligibility. *Id.* In the letter, Class Counsel explained Genesis Park II LP's claim should be rejected for two reasons. *See* Evans Declaration, Ex. G(4). First, Class Counsel determined that Genesis Park II LP is an Excluded Class Member, as the Settlement Class Definition excludes GPAC and officers and

directors of GPAC during the Settlement Class Period. *Id.* at 1-2. Three officers and directors of GPAC during the Settlement Class Period currently hold leadership positions at Genesis Park, the private equity firm that controlled Genesis Park II LP. *Id.* at 2. Genesis Park II LP, moreover, provided the capital backing for and was the "managing member" of GPAC's sponsor, Genesis Park Holdings. *Id.* Given these facts, Class Counsel contended that Genesis Park II LP was properly excluded from the Settlement Class. *Id.* at 2-3. Class Counsel argued that any alternative interpretation of the Settlement Class definition would "improperly extend benefits to GPAC's former officers and directors based solely on corporate formalities and the nominal identity of [Genesis Park II LP as] the claimant." *Id.*

Class Counsel further explained that Genesis Park II LP's participation in the Settlement further conflicts with the Complaint's allegations that Redwire (formerly GPAC) made false and misleading statements during the Settlement Class Period. *Id.* at 3. Some of the alleged false and misleading statements were from a press release and investor presentation reviewed and approved by GPAC's executives and directors. *Id.* Per Class Counsel, "Genesis Park II LP thus seeks to recover losses predicated on allegations that GPAC – whose board included three current Genesis Park leaders – made false and misleading statements." *Id.* Class Counsel stated that the "Settlement Agreement does not contemplate such a recovery." *Id.*

Second, Class Counsel concurred with SCS's determination that the shares acquired in the PIPE transaction were ineligible. *Id.* at 4-5. According to Class Counsel, Genesis Park II LP would be "unlikely to assert reliance on any offering documents related to the PIPE transactions," as GPAC executives and directors who currently hold leadership positions at Genesis Park "participated in developing and approving these materials." *Id.* (discussing May 12, 2021 Draft Registration Statement at 116). Members of Genesis Park II LP also had access to information not available to other PIPE investors. For example, a Founding Partner at Genesis Park II LP participated in a video conference "to discuss the potential benefits of a combination of GPAC and Redwire." *Id.* at 4 (quoting May 12, 2021 Draft Registration Statement at 114). Class Counsel asserted that such insider knowledge "breaks the causal chain between any alleged misrepresentations in the PIPE transaction offering documents and [Genesis Park II LP's] investment decisions." *Id.* at 5.

On December 4, 2025, Genesis Park II LP responded by email to Class Counsel's letter. Evans Declaration ¶10(c)(v) and Ex. G(5) to Evans Declaration. Genesis Park II LP reiterated that it disagreed with any determination that it is an Excluded Party. *Id*. Genesis Park II LP further offered to provide its Partnership Agreement for review. *Id.* On December 9, 2025, Class Counsel responded by email and stated it was open to reviewing the Partnership Agreement. *Id.* Class Counsel

also requested the names of members of the Investment Committee, the identities of Genesis Park II LP's partners and beneficiaries, and the offering documents upon which Genesis Park II LP relied in deciding to make its investments. *Id.*

As of the date of this motion, SCS and Class Counsel have not received any response from Gensis Park II LP. Evans Declaration ¶10(vi). Lead Plaintiff therefore submits this disputed claim to the Court, and respectfully requests that the Court uphold the determination that Genesis Park II LP's Claim is ineligible. Class Counsel will provide a copy of this motion to Genesis Park II LP and has no objection to Genesis Park II LP submitting a response to the ineligibility determination so long as Class Counsel has an opportunity to respond.

III.   **PLANNED DISTRIBUTION OF THE NET SETTLEMENT FUND**

Pursuant to the Stipulation, "[t]he Claims Administrator shall administer the Settlement, including but not limited to the process of receiving, reviewing and approving or denying Claims[.]" Stipulation ¶18. Class Counsel, in turn, is "responsible for supervising the administration of the Settlement and the disbursement of the Net Settlement Fund subject to Court approval." *Id.* ¶23. Class Counsel now seeks to distribute the Net Settlement Fund to the Class Members whose 5,126 Claims have been accepted as set forth in Exhibits B-1 and B-2 of the Evans Declaration, in proportion to their Recognized Claims as shown therein.

Consistent with the terms of the Plan of Allocation and with the Court's approval, the Claims Administrator will conduct an initial distribution of the Net Settlement Fund to all Claimants on a *pro rata* basis whose distribution payments calculate to $10.00 or more. *See* Evans Declaration ¶12(a)-(c).

Based on the substantial experience of Class Counsel in similar distributions, it can be expected that a certain number of payments to be distributed to Settlement Class Members who filed valid claims will not be cashed promptly. To encourage Authorized Claimants to promptly cash their distribution checks and to avoid or reduce further expenses relating to uncashed checks, Class Counsel propose that all the distribution checks bear a notation "CASH PROMPTLY, VOID AND SUBJECT TO RE-DISTRIBUTION 180 DAYS AFTER ISSUE DATE." *Id.* ¶12(d).

The Claims Administrator will make reasonable and diligent efforts to encourage Authorized Claimants who are entitled to participate in the distribution of the Net Settlement Fund to cash their distribution. *Id.* ¶12(e). However, if any funds remain in the Net Settlement Fund six months after the initial disbursement, by reason of uncashed checks or otherwise, the remaining funds will be used to pay any unpaid fees and expenses incurred in administrating the Settlement and to make a second distribution to claimants who received payment from the initial disbursement and who would receive at least $10.00. *Id.* These redistributions shall be repeated, if economically feasible, until the balance remaining in the Net Settlement Fund means

-12-

additional redistributions are not cost effective. *Id.* Such remaining balance will then be contributed to non-sectarian, not-for-profit organization(s). *Id.* Lead Plaintiff will propose such organization(s) for Defendants' consent and for final determination by the Court. *Id.*

Authorized Claimants who do not cash their distribution checks within the time allotted will irrevocably forfeit all recovery from the Settlement unless good cause is shown. *Id.* ¶12(f). The funds allocated to all such uncashed checks will be available for re-distribution to other Authorized Claimants in subsequent distributions, if such distributions are determined to be economically feasible. *Id.*

## IV. RELEASE OF CLAIMS

To allow the full and final distribution of the Net Settlement Fund, it is necessary to bar any further claims against the Net Settlement Fund beyond the amounts allocated to Authorized Claimants. In addition, it is necessary that all persons involved in the review, verification, calculation, tabulation, or any other aspect of the process of the claims submitted herein, or otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund, be released and discharged from any and all claims arising out of such involvement. Accordingly, Lead Plaintiff respectfully requests that the Court order that:

> All persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the Claims submitted herein, or otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund, are released and discharged from any and all

claims arising out of such involvement, and all Settlement Class Members and other Claimants, whether or not they are to receive payment from the Net Settlement Fund, are barred from making any further claim against the Net Settlement Fund, Lead Plaintiff, Lead Plaintiff's Counsel, the Claims Administrator and its agents/employees, the Escrow Agent, or any other agent retained by Lead Plaintiff or Class Counsel in connection with the administration or taxation of the Settlement Fund or the Net Settlement Fund, or any other person released under the Settlement, beyond the amounts allocated to them pursuant to the terms of the Class Distribution Order, provided that such released persons acted in accordance with the Stipulation, the Judgment, and the Class Distribution Order.

*See, e.g.*, *In re Miva, Inc.*, 2015 WL 12834962, at \*2 (M.D. Fla. Sept. 23, 2015) (ordering similar release); *In re Friedman's, Inc. Sec. Litig.*, 2009 WL 10671836, at \*2 (N.D. Ga. July 23, 2009) (same).

## V.     RECORDS RETENTION AND DESTRUCTION

Lead Plaintiff respectfully requests the Court order that: (i)  no less than one year after the initial distribution of the Net Settlement Fund, the Claims Administrator may destroy the paper copies of the Claim Forms and all supporting documentation; and (ii) no less than one year after all funds have been distributed, the Claims Administrator may destroy the electronic copies of the Claim Forms and all supporting documentation. Evans Declaration ¶12(h).

## VI.     CONCLUSION

For all the above reasons, Lead Plaintiff respectfully requests that the Motion be granted.

## RULE 3.01(G) CERTIFICATION

Counsel for Lead Plaintiff conferred with Defendants' Counsel on January 15,

2026 via telephone and email regarding the issues raised in the above motion and

Defendants stated they take no position on the Motion and the relief sought.

Dated: January 30, 2026

Respectfully submitted,

**HAGENS BERMAN SOBOL SHAPIRO LLP**

By: *s/ Reed R. Kathrein*

| | |
|---|---|
| Reed R. Kathrein (Fla. Bar. No. 262161) | Peter A. Shaeffer (admitted *pro hac vice*) |
| reed@hbsslaw.com | petersh@hbsslaw.com |
| Lucas E. Gilmore (admitted *pro hac vice*) | 455 N. Cityfront Plaza Drive, Suite 2410 |
| lucasg@hbsslaw.com | Chicago, IL 60611 |
| 715 Hearst Avenue, Suite 300 | Telephone: (708) 628-4949 |
| Berkeley, CA 94710 | Facsimile:  (708) 628-4950 |
| Telephone: (510) 725-3000 | |
| Facsimile:  (510) 725-3001 | *Class Counsel* |

| | |
|---|---|
| Steve W. Berman (admitted *pro hac vice*) | **THE SCHALL LAW FIRM** |
| steve@hbsslaw.com | Brian Schall (admitted *pro hac vice*) |
| 1301 Second Avenue, Suite 2000 | brian@schallfirm.com |
| Seattle, WA 98101 | |
| Telephone: (206) 623-7292 | *Additional Counsel for Lead Plaintiff* |
| Facsimile:  (206) 623-0594 | |
| | **BUCKNER + MILES** |
| | David M. Buckner (Fla. Bar No. 60550) |
| | david@bucknermiles.com |
| | |
| | *Liaison Counsel for Lead Plaintiff* |

-15-